ETHAN P. DAVIS
Acting Assistant Attorney General
DAVID MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
DANIEL D. MAULER
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, | Case No. 5:20-cv-05799-LHK |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| WILBUR L. ROSS, JR., *et al.*, | Date: September 4, 2020<br>Time: 3:00 p.m. |
| Defendants. | Judge: Hon. Lucy H. Koh |

On top of their pending Motion for Preliminary Injunction ("PI Motion"), ECF No. 36, which is already being heard on an expedited schedule, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO Motion") yesterday, September 3, 2020, ECF No. 66, after receiving Defendants' report of September 2, 2020 regarding the wind-down of census field operations, ECF No. 65. The TRO Motion should be denied.

<u>First</u>, Plaintiffs' TRO Motion is the product of their failure to confer with Defendants prior to lodging their motion. Had Plaintiffs conferred with Defendants prior to filing, the parties may have been able to reach agreement on an accelerated hearing on Plaintiffs' PI Motion, insofar as that is what Plaintiffs ultimately seek. Plaintiffs' conferral consisted of an email sent to Defendants' counsel nine minutes before they filed their motion. This email was sent after 11:30 PM Eastern Time—when Plaintiffs' counsel knew it was highly unlikely Defendants would be able to respond. Plaintiffs offer no reason why they could not have conferred earlier. Indeed, while Plaintiffs describe themselves as being surprised and dissatisfied by Defendants' filing on September 2, 2020, there is no reason why Plaintiffs could not have reached out to Defendants at anytime in the approximately thirty hours prior to when they did so, to seek additional information, ask questions, or voice their reportedly significant concerns.

<u>Second</u>, Plaintiffs' assertions about Defendants' actions during the week between the September 2, 2020 filing and this Court's August 28, 2020 conference do not state a case for the extraordinary entry of a temporary restraining order. As an initial matter, the harms Plaintiffs allege to have resulted during this week are no different from the harms asserted in their PI Motion. Moreover, Defendants fully responded to the Court's inquiry regarding the winding down of field operations for the census. At the time of the case management conference, Defendants' counsel did not know whether there was such a date. After conferring with the Census Bureau, Defendants reported the answer: there is no date certain, and, owing to the nature of conducting a nationwide decennial census, some field operations have begun to wind down. There is nothing improper about that truthful answer, and Plaintiffs cannot claim to be prejudiced by Defendants' alerting the Court that closures would manifest on a sliding scale.

Third, Plaintiffs' demands to understand how the Census Bureau decides to closeout operations reflects the intrusiveness of the injunctive relief they seek. It should come as no surprise to anyone that a census—which Plaintiffs agree is a "massive undertaking" involving more than 300 million persons and across 50 states—cannot be started and stopped with a single switch. ECF No. 36, Mot. 1, 4. Moreover, as Defendants intend to explain as part of their filing later today, the wind-down decisions are dynamic. The Census Bureau is not closing down field operations in alphabetical order; instead, it is making such decisions based on whether and when individual areas meet completion benchmarks. *See* Aug. 3, 2020 Statement by Director Dillingham ("Our operation remains adaptable and additional resources will help speed our work. The Census Bureau will continue to analyze data and key metrics from its field work to ensure that our operations are agile and on target for meeting our statutory delivery dates.").[1] Closeout for a particular area thus means that a census count in that area is complete—not that the count is being foreshortened.

Finally, Plaintiffs' TRO Motion should be denied for all the reasons articulated in Defendants' forthcoming response to Plaintiffs' preliminary injunction motion. As Defendants will argue in their filing to be submitted later today, the Constitution "vests Congress with virtually unlimited discretion in conducting the decennial" census. *Wisconsin v. City of New York*, 517 U.S. 1, 19 (1996). Exercising that discretion, Congress has promulgated a statute that entrusts the Secretary of Commerce with "tak[ing] a decennial census of population . . . in such form and content as he may determine"—but *requires* that the Secretary report results to the President before the census year's end. 13 U.S.C. § 141(a), (b). At the Commerce Department and Census Bureau's request, Congress has considered extending the December 31, 2020 deadline in light of the disruptions caused by the COVID-19 pandemic. But it has not yet done so. Accordingly, the Secretary, with the Bureau, have developed a plan to meet the existing end-of-year deadline, which by necessity also requires sufficient time to process the information that the Census Bureau collects. In the absence of a congressional extension of the December 31 deadline, a temporary

---

[1] *See* https://www.census.gov/newsroom/press-releases/2020/delivering-complete-accurate-count.html (last visited Sept. 4, 2020).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 5:20-cv-05799-LHK

restraining order (or a preliminary injunction) extending field operations will, by necessity, further compress the time period for the Census Bureau to process the data it collects after field operations conclude, thus creating risks to the Census Bureau's ability to conduct an accurate enumeration.

And, as senior Bureau officials have assured Congress and the public, the Bureau is confident that, following its current plan, it can deliver a complete and accurate census within the allotted time. While Plaintiffs harbor concerns about the Bureau's plan and the timeline, they should take those concerns to the branch of Government in position to address them: Congress. Contrary to what Plaintiffs may think, the Bureau is not free to disregard a statutory deadline in pursuit of some ethereal notion of a better census. And this Court—a court of limited jurisdiction—should not set aside the Bureau's entire operational plan for completing the census, a 15.6 billion dollar operation years in the making, on the basis of Plaintiffs' frustration with Congress' processes.

Decisions about how and when to complete a census turn on policy choices that are unreviewable political questions. The manner and means of conducting the census is constitutionally committed to Congress, and neither the Constitution nor any other statute sets forth a judicially discoverable or manageable standard for evaluating the Bureau's complex operational plans for a decennial census. Article III tribunals are not equipped to weigh and evaluate the myriad decisions and complicated tradeoffs that define how a census is to be performed—in the midst of a pandemic or otherwise.

Separately, even if disputes about the timing and operation of a census were theoretically justiciable, Plaintiffs' claims are not cognizable here, because they fail to establish standing. Specifically, because all of their concerns arise from the statutory timeline under which the Bureau must complete the census—a statutory timeline they do not challenge—Plaintiffs fail to establish concrete, particularized injury that is traceable to the Bureau's actions, or redressable by a favorable Court ruling. Absent an extension of the deadline in § 141(b), the Bureau has no choice but to meet that statutory requirement.

Beyond these fatal threshold defects, Plaintiffs' efforts to shoehorn their policy disagreements into an Administrative Procedure Act ("APA") framework fail as a legal matter.

1  The APA permits review only of final agency action that is circumscribed and discrete; as other
2  courts have recognized, the Bureau's general operational plans do not fit that framework.  Plaintiffs
3  thus cannot use the APA to redirect a massive, nationwide effort of enormous complexity.  Nor
4  can Plaintiffs repackage what amounts to a lobbying brief as a legal challenge under the
5  Enumeration Clause.  The Enumeration Clause requires only that the population must be
6  determined through a person-by-person headcount, rather than through estimates or conjecture.
7  Despite Plaintiffs' suggestions otherwise, that Clause does not speak in any way to the degree of
8  accuracy required in the enumeration that is performed.

9  Separate from the unlikelihood of success on their claims, Plaintiffs also fail to establish
10 the other elements required for emergency injunctive relief:  irreparable injury or that the harms
11 weigh in their favor.  The balance of harms and public interest instead weigh squarely against
12 forcing the Census Bureau to replan a massive operation that is designed and run by scientists and
13 statisticians to achieve the best possible results within Congress's established parameters.
14 Compelling the Bureau by mandatory injunction—disfavored relief under any scenario—to
15 reshuffle its operations at this late juncture would indeed risk undermining the accuracy Plaintiffs
16 allegedly seek to protect.  Plaintiffs cite no authority for the proposition that a litigant can
17 successfully petition a court to compel a federal agency to violate its statutory obligations, and so
18 far as Defendants are aware there is none.  Simply put, Plaintiffs are not entitled to an emergency
19 injunction requiring the Bureau to flout the law.

| | |
|---|---|
| DATED: September 4, 2020 | Respectfully submitted,<br><br>ETHAN P. DAVIS<br>Acting Assistant Attorney General<br><br>DAVID MORRELL<br>Deputy Assistant Attorney General<br><br>ALEXANDER K. HAAS<br>Branch Director<br><br>DIANE KELLEHER<br>BRAD P. ROSENBERG<br>Assistant Branch Directors<br><br>*/s/ Alexander V. Sverdlov*<br>ALEXANDER V. SVERDLOV<br>  (New York Bar No. 4918793)<br>M. ANDREW ZEE (SBN 272510)<br>DANIEL D. MAULER<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division - Federal Programs Branch<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 305-0550<br><br>*Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV