LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Amit Makker (Bar No. 280747)
    amit.makker@lw.com
  Shannon D. Lankenau (Bar No. 294263)
    shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095

LATHAM & WATKINS LLP
  Richard P. Bress (*pro hac vice*)
    rick.bress@lw.com
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
  Anne W. Robinson (*pro hac vice*)
    anne.robinson@lw.com
  Tyce R. Walters (*pro hac vice*)
    tyce.walters@lw.com
  Genevieve P. Hoffman (*pro hac vice*)
    genevieve.hoffman@lw.com
  Gemma Donofrio (*pro hac vice*)
    gemma.donofrio@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
  Kristen Clarke (*pro hac vice* forthcoming)
    kclarke@lawyerscommittee.org
  Jon M. Greenbaum (Bar No. 166733)
    jgreenbaum@lawyerscommittee.org
  Ezra D. Rosenberg (admitted *pro hac vice*)
    erosenberg@lawyerscommittee.org
  Dorian L. Spence (*pro hac vice* forthcoming
    dspence@lawyerscommittee.org
  Ajay P. Saini (admitted *pro hac vice*)
    asaini@lawyerscommittee.org
  Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
  Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202.662.8600
Facsimile: 202.783.0857

*Additional counsel and representation
information listed in signature block*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR L. ROSS, JR., et al., <br><br> Defendants. | CASE NO. 5:20-cv-05799-LHK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Date: TBD <br> Time: TBD <br> Place: Courtroom 8 <br> Judge: Hon. Lucy H. Koh |

## I. INTRODUCTION

Defendants' submissions and arguments to this Court against a TRO, and especially the Fontenot Declaration submitted last night, have confirmed that a TRO now is necessary. Mr. Fontenot makes clear that, among other things, September 11 is the date by which critical Census field operations can be deemed "completed" regardless of actual completion percentages—a looming issue for the vast majority of census regions, according to Mr. Fontenot—and that Census field workers are being terminated now. A TRO is thus the only way to ensure the status quo remains in effect until the September 17 PI Hearing. Absent a TRO, Plaintiffs and the public interest will be irreparably harmed by Defendants' actions.

## II. THE CENSUS COUNT IS IN JEOPARDY AND THE THREAT OF IRREPARABLE INJURY IS CLEAR

At the August 26, 2020 CMC, Defendants could not provide this Court with even basic information regarding the Bureau's wind-down operations. Under Court order to do so, on September 2, Defendants provided a three-sentence non-explanation, including that "the Census Bureau has already begun taking steps to conclude field operations" and would do so "throughout September." Dkt. 63. Alarmed that operations were already being shut down, but without being provided any detail, Plaintiffs felt compelled to file an immediate motion for TRO. And Defendants' September 4 Opposition to Plaintiffs' TRO (Dkt. No. 74)—which again provided no specifics, but just-trust-us assertions such as "Closeout for a particular area thus means that a census count in that area is complete—not that the count is being foreshortened"—has only heightened this concern. So, too, has Defendants' approach during the September 4, 2020 TRO Hearing, where the Court was told field operations were not being shut down until reaching a 85-90% completion rate, and that all would be made clear by Mr. Fontenot's forthcoming declaration.

Mr. Fontenot's declaration falls far short of that promise. Most critically, it does not state that the Bureau is following the same closeout procedure that they would have followed had the COVID-19 Plan remained in place. It does not provide details about what qualifies as "complete," or why San Diego already has a predetermined date for shutting down operations. Nor does it answer many of the other questions this Court posed to Defendants. But Mr. Fontenot's declaration

does make one overarching point clear: that an immediate TRO is vital. As the Court may recall, on July 8, Mr. Fontenot stated that the Bureau was "past the window of being able to get those counts by those [December 31] dates." *See* Dkt. 36 at 10:19-22. Through Mr. Fontenot, we now have heard for the first time that for the Bureau's nonresponse follow up (NRFU) operation, (1) as of September 3, 2020 roughly only **11%** of CFS [Census Field Supervisor] areas nationwide were eligible for the closeout phase, which happens when a CFS area crosses the 85% completion mark, yet (2) **all** CFS areas will become eligible for closeout procedures on September 11, regardless of completion rate, at which time each regional director can unilaterally decide to move the area into closeout to meet the September 30 deadline. Dkt. 81-1, Fontenot Decl. ¶ 95. When Defendants said that "closeout for a particular area thus means that a census count in that area is complete— not that the count is being foreshortened," Plaintiffs were right to worry, because as of September 11, for what may be a vast majority of CFU areas, "complete" means whatever a regional director may decide, in light of the mandate to have all field operations cease by September 30. Deemed "complete" precisely *because* the time, and therefore count, *has* been foreshortened.

Furthermore, what constitutes "complete" for a given household remains unexplained. The internal Census Bureau document, only touched on by Mr. Fontenot enough to suggest it came from him, *see* Fontenot Decl. ¶ 81, indicates that the Replan has increased reliance on administrative records, and reductions in quality assurance operations during NRFU. *See* Dkt. 66-3 at 23-24. But use of administrative records or proxies is less accurate than direct enumeration, particularly so for immigrants and racial and ethnic minorities. *See* Dkt. 36-2, Thompson Decl. ¶¶ 20-23; Dkt. 36-3, Hillygus Decl. ¶¶ 19-29. Defendants provide no explanation as to what degree of accuracy has been sacrificed by the Replan, and Plaintiffs' experts and the Bureau's own documents make clear that inaccuracies will hit immigrants and racial and ethnic minorities the hardest.

Mr. Fontenot's declaration also discusses a number of additional topics reaffirming Plaintiffs' allegations in the Complaint, and therefore likelihood of success on the merits, such as:

- the well-funded status of the Bureau (¶¶ 15-18);
- the extended work that went into the original Census operational plan (¶¶ 9-71);

- the necessity of the extended COVID-19 Plan (¶¶ 77-80);
- the fact that the Bureau was operating under the COVID-19 Plan for many months (¶¶ 80-81);
- the critical importance of nonprofit organizations and other actors in assisting the Bureau with implementing its timeline and counts, including some of the Plaintiffs here by name (¶¶ 40-42);
- the sudden truncation of everything in late July 2020, when Mr. Fontenot was forced to prepare and present a "Replan" over a **4-day** period (¶ 81); and
- the fact that the Replan does compromise the quality of the Census (albeit to an unidentified degree) (¶ 82).

Yet perhaps most importantly for the instant motion is Mr. Fontenot's candid assessment regarding the importance and status of Census field workers:

> Lack of field staff would be a barrier to reverting to the COVID Schedule were the Court to rule later in September. The Census Bureau begins terminating staff as operations wind down, even prior to closeout. Based on progress to date, as is standard in prior censuses, we have already begun terminating some of our temporary field staff in areas that have completed their work. It is difficult to bring back field staff once we have terminated their employment. Were the Court to enjoin us tomorrow we would be able to keep more staff on board than were the Court to enjoin us on September 29, at which point we will have terminated many more employees.

Fontenot Decl. ¶ 98. In other words, Mr. Fontenot is telling this Court that being enjoined now rather than later is necessary to keep Census field staff in place. This refreshingly candid statement is a welcome contrast to Defendants' TRO Opposition, which argued that a TRO will force the Bureau "to replan a massive operation" and that having the Bureau "reshuffle its operations at this late juncture would indeed risk undermining the accuracy Plaintiffs allegedly seek to protect." Dkt. 74 at 4. Mr. Fontenot also notes that "[i]f our schedule were extended, we would evaluate whether to reschedule" an important quality control operation they presumably removed because of the limited time remaining before September 30. *Id.* ¶ 99. In his words, "[w]e would go through each and every aspect of remaining operations and determine how best to use the remaining time to maximize the accuracy and completeness of the census results." *Id.*

Thus, according to Mr. Fontenot, if the Court enjoins Defendants immediately, they will have more employees to continue NRFU operations and could comb through operations to maximize the accuracy of the census. Moreover, any burdens or costs seem absorbable into the Bureau's ample budget, which "represents enough funding to successfully complete the 2020

Census in virtually all possible scenarios." *Id.* ¶ 15. And to be clear, the relief Plaintiffs are seeking is very limited. The Court would simply be ordering the Bureau not to take any actions inconsistent with the very plan Mr. Fontenot and the experts at the Bureau had themselves adopted and implemented for four months before the 4-day Replan—no more, no less—in the short time before the PI hearing.

With the threat of irreparable injury established—and no countervailing interest against a short TRO—Plaintiffs respectfully submit that maintaining the status quo is paramount.

## III. DEFENDANTS' THRESHOLD ARGUMENTS REGARDING JUSTICIABILITY AND STANDING FAIL

Defendants' TRO Opposition only briefly touches on various merits-related issues, arguing that this case is essentially not justiciable, and referring the Court to Defendants' PI Opposition. Plaintiffs will address each of these arguments in detail in their upcoming Reply in support of their PI Motion. But to the extent they factor into the Court's views on the merits of the TRO at issue here, Plaintiffs will address them briefly here.

*First*, Defendants argue that their decision to promulgate the Replan was compelled by the statutory deadline. As Plaintiffs will explain more fully, it was not: The statutory deadline must, as applied in these extraordinary circumstances, bow to the constitutional duty to conduct an accurate census. More important than the deadline, "the [Census] Act imposes 'a duty to conduct a census that is accurate and that fairly accounts for the crucial representational rights that depend on the census and the apportionment.'" *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568-69 (2019) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 819-20 (1992)); *see also Utah v. Evans*, 536 U.S. 452, 478 (2002) (Census Clause of the Constitution carries with it a "strong constitutional interest in accuracy"). Moreover, even if Defendants were correct, that would not free them from the duty to comply with the APA's standards of reasoned decisionmaking. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) (holding that although DHS rested its decision to rescind DACA "on the conclusion that DACA is unlawful," the rescission must still be vacated under the APA for failure to consider all relevant aspects of the problem).

*Second*, courts have repeatedly rejected the argument that census-related decisions are beyond APA review. Indeed, in the citizenship question case, the Supreme Court stated that "[t]he taking of the census is not one of those areas traditionally committed to agency discretion" and is subject to judicial review under the APA. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568-69 (2019). Other courts have held similarly. *See, e.g.*, *Carey*, 637 F.2d at 838-39; *California v. Ross*, 362 F. Supp. 3d 727, 743-46 (N.D. Cal. 2018); *Kravitz v. Dep't of Com.*, 336 F. Supp. 3d 545, 567 & n.14 (D. Md. 2018) (citing cases). Defendants' promulgation of the Replan, like the decision to add a citizenship question, is final agency action. And the political question doctrine has been rejected in previous census-related cases as well. *See, e.g.*, *New York v. U.S. Dep't of Com.*, 315 F. Supp. 3d 766, 790-91 (S.D.N.Y. 2018). As the *New York* court explained,

> courts, including the Supreme Court and the Second Circuit, have entertained challenges to the conduct of the census for decades and, more to the point, have consistently rejected application of the political question doctrine in such cases. Those courts have acknowledged that the text of the Constitution vests Congress with virtually unlimited discretion in conducting the decennial actual Enumeration. Yet, time and again, they have recognized that the judiciary has at least some role to play in reviewing the conduct of the political branches with respect to the decennial census.

*Id.* at 791 (internal citations to numerous cases and quotations omitted).

*Third*, the harms that Plaintiffs have alleged and described in their PI Motion have been firmly upheld as conferring standing in a case like this. *See* Dkt. 36 at 28-33.

At bottom, it is telling that Defendants' primary arguments here are based on threshold issues and not the Bureau's action itself.

## IV. CONCLUSION

For the reasons set forth above, and in their motion for a temporary restraining order, in the motion for a preliminary injunction and all supporting documents, and at hearing before the Court, Plaintiffs request that the Court enter a TRO in accordance with Plaintiffs' Proposed Order, enjoining Defendants from implementing or allowing to be implemented any actions as a result of the shortened timelines in the Bureau's Replan, including but not limited to winding down or altering any Census field operations.

| | | |
|---|---|---|
| 1 | Dated: September 5, 2020 | LATHAM & WATKINS LLP |
| 2 | | By: /s/ Sadik Huseny |
| 3 | | Sadik Huseny |
| 4 | | Steven M. Bauer (Bar No. 135067)<br>steven.bauer@lw.com |
| 5 | | Sadik Huseny (Bar No. 224659)<br>sadik.huseny@lw.com |
| 6 | | Amit Makker (Bar No. 280747)<br>amit.makker@lw.com |
| 7 | | Shannon D. Lankenau (Bar. No. 294263)<br>shannon.lankenau@lw.com |
| 8 | | **LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000 |
| 9 | | San Francisco, CA 94111<br>Telephone: 415.391.0600 |
| 10 | | Facsimile: 415.395.8095 |
| 11 | | Richard P. Bress (admitted *pro hac vice*)<br>rick.bress@lw.com |
| 12 | | Melissa Arbus Sherry (admitted *pro hac vice*)<br>melissa.sherry@lw.com |
| 13 | | Anne W. Robinson (admitted *pro hac vice*)<br>anne.robinson@lw.com |
| 14 | | Tyce R. Walters (admitted *pro hac vice*)<br>tyce.walters@lw.com |
| 15 | | Genevieve P. Hoffman (admitted *pro hac vice*)<br>genevieve.hoffman@lw.com |
| 16 | | Gemma Donofrio (admitted *pro hac vice*)<br>gemma.donofrio@lw.com |
| 17 | | **LATHAM & WATKINS LLP**<br>555 Eleventh Street NW, Suite 1000 |
| 18 | | Washington, D.C. 20004<br>Telephone: 202.637.2200 |
| 19 | | Facsimile: 202.637.2201 |
| 20 | | *Attorneys for Plaintiffs National Urban League;* |
| 21 | | *League of Women Voters; Black Alliance for Just Immigration; Harris County, Texas; King County, Washington; City of San Jose,* |
| 22 | | *California; Rodney Ellis; Adrian Garcia; and the NAACP* |
| 23 | Dated: September 5, 2020 | By: /s/ Jon M. Greenbaum |
| 24 | | Kristen Clarke (*pro hac vice* forthcoming)<br>kclarke@lawyerscommittee.org |
| 25 | | Jon M. Greenbaum (Bar No. 166733)<br>jgreenbaum@lawyerscommittee.org |
| 26 | | Ezra D. Rosenberg (admitted *pro hac vice*)<br>erosenberg@lawyerscommittee.org |
| 27 | | Dorian L. Spence (*pro hac vice* forthcoming)<br>dspence@lawyerscommittee.org |
| 28 | | Maryum Jordan (*pro hac vice* forthcoming) |

mjordan@lawyerscommittee.org
Ajay Saini (admitted *pro hac vice*)
asaini@lawyerscommittee.org
Pooja Chaudhuri (Bar No. 314847)
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: 202.662.8600
Facsimile: 202.783.0857

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Wendy R. Weiser (admitted *pro hac vice*)
weiserw@brennan.law.nyu.edu
Thomas P. Wolf (admitted *pro hac vice*)
wolf@brennan.law.nyu.edu
Kelly M. Percival (admitted *pro hac vice*)
percivalk@brennan.law.nyu.edu
**BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: 213.385.2977
Facsimile: 213.385.9089

*Attorneys for Plaintiff City of San Jose*

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice* forthcoming)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: September 5, 2020

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: September 5, 2020

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us
Michael Mutalipassi (Bar No. 274858)
michaelmu@ci.salinas.ca.us
**CITY OF SALINAS**
200 Lincoln Avenue
Salinas, CA 93901
Telephone: 831.758.7256
Facsimile: 831.758.7257

*Attorneys for Plaintiff City of Salinas*

| | | |
|---|---|---|
| Dated: September 5, 2020 | | By: */s/ Rafey S. Balabanian* |

Rafey S. Balabanian (Bar No. 315962)
rbalabanian@edelson.com
Lily E. Hough (Bar No. 315277)
lhough@edelson.com
**EDELSON P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435

Rebecca Hirsch (*pro hac vice* forthcoming)
rebecca.hirsch2@cityofchicago.org
**CORPORATION COUNSEL FOR THE CITY OF CHICAGO**
Mark A. Flessner
Stephen J. Kane
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Telephone: (312) 744-8143
Facsimile: (312) 744-5185

*Attorneys for Plaintiff City of Chicago*

Dated: September 5, 2020             By: */s/ Donald R. Pongrace*

Donald R. Pongrace (*pro hac vice* pending)
dpongrace@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: 202-887-4288

Dario J. Frommer (Bar No. 161248)
dfrommer@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Phone: 213.254.1270
Fax: 310.229.1001

*Attorneys for Plaintiff Gila River Indian Community*

| | |
|---|---|
| Dated: September 5, 2020 | By: */s/ David I. Holtzman*<br>David I. Holtzman (Bar No. 299287)<br>David.Holtzman@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>Daniel P. Kappes<br>Jacqueline N. Harvey<br>50 California Street, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 743-6970<br>Fax: (415) 743-6910<br><br>*Attorneys for Plaintiff County of Los Angeles* |

## **ATTESTATION**

I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this document. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

| | |
|---|---|
| Dated: September 5, 2020 | **LATHAM & WATKINS LLP**<br><br>By: */s/ Sadik Huseny*<br>Sadik Huseny |