UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>WILBUR L. ROSS, et al.,<br><br>   Defendants. | Case No. 20-CV-05799-LHK<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 66 |

  Plaintiffs National Urban League; League of Women Voters; Black Alliance for Just Immigration; Harris County, Texas; King County, Washington; City of Los Angeles, California; City of Salinas, California; City of San Jose, California; Rodney Ellis; Adrian Garcia; National Association for the Advancement of Colored People; City of Chicago, Illinois; County of Los Angeles, California; Navajo Nation; and Gila River Indian Community (collectively, "Plaintiffs") sue Defendants Commerce Secretary Wilbur L. Ross, Jr.; the U.S. Department of Commerce; the Director of the U.S. Census Bureau Steven Dillingham, and the U.S. Census Bureau ("Bureau") (collectively, "Defendants") for violations of the Enumeration Clause and Administrative Procedure Act.

  Before the Court is Plaintiffs' September 3, 2020 motion for a temporary restraining order

("TRO motion"), enjoining Defendants from implementing Defendants' August 3, 2020 Replan, which shortens census data collection and processing timelines from the eight months set forth in the Defendants' April 13, 2020 COVID-19 Plan to four months. Plaintiffs claim that the Replan's shortened timelines will unlawfully harm the accuracy of crucial census data. Plaintiffs request that the TRO remain in effect for twelve days, until the September 17, 2020 hearing on Plaintiffs' motion for stay and preliminary injunction ("PI motion").

Temporary restraining orders "serv[e] the[] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974); *accord, e.g., E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) ("a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer'") (ellipsis in original).

"'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction [or TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction [or TRO] is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *accord Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (holding that these factors are "on a sliding scale"). Thus, "when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). The issuance of a TRO is at the Court's discretion. *See All. for the Wild Rockies*, 632 F.3d at 1131.

The Court has considered the TRO motion, opposition, and reply; the parties' oral arguments at the September 4, 2020 TRO hearing; the PI motion and opposition; the relevant law; and the record in this case. Below the Court analyzes in turn (1) the presence of serious questions going to the merits; (2) irreparable harm; (3) the balance of hardships; and (4) the public interest. *All. for the Wild Rockies*, 632 F.3d at 1135.

The Court finds that Plaintiffs have presented serious questions going to the merits at least as to Plaintiffs' claims under the Administrative Procedure Act ("APA"). The Court does not prejudge these claims, but merely recognizes that the Plaintiffs have presented serious questions going to the merits of these claims.

For example, there are serious questions as to whether the Replan is reviewable by this Court. There is a serious question as to whether Plaintiffs have standing to challenge the Replan. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565–66 (2019) (holding that Plaintiffs had standing because an undercount of "as little as 2%" of noncitizen households constituted an injury in fact and was traceable to the Defendants' actions). Additionally, there is a serious question as to whether the Replan constitutes final agency action. Although the United States Supreme Court decided in *Franklin v. Massachusetts* that the Secretary of Commerce's transmission of a final Census report to the President is not final agency action, there is a serious question as to whether *Franklin* governs the facts in the instant case. 505 U.S. 788, 798 (1992) (explaining that the transmission was not final agency action because it "carries no direct consequences for the apportionment"). Finally, there is a serious question as to whether the Replan is committed to agency discretion by law. *See Dep't of Commerce v. New York*, 139 S. Ct. at 2568 (noting that "census-related decisionmaking" is traditionally reviewable under the Administrative Procedure Act).

There are also serious questions as to whether the Replan was arbitrary and capricious in violation of the APA. *See* 5 U.S.C. § 706(2)(A). The APA requires that Defendants consider the "important aspect[s] of the problem" before them. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). Although Defendants justify the Replan based on the statutory deadline, Plaintiffs suggest that Defendants have failed to consider their other statutory obligations, including the statutory requirement that Defendants "conduct a census that is accurate and that fairly accounts for the crucial representational rights that depend on the census and the apportionment." *Dep't of Commerce v. New York*, 139 S. Ct. at 2569 (quoting *Franklin*, 505 U.S. at 819–20 (Stevens, J., concurring in part and concurring in the judgment)). Thus, there are

serious questions going to the merits of the Plaintiffs' APA claims.

As to irreparable harm, Plaintiffs identify and support with affidavits four potential irreparable harms that Plaintiffs will suffer as a result of inaccurate census data. First, Plaintiffs state that an inaccurate apportionment will violate their constitutional rights to political representation. Mot. 29. Second, Plaintiffs risk losing important federal funding from undercounting. Mot. 30. Third, Plaintiffs will need to expend resources to mitigate the undercounting that will result from the Replan. Mot. 31. Lastly, local government Plaintiffs' costs will increase because those Plaintiffs rely on accurate granular census data to deploy services and allocate capital.

These harms are potentially irreparable in two ways. To start, at least part of the harms may be constitutional in nature, and "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, to the extent the harm involves expending money or resources, "[i]f those expenditures cannot be recouped, the resulting loss may be irreparable." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers). Because the decennial census is at issue here, an inaccurate count would not be remedied for another decade, which would affect the distribution of federal and state funding, the deployment of services, and the allocation of local resources for a decade. Similar harms have thus justified equitable relief in previous census litigation. *See, e.g.*, *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 328–34 (1999) (affirming injunction against the planned use of statistical sampling in census and citing apportionment harms, among others); *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 675 (S.D.N.Y.) (issuing injunction and finding irreparable "the loss of political representation and the degradation of information"), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551. Plaintiffs attached to their TRO motion an internal Bureau document indicating that the Replan's compressed deadlines increase the risk of inaccuracy in the census count. ECF No. 66-3. Plaintiffs aver that each day that the Census does not conduct its field operations to reach and

count hard to reach populations increases the inaccuracy of the census count and thus increases their irreparable harm.

By contrast, a temporary restraining order would merely require Defendants to do what Defendants had planned to do and were doing since April 13, 2020, when Defendants adopted the COVID-19 Plan, through August 3, 2020, when Defendants adopted the Replan.  Moreover, the sole evidence Defendants submit in opposition to the TRO motion and the PI motion is the declaration of Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs at the U.S. Census Bureau (hereafter, "Fontenot").  In his September 5, 2020 declaration, Fontenot declares that:

> Lack of field staff would be a barrier to reverting to the COVID Schedule were the Court to rule later in September.  The Census Bureau begins terminating staff as operations wind down, even prior to closeout.  Based on progress to date, as is standard in prior censuses, we have already begun terminating some of our temporary field staff in areas that have completed their work.  It is difficult to bring back field staff once we have terminated their employment.  Were the Court to enjoin us tomorrow we would be able to keep more staff on board than were the Court to enjoin us on September 29, at which point we will have terminated many more employees.

Font. Decl. at ¶ 98.  Thus, Fontenot's declaration underscores Plaintiffs' claims of irreparable harm because the Bureau is terminating field staff now and will have difficulty rehiring such staff.  Moreover, Fontenot's declaration suggests that the burden of an injunction on Defendants is far less now than later in September.

Furthermore, Defendants' stated reason for the August 3, 2020 Replan is to get the Census count to the President by December 31, 2020 instead of April 30, 2021 as scheduled in the Bureau's COVID-19 Plan.  Font. Decl. at ¶ 81.  However, Defendants' sole declarant, Fontenot, acknowledged publicly less than two months ago that the Bureau is "past the window of being able to get accurate counts to the President by December 31, 2020."  *U.S. Census Bureau, Operational Press Briefing – 2020 Census Update* at 21 (July 8, 2020), https://www.census.gov/content/dam/Census/newsroom/press-kits/2020/news-briefing-programtranscript-july8.pdf.  Similarly, on May 27, 2020, Tim Olson, head of field operations for the 2020 Census, stated during a May 26, 2020 webinar organized by the National Congress of

5

American Indians that, "we have passed the point where we could even meet the current legislative requirement of December 31st. We can't do that anymore." Nat'l Conf. of Am. Indians, *2020 Census Webinar: American Indian/Alaska Native*, YouTube (May 26, 2020), https://www.youtube.com/watch?v=F6IyJMtDDgY&feature=youtu.be&t=4689. These statements support Plaintiffs' claims of irreparable harm arising from an inaccurate census count. On balance, the Court finds that the balance of hardships tips sharply in favor of Plaintiffs.

As to the public interest, when the government is a party, the analysis of the balance of the hardships and the public interest merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As the United States Supreme Court recognized, Congress has codified the public's interest in "a census that is accurate and that fairly accounts for the crucial representational rights that depend on the census and the apportionment." *Dep't of Commerce v. New York*, 139 S. Ct. at 2569 (quoting *Franklin*, 505 U.S. at 819–820 (Stevens, J., concurring in part and concurring in judgment)) (discussing the Census Act, 2 U.S.C. § 2a). Other courts have held that "the public interest . . . requires obedience to the Constitution and to the requirement that Congress be fairly apportioned, based on accurate census figures" and that "it is in the public interest that the federal government distribute its funds . . . on the basis of accurate census data." *Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980) (per curiam). Thus, the balance of the hardships and public interest tip sharply in Plaintiffs' favor.

Accordingly, having considered the TRO motion, opposition, and reply; the parties' oral arguments at the September 4, 2020 TRO hearing; the PI motion and opposition; the relevant law; and the record in this case, the Court GRANTS Plaintiffs' motion for a temporary restraining order. The Court finds that no security is necessary. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

IT IS HEREBY ORDERED THAT, effective as of the date of this Order, Defendants Commerce Secretary Wilbur L. Ross, Jr.; the U.S. Department of Commerce; the Director of the U.S. Census Bureau Steven Dillingham, and the U.S. Census Bureau are enjoined from

implementing the August 3, 2020 Replan or allowing to be implemented any actions as a result of the shortened timelines in the August 3, 2020 Replan, including but not limited to winding down or altering any Census field operations, until the Court conducts its September 17, 2020 hearing on Plaintiffs' PI motion.

**IT IS SO ORDERED.**

Dated: September 5, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge