JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> WILBUR L. ROSS, JR., *et al.*, <br><br> Defendants. | Case No. 5:20-cv-05799-LHK <br><br> **DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S SEPTEMBER 12, 2020 ORDER, ECF No. 101** |

Pursuant to the Court's Order dated September 12, 2020, ECF No. 101, Defendants respectfully submit this brief to address the Court's questions concerning *in camera* review and the duration of the Court's September 5, 2020, Order.

### I. *In Camera* Review of Privileged Documents

The Court should not engage in *in camera* review of the privileged documents. Defendants have only just completed a privilege log for a set of documents; review of potentially responsive documents is ongoing; and the volume of privileged documents is substantial. Review of privileged documents *in camera* is the exception, not the rule, and as the Supreme Court has cautioned, is not automatically available. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 571 (1989) (noting that the Court had previously "declined" "to say that the court *may automatically require* a complete disclosure to the judge before the claim of privilege will be accepted" (internal quotes and citations omitted)). Indeed, a "blanket rule allowing *in camera* review as a tool for determining the" existence of a privilege would (1) "place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk;" (2) raise "possible due process implications;" (3) and place "burdens . . . upon the district courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties." *Id.* at 571 (internal quotes and citations omitted).

Based on these concerns, the Court held that, "[b]efore engaging in *in camera* review," a judge "should require a showing of a factual basis adequate to support a good faith belief by a reasonable person" that an exception to a claim of privilege applies. *Id.* at 572 (internal quotes and citation omitted). Only once such a showing is made should the Court proceed to determine whether to undertake *in camera* review considering "among other things, the volume of materials the district court has been asked to review, [and] the relative importance to the case of the alleged privileged information." *Id.*; *see generally NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ( "[I]n camera review ... is designed to be invoked when the issue before the District Court could not be otherwise resolved.").

*In camera* review thus does not flow automatically from the existence of party representations regarding privilege. Rather, it requires a showing that there is, at the very least, a

meaningful dispute about the need for the privileged documents and the scope of the privilege, grounded in specific facts. *See, e.g.*, *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997) (explaining that "*in camera* review is appropriate only if 'the preferred alternative to *in camera* review—government testimony and detailed affidavits—has first failed to provide a sufficient basis for a decision.'" (quoting *Pollard v. FBI,* 705 F.2d 1151, 1154 (9th Cir.1983)); *Ocean Mammal Inst. v. Gates*, No. CIV.07-00254DAELEK, 2008 WL 2185180, at *10 (D. Haw. May 27, 2008) ("A court need not conduct an *in camera* review of documents withheld on the basis of the deliberative process privilege if the agency provides 'reasonably detailed descriptions of the documents and allege[s] facts sufficient to establish an exemption.'" (quoting *Ctr. for Biological Diversity v. Norton,* 336 F.Supp.2d 1149, 1155 n. 4 (D.N.M.2004) (additional citations omitted)). An actual dispute about the privilege is also necessary to inform the type of review that the Court conducts. Different privileges require distinct factual showings, and engender their own type of analysis.

Here, of course, no factual basis to question an assertion of privilege has been identified. Indeed, Defendants have not even been able to complete all the necessary review of the mass of documents the Court has directed them to collect, or to determine the full set of documents over which they need to assert privilege. *See* DiGiacomo Decl. ¶¶ 11-13, ECF 104-1. And Plaintiffs have not yet raised a single objection to the documents Defendants have thus far identified as privileged. If Plaintiffs do raise such a challenge, then they would have to first contend with binding law on what kinds of documents are properly covered by, for example, the deliberative process privilege. *See, e.g., Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092–93 (9th Cir. 1997). Further, all of that analysis would be completely beside the point, in any event, because the privileged documents are entirely irrelevant to the threshold legal issues upon which this case can—and should—be resolved.

Therefore, it would seem an inefficient use of judicial resources for the Court to undertake *in camera* review at this juncture. More to the point, the Court should not delay resolution of this case by undertaking *in camera* review of internal Department of Commerce documents, when the basis for concluding census field operations by the end of this month rests on a requirement that

Plaintiffs have not, and cannot, set aside: the statutory deadline in 13 U.S.C. § 141. Privilege review will not alter the deadline, nor compel Congress to change it.

## II. Duration of the Court's September 5, 2020 Order

The Court has separately directed Defendants to state whether they would consent to an extension of the Court's September 5, 2020, Order. ECF 84. In the interest of judicial efficiency given the time constraints inherent in meeting applicable statutory deadlines and arriving at an accurate census, Defendants again urge that, if the Court believes Plaintiffs are entitled to relief despite the statutory deadlines, the Court "convert the [Order] to a preliminary injunction now in order to afford adequate time for any appellate review." Defs. Notice, ECF 86, at 1-2. In addition to helping facilitate the ultimate resolution of this case, and permit sufficient time for any appellate courts to consider the issues if any appeal is filed, such a conversion would obviate any need for the Court to consider whether an extension of the September 5, 2020, Order is necessary.

Should the Court decline such a streamlined process, Defendants would not consent to any extension of the September 5, 2020, Order. As a general matter, temporary restraining orders may be extended only for "good cause." Fed. R. Civ. P. 65(b)(2). No good cause for such an extension exists here because: (i) there was no good cause to enter any injunctive relief in the first instance, *see generally* ECF 74, 81; (ii) the extension of the September 5, 2020, Order would, in the absence of a congressional extension of the operative December 31, 2020, deadline, only "further compress the time period for the Census Bureau to process the data it collects after field operations conclude, thus creating risks to the Census Bureau's ability to conduct an accurate enumeration," ECF 74 at 3; and (iii) such relief is not necessary given that the Census Bureau is well on its way to completing the enumeration, *see* https://2020census.gov/en/response-rates/nrfu.html (last visited Sept. 14, 2020) (listing completion rates by state), and any extension of the September 5, 2020, Order could create confusion if parties are forced to seek expedited appellate review. *See generally* Fontenot Decl. ¶¶ 100-101, ECF 81-1.

Further, any extension that would cause the September 5, 2020 Order to last beyond the fourteen-day period permitted by Rule 65(b)(2) would convert that Order into an immediately appealable preliminary injunction. "The most prevalent view is that a temporary restraining order,

even if issued with notice, cannot be continued beyond the periods prescribed in Fed.R.Civ.P. 65(b) without being treated as the equivalent of a preliminary injunction and thus subject to appellate review." *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 692 (3d Cir. 1997). Indeed, "where the duration of the order exceeds the ordinary duration for TROs as set forth in the Federal Rules of Civil Procedure, classification as a TRO is unlikely." *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1067 (9th Cir. 2010).

DATED:  September 14, 2020          Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
  (New York Bar No. 4918793)
M. ANDREW ZEE (SBN 272510)
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV