LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Amit Makker (Bar No. 280747)
    amit.makker@lw.com
  Shannon D. Lankenau (Bar No. 294263)
    shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415.391.0600
Facsimile:  415.395.8095

LATHAM & WATKINS LLP
  Richard P. Bress (admitted *pro hac vice*)
    rick.bress@lw.com
  Melissa Arbus Sherry (admitted *pro hac vice*)
    melissa.sherry@lw.com
  Anne W. Robinson (admitted *pro hac vice*)
    anne.robinson@lw.com
  Tyce R. Walters (admitted *pro hac vice*)
    tyce.walters@lw.com
  Genevieve P. Hoffman (admitted *pro hac vice*)
    genevieve.hoffman@lw.com
  Gemma Donofrio (admitted *pro hac vice*)
    gemma.donofrio@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:  202.637.2200
Facsimile:  202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
  Kristen Clarke (*pro hac vice* pending)
    kclarke@lawyerscommittee.org
  Jon M. Greenbaum (Bar No. 166733)
    jgreenbaum@lawyerscommittee.org
  Ezra D. Rosenberg (admitted *pro hac vice*
    erosenberg@lawyerscommittee.org
  Dorian L. Spence (*pro hac vice* pending)
    dspence@lawyerscommittee.org
  Ajay P. Saini (admitted *pro hac vice*)
    asaini@lawyerscommittee.org
  Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
  Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Additional counsel and representation
information listed in signature block*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al., | CASE NO.  5:20-cv-05799-LHK |
| Plaintiffs, | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR STAY AND PRELIMINARY INJUNCTION** |
| v. | |
| WILBUR L. ROSS, JR., et al., | Date:     September 17, 2020 |
| Defendants. | Time:     1:30 p.m. |
| | Place:    Courtroom 8, 4th Floor, San Jose |
| | Judge:    Hon. Lucy H. Koh |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     DISCUSSION ...........................................................................................................2

        A.      The Court Correctly Rejected Defendants' Threshold Arguments.........................2

                1.      The political question doctrine does not bar review of the Replan.............3

                2.      Plaintiffs have standing to challenge the Replan .........................................3

                3.      The Replan is final agency action reviewable under the APA ..................7

        B.      The Irreparable Harm And Balance Of Hardship Factors Weigh Sharply In
                Favor Of Relief ......................................................................................................10

        C.      Plaintiffs Are Likely To Succeed On Their APA Claims.....................................11

                1.      Defendants failed to engage in reasoned decisionmaking .............12

                2.      The statutory deadline cannot rescue the Replan...........................14

        D.      Plaintiffs Are Likely To Succeed On Their Enumeration Clause Claim...............18

III.    CONCLUSION.........................................................................................................20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Diabetes Ass'n v. U.S. Dep't of Army,*
938 F.3d 1147 (9th Cir. 2019) ........................................................................................4

*Appalachian Power Co. v. EPA,*
208 F.3d 1015 (D.C. Cir. 2002) ....................................................................................8, 9

*Asarco, Inc. v. EPA,*
616 F.2d 1153 (9th Cir. 1980) ......................................................................................11

*AT&T Info. Sys., Inc. v. GSA,*
810 F.2d 1233 (D.C. Cir. 1987) ....................................................................................11

*Barnhart v. Peabody Coal Co.,*
537 U.S. 149 (2003) ......................................................................................................16

*Bennett v. Spear,*
520 U.S. 154 (1997) ..................................................................................................9, 10

*Biodiversity Legal Foundation v. Badgley,*
309 F.3d 1166 (9th Cir. 2002) ..................................................................................9, 15

*Brock v. Pierce Cty.,*
476 U.S. 253 (1986) ......................................................................................................17

*California v. Ross,*
362 F. Supp. 3d 727 (N.D. Cal. 2018) ...............................................................4, 10, 14

*Carey v. Klutznick,*
637 F.2d 834 (2d Cir. 1980) .....................................................................................10, 17

*Carey v. Klutznick,*
653 F.2d 732 (2d Cir. 1981) ..........................................................................................17

*Catholic League for Religious & Civ. Rights v. City of S.F.,*
624 F.3d 1043 (9th Cir. 2010) ........................................................................................7

*Chiang v. Kempthorne,*
503 F. Supp. 2d 343 (D.D.C. 2007) ................................................................................8

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971), *overruled on other grounds by Califano v. Sanders,*
430 U.S. 99 (1977) ........................................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

*Davis v. FEC,*
   554 U.S. 724 (2008)..............................................................................................4

*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019).................................................................................. *passim*

*Dep't of Commerce v. U.S. House of Reps.,*
   525 U.S. 316 (1999)..............................................................................................4

*DHS v. Regents of Univ. of Cal.,*
   140 S. Ct. 1891 (2020)................................................................................2, 11, 14, 15

*Dist. of Columbia v. U.S. Dep't of Commerce,*
   789 F. Supp. 1179 (D.D.C. 1992) .....................................................................10

*Doe v. Walker,*
   746 F. Supp. 2d 667, 682 (D. Md. 2010) ..........................................................16

*Encino Motorcars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016) ......................................................................................14

*Esshaki v. Whitmer,*
   813 F. App'x 170 (6th Cir. 2020) ......................................................................16

*Forest Guardians v. Babbitt,*
   174 F.3d 1178 (10th Cir. 1999) .........................................................................15

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992)..................................................................................8, 9, 10, 15

*Hernandez v. Sessions,*
   872 F.3d 976 (9th Cir. 2017) .............................................................................11

*Humane Soc'y v. Locke,*
   626 F.3d 1040 (9th Cir. 2010) ...........................................................................13

*Klutznick v. Carey,*
   449 U.S. 1068 (1980)..........................................................................................17

*Kravitz v. Dep't of Commerce,*
   336 F. Supp. 3d 545 (D. Md. 2018) .................................................................9, 10

*Kravitz v. U.S. Dep't of Commerce,*
   366 F. Supp. 3d 681 (D. Md. 2019) ....................................................................6

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990)..............................................................................................7

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012) .............................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

*NAACP v. Trump*,
   298 F. Supp. 3d 209 (D.D.C. 2018) ..................................................................................8

*Nat. Res. Def. Council v. EPA*,
   643 F.3d 311 (D.C. Cir. 2011) ........................................................................................9

*New York v. U.S. Dep't of Commerce*,
   315 F. Supp. 3d 766 (S.D.N.Y. 2018) .....................................................................3, 4, 10

*New York v. U.S. Dep't of Commerce*,
   351 F. Supp. 3d 502 (S.D.N.Y. 2019) ..........................................................................6, 9

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) (plurality opinion) .......................................................................17

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ...........................................................................................................7

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*,
   477 F.3d 668 (9th Cir. 2007) ...........................................................................................7

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ...........................................................................................8

*Organized Vill. of Kake v. USDA*,
   795 F.3d 956 (9th Cir. 2015) (en banc) ...........................................................................8

*Regions Hosp. v. Shalala*,
   522 U.S. 448 (1998) .......................................................................................................16

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) ..............................................................................................7

*San Luis Unit Food Producers v. United States*,
   709 F.3d 798 (9th Cir. 2013) ...........................................................................................7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...........................................................................................................7

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .........................................................................................................4

*U.S. House of Reps. v. U.S. Dep't of Commerce*,
   11 F. Supp. 2d 76 (D.D.C. 1998) ...................................................................................10

*Utah v. Evans*,
   536 U.S. 452 (2002) .............................................................................................15, 18, 20

*Valentini v. Shinseki*,
   860 F. Supp. 2d 1079 (C.D. Cal. 2012) ...........................................................................7

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

*W. Oil & Gas Ass'n v. EPA,*
    633 F.2d 803 (9th Cir. 1980) ............................................................................17

*Wild Fish Conservancy v. Jewell,*
    730 F.3d 791 (9th Cir. 2013) ...........................................................................7

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .............................................................................................10

*Wisconsin v. City of New York,*
    517 U.S. 1 (1996) .............................................................................................18

## STATUTES

5 U.S.C. § 705 .......................................................................................................8

5 U.S.C. § 706 .......................................................................................................8

13 U.S.C. § 141(a) ...........................................................................................10, 15

13 U.S.C. § 221 ................................................................................................9, 14

## OTHER AUTHORITIES

83 Fed. Reg. 26,643 ..............................................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants' opposition confirms the necessity and appropriateness of preliminary relief. It is undisputed that the Bureau took nearly a full month to develop its COVID-19 Plan, which preserved at least the same amount of time for each census operation and the same quality metrics as the Bureau's initial 2018 Plan (developed over a decade through extensive analysis, testing, consultation with other agencies, and input from stakeholders). It is also undisputed that the "Replan" was devised in five days with no stakeholder input and was presented to Secretary Ross alongside warnings that cutting time and operations from the census would significantly degrade the accuracy and quality of the data. And it is undisputed that the Secretary's directive was to compress the data collection and processing timelines to meet a December 31 deadline—a deadline the Bureau's officials had already said, publicly, was impossible. *See* Addendum (statements by government officials).

Defendants do not meaningfully address any of these fundamental flaws. They do not dispute that multiple aspects of the issue remained unexamined, nor provide any contemporaneous justification for their sudden change of position. They do not dispute that the Replan was intended to effectuate the Apportionment Exclusion Order issued by President Trump just a few days prior. Indeed, the only support they offer—Mr. Fontenot's declaration, which principally focuses on the initial 2018 Plan—does not (a) contradict or explain Mr. Fontenot's previous statements or those of other Bureau officials; (b) present any supporting documentation; or (c) even explain how the Replan's operations compare to the COVID-19 Plan, let alone materially dispute the facts declared by Mr. Fontenot's former colleagues and by the experts supporting Plaintiffs' motion.

Rather than defend their decisionmaking, Defendants focus on whether the Court has authority to hear this case, and the excuse that Defendants' hands were tied by the December 31 deadline. The Court has provisionally and correctly rejected this first set of arguments (AR Order 9-17), and other courts have repeatedly rejected the same in prior census challenges. And contrary to Defendants' assertions, Plaintiffs do not ask this Court to oversee the Bureau's census operations. Plaintiffs challenge the discrete decision to issue the Replan, and seek only to stay the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

Replan so that Defendants can comply with their *own* preexisting COVID-19 Plan.

As for the December 31 deadline, Defendants cannot hide behind a statutory deadline *where the same statute* imposes a duty to "conduct a census that is accurate." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568-69 (2019) (citation omitted).  Nor can a statutory deadline control, of course, when adherence to it would violate an underlying constitutional duty.  Moreover, as the Supreme Court recently affirmed, an agency must comply with the APA even when it believes its actions are legally compelled.  *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).  Defendants had to consider the many factors at issue when fundamentally changing their position on the timeline needed to conduct an accurate census.  And the undisputed evidence makes clear that they did not.

Plaintiffs' showing on irreparable harm and the strong public interest in enjoining the Replan compel preliminary relief for the same reasons they warranted a temporary restraining order ("TRO").  TRO Order 4-6.  Mere platitudes that the Bureau is "confident" (Fontenot Decl. ¶ 91) that it can achieve an accurate census under the Replan cannot overcome the wealth of evidence from the Bureau itself making clear that it cannot.  Plaintiffs respectfully request that the Court grant their motion for stay and preliminary injunction.

## II.   DISCUSSION

This Court has already provisionally resolved Defendants' threshold arguments, found a likelihood of irreparable harm, and recognized that the balance of equities weighs in favor of relief.  Those holdings are all correct.  And on the merits, too, Plaintiffs are likely to succeed on their claims that the Replan violates the APA and the Constitution.

### A.   The Court Correctly Rejected Defendants' Threshold Arguments

The bulk of Defendants' opposition is spent arguing that the Court cannot consider the merits of Plaintiffs' claim.  Opp. 4-23.  The Court recently addressed, and provisionally rejected, all five "threshold" reasons.  AR Order 9-17.  The Court's conclusions (*id.* at 8) were correct.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

### 1.      The political question doctrine does not bar review of the Replan

Plaintiffs' claims are not barred by the political question doctrine.  "[T]ime and again," courts "have recognized that the judiciary has at least some role to play in reviewing the conduct of the political branches with respect to the decennial census." *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 791 & n.15 (S.D.N.Y. 2018) (citing cases); *see* AR Order 10-11 (citing cases).  And the Supreme Court recently "rejected Defendants' claim that there is 'no meaningful standard against which to judge the agency's exercise of discretion.'"  AR Order 10 (quoting *New York*, 139 S. Ct. at 2568).  That standard, as this Court explained, "is provided by the Census Act, the Constitution, and APA." *Id.*  Defendants do not cite a *single* case to the contrary, and Plaintiffs are aware of none.

Nor are Plaintiffs' claims somehow "different" from all that came before.  Opp. 6-8.  This case presents a "discrete policy choice" that can be compared "against an alternative." *Id.* at 7.  Defendants decided to accelerate the census timeline in the Replan; the "alternative" was to adhere to the timeline in the COVID-19 Plan they previously adopted and were implementing.  There are no abstract questions in this case about how much "time," "funding," or "staff[ing]" would produce the most accurate count. *Id.* at 7-8.  The issue is whether Defendants engaged in reasoned decisionmaking when, in a matter of days, they abandoned a decade of *their own* planning.

Defendants also incorrectly conflate justiciability with the merits by insisting that the existence of a statutory deadline somehow makes this case unreviewable.  Opp. 4-5, 7.  The APA requires determining what "contemporaneous justifications" were given for the Replan, and whether the "agency considered—and gave a contemporaneous explanation of—all relevant aspects of a problem before taking action."  AR Order 9.  The statutory deadline is not the only "relevant aspect of the census" Congress has set forth. *Id.* at 9-10.  Whether the deadline compelled or justified Defendants' actions is a legal question for this Court to decide. *See infra* Part II.C.2.

### 2.      Plaintiffs have standing to challenge the Replan

The Court also correctly concluded that Plaintiffs have standing to challenge the Replan. AR Order 11-14.  Plaintiffs have provided evidence of multiple injuries that are "concrete,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733 (2008). These same injuries—which include increased costs in conducting crucial operations, lost federal funding, representational harms, and increased costs of vital operations from the degradation of census information—were sufficient to support standing in prior census challenges. *See New York*, 139 S. Ct. at 2565; *New York*, 315 F. Supp. 3d at 786; *Dep't of Commerce v. U.S. House of Reps.*, 525 U.S. 316, 329-333 (1999); *California v. Ross*, 362 F. Supp. 3d 727, 738 (N.D. Cal. 2018). So too here.

   ***Plaintiffs are suffering harm today***.  As this Court recognized, Plaintiffs' declarations are replete with concrete examples of how Plaintiffs have been forced to expend and divert resources to try to mitigate the effects of the Replan and to counteract the information they had previously shared regarding the October 31 deadline.  AR Order 12-13.  Defendants do not dispute any of these facts.  And their attempt to dismiss Plaintiffs' efforts as self-inflicted harms (Opp. 15) runs counter to fact and law.  Defendants *themselves* boast about how much time and money was expended on the Bureau's advertising campaign, and how partners—like Plaintiffs— were integral to that effort.  Fontenot Decl. ¶¶ 32, 39-42.  Having conceded the point, Defendants cannot now argue that the resulting harm is not cognizable.  *See Am. Diabetes Ass'n v. U.S. Dep't of Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (injury in fact if organization demonstrates "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question").

   ***Plaintiffs will suffer future harm***.  Plaintiffs have also established a real threat of future injury via lost federal funding and their fair share of political representation.  *See* AR Order 11-12; *New York*, 139 S. Ct. at 2565 (future injury sufficient if "threatened injury is certainly impending, or there is a 'substantial risk that the harm will occur'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  The causal chain is simple and familiar.  The Replan's shortened timeline for data collection and processing will cause hard-to-count populations to be undercounted. Plaintiffs are local governments with high proportions of hard-to-count groups as residents, organizations with members in such communities, and individuals who live there.  And even a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

small differential undercount will harm Plaintiffs by causing them to lose their fair share of federal dollars (which turn on census data) and representation in the House (the primary purpose of the census). Plaintiffs' detailed declarations substantiate each link in that chain. *See* AR Order 11-12.[1]

Defendants nevertheless argue that these harms are "speculative." Opp. 12. They dismiss the likelihood of an undercount because the Bureau "intends to improve the speed" of its operations "without sacrificing completeness," and the Replan was "designed" "to meet the statutory deadline without compromising quality to an *undue* degree." Opp. 13 (emphasis added) (quoting Fontenot Decl. ¶¶ 82, 86-91). But unsupported bromides cannot rebut the testimony of Plaintiffs' experts as to the inevitable effects of the Replan, particularly when the Bureau's own statements and documents warn of "significant[]" harms to data quality and Defendants' notice of compliance with the Court's TRO shows why. *See* PI Mot. 26-32; *see also infra* Part II.B. Plaintiffs' experts simply agree with the Bureau in this respect.

Defendants also argue that apportionment and funding are zero-sum games, and because the Replan will thus "lead to 'lower-quality data across the board,'" other jurisdictions "may be equally affected." Opp. 14 (quoting PI Mot. 27). But harms from an undercount are not spread evenly. Areas with high numbers of hard-to-count groups suffer disproportionately when compared to areas with low numbers of those same groups. Hillygus Decl. ¶¶ 19, 20; Louis Decl. ¶ 39; Thompson Decl. ¶¶ 20-21; Ex. 5 at 202 (listing hard-to-count populations). So, for example, as of September 11, 56.8% of Los Angeles residents had self-responded, as compared to 72.9% of Minneapolis residents, and the Bureau had marked 88.5% of Texas households as enumerated, as compared to 98.9% of Idaho households.[2] And as a number of courts have recognized with respect to the 2020 Census, specifically, a differential undercount need not be large to have a substantial impact on both funding and representational interests:

- "[I]f noncitizen households are undercounted by as little as 2%[,] [states] will

---

[1] *See* Louis Decl. ¶¶ 23, 30-34; Thompson Decl. ¶¶ 20-21; Hillygus Decl. ¶¶ 20, 37, 39-40; M. Garcia Decl. ¶¶ 7, 13-15; Briggs Decl. ¶¶ 7, 15-17; Gurmilan Decl. ¶ 6; Ellis Decl. ¶ 1-4; Dively Decl. ¶ 7; Westall Decl. ¶ 35; *see also* Ex. 16, Cong. Research Serv., *Community Development Block Grants and Related Programs: A Primer* 9-10 (Apr. 30, 2014) (detailing funding formula).
[2] *See* Ex. 17 (screenshot of https://www.censushardtocountmaps2020.us/); Ex. 18, Census Bureau, *2020 Census Housing Unit Enumeration Progress by State*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

lose out on federal funds."  AR Order 12 (quoting *New York*, 139 S. Ct. at 2565).

- "[A] mere 5.8% differential undercount both of people who live in noncitizen households and Hispanics" in 2020 would threaten five states with "a substantial risk of a loss of representation in the House of Representatives." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 594 (S.D.N.Y. 2019).

- "[A] mere two percent net differential undercount of people who live in noncitizen households" "will dilute the political power of" many major metropolitan areas. *Id.* at 595; *see also Kravitz v. U.S. Dep't of Commerce*, 366 F. Supp. 3d 681, 736-37 (D. Md. 2019).

The Replan, in turn, threatens great undercounts.  Former Bureau Director Thompson notes that it "will likely result in undercounts … materially larger than were observed in the 1990 Census," which saw a 4.6% "undercount of [the] Black or African American population" and a 5% undercount "for the Hispanic population."  Thompson Dec. ¶ 21, *see* Dkt. 58, Amicus Br. of States at 4-5.  Whether California, for example, loses a seat may depend on as little as 1,324 people, and that lost seat would likely come from the Los Angeles region, which is recognized by the Bureau as one of the hardest areas in the nation to count.  Ex. 19, Rose Inst., *Southern California Faces Loss of One Congressional District, May Narrowly Hold on to Second* (July 6, 2020); *see also* M. Garcia Decl. ¶ 7.  And Texas, which is among the states vying most closely for additional congressional seats,[3] is well below average in response rate and the Bureau's own "enumerated" rate.  *See* Ex. 18; *see also* A. Garcia Decl. ¶¶ 1, 11-12; Stewart Decl. ¶ 4 (League of Women Voters has members in every state).  So while other areas with a high proportion of hard-to-count individuals (*e.g.*, rural areas) will suffer from an undercount too, the notion that there is no way to predict winners and losers from the Replan has no basis in reality.

*Plaintiffs' Injuries Are Fairly Traceable And Redressable*.  Finally, as the Court explained, Plaintiffs' standing rests on "the predictable effect of accelerating census deadlines, without warning, after months of publicly operating under a plan tailored to COVID-19," and "enjoining the Replan's last-minute change in deadlines would redress those harms."  AR Order 13-14.  Defendants argue that the statutory deadline is the real cause of Plaintiffs' harms, and this Court cannot provide a remedy.  Opp. 9-12.  But "Article III 'requires no more than *de facto*

---

[3] Ex. 20, Press Release at 4, Election Data Servs. (Dec. 30, 2019).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1  causality.'"  AR Order 13 (quoting *New York*, 139 S. Ct. at 2566).  As stated above with respect

2  to the political question doctrine, whether the statutory deadline compelled or justified

3  Defendants' actions goes to the merits of Plaintiffs' claims (*see infra* Part II.C.2), not to their

4  Article III standing.  *See Catholic League for Religious & Civ. Rights v. City of S.F.*, 624 F.3d

5  1043, 1049 (9th Cir. 2010) ("Nor can standing analysis, which prevents a claim from being

6  adjudicated for lack of jurisdiction, be used to disguise merits analysis ...."); *Steel Co. v. Citizens*

7  *for a Better Env't*, 523 U.S. 83, 96 (1998).

**3.**     **The Replan is final agency action reviewable under the APA**

9          The Court was also correct to conclude that the Replan is "agency action," that is "final,"

10  and that is "not committed to agency discretion by law."  AR Order 14-17.

11          ***The Replan is "agency action."***  Defendants claim (Opp. 17) that Plaintiffs' claims are

12  barred by *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("*SUWA*"), which held that

13  "a claim under § 706(1) can proceed only where ... an agency failed to take a *discrete* agency

14  action that it is *required to take*," and that this limitation "precludes ... broad programmatic

15  attack[s]."  They are incorrect.  Initially, because Plaintiffs have not brought a claim under

16  § 706(1) to compel agency action unlawfully withheld, *SUWA*'s "discreteness" requirement has

17  no application.[4]  But even if it applied, Plaintiffs challenge Defendants' "circumscribed,

18  discrete" decision to abandon the COVID-19 Plan and adopt the Replan.  This case is nothing

19  like the "broad programmatic attack[s]" other courts have declined to review.  *See Wild Fish*

20  *Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013) (challenging agency's day-to-day

21  operation of dams); *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 804-05 (9th

22  Cir. 2013) (seeking to compel agency action to provide irrigation districts with more water); *cf.*

23  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-94 (1990) (challenging "land withdrawal

24  review program" as described by plaintiff without reference to a "single" "order or regulation" or

25

---

26  [4] *See Salazar v. King*, 822 F.3d 61, 82 n.13 (2d Cir. 2016); *Valentini v. Shinseki*, 860 F. Supp. 2d
1079, 1096-97 (C.D. Cal. 2012) (citing *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477
27  F.3d 668, 681 n.10 (9th Cir. 2007)).  Defendants briefly suggest that Plaintiffs' action be
"treated" as "one to *compel* agency action," Opp. 19, but Plaintiffs plainly challenge agency
28  action (the Replan), not agency inaction.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

even "a completed universe" of the same).  And, as this Court rightly concluded, *NAACP* is

equally "inapposite."  AR Order 16-17.  Here, Plaintiffs are merely asking the Court to set aside

the Replan so Defendants can follow the very "design choices" *they* made in the 2018

Operational Plan and the timeline *they* adopted in the COVID-19 Plan.  *See* 5 U.S.C. §§ 705,

706; *NAACP v. Trump*, 298 F. Supp. 3d 209, 245-46 (D.D.C. 2018) ("Rescission Memo will be

vacated in its entirety, and the original DACA program will be restored in full"), *aff'd*, *Regents*,

140 S. Ct. at 1915; *Organized Vill. of Kake v. USDA*, 795 F.3d 956, 970 (9th Cir. 2015) (en

banc) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."

(citation omitted)).

> ***The Replan is "final."***  The approach to finality is a "pragmatic" one.  AR Order 14
(citation omitted).  "The core question is whether the agency has completed its decisionmaking
process and whether the result of that process is one that will directly affect the parties."
*Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

> The Replan readily satisfies both requirements for finality.  *See* AR Order 14 (setting forth
the two conditions).  It is "not subject to further agency review."  *Id.* (citation omitted).  It marks
the Secretary's "last word" that the timeline established by the COVID-19 Plan no longer
governs, and the new timeline now does.  *See, e.g.*, *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977, 984-85 (9th Cir. 2006) (annual operating instructions to permittees constituted
agency's "last word" authorizing individual permit holder to graze livestock each season).  And
the Bureau immediately began to act on the Replan.  *See Chiang v. Kempthorne*, 503 F. Supp. 2d
343, 350 (D.D.C. 2007) (statement within "Guidelines" that guidance was "effective
immediately … mark[ed] the consummation of the agency's decisionmaking process" (citation
omitted)); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2002) (when an
agency "acts as if a document issued at headquarters is controlling in the field … then [it] is for
all practical purposes 'binding'" (citation omitted)).  That the Bureau purports to be "continually
assessing its operational plans," and remains "ready to adapt to challenges in the environment"
(Opp. 19), does not make the Replan "tentative" or "interlocutory."  Defendants have never so
much as hinted that they would revisit the accelerated timeline.  And, in any event, agency action

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1   is not rendered non-final because it may be subject to change in the future.  *See Appalachian*

2   *Power Co.*, 208 F.3d at 1021.

3         The Replan also imposes obligations and consequences on both the Bureau and the

4   public.  AR Order 15.  The Replan *requires* the Bureau to end data collection on September 30,

5   and data processing on December 31.  Bureau officials are not free to disregard that directive and

6   accept self-response questionnaires postmarked on October 1, any more than they are free under

7   the Replan to continue knocking on doors through October.  *See Bennett v. Spear*, 520 U.S. 154,

8   178 (1997) (when agency action required agency compliance with prescribed conditions before

9   taking endangered species it imposed "legal consequences"); *Nat. Res. Def. Council v. EPA*, 643

10  F.3d 311, 319-20 (D.C. Cir. 2011) ("[T]he Guidance binds EPA regional directors and thus

11  qualifies as final agency action.").  The Replan also imposes obligations on the public to respond

12  by September 30, instead of October 31.  And this is not just a moral obligation—it is a *legal* one

13  too, backed by threat of fines for refusal to respond.  *See* 13 U.S.C. § 221.

14        Were there any doubt, the Supreme Court's recent citizenship-question case resolves it.

15  Just last year, DOJ conceded that the addition of the citizenship question to the census

16  questionnaire constituted final agency action.  *See New York*, 351 F. Supp. 3d at 645; *Kravitz v.*

17  *Dep't of Commerce*, 336 F. Supp. 3d 545, 566 n.13 (D. Md. 2018).  There is no reason that a

18  memorandum from the Secretary announcing the addition of a question to the questionnaire

19  would constitute final agency action, but the Replan approved by the Secretary (Fontenot Decl.

20  ¶ 85) would not.  In both cases, the Bureau viewed the decision as binding and, in both cases, the

21  decision imposed obligations on the Bureau and the public.

22        And the Court was right to distinguish *Franklin*.  AR Order 15.  *Franklin* challenged a

23  *post-census* method of apportioning congressional seats: the Secretary's decision to allocate

24  overseas military personnel to their home states.  505 U.S. at 795.  The Supreme Court found

25  that the *Secretary's* act of transmitting the report of apportionment numbers to the President was

26  not "final" agency action because it had "no direct effect on reapportionment" and could be

27  revised, and that the President's act of transmitting the report to Congress (which did have such

28  effect) was not "agency" action.  *Id.* at 797-99.  Plaintiffs challenge not the apportionment, but

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1  the *actual* counting of the population, which does not depend on later policy decisions. *Cf. U.S.*

2  *House of Reps. v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 93 (D.D.C. 1998) (distinguishing

3  *Franklin*); *Bennett*, 520 U.S. at 178 (explaining that *Franklin* "was premised on the observation

4  that the report carried 'no direct consequences'" and was not binding (citation omitted)).

5     ***The Replan is not committed to agency discretion by law*.**  The Replan is not one of the

6  rare decisions committed to agency discretion by law either.  AR Order 17.  Like Defendants'

7  arguments about the political question doctrine, this argument has been made and repeatedly

8  rejected in other census cases.  *See Carey v. Klutznick*, 637 F.2d 834, 838-39 (2d Cir. 1980);

9  *California*, 362 F. Supp. 3d at 743-46; *New York*, 315 F. Supp. 3d at 794-99; *Kravitz*, 336 F.

10  Supp. 3d at 567 & n.14 (citing cases); *Dist. of Columbia v. U.S. Dep't of Commerce*, 789 F.

11  Supp. 1179, 1188 n.16 (D.D.C. 1992).

12     As the Supreme Court's recent decision in the citizenship question case makes clear,

13  "[t]he taking of the census is not one of those areas traditionally committed to agency

14  discretion."  *New York*, 139 S. Ct. at 2568.  Nor is the statute "drawn so that it furnishes no

15  meaningful standard" of review.  *Id.*  That is, despite the "broad authority [conferred] on the

16  Secretary" under 13 U.S.C. § 141(a), the Act does "not leave his discretion unbounded" and

17  "constrains" his authority in important respects.  *Id.* at 2568.  And while Defendants claim that

18  the same statutory provisions are not at issue here (Opp. 22), they ignore the Supreme Court's

19  reliance on the directly applicable "duty to conduct a census that is accurate and that fairly

20  accounts for the crucial representational rights that depend on the census and the apportionment."

21  *New York*, 139 S. Ct. at 2568-69.

22    **B.**  **The Irreparable Harm And Balance Of Hardship Factors Weigh**
     **Sharply In Favor Of Relief**

23

24     As Plaintiffs have explained at length, there is no question they will be irreparably harmed

25  by the Replan, and the balance of equities weigh in their favor.  PI Mot. 28-34; *see Winter v. Nat.*

  *Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  And this Court previously found that "the balance

26  of hardships tips sharply in favor of Plaintiffs."  TRO Order 6.

27     Plaintiffs' harms are "potentially irreparable in two ways."  *Id.* at 4.  First, Plaintiffs have

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

shown constitutional harm to their representation rights, PI Mot. 29-30, which "unquestionably constitutes irreparable injury," TRO Order 4 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  Second, the Replan will lead to losses in federal and state funding, PI Mot. 30-31, and Plaintiffs have already had to expend funds to correct Defendants' shifting deadlines, *id*. at 31-32.  Expenditures that cannot be recouped are irreparable, and other courts have found that these kinds of funding harms support equitable relief.  TRO Order 4 (citing cases).  Defendants' contrary arguments are the same as the ones they make against Plaintiffs' standing—and fail for the same reasons.  *See supra* Part II.A.

As for the equities and public interest, Defendants effectively rest on a claim of undue burden: They would have to come up with a "new plan" in a short period of time.  Opp. 34-35.  Such concerns were unfounded then and have been disproved now.  There was never any need to create a "new plan."  Staying the Replan would simply mean the COVID-19 Plan would become operative, again.[5]  That Defendants were able to (so they say) quickly revert to the COVID-19 Plan in response to this Court's TRO proves as much.  *See* Dkt. 86.

### C.     Plaintiffs Are Likely To Succeed On Their APA Claims

Under the APA, judicial review of agency action "is limited to 'the grounds that the agency invoked when it took the action.'"  *Regents*, 140 S. Ct. at 1907 (citation omitted).  Where an agency "provided no rationalization at the agency level for its" decision, it is "precluded from initially offering one on judicial review." *AT&T Info. Sys., Inc. v. GSA*, 810 F.2d 1233, 1236 (D.C. Cir. 1987).  Mr. Fontenot's declaration may serve the limited purpose of offering "background information," but it "may not be employed to offer post-hoc rationalizations where no rationalization exists" in the record.  *Id.*; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971).  Because the exceedingly limited administrative record Defendants have seen fit to share "d[oes] not sustain the action," the Court should stay (for now), and ultimately "remand the matter for reconsideration by the agency." *Asarco, Inc. v. EPA*, 616 F.2d 1153,

---

[5] For similar reasons, Defendants are wrong to characterize Plaintiffs' relief as a "mandatory injunction."  Opp. 32.  That the Bureau will have to perform affirmative acts under its own COVID-19 Plan does not transform this "classic form of prohibitory injunction" into a mandatory one.  *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1159 (9th Cir. 1980).

### 1.     Defendants failed to engage in reasoned decisionmaking

Defendants' failure to engage in reasoned decisionmaking starts with the abject absence of process when abandoning a decade's worth of detailed planning, and drastically cutting key operational timelines, in just five days.  This is not just Plaintiffs' account of what happened. Mr. Fontenot's declaration describes the same decisionmaking process—as does Deputy Director Jarmin, and what little has been produced from the administrative record.  Ex. 26 at 12-13; *see* AR862-63, 865 (as of July 27, Bureau considered October 31 to be end date for data collection).

The Bureau spent most of a decade preparing the 2018 Operational Plan for the 2020 Census.  Fontenot Decl. ¶ 70.  Every operation and sub-operation was carefully planned, tested, and revised.  And stakeholders and partners were consulted.  *Id.* ¶¶ 12, 28.  A detailed description was published in the Federal Register, the public was expressly invited to comment, and the Operational Plan itself was separately published online.  83 Fed. Reg. 26,643; Ex. 5. That plan set forth a specific timeframe for critical operations including: (1) self-response (20.5 weeks); (2) non-response follow up ("NRFU") (11.5 weeks); and (3) data processing (22 weeks). *See* Ex. 5 at 79, 132, 144, 208; Fontenot Decl. ¶ 79; AR Order 3.

In early March, when the Bureau realized that the pandemic would make it impossible to adhere to those deadlines, it made adjustments.  Fontenot Decl. ¶ 17.  Over the next month, the Bureau again consulted with stakeholders and partners, solicited the input of experts, and ultimately arrived at a revised plan.  The COVID-19 Plan incorporated all of the detailed operations from the 2018 Operational Plan, changing only timing:  It extended (1) self-response to 33.5 weeks (until October 31); (2) NRFU to 12 weeks (until October 31); and (3) data processing to 26 weeks (until April 30, 2021).  Fontenot Decl. ¶ 79; Ex. 21, GAO Report 3; AR Order 4-5.  This was deemed necessary to address the pandemic's disruptions to staffing, safety, and the willingness of enumerators to knock on doors and the public to answer.  Fontenot Decl. ¶ 78. Defendants operated under the COVID-19 Plan for months.  The Bureau published the "[n]ew [s]chedule" on its website.  Ex. 4.  And with its partners, the Bureau engaged in an extensive campaign to advertise the new deadline.  Fontenot Decl. ¶ 39; *see also, e.g.*, M. Garcia

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

Decl. ¶ 14; Briggs Decl. ¶¶ 8-15.  During this time, there was no suggestion that the Bureau could revert back to the 2018 Operational Plan timeline.  To the contrary, Bureau officials—including Mr. Fontenot—publicly stated that completing the count by December 31 would be impossible.  *See, e.g.*, Ex. 11 at 2; Ex. 29; Ex. 30.

*When was the decision made to reverse course*?  Mr. Fontenot says "late July."  Fontenot Decl. ¶ 81.  But the only date he provides is July 29, when the Secretary "directed" the Bureau to "present a plan" to "accelerate the remaining operations" to meet the December 31 deadline.  *Id.*  The Bureau was ordered to produce this plan five days later.  *Id.*; *see* PI Mot. 12 (Bureau officials were given "hours rather than day or weeks").  And it announced the new plan on August 3—the same day it was presented to the Secretary.  *Id.*

*With whom did the Bureau consult*?  Unlike the prior plans, the Bureau did not consult with stakeholders or partners in formulating the Replan.  *See id.*  And Mr. Fontenot does not identify any officials beyond "senior career Census Bureau managers" who were involved.  *Id.*

*What factors did the Bureau consider*?  Defendants point to paragraphs 81-91, but none of these paragraphs addresses the factors considered in deciding to accelerate the timeline.  *That* decision was made by the Secretary.  *Id.*  And the record is devoid of any explanation of his reasons for, or factors he considered in, making that decision.  Mr. Fontenot and his staff were not deciding *whether* to accelerate the timeline; they were given only limited discretion as to how to meet the accelerated deadline.  But Plaintiffs challenge the decision to accelerate the timeline, not the ways in which the Bureau chose to adjust their operations in response.

Mr. Fontenot's declaration does demonstrate, however, that many factors that should have been considered in making the decision to shorten the timeline in the first place, were not:

- As for the Bureau's prior belief that the timeline and metrics in the COVID-19 Plan were necessary to achieve an accurate count, Mr. Fontenot says only that they "selected" the "time-saving measure[s]" that presented the "best combination of changes to allow [them] to meet the statutory deadline without compromising quality *to an undue degree.*"  *Id.* ¶ 82 (emphasis added); *Humane Soc'y v. Locke*, 626 F.3d 1040, 1051 (9th Cir. 2010) (agency cannot "avoid its duty to confront" prior inconsistencies "by blinding itself to them").

- As for NRFU, Mr. Fontenot relies primarily on the promise to provide incentive payments and hire more enumerators and their "inten[t] to improve the speed … without sacrificing completeness."  Fontenot Decl. ¶¶ 84-88.  But

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1  he acknowledges that staffing "has not been at the level anticipated." *Id.* ¶74.
2  Indeed, at that time, the Bureau had only 235,000 enumerators deployed, far
   below the 300,000 that the Bureau stated it needed by the end of August.
3  *Compare id.*, *with* Ex. 13 at 2.  A week later, the Bureau was down to 231,000.
   Ex. 23, ¶ 80.

4  • As for data processing, Mr. Fontenot lists the significant changes made—
   including cancelling purportedly "redundant" quality control measures—and
5  *admits* that these changes "increase the risk [that] the Census Bureau will not
   identify errors during post processing in time to fix them."  Fontenot Decl.
6  ¶¶ 89-90, 99, 100.  In internal decisional documents, the Bureau has been much
   more forceful.  *See* Ex. 22 (Aug. 3 PowerPoint); *infra* Part II.D.

7
8  • Perhaps most significantly, Mr. Fontenot does not address—let alone retract—
   his own prior statement on July 8 that the Bureau was "past the window of
   being able to get" accurate counts to the President by December 31, 2020.  Ex.
9  11 at 3 & n.5.

10 • And Mr. Fontenot's declaration gives no indication that the Bureau considered
   the competing statutory duty to "conduct a census that is accurate and that
11 fairly accounts for the crucial representational rights that depend on the census
   and the apportionment."  *New York*, 139 S. Ct. at 2569 (citation omitted); *see*
12 *California*, 362 F. Supp. 3d at 745 ("decision that both undermines the
   accuracy of the enumeration process and does so without reasonable
13 justification" may violate APA).

14      In addition, Defendants never dispute that the Bureau did not consider reliance interests

15 engendered by the COVID-19 Plan.  *See* PI Mot. 21.  Defendants just say they did not need to

16 because those reliance interests are not as significant as enrolling in colleges or having children.

17 Opp. 25-26 (citing *Regents*, 140 S. Ct. at 1914).  But reliance interests need only be "serious" to

18 require consideration under the APA.  *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117,

19 2126 (2016) (car dealerships negotiating compensation structures with employees).  And the

20 interests here are serious.  As Defendants have emphasized in previous cases, individuals are

21 legally obligated, on pain of a fine, to complete the census.  *See New York*, 139 S. Ct. at 2565-66;

22 13 U.S.C. § 221.  Mr. Fontenot is notably silent on what efforts the Bureau has made to *correct*

23 the public's understanding that they have until October 31 to comply, or whether the Bureau

24 even considered that anyone who fails to comply with the suddenly-changed deadline may have

25 violated the law.

26           **2.      The statutory deadline cannot rescue the Replan**

27      Instead of grappling with their failure to consider all of these key aspects of the problem,

28 Defendants say *they didn't have to* because of the Census Act's December 31 deadline for the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

Secretary to report to the President.  13 U.S.C. § 141(a).  Defendants are wrong.

In *Regents*, the Supreme Court vacated the DHS Secretary's recession of DACA in strikingly similar circumstances.  140 S. Ct. at 1915.  There, the Attorney General concluded that DACA was illegal and ordered the Secretary to rescind the program.  The Court declined to rule on whether that determination of illegality was correct because, even if it was, the Secretary had still violated the APA by failing to consider important aspects of the decision and possible alternatives to complete rescission.  The government and the lead dissent had vigorously argued that DACA's illegality was the beginning and end of the analysis.  *See id*.  The Court disagreed.

That reasoning applies here with even greater force.  Unlike *Regents*, there is no contemporaneous statement from Defendants declaring that the COVID-19 Plan is or would become unlawful as of December 31.  Indeed, in the limited AR produced, there is no mention of the need to discard the COVID-19 Plan because of the statutory deadline (until the Secretary's directive on July 29), and no indication that any factors relevant to that decision were even considered.  To Plaintiffs' knowledge, neither is there any such statement from the Attorney General.  But even had such a determination been made, under *Regents* it would not excuse Defendants from complying with the APA.  Indeed, the statutory deadline is not the only statutory obligation Defendants must comply with when planning census operations.  Defendants must also "conduct a census that is accurate and that fairly accounts for the crucial representational rights that depend on the census and the apportionment."  *New York*, 139 S. Ct. at 2569 (quoting *Franklin*, 505 U.S. at 819-20 (Stevens, J., concurring in part and concurring in the judgment)).  That statutory directive is constitutional in nature.  *See Utah v. Evans*, 536 U.S. 452, 478 (2002) (recognizing a "strong constitutional interest in accuracy").[6]

The record contains statements by the Bureau and Bureau officials admitting that the December 31 deadline could not be met without sacrificing substantial accuracy.  AR Order 5.  Even Defendants acknowledge: "There is no denying that the end-of-year statutory deadline for

---

[6] These competing statutory and constitutional obligations distinguish this case from *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1190 (10th Cir. 1999), and *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002).  Opp. 10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1    completing the census presents a number of challenges."  Opp. 34.  And in another case, Mr.

2    Fontenot just admitted that the Bureau is "facing significant risks to complete all states" by

3    September 30 due to "wildfires," "major storms," and the pandemic.  Ex. 23, Fontenot Decl.

4    ¶ 82, *La Unión del Pueblo Entero v. Trump*, No. 8:19-cv-02710-PX-PAH-ELH (D. Md. Sept. 11,

5    2020), ECF No. 117-1.  Defendants were required to consider whether continuing to adhere to

6    the COVID-19 Plan in these circumstances would have been unlawful; if they had, they might

7    well have concluded that it would not.

8        Of course, whether Defendants were *required* to reach that conclusion is not a question

9    this Court needs to answer today.  But the fact that the answer is yes puts a finer point on why

10   reasoned decisionmaking is required.  In these extraordinary circumstances, Defendants'

11   decision to scrap the COVID-19 Plan to meet the statutory deadline is contrary to law.  As

12   Plaintiffs previously explained, Congress could not constitutionally require the decennial census

13   to be completed in a single week, nor could it mandate that the count be accomplished by a

14   single enumerator.  PI Mot. 22.  Where, as here, disastrous and differential undercounts will

15   result from cutting the count's timeline in half—in the midst of a pandemic—the statutory

16   deadline cannot excuse a substandard count.  *See infra* Part II.D.

17       Contrary to Defendants' suggestions (Opp. 21-23), courts have previously recognized

18   that statutory deadlines must bow to constitutional requirements.  In *Doe v. Walker*, for instance,

19   the court found that because absentee ballots had been mailed to service members only 35 days

20   before they had to be returned, the statutory "deadline for receipt" of those ballots could not

21   "constitutionally be enforced."  746 F. Supp. 2d 667, 682 (D. Md. 2010); *see also Esshaki v.*

22   *Whitmer*, 813 F. App'x 170, 171 (6th Cir. 2020) (enjoining state ballot-access provisions and

23   deadlines during COVID-19 pandemic).  More generally, courts frequently refuse to invalidate

24   agency action taken after a statutory deadline has passed, finding that missing the deadline does

25   not deprive the agency of authority to act.  *See, e.g., Barnhart v. Peabody Coal Co.*, 537 U.S.

26   149, 171-72 (2003) (missed statutory deadline for assigning benefits did not prevent later

27   benefits award); *Regions Hosp. v. Shalala*, 522 U.S. 448, 459 n.3 (1998) (missing statutory

28   deadline for delivering report to Congress did not mean the Secretary lacked power to deliver the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

report at a later date); *Brock v. Pierce Cty.*, 476 U.S. 253, 266 (1986) (missed deadline for making final determination as to misuse of federal funds did not bar agency action to recover the funds); *see also Nielsen v. Preap*, 139 S. Ct. 954, 967 (2019) (plurality opinion) ("a statutory rule that officials "'shall' act within a specified time' does not by itself 'preclud[e] action later'" (citation omitted)).  The United States has routinely and recently advocated that same principle. *E.g.*, U.S. Br., *Nielsen v. Preap*, No. 16-1363, 2018 WL 2554770, at *10-11 (U.S. June 1, 2018); U.S. Br., *Dolan v. United States*, No. 09-367, 2010 WL 1220084, at *10-11 (U.S. Mar. 26, 2010).  And courts have also rejected the notion that a statutory deadline, standing alone, provides "good cause" to dispense with notice and comment requirements under the APA.  *See W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 810-12 (9th Cir. 1980).  In short, the agency cannot use the existence of a statutory deadline as a get-out-jail-free card to ignore the APA.

      With respect to this exact same Census Act deadline, the Second Circuit held that there is "nothing sacred in the due date of the [census] filing, especially when the work of the Census Bureau, at least as preliminarily demonstrated below, is incomplete."  *Klutznick*, 637 F.2d at 837-38.  Defendants are correct that the Supreme Court stayed the injunction approved by that decision pending appeal.  *See Klutznick* v. *Carey*, 449 U.S. 1068 (1980).  But the Supreme Court's order includes no explanation and, according to the dissent, the bulk of the government's briefing was "devoted to arguing that the respondents [were] unlikely to succeed on the merits" of their challenge.  *See id.* at 1070 (Marshall, J., dissenting).  And when the Second Circuit later vacated the injunction, it did so on unrelated merits grounds.  *Carey v. Klutznick*, 653 F.2d 732, 737 (2d Cir. 1981).  Neither the Supreme Court nor the Second Circuit suggested that the relief granted was *per se* inappropriate or the statutory deadline was in fact "sacred."

      Defendants' reliance on the statutory deadline, moreover, is pretext at best.  It has been widely reported that after initially seeking an extension of the deadline, Defendants in July reversed position and purposefully sought to manufacture a statutory conflict.  *See* Ex. 24, Katie Rogers & Peter Baker, *Trump Seeks to Stop Counting Unauthorized Immigrants in Drawing House Districts*, N.Y. Times (July 23, 2020) (noting that administration asked Congress for funds to conduct a "timely census" after initially seeking more time from Congress) ; Ex. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1   (Pelosi & Schumer Sept. 4 letter) (noting that White House Chief of Staff justified change of

2   dates because "the Democrats just want to control the apportionment and we aren't going to let

3   them do that").  This makes Defendants' claim that blame lies with Congress especially specious.

4        **D.      Plaintiffs Are Likely To Succeed On Their Enumeration Clause Claim**

5        The Replan also violates the Enumeration Clause because it does not bear a "reasonable

6   relationship to the accomplishment of an actual enumeration of the population."  *Wisconsin v.*

7   *City of New York*, 517 U.S. 1, 20 (1996).  Defendants barely defend the Replan under this

8   standard.  Opp. 31 n.11.  They claim the Replan passes constitutional muster because Defendants

9   "reasonably chose to divide what available time remains before the statutory deadline."  *Id.*  But

10  the question is not whether it was "reasonable" for Defendants to divide the time remaining

11  before the December 31 deadline between data collection and processing.  *Id.*  The question is

12  whether Defendants' sudden decision to drastically shorten both data collection and data

13  processing bears a reasonable relationship to the goal of completing an actual enumeration of the

14  population—and the existence of a *statutory* deadline does not allow Defendants to disregard

15  what the *Constitution* requires.  To be clear, Plaintiffs are not asking for "perfection."  *Id.*  That

16  no enumeration will be perfectly accurate does not permit the Bureau to make policy decisions

17  that actively undermine the "strong constitutional interest in accuracy."  *Utah*, 536 U.S. at 479.

18       Defendants' recent statements confirm that the Replan fails this test.  On August 3,

19  Bureau officials gave a presentation to Secretary Ross acknowledging that "all of the[] activities"

20  needed to meet the deadline under the Replan "represent abbreviated processes or eliminated

21  activities that *will* reduce accuracy."  Ex. 22 at 9 (emphasis added); *see also* Ex. 25.  The Bureau

22  presented options that included increased use of administrative records and fewer contact

23  attempts by enumerators, Ex. 22 at 8, even though use of administrative records or proxies is less

24  accurate than direct enumeration, and particularly so for immigrants and communities of color.

25  *See* Dkt. 36-2, Thompson Decl. ¶¶ 20-23; Hillygus Decl. ¶¶ 19-29; *see also* Dkt. 86 Attach. C

26  (conceding that Bureau adopted many of the shortcuts described in August 3 presentation (Ex.

27  22)); Ex. 32 at 2 n.1 (reflecting increased use of administrative records).  The Bureau also

28  recognized that a compressed period for data processing "creates risk for serious errors not being

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1    discovered in the data therefore significantly decreasing data quality."  Ex. 22 at 11.  Even Mr.

2    Fontenot's declaration acknowledges that the Replan's changes "increase the risk the Census

3    Bureau will not identify errors during post processing in time to fix them."  Fontenot Decl. ¶¶

4    89-90.  And Mr. Fontenot has now flatly abandoned any "inten[t]" to "resolve 99% of the cases

5    in each state," as the Bureau had in prior censuses.  *Compare* AR871, *with* AR885, *and* Fontenot

6    Decl. ¶ 65, *and* Ex. 23, ¶ 69.

7           And facts on the ground continue to hinder an accurate count.  In addition to the

8    pandemic, wildfires and hurricanes have devastated California and Texas, requiring mass

9    evacuations.  *See* Ex. 27; Ex. 28.  These are precisely the sorts of emergencies that top Bureau

10   officials only recently admitted the Replan could not accommodate due to the narrow window

11   for non-response follow up.  *See* Ex. 26 at 10, 13-15 (Maloney letter); Ex. 23, ¶ 82

12   (acknowledging these events create "significant risk[]" to completion of count by September 30).

13          Defendants do not address these facts.  Instead, they repeatedly cite a single conclusory

14   paragraph of Mr. Fontenot's declaration (Opp. 4, 13, 24, 25 n.7, 33 (citing Fontenot Decl. ¶ 91)),

15   and assert their intent to ensure "a complete and accurate count of all communities," Opp. 24

16   (quoting Huseny Decl. Ex. 2 at 1).  But that does not begin to confront the mountain of evidence

17   that the Replan *cannot* produce a complete and accurate census.  *See* PI Mot. 25; Ex. 31 (GAO

18   statement); *supra* Part II.C; *see also* Addendum (statements by government officials).

19          Those failures explain why Defendants' principal argument is that the "reasonable

20   relationship" standard does not apply at all.  Defendants claim that that standard applies only to

21   "data *already collected* by the Bureau."  Opp. 28-30.  For that, they rely on *New York*.  But *New*

22   *York* made clear that the reasonable relationship standard applies when the decision being

23   challenged is "about the population count itself."  *New York*, 139 S. Ct. at 2566.  Defendants

24   focus on the two examples discussed by the Court ("such as"), which both happened to involve

25   already-collected data.  Opp. 29.  But the distinction the Court drew was one of substance, not

26   time.  When a plaintiff challenges a decision that is not about headcount at all—such as what

27   demographic questions to collect—the Court explained that it makes no sense to use an "accurate

28   headcount" standard.  *New York*, 139 S. Ct. at 2566.  The challenge here, in contrast, is "about

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1   the population count itself," and the "reasonable relationship" standard applies.

2        That *Utah* affirmed the Bureau's decision to use imputation in very limited circumstances

3   without invoking the "reasonable relationship" standard does not suggest otherwise.  In fact,

4   *Utah* only highlights the Replan's serious constitutional flaws.  In *Utah*, there was no question

5   that imputation was a reasonable way for the Bureau to achieve an accurate count.  536 U.S. at

6   472.  But while the Court did not need to define "the precise methodological limits foreseen by

7   the Census Clause," it recognized that such limits exist.  *Id.* at 479.  The Court held that the

8   imputation used in the 2000 Census was constitutional because, *inter alia*, "all efforts ha[d] been

9   made to reach every household," imputation involved only "a tiny percent [0.4%] of the

10  population," the only alternative was "to make a far less accurate assessment of the population,"

11  and "manipulation of the method [wa]s highly unlikely."  *Id.* at 458, 479.  Here, by contrast, all

12  efforts to reach every household will not be made under the Replan; the Bureau will be forced to

13  rely on its existing imputation methods for a far more significant portion of the population than

14  under the 2018 Operational Plan and under conditions that will lead it to produce less accurate

15  results (Hillygus Decl. ¶¶ 19, 37-38); Defendants themselves knew at the time of the Replan that

16  their methods would generate a less accurate count (Ex. 22 at 9-11); there is a readily available

17  alternative (the COVID-19 Plan); and manipulation of the count is a serious concern.  *See supra*

18  Part II.C.  The Replan thus presents the unanswered question from *Utah*, and adopts a

19  methodology that bears no relationship to an "accurate" or "actual" count, thus violating the

20  Enumeration Clause.  *See* 536 U.S. at 479; *cf. id.* at 489 (Thomas, J., concurring in part and

21  dissenting in part) (any use of imputation violates Enumeration Clause).

22  **III.   CONCLUSION**

23       Plaintiffs respectfully request that the Court grant Plaintiffs' motion, stay the Replan, and

24  enjoin Defendants from implementing the Replan or otherwise shortening the timelines set out in

25  the COVID-19 Plan, pending final judgment.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

Dated: September 15, 2020

LATHAM & WATKINS LLP

By:   /s/ Melissa Arbus Sherry
    Melissa Arbus Sherry

Steven M. Bauer (Bar No. 135067)
steven.bauer@lw.com
Sadik Huseny (Bar No. 224659)
sadik.huseny@lw.com
Amit Makker (Bar No. 280747)
amit.makker@lw.com
Shannon D. Lankenau (Bar. No. 294263)
shannon.lankenau@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415.391.0600
Facsimile:  415.395.8095
Richard P. Bress (admitted *pro hac vice*)
rick.bress@lw.com
Melissa Arbus Sherry (admitted *pro hac vice*)
melissa.sherry@lw.com
Anne W. Robinson (admitted *pro hac vice*)
anne.robinson@lw.com
Tyce R. Walters (admitted *pro hac vice*)
tyce.walters@lw.com
Genevieve P. Hoffman (admitted *pro hac vice*)
genevieve.hoffman@lw.com
Gemma Donofrio (admitted *pro hac vice*)
gemma.donofrio@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:  202.637.2200
Facsimile:  202.637.2201

*Attorneys for Plaintiffs National Urban League;*
*League of Women Voters; Black Alliance for*
*Just Immigration; Harris County, Texas; King*
*County, Washington; City of San Jose,*
*California; Rodney Ellis; Adrian Garcia; and*
*the NAACP*[7]

Dated: September 15, 2020

By: /s/ Jon M. Greenbaum
Kristen Clarke (*pro hac vice* forthcoming)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (Bar No. 166733)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (admitted *pro hac vice*)

---

[7] The New Parties added in the First Amended Complaint are signatories to this reply but, consistent with the parties' joint stipulation, Plaintiffs do not and will not rely on them for allegations of harm or injury or for any other purpose.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

erosenberg@lawyerscommittee.org
Dorian L. Spence (*pro hac vice* forthcoming)
dspence@lawyerscommittee.org
Maryum Jordan (*pro hac vice* forthcoming)
mjordan@lawyerscommittee.org
Ajay Saini (admitted *pro hac vice*)
asaini@lawyerscommitee.org
Pooja Chaudhuri (Bar No. 314847)
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Wendy R. Weiser (admitted *pro hac vice*)
weiserw@brennan.law.nyu.edu
Thomas P. Wolf (admitted *pro hac vice*)
wolf@brennan.law.nyu.edu
Kelly M. Percival (admitted *pro hac vice*)
percivalk@brennan.law.nyu.edu
**BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone:  213.385.2977
Facsimile:  213.385.9089

*Attorneys for Plaintiff City of San Jose*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1

2       Doreen McPaul, Attorney General
        dmcpaul@nndoj.org
3       Jason Searle (*pro hac vice* forthcoming)
        jasearle@nndoj.org
4       **NAVAJO NATION DEPARTMENT OF
        JUSTICE**
5       P.O. Box 2010
        Window Rock, AZ 86515
6       Telephone: (928) 871-6345

7       *Attorneys for Navajo Nation*

8    Dated: September 15, 2020          By: /s/ Danielle Goldstein
                                        Michael N. Feuer (Bar No. 111529)
9                                       mike.feuer@lacity.org
                                        Kathleen Kenealy (Bar No. 212289)
10                                      kathleen.kenealy@lacity.org
                                        Danielle Goldstein (Bar No. 257486)
11                                      danielle.goldstein@lacity.org
                                        Michael Dundas (Bar No. 226930)
12                                      mike.dundas@lacity.org
                                        **CITY ATTORNEY FOR THE CITY OF
13                                      LOS ANGELES**
14                                      200 N. Main Street, 8th Floor
                                        Los Angeles, CA 90012
15                                      Telephone: 213.473.3231
                                        Facsimile: 213.978.8312
16

17                                      *Attorneys for Plaintiff City of Los Angeles*

18   Dated: September 15, 2020          By: /s/ Michael Mutalipassi
                                        Christopher A. Callihan (Bar No. 203010)
19                                      legalwebmail@ci.salinas.ca.us
                                        Michael Mutalipassi (Bar No. 274858)
20                                      michaelmu@ci.salinas.ca.us
                                        **CITY OF SALINAS**
21                                      200 Lincoln Avenue
                                        Salinas, CA 93901
22                                      Telephone: 831.758.7256
                                        Facsimile: 831.758.7257
23

24                                      *Attorneys for Plaintiff City of Salinas*

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

1    Dated: September 15, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: _/s/ Rafey S. Balabanian_____
Rafey S. Balabanian (Bar No. 315962)
rbalabanian@edelson.com
Lily E. Hough (Bar No. 315277)
lhough@edelson.com
**EDELSON P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435

Rebecca Hirsch (admitted *pro hac vice*)
rebecca.hirsch2@cityofchicago.org
**CORPORATION COUNSEL FOR THE
CITY OF CHICAGO**
Mark A. Flessner
Stephen J. Kane
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Telephone: (312) 744-8143
Facsimile: (312) 744-5185

*Attorneys for Plaintiff City of Chicago*

Dated: September 15, 2020

By: _/s/ Donald R. Pongrace_____
Donald R. Pongrace (admitted *pro hac vice*)
dpongrace@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
2001 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: 202-887-4288

Dario J. Frommer (Bar No. 161248)
dfrommer@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Phone:  213.254.1270
Fax: 310.229.1001

*Attorneys for Plaintiff Gila River Indian
Community*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

Dated: September 15, 2020

By: _/s/ David I. Holtzman_
David I. Holtzman (Bar No. 299287)
David.Holtzman@hklaw.com
**HOLLAND & KNIGHT LLP**
Daniel P. Kappes
Jacqueline N. Harvey
50 California Street, 28th Floor
San Francisco, CA 94111
Telephone: (415) 743-6970
Fax: (415) 743-6910

*Attorneys for Plaintiff County of Los Angeles*

## **ATTESTATION**

I, Melissa Arbus Sherry, am the ECF user whose user ID and password authorized the filing of this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

Dated: September 15, 2020

**LATHAM & WATKINS** LLP

By: _/s/ Melissa Arbus Sherry_
Melissa Arbus Sherry

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

CASE NO. 5:20-cv-05799-LHK
REPLY BR. ISO PLS.' MOT. FOR STAY & PRELIM. INJ.

# ADDENDUM

**ADDENDUM**

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| April 13, 2020 | President Donald Trump | "I don't know that you even have to ask [Congress].  This is called an act of God.  This is called a situation that has to be.  They have to give it.  I think 120 days isn't nearly enough." | PI Reply Ex. 30 at 3 |
| May 26, 2020 | Census Bureau, Timothy Olson, Associate Director for Field Operations | "[W]e have passed the point where we could even meet the current legislative requirement of December 31.  We can't do that anymore." | PI Reply Ex. 29 at 3 |
| July 8, 2020 | Census Bureau, Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs | "We are past the window of being able to get those counts by [the statutory deadlines] at this point." | PI Motion Ex. 11 at 3 & n.5 |
| August 3, 2020 | Census Bureau, Operational and Processing Options to Meet Statutory Date of December 31, 2020 for Apportionment | <ul><li>"All of these activities represent abbreviated processes or eliminated activities that will reduce accuracy."</li><li>Suggesting adjusted activities that will "increase[] risk of inaccuracy" and present "[r]isk of missing and therefore propagating errors."</li><li>"A compressed review period creates risk for serious errors not being discovered in the data -thereby significantly decreasing data quality."</li><li>"Additionally, serious errors discovered in the data may not be fixed - due to lack of time to research and understand the root cause or to re-run and re-review one or multiple state files."</li></ul> | PI Reply Ex. 22 (Slides 9-11) |
| August 27, 2020 | GAO Report, 2020 Census: Recent Decision to Compress Census Timeframes Poses Additional Risks to an Accurate Count | Decision to accelerate deadlines "increases the risks with NRFU system performance" and "with conducting the response processing operation," and "could . . . undermine the overall quality of the count." | PI Reply Ex. 21, at 1, 14, 16 |
| September 5, 2020 | Census Bureau, Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs | Changes to post processing operation "necessitated" by the Replan Schedule "increase the risk the Census Bureau will not identify errors during post processing in time to fix them." | Fontenot Decl. ¶¶ 89-90 |
| September 11, 2020 | Census Bureau, Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs | "We are . . . facing significant risks to complete all states by [September 30], due to factors beyond the Census Bureau's control, such as wildfires in the western part of our country, major storms, resurgence of COVID-19 restrictions and other similar disruptions." | PI Reply Ex. 23 ¶ 82 |