UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WILBUR L. ROSS, et al.,<br><br>　　　　Defendants. | Case No. 20-CV-05799-LHK<br><br>**ORDER TO PRODUCE INSPECTOR GENERAL DOCUMENT PRODUCTION** |

Before the Court are Defendants' agreement to provide *in camera* "all of the documents that the Census Bureau and the Department of Commerce provided to the Department of Commerce Office of Inspector General (OIG) in response to the OIG inquiry" into the Census Replan ("OIG production"), ECF No. 122, and Plaintiffs' request that the Court order *in camera* review of the OIG production, ECF No. 124. Having considered the parties' submissions; the parties' oral arguments at the September 14, 2020 case management conference and the September 15, 2020 hearing on allegations of potential non-compliance with the Court's Temporary Restraining Order; the relevant law; and the record in this case, the Court ORDERS the production of the OIG production, a privilege log, and a declaration as to the scope of the OIG production as set forth herein by Friday, September 18, 2020.

Before addressing the merits of the parties' submissions, the Court notes the procedural context of this highly expedited case. On August 18, 2020, Plaintiffs filed suit to challenge the Census Bureau's "Replan": the Bureau's advancement on August 3, 2020 of the 2020 Census

deadlines for self-responses, Non-Response Follow-Up ("NRFU") field operations, data processing, and deadlines for reporting counts to the President and the states. To allow Plaintiffs to effectively challenge the Replan, including the September 30, 2020 end of field operations, the parties stipulated to a briefing schedule and hearing date of September 17, 2020 on Plaintiffs' motion for stay and preliminary injunction (hereafter, "motion for preliminary injunction" or "PI Motion"). ECF No. 35. Pursuant to that schedule, Plaintiffs filed a motion for a preliminary injunction on August 25, 2020 based on their claims under the Enumeration Clause and the Administrative Procedure Act ("APA"). ECF No. 36.

On August 26, 2020, the Court held a case management conference. At that conference, the Court asked Defendants whether there was an administrative record for the purposes of APA review. Defendants repeatedly denied the existence of an administrative record. *E.g.*, ECF No. 65 at 9:22–24 (Q: "Is there an administrative record in this case?" A: "No, Your Honor. On behalf of the Defendants, no, there's not."), 10:17–18 ("[A]t this point there is no administrative record."). Rather, Defendants suggested that the only document that provided the contemporaneous reasons for the Replan was the Bureau's August 3, 2020 press release. *Id.* at 20:6–7 ("[A]t this point I'm not aware of any other documents, but I would propose that I check with my client . . . ."). Even so, the Court instructed Defendants that "[i]f there's an administrative record, it should be produced. [The Court] will need it to make a decision in this case." *Id.* at 10:13–14.

To assist the Court in determining by what date a ruling on Plaintiffs' motion for preliminary injunction must be issued, Defendants agreed to file a statement by September 2, 2020 as to when the winding down of field operations would begin relative to the September 30, 2020 deadline for ending data collection. Defendants filed the following statement:

> [T]he Census Bureau has already begun taking steps to conclude field operations. Those operations are scheduled to be wound-down throughout September by geographic regions based on response rates within those regions. As will be described in Defendants' forthcoming filing on Friday, September 4, 2020, any order by the Court to extend field operations, regardless of whether those operations in a particular geographic location are scheduled to be wound-down by September 30 or by a date before then, could not be implemented at this point without significant costs and burdens to the Census Bureau.

2
Case No. 20-CV-05799-LHK
ORDER TO PRODUCE INSPECTOR GENERAL DOCUMENT PRODUCTION

ECF No. 63. Based on Defendants' statement, Plaintiffs moved on September 3, 2020 for a temporary restraining order to preserve the status quo for 12 days until the September 17, 2020 preliminary injunction hearing. ECF No. 66. On September 4, 2020, Defendants opposed the motion. ECF No. 81. At the September 4, 2020 hearing on the motion, Defendants relied on a declaration that would be filed later that evening in opposition to Plaintiffs' motion for preliminary injunction. On September 5, 2020, Plaintiffs filed a reply in support of their motion for temporary restraining order. ECF No. 83.

At the September 4, 2020 hearing on the motion for a temporary restraining order, Defendants reiterated their position that no administrative record existed, ECF No. 82 at 33:13–15, but disclosed that there were documents contemporaneously explaining the Replan. Defendants stated:

> The Census Bureau generates documents as part of its analysis and as part of its decisions and as part of its deliberations. And there are documents that the Replan was not cooked up in a vacuum, it was part of the agency's ongoing deliberations. And so certainly there are going to be documents that reflect those documents.

*Id.* at 33:2–7. That said, Defendants said no administrative record technically existed because "the documents that fed into the operational plans and the operational decisions are internal documents that are subject to the deliberative process privilege." *Id.* at 32:14–16.

Only a few minutes later, however, Defendants retracted their assertion of deliberative process privilege. *Id.* at 36:15–17 ("[T]o be clear, we are not asserting the deliberative process privilege because there is no record and there's nothing to consider."). Defendants conceded that "[i]f there is final agency action that is reviewable and the APA applies, we would have an obligation to produce the administrative record." *Id.* at 35:24–36:1. Defendants instead urged the Court to rely solely on a declaration that Defendants would file that night with Defendants' opposition to the motion for preliminary injunction. *E.g.*, *id.* at 16:21–23 ("We will not be filing documents in addition to the declaration.").

On September 5, 2020, the Court issued a Temporary Restraining Order that would expire on September 17, 2020, the date of the preliminary injunction hearing. ECF No. 84.

3
Case No. 20-CV-05799-LHK
ORDER TO PRODUCE INSPECTOR GENERAL DOCUMENT PRODUCTION

A few days later on September 8, 2020, the Court held another case management conference. At that conference, Defendants again stated that "there is no administrative record in this case because there is no APA action." ECF No. 98 at 62:15–16. Even so, Defendants confirmed their statements from the TRO hearing that the Replan is "indeed codified." *Id.* at 21:7. Defendants stated that the Replan simply was "not necessarily codified in one particular document." *Id.* at 21:9–10. In response, Plaintiffs asked the Court to order Defendants to produce the administrative record. *E.g.*, id. at 43:16–17. The parties briefed the issue on September 8 and 9, 2020. ECF Nos. 88–89, 92.

Accordingly, at 2:46 a.m. Pacific Time on Thursday, September 10, 2020, the Court issued an Order to Produce Administrative Record, ECF No. 96, that ordered Defendants to produce the following on September 13, 2020 ("September 13 Production"):

> By September 13, 2020, Defendants Bureau Director Steven Dillingham and Secretary of Commerce Wilbur Ross and all of their direct reports/subordinates shall file the following, and a privilege log for any privileged documents: All documents comprising the Replan and its various components for conducting the 2020 Census in a shortened time period, including guidance, directives, and communications regarding same. The date range of the documents is April 13, 2020 to August 3, 2020. These custodians can limit their review to documents and materials directly or indirectly considered during these four months.

ECF No. 96 at 21. The Court also ordered Defendants to produce the following on September 16, 2020 ("September 16 Production"):

> By September 16, 2020, Associate Director Fontenot, his subordinates, and the individuals engaged with Fontenot to consider and prepare the Replan shall file the following, and a privilege log for any privileged documents: All documents and materials directly or indirectly considered when making the decision to replace the COVID-19 Plan with the Replan. The date range of the documents is April 13, 2020 to August 3, 2020. These custodians can limit their review to documents and materials directly or indirectly considered during these four months.

*Id.*

On September 13, 2020 at 11:45 a.m. Pacific Time, twelve hours before the production deadline, Defendants filed a notice stating that they had identified more than 8,800 documents as responsive for the September 13 Production, but that Defendants had reviewed only 2,484 of those

4
Case No. 20-CV-05799-LHK
ORDER TO PRODUCE INSPECTOR GENERAL DOCUMENT PRODUCTION

documents. ECF No. 104 at 2. Defendants stated that "[r]eview of the remaining documents remains ongoing" and that "[b]ecause review of the remaining documents remains ongoing, and due to the volume of documents involved, Defendants will be unable to produce or log any additional documents today." *Id*. Moreover, Defendants did not identify when they would complete the September 13 Production.

At the September 14, 2020 case management conference, Defendants stated that their next production would be on September 16, 2020, but that they "d[id] not anticipate" completing the September 13, 2020 Production on September 16, 2020. ECF No. 126 at 22:6. Moreover, Defendants stated that they are still collecting documents for the September 16 Production and did not know how many documents would be responsive. *See, e.g., id.* at 20:6–10. Overall, Defendants stated that they would be unable to comply with the Court's Order to Produce the Administrative Record because compliance would be "a physical impossibility." *Id.* at 41:16–17.

In response to Defendant's failure to comply with the Court's order on September 13, 2020, Plaintiffs filed the Department of Commerce Inspector General's August 13, 2020 Information Memorandum for Secretary of Commerce Wilbur Ross, which included the following Request for Information:

> To assist the OIG in its oversight responsibilities, please provide all documents or communications, including but not limited to email, instant messages, and text messages:
>
> 1. Discussing or referring in any manner to the decision to accelerate the 2020 Census schedule as described in the August 3, 2020 press release.
>
> 2. Detailing the persons involved, and their respective involvement, in the decision to accelerate the 2020 Census schedule.
>
> 3. Detailing the reasons for the decision to accelerate the 2020 Census schedule.
>
> Please provide all requested documents and communications by close of business Monday, August 17, 2020. You may also produce any additional documentation or information you deem relevant to this request for information.

ECF No. 111-2 at 5.

Given that Defendants already produced documents in response to the OIG, the Court thus asked Defendants on September 14, 2020: (1) if Defendants had "complied in whole or in part" with the OIG's Request for Information; and (2) if Defendants would agree to producing *in camera* "the documents Defendants [had] produced to the Inspector General that would constitute the administrative record or would be included in the administrative record." ECF No. 119 at 3. The Court further proposed that it "would treat all such documents as privileged and conduct an *in camera* review. If the Court determines that a document is not privileged, Defendants shall have an opportunity to object to the Court's determination. The Court would not consider in its determination of Plaintiff's motion for stay and preliminary injunction any privileged documents." *Id.*

Defendants' September 14, 2020 response represented that Defendants had "complied with the OIG request at issue." ECF No. 122 at 2. At the September 15, 2020 hearing, Defendants reiterated that Defendants had complied with the OIG request and completed their production to the OIG. However, later at the September 15, 2020 hearing, Defendants clarified that Defendants had not completed their production to the OIG and that Defendants had "substantially complied" with the OIG request at issue.

As to producing the OIG production in the instant case, Defendants' September 14, 2020 response, ECF No. 122 at 2, agreed that Defendants "would be willing to provide to the Court all of the documents that the Census Bureau and the Department of Commerce provided to the Department of Commerce Office of Inspector General . . . on the understanding that:"

1. The Court would treat all such documents as privileged and conduct an *in camera* review. If the Court determines that a document is not privileged, Defendants shall have a reasonable opportunity to object to the Court's determination;

2. The Court would not base its resolution of the preliminary injunction on privileged documents; and

3. The documents that the Court finds to be non-privileged, along with the nonprivileged documents that Defendants have already produced, shall be deemed by the Court to constitute the entire record in this matter. Defendants will not be required to conduct further document searches, reviews, or productions, or respond to any discovery, to

6
Case No. 20-CV-05799-LHK
ORDER TO PRODUCE INSPECTOR GENERAL DOCUMENT PRODUCTION

develop a record in this case.

*Id.*

On September 15, 2020, Plaintiffs replied with three major points. First, Plaintiffs stated that "Defendants must ultimately produce the complete AR [administrative record]." ECF No. 129 at 2. Second, to assess to what extent the OIG production comprises a complete record, Plaintiffs asked the Court to order Defendants "to file a declaration from a knowledgeable source attesting to the following:"

> (1) whether the production included materials from the Secretary and his subordinates, in addition to the Census Bureau; (2) what time frame was searched for these documents; (3) what custodians were searched; (4) whether the Department complied fully with the scope of the production request; (5) the exact date on which the documents were produced to OIG; (6) whether any portion of the production to OIG is still outstanding; and (7) how many documents were produced.

*Id.* Third, Plaintiffs asked that within two days after the production and review of the OIG production, the parties would have the opportunity to file simultaneous briefs addressing the OIG production.

At the September 15, 2020 hearing, Defendants represented that the OIG production comprised about 1,800 documents totaling about 15,000 pages. Defendants did not know from which custodians documents were collected to produce to the OIG. Defendants did not know whether the OIG production included materials from the Commerce Secretary and his subordinates. Defendants did not know for what time frame documents had been searched and collected for the OIG production. Defendants stated that the documents had been produced over a course of weeks but did not know on which dates the documents were produced to the OIG. Defendants did not know what document remained outstanding to be produced to the OIG.

Defendants further stated that they may assert four different privileges over the OIG production, including deliberative process, attorney client, attorney work product, and White House privileges. Even though Defendants did not have a confirmed method of producing the documents to the Court, Defendants continued to oppose the Court's proposed extension of the Temporary Restraining Order, which would expire on September 17, 2020.

During the September 15, 2020 hearing, the Court stated that Defendants were mistaken that producing the OIG production in the instant case would relieve Defendants of the duty to comply with the Court's Order to Produce the Administrative Record. Defendants could not negotiate their way out of compliance with the Court's Order. Indeed, failure to produce or complete an administrative record can be the basis for sanctions. *See Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006) (upholding sanctions despite the lack of bad faith because "the district court twice ordered [Puerto Rico and its officials] to produce the record by a certain date and that they failed both times to come into full compliance with the court's order"); *New York v. Dep't of Commerce*, No. 18-CV-2921, 2020 WL 2564933, at *7, 9 (S.D.N.Y. May 21, 2020) (sanctioning Defendants for failing to produce about 11 percent of documents in the citizenship question litigation); *see also Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (upholding discovery sanctions and holding that a "district court's finding that one of its orders was violated 'is entitled to considerable weight'" (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990))).

Here, Defendants failed to produce about 72% of the documents that were due on September 13, 2020 and represented that the September 13 production would not be completed even by September 16, 2020. Defendants also indicated that they would not complete the September 16, 2020 production on September 16, 2020. Defendants' failure to comply with the Court's Order is unacceptable and is not excused by Defendants' production of the OIG production. That said, Plaintiffs do not ask the Court to sanction Defendants at this time. ECF No. 124 at 4.

Despite Defendants' lack of knowledge about the scope of the OIG production, Plaintiffs at the September 15, 2020 hearing still supported the speedy production of the OIG production in the instant case to enable the Court to rule on the motion for preliminary injunction as quickly as possible.

Ultimately, the Court held that Defendants should review and produce the OIG production with a privilege log by September 18, 2020. To allow the parties to focus on the OIG production

and the final briefing and hearing on Plaintiffs' motion for preliminary injunction, the Court stayed the Court's Order to Produce Administrative Record until the case management conference after the Court's ruling on the motion for preliminary injunction. Defendants stated that they would comply with the Court's ruling on the OIG production.

The Court notes that if Defendants' assertion of privilege for the OIG production is overbroad, *in camera* review would be justified. The general rule is that "*in camera* review is a highly appropriate and useful means of dealing with claims of governmental privilege," *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 405–06 (1976), and the government has the burden to justify assertions of privilege, *e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 616, 619 (D.C. Cir. 1997). In fact, Defendants concede with admirable candor that they have not found a single case holding that *in camera* review is improper under the APA. ECF No. 126 at 46:5–8. The case law often holds otherwise. *See, e.g.*, *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1236, 1241–42 (D.C. Cir. 1975) (reviewing intra-agency memoranda *in camera* in an APA case); *Friends of Animals, Inc. v. Jewell*, 185 F. Supp. 3d 60, 66–67 (D.D.C. 2016) (ordering *in camera* review of attorney-client privileged emails, to ensure completion of the administrative record, despite assertion that agency counsel was included on the emails and that the emails concerned legal reviews); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 2007 WL 3049869, at *6 (N.D. Cal. Oct. 18, 2007) (ordering *in camera* review in APA case despite declaration of agency official "formally asserting the [attorney-client and deliberative process] privileges and explaining the bases therefor"); *cf. In re United States*, 138 S. Ct. 443, 445 (2017) (per curiam) (holding that "under the specific facts," the district court should have reached threshold arguments, considered narrower amendments to the record, and provided the Government the opportunity to argue privilege).

Accordingly, the Court orders Defendants to file the following, and a privilege log for any privileged documents by Friday, September 18, 2020:

All documents Defendants produced to the Inspector General that would constitute the administrative record or would be included in the administrative record. The documents shall be in

machine-readable ("OCRed") color format to the extent that is feasible. This filing shall include an index of all documents with titles, dates, persons involved, and Bates ranges.

Also by September 18, 2020, Defendants shall file a declaration that addresses the following issues regarding Defendants' production to the OIG:

- 1) whether the production included materials from the Secretary and his subordinates, in addition to the Census Bureau;
- 2) what time frame was searched for these documents;
- 3) what custodians were searched;
- 4) whether the Department complied fully with the scope of the OIG Request for Information;
- 5) the exact date on which the documents were produced to the OIG;
- 6) what documents remain outstanding to produce to the OIG; and
- 7) when outstanding documents, if any, will be produced to the OIG and the Court.

The Court stays its September 10, 2020 Order to Produce the Administrative Record, ECF No. 96, until the case management conference after the Court rules on Plaintiffs' motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: September 15, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge