UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR L. ROSS, et al., <br><br> Defendants. | Case No. 20-CV-05799-LHK <br><br> **ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION OF THE ADMINISTRATIVE RECORD** |

Plaintiffs National Urban League; League of Women Voters; Black Alliance for Just Immigration; Harris County, Texas; King County, Washington; City of Los Angeles, California; City of Salinas, California; City of San Jose, California; Rodney Ellis; Adrian Garcia; National Association for the Advancement of Colored People; City of Chicago, Illinois; County of Los Angeles, California; Navajo Nation; and Gila River Indian Community (collectively, "Plaintiffs") sue Defendants Commerce Secretary Wilbur L. Ross, Jr.; the U.S. Department of Commerce; the Director of the U.S. Census Bureau Steven Dillingham, and the U.S. Census Bureau ("Bureau") (collectively, "Defendants") for violations of the Enumeration Clause and Administrative Procedure Act ("APA").

1

United States District Court
Northern District of California

1    Plaintiffs seek to preliminarily enjoin Defendants from implementing Defendants' August

2 3, 2020 Replan. The Replan shortens census data collection and processing timelines from the

3 eight months set forth in the Defendants' April 13, 2020 COVID-19 Plan to four months. The first

4 approaching Replan deadline is the September 30, 2020 deadline for the end of data collection,

5 which consists of both self-responses to Census questionnaires and Non-Response Follow Up

6 ("NRFU") field operations. Under the COVID-19 Plan, data collection would end on October 31,

7 2020. Plaintiffs claim that the Replan's shortened timelines will unlawfully harm the accuracy of

8 crucial census data.

9    On September 5, 2020, the Court granted Plaintiffs' motion for a Temporary Restraining

10 Order ("TRO") in order to preserve the status quo until the September 17, 2020 hearing on

11 Plaintiffs' motion for stay and preliminary injunction ("preliminary injunction motion"). ECF

12 No. 84 at 2.

13    On September 10, 2020, the Court ordered Defendants to produce the administrative

14 record on September 13 and 16, 2020. ECF No. 96. Defendants have failed to comply with that

15 order. As of today, September 17, 2020, Defendants have failed to produce the administrative

16 record. Because of Defendants' failure to comply with the Court's Order to Produce the

17 Administrative Record and the need for the Court to rule on Plaintiffs' preliminary injunction

18 motion quickly, the parties and the Court agreed that on September 18, 2020 Defendants shall

19 produce the documents that Defendants produced to the United States Department of Commerce

20 Office of the Inspector General ("OIG production") regarding the Defendants' decision to adopt

21 the Replan. ECF No. 132. Defendants have represented that the OIG production includes about

22 1,800 documents totaling about 15,000 pages. ECF No. 141 at 26:15–16. Defendants have

23 represented that they may assert the deliberative process, attorney-client, attorney work product,

24 and White House privileges as to the OIG production. *Id*. at 35:25–36:18.

25    Accordingly, Defendants' September 18, 2020 OIG production has necessitated a

26 continuance of the preliminary injunction hearing from September 17, 2020 to September 22,

27

28
Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

2020 to allow for the following:

- September 18, 2020: Defendants to produce the OIG production and a privilege log
- September 19, 2020: Plaintiffs to file any objections to Defendants' assertions of privilege
- September 20, 2020: Defendants to file responses to Plaintiffs' privilege objections and the parties to file supplemental briefs on the motion for preliminary injunction addressing the OIG production
- September 21, 2020: United States Magistrate Judges to rule on the parties' privilege disputes
- September 22, 2020: Hearing on motion for preliminary injunction

ECF No. 140. The Court understands the urgency of issuing a ruling on the motion for preliminary injunction. To that end, the Court has issued rulings within 24 hours and 48 hours throughout this case thus far. The Court will issue its reasoned decision on the motion for preliminary injunction as soon as possible after the September 22, 2020 hearing. However, because of the complexity of the issues and the fact that 1,800 documents may be produced three days before the hearing, the Court finds good cause to extend the TRO until the Court issues its decision on the preliminary injunction motion or through September 24, 2020, whichever is sooner.

## I.    PROCEDURAL HISTORY

The procedural history of this case is necessary to understand why there is good cause to extend the TRO. The Court thus recounts the events leading up to the TRO, the issuance of the TRO, and Defendants' subsequent failure to produce the administrative record. In brief, the timeline below is as follows: (1) at first, Defendants denied the existence of an administrative record; (2) Defendants then disclosed that there are documents that were considered by agency decisionmakers at the time of the decision to adopt the Replan and that field operations are already winding down; (3) the Court issued a TRO that expires on September 17, 2020; (4) the Court ordered production of the administrative record; and (5) despite that order, Defendants failed to

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

produce the administrative record. The Court details each event in turn.

**A. At First, Defendants Repeatedly Denied the Existence of an Administrative Record.**

On August 18, 2020, Plaintiffs filed suit to challenge the Census Bureau's August 3, 2020 Replan which advanced the 2020 Census deadlines for self-responses to Census questionnaires, Non-Response Follow-Up ("NRFU") field operations, data processing, and deadlines for reporting Census counts to the President and the states.

To allow Plaintiffs to effectively challenge the Replan, including the September 30, 2020 end of data collection, the parties stipulated to a briefing schedule and hearing date of September 17, 2020 on Plaintiffs' motion for stay and preliminary injunction (hereafter, "motion for preliminary injunction"). ECF No. 35. Pursuant to that schedule, Plaintiffs filed a motion for a preliminary injunction on August 25, 2020 based on their claims under the Enumeration Clause and the APA. ECF No. 36.

On August 26, 2020, the Court held a case management conference. At that conference, the Court asked Defendants whether there was an administrative record for the purposes of APA review. Defendants repeatedly denied the existence of an administrative record. *E.g.*, ECF No. 65 at 9:22–24 (Q: "Is there an administrative record in this case?" A: "No, Your Honor. On behalf of the Defendants, no, there's not."), 10:17–18 ("[A]t this point there is no administrative record."). Rather, Defendants suggested that the only document that provided the contemporaneous reasons for the Replan was the Bureau's August 3, 2020 press release. *Id.* at 20:6–7 ("[A]t this point I'm not aware of any other documents, but I would propose that I check with my client . . . ."). Even so, the Court instructed Defendants that "[i]f there's an administrative record, it should be produced. [The Court] will need it to make a decision in this case." *Id.* at 10:13–14.

**B. Defendants Disclosed That There Are Documents Considered by Agency Decisionmakers at the Time the Replan Was Adopted and that Field Operations are Already Concluding.**

To assist the Court in determining by what date a ruling on Plaintiffs' motion for preliminary injunction must be issued, Defendants agreed to file a statement by September 2, 2020

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

United States District Court
Northern District of California

as to when the winding down of field operations would begin relative to the September 30, 2020 deadline for ending data collection. Defendants filed the following statement:

> [T]he Census Bureau has already begun taking steps to conclude field operations. Those operations are scheduled to be wound-down throughout September by geographic regions based on response rates within those regions. As will be described in Defendants' forthcoming filing on Friday, September 4, 2020, any order by the Court to extend field operations, regardless of whether those operations in a particular geographic location are scheduled to be wound-down by September 30 or by a date before then, could not be implemented at this point without significant costs and burdens to the Census Bureau.

ECF No. 63. Based on Defendants' statement, Plaintiffs moved on September 3, 2020 for a TRO to preserve the status quo for 12 days until the September 17, 2020 preliminary injunction hearing. ECF No. 66. On September 4, 2020, Defendants opposed the motion, ECF No. 74, and the Court held a hearing on the motion. During the hearing, Defendants relied upon a declaration that would be filed later that evening in opposition to Plaintiffs' motion for preliminary injunction. ECF No. 81-1. On September 5, 2020, Plaintiffs filed a reply. ECF No. 83.

At the September 4, 2020 hearing on the motion for a TRO, Defendants reiterated their position that no administrative record existed, ECF No. 82 at 33:13–15, but disclosed that there were documents considered by agency decisionmakers at the time the Replan was adopted. Defendants stated:

> The Census Bureau generates documents as part of its analysis and as part of its decisions and as part of its deliberations. And there are documents that the Replan was not cooked up in a vacuum, it was part of the agency's ongoing deliberations. And so certainly there are going to be documents that reflect those documents [sic].

*Id.* at 33:2–7. That said, Defendants said no administrative record technically existed because "the documents that fed into the operational plans and the operational decisions are internal documents that are subject to the deliberative process privilege." *Id.* at 32:14–16.

Only a few minutes later, however, Defendants retracted their assertion of deliberative process privilege. *Id.* at 36:15–:17 ("[T]o be clear, we are not asserting the deliberative process privilege because there is no record and there's nothing to consider."). Defendants conceded that "[i]f there is final agency action that is reviewable and the APA applies, we would have an

5

obligation to produce the administrative record." *Id.* at 35:24–36:1. However, Defendants urged the Court to rely solely on the declaration that Defendants would file that evening with Defendants' opposition to the motion for preliminary injunction. *E.g.*, *id.* at 16:21–23 ("We will not be filing documents in addition to the declaration."). Indeed, when Defendants filed their opposition that night, Defendants' only evidence was the declaration of Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs at the U.S. Census Bureau. ECF No. 81.

### C. The Court Issued a TRO That Expires on the September 17 Hearing Date.

On September 5, 2020, the Court issued a TRO after full briefing and a hearing on the motion. ECF No. 84. The Court made the requisite TRO findings. Specifically, the Court found that the balance of the hardships tipped sharply in Plaintiffs' favor; that Plaintiffs presented serious questions going to the merits at least as to Plaintiffs' claims under the APA; that Plaintiffs would likely suffer irreparable harm without a TRO; and that a TRO would further the public interest. ECF No. 84.

The Court also expressly recognized that TROs "serv[e] the[] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.* at 2 (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)). Thus, the Court ordered that the TRO expire after the "September 17, 2020 hearing on Plaintiffs' PI motion." *Id.* at 7. The Court incorporates its TRO, ECF No. 84, herein by reference.

### D. The Court Ordered Production of the Administrative Record.

On September 8, 2020, three days after issuing the TRO, the Court held a case management conference and inquired into Defendants' earlier statements about documents considered by the agency decisionmakers when the Replan was adopted. Defendants again stated that "there is no administrative record in this case because there is no APA action." ECF No. 98 at 62:15–16.

Even so, Defendants confirmed their statements from the TRO hearing that the Replan is

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

1    "indeed codified." *Id.* at 21:7. The Replan simply was "not necessarily codified in one particular

2    document." *Id.* at 21:9–10. Accordingly, Plaintiffs asked the Court to order Defendants to produce

3    the administrative record. *E.g.*, *id.* at 43:16–17. The parties briefed the issue on September 8 and

4    9, 2020. *See* ECF Nos. 88–89, 92.

5         On September 10, 2020 at 2:46 a.m., the Court issued its Order to Produce the

6    Administrative Record. ECF No. 96. In response to Defendants' claim that the Court needed to

7    address threshold arguments before ordering production, the Court addressed those arguments to

8    avoid any doubt about its authority to compel production. Specifically, the Court addressed

9    whether the Replan presented a political question, whether Plaintiffs have standing to challenge

10   the Replan, whether the Replan constitutes final agency action, and whether the Replan is not

11   committed to agency discretion by law. *Id.* at 9. The Court ruled in Plaintiffs' favor on each

12   threshold issue. Thus, the Court concluded that the instant case was reviewable. The Court noted,

13   though, that its conclusions in this APA case were necessarily "provisional" and "subject to

14   change after production of Defendants' administrative record." *Id.* at 8; *see id.* at 9–17.

15        The Court then explained why the Court could not rely solely on Associate Director

16   Fontenot's declaration, as Defendants so insisted. *Id.* at 19–21. In short, for APA claims, "the

17   focal point for judicial review should be the administrative record." *Id.* at 20 (quoting *Camp v.*

18   *Pitts*, 411 U.S. 138, 142 (1973)). Litigation affidavits such as Associate Director Fontenot's are

19   thus impermissible "post hoc rationalizations" that are "manifestly inappropriate" bases for the

20   Court's review. *Id.* (first quoting *Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1972); then

21   quoting *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990) (R.

22   Ginsburg, Thomas, Sentelle, JJ.)).

23        For all those reasons, the Court concluded that Defendants must produce the administrative

24   record. However, because of the competing need to resolve the motion for preliminary injunction

25   as quickly as possible, the Court split the production into three stages. The first two stages (the

26   "September 13 Production" and the "September 16 Production") would be completed before the

27

28   Case No. 20-CV-05799-LHK

7

ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

September 17, 2020 preliminary injunction hearing and would be limited to documents with certain subject matters, date range, and custodians. Specifically, the Court's order for the first two stages of production was:

> By September 13, 2020, Defendants Bureau Director Steven Dillingham and Secretary of Commerce Wilbur Ross and all of their direct reports/subordinates shall file the following, and a privilege log for any privileged documents: All documents comprising the Replan and its various components for conducting the 2020 Census in a shortened time period, including guidance, directives, and communications regarding same. The date range of the documents is April 13, 2020 to August 3, 2020. These custodians can limit their review to documents and materials directly or indirectly considered during these four months.

> By September 16, 2020, Associate Director Fontenot, his subordinates, and the individuals engaged with Fontenot to consider and prepare the Replan shall file the following, and a privilege log for any privileged documents: All documents and materials directly or indirectly considered when making the decision to replace the COVID-19 Plan with the Replan. The date range of the documents is April 13, 2020 to August 3, 2020. These custodians can limit their review to documents and materials directly or indirectly considered during these four months.

*Id.* at 21. As for the final stage of production, the Court specified it would consult with the parties on a schedule after the preliminary injunction ruling. *Id.* at 22. Moreover, given these production deadlines, the Court continued the deadline for Plaintiffs' reply in support of their preliminary injunction motion from September 10 to September 15, 2020. The Court incorporates the Order to Produce the Administrative Record, ECF No. 96, herein by reference.

### E. Despite the Court's Order, Defendants Failed to Produce the Administrative Record.

On September 13, 2020 at 11:45 a.m. Pacific Time, twelve hours before the production deadline, Defendants filed a notice stating that they had identified more than 8,800 documents as responsive for the September 13 Production, but that Defendants had reviewed only 2,484 of those documents. ECF No. 104 at 2. Defendants stated that "[r]eview of the remaining documents remains ongoing" and that "[b]ecause review of the remaining documents remains ongoing, and due to the volume of documents involved, Defendants will be unable to produce or log any additional documents today." *Id.* Moreover, Defendants did not identify when they would

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION OF THE ADMINISTRATIVE RECORD

complete the September 13 Production.

At the September 14, 2020 case management conference, Defendants stated that their next production would be on September 16, 2020, but that they "d[id] not anticipate" completing the September 13, 2020 Production on September 16, 2020. ECF No. 126 at 22:6. Moreover, Defendants stated that they were still collecting documents for the September 16 Production and did not know how many documents would be responsive. *See, e.g.*, *id.* at 20:6–10. Overall, Defendants stated that they would be unable to comply with the Court's Order to Produce the Administrative Record because compliance would be "a physical impossibility." *Id.* at 41:16–17.

In response to Defendants' failure to comply with the Court's order on September 13, 2020, Plaintiffs filed the Department of Commerce Inspector General's August 13, 2020 Information Memorandum for Secretary of Commerce Wilbur Ross, which included the following Request for Information:

> To assist the OIG ["Office of Inspector General"] in its oversight responsibilities, please provide all documents or communications, including but not limited to email, instant messages, and text messages:
>
> > 1. Discussing or referring in any manner to the decision to accelerate the 2020 Census schedule as described in the August 3, 2020 press release.
> >
> > 2. Detailing the persons involved, and their respective involvement, in the decision to accelerate the 2020 Census schedule.
> >
> > 3. Detailing the reasons for the decision to accelerate the 2020 Census schedule.
>
> Please provide all requested documents and communications by close of business Monday, August 17, 2020. You may also produce any additional documentation or information you deem relevant to this request for information.

ECF No. 111-2 at 5. Plaintiffs also noted that Associate Director Fontenot had averred that the Census Bureau had produced many documents to the OIG. ECF No. 111 at 5 (citing Fontenot Decl., ECF No. 81-1 at 36 ¶ 103). Associate Director Fontenot did not disclose the OIG's Request for Information about the Replan, but rather spoke in more general terms: "We produce a massive amount of documents and other information to the Office of the Inspector General and the General

9

Accounting Office every week, and these organizations interview Census Bureau staff on almost a daily basis." ECF No. 81-1 at 36 ¶ 103. In other words, Defendants had neither disclosed to the Court the OIG's Request for Information nor produced the OIG documents in response to the Court's Order to Produce the Administrative Record. *See* ECF No. 111-2 at 5.

Given that Defendants had already produced documents to the OIG—and that Defendants would fail to produce even a partial administrative record before the September 17, 2020 preliminary injunction hearing—the Court asked Defendants two questions: (1) if Defendants had "complied in whole or in part" with the OIG's Request for Information; and (2) if Defendants would agree to producing *in camera* "the documents Defendants [had] produced to the Inspector General that would constitute the administrative record or would be included in the administrative record." ECF No. 119 at 3. The Court further proposed that it "would treat all such documents as privileged and conduct an *in camera* review. If the Court determines that a document is not privileged, Defendants shall have an opportunity to object to the Court's determination. The Court would not consider in its determination of Plaintiffs' motion for stay and preliminary injunction any privileged documents." *Id.*

Defendants' September 14, 2020 response represented that Defendants had "complied with the OIG request at issue." ECF No. 122 at 2. As to producing the OIG production in the instant case, Defendants' September 14, 2020 response, ECF No. 122 at 2, agreed that Defendants "would be willing to provide to the Court all of the documents that the Census Bureau and the Department of Commerce provided to the Department of Commerce Office of Inspector General . . . on the understanding that:"

1. The Court would treat all such documents as privileged and conduct an *in camera* review. If the Court determines that a document is not privileged, Defendants shall have a reasonable opportunity to object to the Court's determination;

2. The Court would not base its resolution of the preliminary injunction on privileged documents; and

3. The documents that the Court finds to be non-privileged, along with the nonprivileged documents that Defendants have already produced, shall be deemed by the Court to

10

United States District Court
Northern District of California

1

2

> constitute the entire record in this matter. Defendants will not be required to conduct
> further document searches, reviews, or productions, or respond to any discovery, to
> develop a record in this case.

3  *Id.*

4          On September 15, 2020, Plaintiffs replied with three major points. First, Plaintiffs stated

5  that "Defendants must ultimately produce the complete AR [administrative record]." ECF No. 129

6  at 2. Second, to assess to what extent the OIG production comprises a complete record, Plaintiffs

7  asked the Court to order Defendants "to file a declaration from a knowledgeable source attesting

8  to the following:"

9          (1) whether the production included materials from the Secretary and his subordinates, in
           addition to the Census Bureau; (2) what time frame was searched for these documents; (3)
10         what custodians were searched; (4) whether the Department complied fully with the scope
           of the production request; (5) the exact date on which the documents were produced to
11         OIG; (6) whether any portion of the production to OIG is still outstanding; and (7) how
           many documents were produced.
12

13  *Id.* Third, Plaintiffs asked that within two days after the production and review of the OIG

14  production, the parties would have the opportunity to file simultaneous briefs addressing the OIG

15  production.

16          The Court inquired further into producing the OIG documents at the September 15, 2020

17  hearing on allegations of Defendants' potential non-compliance with the TRO. At that hearing,

18  Defendants at first reiterated that they were "very confident" that they had complied with the OIG

19  request and that they had completed their production to the OIG. ECF No. 141 at 32:9. However,

20  Defendants later clarified that Defendants had not completed their production to the OIG and that

21  Defendants' production was "substantially complete." *Id.* at 35:10. "One document" remained

22  "outstanding that is still undergoing review." *Id.* at 34:11–14. Moreover, Defendants did not know

23  the OIG production's custodians (such as whether the Secretary Ross's office was included),

24  timeframe searched, or dates of production. *See, e.g.*, *id.* at 29:14–15 (Defendants: "I, off the top

25  of my head, do not know all the custodians whose files were pulled for the OIG production."); *id.*

26  at 30:6–7 (The Court: "What timeframe was searched for these documents?" Defendants: "So I

27

28
Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

also don't have the precise timeframe, Your Honor."); *id.* at 31:4–9 (The Court: "So when were they produced?" Defendants: "Over the course of weeks, Your Honor." The Court: "I know. From what date to what date? From when to when?" Defendants: "I don't have the specifics, Your Honor.").

Defendants did, however, represent that the OIG production comprised of about 1,800 documents totaling about 15,000 pages. *Id.* at 26:15–16. Defendants further stated that they "would anticipate" asserting four different privileges over the OIG production, including deliberative process, attorney-client, attorney work product, and White House privileges. *Id.* at 35:25–36:18. In addition, even though Defendants did not have a confirmed method of producing the documents to the Court, Defendants continued to oppose the Court's proposed extension of the TRO. *See id.* at 51:13–25. Without an extension, the TRO would expire on September 17, 2020.

Given the exigency, both parties agreed that "in the short term, focusing on the OIG documents for purposes of getting to a PI ruling and whatever appeal follows makes sense." *Id.* at 72:19–21; *see id.* at 33:14–22, 41:6–9 (Defendants' agreement). The Court thus ordered Defendants to produce the OIG documents that would constitute the administrative record or would be included in the administrative record, stayed the Order to Produce the Administrative Record until a case management conference after the impending preliminary injunction decision, and continued the preliminary injunction hearing to Tuesday, September 22, 2020. *Id.* at 71–77; *see* ECF No. 132. As the Court found, both the parties and the Court were "running out of time." ECF No. 141 at 38:6, 71:14. The Court's Order to Produce Inspector General Document Production, ECF No. 132, is incorporated herein by reference.

## II.     DISCUSSION

Plaintiffs argue that "the record demonstrates good cause to extend the TRO for two independent reasons." ECF No. 111 at 4. "*First*, good cause exists because Defendants have not complied with the Court's order requiring production of the [administrative record] in this case." *Id.* "*Second*, good cause exists if the Court needs 'more time' to 'fully . . . consider the parties'

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

1    arguments and motions.'" *Id.* (quoting *Costa v. Bazron*, 2020 WL 2410502, at *2 (D.D.C. May 11,

2    2020)). The Court agrees.

3        **A. Defendants' Violation of the Court's Order to Produce the Administrative Record
         Has Necessitated Delay of the Preliminary Injunction Hearing and Extension of**

4        **the TRO.**

5        As detailed above, Defendants failed to complete even the first stage of ordered production

6    of the administrative record. Nor did Defendants expect to complete the first production by the

7    September 17, 2020 preliminary injunction hearing date and TRO expiration date. Specifically, on

8    September 13, 2020, Defendants produced only a quarter of the September 13, 2020 Production

9    with more than 12 hours to spare and refused to produce more that day. *See* ECF No. 104 at 2

10   (stating that Defendants had reviewed only 2,484 of more than 8,800 documents, but that

11   "Defendants will be unable to produce or log any additional documents today.") Then, at the

12   September 14, 2020 case management conference, Defendants stated that they "d[id] not

13   anticipate" completing the September 13, 2020 Production on September 16, 2020. ECF No. 126

14   at 22:6.

15       As for the September 16 Production, Defendants stated that they were still collecting

16   documents for it and did not know how many documents would be responsive. *See, e.g.*, *id.* at

17   20:6–10. Overall, Defendants stated that they would be unable to comply with the Court's Order to

18   Produce the Administrative Record because compliance would be "a physical impossibility." *Id.* at

19   41:16–17. Much of this asserted "physical impossibility" the Court suspects is of Defendants' own

20   making. The instant case has been, from its very start on August 18, 2020, a case arising under the

21   APA. In an APA case, it is settled that "review is to be based on the full administrative record that

22   was before the Secretary at the time he made his decision." *Overton Park, Inc. v. Volpe*, 401 U.S.

23   402, 420 (1972); *accord, e.g.*, *Camp*, 411 U.S. at 142 (explaining that "[t]he focal point for

24   judicial review [of APA claims] should be the administrative record"); *Creative Non-Violence v.*

25   *Lujan*, 908 F.2d at 998 (holding that relying on litigation affidavits rather than the administrative

26   record is "manifestly inappropriate"). Defendants' repeated denial of the existence of an

27

28   Case No. 20-CV-05799-LHK

ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

1  administrative record and failure to make any attempt to collect the administrative record over the

2  past month have necessitated delay of the preliminary injunction hearing and extension of the

3  TRO.

4  **B. The Need for Partial Production of the Administrative Record and to Preserve the Status Quo Constitutes "Good Cause" for an Extension of the TRO.**

5  In any event, to expeditiously resolve Plaintiffs' motion for preliminary injunction, the

6  Court has ordered Defendants to produce a stipulated partial administrative record that Defendants

7  already produced (or is about to produce) to the United States Department of Commerce Office of

8  Inspector General. *See* 5 U.S.C. § 706 (providing that "the court shall review the whole record or

9  those parts of it cited by a party"); ECF No. 141 at 33:14–22 (Defendants' agreement), 72:19–21

10  (Plaintiffs' agreement); *cf. Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir.

11  1984) (holding that "in the circumstances of this case"—an appeal resolved more than a year after

12  a district court decision that was neither expedited nor interlocutory—the district court should

13  have considered the "whole record").[1] Defendants must either produce or add to their privilege log

14  about 1,800 documents. Defendants have represented that they may assert deliberative due

15  process, attorney-client, attorney work product, and White House privileges as to these documents.

16  Plaintiffs must review the production and file any privilege objections. Defendants must respond

17  to the objections. United States Magistrate Judges must resolve the parties' privilege disputes. The

---

[1] As the Court has repeatedly stated and the parties understand, the Court may need to review the "whole record" after deciding the motion for preliminary injunction. 5 U.S.C. § 705. "The 'whole' administrative record [] consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original) (quoting *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981)); *see also IMS, P.C. v. Alvarez*, 129 F.3d 618, 623–624 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."); 33 Wright & Miller's Federal Practice & Procedure: Judicial Review § 8391 & n.8 (2d ed. Apr. 2020 update) ("[T]he 'record' for informal proceedings [i]s, in essence, including all the relevant material that the decision-maker considered before taking action.").

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
OF THE ADMINISTRATIVE RECORD

*United States District Court*
*Northern District of California*

1    parties must file supplemental briefs on the motion for preliminary injunction addressing the OIG

2    production. The Court must hold a hearing and issue a reasoned decision. Clearly, all this will not

3    happen when the TRO expires on September 17, 2020, the day before Defendants produce the

4    OIG production on September 18, 2020.

5          If the TRO expires, Plaintiffs would face hardships that tip sharply in their favor and would

6    likely suffer irreparable harm. Moreover, Plaintiffs have shown serious questions going to the

7    merits and that a TRO is in the public interest. *See* ECF No. 84. All told, the same conditions that

8    warranted a TRO on September 5, 2020 still hold true today. *See* 11A Wright & Miller's Federal

9    Practice & Procedure: Civil § 2953 (3d ed. Apr. 2020 update) ("Although there does not seem to

10   be any case law on what constitutes 'good cause' for purposes of extending a Rule 65(b) order, a

11   showing that the grounds for originally granting the temporary restraining order continue to exist

12   should be sufficient.").

13         Even Associate Director Fontenot stated in his declaration that field staff are terminated

14   when field operations stop, and it is difficult to bring back field staff once they are terminated.

15   Associate Director Fontenot in effect requested that if the Court were to enjoin the Defendants, the

16   Court should do so sooner rather than later, so that Defendants would not terminate field staff.

17   Specifically, Associate Director Fontenot stated:

18         Lack of field staff would be a barrier to reverting to the COVID Schedule were the Court
           to rule later in September. The Census Bureau begins terminating staff as operations wind
19         down, even prior to closeout. Based on progress to date, as is standard in prior censuses,
           we have already begun terminating some of our temporary field staff in areas that have
20         completed their work. It is difficult to bring back field staff once we have terminated their
           employment. Were the Court to enjoin us tomorrow we would be able to keep more staff
21         on board than were the Court to enjoin us on September 29, at which point we will have
           terminated many more employees.
22

23   ECF No. 81-1 at 35 ¶ 98.

24         Accordingly, like other courts in analogous circumstances, the Court finds good cause to

25   extend the TRO. In fact, the Federal Rules of Civil Procedure authorize the Court to grant a TRO

26   for 14 days without hearing from Defendants and to extend that TRO an additional 14 days for

27

28   Case No. 20-CV-05799-LHK
     ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
     OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California

good cause for a total of 28 days. *See* Fed. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."); *see generally* 11A Federal Practice & Procedure, *supra*, § 2953 (collecting cases on 28-day limit). In the instant case, the duration of the Court's TRO was 12 days, and the Court's extension in the instant case is seven days or fewer.

Other courts have found good cause to extend TROs on the same grounds present in the instant case. *See, e.g.*, *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843–45 (7th Cir. 2012) (allowing TRO extensions "to give the parties sufficient time to prepare for a preliminary injunction hearing" so long as the TRO does not last longer than 28 days); *Costa*, 2020 WL 2410502, at *2 (finding good cause "because the parties need time to brief, and the Court needs time to consider, the forthcoming motion for a preliminary injunction"); *Acosta Ginger Green, Inc.*, No. 2:18-CV-4098, 2018 WL 3361397, at *1 (C.D. Cal. May 18, 2018) (extending TRO for good cause because, among other things, the restrained party failed to comply with a subpoena for documents).

Moreover, failing to extend the TRO would fail to "preserv[e] the status quo." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974); *accord, e.g., E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) ("a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer") (ellipsis in original).

To be sure, Defendants have asserted that an extended TRO may effectively become an appealable preliminary injunction. That assertion, however, is inapt here. A TRO only becomes a preliminary injunction in "extraordinary circumstances." *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017) (per curiam). In *Washington*, for example, "[t]he district court's order has no expiration date, and no [preliminary injunction] hearing has been scheduled." *Id.* The Government also "argued that emergency relief is necessary to support its efforts to prevent terrorism." *Id.*; *see*

16

United States District Court
Northern District of California

*also Serv. Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1067 (9th Cir. 2010) (appealable "TRO" lasted longer than three months until preliminary injunction hearing, and the district court had held two-day evidentiary hearing). Here, the TRO has an expiration date. A hearing on the motion for preliminary injunction is scheduled on September 22, 2020. The Government does not allege that extending the TRO in the instant case puts our national security at risk. Thus, extending the TRO to allow Defendants to produce a partial administrative record will enable the Court to evaluate Plaintiffs' APA claims when ruling on the motion for preliminary injunction.

Thus, the Court exercises its discretion to extend the TRO up to seven days until the Court issues its decision on the preliminary injunction motion or through September 24, 2020, whichever is sooner. The Court understands the gravity of the situation and the parties' need for a prompt ruling on the Plaintiffs' motion for preliminary injunction to allow for appellate review. To that end, the Court has ruled expeditiously on motions thus far. The Court ruled on Plaintiffs' motion for TRO within 48 hours. The Court likewise ordered production of the administrative record at 2:46 a.m. on September 10, 2020—also within 48 hours after Defendants confirmed that the Replan was "codified" and Plaintiffs moved for production of the administrative record. The Court issued the Order to Produce Inspector General Document Production within 24 hours of Plaintiffs' identification of the OIG production and Defendants' agreement to produce it in the instant case.

In sum, based on Defendants' violation of the Court's Order to Produce the Administrative Record as discussed above, an extension of the TRO is necessary for Defendants to produce the OIG production and a privilege log; for the parties to litigate objections to at least four different grounds of privilege; for United States Magistrate Judges to resolve the parties' privilege disputes; for the parties to file supplemental briefs on the motion for preliminary injunction addressing the OIG production; and for the Court to hold a hearing on the motion for preliminary injunction and to issue a reasoned decision. Accordingly, the Court extends the TRO until the Court issues its decision on the preliminary injunction motion or through September 24, 2020, whichever is

United States District Court
Northern District of California

17

Case No. 20-CV-05799-LHK
ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION OF THE ADMINISTRATIVE RECORD

1    sooner.

2    **IT IS SO ORDERED.**

3

4    Dated: September 17, 2020

5                                                    *Lucy H. Koh*

6                                                    LUCY H. KOH
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                   18

28   Case No. 20-CV-05799-LHK
     ORDER EXTENDING TEMPORARY RESTRAINING ORDER FOR DEFENDANTS' PARTIAL PRODUCTION
     OF THE ADMINISTRATIVE RECORD

United States District Court
Northern District of California