**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Monday, April 27, 2020 3:53 PM
**To:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>
**Subject:** Draft memo to Congress

This is the draft document in response to Chairwoman Maloney asking for more background on the shift in operations and a change in the statutory dates.

Can you please review? Ali and I updated it based on recent developments and think it is nearly ready for director's review and then the clearance process.

Thank you.

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs
U.S. Census Bureau
O: 301-763-4276 | M: PII
**census.gov | @uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

**From:** Christopher J Stanley (CENSUS/OCIA FED)
**To:** Steven Dillingham (CENSUS/DEPDIR FED); Ali Mohammad Ahmad (CENSUS/ADCOM FED); Michael John Sprung (CENSUS/DEPDIR FED); Steven K Smith (CENSUS/DEPDIR FED); Deborah Stempowski (CENSUS/ADDC FED); Kathleen M Styles (CENSUS/ADDC FED); James Whitehorne (CENSUS/ADDC FED); Alan Lang (CENSUS/OCIA FED); Fernando E Armstrong (CENSUS/PH FED); Timothy P Olson (CENSUS/ADFO FED)
**Subject:** memo for call with Rep. Raskin
**Date:** Monday, April 27, 2020 7:19:46 PM
**Attachments:** Rep. Raskin-Memo 4.27.2020 draft1 (1).docx

# DP

Please let me know if you need anything else.

---

**From:** Steven Dillingham (CENSUS/DEPDIR FED)
**Sent:** Monday, April 27, 2020 5:04 PM
**To:** Steven Dillingham (CENSUS/DEPDIR FED) <steven.dillingham@census.gov>; Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>; Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>; Michael John Sprung (CENSUS/DEPDIR FED) <michael.j.sprung@census.gov>; Steven K Smith (CENSUS/DEPDIR FED) <steven.k.smith@census.gov>; Deborah Stempowski (CENSUS/ADDC FED) <Deborah.M.Stempowski@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>; James Whitehorne (CENSUS/ADDC FED) <James.Whitehorne@census.gov>; Alan Lang (CENSUS/OCIA FED) <alan.lang@census.gov>; Fernando E Armstrong (CENSUS/PH FED) <fernando.e.armstrong@2020census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>
**Subject:** Raskin Prebrief
**When:** Tuesday, April 28, 2020 10:00-10:30.
**Where:** PII

DOC_0002223

| | |
|---|---|
| **From:** | Benjamin J Page (CENSUS/CFO FED) |
| **To:** | Kathleen M Styles (CENSUS/ADDC FED); Albert E Fontenot (CENSUS/ADDC FED); Christopher J Stanley (CENSUS/OCIA FED); Timothy P Olson (CENSUS/ADFO FED); James T Christy (CENSUS/LA FED) |
| **Cc:** | Ali Mohammad Ahmad (CENSUS/ADCOM FED) |
| **Subject:** | Re: Draft memo to Congress |
| **Date:** | Monday, April 27, 2020 8:27:39 PM |
| **Attachments:** | Baselined v Delayed Response Graph vaef kms bp.docx |

Minor edits in the attached.

---

**From:** Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>
**Sent:** Monday, April 27, 2020 6:02 PM
**To:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>
**Subject:** Re: Draft memo to Congress

My comments on top of Al's.  My biggest comment is that this should match the language in the template letter that is in process at this time.

Kathleen M. Styles
Chief, Decennial Communications and Stakeholder Relationships
U.S. Bureau of the Census
Room 8H 168
(301) 763-0235 Office
PII Cell

---

**From:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>
**Sent:** Monday, April 27, 2020 5:47 PM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>
**Subject:** Re: Draft memo to Congress

See my edits -

*Al*

**Albert E. Fontenot, Jr.**

**Associate Director**

**Decennial Census Programs**

United States Department of Commerce
Bureau of the Census
Office 8H 122
Office 301-763-4668
Cell [ PII ]

albert.e.fontenot@census.gov

census.gov
Connect with us on Social Media

---

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Monday, April 27, 2020 3:53 PM
**To:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>
**Subject:** Draft memo to Congress

This is the draft document in response to Chairwoman Maloney asking for more background on the shift in operations and a change in the statutory dates.

Can you please review? Ali and I updated it based on recent developments and think it is nearly ready for director's review and then the clearance process.

Thank you.

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs
U.S. Census Bureau
O: 301-763-4276 | M: [ PII ]
**census.gov | @uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

| From: | Kathleen M Styles (CENSUS/ADDC FED) |
|---|---|
| To: | Deborah Stempowski (CENSUS/ADDC FED); Albert E Fontenot (CENSUS/ADDC FED); James B Treat (CENSUS/DEPDIR FED) |
| Subject: | Re: NEED THIS NOW - the best that you have - |
| Date: | Tuesday, April 28, 2020 11:17:51 AM |
| Attachments: | TPs (high level) on post processing v.6.docx |

This is the high level version I prepared and that shows up in a lot of the letters and the like. We have myriad other versions as well, both shorter and longer.

Kathleen M. Styles

Chief, Decennial Communications and Stakeholder Relationships

U.S. Bureau of the Census

Room 8H 168

(301) 763-0235 Office

PII

**From:** Deborah Stempowski (CENSUS/ADDC FED) <Deborah.M.Stempowski@census.gov>
**Sent:** Tuesday, April 28, 2020 11:05 AM
**To:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; James B Treat (CENSUS/DEPDIR FED) <James.B.Treat@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>
**Subject:** Re: NEED THIS NOW - the best that you have -

Was there a final document that was sent to DOC to aid in conversations on post collection processing? After all of the flurry I never saw a final document, would be good to have in our 'library' even if its not public TPs.

**Deborah Stempowski, PMP**
Assistant Director for Decennial Programs, Operations and Schedule Management
U.S. Census Bureau
Office 301.763.1417
PII
deborah.m.stempowski@census.gov
**Shape Your Future | Start Here** 2020census.gov

**From:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>
**Sent:** Monday, April 20, 2020 11:44 AM
**To:** James B Treat (CENSUS/ADDC FED) <James.B.Treat@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>; Deborah Stempowski (CENSUS/ADDC FED) <Deborah.M.Stempowski@census.gov>
**Subject:** Re: NEED THIS NOW - the best that you have -

Thanks - we are working with the slightly longer version -



**Albert E. Fontenot, Jr.**

**Associate Director**

**Decennial Census Programs**
United States Department of Commerce
Bureau of the Census
Office 8H 122
Office 301-763-4668
PII

albert.e.fontenot@census.gov

census.gov
Connect with us on Social Media

---

**From:** James B Treat (CENSUS/ADDC FED) <James.B.Treat@census.gov>
**Sent:** Monday, April 20, 2020 11:40 AM
**To:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; Kathleen M Styles
(CENSUS/ADDC FED) <kathleen.m.styles@census.gov>; Deborah Stempowski (CENSUS/ADDC FED)
<Deborah.M.Stempowski@census.gov>
**Subject:** Re: NEED THIS NOW - the best that you have -

attached are two documents for the post-data collection steps - short and long version

thanks - jim

**James B. Treat**
Senior Advisor for Decennial Affairs
Office of the Director
U.S. Census Bureau

Office  301.763.3609   PII
james.b.treat@census.gov

census.gov
Connect with us on Social Media

---

**From:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>

**Sent:** Monday, April 20, 2020 11:38 AM
**To:** James B Treat (CENSUS/ADDC FED) <James.B.Treat@census.gov>; Kathleen M Styles (CENSUS/ADDC FED) <kathleen.m.styles@census.gov>; Deborah Stempowski (CENSUS/ADDC FED) <Deborah.M.Stempowski@census.gov>
**Subject:** NEED THIS NOW - the best that you have -

*ℋ*

**Albert E. Fontenot, Jr.**

**Associate Director**

**Decennial Census Programs**
United States Department of Commerce
Bureau of the Census
Office 8H 122
Office 301-763-4668
```
PII
```

albert.e.fontenot@census.gov

census.gov
Connect with us on Social Media

*Draft 4-17-2020 v5*

**High Level Talking Points**
**Post-Processing Activities and Timelines**

**What is post processing and why is it important?**
Post processing refers to the Census Bureau's processes to summarize the individual and household data that we collect into usable, high quality tabulated data products. Our post processing systems and processes are standardized, tested, and subject to thorough quality assurance procedures so that we can stand behind the data that we produce.

**What activities are part of post processing?**
There are a number of steps in post processing. At a very high level, post processing starts by merging and standardizing the format of the data we receive from different sources: self-response data from Internet, telephone, and paper questionnaires; response data from our specialized operations (like Group Quarters Enumeration, Service Based Enumeration, etc.), and nonresponse followup responses collected by census field staff. We conduct automated and clerical coding of write-in responses. In a small number of housing units we may receive multiple responses. When that happens we determine the response of record. We conduct geographic processing activities, such as geocoding which assigns an address to a block. We perform statistical techniques to account for missing housing unit status and occupancy information and we receive counts for the Federally Affiliated Overseas population. We then calculate the apportionment counts, and conduct the statutory apportionment calculation to determine the number of seats each State is entitled to in the U.S. House of Representatives.

After production of the apportionment counts (the resident population plus the overseas counts for each state), we conduct additional processing of the characteristic data about respondents. We perform statistical techniques to account for missing or conflicting characteristic data. We conduct modern disclosure avoidance techniques on the response file to honor our statutory requirement to protect each individual's confidential information. Then we tabulate the redistricting data and release it to states.

At every step listed above, we conduct and document rigorous testing and quality assurance of our work. This includes evaluating census responses and post processing data files at multiple levels of geography compared to multiple sets of benchmark data to ensure the demographic reasonableness of the data and verify that post processing procedures are properly applied.

**Why does post processing take so long?**
As is evident from the description above, post processing activities must, by their nature, occur in a consecutive sequence, and quality assurance needs to be performed at each step of the process. Subject matter expert review is critical to ensuring the quality of the data during this iterative process. It is important to note post processing cannot begin in earnest until all in-field work is completed. We have examined our schedule and compressed it as much as we can without risking significant impacts on data quality. Given the important uses of census data collection processing, it is vital that we not short cut these efforts or quality assurance steps.

**What schedule changes are you making?**

The Census Act requires the Census Bureau to produce apportionment counts by 12/31/20 and redistricting data by 3/31/21.  Our plan was to release the apportionment counts the week before Christmas, and to release the redistricting data over a six-week period from mid-February to late March, 2021.

Under the revised schedule, we will produce the apportionment counts by 4/30/2021 and the redistricting data by 7/31/2021.

**What are the implications to post processing of the COVID-19 schedule delays?**



We announced this necessary schedule change as early as possible to provide states the maximum possible time to adapt their local processes.  The Census Bureau will continue to look for actions it can take to reduce the impact of this change on the states.

| | |
|---|---|
| **From:** | Christopher J Stanley (CENSUS/OCIA FED) |
| **To:** | Steven Dillingham (CENSUS/DEPDIR FED); Benjamin J Page (CENSUS/CFO FED); Albert E Fontenot (CENSUS/ADDC FED) |
| **Cc:** | Ali Mohammad Ahmad (CENSUS/ADCOM FED); Steven K Smith (CENSUS/DEPDIR FED); Michael John Sprung (CENSUS/DEPDIR FED); Alan Lang (CENSUS/OCIA FED) |
| **Subject:** | updated Q&A and logistics for appropriations briefing |
| **Date:** | Friday, May 01, 2020 9:08:17 AM |
| **Attachments:** | Suggested Questions for House Appropriations Briefing - Census updated.docx |

Steve, Al, and Ben, I think you are all on the calendar invites from the department, but everything I have for the logistics is below

Attached is an updated Q&A based on intel OCIA staff gathered from contacting offices. Most of the new questions were repetitive of the other ones we already had. Tim Ryan (D-OH) has a lot of possible questions. Kay Granger (R-TX, ranking member) may ask about the phase 1 that her staff already provided.

I made a few educated guesses on some points, so please let me know if I need to edit anything.

**11:30 pre-brief –** PII

**12 -1 briefing**

**Steve, Al, and Ben –** dial leader code PII Leader Code PII

**Everyone else -** dial as participant: PII Participant Code PII

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs
U.S. Census Bureau
O: 301-763-4276 | M: PII
**census.gov | @uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

Suggested Questions for House Appropriations Committee Briefing





**DP**



**DP**

# DP

**Possible questions gathered from staff contacts to offices**

**Kay Granger (R-TX)**

Here in Texas, Phase 1 of statewide reopening efforts began this morning. Will the Census Bureau take a phased approach to restarting its in-person efforts by focusing first on regions that are successfully reopening?



**DP**

**Hal Rogers (R-KY-5)**

NOTE: Stanley had a call with his staff to explain the situation for Update Leave. The map shows a large area of his district has Update Leave areas. I explained the delay 

**DP**

**Ed Case (D-HI-1)**

How is Census assessing when to resume field operations (what are the specific markers and measures factoring into the decision), and what consideration for the possible second wave/outbreak this fall?

**DP**

**Rep. Tim Ryan (D-OH-13)**

How is the Census Bureau ensuring that the homeless population is being counted now that many homeless individuals are not being housed in congregate settings such as shelters due to COVID-19? Is the Census Bureau coordinating with the shelters to count individuals who have been moved into hotel/motel housing?

**DP**

How is the Census Bureau working to keep people safe with protective equipment for those census takers who are interacting with the general public?

**DP**

**DP**

Are there any updates pertaining to how the Census Bureau will reach "hard to count" communities particularly since many of these individuals have limited or no access to internet to complete the forms online?

**DP**

How is the Census Bureau working to make sure that individuals who are both in prisons and jails are being counted?

**DP**

How is the Census Bureau working to make sure that senior citizens and disabled individuals in nursing homes are being counted?

**DP**

How is the Census Bureau working to make sure individuals who were in congregate setting such as jails, prisons or nursing facilities are being counted if they have been transferred to the hospital due to contracting COVID-19?

**DP**

Now that many individuals will have to complete the census via paper application, how is the Census Bureau working to make sure that all paper applications are accounted for and will be processed in a timely fashion?

**DP**

Does the Census Bureau have a plan in place on how to reach people who may have to leave their homes due to being unable to afford their rent or mortgage? These individuals will not have an address to receive a paper application.

**DP**

Although, the deadline for the census has been extended are there plans to extend the deadline if there is another major outbreak of this virus?

**DP**

**From:** Steven Dillingham (CENSUS/DEPDIR FED)
**To:** PII Steven Dillingham
**Subject:** Fw: updated Q&A and logistics for appropriations briefing
**Date:** Friday, May 01, 2020 9:12:45 AM
**Attachments:** Suggested Questions for House Appropriations Briefing - Census updated.docx

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Friday, May 1, 2020 9:08 AM
**To:** Steven Dillingham (CENSUS/DEPDIR FED) <steven.dillingham@census.gov>; Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>; Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>; Steven K Smith (CENSUS/DEPDIR FED) <steven.k.smith@census.gov>; Michael John Sprung (CENSUS/DEPDIR FED) <michael.j.sprung@census.gov>; Alan Lang (CENSUS/OCIA FED) <alan.lang@census.gov>
**Subject:** updated Q&A and logistics for appropriations briefing

Steve, Al, and Ben, I think you are all on the calendar invites from the department, but everything I have for the logistics is below

Attached is an updated  Q&A based on intel OCIA staff gathered from contacting offices. Most of the new questions were repetitive of the other ones we already had. Tim Ryan (D-OH) has a lot of possible questions. Kay Granger (R-TX, ranking member) may ask about the phase 1 that her staff already provided.

I made a few educated guesses on some points, so please let me know if I need to edit anything.


**11:30 pre-brief** – PII


**12 -1 briefing**

Steve, Al, and Ben - dial leader code: PII

Everyone else - dial as participant PII


**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs

U.S. Census Bureau
O: 301-763-4276 | M: [ PII ]
**census.gov** | **@uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

**From:** Steven Dillingham (CENSUS/DEPDIR FED)
**To:** PII - Steven Dillingham
**Subject:** Fw: updated Q&A and logistics for appropriations briefing
**Date:** Friday, May 01, 2020 10:26:19 AM
**Attachments:** Suggested Questions for House Appropriations Briefing - Census updated.docx

---

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Friday, May 1, 2020 9:08 AM
**To:** Steven Dillingham (CENSUS/DEPDIR FED) <steven.dillingham@census.gov>; Benjamin J Page
(CENSUS/CFO FED) <benjamin.j.page@census.gov>; Albert E Fontenot (CENSUS/ADDC FED)
<Albert.E.Fontenot@census.gov>
**Cc:** Ali Mohammad Ahmad (CENSUS/ADCOM FED) <ali.m.ahmad@census.gov>; Steven K Smith
(CENSUS/DEPDIR FED) <steven.k.smith@census.gov>; Michael John Sprung (CENSUS/DEPDIR FED)
<michael.j.sprung@census.gov>; Alan Lang (CENSUS/OCIA FED) <alan.lang@census.gov>
**Subject:** updated Q&A and logistics for appropriations briefing

Steve, Al, and Ben, I think you are all on the calendar invites from the department, but
everything I have for the logistics is below

Attached is an updated  Q&A based on intel OCIA staff gathered from contacting offices. Most
of the new questions were repetitive of the other ones we already had. Tim Ryan (D-OH) has a
lot of possible questions. Kay Granger (R-TX, ranking member) may ask about the phase 1 that
her staff already provided.

I made a few educated guesses on some points, so please let me know if I need to edit
anything.

**11:30 pre-brief** - **PII**

**12 -1 briefing**

~~Steve, Al, and Ben~~ - dial leader code: **PII**  Leader Code **PII**

**Everyone else - dial as participant:** **PII**  Participant Code **PII**

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs

U.S. Census Bureau
O: 301-763-4276 | M PII
**census.gov  |  @uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

Suggested Questions for House Appropriations Committee Briefing



# DP

# DP

DOC_0002273



**Possible questions gathered from staff contacts to offices**

**Kay Granger (R-TX)**

Here in Texas, Phase 1 of statewide reopening efforts began this morning. Will the Census Bureau take a phased approach to restarting its in-person efforts by focusing first on regions that are successfully reopening?





**Hal Rogers (R-KY-5)**

NOTE: Stanley had a call with his staff to explain the situation for Update Leave. The map shows a large area of his district has Update Leave areas. I explained the delay



**Ed Case (D-HI-1)**

How is Census assessing when to resume field operations (what are the specific markers and measures factoring into the decision), and what consideration for the possible second wave/outbreak this fall?

**DP**

**Rep. Tim Ryan (D-OH-13)**

How is the Census Bureau ensuring that the homeless population is being counted now that many homeless individuals are not being housed in congregate settings such as shelters due to COVID-19? Is the Census Bureau coordinating with the shelters to count individuals who have been moved into hotel/motel housing?

**DP**

How is the Census Bureau working to keep people safe with protective equipment for those census takers who are interacting with the general public?

**DP**

# DP

Are there any updates pertaining to how the Census Bureau will reach "hard to count" communities particularly since many of these individuals have limited or no access to internet to complete the forms online?

# DP

How is the Census Bureau working to make sure that individuals who are both in prisons and jails are being counted?

# DP

How is the Census Bureau working to make sure that senior citizens and disabled individuals in nursing homes are being counted?

# DP

How is the Census Bureau working to make sure individuals who were in congregate setting such as jails, prisons or nursing facilities are being counted if they have been transferred to the hospital due to contracting COVID-19?

# DP

Now that many individuals will have to complete the census via paper application, how is the Census Bureau working to make sure that all paper applications are accounted for and will be processed in a timely fashion?

**DP**

Does the Census Bureau have a plan in place on how to reach people who may have to leave their homes due to being unable to afford their rent or mortgage? These individuals will not have an address to receive a paper application.

**DP**

Although, the deadline for the census has been extended are there plans to extend the deadline if there is another major outbreak of this virus?

**DP**

**From:** Christopher J Stanley (CENSUS/OCIA FED)
**To:** Timothy P Olson (CENSUS/ADFO FED)
**Subject:** Are these answers correct?
**Date:** Monday, May 04, 2020 4:58:16 PM



**From:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Sent:** Monday, May 4, 2020 10:38 AM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>; Bailey, Patrick
(HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Russ Anello <russell.anello@mail.house.gov>; Spino,
Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; Anderson, Tori
<tori.anderson@mail.house.gov>; Johnson, Ellen <ellen.johnson@mail.house.gov>; Whitcomb, Max
<Max.Whitcomb@mail.house.gov>; Candyce Phoenix <candyce.phoenix@mail.house.gov>
**Subject:** RE: Monday morning

Hi Chris,

I have several follow-ups that I meant to ask Tim on this morning's call.
- Will Update Enumerate also begin again this week (in Maine and Alaska)?
- Will any operations increase related to Remote Alaska?
- What is the status of UL Puerto Rico?
- Do these earlier restarts have any implications for GQE, SBE, or ETL?

Thank you.

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Friday, May 1, 2020 4:40 PM
**To:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>; Bailey, Patrick (HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Russ Anello <russell.anello@mail.house.gov>; Spino, Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; Anderson, Tori <tori.anderson@mail.house.gov>; Johnson, Ellen <ellen.johnson@mail.house.gov>; Whitcomb, Max <Max.Whitcomb@mail.house.gov>; Candyce Phoenix <candyce.phoenix@mail.house.gov>
**Subject:** Monday morning

I apologize that this is last minute request on Friday afternoon. Can we have a call Monday at 9 am for an operational update from Tim Olson, Associate Director of Field? I can also have Ben Page, CFO, give you an update on budget matters.

Also, I am almost set on Annika's request below. I can likely make that one happen on Wednesday. Al Fontenot's staff are confirming availability for the last of the subject matter experts in the decennial staff, and as soon as I get that back from them, I can offer a specific time.

---

**From:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Sent:** Thursday, April 30, 2020 12:53 PM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Cc:** Bailey, Patrick (HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Spino, Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; 'Anello, Russell' <Russell.Anello@mail.house.gov>; 'Anderson, Tori' <Tori.Anderson@mail.house.gov>; Whitcomb, Max <Max.Whitcomb@mail.house.gov>; Johnson, Ellen <Ellen.Johnson@mail.house.gov>; Phoenix, Candyce <Candyce.Phoenix@mail.house.gov>
**Subject:** RE: stats briefing

Hi Chris – Can you tell me why it has been so difficult to schedule a briefing with your data experts? If it is a staff availability we certainly sympathize, but I have been requesting this for almost 3 weeks now.

I believe you have a general sense of what our concerns are in this area, from previous briefings. To summarize, the general categories I still have questions about are:

- **Discuss the data accuracy impacts of the new timeline in more depth; how you are accounting for the many data quality issues that arise with the delays (**Recall bias (esp. in transient pops like SBE & ETL); displacement of individuals; inability for accurate NRFU eg in college towns; UL and UE delays and gaps- no NRFU in these areas**)**
- **What are your current predictions about the NRFU universe** (how much larger) **and the post-NRFU universe** (non-responding/incomplete)? Are you predicting a larger post-COVID universe (vs. pre-COVID projections), which will require more imputation/ use of admin records?
- **Describe your resources & staffing for data processing operations.**
- **Explain in detail the need for 120 days of processing time for apportionment data, then 120 days for redistricting data: a detailed technical explanation of what occurs during this period and why this full time span is needed (**we already have general information about

why more time is needed for de-duplication and other issues delays will cause – but want to ehar details from the experts).

- **From a technical perspective, how are you able to issue redistricting data to some states earlier, and what is the earliest time a state could receive redistricting data** (as many states are facing issues)?
- **Impact of the delays, if any, on data product timelines for federal programs; could this delay any federal funding releases?**
- **Disclosure avoidance system:** Will evaluation of the DAS have a new timeline because of the delays, and will it include additional public input opportunities
- **Post Enumeration Survey:** Have the timeline or plans changed for the PES; how will you account for complicating factors given the delays?

's **From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Wednesday, April 29, 2020 11:58 AM
**To:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Subject:** stats briefing

I can't get that one finalized for this week due to competing schedules, but it is a priority to set a date soon, targeting next week.

If you can send the questions that you expect, I can make sure I have the right people on the call.

Thank you again.

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs
U.S. Census Bureau
O: 301-763-4276 | M: 202-280-9678
**census.gov | @uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

| | |
|---|---|
| **From:** | Timothy P Olson (CENSUS/ADFO FED) |
| **To:** | Christopher J Stanley (CENSUS/OCIA FED) |
| **Subject:** | Re: Are these answers correct? |
| **Date:** | Monday, May 04, 2020 5:02:11 PM |

see below.

_____

**Tim Olson,** Associate Director for Field Operations
U.S. Census Bureau - Washington DC
301-763-2072  Office
[ PII ]  Cell
timothy.p.olson@census.gov

census.gov     Connect with us on Social Media

---

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Monday, May 4, 2020 4:58 PM
**To:** Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>
**Subject:** Are these answers correct?

I need the answer to the last one, which I think is that [ DP ] [ DP ] but let me know what the right answer it.

Will Update Enumerate also begin again this week (in Maine and Alaska)?

[ DP ]

Will any operations increase related to Remote Alaska?

[ DP ]

What is the status of UL Puerto Rico?

[ DP ]

Do these earlier restarts have any implications for GQE, SBE, or ETL?

[ DP ]

**From:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Sent:** Monday, May 4, 2020 10:38 AM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>; Bailey, Patrick (HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Russ Anello <russell.anello@mail.house.gov>; Spino, Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; Anderson, Tori <tori.anderson@mail.house.gov>; Johnson, Ellen <ellen.johnson@mail.house.gov>; Whitcomb, Max <Max.Whitcomb@mail.house.gov>; Candyce Phoenix <candyce.phoenix@mail.house.gov>
**Subject:** RE: Monday morning

Hi Chris,

I have several follow-ups that I meant to ask Tim on this morning's call.
- Will Update Enumerate also begin again this week (in Maine and Alaska)?
- Will any operations increase related to Remote Alaska?
- What is the status of UL Puerto Rico?
- Do these earlier restarts have any implications for GQE, SBE, or ETL?

Thank you.

**From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Friday, May 1, 2020 4:40 PM
**To:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>; Bailey, Patrick (HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Russ Anello <russell.anello@mail.house.gov>; Spino, Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; Anderson, Tori <tori.anderson@mail.house.gov>; Johnson, Ellen <ellen.johnson@mail.house.gov>; Whitcomb, Max <Max.Whitcomb@mail.house.gov>; Candyce Phoenix <candyce.phoenix@mail.house.gov>
**Subject:** Monday morning

I apologize that this is last minute request on Friday afternoon. Can we have a call Monday at 9 am for an operational update from Tim Olson, Associate Director of Field? I can also have Ben Page, CFO, give you an update on budget matters.

Also, I am almost set on Annika's request below. I can likely make that one happen on Wednesday. Al Fontenot's staff are confirming availability for the last of the subject matter experts in the decennial staff, and as soon as I get that back from them, I can offer a specific time.

**From:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Sent:** Thursday, April 30, 2020 12:53 PM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Cc:** Bailey, Patrick (HSGAC) <Patrick_Bailey@hsgac.senate.gov>; Spino, Daniel (HSGAC) <Daniel_Spino@hsgac.senate.gov>; 'Anello, Russell' <Russell.Anello@mail.house.gov>; 'Anderson, Tori' <Tori.Anderson@mail.house.gov>; Whitcomb, Max <Max.Whitcomb@mail.house.gov>; Johnson, Ellen <Ellen.Johnson@mail.house.gov>; Phoenix, Candyce

<Candyce.Phoenix@mail.house.gov>
**Subject:** RE: stats briefing

Hi Chris – Can you tell me why it has been so difficult to schedule a briefing with your data experts? If it is a staff availability we certainly sympathize, but I have been requesting this for almost 3 weeks now.

I believe you have a general sense of what our concerns are in this area, from previous briefings. To summarize, the general categories I still have questions about are:

- **Discuss the data accuracy impacts of the new timeline in more depth; how you are accounting for the many data quality issues that arise  with the delays (**Recall bias (esp. in transient pops like SBE & ETL); displacement of individuals; inability for accurate NRFU eg in college towns; UL and UE delays and gaps- no NRFU in these areas**)**
- **What are your current predictions about the NRFU universe** (how much larger) **and the post-NRFU universe** (non-responding/incomplete)? Are you predicting a larger post-NRFU universe (vs. pre-COVID projections), which will require more imputation/ use of admin records?
- **Describe your resources & staffing for data processing operations.**
- **Explain in detail the need for 120 days of processing time for apportionment data, then 120 days for redistricting data: a detailed technical explanation of what occurs during this period and why this full time span is needed (**we already have general information about why more time is needed for de-duplication and other issues delays will cause – but want to ehar details from the experts.)
- **From a technical perspective, how are you able to issue redistricting data to some states earlier, and what is the earliest time a state could receive redistricting data** (as many states are facing issues)?
- **Impact of the delays, if any, on data product timelines for federal programs; could this delay any federal funding releases?**
- **Disclosure avoidance system:** Will evaluation of the DAS have a new timeline because of the delays, and will it include additional public input opportunities
- **Post Enumeration Survey:** Have the timeline or plans changed for the PES; how will you account for complicating factors given the delays?


's **From:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Sent:** Wednesday, April 29, 2020 11:58 AM
**To:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Subject:** stats briefing

I can't get that one finalized for this week due to competing schedules, but it is a priority to set a date soon, targeting next week.

If you can send the questions that you expect, I can make sure I have the right people on the call.

Thank you again.

**Chris Stanley**, Chief
Office of Congressional and Intergovernmental Affairs

U.S. Census Bureau
O: 301-763-4276 | M: PII
**census.gov** | **@uscensusbureau**
**Shape your future. START HERE > 2020census.gov**

**From:**      Walsh, Michael (Federal)
**To:**        Wilbur Ross
**Subject:**   Census DRAFT
**Date:**      Friday, May 8, 2020 3:38:08 PM
**Attachments:** 2020 Operaitonal Timeline v5 Clean.docx

PRIVILEGED AND PREDECISIONAL
DRAFT

Here is the draft we discussed.

| | |
|---|---|
| **From:** | Dale C Kelly (CENSUS/FLD FED) |
| **To:** | James T Christy (CENSUS/LA FED); Timothy P Olson (CENSUS/ADFO FED) |
| **Subject:** | Letter to Senate |
| **Date:** | Monday, May 11, 2020 9:57:07 AM |
| **Attachments:** | Letter 2020 Census COVID-19 Funding_5.20.pdf |

I'm assuming you have this but sharing it just in case you don't.


**Dale Kelly,** Chief
Field Division
U.S. Census  Bureau
O: 301-763-6937 / M: [ PII ]
census.gov | @uscensusbureau
**Shape your future. START HERE >** 2020census.gov

# United States Senate

May 8, 2020

The Honorable Mitch McConnell
Majority Leader
U.S. Senate
H-232, The Capitol
Washington, D.C. 20510

The Honorable Charles E. Schumer
Minority Leader
U.S. Senate
H-204, The Capitol
Washington, D.C. 20510

The Honorable Richard Shelby
Chairman
Senate Committee on Appropriations
S-128, The Capitol
Washington, D.C. 20510

The Honorable Patrick Leahy
Vice Chairman
Senate Committee on Appropriations
S-128, The Capitol
Washington, D.C. 20510

Dear Leader McConnell, Leader Schumer, Chairman Shelby, and Vice Chairman Leahy:

As you work on the next legislative package to respond to the novel coronavirus (COVID-19) pandemic, we strongly encourage you to provide additional funding for the Census Bureau's Periodic Surveys and Programs. These funds should be used specifically to address the operational changes to the 2020 Census in response to the current public health crisis.

The 2020 Census has already begun. Nearly half of all U.S. households have self-responded, mostly due to the availability of internet and phone responses. However, there will be a portion of the population that may not be able to self-respond for a number of reasons, including a lack of internet or phone access, homelessness, mistrust, etc. It is even more important that during the COVID-19 pandemic, these hard-to-count communities are targeted and receive effective outreach that is both safe and complies with guidance from public health experts.

At the same time, U.S. Commerce Secretary Wilbur Ross and Census Bureau Director Steven Dillingham announced that the Census Bureau will delay the start of field operations to June 1, 2020, and extend self-response and field data collection to October 31, 2020. As a result, Secretary Ross and Director Dillingham are requesting that Congress change the statutory deadline for apportionment counts to be delivered to the president and for redistricting data to be delivered to the states by 120 days. The Census Bureau has indicated that it will be unable to meet the current statutory deadlines if the count is extended to October 31.

As the Congress considers this request, it must be paired with additional funding for the Census Bureau to ensure that every person is counted. The extension is expected to cost an estimated $1.5 billion. The next COVID-19 legislative package should also include language directing the Census Bureau to modify its field operation and communications plan to keep both field workers and the public safe while conducting this constitutionally required enumeration.

These funds should be used specifically on:

- Personal protective equipment for census field workers, call center staff, and other employees;
- Additional mailings to households that have not self-responded;
- Targeted outreach to hard-to-count communities;
- Targeted outreach to the location of the 2018 End-to-End Census Test;
- Special operations to hand-deliver census packets in rural and remote communities, on American Indian reservations, in areas recovering from natural disasters, in Alaska, and in Puerto Rico;
- Enumerating people experiencing homelessness;
- Increased in-language outreach and assistance to supplement 2020 Census partners in non-English speaking communities;
- Changes in Census Bureau's communications plan, including advertisement and social media;
- An increase in the number of call center staff to address higher volumes of self-responses by phone; and
- Facilitating internet access in low self-response neighborhoods.

As the Census Bureau delays field operations and extends the enumeration period, the agency must do more to ensure that every person is counted once, only once, and in the right place. Thank you for your consideration of our request.

Sincerely,


Brian Schatz
United States Senator

Richard Blumenthal
United States Senator


Benjamin L. Cardin
United States Senator

Cory A. Booker
United States Senator


Kirsten Gillibrand
United States Senator

Jeffrey A. Merkley
United States Senator


Mazie K. Hirono
United States Senator

Kamala D. Harris
United States Senator

Amy Klobuchar
United States Senator

Dianne Feinstein
United States Senator

Richard J. Durbin
United States Senator

Jack Reed
United States Senator

Sheldon Whitehouse
United States Senator

Sherrod Brown
United States Senator

Christopher A. Coons
United States Senator

| | |
|---|---|
| **From:** | Sabrina McNeal (CENSUS/OCIA CTR) |
| **To:** | Timothy P Olson (CENSUS/ADFO FED); Ali Mohammad Ahmad (CENSUS/ADCOM FED) |
| **Cc:** | Christopher J Stanley (CENSUS/OCIA FED) |
| **Subject:** | Memo for NGA Call Tomorrow |
| **Date:** | Tuesday, May 12, 2020 11:03:17 AM |
| **Attachments:** | NGA 2020 Operational Update.pdf |

**Sabrina E. McNeal**

Intergovernmental Affairs Associate, Contractor

Office of Congressional and Intergovernmental Affairs

U.S. Census Bureau

O: 301-763-4960 | M: PII

census.gov | @uscensusbureau

**Shape your future. START HERE >** 2020census.gov

**From:**    Christopher J Stanley (CENSUS/OCIA FED)
**To:**      Albert E Fontenot (CENSUS/ADDC FED)
**Cc:**      Timothy P Olson (CENSUS/ADFO FED); Christopher M Denno (CENSUS/ADDC FED)
**Subject:**  Re: NGA
**Date:**     Tuesday, May 12, 2020 11:14:05 AM
**Attachments:**  NGA 2020 Operational Update.pdf

Please let me know if you need more.



**From:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>
**Sent:** Tuesday, May 12, 2020 10:27 AM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Subject:** Re: NGA

Thank you

Al

Albert E. Fontenot Jr.
Associate Director,  Decennial Census Programs
United States Department of Commerce
Bureau of the Census
Office 8H-122
Office 301-763-4668
Cell 

Sent from my iPhone

On May 12, 2020, at 10:27 AM, Christopher J Stanley (CENSUS/OCIA FED)
<christopher.j.stanley@census.gov> wrote:

> # DP
>
> **From:** Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>
> **Sent:** Tuesday, May 12, 2020 10:23 AM
> **To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
> **Subject:** NGA
>
> Chris
>
> # DP

Al

Albert E. Fontenot Jr.
Associate Director,  Decennial Census Programs
United States Department of Commerce
Bureau of the Census
Office 8H-122
Office 301-763-4668
Cell **PII**

Sent from my iPhone

| | |
|---|---|
| **From:** | Christopher J Stanley (CENSUS/OCIA FED) |
| **To:** | Albert E Fontenot (CENSUS/ADDC FED); Timothy P Olson (CENSUS/ADFO FED); Ali Mohammad Ahmad (CENSUS/ADCOM FED) |
| **Cc:** | Alan Lang (CENSUS/OCIA FED); James T Christy (CENSUS/LA FED); Deborah Stempowski (CENSUS/ADDC FED) |
| **Subject:** | list of questions for Friday briefing |
| **Date:** | Tuesday, May 12, 2020 12:42:42 PM |
| **Attachments:** | 5.12.20 Census Bureau remaining questions- date extensions.docx |

Annika has a lot.

---

**From:** Christensen, Annika (HSGAC) <Annika_Christensen@hsgac.senate.gov>
**Sent:** Tuesday, May 12, 2020 12:35 PM
**To:** Christopher J Stanley (CENSUS/OCIA FED) <christopher.j.stanley@census.gov>
**Subject:** Remaining questions

Hi Chris,

Attached is a list of remaining questions I have for the Bureau across topic areas, which remain outstanding after our previous topic-area briefings on the replanned operations.

I hope these can be addressed in our next Friday briefing, or that you can provide answers as soon as possible so we can fully assess the deadline extensions.

Thank you,

Annika Christensen
**Professional Staff Member**
**Senate Committee on Homeland Security & Governmental Affairs**
**Minority Staff**
202-224-1187
202-536-9093

**Get-backs from previous briefings:**
- Continued updates on operations (rescheduled), hiring, budget.
- Granular updates on self-response: by operation (UL, GQE, SBE); by demographics.
  - Can you release this data publicly so partners have more information to plan their adjustments?

**Remaining questions:**

**NRFU:**
- How are you planning to account for the possibility that door-to-door visits for NRFU (and PES) may be less effective in a post-COVID-19 environment?
- Will NRFU follow the original operational plan in terms of: the number of knocks/visits planned? The point at which the Bureau will remove someone from the NRFU workload?
- Early NRFU (tailored to college towns) has been merged with NRFU. How will you deal with the problem that the NRFU universe in college towns will basically have disappeared (students will not be there)?

**Staff & hiring:**
- How many NRFU staff do you intend to hire (and how many would you likely have hired if not for COVID)?
  - On 4/13, you told us you were hiring NRFU enums at Bureau's highest-planned level (as if self-response was 55%, though it will be higher). But on 5/6, you told us the NRFU workload is based on 60.5% self-response estimate. Can you clarify?
- As the Bureau reassesses its NRFU workload, will you reassess staff needs for NRFU – and hire above the currently-planned level if the NRFU workload is larger than you currently expect?
  - You contracted to receive 125,000 more iPhones for NRFU surge (when you thought it would be shorter/ more concentrated), said you can "utilize these if we have to" – so would you hire up to 125,000 more enums than currently planned?
- Have you considered hiring more enums beyond the planned level to complete these enumerations (NRFU GQE, SBE, ETL) more efficiently? (as you were planning to do for NRFU before these deadline extensions)? Are there specific reasons not to do that?
- Will you hire additional staff (enums or other) for SBE, ETL, and GQE? If so, how many staff do you intend to hire (and on top of what base number)?
- Will you hire additional staff for CQA, including call center staff or work-from-home positions? (beyond the additional ~4,000+ Census Response Representatives who are being shifted from the suspended MQA to CQA)
- How are you preparing for the potential of high attrition rates once people are supposed to deploy to the field? (many are older; you said you wouldn't fully know attrition rates until in the field)

[ PAGE  \* MERGEFORMAT ]

- How will the Bureau ensure timely onboarding, once you start again (fingerprinting, etc)?
- Follow up: how many enums still want to work? Are you seeing much dropoff with UL, UE, NRFU?

**Enumerations:**
- Any updates on the timelines/plans for SBE, GQE, ETL?
- GQE:
  - How many do you expect will be in-person GQE? How many paper questionnaire drop? (vs. how many have selected e-Response)
  - Has every GQ that selected e-response responded already (part of 11%)?
- Colleges:
  - What level of self-response do you think you will be able to get from GQE e-Response? How many of the colleges have completed e-Response?
  - Off-campus: What can the Bureau do to increase self-response? Self-response is the only way (NRFU universe is gone); self-response is at 20-30% in college towns.
    - Is it feasible to collect responses from the schools on off-campus students (some colleges list off-campus addresses on their rosters, but not all)?
  - If there's no good way (states just need to resolve in CQR), will we see a huge uptick in college towns filing/spending on CQR challenges?
- SBE: Can you work more with cities/states to get data (e-Response) for all SBE locations within the jurisdiction? I have heard Regional Center staff have been instructed to work with states to facilitate this without additional legal agreements?

**Mobile Questionnaire Assistance:**
- What is your current thinking for modifying/ rescheduling the MQA operation? Has the Bureau considered any "replacement" activities to achieve similar goals?

**Partnership/outreach:**
- How are you communicating to partners about how they should shift operations? Can you issue specific guidance for states, cities, and organizational partners?
- How will your new comms plans incorporate the partnership specialists? Could they engage in helpful non-in-person comms operations, such as hanging door tags? What have they been able to do during this delay, and what could they do as distancing continues?
- Will you have guidance to help Partnership Specialists response to ground conditions – particularly if you're planning to start ops in some places earlier than others? In many states (e.g. CA), in-person events (congregating) may be discouraged well into summer.

**Communications:**

[ PAGE  \* MERGEFORMAT ]

- My understanding is you have planned $160M for expanded comms due to the total delays, and used $80M of this already on previous delays. Is it correct your new comms plan will be based on an $80M budget, or will you maybe expand this?
  - Do you have a formula for allocating advertising funds? Will you allocate them based on local rates of self-response (at what level of geography)? How will you determine how much to spend in each lower-level geographic area?

**Data processing & products:**

- Can the data processing be completed in a shorter timespan than 120 days? From the briefing, it sounds like the extra 30 days was added as a contingency in case of additional delays or issues. In the briefing, staff stated the additional time was based on the 90-day delays, but not specifically linked to certain activities/ increased workload – but also stated the Bureau will try to complete processing more quickly if possible. Is that correct?

- How are you accounting for the many data quality issues? Recall bias (esp. in transient pops like SBE); low self-response; displacement of individuals; inability for accurate NRFU eg in college towns; UL and UE delays and gaps (no NRFU).

- Will you report on the number of missing responses resolved during processing (with count imputation and characteristic imputation/ admin records)? Do you think this number will be greater or smaller, given the delays?

- CVAP: Will the technical documentation discuss the accuracy of the model's estimates and the standards the Bureau is using to measure that accuracy? How does that compare to the Bureau's Statistical Quality Standards? Will there be methodological expert reviews by outside experts such as the Advisory Committees, as is done for other data products?

**Post-Enumeration Survey:**

- Have the timeline or plans changed for the Post-Enumeration Survey?

- How do you plan to account for the possibility that less effective door-to-door visits may affect the survey quality (and therefore our ability to evaluate the Census's effectiveness)?

- Will you hire more staff or devote more resources to the PES?

[ PAGE  \* MERGEFORMAT ]

| | |
|---|---|
| **From:** | James T Christy (CENSUS/LA FED) |
| **To:** | Timothy P Olson (CENSUS/ADFO FED) |
| **Subject:** | Fw: House Legislation |
| **Date:** | Tuesday, May 12, 2020 1:54:44 PM |
| **Attachments:** | HEROES_xml draft.pdf |

FYI - the white knight arrives...

**James Christy**

**U.S. Census Bureau**
LA 818.267.1700  HQ 301.763.6228  Cell⌐ **PII** ¬
census.gov   Connect with us on Social Media
**Shape Your Future | Start Here** 2020census.gov

**From:** Benjamin J Page (CENSUS/CFO FED) <benjamin.j.page@census.gov>
**Sent:** Tuesday, May 12, 2020 1:52 PM
**To:** Benjamin Taylor (CENSUS/ADDC FED) <benjamin.k.taylor@census.gov>; James T Christy
(CENSUS/LA FED) <James.T.Christy@census.gov>; Jeffrey L Bryant (CENSUS/NPC FED)
<jeffrey.l.bryant@census.gov>
**Cc:** Everett G Whiteley (CENSUS/BUD FED) <Everett.G.Whiteley@census.gov>
**Subject:** Fw: House Legislation

Some additional funding for decennial and WCF to cover revenue shortfalls from
reimbursable funding.

**From:** Benjamin J Page (CENSUS/CFO FED)
**Sent:** Tuesday, May 12, 2020 1:41 PM
**To:** Steven Dillingham (CENSUS/DEPDIR FED) <steven.dillingham@census.gov>; Ron S Jarmin
(CENSUS/DEPDIR FED) <Ron.S.Jarmin@census.gov>; Christa D Jones (CENSUS/DEPDIR FED)
<Christa.D.Jones@census.gov>; Albert E Fontenot (CENSUS/ADDC FED)
<Albert.E.Fontenot@census.gov>; Ali Mohammad Ahmad (CENSUS/ADCOM FED)
<ali.m.ahmad@census.gov>; Christopher J Stanley (CENSUS/OCIA FED)
<christopher.j.stanley@census.gov>; Enrique Lamas (CENSUS/DEPDIR FED)
<Enrique.Lamas@census.gov>; Everett G Whiteley (CENSUS/BUD FED)
<Everett.G.Whiteley@census.gov>
**Subject:** House Legislation

All,

Please find attached draft legislation that the House intends to introduce as early as today.
Several Census related provisions in here, including:

1. $10 M to cover reimbursable revenue shortfalls
2. $400 M for decennial expenses
3. A new monthly reporting requirement on decennial operations (note that by virtue of
   being in legislation we would have a lot less flexibility in the provision of this report)

4. The requested date changes for apportionment and redistricting data, although their is a new insert on redistricting directing us to complete the tabulations for redistricting as "expeditiously as possible...taking into account each state's deadlines for legislative apportionment"
5. Language addressing FERPA issues with higher education data sharing
6. Provisions on data quality

While we wont have an opportunity to comment before it is introduced, if there are any red flags we will need to flag ASAP.  To that end, it would be great to get a review of the non-appropriations Census sections by 5pm today.  The appropriations provisions are pretty straightforward.

To the best of my knowledge this draft is not available publicly yet, so please treat it appropriately.

Ben

_____

**Ben Page**, Chief Financial Officer
U.S. Census Bureau
O: 301-763-4700 | M: **PII**
census.gov  |  @uscensusbureau
**Shape your future. START HERE >** 2020census.gov

...................................................................
(Original Signature of Member)

116TH CONGRESS
2D SESSION

# H. R. _____

Making emergency supplemental appropriations for the fiscal year ending
September 30, 2020, and for other purposes.

———————————————

## IN THE HOUSE OF REPRESENTATIVES

Mrs. LOWEY (for herself, Mr. ENGEL, Mrs. CAROLYN B. MALONEY of New
York, Mr. NADLER, Mr. PALLONE, Mr. SCOTT of Virginia, Mr. TAKANO,
Ms. VELÁZQUEZ, and Ms. WATERS) introduced the following bill; which
was referred to the Committee on _____

———————————————

# A BILL

Making emergency supplemental appropriations for the fiscal
year ending September 30, 2020, and for other purposes.

1   *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3                SHORT TITLE

4   SECTION 1.

5   This Act may be cited as the "Health and Economic

6  Recovery Omnibus Emergency Solutions Act" or the

7  "HEROES Act".

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002306

2

1    TABLE OF CONTENTS

2    SEC. 2.

3    The table of contents is as follows:

DIVISION A—CORONAVIRUS RECOVERY SUPPLEMENTAL
APPROPRIATIONS ACT, 2020

DIVISION B—REVENUE PROVISIONS

Title I—Economic stimulus
Title II—Additional relief for workers
Title III—Net operating losses

DIVISION C—HEALTH PROVISIONS

Title I—Medicaid Provisions
Title II—Medicare Provisions
Title III—Private Insurance Provisions
Title IV—Application to Other Health Programs
Title V—Public Health Policies
Title VI—Public Health Assistance

DIVISION D—RETIREMENT PROVISIONS

Title I—Relief for Multiemployer Pension Plans
Title II—Relief for Single Employer Pension Plans
Title III—Other Retirement Related Provisions

DIVISION E—CONTINUED ASSISTANCE TO UNEMPLOYED
WORKERS

DIVISION F—ASSISTANCE TO AGRICULTURAL PRODUCERS AND
OTHER MATTERS RELATING TO AGRICULTURE

Title I—Livestock
Title II—Dairy
Title III—Specialty Crops and Other Commodities
Title IV—Commodity Credit Corporation
Title V—Conservation
Title VI—Nutrition

DIVISION G—ACCOUNTABILITY AND GOVERNMENT OPERATIONS

Title I—Accountability
Title II—Census Matters
Title III—Federal Workforce
Title IV—Federal Contracting Provisions
Title V—District of Columbia
Title VI—Other Matters

DIVISION H—VETERANS AND SERVICEMEMBERS PROVISIONS

DIVISION I—SMALL BUSINESS PROVISIONS

DIVISION J—SUPPORT FOR ESSENTIAL WORKERS, AT-RISK
INDIVIDUALS, FAMILIES, AND COMMUNITIES

DOC_0002307

3

Title I—Family Care for Essential Workers
Title II—Pandemic Emergency Assistance and Services
Title III—Program flexibility during the pandemic

## DIVISION K—COVID–19 HERO ACT

Title I—Providing Medical Equipment for First Responders and Essential Workers
Title II—Protecting Renters and Homeowners from Evictions and Foreclosures
Title III—Protecting People Experiencing Homelessness
Title IV—Suspending Negative Credit Reporting and Strengthening Consumer and Investor Protections
Title V—Forgiving Student Loan Debt and Protecting Student Borrowers
Title VI—Standing Up For Small Businesses, Minority-Owned Businesses, and Non-Profits
Title VII—Empowering Community Financial Institutions
Title VIII—Providing Assistance for State, Territory, Tribal, and Local Governments
Title IX—Providing Oversight and Protecting Taxpayers

## DIVISION L—FAMILIES, WORKERS, AND COMMUNITY SUPPORT PROVISIONS

Title I—Amendments to Emergency Family and Medical Leave Expansion Act and Emergency Paid Sick Leave Act
Title II—COVID–19 Workforce Development Response Activities
Title III—COVID–19 Every Worker Protection Act of 2020
Title IV—Community and Family Support
Title V—COVID–19 Protections under Longshore and Harbor Workers' Compensation Act

## DIVISION M—CONSUMER PROTECTION AND TELECOMMUNICATIONS PROVISIONS

Title I—COVID–19 Price Gouging Prevention
Title II—E–Rate Support for Wi-Fi Hotspots, Other Equipment, and Connected Devices
Title III—Emergency Benefit for Broadband Service
Title IV—Continued Connectivity
Title V—Don't Break Up the T–Band
Title VI—National Suicide Hotline Designation
Title VII—COVID–19 Compassion and Martha Wright Prison Phone Justice
Title VIII—Healthcare Broadband Expansion During COVID–19

## DIVISION N—GIVING RETIREMENT OPTIONS TO WORKERS ACT

## DIVISION O—EDUCATION PROVISIONS AND OTHER PROGRAMS

Title I—Higher Education Provisions
Title II—Other Programs

## DIVISION P—ACCESS ACT

## DIVISION Q—COVID–19 HEROES FUND

Title I—Provisions relating to State, Local, Tribal, and Private Sector Workers
Title II—Provisions relating to Federal employees and COVID–19
Title III—Coordination of benefits with other programs and laws

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002308

4

DIVISION R—CHILD NUTRITION AND RELATED PROGRAMS

DIVISION S—OTHER MATTERS

Title I—Health Care Access for Urban Native Veterans Act
Title II—Tribal School Federal Insurance Parity
Title III—PRC for Native Veterans Act
Title IV—Wildlife-Borne Disease Prevention
Title V—Pandemic Relief for Aviation Workers and Passengers
Title VI—Amtrak and Rail Workers
Title VII—Energy and Environment Provisions
Title VIII—Death and disability benefits for public safety officers impacted by
        COVID–19
Title IX—Victims of Crime Act Amendments
Title X—Jabara-Heyer NO HATE Act
Title XI—Prisons and Jails
Title XII—Immigration Matters
Title XIII—Coronavirus Relief Fund Amendments
Title XIV—Rural Digital Opportunity
Title XV—Foreign Affairs Provisions

DIVISION T—ADDITIONAL OTHER MATTERS

REFERENCES

SEC. 3.

Except as expressly provided otherwise, any reference to "this Act" contained in any division of this Act shall be treated as referring only to the provisions of that division.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002309

5

# DIVISION A—CORONAVIRUS RECOVERY SUPPLEMENTAL APPROPRIATIONS ACT, 2020

4    The following sums are hereby appropriated, out of
5 any money in the Treasury not otherwise appropriated,
6 for the fiscal year ending September 30, 2020, and for
7 other purposes, namely:

8 TITLE I—AGRICULTURE, RURAL DEVELOP-
9        MENT, FOOD AND DRUG ADMINISTRATION,
10       AND RELATED AGENCIES

11            DEPARTMENT OF AGRICULTURE

12            AGRICULTURAL PROGRAMS

13            OFFICE OF INSPECTOR GENERAL

14    For an additional amount for "Office of Inspector
15 General", $2,500,000, to remain available until September
16 30, 2021, to prevent, prepare for, and respond to
17 coronavirus, domestically or internationally: *Provided*,
18 That the funding made available under this heading in
19 this Act shall be used for conducting audits and investiga-
20 tions of projects and activities carried out with funds made
21 available to the Department of Agriculture to prevent, pre-
22 pare for, and respond to coronavirus, domestically or
23 internationally: *Provided further*, That such amount is des-
24 ignated by the Congress as being for an emergency re-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002310

G:\CMTE\AP\16\FY20\_D\HEROES.XML

6

1 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

2 anced Budget and Emergency Deficit Control Act of 1985.

### DOMESTIC FOOD PROGRAMS

#### FOOD AND NUTRITION SERVICE

##### CHILD NUTRITION PROGRAMS

6     For an additional amount for "Child Nutrition Pro-

7 grams", $3,000,000,000 to remain available until Sep-

8 tember 30, 2021, to prevent, prepare for, and respond to

9 coronavirus, domestically or internationally: *Provided,*

10 That the amount provided under this heading is for the

11 purposes of carrying out section 180002 of the "Child Nu-

12 trition and Related Programs Recovery Act": *Provided*

13 *further,* That such amount is designated by the Congress

14 as being for an emergency requirement pursuant to sec-

15 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

16 gency Deficit Control Act of 1985.

##### SPECIAL SUPPLEMENTAL NUTRITION PROGRAM FOR WOMEN, INFANTS, AND CHILDREN (WIC)

19     For an additional amount for the "Special Supple-

20 mental Nutrition Program for Women, Infants, and Chil-

21 dren", $1,100,000,000, to remain available through Sep-

22 tember 30, 2022: *Provided,* That such amount is des-

23 ignated by the Congress as being for an emergency re-

24 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

25 anced Budget and Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002311

7

1    SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM

2        For an additional amount for "Supplemental Nutri-
3    tion Assistance Program", $10,000,000,000, to remain
4    available until September 30, 2021, to prevent, prepare
5    for, and respond to coronavirus: *Provided*, That such
6    amount is designated by the Congress as being for an
7    emergency requirement pursuant to section
8    251(b)(2)(A)(i) of the Balanced Budget and Emergency
9    Deficit Control Act of 1985.

10    COMMODITY ASSISTANCE PROGRAM

11       For an additional amount for "Commodity Assistance
12    Program", $150,000,000, to remain available through
13    September 30, 2021, for the emergency food assistance
14    program as authorized by section 27(a) of the Food and
15    Nutrition Act of 2008 (7 U.S.C. 2036(a)) and section
16    204(a)(1) of the Emergency Food Assistance Act of 1983
17    (7 U.S.C. 7508(a)(1)): *Provided*, That such amount is
18    designated by the Congress as being for an emergency re-
19    quirement pursuant to section 251(b)(2)(A)(i) of the Bal-
20    anced Budget and Emergency Deficit Control Act of 1985.

21       GENERAL PROVISIONS—THIS TITLE

22       Sec. 10101. For an additional amount for the Com-
23    monwealth of the Northern Mariana Islands, $1,822,000,
24    to remain available until September 30, 2021, for nutri-
25    tion assistance to prevent, prepare for, and respond to

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002312

8

1   coronavirus: *Provided*, That such amount is designated by

2   the Congress as being for an emergency requirement pur-

3   suant to section 251(b)(2)(A)(i) of the Balanced Budget

4   and Emergency Deficit Control Act of 1985.

5      Sec. 10102. Under the heading "Commodity Assist-

6   ance Program" in the Coronavirus Aid, Relief, and Eco-

7   nomic Security Act (Public Law 116–136), strike "to pre-

8   vent, prepare for, and respond to coronavirus, domestically

9   or internationally,": *Provided*, That the amounts

10   repurposed in this section that were previously designated

11   by the Congress as an emergency requirement pursuant

12   to the Balanced Budget and Emergency Deficit Control

13   Act of 1985 are designated by the Congress as an emer-

14   gency requirement pursuant to section 251(b)(2)(A)(i) of

15   the Balanced Budget and Emergency Deficit Control Act

16   of 1985.

17      Sec. 10103. For an additional amount for the pro-

18   gram established under 7 U.S.C. 5936, to prevent, prepare

19   for, and respond to coronavirus, $20,000,000, to remain

20   available until September 30, 2021: *Provided*, That such

21   amount is designated by the Congress as being for an

22   emergency requirement pursuant to section

23   251(b)(2)(A)(i) of the Balanced Budget and Emergency

24   Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002313

9

1   TITLE II—COMMERCE, JUSTICE, SCIENCE, AND

2         RELATED AGENCIES

3      DEPARTMENT OF COMMERCE

4         BUREAU OF THE CENSUS

5       CURRENT SURVEYS AND PROGRAMS

6         (INCLUDING TRANSFER OF FUNDS)

7       For an additional amount for "Current Surveys and

8   Programs", $10,000,000: *Provided*, That such sums may

9   be transferred to the Bureau of the Census Working Cap-

10  ital Fund for necessary expenses incurred as a result of

11  the coronavirus, including for payment of salaries and

12  leave to Bureau of the Census staff resulting from the sus-

13  pension of data collection for reimbursable surveys con-

14  ducted for other Federal agencies: *Provided further*, That

15  such amount is designated by the Congress as being for

16  an   emergency   requirement   pursuant   to   section

17  251(b)(2)(A)(i) of the Balanced Budget and Emergency

18  Deficit Control Act of 1985.

19      PERIODIC CENSUSES AND PROGRAMS

20      For an additional amount for "Periodic Censuses and

21  Programs", $400,000,000, to remain available until Sep-

22  tember 30, 2022, to prevent, prepare for, and respond to

23  coronavirus: *Provided*, That such amount is designated by

24  the Congress as being for an emergency requirement pur-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002314

10

1 suant to section 251(b)(2)(A)(i) of the Balanced Budget

2 and Emergency Deficit Control Act of 1985.

### NATIONAL OCEANIC AND ATMOSPHERIC
### ADMINISTRATION

#### ASSISTANCE TO FISHERY PARTICIPANTS

6 Pursuant to section 12005 of the Coronavirus Aid,

7 Relief, and Economic Security Act of 2020 (Public Law

8 116–136), for an additional amount for "Assistance to

9 Fishery Participants", $100,000,000, to remain available

10 until September 30, 2021, for necessary expenses to pro-

11 vide assistance to Tribal, subsistence, commercial, and

12 charter fishery participants affected by the novel

13 coronavirus (COVID–19), which may include direct relief

14 payments: *Provided*, That such amount is designated by

15 the Congress as being for an emergency requirement pur-

16 suant to section 251(b)(2)(A)(i) of the Balanced Budget

17 and Emergency Deficit Control Act of 1985.

### DEPARTMENTAL MANAGEMENT

#### OFFICE OF INSPECTOR GENERAL

20 For an additional amount for "Office of Inspector

21 General", $1,000,000, to remain available until expended

22 to prevent, prepare for, and respond to coronavirus, in-

23 cluding the impact of coronavirus on the work of the De-

24 partment of Commerce and to carry out investigations and

25 audits related to the funding made available for the De-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002315

11

1 partment of Commerce in this Act and in title II of divi-

2 sion B of Public Law 116–136: *Provided*, That such

3 amount is designated by the Congress as being for an

4 emergency requirement pursuant to section

5 251(b)(2)(A)(i) of the Balanced Budget and Emergency

6 Deficit Control Act of 1985.

7 ADMINISTRATIVE PROVISION—DEPARTMENT OF

8 COMMERCE

9 SEC. 10201. Notwithstanding any other provision of

10 law, the Federal share for grants provided by the Eco-

11 nomic Development Administration under this Act, Public

12 Law 116–93, Public Law 116–20, and Public Law 116–

13 136 shall be 100 percent: *Provided*, That the amounts

14 repurposed in this section that were previously designated

15 by the Congress as an emergency requirement pursuant

16 to the Balanced Budget and Emergency Deficit Control

17 Act of 1985 are designated by the Congress as an emer-

18 gency requirement pursuant to section 251(b)(2)(A)(i) of

19 the Balanced Budget and Emergency Deficit Control Act

20 of 1985.

21 DEPARTMENT OF JUSTICE

22 FEDERAL PRISON SYSTEM

23 SALARIES AND EXPENSES

24 For an additional amount for "Salaries and Ex-

25 penses", $200,000,000, to remain available until Sep-

12

1 tember 30, 2021, to prevent, prepare for, and respond to

2 coronavirus, including the impact of coronavirus on the

3 work of the Department of Justice, to include funding for

4 medical testing and services, personal protective equip-

5 ment, hygiene supplies and services, and sanitation serv-

6 ices: *Provided*, That such amount is designated by the

7 Congress as being for an emergency requirement pursuant

8 to section 251(b)(2)(A)(i) of the Balanced Budget and

9 Emergency Deficit Control Act of 1985.

10                    OFFICE OF INSPECTOR GENERAL

11      For an additional amount for ''Office of Inspector

12 General'', $3,000,000, to remain available until expended

13 to prevent, prepare for, and respond to coronavirus, in-

14 cluding the impact of coronavirus on the work of the De-

15 partment of Justice and to carry out investigations and

16 audits related to the funding made available for the De-

17 partment of Justice in this Act: *Provided*, That such

18 amount is designated by the Congress as being for an

19 emergency requirement pursuant to section

20 251(b)(2)(A)(i) of the Balanced Budget and Emergency

21 Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002317

13

1    STATE AND LOCAL LAW ENFORCEMENT ACTIVITIES

2        OFFICE ON VIOLENCE AGAINST WOMEN

3        VIOLENCE AGAINST WOMEN PREVENTION AND

4            PROSECUTION PROGRAMS

5    For an additional amount for "Violence Against

6  Women Prevention and Prosecution Programs",

7  $100,000,000, to remain available until expended, of

8  which—

9        (1) $30,000,000 is for grants to combat vio-

10    lence against women, as authorized by part T of the

11    Omnibus Crime Control and Safe Streets Acts of

12    1968;

13        (2) $15,000,000 is for transitional housing as-

14    sistance grants for victims of domestic violence, dat-

15    ing violence, stalking, or sexual assault, as author-

16    ized by section 40299 of the Violent Crime Control

17    and Law Enforcement Act of 1994 (Public Law

18    103–322; "1994 Act");

19        (3) $15,000,000 is for sexual assault victims

20    assistance, as authorized by section 41601 of the

21    1994 Act;

22        (4) $10,000,000 is for rural domestic violence

23    and child abuse enforcement assistance grants, as

24    authorized by section 40295 of the 1994 Act;

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002318

14

1    (5) $10,000,000 is for legal assistance for vic-
2    tims, as authorized by section 1201 of the Victims
3    of Trafficking and Violence Protection Act of 2000
4    (Public Law 106–386; "2000 Act");

5    (6) $4,000,000 is for grants to assist tribal gov-
6    ernments in exercising special domestic violence
7    criminal jurisdiction, as authorized by section 904 of
8    the Violence Against Women Reauthorization Act of
9    2013; and

10    (7) $16,000,000 is for grants to support fami-
11    lies in the justice system, as authorized by section
12    1301 of the 2000 Act:

13  *Provided*, That funds made available under this heading
14  shall be made available without any otherwise applicable
15  requirement that a recipient of such funds provide any
16  other Federal funds, or any non-Federal funds, as a condi-
17  tion to receive the funds made available under this head-
18  ing: *Provided further*, That such amount is designated by
19  the Congress as being for an emergency requirement pur-
20  suant to section 251(b)(2)(A)(i) of the Balanced Budget
21  and Emergency Deficit Control Act of 1985.

22    OFFICE OF JUSTICE PROGRAMS

23  STATE AND LOCAL LAW ENFORCEMENT ASSISTANCE

24    For an additional amount for "State and Local Law
25  Enforcement Assistance", $300,000,000, to remain avail-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002319

15

1 able until expended, for the same purposes and subject
2 to the same conditions as the appropriations for fiscal year
3 2020 under this heading in title II of division B of Public
4 Law 116–136, including for the purchase of personal pro-
5 tective equipment, and for costs related to preventing and
6 controlling coronavirus at correctional institutions: *Pro-*
7 *vided*, That, notwithstanding section 502(a)(1) of the Om-
8 nibus Crime Control and Safe Streets Act of 1968 (34
9 U.S.C. 10153), funds provided under this heading in both
10 this Act and title II of division B of Public Law 116–
11 136 may be used to supplant State or local funds: *Pro-*
12 *vided further*, That funds made available under this head-
13 ing in both this Act and title II of division B of Public
14 Law 116–136 shall be made available without any other-
15 wise applicable requirement that a recipient of such funds
16 provide any other Federal funds, or any non-Federal
17 funds, as a condition to receive the funds made available
18 under such heading: *Provided further*, That such amount
19 is designated by the Congress as being for an emergency
20 requirement pursuant to section 251(b)(2)(A)(i) of the
21 Balanced Budget and Emergency Deficit Control Act of
22 1985.

23     For an additional amount for ''State and Local Law
24 Enforcement Assistance'', $250,000,000, to remain avail-
25 able until expended, for offender reentry programs and re-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002320

G:\CMTE\AP\16\FY20\_D\HEROES.XML

16

1  search, as authorized by the Second Chance Act of 2007

2  (Public Law 110–199) and by the Second Chance Reau-

3  thorization Act of 2018 (Public Law 115–391), without

4  regard to the time limitations specified at section 6(1) of

5  such Act, to prevent, prepare for, and respond to

6  coronavirus: *Provided*, That, notwithstanding any other

7  provision of law, funds provided under this heading may

8  be used to supplant State or local funds: *Provided further*,

9  That funds made available under this heading shall be

10  made available without any otherwise applicable require-

11  ment that a recipient of such funds provide any other Fed-

12  eral funds, or any non-Federal funds, as a condition to

13  receive the funds made available under this heading: *Pro-*

14  *vided further*, That such amount is designated by the Con-

15  gress as being for an emergency requirement pursuant to

16  section 251(b)(2)(A)(i) of the Balanced Budget and

17  Emergency Deficit Control Act of 1985.

18  For an additional amount for ''State and Local Law

19  Enforcement Assistance'', $600,000,000, to remain avail-

20  able until expended, for grants, contracts, cooperative

21  agreements, and other assistance as authorized by the

22  Pandemic Justice Response Act (''the Act''): *Provided*,

23  That $500,000,000 is to establish and implement policies

24  and procedures to prevent, detect, and stop the presence

25  and spread of COVID–19 among arrestees, detainees, in-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002321

17

1 mates, correctional facility staff, and visitors to the facili-

2 ties; and for pretrial citation and release grants, as au-

3 thorized by the Act: *Provided further*, That $25,000,000

4 is for Rapid COVID–19 Testing, as authorized by the Act:

5 *Provided further*, That $75,000,000 is for grants for Juve-

6 nile Specific Services, as authorized by the Act: *Provided*

7 *further*, That, notwithstanding any other provision of law,

8 funds provided under this heading may be used to sup-

9 plant State or local funds: *Provided further*, That funds

10 made available under this heading shall be made available

11 without any otherwise applicable requirement that a re-

12 cipient of such funds provide any other Federal funds, or

13 any non-Federal funds, as a condition to receive the funds

14 made available under this heading: *Provided further*, That

15 such amount is designated by the Congress as being for

16 an emergency requirement pursuant to section

17 251(b)(2)(A)(i) of the Balanced Budget and Emergency

18 Deficit Control Act of 1985.

19      COMMUNITY ORIENTED POLICING SERVICES

20    COMMUNITY ORIENTED POLICING SERVICES PROGRAMS

21      For an additional amount for ''Community Oriented

22 Policing Services'', $300,000,000, to remain available

23 until expended, for grants under section 1701 of title I

24 of the 1968 Omnibus Crime Control and Safe Streets Act

25 (34 U.S.C. 10381) for hiring and rehiring of additional

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002322

18

1 career law enforcement officers under part Q of such title,

2 notwithstanding subsection (i) of such section, and includ-

3 ing for the purchase of personal protective equipment:

4 *Provided*, That, notwithstanding 34 U.S.C. 10384, funds

5 provided under this heading may be used to supplant

6 State or local funds and may be used to retain career law

7 enforcement officers: *Provided further*, That funds made

8 available under this heading shall be made available with-

9 out any otherwise applicable requirement that a recipient

10 of such funds provide any other Federal funds, or any

11 non-Federal funds, as a condition to receive the funds

12 made available under this heading: *Provided further*, That

13 such amount is designated by the Congress as being for

14 an  emergency  requirement  pursuant  to  section

15 251(b)(2)(A)(i) of the Balanced Budget and Emergency

16 Deficit Control Act of 1985.

17                 SCIENCE

18           NATIONAL SCIENCE FOUNDATION

19            RESEARCH AND RELATED ACTIVITIES

20              (INCLUDING TRANSFER OF FUNDS)

21      For an additional amount for ''Research and Related

22 Activities'', $125,000,000, to remain available until Sep-

23 tember 30, 2022, to prevent, prepare for, and respond to

24 coronavirus, including to fund research grants, of which

25 $1,000,000 shall be for a study on the spread of COVID–

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002323

19

1 19 related disinformation: *Provided further*, That, within

2 the amount appropriated under this heading in this Act,

3 up to 2 percent of funds may be transferred to the "Agen-

4 cy Operations and Award Management" account for man-

5 agement, administration, and oversight of funds provided

6 under this heading in this Act: *Provided further*, That such

7 amount is designated by the Congress as being for an

8 emergency requirement pursuant to section

9 251(b)(2)(A)(i) of the Balanced Budget and Emergency

10 Deficit Control Act of 1985.

11 RELATED AGENCIES

12 LEGAL SERVICES CORPORATION

13 PAYMENT TO THE LEGAL SERVICES CORPORATION

14 For an additional amount for "Payment to the Legal

15 Services Corporation", $50,000,000, for the same pur-

16 poses and subject to the same conditions as the appropria-

17 tions for fiscal year 2020 under this heading in title II

18 of division B of Public Law 116–136: *Provided*, That such

19 amount is designated by the Congress as being for an

20 emergency requirement pursuant to section

21 251(b)(2)(A)(i) of the Balanced Budget and Emergency

22 Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002324

20

1 TITLE III—FINANCIAL SERVICES AND GENERAL

2 GOVERNMENT

3 DEPARTMENT OF THE TREASURY

4 Departmental Offices

5 Office of Inspector General

6 Salaries and Expenses

7     For an additional amount for "Salaries and Ex-

8 penses", $35,000,000, to remain available until expended,

9 to conduct monitoring and oversight of the receipt, dis-

10 bursement, and use of funds made available under the

11 "Coronavirus State Fiscal Relief Fund" and the

12 "Coronavirus Local Fiscal Relief Fund" (collectively,

13 "Fiscal Relief Funds"): *Provided*, That, if the Inspector

14 General of the Department of the Treasury determines

15 that an entity receiving a payment from amounts provided

16 by the Fiscal Relief Funds has failed to comply with the

17 provisions governing the use of such funding, the Inspec-

18 tor General shall transmit any relevant information re-

19 lated to such determination to the Committees on Appro-

20 priations of the House of Representatives and the Senate

21 not later than 5 days after any such determination is

22 made: *Provided further*, That such amount is designated

23 by the Congress as being for an emergency requirement

24 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

25 et and Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002325

21

1         TREASURY INSPECTOR GENERAL FOR TAX

2                ADMINISTRATION

3            SALARIES AND EXPENSES

4     For an additional amount for "Salaries and Ex-

5 penses", $2,500,000, to remain available until expended,

6 to prevent, prepare for, and respond to coronavirus, do-

7 mestically or internationally: *Provided*, That such amount

8 is designated by the Congress as being for an emergency

9 requirement pursuant to section 251(b)(2)(A)(i) of the

10 Balanced Budget and Emergency Deficit Control Act of

11 1985.

12          HOMEOWNER ASSISTANCE FUND

13     For activities and assistance authorized in section

14 110202 of the "COVID–19 HERO Act" ,

15 $75,000,000,000, to remain available until expended: *Pro-*

16 *vided*, That such amount is designated by the Congress

17 as being for an emergency requirement pursuant to sec-

18 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

19 gency Deficit Control Act of 1985.

20        BUREAU OF THE FISCAL SERVICE

21          SALARIES AND EXPENSES

22     For an additional amount for "Salaries and Ex-

23 penses", $78,650,000, to remain available until September

24 30, 2021, to prevent, prepare for, and respond to

25 coronavirus, domestically or internationally: *Provided,*

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002326

22

1   That such amount is designated by the Congress as being

2 for an emergency requirement pursuant to section

3 251(b)(2)(A)(i) of the Balanced Budget and Emergency

4 Deficit Control Act of 1985.

5     CORONAVIRUS STATE FISCAL RELIEF FUND

6     For making payments to States, territories, and Trib-

7 al governments to mitigate the fiscal effects stemming

8 from the public health emergency with respect to the

9 Coronavirus Disease (COVID–19), $540,000,000,000 to

10 remain available until expended, which shall be in addition

11 to any other amounts available for making payments to

12 States, territories, and Tribal governments for any pur-

13 pose (including payments made under section 601 of the

14 Social Security Act), of which:

15         (1) $20,000,000,000 shall be for making

16         payments to the Commonwealth of Puerto Rico,

17         United States Virgin Islands, Guam, Common-

18         wealth of the Northern Mariana Islands, and

19         American Samoa: *Provided*, That of the amount

20         made available in this paragraph, half shall be

21         allocated equally among each entity specified in

22         this paragraph, and half shall be allocated as

23         an additional amount to each such entity in an

24         amount which bears the same proportion to half

25         of the total amount provided under this para-

G:\CMTE\AP\16\FY20\_D\HEROES.XML

23

1      graph as the relative population of each such

2      entity bears to the total population of all such

3      entities;

4          (2) $20,000,000,000 shall be for making

5      payments to Tribal governments: *Provided*,

6      That payments of amounts made available in

7      this paragraph shall be made to each Tribal

8      Government in an amount determined by the

9      Secretary of the Treasury, in consultation with

10      the Secretary of the Interior and Indian Tribes,

11      that is based on increased aggregate expendi-

12      tures of each such Tribal government (or a trib-

13      ally-owned entity of such Tribal government) in

14      fiscal year 2020 relative to aggregate expendi-

15      tures in fiscal year 2019 by the Tribal govern-

16      ment (or tribally-owned entity) and determined

17      in such manner as the Secretary determines ap-

18      propriate to ensure that all amounts available

19      pursuant to the preceding proviso for fiscal year

20      2020 are distributed to Tribal governments:

21          (3) $250,000,000,000 shall be for making

22      initial payments to each of the 50 States and

23      the District of Columbia, of which—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002328

G:\CMTE\AP\16\FY20\_D\HEROES.XML

24

1          (A) $51,000,000,000 shall be al-
2          located equally between each of the 50
3          States and the District of Columbia;

4          (B) $150,000,000,000 shall be
5          allocated as an additional amount to
6          each such entity in an amount which
7          bears the same proportion to the total
8          amount provided under this subpara-
9          graph as the relative population of
10         each such entity bears to the total
11         population of all such entities;

12         (C) $49,000,000,000 shall be al-
13         located as additional amounts among
14         each of the 50 States and the District
15         of Columbia in an amount which
16         bears the same proportion to the total
17         amount provided under this subpara-
18         graph as the relative prevalence of
19         COVID–19 within each such entity
20         bears to the total prevalence of
21         COVID–19 within all such entities:
22         *Provided*, That the relative prevalence
23         of COVID–19 shall be calculated
24         using the most recent data on the
25         number of confirmed and probable

DOC_0002329

25

1       cases as published on the Internet by

2       the Centers for Disease Control and

3       Prevention for each entity specified in

4       the preceding proviso;

5    (4) $250,000,000,000 shall be for making an

6 additional payment to each of the 50 States and the

7 District of Columbia, of which—

8      (A) $51,000,000,000 shall be allocated

9     equally between each of the 50 States and the

10    District of Columbia; and

11      (B) $199,000,000,000 shall be allocated

12    between each such entity in an additional

13    amount which bears the same proportion to the

14    total amount provided under this subparagraph

15    as the average estimated number of seasonally-

16    adjusted unemployed individuals (as measured

17    by the Bureau of Labor Statistics Local Area

18    Unemployment Statistics program) in each such

19    entity over the 3-month period ending in March

20    2021 bears to the average estimated number of

21    seasonally-adjusted unemployed individuals in

22    all such entities over the same period.

23 *Provided further*, That any entity receiving a payment

24 from funds made available under this heading in this Act

25 shall only use such amounts to respond to, mitigate, cover

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002330

26

1   costs or replace foregone revenues not projected on Janu-

2   ary 31, 2020 stemming from the public health emergency,

3   or its negative economic impacts, with respect to the

4   Coronavirus Disease (COVID–19): *Provided further*, That

5   if the Inspector General of the Department of the Treas-

6   ury determines that an entity receiving a payment from

7   amounts provided under this heading has failed to comply

8   with the preceding proviso, the amount equal to the

9   amount of funds used in violation of such subsection shall

10  be booked as a debt of such entity owed to the Federal

11  Government, and any amounts recovered under this sub-

12  section shall be deposited into the general fund of the

13  Treasury as discretionary offsetting receipts: *Provided fur-*

14  *ther*, That for purposes of the preceding provisos under

15  this heading in this Act, the population of each entity de-

16  scribed in any such proviso shall be determined based on

17  the most recent year for which data are available from

18  the Bureau of the Census, or in the case of an Indian

19  tribe, shall be determined based on data certified by the

20  Tribal government: *Provided further*, That as used under

21  this heading in this Act, the terms ''Tribal government''

22  and ''Indian Tribe'' have the same meanings as specified

23  in section 601(g) of the Social Security Act (42 U.S.C.

24  601(g)), as added by section 5001 of the CARES Act

25  (Public Law 116-136) and amended by section 191301 of

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002331

G:\CMTE\AP\16\FY20\_D\HEROES.XML

1 division X of this Act, and the term "State" means one
2 of the 50 States: *Provided further*, That the Secretary of
3 Treasury shall make all payments required pursuant to
4 paragraphs (1), (2), and (3) not later than 30 days after
5 the date of enactment of this Act, and shall make all pay-
6 ments required pursuant to paragraph (4) not later than
7 May 3, 2021: *Provided further*, That such amount is des-
8 ignated by the Congress as being for an emergency re-
9 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-
10 anced Budget and Emergency Deficit Control Act of 1985.

11 CORONAVIRUS LOCAL FISCAL RELIEF FUND

12 For making payments to metropolitan cities, coun-
13 ties, and other units of general local government to miti-
14 gate the fiscal effects stemming from the public health
15 emergency with respect to the Coronavirus Disease
16 (COVID–19), $375,000,000,000, to remain available until
17 expended, which shall be in addition to any other amounts
18 available for making payments to metropolitan cities,
19 counties, and other units of general local government (in-
20 cluding payments made under section 601 of the Social
21 Security Act), of which—

22        (1) $187,500,000,000 shall be for making pay-
23        ments to metropolitan cities and other units of gen-
24        eral local government (as those terms are defined in

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002332

28

1     section 102 of the Housing and Community Devel-

2     opment Act of 1974 (42 U.S.C. 5302)), of which—

3         (A) $131,250,000,000 shall be allocated

4     pursuant to the formula under section

5     106(b)(1) of the Housing and Community De-

6     velopment Act of 1974 (42 U.S.C. 5306(b)(1))

7     to metropolitan cities (as defined in section

8     102(a)(4) of such Act (42 U.S.C. 5302(a)(4)),

9     including metropolitan cities that have relin-

10     quished or deferred their status as a metropoli-

11     tan city as of the date of enactment of this Act:

12     *Provided*, That $87,500,000,000 of the funds

13     provided under this subparagraph shall be paid

14     not later than 30 days after the date of enact-

15     ment of this Act: *Provided further*, That

16     $43,750,000,000 of the funds provided under

17     this subparagraph shall be paid not earlier than

18     April 15, 2021, but not later than May 3, 2021;

19     and

20         (B) $56,250,000,000 shall be distributed

21     to each State (as that term is defined in section

22     102 of the Housing and Community Develop-

23     ment Act of 1974 (42 U.S.C. 5302)) for use by

24     units of general local government, other than

25     counties or parishes, in nonentitlement areas

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002333

29

1    (as defined in such section 102) of such States

2    in an amount which bears the same proportion

3    to the total amount provided under this sub-

4    paragraph as the total population of such units

5    of general local government within the State

6    bears to the total population of all such units

7    of general local government in all such States:

8    *Provided*, That two-thirds of the funds provided

9    under this subparagraph and allocated to each

10   such unit of general local government shall be

11   distributed to each such unit of general local

12   government not later than 30 days after the

13   date of enactment of this Act: *Provided further*,

14   That the remainder of the funds provided under

15   this subparagraph and allocated to each such

16   unit of general local government shall be dis-

17   tributed to each such unit of general local gov-

18   ernment not earlier than April 15, 2021, but

19   not later than May 3, 2021: *Provided further*,

20   That a State shall pass-through the amounts

21   received under this subparagraph, within 30

22   days of receipt, to each such unit of general

23   local government in an amount that bears the

24   same proportion to the amount distributed to

25   each such State as the population of such unit

DOC_0002334

30

1  of general local government bears to the total

2  population of all such units of general local gov-

3  ernment within each such State: *Provided fur-*

4  *ther*, That if a State has not elected to dis-

5  tribute amounts allocated under this paragraph,

6  the Secretary of the Treasury shall pay the ap-

7  plicable amounts under this subparagraph to

8  such units of general local government in the

9  State not later than 30 days after the date on

10  which the State would otherwise have received

11  the amounts from the Secretary; and

12  (2) $187,500,000,000 shall be paid directly to

13  counties within the 50 States, the District of Colum-

14  bia, the Commonwealth of Puerto Rico, the United

15  States Virgin Islands, Guam, the Commonwealth of

16  the Northern Mariana Islands, and American Samoa

17  in an amount which bears the same proportion to

18  the total amount provided under this paragraph as

19  the relative population of each such county bears to

20  the total population of all such entities: *Provided*,

21  That two-thirds of the funds provided under this

22  paragraph and allocated to each such county shall be

23  distributed to each such county not later than 30

24  days after the date of enactment of this Act: *Pro-*

25  *vided further*, That the remainder of the amount al-

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002335

31

1    located to each such county under this paragraph

2    shall be distributed to each such county not earlier

3    than April 15, 2021, but not later than May 3,

4    2021: *Provided further*, That no county that is an

5    ''urban county'' (as defined in section 102 of the

6    Housing and Community Development Act of 1974

7    (42 U.S.C. 5302)) shall receive less than the amount

8    the county would otherwise receive if the amount

9    distributed under this paragraph were allocated to

10    metropolitan cities and urban counties under section

11    106(b) of the Housing and Community Development

12    Act of 1974 (42 U.S.C. 5306(b)): *Provided further*,

13    That in the case of an amount to be paid to a coun-

14    ty that is not a unit of general local government, the

15    amount shall instead be paid to the State in which

16    such county is located, and such State shall dis-

17    tribute such amount to units of general local govern-

18    ment within such county in an amounts that bear

19    the same proportion as the population of such units

20    of general local government bear to the total popu-

21    lation of such county:

22  *Provided further*, That any entity receiving a payment

23  from funds made available under this heading in this Act

24  shall only use such amounts to respond to, mitigate, cover

25  costs or replace foregone revenues not projected on Janu-

g:\VHLC\051220\051220.072.xml      (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002336

32

1   ary 31, 2020 stemming from the public health emergency,

2   or its negative economic impacts, with respect to the

3   Coronavirus Disease (COVID–19): *Provided further*, That

4   if the Inspector General of the Department of the Treas-

5   ury determines that an entity receiving a payment from

6   amounts provided under this heading has failed to comply

7   with the preceding proviso, the amount equal to the

8   amount of funds used in violation of such subsection shall

9   be booked as a debt of such entity owed to the Federal

10   Government, and any amounts recovered under this sub-

11   section shall be deposited into the general fund of the

12   Treasury as discretionary offsetting receipts: *Provided fur-*

13   *ther*, That nothing in paragraph (1) or (2) shall be con-

14   strued as prohibiting a unit of general local government

15   that has formed a consolidated government, or that is geo-

16   graphically contained (in full or in part) within the bound-

17   aries of another unit of general local government from re-

18   ceiving a distribution under each of subparagraphs (A)

19   and (B) under paragraph (1) or under paragraph (2), as

20   applicable, based on the respective formulas specified con-

21   tained therein: *Provided further*, That the amounts other-

22   wise determined for distribution to units of local govern-

23   ment under each of subparagraphs (A) and (B) under

24   paragraph (1) and under paragraph (2) shall each be ad-

25   justed by the Secretary of the Treasury on a pro rata basis

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002337

33

1  to the extent necessary to comply with the amount appro-

2  priated and the requirements specified in each paragraph

3  and subparagraph, as applicable: *Provided further*, That

4  as used under this heading in this Act, the term "county"

5  means a county, parish, or other equivalent county divi-

6  sion (as defined by the Bureau of the Census): *Provided*

7  *further*, That for purposes of the preceding provisos under

8  this heading in this Act, the population of an entity shall

9  be determined based on the most recent year for which

10  data are available from the Bureau of the Census: *Pro-*

11  *vided further*, That such amount is designated by Congress

12  as being for an emergency requirement pursuant to sec-

13  tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

14  gency Deficit Control Act of 1985.

15  COMMUNITY DEVELOPMENT FINANCIAL INSTITUTIONS

16  FUND PROGRAM ACCOUNT

17  (INCLUDING TRANSFER OF FUNDS)

18  For an additional amount for the "Community Devel-

19  opment Financial Institutions Fund Program Account",

20  $1,000,000,000, to remain available until September 30,

21  2021, to prevent, prepare for, and respond to coronavirus:

22  *Provided*, That the Community Development Financial In-

23  stitutions Fund (CDFI) shall provide grants using a for-

24  mula that takes into account criteria such as certification

25  status, financial and compliance performance, portfolio

34

1 and balance sheet strength, and program capacity: *Pro-*
2 *vided further*, That no less than $25,000,000 may be for
3 financial assistance, technical assistance, and training and
4 outreach programs designed to benefit Native American,
5 Native Hawaiian, and Alaska Native communities: *Pro-*
6 *vided further*, That the CDFI Fund shall make funds
7 available under this subsection within 60 days of the date
8 of enactment of this Act: *Provided further*, That funds
9 made available under this heading may be used for admin-
10 istrative expenses, including administration of CDFI
11 Fund programs and the New Markets Tax Credit Pro-
12 gram: *Provided further*, That such amount is designated
13 by the Congress as being for an emergency requirement
14 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-
15 et and Emergency Deficit Control Act of 1985.

16 ADMINISTRATIVE PROVISION—INTERNAL REVENUE

17 SERVICE

18 (INCLUDING TRANSFER OF FUNDS)

19 SEC. 10301. In addition to the amounts otherwise
20 available to the Internal Revenue Service in fiscal year
21 2020, $520,000,000, to remain available until September
22 30, 2021, shall be available to prevent, prepare for, and
23 respond to coronavirus, including for costs associated with
24 the extended filing season: *Provided*, That such funds may
25 be transferred by the Commissioner to the ''Taxpayer

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002339

35

1 Services'', ''Enforcement'', or ''Operations Support'' ac-
2 counts of the Internal Revenue Service for an additional
3 amount to be used solely to prevent, prepare for, and re-
4 spond to coronavirus, domestically or internationally: *Pro-*
5 *vided further*, That the Committees on Appropriations of
6 the House of Representatives and the Senate shall be noti-
7 fied in advance of any such transfer: *Provided further*,
8 That such transfer authority is in addition to any other
9 transfer authority provided by law: *Provided further*, That
10 not later than 30 days after the date of enactment of this
11 Act, the Commissioner shall submit to the Committees on
12 Appropriations of the House of Representatives and the
13 Senate a spending plan for such funds: *Provided further*,
14 That such amount is designated by the Congress as being
15 for an emergency requirement pursuant to section
16 251(b)(2)(A)(i) of the Balanced Budget and Emergency
17 Deficit Control Act of 1985.

18 INDEPENDENT AGENCIES

19 ELECTION ASSISTANCE COMMISSION

20 ELECTION RESILIENCE GRANTS

21 (INCLUDING TRANSFER OF FUNDS)

22 For an additional amount for payments by the Elec-
23 tion Assistance Commission to States for contingency
24 planning, preparation, and resilience of elections for Fed-
25 eral office, $3,600,000,000, to remain available until Sep-

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002340

36

1  tember 30, 2021: *Provided*, That of the amount provided

2  under this heading, up to $5,000,000 may be transferred

3  to and merged with ''Election Assistance Commission—

4  Salaries and Expenses'': *Provided further*, That under this

5  heading the term ''State'' means each of the 50 States,

6  the District of Columbia, the Commonwealth of Puerto

7  Rico, Guam, American Samoa, the United States Virgin

8  Islands, and the Commonwealth of the Northern Mariana

9  Islands: *Provided further*, That the amount of the pay-

10 ments made to a State under this heading shall be con-

11 sistent with section 103 of the Help America Vote Act of

12 2002 (52 U.S.C. 20903): *Provided further*, That for the

13 purposes of the preceding proviso, each reference to

14 ''$5,000,000'' in such section 103 shall be deemed to refer

15 to ''$7,500,000'': *Provided further*, That not later than 30

16 days after the date of enactment of this Act, the Election

17 Assistance Commission shall obligate the funds to States

18 under this heading in this Act: *Provided further*, That not

19 less than 50 percent of the amount of the payment made

20 to a State under this heading in this Act shall be allocated

21 in cash or in kind to the units of local government which

22 are responsible for the administration of elections for Fed-

23 eral office in the State: *Provided further*, That such

24 amount is designated by the Congress as being for an

25 emergency    requirement    pursuant    to    section

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002341

37

1 251(b)(2)(A)(i) of the Balanced Budget and Emergency

2 Deficit Control Act of 1985.

ADMINISTRATIVE PROVISION—ELECTION ASSISTANCE

COMMISSION

5 SEC. 10302. (a) The last proviso under the heading

6 "Election Assistance Commission—Election Security

7 Grants" in the Financial Services and General Govern-

8 ment Appropriations Act, 2020 (division C of Public Law

9 116–93; 133 Stat. 2461) shall not apply with respect to

10 any payment made to a State using funds appropriated

11 or otherwise made available to the Election Assistance

12 Commission under the Coronavirus Aid, Relief, and Eco-

13 nomic Security Act (Public Law 116–136).

14 (b) The first proviso under the heading "Election As-

15 sistance Commission—Election Security Grants" in the

16 Coronavirus Aid, Relief, and Economic Security Act (Pub-

17 lic Law 116–136) is amended by striking "within 20 days

18 of each election in the 2020 Federal election cycle in that

19 State," and inserting "not later than October 30, 2021,".

20 (c) The fourth proviso under the heading "Election

21 Assistance Commission—Election Security Grants" in the

22 Coronavirus Aid, Relief, and Economic Security Act (Pub-

23 lic Law 116–136) is amended by striking "December 31,

24 2020" and inserting "September 30, 2021".

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002342

38

1    (d) Notwithstanding any requirement that a State
2 legislature appropriate and release any funds made avail-
3 able under the Help America Vote Act of 2002, the chief
4 election official of each State shall have access to the funds
5 made available under the heading "Election Assistance
6 Commission—Election   Security   Grants"   in   the
7 Coronavirus Aid, Relief, and Economic Security Act (Pub-
8 lic Law 116–136) without any such action by the State
9 legislature.

10    (e) A State may elect to reallocate funds allocated
11 under the heading "Election Assistance Commission—
12 Election Security Grants" in the Coronavirus Aid, Relief,
13 and Economic Security Act (Public Law 116–136) as
14 funds allocated under the heading "Election Assistance
15 Commission—Election Security Grants" in the Financial
16 Services and General Government Appropriations Act,
17 2020 (division C of Public Law 116–93; 133 Stat. 2461)
18 that were spent to prevent, prepare for, and respond to
19 coronavirus, domestically or internationally, for the 2020
20 Federal election cycle; or funds allocated under the head-
21 ing "Election Assistance Commission—Election Reform
22 Program" in the Financial Services and Government Ap-
23 propriations Act, 2018 (division E of Public Law 115–
24 141) that were spent to prevent, prepare for, and respond

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002343

39

1 to coronavirus, domestically or internationally, for the
2 2020 Federal election cycle.

3      (f) This section shall take effect as if included in the
4 enactment of the Coronavirus Aid, Relief, and Economic
5 Security Act (Public Law 116–136).

6      (g) The amounts repurposed in this section that were
7 previously designated by the Congress as an emergency
8 requirement pursuant to the Balanced Budget and Emer-
9 gency Deficit Control Act of 1985 are designated by the
10 Congress as an emergency requirement pursuant to sec-
11 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-
12 gency Deficit Control Act of 1985.

13           FEDERAL COMMUNICATIONS COMMISSION

14                  SALARIES AND EXPENSES

15      For an additional amount for "Salaries and Ex-
16 penses", $24,000,000, to remain available until September
17 30, 2021, for implementing title VIII of the Communica-
18 tions Act of 1934 (47 U.S.C. 641 et seq.), as added by
19 the Broadband DATA Act (Public Law 116–130): *Pro-*
20 *vided*, That such amount is designated by the Congress
21 as being for an emergency requirement pursuant to sec-
22 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-
23 gency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002344

1    EMERGENCY CONNECTIVITY FUND

2    For an additional amount for the "Emergency
3 Connectivity Fund", $1,500,000,000, to remain available
4 until September 30, 2021, to prevent, prepare for, and re-
5 spond to coronavirus, domestically or internationally,
6 through the provision of funding for Wi-fi hotspots, other
7 equipment, connected devices, and advanced telecommuni-
8 cations and information services to schools and libraries
9 as authorized in section 130201: *Provided*, That such
10 amount is designated by the Congress as being for an
11 emergency requirement pursuant to section
12 251(b)(2)(A)(i) of the Balanced Budget and Emergency
13 Deficit Control Act of 1985.

14    EMERGENCY BROADBAND CONNECTIVITY FUND

15    For an additional amount for the "Emergency
16 Broadband Connectivity Fund", $4,000,000,000, to re-
17 main available until September 30, 2021, to prevent, pre-
18 pare for, and respond to coronavirus, domestically or
19 internationally, through the provision of an emergency
20 benefit for broadband service as authorized in section
21 130301: *Provided*, That such amount is designated by the
22 Congress as being for an emergency requirement pursuant
23 to section 251(b)(2)(A)(i) of the Balanced Budget and
24 Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002345

41

1          GENERAL SERVICES ADMINISTRATION

2              TECHNOLOGY MODERNIZATION FUND

3          For an additional amount for the ''Technology Mod-
4     ernization Fund'', $1,000,000,000, to remain available
5     until September 30, 2022, for technology-related mod-
6     ernization activities to prevent, prepare for, and respond
7     to coronavirus, domestically or internationally: *Provided*,
8     That such amount is designated by the Congress as being
9     for an emergency requirement pursuant to section
10    251(b)(2)(A)(i) of the Balanced Budget and Emergency
11    Deficit Control Act of 1985.

12         OFFICE OF PERSONNEL MANAGEMENT

13             OFFICE OF INSPECTOR GENERAL

14               SALARIES AND EXPENSES

15         For an additional amount for ''Salaries and Ex-
16    penses'', $1,000,000, to remain available until expended
17    to prevent, prepare for, and respond to coronavirus, do-
18    mestically or internationally: *Provided*, That such amount
19    is designated by the Congress as being for an emergency
20    requirement pursuant to section 251(b)(2)(A)(i) of the
21    Balanced Budget and Emergency Deficit Control Act of
22    1985.

g:\VHLC\051220\051220.072.xml      (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002346

42

1        SMALL BUSINESS ADMINISTRATION

2            EMERGENCY EIDL GRANTS

3        For an additional amount for "Emergency EIDL

4   Grants" for the cost of emergency EIDL grants author-

5   ized by section 1110 of division A of the CARES Act

6   (Public Law 116–136), $10,000,000,000, to remain avail-

7   able until expended, to prevent, prepare for, and respond

8   to coronavirus, domestically or internationally: *Provided*,

9   That such amount is designated by the Congress as being

10  for an emergency requirement pursuant to section

11  251(b)(2)(A)(i) of the Balanced Budget and Emergency

12  Deficit Control Act of 1985.

13       ADMINISTRATIVE PROVISIONS—SMALL BUSINESS

14                   ADMINISTRATION

15       SEC. 10303. (a) The third proviso under the heading

16  "Small Business Administration—Business Loans Pro-

17  gram Account" the Financial Services and General Gov-

18  ernment Appropriations Act, 2020 (division C of Public

19  Law 116–93) is amended by striking "$30,000,000,000"

20  and inserting "$75,000,000,000".

21       (b) The sixth proviso under the heading "Small Busi-

22  ness Administration—Business Loans Program Account"

23  the Financial Services and General Government Appro-

24  priations Act, 2020 (division C of Public Law 116–93)

43

1   is amended by striking ''$12,000,000,000'' and inserting

2   ''$35,000,000,000''.

3   UNITED STATES POSTAL SERVICE

4   PAYMENT TO POSTAL SERVICE FUND

5   For an additional payment to the ''Postal Service

6   Fund'', for revenue forgone due to coronavirus,

7   $25,000,000,000, to remain available until September 30,

8   2022: *Provided*, That the Postal Service, during the

9   coronavirus emergency, shall prioritize the purchase of,

10   and make available to all Postal Service employees and

11   facilities, personal protective equipment, including gloves,

12   masks, and sanitizers, and shall conduct additional clean-

13   ing and sanitizing of Postal Service facilities and delivery

14   vehicles: *Provided further*, That such amount is designated

15   by the Congress as being for an emergency requirement

16   pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

17   et and Emergency Deficit Control Act of 1985.

18   OFFICE OF INSPECTOR GENERAL

19   SALARIES AND EXPENSES

20   For an additional amount for ''Salaries and Ex-

21   penses'', $15,000,000, to remain available until expended,

22   to prevent, prepare for, and respond to coronavirus, do-

23   mestically or internationally: *Provided*, That such amount

24   is designated by the Congress as being for an emergency

25   requirement pursuant to section 251(b)(2)(A)(i) of the

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002348

44

1 Balanced Budget and Emergency Deficit Control Act of
2 1985.

3          GENERAL PROVISIONS—THIS TITLE

4     SEC. 10304. (a) Title V of division B of the CARES
5 Act (Public Law 116–136) is amended in the first proviso
6 under the heading "Independent Agencies—Pandemic Re-
7 sponse Accountability Committee" by inserting "or any
8 other Act (including Acts other than appropriations
9 Acts)" after "provided in this Act".

10     (b) Amounts repurposed under this section that were
11 previously designated by the Congress, respectively, as an
12 emergency requirement or as being for disaster relief pur-
13 suant to the Balanced Budget and Emergency Deficit
14 Control Act are designated by the Congress as being for
15 an emergency requirement pursuant to section
16 251(b)(2)(A)(i) of the Balanced Budget and Emergency
17 Deficit Control Act of 1985 or as being for disaster relief
18 pursuant to section 251(b)(2)(D) of the Balanced Budget
19 and Emergency Deficit Control Act of 1985.

20     SEC. 10305. Title V of division B of the CARES Act
21 (Public Law 116–136) is amended by striking the fifth
22 proviso under the heading "General Services Administra-
23 tion—Real Property Activities—Federal Buildings
24 Fund": *Provided*, That the amounts repurposed in this
25 section that were previously designated by the Congress

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002349

45

1 as an emergency requirement pursuant to the Balanced

2 Budget and Emergency Deficit Control Act of 1985 are

3 designated by the Congress as an emergency requirement

4 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

5 et and Emergency Deficit Control Act of 1985.

6     SEC. 10306. For an additional amount for "Depart-

7 ment of the Treasury—Departmental Offices—

8 Coronavirus Relief Fund", an amount equal to—

9         (1) $1,250,000,000; less

10         (2) the amount allocated for the District of Co-

11     lumbia pursuant to section 601(c)(6) of the Social

12     Security Act:

13 *Provided*, That such amounts shall only be available for

14 making a payment to the District of Columbia, and shall

15 be in addition to any other funds available for such pur-

16 pose: *Provided further*, That the Secretary of the Treasury

17 shall pay all amounts provided by this section directly to

18 the District of Columbia not less than 5 days after the

19 date of enactment of this Act: *Provided further*, That the

20 District of Columbia shall use such amounts only to cover

21 costs or replace foregone revenues stemming from the pub-

22 lic health emergency with respect to the Coronavirus Dis-

23 ease (COVID–19): *Provided further*, That such amount is

24 designated by Congress as being for an emergency require-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002350

46

1 ment pursuant to section 251(b)(2)(A)(i) of the Balanced

2 Budget and Emergency Deficit Control Act of 1985.

3       TITLE IV—HOMELAND SECURITY

4       DEPARTMENT OF HOMELAND SECURITY

5       OFFICE OF INSPECTOR GENERAL

6         OPERATIONS AND SUPPORT

7     For an additional amount for "Operations and Sup-

8 port", $3,000,000, to remain available until September

9 30, 2022, for oversight of activities of the Department of

10 Homeland Security funded in this Act and in title VI of

11 division B of Public Law 116–136 to prevent, prepare for,

12 and respond to coronavirus: *Provided*, That such amount

13 is designated by the Congress as being for an emergency

14 requirement pursuant to section 251(b)(2)(A)(i) of the

15 Balanced Budget and Emergency Deficit Control Act of

16 1985.

17     FEDERAL EMERGENCY MANAGEMENT AGENCY

18         FEDERAL ASSISTANCE

19     For an additional amount for "Federal Assistance",

20 $1,300,000,000, to remain available until September 30,

21 2021, to prevent, prepare for, and respond to coronavirus,

22 of which $500,000,000 shall be for Assistance to Fire-

23 fighter Grants for the purchase of personal protective

24 equipment and related supplies, mental health evaluations,

25 training, and temporary infectious disease de-contamina-

g:\VHLC\051220\051220.072.xml    (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002351

47

1 tion or sanitizing facilities and equipment; of which

2 $500,000,000 shall be for Staffing for Adequate Fire and

3 Emergency Response Grants; of which $100,000,000 shall

4 be for Emergency Management Performance Grants; and

5 of which $200,000,000 shall be for the Emergency Food

6 and Shelter Program: *Provided*, That such amount is des-

7 ignated by the Congress as being for an emergency re-

8 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

9 anced Budget and Emergency Deficit Control Act of 1985.

10 GENERAL PROVISIONS—THIS TITLE

11 SEC. 10401. Notwithstanding any other provision of

12 law, funds made available under "Federal Emergency

13 Management Agency—Federal Assistance" shall only be

14 used for the purposes specifically described under that

15 heading.

16 SEC. 10402. (a) Subsections (c)(2), (f), (g)(1),

17 (h)(1)–(4), (h)(6), and (k) of section 33 of the Federal

18 Fire Prevention and Control Act of 1974 (15 U.S.C.

19 2229) shall not apply to amounts appropriated for "Fed-

20 eral Emergency Management Agency – Federal Assist-

21 ance" for Assistance to Firefighter Grants in this Act and

22 in division D, title III of the Consolidated Appropriations

23 Act, 2020 (Public Law 116–93).

24 (b) Subsection (k) of section 33 of the Federal Fire

25 Prevention and Control Act of 1974 (15 U.S.C. 2229)

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002352

48

1 shall not apply to Amounts provided for ''Federal Emer-

2 gency Management Agency–Federal Assistance'' for As-

3 sistance to Firefighter Grants in title VI of division B of

4 Public Law 116–136.

5     (c) Amounts repurposed under this section that were

6 previously designated by the Congress, respectively, as an

7 emergency requirement or as being for disaster relief pur-

8 suant to the Balanced Budget and Emergency Deficit

9 Control Act are designated by the Congress as being for

10 an emergency requirement pursuant to section

11 251(b)(2)(A)(i) of the Balanced Budget and Emergency

12 Deficit Control Act of 1985 or as being for disaster relief

13 pursuant to section 251(b)(2)(D) of the Balanced Budget

14 and Emergency Deficit Control Act of 1985.

15     SEC. 10403. Subsections (a)(1)(A), (a)(1)(B),

16 (a)(1)(E), (a)(1)(G), (c)(1), (c)(2), and (c)(4) of section

17 34 of the Federal Fire Prevention and Control Act of 1974

18 (15 U.S.C. 2229a) shall not apply to amounts appro-

19 priated for ''Federal Emergency Management Agency –

20 Federal Assistance'' for Staffing for Adequate Fire and

21 Emergency Response Grants in this Act and in division

22 D, title III of the Consolidated Appropriations Act, 2020

23 (Public Law 116–93).

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002353

49

## TITLE V—INTERIOR, ENVIRONMENT, AND

## RELATED AGENCIES

## DEPARTMENT OF THE INTERIOR

### UNITED STATES FISH AND WILDLIFE SERVICE

#### RESOURCE MANAGEMENT

For an additional amount for ''Resource Management'', $21,000,000, to remain available until expended for research; listing injurious species; electronic permitting system development; operation and maintenance; law enforcement interdiction and inspections; and other support activities, as described in sections 190402, 190403, and 190404 of division S of this Act: *Provided*, That amounts may be transferred to ''Surveys, Investigations and Research'' in the United States Geological Survey; ''National Oceanic and Atmospheric Administration'' in the Department of Commerce; and the ''Center for Disease Control'' in the Department of Health and Human Services: *Provided further*, That such amount is designated by the Congress as being for an emergency requirement pursuant to section 251(b)(2)(A)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985.

#### STATE AND TRIBAL WILDLIFE GRANTS

For an additional amount for ''State and Tribal Wildlife Grants'', $50,000,000, to remain available until expended, for a onetime grant program to remain available

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002354

50

1 until expended, as described in section 190405 of division

2 S of this Act: *Provided*, That such amount is designated

3 by the Congress as being for an emergency requirement

4 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

5 et and Emergency Deficit Control Act of 1985.

6      UNITED STATES GEOLOGICAL SURVEY

7           SURVEYS, INVESTIGATIONS, AND RESEARCH

8      For an additional amount for "Surveys, Investiga-

9 tions, and Research", $40,000,000, to remain available

10 until September 30, 2021, for technical assistance, bio-

11 surveillance of wildlife and environmental persistence

12 studies and related research, database development, and

13 accompanying activities as described in section 190404 of

14 division S of this Act: *Provided*, That such amount is des-

15 ignated by the Congress as being for an emergency re-

16 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

17 anced Budget and Emergency Deficit Control Act of 1985.

18           BUREAU OF INDIAN AFFAIRS

19           OPERATION OF INDIAN PROGRAMS

20      For an additional amount for "Operation of Indian

21 Programs", $900,000,000, to remain available until Sep-

22 tember 30, 2021, to prevent, prepare for, and respond to

23 coronavirus, of which—

24           (1) $100,000,000 shall be for housing improve-

25      ment;

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002355

1          (2) $780,000,000 shall be for providing Tribal
2     government services, for Tribal government em-
3     ployee salaries to maintain operations, and cleaning
4     and sanitization of Tribally owned and operated fa-
5     cilities; and

6          (3) $20,000,000 shall be used to provide and
7     deliver potable water; and,

8     *Provided*, That none of the funds appropriated herein shall
9     be obligated until 3 days after the Bureau of Indian Af-
10    fairs provides a detailed spend plan, which includes dis-
11    tribution and use of funds by Tribe, to the Committees
12    on Appropriations of the House of Representatives and the
13    Senate: *Provided further*, That the Bureau shall notify the
14    Committees on Appropriations of the House of Represent-
15    atives and the Senate quarterly on the obligations and ex-
16    penditures of the funds provided by this Act: *Provided fur-*
17    *ther*, That assistance received herein shall not be included
18    in the calculation of funds received by those Tribal govern-
19    ments who participate in the ''Small and Needy'' program:
20    *Provided further*, That such amounts, if transferred to In-
21    dian Tribes and Tribal organizations under the Indian
22    Self-Determination and Education Assistance Act (1) will
23    be transferred on a one-time basis, (2) are non-recurring
24    funds that are not part of the amount required by 25
25    U.S.C. 5325, and (3) may only be used for the purposes

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002356

52

1 identified under this heading in this Act, notwithstanding

2 any other provision of law: *Provided further*, That section

3 11008 of this Act shall not apply to tribal contracts en-

4 tered into by the Bureau of Indian Affairs with this appro-

5 priation: *Provided further*, That such amount is designated

6 by the Congress as being for an emergency requirement

7 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

8 et and Emergency Deficit Control Act of 1985.

DEPARTMENTAL OFFICES

INSULAR AFFAIRS

ASSISTANCE TO TERRITORIES

12 For an additional amount for "Assistance to Terri-

13 tories", $1,000,000,000, to remain available until ex-

14 pended, to prevent, prepare for, and respond to

15 coronavirus, of which (1) $945,000,000 is for Capital Im-

16 provement Project grants for hospitals and other critical

17 infrastructure; and (2) $55,000,000 is for territorial as-

18 sistance, including general technical assistance: *Provided*,

19 That any appropriation for disaster assistance under this

20 heading in this Act or previous appropriations Acts may

21 be used as non-Federal matching funds for the purpose

22 of hazard mitigation grants provided pursuant to section

23 404 of the Robert T. Stafford Disaster Relief and Emer-

24 gency Assistance Act (42 U.S.C. 5170c): *Provided further*,

25 That amounts repurposed in this section that were pre-

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002357

53

1   viously designated by the Congress as an emergency re-

2   quirement pursuant to the Balanced Budget and Emer-

3   gency Deficit Control Act of 1985 are designated by the

4   Congress as an emergency requirement pursuant to sec-

5   tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

6   gency Deficit Control Act of 1985: *Provided further*, That

7   such amount is designated by the Congress as being for

8   an    emergency    requirement    pursuant    to    section

9   251(b)(2)(A)(i) of the Balanced Budget and Emergency

10  Deficit Control Act of 1985.

11              OFFICE OF INSPECTOR GENERAL

12                  SALARIES AND EXPENSES

13      For an additional amount for "Salaries and Ex-

14  penses" , $5,000,000, to remain available until expended:

15  *Provided*, That such amount is designated by the Congress

16  as being for an emergency requirement pursuant to sec-

17  tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

18  gency Deficit Control Act of 1985.

19          ENVIRONMENTAL PROTECTION AGENCY

20      ENVIRONMENTAL PROGRAMS AND MANAGEMENT

21      For an additional amount for "Environmental Pro-

22  grams and Management", $50,000,000, to remain avail-

23  able until September 30, 2021, for environmental justice

24  grants to prevent, prepare for, and respond to coronavirus:

25  *Provided*, That such amount shall be used to monitor or

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002358

54

1 study links between pollution exposure and the trans-
2 mission and health outcomes of coronavirus as described
3 in section 190702 of division S of this Act: *Provided fur-*
4 *ther*, That such amount is designated by the Congress as
5 being for an emergency requirement pursuant to section
6 251(b)(2)(A)(i) of the Balanced Budget and Emergency
7 Deficit Control Act of 1985.

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Indian Health Service

#### INDIAN HEALTH SERVICES

##### (INCLUDING TRANSFER OF FUNDS)

13 For an additional amount for ''Indian Health Serv-
14 ices'', $2,100,000,000, to remain available until expended,
15 to prevent, prepare for, respond to, and provide health
16 services related to coronavirus, of which—

17 (1) $1,000,000,000 shall be used to supplement
18 reduced third party revenue collections;

19 (2) $500,000,000 shall be used for direct health
20 and telehealth services, including to purchase sup-
21 plies and personal protective equipment;

22 (3) $140,000,000 shall be used to expand
23 broadband infrastructure and information tech-
24 nology for telehealth and electronic health record
25 system purposes;

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002359

G:\CMTE\AP\16\FY20\_D\HEROES.XML

55

1       (4) $20,000,000 shall be used to address the

2    needs of domestic violence victims and homeless indi-

3    viduals and families;

4       (5) not less than $64,000,000 shall be for

5    Urban Indian Organizations; and,

6       (6) not less than $10,000,000 shall be used to

7    provide and deliver potable water:

8 *Provided*, That such funds shall be allocated at the discre-

9 tion of the Director of the Indian Health Service: *Provided*

10 *further*, That of the funds provided herein, not less than

11 $366,000,000 shall be transferred to and merged with

12 "Indian Health Service—Indian Health Facilities" at the

13 discretion of the Director to modify existing health facili-

14 ties to provide isolation or quarantine space, to purchase

15 and install updated equipment necessary, and for mainte-

16 nance and improvement projects necessary to the purposes

17 specified in this Act: *Provided further*, That such amounts

18 may be used to supplement amounts otherwise available

19 for such purposes under "Indian Health Facilities": *Pro-*

20 *vided further*, That such amounts, if transferred to Tribes

21 and Tribal organizations under the Indian Self-Deter-

22 mination and Education Assistance Act, will be trans-

23 ferred on a one-time basis and that these non-recurring

24 funds are not part of the amount required by 25 U.S.C.

25 5325, and that such amounts may only be used for the

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002360

56

1 purposes identified under this heading notwithstanding
2 any other provision of law: *Provided further*, That none
3 of the funds appropriated herein for telehealth broadband
4 activities shall be available for obligation until 3 days after
5 the Indian Health Service provides to the Committees on
6 Appropriations of the House of Representatives and the
7 Senate, a detailed spend plan that includes the cost, loca-
8 tion, and expected completion date of each activity: *Pro-*
9 *vided further*, That the Indian Health Service shall notify
10 the Committees on Appropriations of the House of Rep-
11 resentatives and the Senate quarterly on the obligations
12 and expenditures of the funds provided by this Act: *Pro-*
13 *vided further*, That section 11008 of this Act shall not
14 apply to tribal contracts entered into by the Bureau of
15 Indian Affairs with this appropriation: *Provided further*,
16 That such amount is designated by the Congress as being
17 for an emergency requirement pursuant to section
18 251(b)(2)(A)(i) of the Balanced Budget and Emergency
19 Deficit Control Act of 1985.

20 NATIONAL FOUNDATION ON THE ARTS AND HUMANITIES

21 NATIONAL ENDOWMENT FOR THE ARTS

22 GRANTS AND ADMINISTRATION

23 For an additional amount for "Grants and Adminis-
24 tration", $10,000,000 to remain available until September
25 30, 2021, for grants to respond to the impacts of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002361

1 coronavirus: *Provided*, That such funds are available
2 under the same terms and conditions as grant funding ap-
3 propriated to this heading in Public Law 116–94: *Pro-*
4 *vided further*, That 40 percent of such funds shall be dis-
5 tributed to State arts agencies and regional arts organiza-
6 tions and 60 percent of such funds shall be for direct
7 grants: *Provided further*, That notwithstanding any other
8 provision of law, such funds may also be used by the re-
9 cipients of such grants for purposes of the general oper-
10 ations of such recipients: *Provided further*, That the
11 matching requirements under subsections (e), (g)(4)(A),
12 and (p)(3) of section 5 of the National Foundation on the
13 Arts and Humanities Act of 1965 (20 U.S.C. 954) may
14 be waived with respect to such grants: *Provided further*,
15 That such amount is designated by the Congress as being
16 for an emergency requirement pursuant to section
17 251(b)(2)(A)(i) of the Balanced Budget and Emergency
18 Deficit Control Act of 1985.

19 NATIONAL ENDOWMENT FOR THE HUMANITIES

20 GRANTS AND ADMINISTRATION

21 For an additional amount for "Grants and Adminis-
22 tration", $10,000,000 to remain available until September
23 30, 2021, for grants to respond to the impacts of
24 coronavirus: *Provided*, That such funds are available
25 under the same terms and conditions as grant funding ap-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002362

58

1 propriated to this heading in Public Law 116–94: *Pro-*
2 *vided further*, That 40 percent of such funds shall be dis-
3 tributed to state humanities councils and 60 percent of
4 such funds shall be for direct grants: *Provided further*,
5 That notwithstanding any other provision of law, such
6 funds may also be used by the recipients of such grants
7 for purposes of the general operations of such recipients:
8 *Provided further*, That the matching requirements under
9 subsection (h)(2)(A) of section 7 of the National Founda-
10 tion on the Arts and Humanities Act of 1965 may be
11 waived with respect to such grants: *Provided further*, That
12 such amount is designated by the Congress as being for
13 an emergency requirement pursuant to section
14 251(b)(2)(A)(i) of the Balanced Budget and Emergency
15 Deficit Control Act of 1985.

16 TITLE VI—DEPARTMENTS OF LABOR, HEALTH
17    AND HUMAN SERVICES, AND EDUCATION,
18    AND RELATED AGENCIES

19       DEPARTMENT OF LABOR

20 EMPLOYMENT AND TRAINING ADMINISTRATION

21    TRAINING AND EMPLOYMENT SERVICES

22       (INCLUDING TRANSFER OF FUNDS)

23 For an additional amount for "Training and Employ-
24 ment Services", $2,040,000,000, to prevent, prepare for,
25 and respond to coronavirus, of which $15,000,000 shall

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002363

G:\CMTE\AP\16\FY20\_D\HEROES.XML

59

1    be transferred to ''Program Administration'' to carry out

2    activities in this Act, Public Law 116–127 and Public Law

3    116–136 for full-time equivalent employees, information

4    technology upgrades needed to expedite payments and

5    support implementation, including to expedite policy guid-

6    ance and disbursement of funds, technical assistance and

7    other assistance to States and territories to speed payment

8    of Federal and State unemployment benefits,and of which

9    the remaining amounts shall be used to carry out activities

10    under the Workforce Innovation and Opportunity Act (re-

11    ferred to in this Act as ''WIOA'') as follows:

12        (1) $485,000,000 for grants to the States for

13        adult employment and training activities, including

14        incumbent worker trainings, transitional jobs, on-

15        the-job training, individualized career services, sup-

16        portive services, needs-related payments, and to fa-

17        cilitate remote access to training services provided

18        through a one-stop delivery system through the use

19        of technology, to remain available until June 30,

20        2021: *Provided*, That an adult shall not be required

21        to meet the requirements of section 134(c)(3)(B) of

22        the WIOA: *Provided further*, That an adult who

23        meets the requirements described in section

24        2102(a)(3)(A) of Public Law 116–136 may be eligi-

25        ble for participation: *Provided further*, That priority

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002364

G:\CMTE\AP\16\FY20\_D\HEROES.XML

60

1    may be given to individuals who are adversely im-

2    pacted by economic changes due to the coronavirus,

3    including individuals seeking employment, dislocated

4    workers, individuals with barriers to employment, in-

5    dividuals who are unemployed, or individuals who

6    are underemployed;

7    (2) $518,000,000 for grants to the States for

8    youth activities, including supportive services, sum-

9    mer employment for youth, and to facilitate remote

10    access to training services provided through a one-

11    stop delivery system through the use of technology,

12    to remain available until June 30, 2021: *Provided,*

13    That individuals described in section 2102(a)(3)(A)

14    of Public Law 116–136 may be eligible for participa-

15    tion as an out-of-school youth if they meet the re-

16    quirements of clauses (i) and (ii) of section

17    129(a)(1)(B) or as in-school youth if they meet the

18    requirements of clauses (i) and (iii) of section

19    129(a)(1)(C) of the WIOA; *Provided further,* That

20    priority shall be given for out-of-school youth and

21    youth with multiple barriers to employment: *Pro-*

22    *vided further,* That funds shall support employer

23    partnerships for youth employment and subsidized

24    employment, and partnerships with community-

25    based organizations to support such employment;

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002365

G:\CMTE\AP\16\FY20\_D\HEROES.XML

61

1       (3) $597,000,000 for grants to States for dis-
2 located worker employment and training activities,
3 including incumbent worker trainings, transitional
4 jobs, on-the-job training, individualized career serv-
5 ices, supportive services, needs-related payments,
6 and to facilitate remote access to training services
7 provided through a one-stop delivery system through
8 the use of technology, to remain available until June
9 30, 2021: *Provided*, That a dislocated worker shall
10 not be required to meet the requirements of section
11 134(c)(3)(B) of the WIOA: *Provided further*, That a
12 dislocated worker who meets the requirements de-
13 scribed in section 2102(a)(3)(A) of Public Law 116–
14 136 may be eligible for participation;

15       (4) $400,000,000 for the dislocated workers as-
16 sistance national reserve to remain available until
17 September 30, 2023; and

18       (5) $25,000,000 for migrant and seasonal
19 farmworker programs under section 167 of the
20 WIOA, including emergency supportive services, to
21 remain available until June 30, 2021, of which no
22 less than $500,000 shall be for the collection and
23 dissemination of electronic and printed materials re-
24 lated to coronavirus to the migrant and seasonal

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002366

62

1     farmworker population nationwide, including Puerto

2     Rico, through a cooperative agreement;

3     *Provided*, That the impact of the COVID–19 national

4     emergency may be considered as an additional factor for

5     reimbursement for on-the-job training under section

6     134(c)(3)(H) of the WIOA and as a factor in determining

7     the employer's portion of the costs of providing customized

8     training under section 3(14) of the WIOA: *Provided further*,

9     That notwithstanding section 134(d)(5) of the

10    WIOA, a local board may use 40 percent of funds received

11    under paragraphs (1) and (3) for transitional jobs: *Provided further*,

12    That notwithstanding section 194(10) of the

13    WIOA, that funds used to support transitional jobs may

14    also be used to support public service employment: *Provided further*,

15    That sections 127(b)(1)(C)(iv)(III),

16    132(b)(1)(B)(iv)(III), and 132(b)(2)(B)(iii)(II) shall not

17    apply to funds appropriated under this heading: *Provided*

18    *further*, That such amount is designated by the Congress

19    as being for an emergency requirement pursuant to sec-

20    tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

21    gency Deficit Control Act of 1985.

22            WAGE AND HOUR DIVISION

23             SALARIES AND EXPENSES

24     For an additional amount for "Wage and Hour Divi-

25    sion", $6,500,000, to remain available until September

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002367

63

1 30, 2021, to prevent, prepare for, and respond to
2 coronavirus, including for the administration, oversight,
3 and coordination of worker protection activities related
4 thereto: *Provided*, That the Secretary of Labor shall use
5 funds provided under this heading to support enforcement
6 activities and outreach efforts to make individuals, par-
7 ticularly low-wage workers, aware of their rights under di-
8 vision C and division E of Public Law 116–127: *Provided*
9 *further*, That such amount is designated by the Congress
10 as being for an emergency requirement pursuant to sec-
11 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-
12 gency Deficit Control Act of 1985.

13 OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

14 SALARIES AND EXPENSES

15     For an additional amount for "Occupational Safety
16 and Health Administration", $100,000,000, to remain
17 available until September 30, 2021, for worker protection
18 and enforcement activities to prevent, prepare for, and re-
19 spond to coronavirus, of which $25,000,000 shall be for
20 Susan Harwood training grants and at least $70,000,000
21 shall be to hire additional compliance safety and health
22 officers, and for state plan enforcement, to protect work-
23 ers from coronavirus by enforcing all applicable standards
24 and directives, including 29 CFR 1910.132, 29 CFR
25 1910.134, Section 5(a)(1) of the Occupational Safety and

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002368

64

1 Health Act of 1970, and 29 CFR 1910.1030: *Provided,*
2 That activities to protect workers from coronavirus sup-
3 ported by funds provided under this heading includes addi-
4 tional enforcement of standards and directives referenced
5 in the preceding proviso at slaughterhouses, poultry proc-
6 essing plants, and agricultural workplaces: *Provided fur-*
7 *ther,* That within 15 days of the date of enactment of this
8 Act, the Secretary of Labor shall submit a spending and
9 hiring plan for the funds made available under this head-
10 ing, and a monthly staffing report until all funds are ex-
11 pended, to the Committees on Appropriations of the
12 House of Representatives and the Senate: *Provided fur-*
13 *ther,* That within 15 days of the date of enactment of this
14 Act, the Secretary of Labor shall submit a plan for the
15 additional enforcement activities described in the third
16 proviso to the Committees on Appropriations of the House
17 of Representatives and the Senate: *Provided further,* That
18 such amount is designated by the Congress as being for
19 an emergency requirement pursuant to section
20 251(b)(2)(A)(i) of the Balanced Budget and Emergency
21 Deficit Control Act of 1985.

22     OFFICE OF INSPECTOR GENERAL

23     For an additional amount for "Office of Inspector
24 General", $5,000,000, to remain available until expended,
25 to prevent, prepare for, and respond to coronavirus. *Pro-*

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002369

65

1 *vided*, That such amount is designated by the Congress

2 as being for an emergency requirement pursuant to sec-

3 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

4 gency Deficit Control Act of 1985.

5 ADMINISTRATIVE PROVISION—DEPARTMENT OF LABOR

6   SEC. 10601. There is hereby appropriated for fiscal

7 year 2021 for "Department of Labor—Employment

8 Training Administration—State Unemployment Insur-

9 ance and Employment Service Operations", $28,600,000,

10 to be expended from the Employment Security Adminis-

11 tration Account in the Unemployment Trust Fund ("the

12 Trust Fund") to carry out title III of the Social Security

13 Act: *Provided*, That such amount shall only become avail-

14 able for obligation if the Average Weekly Insured Unem-

15 ployment ("AWIU") for fiscal year 2021 is projected, by

16 the Department of Labor during fiscal year 2021 to ex-

17 ceed 1,728,000: *Provided further*, That to the extent that

18 the AWIU for fiscal year 2021 is projected by the Depart-

19 ment of Labor to exceed 1,728,000, an additional

20 $28,600,000 from the Trust Fund shall be made available

21 for obligation during fiscal year 2021 for every 100,000

22 increase in the AWIU level (including a pro rata amount

23 for any increment less than 100,000): *Provided further*,

24 That, except as specified in this section, amounts provided

25 herein shall be available under the same authority and

66

1  conditions applicable to funds provided to carry out title

2  III of the Social Security Act under the heading "Depart-

3  ment of Labor—Employment Training Administration—

4  State Unemployment Insurance and Employment Service

5  Operations" in division A of Public Law 116–94: *Provided*

6  *further*, That such amounts shall be in addition to any

7  other funds made available in any fiscal year for such pur-

8  poses: *Provided further*, That such amount is designated

9  by the Congress as being for an emergency requirement

10  pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

11  et and Emergency Deficit Control Act of 1985.

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### HEALTH RESOURCES AND SERVICES ADMINISTRATION

#### PRIMARY HEALTH CARE

16  For an additional amount for "Primary Health

17  Care", $7,600,000,000, to remain available until Sep-

18  tember 30, 2025, for necessary expenses to prevent, pre-

19  pare for, and respond to coronavirus, for grants and coop-

20  erative agreements under the Health Centers Program, as

21  defined by section 330 of the Public Health Service Act,

22  and for grants to Federally qualified health centers, as

23  defined in section 1861(aa)(4)(B) of the Social Security

24  Act, and for eligible entities under the Native Hawaiian

25  Health Care Improvement Act, including maintenance or

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002371

1   expansion of health center and system capacity and staff-

2   ing levels: *Provided*, That sections 330(r)(2)(B),

3   330(e)(6)(A)(iii), and 330(e)(6)(B)(iii) shall not apply to

4   funds provided under this heading in this Act: *Provided*

5   *further*, That funds provided under this heading in this

6   Act may be used to (1) purchase equipment and supplies

7   to conduct mobile testing for SARS–CoV–2 or COVID–

8   19; (2) purchase and maintain mobile vehicles and equip-

9   ment to conduct such testing; and (3) hire and train lab-

10   oratory personnel and other staff to conduct such mobile

11   testing: *Provided further*, That such amount is designated

12   by the Congress as being for an emergency requirement

13   pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

14   et and Emergency Deficit Control Act of 1985.

15               RYAN WHITE HIV/AIDS PROGRAM

16      For an additional amount for "Ryan White HIV/

17   AIDS Program", $10,000,000, to remain available until

18   September 30, 2022, to prevent, prepare for, and respond

19   to coronavirus: *Provided*, That awards from funds pro-

20   vided under this heading in this Act shall be through

21   modifications to existing contracts and supplements to ex-

22   isting grants and cooperative agreements under parts A,

23   B, C, D, F, and section 2692(a) of title XXVI of the Pub-

24   lic Health Service Act: *Provided further*, That such supple-

25   ments shall be awarded using a data-driven methodology

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002372

68

1  determined by the Secretary of Health and Human Serv-

2  ices: *Provided further*, That sections 2604(c), 2612(b), and

3  2651(c) of the Public Health Service Act shall not apply

4  to funds provided under this heading in this Act: *Provided*

5  *further*, That the Secretary may waive any penalties and

6  administrative requirements as necessary to ensure that

7  the funds may be used efficiently: *Provided further*, That

8  such amount is designated by the Congress as being for

9  an   emergency   requirement   pursuant   to   section

10  251(b)(2)(A)(i) of the Balanced Budget and Emergency

11  Deficit Control Act of 1985.

12  Centers for Disease Control and Prevention

13  CDC–WIDE ACTIVITIES AND PROGRAM SUPPORT

14      For an additional amount for "CDC–Wide Activities

15  and Program Support", $2,130,000,000, to remain avail-

16  able until September 30, 2024, to prevent, prepare for,

17  and respond to coronavirus, domestically or internation-

18  ally: *Provided*, That of the amount provided under this

19  heading in this Act, $1,000,000,000 shall be for Public

20  Health Emergency Preparedness cooperative agreements

21  under section 319C–1 of the Public Health Service Act:

22  *Provided further*, That, of the amount provided under this

23  heading in this Act, $1,000,000,000 shall be for necessary

24  expenses for grants for core public health infrastructure

25  for State, local, Territorial, or Tribal health departments

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002373

69

1 as described in section 30550 of division C of this Act:

2 *Provided further*, That of the amount made available

3 under this heading in this Act for specified programs, not

4 less than $100,000,000 shall be allocated to tribes, tribal

5 organizations, urban Indian health organizations, or

6 health service providers to tribes: *Provided further*, That

7 of the amount provided under this heading in this Act,

8 $130,000,000 shall be for public health data surveillance

9 and analytics infrastructure modernization: *Provided fur-*

10 *ther*, That funds appropriated under this heading in this

11 Act for grants may be used for the rent, lease, purchase,

12 acquisition, construction, alteration, or renovation of non-

13 Federally owned facilities to improve preparedness and re-

14 sponse capability at the State and local level: *Provided fur-*

15 *ther*, That all construction, alteration, or renovation work,

16 carried out, in whole or in part, with funds appropriated

17 under this heading in this Act, or under this heading in

18 the CARES ACT (P.L. 116–136), shall be subject to the

19 requirements of 42 U.S.C. 300s-1(b)(1)(I): *Provided fur-*

20 *ther*, That such amount is designated by the Congress as

21 being for an emergency requirement pursuant to section

22 251(b)(2)(A)(i) of the Balanced Budget and Emergency

23 Deficit Control Act of 1985.

70

NATIONAL INSTITUTES OF HEALTH

NATIONAL INSTITUTE OF ALLERGY AND INFECTIOUS
DISEASES

1     
2     
3     

4    For an additional amount for "National Institute of
5 Allergy and Infectious Diseases", $500,000,000, to re-
6 main available until September 30, 2024, to prevent, pre-
7 pare for, and respond to coronavirus: *Provided,* That such
8 amount is designated by the Congress as being for an
9 emergency requirement pursuant to section
10 251(b)(2)(A)(i) of the Balanced Budget and Emergency
11 Deficit Control Act of 1985.

12    NATIONAL INSTITUTE OF MENTAL HEALTH

13    For an additional amount for "National Institute of
14 Mental Health", $200,000,000, to remain available until
15 September 30, 2024, to prevent, prepare for, and respond
16 to coronavirus: *Provided,* That such amount is designated
17 by the Congress as being for an emergency requirement
18 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-
19 et and Emergency Deficit Control Act of 1985.

20    OFFICE OF THE DIRECTOR

21    (INCLUDING TRANSFER OF FUNDS)

22    For an additional amount for "Office of the Direc-
23 tor", $4,021,000,000, to remain available until September
24 30, 2024, to prevent, prepare for, and respond to
25 coronavirus, domestically or internationally: *Provided.*

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002375

1   That not less than $3,000,000,000 of the amount provided
2   under this heading in this Act shall be for offsetting the
3   costs related to reductions in lab productivity resulting
4   from the coronavirus pandemic or public health measures
5   related to the coronavirus pandemic: *Provided further*,
6   That up to $1,021,000,000 of the amount provided under
7   this heading in this Act shall be to support additional sci-
8   entific research or the programs and platforms that sup-
9   port research: *Provided further*, That funds made available
10   under this heading in this Act may be transferred to the
11   accounts of the Institutes and Centers of the National In-
12   stitutes of Health ("NIH"): *Provided further*, That this
13   transfer authority is in addition to any other transfer au-
14   thority available to the NIH: *Provided further*, That such
15   amount is designated by the Congress as being for an
16   emergency   requirement   pursuant   to   section
17   251(b)(2)(A)(i) of the Balanced Budget and Emergency
18   Deficit Control Act of 1985.

19   SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES
20                      ADMINISTRATION

21   HEALTH SURVEILLANCE AND PROGRAM SUPPORT

22       For an additional amount for "Health Surveillance
23   and Program Support", $3,000,000,000, to remain avail-
24   able until September 30, 2021, to prevent, prepare for,
25   and respond to coronavirus: *Provided*, That of the funds

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002376

72

1   made available under this heading in this Act,

2   $1,500,000,000 shall be for grants for the substance

3   abuse prevention and treatment block grant program

4   under subpart II of part B of title XIX of the Public

5   Health Service Act (''PHS Act''): *Provided further*, That

6   of the funds made available under this heading in this Act,

7   $1,000,000,000 shall be for grants for the community

8   mental health services block grant program under subpart

9   I of part B of title XIX of the PHS Act: *Provided further*,

10   That of the funds made available under this heading in

11   this Act, $100,000,000 shall be for services to the home-

12   less population: *Provided further*, That of the funds made

13   available under this heading in this Act, $100,000,000

14   shall be for activities and services under Project AWARE:

15   *Provided further*, That of the funds made available under

16   this heading in this Act, $10,000,000 shall be for the Na-

17   tional Child Traumatic Stress Network: *Provided further*,

18   That of the amount made available under this heading in

19   this Act, $265,000,000 is available for activities author-

20   ized under section 501(o) of the Public Health Service

21   Act: *Provided further*, That of the amount made available

22   under this heading in this Act, $25,000,000 shall be for

23   the Suicide Lifeline and Disaster Distress Helpline: *Pro-

24   vided further*, That of the amount made available under

25   this heading in this Act for specified programs, not less

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002377

73

1 than $150,000,000 shall be allocated to tribes, tribal orga-

2 nizations, urban Indian health organizations, or health or

3 behavioral health service providers to tribes: *Provided fur-*

4 *ther,* That the Substance Abuse and Mental Health Serv-

5 ices Administration has flexibility to amend allowable ac-

6 tivities, timelines, and reporting requirements for the Sub-

7 stance Abuse Prevention and Treatment Block Grant and

8 the Community Mental Health Services Block Grant pur-

9 suant to the public health emergency declaration: *Provided*

10 *further,* That such amount is designated by the Congress

11 as being for an emergency requirement pursuant to sec-

12 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

13 gency Deficit Control Act of 1985.

14   CENTERS FOR MEDICARE & MEDICAID SERVICES

15            PROGRAM MANAGEMENT

16   For an additional amount for ''Program Manage-

17 ment'', $150,000,000, to remain available through Sep-

18 tember 30, 2022, to prevent, prepare for, and respond to

19 coronavirus, for State strike teams for resident and em-

20 ployee safety in skilled nursing facilities and nursing facili-

21 ties, including activities to support clinical care, infection

22 control, and staffing: *Provided,* That such amount is des-

23 ignated by the Congress as being for an emergency re-

24 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

25 anced Budget and Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002378

74

1    ADMINISTRATION FOR CHILDREN AND FAMILIES

2        LOW INCOME HOME ENERGY ASSISTANCE

3        For an additional amount for "Low Income Home

4    Energy Assistance", $1,500,000,000, to remain available

5    until September 30, 2021, to prevent, prepare for, and re-

6    spond to coronavirus, for making payments under sub-

7    section (b) of section 2602 of the Low-Income Home En-

8    ergy Assistance Act of 1981 (42 U.S.C. 8621 et seq.): *Pro-*

9    *vided*, That of the amount provided under this heading

10   in this Act, $750,000,000 shall be allocated as though the

11   total appropriation for such payments for fiscal year 2020

12   was less than $1,975,000,000: *Provided further*, That each

13   grantee that receives an allotment of funds made available

14   under this heading in this Act shall, for purposes of in-

15   come eligibility, deem to be eligible any household that

16   documents job loss or severe income loss dated after Feb-

17   ruary 29, 2020, such as a layoff or furlough notice or

18   verification of application for unemployment benefits: *Pro-*

19   *vided further*, That the limitation in section 2605(b)(9)(A)

20   of the Low-Income Home Energy Assistance Act of 1981,

21   regarding planning and administering the use of funds,

22   shall apply to funds provided under this heading in this

23   Act by substituting "12.5 percent" for "10 percent": *Pro-*

24   *vided further*, That section 2607(b)(2)(B) of such Act (42

25   U.S.C. 8626(b)(2)(B)) shall not apply to funds made

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002379

75

1 available under this heading in this Act: *Provided further*,

2 That such amount is designated by the Congress as being

3 for an emergency requirement pursuant to section

4 251(b)(2)(A)(i) of the Balanced Budget and Emergency

5 Deficit Control Act of 1985.

6 PAYMENTS TO STATES FOR THE CHILD CARE AND

7 DEVELOPMENT BLOCK GRANT

8 For an additional amount for "Payments to States

9 for the Child Care and Development Block Grant",

10 $7,000,000,000, to remain available until September 30,

11 2021, to prevent, prepare for, and respond to coronavirus,

12 including for Federal administrative expenses, which shall

13 be used to supplement, not supplant State, Territory, and

14 Tribal general revenue funds for child care assistance for

15 low-income families within the United States (including

16 territories) without regard to requirements in sections

17 658E(c)(3)(D)–(E) or section 658G of the Child Care and

18 Development Block Grant Act: *Provided*, That funds pro-

19 vided under this heading in this Act may be used for costs

20 of providing relief from copayments and tuition payments

21 for families and for paying that portion of the child care

22 provider's cost ordinarily paid through family copayments,

23 to provide continued payments and assistance to child care

24 providers in the case of decreased enrollment or closures

25 related to coronavirus, and to ensure child care providers

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002380

G:\CMTE\AP\16\FY20\_D\HEROES.XML

76

1   are able to remain open or reopen as appropriate and ap-

2   plicable: *Provided further*, That States, Territories, and

3   Tribes are encouraged to place conditions on payments to

4   child care providers that ensure that child care providers

5   use a portion of funds received to continue to pay the sala-

6   ries and wages of staff: *Provided further*, That lead agen-

7   cies shall, for the duration of the COVID–19 public health

8   emergency, implement enrollment and eligibility policies

9   that support the fixed costs of providing child care services

10  by delinking provider reimbursement rates from an eligible

11  child's absence and a provider's closure due to the

12  COVID–19 public health emergency: *Provided further*,

13  That the Secretary shall remind States that CCDBG State

14  plans do not need to be amended prior to utilizing existing

15  authorities in the Child Care and Development Block

16  Grant Act for the purposes provided herein: *Provided fur-

17  ther*, That States, Territories, and Tribes are authorized

18  to use funds appropriated under this heading in this Act

19  to provide child care assistance to health care sector em-

20  ployees, emergency responders, sanitation workers, farm-

21  workers, and other workers deemed essential during the

22  response to coronavirus by public officials, without regard

23  to the income eligibility requirements of section 658P(4)

24  of such Act: *Provided further*, That funds appropriated

25  under this heading in this Act shall be available to eligible

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002381

77

1    child care providers under section 658P(6) of the CCDBG
2    Act, even if such providers were not receiving CCDBG as-
3    sistance prior to the public health emergency as a result
4    of the coronavirus, for the purposes of cleaning and sani-
5    tation, and other activities necessary to maintain or re-
6    sume the operation of programs: *Provided further*, That
7    no later than 60 days after the date of enactment of this
8    Act, each State, Territory, and Tribe that receives funding
9    under this heading in this Act shall submit to the Sec-
10   retary a report, in such manner as the Secretary may re-
11   quire, describing how the funds appropriated under this
12   heading in this Act will be spent and that no later than
13   90 days after the date of enactment of this Act, the Sec-
14   retary shall submit to the Committees on Appropriations
15   of the House of Representatives and the Senate, the Com-
16   mittee on Education and Labor of the House of Rep-
17   resentatives, and the Committee on Health, Education,
18   Labor, and Pensions of the Senate a report summarizing
19   such reports from the States, Territories, and Tribes: *Pro-*
20   *vided further*, That no later than October 31, 2021, each
21   State, Territory, and Tribe that receives funding under
22   this heading in this Act shall submit to the Secretary a
23   report, in such manner as the Secretary may require, de-
24   scribing how the funds appropriated under this heading
25   in this Act were spent and that no later than 60 days

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002382

78

1    after receiving such reports from the States, Territories,

2    and Tribes, the Secretary shall submit to the Committees

3    on Appropriations of the House of Representatives and the

4    Senate, the Committee on Education and Labor of the

5    House of Representatives, and the Committee on Health,

6    Education, Labor, and Pensions of the Senate a report

7    summarizing such reports from the States, Territories,

8    and Tribes: *Provided further*, That payments made under

9    this heading in this Act may be obligated in this fiscal

10    year or the succeeding two fiscal years: *Provided further*,

11    That funds appropriated under this heading in this Act

12    may be made available to restore amounts, either directly

13    or through reimbursement, for obligations incurred to pre-

14    vent, prepare for, and respond to coronavirus, prior to the

15    date of enactment of this Act: *Provided further*, That such

16    amount is designated by the Congress as being for an

17    emergency requirement pursuant to section

18    251(b)(2)(A)(i) of the Balanced Budget and Emergency

19    Deficit Control Act of 1985.

20        CHILDREN AND FAMILIES SERVICES PROGRAMS

21        For an additional amount for "Children and Families

22    Services Programs", $1,590,000,000, to remain available

23    until September 30, 2021, to prevent, prepare for, and re-

24    spond to coronavirus, which shall be used as follows:

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002383

79

1          (1) $50,000,000 for Family Violence Prevention
2     and Services grants as authorized by section 303(a)
3     and 303(b) of the Family Violence Prevention and
4     Services Act with such funds available to grantees
5     without regard to matching requirements under sec-
6     tion 306(c)(4) of such Act, of which $2,000,000
7     shall be for the National Domestic Violence Hotline:
8     *Provided*, That the Secretary of Health and Human
9     Services may make such funds available for pro-
10    viding temporary housing and assistance to victims
11    of family, domestic, and dating violence;

12         (2) $20,000,000 for necessary expenses for
13    community-based grants for the prevention of child
14    abuse and neglect under section 209 of the Child
15    Abuse Prevention and Treatment Act, which the
16    Secretary shall make without regard to sections
17    203(b)(1) and 204(4) of such Act; and

18         (3) $20,000,000 for necessary expenses for the
19    Child Abuse Prevention and Treatment Act State
20    Grant program as authorized by Section 112 of such
21    Act;

22         (4) $1,500,000,000 for necessary expenses for
23    grants to carry out the Low-Income Household
24    Drinking Water and Wastewater Assistance pro-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002384

80

1    gram, as described in section 190703 of division S

2    of this Act.

3  *Provided*, That funds made available under this heading

4  in this Act may be used for the purposes provided herein

5  to reimburse costs incurred between January 20, 2020,

6  and the date of award: *Provided further*, That funds ap-

7  propriated by the CARES Act (P.L.116–136) to carry out

8  the Community Services Block Grant Act (42 U.S.C. 9901

9  et seq.) and received by a State shall be made available

10  to eligible entities (as defined in section 673(1)(A) of such

11  Act (42 U.S.C. 9902(1)(A)) not later than either 30 days

12  after such State receives such funds or 30 days after the

13  date of the enactment of this Act, whichever occurs later:

14  *Provided further*, That such amount is designated by the

15  Congress as being for an emergency requirement pursuant

16  to section 251(b)(2)(A)(i) of the Balanced Budget and

17  Emergency Deficit Control Act of 1985.

18    ADMINISTRATION FOR COMMUNITY LIVING

19    AGING AND DISABILITY SERVICES PROGRAMS

20    For an additional amount for ''Aging and Disability

21  Services Programs'', $100,000,000, to remain available

22  until September 30, 2021, to prevent, prepare for, and re-

23  spond to the coronavirus: *Provided*, That of the amount

24  made   available   under   this   heading   in   this   Act,

25  $85,000,000 shall be for activities authorized under the

G:\CMTE\AP\16\FY20\_D\HEROES.XML

81

1   Older Americans Act of 1965 ("OAA") and activities au-
2 thorized under part B of title XX of the Social Security
3 Act, including $20,000,000 for supportive services under
4 part B of title III; $19,000,000 for nutrition services
5 under subparts 1 and 2 of part C of title III; $1,000,000
6 for nutrition services under title VI; $20,000,000 for sup-
7 portive services for family caregivers under part E of title
8 III; $10,000,000 for evidence-based health promotion and
9 disease prevention services under part D of title III;
10 $10,000,000 for elder rights protection activities, includ-
11 ing the long-term ombudsman program under title VI; and
12 $5,000,000 shall be for grants to States to support the
13 network of statewide senior legal services, including exist-
14 ing senior legal hotlines, efforts to expand such hotlines
15 to all interested States, and legal assistance to providers,
16 in order to ensure seniors have access to legal assistance,
17 with such fund allotted to States consistent with para-
18 graphs (1) through (3) of section 304(a) of the OAA: *Pro-*
19 *vided further*, That State matching requirements under
20 sections 304(d)(1)(D) and 373(g)(2) of the OAA shall not
21 apply to funds made available under this heading: *Pro-*
22 *vided further*, That of the amount made available under
23 this heading in this Act, $10,000,000 shall be for activities
24 authorized in the Developmental Disabilities Assistance
25 and Bill of Rights Act of 2000: *Provided further*, That

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002386

82

1   of the amount made available under this heading in this

2   Act, $5,000,000 shall be for activities authorized in the

3   Assistive Technology Act of 2004: *Provided further*, That

4   of the amount made available in the preceding proviso,

5   $5,000,000 shall be for the purchase of equipment to allow

6   interpreters to provide appropriate and essential services

7   to the hearing-impaired community: *Provided further*,

8   That for the purposes of the funding provided in the pre-

9   ceding proviso, during the emergency period described in

10   section 1135(g)(1)(B) of the Social Security Act, for pur-

11   poses of section 4(e)(2)(A) of the Assistive Technology Act

12   of 2004, the term "targeted individuals and entities" (as

13   that term is defined in section 3(16) of the Assistive Tech-

14   nology Act of 2004) shall be deemed to include American

15   Sign Language certified interpreters who are providing in-

16   terpretation services remotely for individuals with disabil-

17   ities: *Provided further*, That during such emergency pe-

18   riod, for the purposes of the previous two provisos, to fa-

19   cilitate the ability of individuals with disabilities to remain

20   in their homes and practice social distancing, the Sec-

21   retary shall waive the prohibitions on the use of grant

22   funds for direct payment for an assistive technology device

23   for an individual with a disability under sections

24   4(e)(2)(A) and 4(e)(5) of such Act: *Provided further*, That

25   such amount is designated by the Congress as being for

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002387

83

1 an emergency requirement pursuant to section
2 251(b)(2)(A)(i) of the Balanced Budget and Emergency
3 Deficit Control Act of 1985.

4 OFFICE OF THE SECRETARY

5 PUBLIC HEALTH AND SOCIAL SERVICES EMERGENCY

6 FUND

7 For an additional amount for ''Public Health and So-
8 cial Services Emergency Fund'', $4,575,000,000, to re-
9 main available until September 30, 2024, to prevent, pre-
10 pare for, and respond to coronavirus, domestically or
11 internationally, including the development of necessary
12 countermeasures and vaccines, prioritizing platform-based
13 technologies with U.S.-based manufacturing capabilities,
14 the purchase of vaccines, therapeutics, diagnostics, nec-
15 essary medical supplies, as well as medical surge capacity,
16 addressing blood supply chain, workforce modernization,
17 telehealth access and infrastructure, initial advanced man-
18 ufacturing, novel dispensing, enhancements to the U.S.
19 Commissioned Corps, and other preparedness and re-
20 sponse activities: *Provided*, That funds appropriated under
21 this paragraph in this Act may be used to develop and
22 demonstrate innovations and enhancements to manufac-
23 turing platforms to support such capabilities: *Provided*
24 *further*, That the Secretary of Health and Human Services
25 shall purchase vaccines developed using funds made avail-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002388

G:\CMTE\AP\16\FY20\_D\HEROES.XML

84

1 able under this paragraph in this Act to respond to an

2 outbreak or pandemic related to coronavirus in quantities

3 determined by the Secretary to be adequate to address the

4 public health need: *Provided further*, That products pur-

5 chased by the Federal government with funds made avail-

6 able under this paragraph in this Act, including vaccines,

7 therapeutics, and diagnostics, shall be purchased in ac-

8 cordance with Federal Acquisition Regulation guidance on

9 fair and reasonable pricing: *Provided further*, That the

10 Secretary may take such measures authorized under cur-

11 rent law to ensure that vaccines, therapeutics, and

12 diagnostics developed from funds provided in this Act will

13 be affordable in the commercial market: *Provided further*,

14 That in carrying out the previous proviso, the Secretary

15 shall not take actions that delay the development of such

16 products: *Provided further*, That products purchased with

17 funds appropriated under this paragraph in this Act may,

18 at the discretion of the Secretary of Health and Human

19 Services, be deposited in the Strategic National Stockpile

20 under section 319F–2 of the Public Health Service Act:

21 *Provided further*, That funds appropriated under this

22 paragraph in this Act may be transferred to, and merged

23 with, the fund authorized by section 319F–4, the Covered

24 Countermeasure Process Fund, of the Public Health Serv-

25 ice Act: *Provided further*, That of the amount made avail-

DOC_0002389

85

1 able under this paragraph in this Act, $3,500,000,000
2 shall be available to the Biomedical Advanced Research
3 and Development Authority for necessary expenses of ad-
4 vanced research, development, manufacturing, production,
5 and purchase of vaccines and therapeutics: *Provided fur-*
6 *ther*, That of the amount made available under this para-
7 graph in this Act, $500,000,000 shall be available to the
8 Biomedical Advanced Research and Development Author-
9 ity for the construction, renovation, or equipping of U.S.-
10 based next generation manufacturing facilities, other than
11 facilities owned by the United States Government: *Pro-*
12 *vided further*, That of the amount made available under
13 this paragraph in this Act, $500,000,000 shall be available
14 to the Biomedical Advanced Research and Development
15 Authority to promote innovation in antibacterial research
16 and development: *Provided further*, That funds made
17 available under this paragraph in this Act may be used
18 for grants for the rent, lease, purchase, acquisition, con-
19 struction, alteration, or renovation of non-Federally owned
20 facilities to improve preparedness and response capability
21 at the State and local level: *Provided further*, That funds
22 appropriated under this paragraph in this Act may be
23 used for the construction, alteration, renovation or equip-
24 ping of non-Federally owned facilities for the production
25 of vaccines, therapeutics, diagnostics, and medicines and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002390

G:\CMTE\AP\16\FY20\_D\HEROES.XML

86

1   other items purchased under section 319F–2(a) of the

2   Public Health Service Act where the Secretary determines

3   that such a contract is necessary to assure sufficient do-

4   mestic production of such supplies: *Provided further*, That

5   all construction, alteration, or renovation work, carried

6   out, in whole or in part, with fund appropriated under this

7   heading in this Act, the CARES Act (P.L. 116–136), or

8   the Paycheck Protection Program and Health Care En-

9   hancement Act (P.L. 116–139), shall be subject to the re-

10  quirements of 42 U.S.C. 300s-1(b)(1)(I): *Provided further*,

11  That not later than seven days after the date of enactment

12  of this Act, and weekly thereafter until the public health

13  emergency related to coronavirus is no longer in effect,

14  the Secretary shall report to the Committees on Appro-

15  priations of the House of Representatives and the Senate

16  on the current inventory of ventilators and personal pro-

17  tective equipment in the Strategic National Stockpile, in-

18  cluding the numbers of face shields, gloves, goggles and

19  glasses, gowns, head covers, masks, and respirators, as

20  well as deployment of ventilators and personal protective

21  equipment during the previous week, reported by state and

22  other jurisdiction: *Provided further*, That after the date

23  that a report is required to be submitted by the preceding

24  proviso, amounts made available for "Department of

25  Health and Human Services—Office of the Secretary—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002391

G:\CMTE\AP\16\FY20\_D\HEROES.XML

87

1   General Departmental Management'' in Public Law 116–
2   94 for salaries and expenses of the Immediate Office of
3   the Secretary shall be reduced by $250,000 for each day
4   that such report has not been submitted: *Provided further*,
5   That not later than the first Monday in February of fiscal
6   year 2021 and each fiscal year thereafter, the Secretary
7   shall include in the annual budget submission for the De-
8   partment, and submit to the Congress, the Secretary's re-
9   quest with respect to expenditures necessary to maintain
10   the minimum level of relevant supplies in the Strategic
11   National Stockpile, including in case of a significant pan-
12   demic, in consultation with the working group under sec-
13   tion 319F(a) of the Public Health Service Act and the
14   Public Health Emergency Medical Countermeasures En-
15   terprise established under section 2811–1 of such Act:
16   *Provided further*, That such amount is designated by the
17   Congress as being for an emergency requirement pursuant
18   to section 251(b)(2)(A)(i) of the Balanced Budget and
19   Emergency Deficit Control Act of 1985.
20       For an additional amount for ''Public Health and So-
21   cial Services Emergency Fund'', $100,000,000,000, to re-
22   main available until expended, to prevent, prepare for, and
23   respond to coronavirus, for necessary expenses to make
24   payments under the Health Care Provider Relief Fund as
25   described in section 30611 of division C of this Act: *Pro-*

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002392

88

1   *vided*, That such amount is designated by the Congress

2   as being for an emergency requirement pursuant to sec-

3   tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

4   gency Deficit Control Act of 1985.

5   For an additional amount for "Public Health and So-

6   cial Services Emergency Fund", $75,000,000,000, to re-

7   main available until expended, to prevent, prepare for, and

8   respond to coronavirus, for necessary expenses to carry

9   out the COVID-19 National Testing and Contact Tracing

10  Initiative, as described in subtitle D of division C of this

11  Act: *Provided*, That such amount is designated by the

12  Congress as being for an emergency requirement pursuant

13  to section 251(b)(2)(A)(i) of the Balanced Budget and

14  Emergency Deficit Control Act of 1985.

15  DEPARTMENT OF EDUCATION

16  STATE FISCAL STABILIZATION FUND

17  For an additional amount for "State Fiscal Stabiliza-

18  tion Fund", $90,000,000,000, to remain available until

19  September 30, 2022, to prevent, prepare for, and respond

20  to coronavirus: *Provided*, That the Secretary of Education

21  (referred to under this heading as "Secretary") shall make

22  grants to the Governor of each State for support of ele-

23  mentary, secondary, and postsecondary education and, as

24  applicable, early childhood education programs and serv-

25  ices: *Provided further*, That of the amount made available,

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002393

89

1 the Secretary shall first allocate up to one-half of 1 per-

2 cent to the outlying areas and one-half of 1 percent to

3 the Bureau of Indian Education ("BIE") for activities

4 consistent with this heading under such terms and condi-

5 tions as the Secretary may determine: *Provided further,*

6 That the Secretary may reserve up to $30,000,000 for ad-

7 ministration and oversight of the activities under this

8 heading: *Provided further,* That the Secretary shall allo-

9 cate 61 percent of the remaining funds made available to

10 carry out this heading to the States on the basis of their

11 relative population of individuals aged 5 through 24 and

12 allocate 39 percent on the basis of their relative number

13 of children counted under section 1124(c) of the Elemen-

14 tary and Secondary Education Act of 1965 (referred to

15 under this heading as "ESEA") as State grants: *Provided*

16 *further,* That State grants shall support statewide elemen-

17 tary, secondary, and postsecondary activities; subgrants to

18 local educational agencies; and, subgrants to public insti-

19 tutions of higher education: *Provided further,* That States

20 shall allocate 65 percent of the funds received under the

21 sixth proviso as subgrants to local educational agencies in

22 proportion to the amount of funds such local educational

23 agencies received under part A of title I of the ESEA in

24 the most recent fiscal year: *Provided further,* That States

25 shall allocate 30 percent of the funds received under the

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002394

90

1 sixth proviso as subgrants to public institutions of higher

2 education, of which 75 percent shall be apportioned ac-

3 cording to the relative share of students who received Pell

4 Grants who are not exclusively enrolled in distance edu-

5 cation courses prior to the coronavirus emergency at the

6 institution in the previous award year and 25 percent shall

7 be apportioned according to the total enrollment of stu-

8 dents at the institution who are not exclusively enrolled

9 in distance education courses prior to the coronavirus

10 emergency at the institution in the previous award year:

11 *Provided further*, That the Governor shall return to the

12 Secretary any funds received that the Governor does not

13 award to local educational agencies and public institutions

14 of higher education or otherwise commit within two years

15 of receiving such funds, and the Secretary shall reallocate

16 such funds to the remaining States in accordance with the

17 sixth proviso: *Provided further*, That Governors shall use

18 State grants and subgrants to maintain or restore State

19 and local fiscal support for elementary, secondary and

20 postsecondary education: *Provided further*, That funds for

21 local educational agencies may be used for any activity au-

22 thorized by the ESEA, including the Native Hawaiian

23 Education Act and the Alaska Native Educational Equity,

24 Support, and Assistance Act, the Individuals with Disabil-

25 ities Education Act ("IDEA"), subtitle B of title VII of

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002395

G:\CMTE\AP\16\FY20\_D\HEROES.XML

91

1 the McKinney-Vento Homeless Assistance Act , the Adult

2 Education and Family Literacy Act or the Carl D. Perkins

3 Career and Technical Education Act of 2006 ("the Per-

4 kins Act"): *Provided further,* That a State or local edu-

5 cational agency receiving funds under this heading may

6 use the funds for activities coordinated with State, local,

7 tribal, and territorial public health departments to detect,

8 prevent, or mitigate the spread of infectious disease or

9 otherwise respond to coronavirus; support online learning

10 by purchasing educational technology and internet access

11 for students, which may include assistive technology or

12 adaptive equipment, that aids in regular and substantive

13 educational interactions between students and their class-

14 room instructor; provide ongoing professional development

15 to staff in how to effectively provide quality online aca-

16 demic instruction; provide assistance for children and fam-

17 ilies to promote equitable participation in quality online

18 learning; plan and implement activities related to summer

19 learning, including providing classroom instruction or

20 quality online learning during the summer months; plan

21 for and coordinate during long-term closures, provide tech-

22 nology for quality online learning to all students, and how

23 to support the needs of low-income students, racial and

24 ethnic minorities, students with disabilities, English learn-

25 ers, students experiencing homelessness, and children in

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002396

G:\CMTE\AP\16\FY20\_D\HEROES.XML

1  foster care, including how to address learning gaps that
2  are created or exacerbated due to long-term closures; sup-
3  port the continuity of student engagement through social
4  and emotional learning; and other activities that are nec-
5  essary to maintain the operation of and continuity of serv-
6  ices in local educational agencies, including maintaining
7  employment of existing personnel, and reimbursement for
8  eligible costs incurred during the national emergency: *Pro-*
9  *vided further*, That a public institution of higher education
10  that receives funds under this heading shall use funds for
11  education and general expenditures (including defraying
12  expenses due to lost revenue, reimbursement for expenses
13  already incurred, and payroll) and grants to students for
14  expenses directly related to coronavirus and the disruption
15  of campus operations (which may include emergency fi-
16  nancial aid to students for food, housing, technology,
17  health care, and child care costs that shall not be required
18  to be repaid by such students) or for the acquisition of
19  technology and services directly related to the need for dis-
20  tance education and the training of faculty and staff to
21  use such technology and services: *Provided further*, That
22  priority shall be given to under-resourced institutions, in-
23  stitutions with high burden due to the coronavirus, and
24  institutions who did not possess distance education capa-
25  bilities prior to the coronavirus emergency: *Provided fur-*

G:\CMTE\AP\16\FY20\_D\HEROES.XML

93

1 *ther*, That any institution of higher education that is not

2 otherwise eligible for a grant of at least $1,000,000 under

3 this heading shall be eligible to receive an amount equal

4 to whichever is lesser of the total loss of revenue and in-

5 creased costs associated with the coronavirus or

6 $1,000,000: *Provided further*, That an institution of high-

7 er education may not use funds received under this head-

8 ing to increase its endowment or provide funding for cap-

9 ital outlays associated with facilities related to athletics,

10 sectarian instruction, or religious worship: *Provided fur-*

11 *ther*, That funds may be used to support hourly workers,

12 such as education support professionals, classified school

13 employees, and adjunct and contingent faculty: *Provided*

14 *further*, That a Governor of a State desiring to receive an

15 allocation under this heading shall submit an application

16 at such time, in such manner, and containing such infor-

17 mation as the Secretary may reasonably require: *Provided*

18 *further*, That the Secretary shall issue a notice inviting

19 applications not later than 15 days after the date of enact-

20 ment of this Act: *Provided further*, That any State receiv-

21 ing funding under this heading shall maintain its percent

22 of total spending on elementary, secondary, and postsec-

23 ondary education in fiscal year 2019 for fiscal years 2020,

24 2021, and 2022: *Provided further*, That a State's applica-

25 tion shall include assurances that the State will maintain

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002398

G:\CMTE\AP\16\FY20\_D\HEROES.XML

94

1  support for elementary and secondary education in fiscal

2  year 2020, fiscal year 2021, and fiscal year 2022 at least

3  at the level of such support that is the average of such

4  State's support for elementary and secondary education

5  in the 3 fiscal years preceding the date of enactment of

6  this Act: *Provided further*, That a State's application shall

7  include assurances that the State will maintain State sup-

8  port for higher education (not including support for cap-

9  ital projects or for research and development or tuition

10  and fees paid by students) in fiscal year 2020, fiscal year

11  2021, and fiscal year 2022 at least at the level of such

12  support that is the average of such State's support for

13  higher education (which shall include State and local gov-

14  ernment funding to institutions of higher education and

15  state need-based financial aid) in the 3 fiscal years pre-

16  ceding the date of enactment of this Act, and that any

17  such State's support for higher education funding, as cal-

18  culated as spending for public higher education per full-

19  time equivalent student, shall be the same in fiscal year

20  2022 as it was in fiscal year 2019: *Provided further*, That

21  in such application, the Governor shall provide baseline

22  data that demonstrates the State's current status in each

23  of the areas described in such assurances in the preceding

24  provisos: *Provided further*, That a State's application shall

25  include assurances that the State will not construe any

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002399

95

1 provisions under this heading as displacing any otherwise

2 applicable provision of any collective-bargaining agreement

3 between an eligible entity and a labor organization as de-

4 fined by section 2(5) of the National Labor Relations Act

5 (29 U.S.C. 152(5)) or analogous State law: *Provided fur-*

6 *ther*, That a State's application shall include assurances

7 that the State shall maintain the wages, benefits, and

8 other terms and conditions of employment set forth in any

9 collective-bargaining agreement between the eligible entity

10 and a labor organization, as defined in the preceding pro-

11 viso: *Provided further*, That a State's application shall in-

12 clude assurances that all students with disabilities are af-

13 forded their full rights under IDEA, including all rights

14 and services outlined in individualized education programs

15 (''IEPs''): *Provided further*, That a State receiving funds

16 under this heading shall submit a report to the Secretary,

17 at such time and in such manner as the Secretary may

18 require, that describes the use of funds provided under

19 this heading: *Provided further*, That no recipient of funds

20 under this heading shall use funds to provide financial as-

21 sistance to students to attend private elementary or sec-

22 ondary schools, unless such funds are used to provide spe-

23 cial education and related services to children with disabil-

24 ities whose IEPs require such placement, and where the

25 school district maintains responsibility for providing such

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002400

96

1 children a free appropriate public education, as authorized

2 by IDEA: *Provided further*, That a local educational agen-

3 cy, State, institution of higher education, or other entity

4 that receives funds under "State Fiscal Stabilization

5 Fund", shall to the greatest extent practicable, continue

6 to pay its employees and contractors during the period of

7 any disruptions or closures related to coronavirus: *Pro-*

8 *vided further*, That the terms "elementary education" and

9 "secondary education" have the meaning given such terms

10 under State law: *Provided further*, That the term "institu-

11 tion of higher education" has the meaning given such term

12 in section 101 of the Higher Education Act of 1965: *Pro-*

13 *vided further*, That the term "fiscal year" shall have the

14 meaning given such term under State law: *Provided fur-*

15 *ther*, That the term "State" means each of the 50 States,

16 the District of Columbia, and the Commonwealth of Puer-

17 to Rico: *Provided further*, That such amount is designated

18 by the Congress as being for an emergency requirement

19 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

20 et and Emergency Deficit Control Act of 1985.

21                    HIGHER EDUCATION

22     For an additional amount for "Higher Education",

23 $10,150,000,000, to remain available until September 30,

24 2021, to prevent, prepare for, and respond to coronavirus,

25 of which $11,000,000 shall be transferred to "National

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002401

 1  Technical Institute for the Deaf'' to help defray expenses
 2  (which may include lost revenue, reimbursement for ex-
 3  penses already incurred, technology costs associated with
 4  a transition to distance education, sign language and cap-
 5  tioning costs associated with a transition to distance edu-
 6  cation, faculty and staff trainings, and payroll) directly
 7  caused by coronavirus and to enable emergency financial
 8  aid to students for expenses directly related to coronavirus
 9  and the disruption of university operations (which may in-
10  clude food, housing, transportation, technology, health
11  care, and child care), of which $20,000,000 shall be trans-
12  ferred to ''Howard University'' to help defray expenses
13  (which may include lost revenue, reimbursement for ex-
14  penses already incurred, technology costs associated with
15  a transition to distance education, technology costs associ-
16  ated with a transition to distance education, faculty and
17  staff trainings, and payroll) directly related to coronavirus
18  and to enable grants to students for expenses directly re-
19  lated to coronavirus and the disruption of university oper-
20  ations (which may include food, housing, transportation,
21  technology, health care, and child care), of which
22  $11,000,000 shall be transferred to ''Gallaudet Univer-
23  sity'' to help defray expenses (which may include lost rev-
24  enue, reimbursement for expenses already incurred, tech-
25  nology costs associated with a transition to distance edu-

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002402

98

1  cation, sign language and captioning costs associated with
2  a transition to distance education, faculty and staff
3  trainings, and payroll) directly related to coronavirus and
4  to enable grants to students for expenses directly related
5  to coronavirus and the disruption of university operations
6  (which may include food, housing, transportation, tech-
7  nology, health care, and child care), and of which the re-
8  maining amounts shall be used to carry out parts A and
9  B of title III, parts A and B of title V, subpart 4 of part
10  A of title VII, and part B of title VII of the Higher Edu-
11  cation Act of 1965 (''HEA'') as follows:

12      (1) $1,708,000,000 for parts A and B of title
13      III, parts A and B of title V, and subpart 4 of part
14      A of title VII of the HEA to address needs directly
15      related to coronavirus: *Provided*, That such amount
16      shall be allocated by the Secretary proportionally to
17      such programs covered under this paragraph and
18      based on the relative share of funding appropriated
19      to such programs in the Further Consolidated Ap-
20      propriations Act, 2020 (Public Law 116–94) and
21      distributed to institutions of higher education as fol-
22      lows:

23          (A) Except as otherwise provided in sub-
24          paragraph (B), for eligible institutions under
25          part B of title III and subpart 4 of part A of

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002403

99

1     title VII of the Higher Education Act, the Sec-

2     retary shall allot to each eligible institution an

3     amount using the following formula:

4           (i) 70 percent according to a ratio

5         equivalent to the number of Pell Grant re-

6         cipients in attendance at such institution

7         at the end of the school year preceding the

8         beginning of that fiscal year and the total

9         number of Pell Grant recipients at all such

10         institutions;

11           (ii) 20 percent according to a ratio

12         equivalent to the total number of students

13         enrolled at such institution at the end of

14         the school year preceding the beginning of

15         that fiscal year and the number of stu-

16         dents enrolled at all such institutions; and

17           (iii) 10 percent according to a ratio

18         equivalent to the total endowment size at

19         all eligible institutions at the end of the

20         school year preceding the beginning of that

21         fiscal year and the total endowment size at

22         such institutions;

23       (B) For eligible institutions under section

24     326 of the Higher Education Act, the Secretary

25     shall allot to each eligible institution an amount

DOC_0002404

G:\CMTE\AP\16\FY20\_D\HEROES.XML

100

1    in proportion to the award received from fund-

2    ing for such institutions in the Further Consoli-

3    dated Appropriations Act, 2020 (Public Law

4    116–94);

5        (C) For eligible institutions under section

6    316 of the Higher Education Act, the Secretary

7    shall allot funding according to the formula in

8    section 316(d)(3) of the Higher Education Act;

9        (D) Notwithstanding section 318(f) of the

10   Higher Education Act, for eligible institutions

11   under section 318 of the Higher Education Act,

12   the Secretary shall allot funding according to

13   the formula in section 318(e) of the Higher

14   Education Act;

15       (E) Except as provided in subparagraphs

16   (C) and (D), for eligible institutions under part

17   A of title III of the Higher Education Act and

18   parts A and B of title V, the Secretary shall

19   issue an application for eligible institutions to

20   demonstrate unmet need, and the Secretary

21   shall allow eligible institutions to apply for

22   funds under one of the programs for which they

23   are eligible.

24       (2) $8,400,000,000 for part B of title VII of

25   the HEA for institutions of higher education (as de-

1    fined in section 101 or 102(c) of the HEA) to ad-

2    dress needs directly related to coronavirus as follows:

3        (A) $7,000,000,000 shall be provided to

4        private, non-profit institutions of higher edu-

5        cation apportioning it—

6            (i) 75 percent according to the rel-

7            ative share of enrollment of Federal Pell

8            Grant recipients who are not exclusively

9            enrolled in distance education courses prior

10            to the coronavirus emergency, and

11            (ii) 25 percent according to the rel-

12            ative share of the total equivalent enroll-

13            ment of students who were not Federal

14            Pell Grant recipients who are not exclu-

15            sively enrolled in distance education

16            courses prior to the coronavirus emer-

17            gency.

18        (B) $1,400,000,000 shall be for institu-

19        tions of higher education (as defined in section

20        101 of the Higher Education Act) with unmet

21        need related to the coronavirus, including insti-

22        tutions of higher education that offer their

23        courses and programs exclusively through dis-

24        tance education:

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002406

102

1  *Provided*, That funds shall be used to make payments to

2  such institutions to provide emergency grants to students

3  who attended such institutions at any point during the

4  coronavirus emergency and for any component of the stu-

5  dent's cost of attendance (as defined under section 472

6  of the HEA), including food, housing, course materials,

7  technology, health care, and child care): *Provided further*,

8  That institutions of higher education may use such funds

9  to defray expenses (including lost revenue, reimbursement

10  for expenses already incurred, technology costs associated

11  with a transition to distance education, faculty and staff

12  trainings, and payroll) incurred by institutions of higher

13  education: *Provided further*, That such payments shall not

14  be used to increase endowments or provide funding for

15  capital outlays associated with facilities related to ath-

16  letics, sectarian instruction, or religious worship: *Provided*

17  *further*, That any institution of higher education that is

18  not otherwise eligible for a grant of at least $1,000,000

19  under paragraph (2)(A) of this heading and has a total

20  enrollment of at least 500 students shall be eligible to re-

21  ceive an amount equal to whichever is the lesser of the

22  total loss of revenue and increased costs associated with

23  the coronavirus or $1,000,000: *Provided further*, That

24  such amount is designated by the Congress as being for

25  an  emergency  requirement  pursuant  to  section

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002407

103

1 251(b)(2)(A)(i) of the Balanced Budget and Emergency

2 Deficit Control Act of 1985.

3 GENERAL PROVISIONS—DEPARTMENT OF EDUCATION

4     SEC. 10602. Amounts made available to "Depart-

5 ment of Education—Office of Inspector General" in title

6 VIII of division B of Public Law 116–136 are hereby per-

7 manently rescinded, and an amount of additional new

8 budget authority equivalent to the amount rescinded is

9 hereby appropriated, to remain available until expended,

10 for the same purposes and under the same authorities as

11 they were originally appropriated, and shall be in addition

12 to any other funds available for such purposes: *Provided*,

13 That the amounts appropriated by this section may also

14 be used for investigations and are available until ex-

15 pended: *Provided further*, That such amount is designated

16 by the Congress as being for an emergency requirement

17 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

18 et and Emergency Deficit Control Act of 1985.

19     SEC. 10603. The Coronavirus Aid, Relief, and Eco-

20 nomic Security Act (P.L. 116–136) is amended by striking

21 section 18001(a)(3): *Provided*, That amounts repurposed

22 by this section that were previously designated by the Con-

23 gress as an emergency requirement pursuant to the Bal-

24 anced Budget and Emergency Deficit Control Act of 1985

25 are designated by the Congress as an emergency require-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002408

G:\CMTE\AP\16\FY20\_D\HEROES.XML

104

1    ment pursuant to section 251(b)(2)(A)(i) of the Balanced

2    Budget and Emergency Deficit Control Act of 1985.

3        SEC. 10604. Section 18005(a) of the Coronavirus

4    Aid, Relief, and Economic Security Act (P.L. 116–136)

5    is amended by inserting "with these funds only for chil-

6    dren identified under section 1115(c) of the ESEA in the

7    school district served by a local educational agency who

8    are enrolled in private elementary schools and secondary

9    schools" after "equitable services": *Provided*, That

10   amounts repurposed by this section that were previously

11   designated by the Congress as an emergency requirement

12   pursuant to the Balanced Budget and Emergency Deficit

13   Control Act of 1985 are designated by the Congress as

14   an   emergency   requirement   pursuant   to   section

15   251(b)(2)(A)(i) of the Balanced Budget and Emergency

16   Deficit Control Act of 1985.

17       SEC. 10605. Section 18004(c) of the Coronavirus

18   Aid, Relief, and Economic Security Act (P.L. 116–136)

19   is amended by striking "to cover any costs associated with

20   significant changes to the delivery of instruction due to

21   the coronavirus" and inserting "to defray expenses (in-

22   cluding lost revenue, reimbursement for expenses already

23   incurred, technology costs associated with a transition to

24   distance education, faculty and staff trainings, payroll) in-

25   curred by institutions of higher education.": *Provided*,

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002409

105

1 That amounts repurposed by this section that were pre-

2 viously designated by the Congress as an emergency re-

3 quirement pursuant to the Balanced Budget and Emer-

4 gency Deficit Control Act of 1985 are designated by the

5 Congress as an emergency requirement pursuant to sec-

6 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

7 gency Deficit Control Act of 1985.

8 SEC. 10606. With respect to the allocation and award

9 of funds under this title, the Secretary of Education is

10 prohibited from—

11 (a) establishing a priority or preference not specified

12 in this title; and

13 (b) imposing limits on the use of such funds not spec-

14 ified in this title.

## RELATED AGENCIES

### CORPORATION FOR NATIONAL AND COMMUNITY

### SERVICE

#### ADMINISTRATIVE PROVISIONS—CORPORATION FOR

#### NATIONAL AND COMMUNITY SERVICE

20 SEC. 10607. (a) The remaining unobligated balances

21 of funds as of September 30, 2020, from amounts pro-

22 vided to "Corporation for National and Community Serv-

23 ice—Salaries and Expenses" in title IV of division A of

24 the Further Consolidated Appropriations Act, 2020 (Pub-

25 lic Law 116–94), are hereby permanently rescinded, and

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002410

106

1 an amount of additional new budget authority equal to
2 the unobligated balances rescinded is hereby appropriated
3 on September 30, 2020, to remain available until Sep-
4 tember 30, 2021, for the same purposes and under the
5 same authorities that they were originally made available
6 in Public Law 116–94, which shall be in addition to any
7 other funds available for such purposes: *Provided*, That
8 such amount is designated by the Congress as being for
9 an emergency requirement pursuant to section
10 251(b)(2)(A)(i) of the Balanced Budget and Emergency
11 Deficit Control Act of 1985.

12   (b) The remaining unobligated balances of funds as
13 of September 30, 2020, from amounts provided to "Cor-
14 poration for National and Community Service—Operating
15 Expenses" in title IV of division A of the Further Consoli-
16 dated Appropriations Act, 2020 (Public Law 116–94), are
17 hereby permanently rescinded, and an amount of addi-
18 tional new budget authority equal to the unobligated bal-
19 ances rescinded is hereby appropriated on September 30,
20 2020, to remain available until September 30, 2021, for
21 the same purposes and under the same authorities that
22 they were originally made available in Public Law 116–
23 94, which shall be in addition to any other funds available
24 for such purposes: *Provided*, That any amounts appro-
25 priated by the preceding proviso shall not be subject to

107

1 the allotment requirements otherwise applicable under sec-
2 tions 129(a), (b), (d), and (e) of the National and Commu-
3 nity Service Act of 1993: *Provided further*, That such
4 amount is designated by the Congress as being for an
5 emergency requirement pursuant to section
6 251(b)(2)(A)(i) of the Balanced Budget and Emergency
7 Deficit Control Act of 1985.

8    (c) The remaining unobligated balances of funds as
9 of September 30, 2020, from amounts provided to "Cor-
10 poration for National and Community Service—Office of
11 Inspector General" in title IV of division A of the Further
12 Consolidated Appropriations Act, 2020 (Public Law 116–
13 94), are hereby permanently rescinded, and an amount of
14 additional new budget authority equal to the amount re-
15 scinded is hereby appropriated on September 30, 2020,
16 to remain available until September 30, 2021, for the
17 same purposes and under the same authorities that they
18 were originally made available in Public Law 116–94,
19 which shall be in addition to any other funds available for
20 such purposes: *Provided*, That such amount is designated
21 by the Congress as being for an emergency requirement
22 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-
23 et and Emergency Deficit Control Act of 1985.

24    (d)(1) Section 3514(b) of title III of division A of
25 Public Law 116–136 is hereby repealed, and shall be ap-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002412

108

1  plied hereafter as if such subsection had never been en-
2  acted.

3       (2)(A) IN GENERAL.—The budgetary effects of
4  this subsection are designated as an emergency re-
5  quirement pursuant to section 4(g) of the Statutory
6  Pay-As-You-Go Act of 2010 (2 U.S.C. 933(g)).

7       (B) DESIGNATION IN THE SENATE.—In the
8  Senate, this subsection is designated as an emer-
9  gency requirement pursuant to section 4112(a) of H.
10  Con. Res. 71 (115th Congress), the concurrent reso-
11  lution on the budget for fiscal year 2018.

12       (C) CLASSIFICATION OF BUDGETARY EF-
13  FECTS.—Notwithstanding Rule 3 of the Budget
14  Scorekeeping Guidelines set forth in the joint ex-
15  planatory statement of the committee of conference
16  accompanying Conference Report 105–217 and sec-
17  tion 250(c)(7) and (c)(8) of the Balanced Budget
18  and Emergency Deficit Control Act of 1985, the
19  budgetary effects of this subsection—

20           (i) shall not be estimated for purposes of
21       section 251 of such Act; and

22           (ii) shall be entered on the PAYGO score-
23       cards maintained pursuant to section 4(d) of
24       the Statutory Pay As-You-Go Act of 2010.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002413

109

1    INSTITUTE OF MUSEUM AND LIBRARY SCIENCES

2    OFFICE OF MUSEUM AND LIBRARY SERVICES: GRANTS

3                     AND ADMINISTRATION

4       For an additional amount for ''Institute of Museum

5    and Library Services'', $5,000,000, to remain available

6    until September 30, 2021, to prevent, prepare for, and re-

7    spond to coronavirus, including grants to States, terri-

8    tories, tribes, museums, and libraries, to expand digital

9    network access, purchase internet accessible devices, pro-

10   vide technical support services, and for operational ex-

11   penses: *Provided*, That any matching funds requirements

12   for States, tribes, libraries, and museums are waived for

13   grants provided with funds made available under this

14   heading in this Act: *Provided further*, That such amount

15   is designated by the Congress as being for an emergency

16   requirement pursuant to section 251(b)(2)(A)(i) of the

17   Balanced Budget and Emergency Deficit Control Act of

18   1985.

19                 RAILROAD RETIREMENT BOARD

20               LIMITATION ON ADMINISTRATION

21      For an additional amount for ''Limitation on Admin-

22   istration'', $4,500,000, to remain available until Sep-

23   tember 30, 2021, to prevent, prepare for, and respond to

24   coronavirus, including the expeditious dispensation of rail-

25   road unemployment insurance benefits, and to support

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002414

110

1   full-time equivalents and overtime hours as needed to ad-
2   minister the Railroad Unemployment Insurance Act: *Pro-*
3   *vided*, That such amount is designated by the Congress
4   as being for an emergency requirement pursuant to sec-
5   tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-
6   gency Deficit Control Act of 1985.

7       LIMITATION ON THE OFFICE OF INSPECTOR GENERAL

8       For an additional amount for ''Office of the Inspector
9   General'', $500,000, to remain available until expended,
10  to prevent, prepare for, and respond to coronavirus, in-
11  cluding salaries and expenses necessary for oversight, in-
12  vestigations and audits of the Railroad Retirement Board
13  and railroad unemployment insurance benefits funded in
14  this Act and Public Law 116–136: *Provided*, That such
15  amount is designated by the Congress as being for an
16  emergency    requirement    pursuant    to    section
17  251(b)(2)(A)(i) of the Balanced Budget and Emergency
18  Deficit Control Act of 1985.

19          GENERAL PROVISIONS—THIS TITLE

20      SEC. 10608. Notwithstanding any other provision of
21  law, funds made available under each heading in this title
22  shall only be used for the purposes specifically described
23  under that heading.

24      SEC. 10609. Funds appropriated by this title may be
25  used by the Secretary of the Health and Human Services

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002415

111

1 to appoint, without regard to the provisions of sections

2 3309 through 3319 of title 5 of the United States Code,

3 candidates needed for positions to perform critical work

4 relating to coronavirus for which—

5     (1) public notice has been given; and

6     (2) the Secretary has determined that such a

7     public health threat exists.

8     SEC. 10610. Funds made available by this title may

9 be used to enter into contracts with individuals for the

10 provision of personal services (as described in section 104

11 of part 37 of title 48, Code of Federal Regulations (48

12 CFR 37.104)) to support the prevention of, preparation

13 for, or response to coronavirus, domestically and inter-

14 nationally, subject to prior notification to the Committees

15 on Appropriations of the House of Representatives and the

16 Senate: *Provided*, That such individuals may not be

17 deemed employees of the United States for the purpose

18 of any law administered by the Office of Personnel Man-

19 agement: *Provided further*, That the authority made avail-

20 able pursuant to this section shall expire on September

21 30, 2024.

22     SEC. 10611. Not later than 30 days after the date

23 of enactment of this Act, the Secretary of Health and

24 Human Services shall provide a detailed spend plan of an-

25 ticipated uses of funds made available to the Department

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002416

112

1  of Health and Human Services in this Act, including esti-

2  mated personnel and administrative costs, to the Commit-

3  tees on Appropriations of the House of Representatives

4  and the Senate: *Provided*, That such plans shall be up-

5  dated and submitted to such Committees every 60 days

6  until September 30, 2024: *Provided further*, That the

7  spend plans shall be accompanied by a listing of each con-

8  tract obligation incurred that exceeds $5,000,000 which

9  has not previously been reported, including the amount of

10  each such obligation.

11      SEC. 10612. No later than September 30, 2020, the

12  remaining unobligated balances of funds made available

13  through September 30, 2020, under the heading "Na-

14  tional Institutes of Health" in the Further Consolidated

15  Appropriations Act, 2020 (Public Law 116–94) are hereby

16  permanently rescinded, and an amount of additional new

17  budget authority equivalent to the amount rescinded from

18  each account is hereby appropriated to that account, to

19  remain available until September 30, 2021, and shall be

20  available for the same purposes, in addition to other funds

21  as may be available for such purposes, and under the same

22  authorities for which the funds were originally provided

23  in Public Law 116–94: *Provided*, That such amount is

24  designated by the Congress as being for an emergency re-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002417

113

1 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

2 anced Budget and Emergency Deficit Control Act of 1985.

3    SEC. 10613. Funds made available in Public Law

4 113–235 to the accounts of the National Institutes of

5 Health that were available for obligation through fiscal

6 year 2015 and were obligated for multi-year research

7 grants shall be available through fiscal year 2021 for the

8 liquidation of valid obligations if the Director of the Na-

9 tional Insitutes of Health determines the project suffered

10 an interruption of activities attributable to SARS–CoV–

11 2: *Provided*, That such amount is designated by the Con-

12 gress as being for an emergency requirement pursuant to

13 section 251(b)(2)(A)(i) of the Balanced Budget and

14 Emergency Deficit Control Act of 1985.

15    SEC. 10614. Of the funds appropriated by this title

16 under the heading ''Public Health and Social Services

17 Emergency Fund'', $75,000,000 shall be transferred to,

18 and merged with, funds made available under the heading

19 ''Office of the Secretary, Office of Inspector General'', and

20 shall remain available until expended, for oversight of ac-

21 tivities supported with funds appropriated to the Depart-

22 ment of Health and Human Services in this Act: *Provided*,

23 That the Inspector General of the Department of Health

24 and Human Services shall consult with the Committees

25 on Appropriations of the House of Representatives and the

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002418

114

1   Senate prior to obligating such funds: *Provided further*,

2 That the transfer authority provided by this section is in

3 addition to any other transfer authority provided by law.

4               TITLE VII—LEGISLATIVE BRANCH

5              HOUSE OF REPRESENTATIVES

6   For an additional amount for the "House of Rep-

7 resentatives", $5,000,000, to remain available until Sep-

8 tember 30, 2021, for necessary expenses to prevent, pre-

9 pare for, and respond to coronavirus: *Provided*, That the

10 amounts made available under this heading in this Act

11 shall be allocated in accordance with a spend plan sub-

12 mitted to the Committee on Appropriations of the House

13 of Representatives by the Chief Administrative Officer and

14 approved by such Committee: *Provided further*, That such

15 amount is designated by the Congress as being for an

16 emergency requirement pursuant to section

17 251(b)(2)(A)(i) of the Balanced Budget and Emergency

18 Deficit Control Act of 1985.

19         GOVERNMENT ACCOUNTABILITY OFFICE

20              SALARIES AND EXPENSES

21   For an additional amount for "Salaries and Ex-

22 penses", $30,000,000, to remain available until expended,

23 for audits and investigations relating to COVID–19 or

24 similar pandemics, as well as any related stimulus funding

25 to assist the Nation's response to health and economic

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002419

115

1  vulnerabilities to pandemics: *Provided*, That, not later
2  than 90 days after the date of enactment of this Act, the
3  Government Accountability Office shall submit to the
4  Committees on Appropriations of the House of Represent-
5  atives and the Senate a spend plan specifying funding esti-
6  mates and a timeline for such audits and investigations:
7  *Provided further*, That such amount is designated by the
8  Congress as being for an emergency requirement pursuant
9  to section 251(b)(2)(A)(i) of the Balanced Budget and
10  Emergency Deficit Control Act of 1985.

11  TITLE VIII—DEPARTMENT OF STATE, FOREIGN

12  OPERATIONS, AND RELATED PROGRAMS

13  DEPARTMENT OF STATE

14  ADMINISTRATION OF FOREIGN AFFAIRS

15  OFFICE OF INSPECTOR GENERAL

16  For an additional amount for "Office of Inspector
17  General", $2,000,000, to remain available until September
18  30, 2022, for oversight of funds administered by the De-
19  partment of State and made available to prevent, prepare
20  for, and respond to coronavirus by this title and by prior
21  acts: *Provided*, That such amount is designated by the
22  Congress as being for an emergency requirement pursuant
23  to section 251(b)(2)(A)(i) of the Balanced Budget and
24  Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002420

116

1   GENERAL PROVISIONS — THIS TITLE

2   (INCLUDING TRANSFER OF FUNDS)

3   SEC. 10801. Section 21005 of the Emergency Appro-

4   priations for Coronavirus Health Response and Agency

5   Operations (division B of Public Law 116–136) is amend-

6   ed by inserting at the end before the period "and is further

7   amended by striking '$5,563,619' in the second proviso

8   under the heading 'Repatriation Loans Program Account'

9   and inserting in lieu thereof '$15,563,619' ".

10   SEC. 10802. Section 21009 of the Emergency Appro-

11   priations for Coronavirus Health Response and Agency

12   Operations (division B of Public Law 116–136) is amend-

13   ed by striking "fiscal year 2020" and inserting in lieu

14   thereof "fiscal years 2020 and 2021": *Provided*, That the

15   amount provided by this section is designated by the Con-

16   gress as being for an emergency requirement pursuant to

17   section 251(b)(2)(A)(i) of the Balanced Budget and

18   Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002421

G:\CMTE\AP\16\FY20\_D\HEROES.XML

117

1    TITLE IX

2    TRANSPORTATION, HOUSING AND URBAN

3    DEVELOPMENT, AND RELATED AGENCIES

4    DEPARTMENT OF TRANSPORTATION

5    FEDERAL AVIATION ADMINISTRATION

6    OPERATIONS

7    For an additional amount for ''Operations'',

8    $75,000,000, to remain available until September 30,

9    2022, to prevent, prepare for, and respond to coronavirus:

10    *Provided*, That amounts made available under this head-

11    ing in this Act shall be derived from the general fund,

12    of which not less than $1,000,000 shall be for the Admin-

13    istrator to seek to enter into an agreement not later than

14    45 days after the date of enactment of this Act with a

15    research organization established under chapter 1503 of

16    title 36, United States Code, to conduct a study to deter-

17    mine whether the environmental controls systems in com-

18    mercial airliners recirculate pathogens in the cabin air and

19    to assess existing and potential technological solutions to

20    reduce pathogen recirculation and to mitigate any elevated

21    risk of exposure to pathogens in the cabin air: *Provided*

22    *further* That such amount is designated by the Congress

23    as being for an emergency requirement pursuant to sec-

24    tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

25    gency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002422

118

1        FEDERAL HIGHWAY ADMINISTRATION

2        HIGHWAY INFRASTRUCTURE PROGRAMS

3        For an additional amount for "Highway Infrastruc-

4    ture Programs", $15,000,000,000, to remain available

5    until expended: *Provided*, That the funds made available

6    under this heading shall be derived from the general fund,

7    shall be in addition to any funds provided for fiscal year

8    2020 in this or any other Act for "Federal-aid Highways"

9    under chapters 1 or 2 of title 23, United States Code,

10   and shall not affect the distribution or amount of funds

11   provided in any other Act: *Provided further*, That notwith-

12   standing chapter 1 of title 23, United States Code, or any

13   other provision of law, a State, territory, Puerto Rico, or

14   Indian Tribe may use funds made available under this

15   heading in this Act for activities eligible under section

16   133(b) of title 23, United States Code, for administrative

17   and operations expenses, including salaries of employees

18   (including those employees who have been placed on ad-

19   ministrative leave) or contractors, information technology

20   needs, and availability payments: *Provided further*, That

21   of the funds made available under this heading,

22   $14,775,000,000    shall    be    available    for    States,

23   $150,000,000 shall be available for the Tribal Transpor-

24   tation Program, as described in section 202 of title 23,

25   United States Code, $60,000,000 shall be available for the

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002423

119

1   Puerto Rico Highway Program, as described in section
2   165(b)(2)(C)(iii) of such title; and $15,000,000 shall be
3   available for under the Territorial Highway Program, as
4   described in section 165(c)(6) of such title: *Provided fur-*
5   *ther*, That for the purposes of funds made available under
6   this heading the term ''State'' means any of the 50 States
7   or the District of Columbia: *Provided further*, That the
8   funds made available under this heading for States shall
9   be apportioned to States in the same ratio as the obliga-
10  tion limitation for fiscal year 2020 was distributed among
11  the States in accordance with the formula specified in sec-
12  tion 120(a)(5) of division H of Public Law 116–94 and
13  shall be apportioned not later than 30 days after the date
14  of enactment of this Act: *Provided further*, That the funds
15  made available under this heading shall be administered
16  as if apportioned under chapter 1 of title 23, United
17  States Code, except that activities eligible under the Tribal
18  Transportation Program shall be administered as if allo-
19  cated under chapter 2 of title 23, United States Code: *Pro-*
20  *vided further*, That funds apportioned to a State under
21  this heading shall be suballocated within the State to areas
22  described in subsection 133(d)(1)(A)(i) of title 23, United
23  States Code, in the same ratio that funds suballocated to
24  those areas for fiscal year 2020 bears to the total amount
25  of funds apportioned to the State for the Federal-aid high-

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002424

120

1  way program under section 104 of such title for fiscal year

2  2020: *Provided further*, That of funds made available

3  under this heading for activities eligible under section

4  133(b) of title 23, United States Code, any such activity

5  shall be subject to the requirements of section 133(i) of

6  such title: *Provided further*, That, except as provided in

7  the following proviso, the funds made available under this

8  heading for activities eligible under the Puerto Rico High-

9  way Program and activities eligible under the Territorial

10  Highway Program shall be administered as if allocated

11  under sections 165(b) and 165(c), respectively, of such

12  title: *Provided further*, That the funds made available

13  under this heading for activities eligible under the Puerto

14  Rico Highway Program shall not be subject to the require-

15  ments of sections 165(b)(2)(A) or 165(b)(2)(B) of such

16  title: *Provided further*, That for amounts subject to the

17  obligation limitation under the heading "Department of

18  Transportation—Federal Highway Administration—Fed-

19  eral-aid Highways—(Limitation on Obligations)—(High-

20  way Trust Fund)" in Public Law 116–94 for fiscal year

21  2020 that are obligated after the date of enactment of this

22  Act, and for any amounts made available under this head-

23  ing in this Act, the Federal share of the costs shall be,

24  at the option of the State, District of Columbia, territory,

25  Puerto Rico, or Indian Tribe, up to 100 percent, and may

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002425

121

1 be available for administrative and operations expenses,

2 including salaries of employees (including those employees

3 who have been placed on administrative leave) or contrac-

4 tors, information technology needs, and availability pay-

5 ments: *Provided further*, That section 120(c) of Public

6 Law 116–94 shall not apply for fiscal year 2020, and that

7 amounts that would otherwise have been redistributed by

8 section 120(c) shall be retained by States and shall be

9 available for their original purpose until September 30,

10 2021, except that such amounts shall be subject to such

11 redistribution in fiscal year 2021: *Provided further*, That

12 amounts made available under section 147 of title 23,

13 United States Code, for fiscal years 2019 and 2020 are

14 available for the administrative and operating expenses of

15 eligible entities related to the response to a coronavirus

16 public health emergency beginning on January 20, 2020,

17 reimbursement for administrative and operating costs to

18 maintain service including the purchase of personal pro-

19 tective equipment, and paying the administrative leave of

20 operations personnel due to reductions in service: *Provided*

21 *further*, That funds made available for administrative and

22 operating expenses authorized for fiscal year 2020 in Pub-

23 lic Law 116–94 or in this Act under this heading are not

24 required to be included in a transportation improvement

25 program or a statewide transportation improvement pro-

DOC_0002426

122

1  gram under sections 134 or 135 of title 23, United States

2  Code, or chapter 53 of title 49, United States Code, as

3  applicable: *Provided further*, That unless otherwise speci-

4  fied, applicable requirements under title 23, United States

5  Code, shall apply to funds made available under this head-

6  ing: *Provided further*, That the Administrator of the Fed-

7  eral Highway Administration may retain up to one half

8  of one percent of the funds made available under this

9  heading to fund the oversight by the Administrator of ac-

10  tivities carried out with funds made available under this

11  heading: *Provided further*, That such amount is designated

12  by the Congress as being for an emergency requirement

13  pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

14  et and Emergency Deficit Control Act of 1985.

15      FEDERAL TRANSIT ADMINISTRATION

16      PUBLIC TRANSPORTATION EMERGENCY RELIEF

17      For an additional amount for ''Public Transportation

18  Emergency Relief'', $15,750,000,000, to remain available

19  until expended, to prevent, prepare for, and respond to

20  coronavirus: *Provided*, That of the amounts appropriated

21  under this heading in this Act—

22          (1) $11,750,000,000 shall be for grants to ur-

23      banized areas with populations over 3,000,000 and

24      shall be allocated in the same ratio as funds were

25      provided in fiscal year 2020: *Provided*, That 15 per-

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002427

123

1    cent of the amounts provided in this paragraph shall

2    be allocated as if such funds were provided under

3    section 5307 of title 49, United States Code and ap-

4    portioned in accordance with section 5338 of such

5    title (other than subsection (b)(3) and (c)(1)(A))

6    and 85 percent of the amounts provided in this

7    paragraph shall be allocated under section 5337 of

8    such title and apportioned in accordance with such

9    section: *Provided further*, That funds provided under

10    section 5337 shall be added to funds apportioned

11    under section 5307 for administration in accordance

12    with provisions under section 5307: *Provided further*,

13    That for urbanized areas with multiple subrecipi-

14    ents, funds provided under section 5337 in this

15    paragraph shall be distributed among subrecipients

16    using the same ratio used to distribute funds made

17    available for section 5337 in fiscal year 2020; and

18    (2) $4,000,000,000 shall be for grants to tran-

19    sit agencies that, as a result of coronavirus, require

20    significant additional assistance to maintain basic

21    transit services: *Provided*, That such funds shall be

22    administered as if they were provided under section

23    5324 of title 49, United States Code: *Provided fur-*

24    *ther*, That any recipient or subrecipient of funds

25    under chapter 53 of title 49, United States Code, or

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002428

124

1 an intercity bus service provider that has, between

2 October 1, 2018 and January 20, 2020, partnered

3 with a recipient or subrecipient in order to meet the

4 requirements of section 5311(f) of such title shall be

5 eligible to directly apply for funds under this para-

6 graph: *Provided further,* That entities that are not

7 recipients or subrecipients of funds under chapter 53

8 of title 49 but are eligible for grants under this

9 heading in this Act shall be eligible to receive not

10 more than 18.75 percent of the total funds provided

11 under this paragraph: *Provided further,* That such

12 entities shall use assistance provided under this

13 heading only for workforce retention or, the recall or

14 rehire of any laid off, furloughed, or terminated em-

15 ployee, associated with the provision of bus service:

16 *Provided further,* That, the Secretary shall issue a

17 Notice of Funding Opportunity not later than 30

18 days after the date of enactment of this Act and

19 that such Notice of Funding Opportunity shall re-

20 quire application submissions not later than 45 days

21 after the enactment of this Act: *Provided further,*

22 That the Secretary shall make awards not later than

23 45 days after the application deadline: *Provided fur-*

24 *ther,* That the Secretary shall require grantees to

25 provide estimates of financial need, data on reduced

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002429

125

1    ridership, and a spending plan for funds: *Provided*

2    *further*, That when evaluating applications for assist-

3    ance, the Secretary shall give priority to transit

4    agencies with the largest revenue loss as a percent-

5    age of their operating expenses: *Provided further*,

6    That if applications for assistance do not exceed

7    available funds, the Secretary shall reserve the re-

8    maining amounts for grantees to prevent, prepare

9    for, and respond to coronavirus and shall accept ap-

10    plications on a rolling basis: *Provided further*, That

11    if amounts made available under this heading in this

12    Act remain unobligated on December 31, 2021, such

13    amounts shall be available for any purpose eligible

14    under section 5324 of title 49, United States Code:

15    *Provided further*, That the provision of funds under this

16    section shall not affect the ability of any other agency of

17    the Government, including the Federal Emergency Man-

18    agement Agency, or State agency, a local governmental

19    entity, organization, or person, to provide any other funds

20    otherwise authorized by law: *Provided further*, That not-

21    withstanding subsection (a)(1) or (b) of section 5307 of

22    title 49, United States Code, subsection (a)(1) of section

23    5324 of such title, or any provision of chapter 53 of title

24    49, funds provided under this heading in this Act are

25    available for the operating expenses of transit agencies re-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002430

126

1  lated to the response to a coronavirus public health emer-
2  gency, including, beginning on January 20, 2020, reim-
3  bursement for operating costs to maintain service and lost
4  revenue due to the coronavirus public health emergency,
5  including the purchase of personal protective equipment,
6  and paying the administrative leave of operations or con-
7  tractor personnel due to reductions in service: *Provided*
8  *further*, That to the maximum extent possible, funds made
9  available under this heading in this Act and in title XII
10 of division B of the CARES Act (Public Law 116-136)
11 shall be directed to payroll and public transit service, un-
12 less the recipient certifies to the Secretary they have not
13 furloughed any employees: *Provided further*, That such op-
14 erating expenses are not required to be included in a
15 transportation improvement program, long-range trans-
16 portation plan, statewide transportation plan, or a state-
17 wide transportation improvement program: *Provided fur-*
18 *ther*, That the Secretary shall not waive the requirements
19 of section 5333 of title 49, United States Code, for funds
20 appropriated under this heading in this Act: *Provided fur-*
21 *ther*, That unless otherwise specified, applicable require-
22 ments under chapter 53 of title 49, United States Code,
23 shall apply to funding made available under this heading
24 in this Act, except that the Federal share of the costs for
25 which any grant is made under this heading in this Act

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002431

 1 shall be, at the option of the recipient, up to 100 percent:

 2 *Provided further*, That the amount made available under

 3 this heading in this Act shall be derived from the general

 4 fund and shall not be subject to any limitation on obliga-

 5 tions for transit programs set forth in any Act: *Provided*

 6 *further*, That not more than one-half of one percent of the

 7 funds for transit infrastructure grants provided under this

 8 heading in this Act shall be available for administrative

 9 expenses and ongoing program management oversight as

10 authorized under sections 5334 and 5338(f)(2) of title 49,

11 United States Code, and shall be in addition to any other

12 appropriations for such purpose: *Provided further*, That

13 such amount is designated by the Congress as being for

14 an emergency requirement pursuant to section

15 251(b)(2)(A)(i) of the Balanced Budget and Emergency

16 Deficit Control Act of 1985.

17        DEPARTMENT OF HOUSING AND URBAN

18                    DEVELOPMENT

19              PUBLIC AND INDIAN HOUSING

20            TENANT-BASED RENTAL ASSISTANCE

21              (INCLUDING TRANSFER OF FUNDS)

22        For an additional amount for "Tenant-Based Rental

23 Assistance", $4,000,000,000, to remain available until ex-

24 pended, and to be used under the same authority and con-

25 ditions as the additional appropriations for fiscal year

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002432

128

1 2020 under this heading in title XII of division B of the

2 CARES Act (Public Law 116–136), except that any

3 amounts provided for administrative expenses and other

4 expenses of public housing agencies for their section 8 pro-

5 grams, including Mainstream vouchers, under this heading

6 in the CARES Act (Public Law 116–136) and under this

7 heading in this Act shall also be available for Housing As-

8 sistance Payments under section 8(o) of the United States

9 Housing Act of 1937 (42 U.S.C. 1437f(o)): *Provided,*

10 That amounts made available under this heading in this

11 Act and under the same heading in title XII of division

12 B of the CARES Act may be used to cover or reimburse

13 allowable costs incurred to prevent, prepare for, and re-

14 spond to coronavirus regardless of the date on which such

15 costs were incurred: *Provided further,* That of the amounts

16 made available under this heading in this Act,

17 $500,000,000 shall be available for administrative ex-

18 penses and other expenses of public housing agencies for

19 their section 8 programs, including Mainstream vouchers:

20 *Provided further,* That of the amounts made available

21 under this heading in this Act, $2,500,000,000 shall be

22 available for adjustments in the calendar year 2020 sec-

23 tion 8 renewal funding allocations, including Mainstream

24 vouchers, for public housing agencies that experience a

25 significant increase in voucher per-unit costs due to ex-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002433

129

1 traordinary circumstances or that, despite taking reason-
2 able cost savings measures, as determined by the Sec-
3 retary, would otherwise be required to terminate rental as-
4 sistance for families as a result of insufficient funding:
5 *Provided further*, That of the amounts made available
6 under this heading in this Act, $1,000,000,000 shall be
7 used for incremental rental voucher assistance under sec-
8 tion 8(o) of the United States Housing Act of 1937 for
9 use by individuals and families who are—homeless, as de-
10 fined under section 103(a) of the McKinney-Vento Home-
11 less Assistance Act (42 U.S.C. 11302(a)); at risk of home-
12 lessness, as defined under section 401(1) of the McKin-
13 ney-Vento Homeless Assistance Act (42 U.S.C. 11360(1));
14 or fleeing, or attempting to flee, domestic violence, dating
15 violence, sexual assault, or stalking: *Provided further*, That
16 the Secretary shall allocate amounts made available in the
17 preceding proviso to public housing agencies not later than
18 60 days after the date of enactment of this Act, according
19 to a formula that considers the ability of the public hous-
20 ing agency to use vouchers promptly and the need of geo-
21 graphical areas based on factors to be determined by the
22 Secretary, such as risk of transmission of coronavirus,
23 high numbers or rates of sheltered and unsheltered home-
24 lessness, and economic and housing market conditions:
25 *Provided further*, That if a public housing authority elects

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002434

G:\CMTE\AP\16\FY20\_D\HEROES.XML

130

1   not to administer or does not promptly issue all of its au-

2   thorized vouchers within a reasonable period of time, the

3   Secretary shall reallocate any unissued vouchers and asso-

4   ciated funds to other public housing agencies according

5   to the criteria in the preceding proviso: *Provided further*,

6   That a public housing agency shall not reissue any vouch-

7   ers under this heading in this Act for incremental rental

8   voucher assistance when assistance for the family initially

9   assisted is terminated: *Provided further*, That upon termi-

10  nation of incremental rental voucher assistance under this

11  heading in this Act for one or more families assisted by

12  a public housing agency, the Secretary shall reallocate

13  amounts that are no longer needed by such public housing

14  agency for assistance under this heading in this Act to

15  another public housing agency for the renewal of vouchers

16  previously authorized under this heading in this Act: *Pro-*

17  *vided further*, That amounts made available in this para-

18  graph are in addition to any other amounts made available

19  for such purposes: *Provided further*, That up to 0.5 per-

20  cent of the amounts made available under this heading

21  in this Act may be transferred, in aggregate, to ''Depart-

22  ment of Housing and Urban Development, Program Of-

23  fices—Public and Indian Housing'' to supplement existing

24  resources for the necessary costs of administering and

25  overseeing the obligation and expenditure of these

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002435

131

1 amounts, to remain available until September 30, 2024:

2 *Provided further*, That such amount is designated by the

3 Congress as being for an emergency requirement pursuant

4 to section 251(b)(2)(A)(i) of the Balanced Budget and

5 Emergency Deficit Control Act of 1985.

6            PUBLIC HOUSING OPERATING FUND

7            (INCLUDING TRANSFER OF FUNDS)

8       For an additional amount for "Public Housing Oper-

9 ating Fund", as authorized by section 9(e) of the United

10 States Housing Act of 1937 (42 U.S.C. 1437g(e)),

11 $2,000,000,000, to remain available until September 30,

12 2021, and to be used under the same authority and condi-

13 tions as the additional appropriations for fiscal year 2020

14 under this heading in title XII of division B of the CARES

15 Act (Public Law 116–136): *Provided*, That amounts made

16 available under this heading in this Act and under the

17 same heading in title XII of division B of the CARES Act

18 may be used to cover or reimburse allowable costs incurred

19 to prevent, prepare for, and respond to coronavirus re-

20 gardless of the date on which such costs were incurred:

21 *Provided further*, That up to 0.5 percent of the amounts

22 made available under this heading in this Act may be

23 transferred, in aggregate, to "Department of Housing and

24 Urban Development, Program Offices—Public and Indian

25 Housing" to supplement existing resources for the nec-

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002436

132

1 essary costs of administering and overseeing the obligation
2 and expenditure of these amounts, to remain available
3 until September 30, 2024: *Provided further*, That such
4 amount is designated by the Congress as being for an
5 emergency requirement pursuant to section
6 251(b)(2)(A)(i) of the Balanced Budget and Emergency
7 Deficit Control Act of 1985.

8         COMMUNITY PLANNING AND DEVELOPMENT

9         HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS

10     For an additional amount for "Housing Opportuni-
11 ties for Persons with AIDS", $15,000,000, to remain
12 available until September 30, 2021, and to be used under
13 the same authority and conditions as the additional appro-
14 priations for fiscal year 2020 under this heading in title
15 XII of division B of the CARES Act (Public Law 116–
16 136): *Provided*, That amounts provided under this heading
17 in this Act that are allocated pursuant to section 854(c)(5)
18 of the AIDS Housing Opportunity Act (42 U.S.C. 12901
19 et seq.) shall remain available until September 30, 2022:
20 *Provided further*, That not less than $15,000,000 of the
21 amount provided under this heading in this Act shall be
22 allocated pursuant to the formula in section 854 of such
23 Act using the same data elements as utilized pursuant to
24 that same formula in fiscal year 2020: *Provided further*,
25 That such amount is designated by the Congress as being

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002437

133

1 for an emergency requirement pursuant to section
2 251(b)(2)(A)(i) of the Balanced Budget and Emergency
3 Deficit Control Act of 1985.

4 COMMUNITY DEVELOPMENT FUND

5 (INCLUDING TRANSFER OF FUNDS)

6 For an additional amount for "Community Develop-
7 ment Fund", $5,000,000,000, to remain available until
8 September 30, 2023, and to be used under the same au-
9 thority and conditions as the additional appropriations for
10 fiscal year 2020 under this heading in title XII of division
11 B of the CARES Act (Public Law 116–136): *Provided*,
12 That such amount made available under this heading in
13 this Act shall be distributed pursuant to section 106 of
14 the Housing and Community Development Act of 1974
15 (42 U.S.C. 5306) to grantees that received allocations
16 pursuant to such formula in fiscal year 2020, and that
17 such allocations shall be made within 30 days of enact-
18 ment of this Act: *Provided further*, That in administering
19 funds under this heading, an urban county shall consider
20 needs throughout the entire urban county configuration
21 to prevent, prepare for, and respond to coronavirus: *Pro-*
22 *vided further*, That up to $100,000,000 of amounts made
23 available under this heading in this Act may be used to
24 make new awards or increase prior awards to existing
25 technical assistance providers: *Provided further*, That of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002438

G:\CMTE\AP\16\FY20\_D\HEROES.XML

134

1  the amounts made available under this heading in this

2  Act, up to $25,000,000 may be transferred to "Depart-

3  ment of Housing and Urban Development, Program Of-

4  fices—Community Planning and Development" for nec-

5  essary costs of administering and overseeing the obligation

6  and expenditure of amounts under this heading in this

7  Act, to remain available until September 30, 2028: *Pro-*

8  *vided further*, That such amount is designated by the Con-

9  gress as being for an emergency requirement pursuant to

10  section 251(b)(2)(A)(i) of the Balanced Budget and

11  Emergency Deficit Control Act of 1985.

12                    HOMELESS ASSISTANCE GRANTS

13                    (INCLUDING TRANSFER OF FUNDS)

14        For an additional amount for "Homeless Assistance

15  Grants", $11,500,000,000, to remain available until Sep-

16  tember 30, 2025, for the Emergency Solutions Grants pro-

17  gram as authorized under subtitle B of title IV of the

18  McKinney-Vento Homeless Assistance Act (42 U.S.C.

19  11371 et seq.), as amended, and to be used under the

20  same authority and conditions as the additional appropria-

21  tions for fiscal year 2020 under this heading in title XII

22  of division B of the CARES Act (Public Law 116–136):

23  *Provided*, That $4,000,000,000 of the amount made avail-

24  able under this heading in this Act shall be distributed

25  pursuant to 24 CFR 576.3 to grantees that received allo-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002439

1 cations pursuant to that same formula in fiscal year 2020,

2 and that such allocations shall be made within 30 days

3 of enactment of this Act: *Provided further*, That, in addi-

4 tion to amounts allocated in the preceding proviso, remain-

5 ing amounts shall be allocated directly to a State or unit

6 of general local government by the formula specified in

7 the third proviso under this heading in title XII of division

8 B of the CARES Act (Public Law 116–136): *Provided fur-*

9 *ther*, That not later than 90 days after the date of enact-

10 ment of this Act and every 60 days thereafter, the Sec-

11 retary shall allocate a minimum of an additional

12 $500,000,000, pursuant to the formula referred to in the

13 preceding proviso, based on the best available data: *Pro-*

14 *vided further*, That up to 0.5 percent of the amounts made

15 available under this heading in this Act may be trans-

16 ferred to ''Department of Housing and Urban Develop-

17 ment—Program Offices—Community Planning and De-

18 velopment'' for necessary costs of administering and over-

19 seeing the obligation and expenditure of amounts under

20 this heading in this Act, to remain available until Sep-

21 tember 30, 2030: *Provided further*, That funds made avail-

22 able under this heading in this Act and under this heading

23 in title XII of division B of the CARES Act (Public Law

24 116–136) may be used for eligible activities the Secretary

25 determines to be critical in order to assist survivors of do-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002440

136

1 mestic violence, sexual assault, dating violence, and stalk-

2 ing or to assist homeless youth, age 24 and under: *Pro-*

3 *vided further*, That amounts repurposed by this paragraph

4 that were previously designated by the Congress as an

5 emergency requirement pursuant to the Balanced Budget

6 and Emergency Deficit Control Act of 1985 are des-

7 ignated by the Congress as an emergency requirement

8 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

9 et and Emergency Deficit Control Act of 1985: *Provided*

10 *further*, That such amount is designated by the Congress

11 as being for an emergency requirement pursuant to sec-

12 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

13 gency Deficit Control Act of 1985.

14 EMERGENCY RENTAL ASSISTANCE

15 For activities and assistance authorized in section

16 110201 of the "COVID–19 HERO Act",

17 $100,000,000,000, to remain available until expended:

18 *Provided*, That such amount is designated by the Congress

19 as being for an emergency requirement pursuant to sec-

20 tion 251(b)(2)(A)(i) of the Balanced Budget and Emer-

21 gency Deficit Control Act of 1985.

22 HOUSING PROGRAMS

23 PROJECT-BASED RENTAL ASSISTANCE

24 For an additional amount for "Project-Based Rental

25 Assistance", $750,000,000, to remain available until ex-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002441

137

1 pended, and to be used under the same authority and con-
2 ditions as the additional appropriations for fiscal year
3 2020 under this heading in title XII of division B of the
4 CARES Act (Public Law 116–136): *Provided*, That such
5 amount is designated by the Congress as being for an
6 emergency requirement pursuant to section
7 251(b)(2)(A)(i) of the Balanced Budget and Emergency
8 Deficit Control Act of 1985.

9 HOUSING FOR THE ELDERLY

10 For an additional amount for ''Housing for the El-
11 derly'', $500,000,000, to remain available until September
12 30, 2023, and to be used under the same authority and
13 conditions as the additional appropriations for fiscal year
14 2020 under this heading in title XII of division B of the
15 CARES Act (Public Law 116–136): *Provided*, That not-
16 withstanding the first proviso under this heading in the
17 CARES Act, $300,000,000 of the amount made available
18 under this heading in this Act shall be for one-time grants
19 for service coordinators, as authorized under section 676
20 of the Housing and Community Development Act of 1992
21 (42 U.S.C. 13632), and the continuation of existing con-
22 gregate service grants for residents of assisted housing
23 projects: *Provided further*, That such amount is designated
24 by the Congress as being for an emergency requirement

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002442

G:\CMTE\AP\16\FY20\_D\HEROES.XML

138

1 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-

2 et and Emergency Deficit Control Act of 1985.

3         HOUSING FOR PERSONS WITH DISABILITIES

4     For an additional amount for ''Housing for Persons

5 with Disabilities'', $200,000,000, to remain available until

6 September 30, 2023, and to be used under the same au-

7 thority and conditions as the additional appropriations for

8 fiscal year 2020 under this heading in title XII of division

9 B of the CARES Act (Public Law 116–136): *Provided*,

10 That such amount is designated by the Congress as being

11 for an emergency requirement pursuant to section

12 251(b)(2)(A)(i) of the Balanced Budget and Emergency

13 Deficit Control Act of 1985.

14         HOUSING COUNSELING ASSISTANCE

15     For an additional amount for ''Housing Counseling

16 Assistance'', for contracts, grants, and other assistance

17 excluding loans, as authorized under section 106 of the

18 Housing and Urban Development Act of 1968,

19 $100,000,000, to remain available until September 30,

20 2022, including up to $8,000,000 for administrative con-

21 tract services: *Provided*, That funds made available under

22 this heading in this Act shall be used for providing coun-

23 seling and advice to tenants and homeowners, both current

24 and prospective, with respect to property maintenance, fi-

25 nancial management or literacy, foreclosure and eviction

139

1 mitigation, and such other matters as may be appropriate

2 to assist them in improving their housing conditions, meet-

3 ing their financial needs, and fulfilling the responsibilities

4 of tenancy or homeownership; for program administration;

5 and for housing counselor training: *Provided further*, That

6 amounts made available under this heading in this Act

7 may be used to purchase equipment and technology to de-

8 liver services through use of the Internet or other elec-

9 tronic or virtual means in response to the public health

10 emergency related to the Coronavirus Disease 2019

11 (COVID–19) pandemic: *Provided further*, That for pur-

12 poses of providing such grants from amounts provided

13 under this heading, the Secretary may enter into

14 multiyear agreements, as appropriate, subject to the avail-

15 ability of annual appropriations: *Provided further*, That

16 such amount is designated by the Congress as being for

17 an emergency requirement pursuant to section

18 251(b)(2)(A)(i) of the Balanced Budget and Emergency

19 Deficit Control Act of 1985.

20 FAIR HOUSING AND EQUAL OPPORTUNITY

21 FAIR HOUSING ACTIVITIES

22 For an additional amount for "Fair Housing Activi-

23 ties", $14,000,000, to remain available until September

24 30, 2022, and to be used under the same authority and

25 conditions as the additional appropriations for fiscal year

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002444

140

1 2020 under this heading in title XII of division B of the
2 CARES Act (Public Law 116–136): *Provided*, That of the
3 funds made available under this heading in this Act,
4 $4,000,000 shall be for Fair Housing Organization Initia-
5 tive grants through the Fair Housing Initiatives Program
6 (FHIP), made available to existing grantees, which may
7 be used for fair housing activities and for technology and
8 equipment needs to deliver services through use of the
9 Internet or other electronic or virtual means in response
10 to the public health emergency related to the Coronavirus
11 Disease 2019 (COVID–19) pandemic: *Provided further*,
12 That of the funds made available under this heading in
13 this Act, $10,000,000 shall be for FHIP Education and
14 Outreach grants made available to previously-funded na-
15 tional media grantees and State and local education and
16 outreach grantees, to educate the public and the housing
17 industry about fair housing rights and responsibilities dur-
18 ing the COVID–19 pandemic: *Provided further*, That such
19 grants in the preceding proviso shall be divided evenly be-
20 tween the national media campaign and education and
21 outreach activities: *Provided further*, That such amount is
22 designated by the Congress as being for an emergency re-
23 quirement pursuant to section 251(b)(2)(A)(i) of the Bal-
24 anced Budget and Emergency Deficit Control Act of 1985.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002445

141

1        GENERAL PROVISIONS—THIS TITLE

2                (INCLUDING RESCISSIONS)

3        SEC. 10901. There is hereby appropriated from the

4    General Fund of the Treasury, for payment to the Airport

5    and Airway Trust Fund, an amount equal to the amount

6    authorized by section 9502(c) of title 26, United States

7    Code.

8        SEC. 10902. Amounts previously made available in

9    the Further Continuing Appropriations Act, 2013 (Public

10   Law 113–6) for the heading ''Department of Housing and

11   Urban Development—Public and Indian Housing—Choice

12   Neighborhoods Initiative'' shall remain available for ex-

13   penditure for the purpose of paying valid obligations in-

14   curred prior to the expiration of such amounts through

15   September 30, 2021.

16       SEC. 10903. The provision under the heading ''Office

17   of the Inspector General—Salaries and Expenses'' in title

18   XII of division B of the Coronavirus Aid, Relief, and Eco-

19   nomic Security Act (Public Law 116–136) is amended by

20   striking ''with funds made available in this Act to'' and

21   inserting ''by'': *Provided*, That the amounts repurposed in

22   this section that were previously designated by the Con-

23   gress as an emergency requirement pursuant to the Bal-

24   anced Budget and Emergency Deficit Control Act of 1985

25   are designated by the Congress as an emergency require-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002446

142

1 ment pursuant to section 251(b)(2)(A)(i) of the Balanced

2 Budget and Emergency Deficit Control Act of 1985.

3     SEC. 10904. (a) Notwithstanding section

4 51309(a)(1)(B) of title 46, United States Code, for fiscal

5 year 2020, the Secretary of Transportation may confer the

6 degree of bachelor of science on an individual who has not

7 passed the examination for a merchant marine officer's

8 license due to intervening efforts to prevent, prepare for,

9 and respond to coronavirus.

10     (b) The Secretary of Transportation may provide

11 such individual up to 1 year after receipt of such degree

12 to pass the examination for a merchant marine officer's

13 license.

14     (c) Nothing in this section shall be construed to allow

15 the provision of a license under section 7101 of title 46,

16 United States Code, to an individual who has not passed

17 the required examination.

18     SEC. 10905. (a) Notwithstanding section

19 51506(a)(3) of title 46, United States Code, for fiscal year

20 2020, the Secretary of Transportation may allow a State

21 maritime academy to waive a condition for graduation for

22 an individual to pass the examination required for the

23 issuance of a license under section 7101 of title 46, United

24 States Code, due to intervening efforts to prevent, prepare

25 for, and respond to coronavirus.

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002447

143

1    (b) The Secretary of Transportation may provide

2 such individual up to 1 year after graduation to pass such

3 examination.

4    (c) Nothing in this section shall be construed to allow

5 the provision of a license under section 7101 of title 46,

6 United States Code, to an individual who has not passed

7 the required examination.

8    SEC. 10906. Amounts made available under the head-

9 ings "Project-Based Rental Assistance," "Housing for the

10 Elderly" and "Housing for Persons With Disabilities" in

11 title XII of division B of the CARES Act (Public Law

12 116–136) and under such headings in this title of this Act

13 may be used, notwithstanding any other provision of law,

14 to provide additional funds to maintain operations for

15 such housing, for providing supportive services, and for

16 taking other necessary actions to prevent, prepare for, and

17 respond to coronavirus, including to actions to self-isolate,

18 quarantine, or to provide other coronavirus infection con-

19 trol services as recommended by the Centers for Disease

20 Control and Prevention, including providing relocation

21 services for residents of such housing to provide lodging

22 at hotels, motels, or other locations: *Provided,* That the

23 amounts repurposed in this section that were previously

24 designated by the Congress as an emergency requirement

25 pursuant to the Balanced Budget and Emergency Deficit

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002448

144

1 Control Act of 1985 are designated by the Congress as
2 an emergency requirement pursuant to section
3 251(b)(2)(A)(i) of the Balanced Budget and Emergency
4 Deficit Control Act of 1985.

5 TITLE X

6 GENERAL PROVISIONS—THIS DIVISION

7 SEC. 11001. Not later than 30 days after the date
8 of enactment of this Act, the head of each executive agen-
9 cy that receives funding in any division of this Act, or that
10 received funding in the Coronavirus Preparedness and Re-
11 sponse Supplemental Appropriations Act, 2020 (division
12 A of Public Law 116–123), the Second Coronavirus Pre-
13 paredness and Response Supplemental Appropriations
14 Act, 2020 (division A of Public Law 116–127), the
15 CARES Act (Public Law 116–136), or the Paycheck Pro-
16 tection Program and Health Care Enhancement Act (Pub-
17 lic Law 116–139) shall provide a report detailing the an-
18 ticipated uses of all such funding to the Committees on
19 Appropriations of the House of Representatives and the
20 Senate: *Provided*, That each report shall include estimated
21 personnel and administrative costs, as well as the total
22 amount of funding apportioned, allotted, obligated, and
23 expended, to date: *Provided further*, That each such report
24 shall be updated and submitted to such Committees every
25 60 days until all funds are expended or expire: *Provided*

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002449

145

1  *further*, That reports submitted pursuant to this section
2  shall satisfy the requirements of section 1701 of division
3  A of Public Law 116–127.

4      SEC. 11002. Each amount appropriated or made
5  available by this Act is in addition to amounts otherwise
6  appropriated for the fiscal year involved.

7      SEC. 11003. No part of any appropriation contained
8  in this Act shall remain available for obligation beyond
9  the current fiscal year unless expressly so provided herein.

10     SEC. 11004. Unless otherwise provided for by this
11 Act, the additional amounts appropriated by this Act to
12 appropriations accounts shall be available under the au-
13 thorities and conditions applicable to such appropriations
14 accounts for fiscal year 2020.

15     SEC. 11005. Each amount designated in this Act by
16 the Congress as being for an emergency requirement pur-
17 suant to section 251(b)(2)(A)(i) of the Balanced Budget
18 and Emergency Deficit Control Act of 1985 shall be avail-
19 able (or rescinded or transferred, if applicable) only if the
20 President subsequently so designates all such amounts
21 and transmits such designations to the Congress.

22     SEC. 11006. Any amount appropriated by this Act,
23 designated by the Congress as an emergency requirement
24 pursuant to section 251(b)(2)(A)(i) of the Balanced Budg-
25 et and Emergency Deficit Control Act of 1985 and subse-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002450

146

1 quently so designated by the President, and transferred

2 pursuant to transfer authorities provided by this Act shall

3 retain such designation.

4  SEC. 11007. (a) Any contract or agreement entered

5 into by an agency with a State or local government or any

6 other non-Federal entity for the purposes of providing cov-

7 ered assistance, including any information and documents

8 related to the performance of and compliance with such

9 contract or agreement, shall be—

10    (1) deemed an agency record for purposes of

11   section 552(f)(2) of title 5, United States Code; and

12    (2) subject to section 552 of title 5, United

13   States Code (commonly known as the "Freedom of

14   Information Act").

15  (b) In this section—

16    (1) the term "agency" has the meaning given

17   the term in section 551 of title 5, United States

18   Code; and

19    (2) the term "covered assistance"—

20      (A) means any assistance provided by an

21     agency in accordance with an Act or amend-

22     ments made by an Act to provide aid, assist-

23     ance, or funding related to the outbreak of

24     COVID–19 that is enacted before, on, or after

25     the date of enactment of this Act; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002451

G:\CMTE\AP\16\FY20\_D\HEROES.XML

147

1                 (B) includes any such assistance made

2                 available by an agency under—

3                     (i) this Act;

4                     (ii) the Paycheck Protection Program

5                 and Health Care Enhancement Act (Public

6                 Law 116–139), or an amendment made by

7                 that Act;

8                     (iii) the CARES Act (Public Law

9                 116–136), or an amendment made by that

10                Act;

11                     (iv) the Families First Coronavirus

12                 Response Act (Public Law 116–127), or an

13                 amendment made by that Act; or

14                     (v) the Coronavirus Preparedness and

15                 Response Supplemental Appropriations

16                 Act, 2020 (Public Law 116–123), or an

17                 amendment made by that Act.

18     SEC. 11008. (a) Notwithstanding any other provision

19 of law and in a manner consistent with other provisions

20 in any division of this Act, all laborers and mechanics em-

21 ployed by contractors and subcontractors on projects fund-

22 ed directly by or assisted in whole or in part by and

23 through the Federal Government pursuant to any division

24 of this Act shall be paid wages at rates not less than those

25 prevailing on projects of a character similar in the locality

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002452

148

1  as determined by the Secretary of Labor in accordance

2  with subchapter IV of chapter 31 of title 40, United States

3  Code. With respect to the labor standards specified in this

4  section, the Secretary of Labor shall have the authority

5  and functions set forth in Reorganization Plan Numbered

6  14 of 1950 (64 Stat. 1267; 5 U.S.C. App.) and section

7  3145 of title 40, United States Code.

8      (b) The amounts provided by this section are des-

9  ignated by the Congress as being for an emergency re-

10  quirement pursuant to section 251(b)(2)(A)(i) of the Bal-

11  anced Budget and Emergency Deficit Control Act of 1985.

12                 BUDGETARY EFFECTS

13      SEC. 11009. (a) STATUTORY PAYGO EMERGENCY

14  DESIGNATION.—The amounts provided under division B

15  and each succeeding division are designated as an emer-

16  gency requirement pursuant to section 4(g) of the Statu-

17  tory Pay-As-You-Go Act of 2010 (2 U.S.C. 933(g)).

18      (b) SENATE PAYGO EMERGENCY DESIGNATION.—

19  In the Senate, division B and each succeeding division are

20  designated as an emergency requirement pursuant to sec-

21  tion 4112(a) of H. Con. Res. 71 (115th Congress), the

22  concurrent resolution on the budget for fiscal year 2018.

23      (c) CLASSIFICATION OF BUDGETARY EFFECTS.—

24  Notwithstanding Rule 3 of the Budget Scorekeeping

25  Guidelines set forth in the joint explanatory statement of

26  the committee of conference accompanying Conference Re-

149

1 port 105–217 and section 250(c)(8) of the Balanced
2 Budget and Emergency Deficit Control Act of 1985, the
3 budgetary effects of division B and each succeeding divi-
4 sion—

5   (1) shall not be estimated for purposes of sec-
6   tion 251 of such Act; and

7   (2) shall be entered on the PAYGO scorecards
8   maintained pursuant to section 4(d) of the Statutory
9   Pay-As-You-Go Act of 2010.

10   (d) ENSURING NO WITHIN-SESSION SEQUESTRA-
11 TION.—Solely for the purpose of calculating a breach with-
12 in a category for fiscal year 2020 pursuant to section
13 251(a)(6) or section 254(g) of the Balanced Budget and
14 Emergency Deficit Control Act of 1985, and notwith-
15 standing any other provision of this division, the budg-
16 etary effects from this division shall be counted as
17 amounts designated as being for an emergency require-
18 ment pursuant to section 251(b)(2)(A) of such Act.

19

20   This division may be cited as the "Coronavirus Re-
21 covery Supplemental Appropriations Act, 2020".

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002454

150

# DIVISION B—REVENUE PROVISIONS

**SEC. 20001. SHORT TITLE.**

This division may be cited as the "COVID–19 Tax Relief Act of 2020".

## TITLE I—ECONOMIC STIMULUS

### Subtitle A—2020 Recovery Rebate Improvements

**SEC. 20101. DEPENDENTS TAKEN INTO ACCOUNT IN DETER- MINING CREDIT AND REBATES.**

(a) IN GENERAL.—Section 6428(a)(2) of the Internal Revenue Code of 1986 is amended by striking "qualifying children (within the meaning of section 24(c))" and inserting "dependents (as defined in section 152)".

(b) CONFORMING AMENDMENTS.—

(1) Section 6428(g) of such Code is amended by striking "qualifying child" each place it appears and inserting "dependent".

(2) Section 6428(g)(2)(B) of such Code is amended by striking "such child" and inserting "such dependent".

(c) EFFECTIVE DATE.—The amendments made by this section shall take effect as if included in section 2201 of the CARES Act.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002455

151

1 **SEC. 20102. INDIVIDUALS PROVIDING TAXPAYER IDENTI-**

2 **FICATION NUMBERS TAKEN INTO ACCOUNT**

3 **IN DETERMINING CREDIT AND REBATES.**

4 (a) IN GENERAL.—Section 6428(g) of the Internal

5 Revenue Code of 1986, as amended by section 20101 of

6 this Act, is amended to read as follows:

7 ''(g) IDENTIFICATION NUMBER REQUIREMENT.—

8 ''(1) IN GENERAL.—The $1,200 amount in sub-

9 section (a)(1) shall be treated as being zero unless

10 the taxpayer includes the TIN of the taxpayer on

11 the return of tax for the taxable year.

12 ''(2) JOINT RETURNS.—In the case of a joint

13 return, the $2,400 amount in subsection (a)(1) shall

14 be treated as being—

15 ''(A) zero if the TIN of neither spouse is

16 included on the return of tax for the taxable

17 year, and

18 ''(B) $1,200 if the TIN of only one spouse

19 is so included.

20 ''(3) DEPENDENTS.—A dependent shall not be

21 taken into account under subsection (a)(2) unless

22 the TIN of such dependent is included on the return

23 of tax for the taxable year.

24 ''(4) COORDINATION WITH CERTAIN ADVANCE

25 PAYMENTS.—In the case of any payment made pur-

26 suant to subsection (f)(5)(B), a TIN shall be treated

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002456

152

1    for purposes of this subsection as included on the

2    taxpayer's return of tax if such TIN is provided pur-

3    suant to such subsection.

4       "(5) MATHEMATICAL OR CLERICAL ERROR AU-

5    THORITY.—Any omission of a correct TIN required

6    under this subsection shall be treated as a mathe-

7    matical or clerical error for purposes of applying sec-

8    tion 6213(g)(2) to such omission.".

9    (b) EFFECTIVE DATE.—The amendment made by

10  this section shall take effect as if included in section 2201

11  of the CARES Act.

12  **SEC. 20103. 2020 RECOVERY REBATES NOT SUBJECT TO RE-**

13             **DUCTION OR OFFSET WITH RESPECT TO**

14             **PAST-DUE SUPPORT.**

15    (a) IN GENERAL.—Section 2201(d)(2) of the CARES

16  Act is amended by inserting "(c),'' before "(d)''.

17    (b) EFFECTIVE DATE.—The amendment made by

18  this section shall apply to credits and refunds allowed or

19  made after the date of the enactment of this Act.

20  **SEC. 20104. PROTECTION OF 2020 RECOVERY REBATES.**

21    (a) IN GENERAL.—Subsection (d) of section 2201 of

22  the CARES Act, as amended by the preceding provisions

23  of this Act, is amended—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002457

153

1      (1) by redesignating paragraphs (1), (2), and

2  (3) as subparagraphs (A), (B), and (C), and by mov-

3  ing such subparagraphs 2 ems to the right,

4      (2) by striking "REDUCTION OR OFFSET.—Any

5  credit" and inserting "REDUCTION, OFFSET, GAR-

6  NISHMENT, ETC.—

7      "(1) IN GENERAL.—Any credit", and

8      (3) by adding at the end the following new

9  paragraphs:

10     "(2) ASSIGNMENT OF BENEFITS.—

11        "(A) IN GENERAL.—Any applicable pay-

12     ment shall not be subject to transfer, assign-

13     ment, execution, levy, attachment, garnishment,

14     or other legal process, or the operation of any

15     bankruptcy or insolvency law, to the same ex-

16     tent as payments described in section 207 of

17     the Social Security Act (42 U.S.C. 407) without

18     regard to subsection (b) thereof.

19        "(B) ENCODING OF PAYMENTS.—As soon

20     as practicable after the date of the enactment

21     of this paragraph, the Secretary of the Treas-

22     ury shall encode applicable payments that are

23     paid electronically to any account—

24        "(i) with a unique identifier that is

25      reasonably sufficient to allow a financial

154

1     institution to identify the payment as a

2     payment protected under subparagraph

3     (A), and

4         "(ii) pursuant to the same specifica-

5     tions as required for a benefit payment to

6     which part 212 of title 31, Code of Federal

7     regulations applies.

8     "(C) GARNISHMENT.—

9         "(i) ENCODED PAYMENTS.—Upon re-

10     ceipt of a garnishment order that applies

11     to an account that has received an applica-

12     ble payment that is encoded as provided in

13     subparagraph (B), a financial institution

14     shall follow the requirements and proce-

15     dures set forth in part 212 of title 31,

16     Code of Federal Regulations. This para-

17     graph shall not alter the status of pay-

18     ments as tax refunds or other nonbenefit

19     payments for purpose of any reclamation

20     rights of the Department of Treasury or

21     the Internal Revenue Service as per part

22     210 of title 31 of the Code of Federal Regu-

23     lations.

24         "(ii) OTHER PAYMENTS.—If a finan-

25     cial institution receives a garnishment

g:\VHLC\051220\051220.072.xml     (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002459

155

1    order (other than an order that has been
2    served by the United States) that applies
3    to an account into which an applicable
4    payment that has not been encoded as pro-
5    vided in subparagraph (B) has been depos-
6    ited on any date in the prior 60 days (in-
7    cluding any date before the date of the en-
8    actment of this paragraph), the financial
9    institution, upon the request of the account
10   holder or for purposes of complying in
11   good faith with a State order, State law,
12   court order, or interpretation by a State
13   Attorney General relating to garnishment
14   order, may, but is not required to, treat
15   the amount of the payment as exempt
16   under law from garnishment without re-
17   quiring the account holder to assert any
18   right of garnishment exemption or requir-
19   ing the consent of the judgment creditor.

20       "(iii) LIABILITY.—A financial institu-
21   tion that complies in good faith with clause
22   (i) or that acts in good faith in reliance on
23   clause (ii) shall not be liable under any
24   Federal or State law, regulation, or court
25   or other order to a creditor that initiates

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002460

156

1 an order for any protected amounts, to an
2 account holder for any frozen amounts or
3 garnishment order applied.
4 ''(D) DEFINITIONS.—For purposes of this
5 paragraph—
6 ''(i) ACCOUNT HOLDER.—The term
7 'account holder' means a natural person
8 against whom a garnishment order is
9 issued and whose name appears in a finan-
10 cial institution's records.
11 ''(ii) APPLICABLE PAYMENT.—The
12 term 'applicable payment' means any pay-
13 ment of credit or refund by reason of sec-
14 tion 6428 of such Code (as so added) or by
15 reason of subsection (c) of this section.
16 ''(iii) GARNISHMENT.—The term 'gar-
17 nishment' means execution, levy, attach-
18 ment, garnishment, or other legal process.
19 ''(iv) GARNISHMENT ORDER.—The
20 term 'garnishment order' means a writ,
21 order, notice, summons, judgment, levy, or
22 similar written instruction issued by a
23 court, a State or State agency, a munici-
24 pality or municipal corporation, or a State
25 child support enforcement agency, includ-

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002461

157

1              ing a lien arising by operation of law for

2              overdue child support or an order to freeze

3              the assets in an account, to effect a gar-

4              nishment against a debtor.''.

5     (b) EFFECTIVE DATE.—The amendments made by

6 this section shall take effect on the date of the enactment

7 of this Act.

## SEC. 20105. PAYMENTS TO REPRESENTATIVE PAYEES AND FIDUCIARIES.

10    (a) IN GENERAL.—Section 6428(f) of the Internal

11 Revenue Code of 1986 is amended by redesignating para-

12 graph (6) as paragraph (7) and by inserting after para-

13 graph (5) the following new paragraph:

14         ''(6) PAYMENT TO REPRESENTATIVE PAYEES

15    AND FIDUCIARIES.—

16              ''(A) IN GENERAL.—In the case of any in-

17         dividual for which payment information is pro-

18         vided to the Secretary by the Commissioner of

19         Social Security, the Railroad Retirement Board,

20         or the Secretary of Veterans Affairs, the pay-

21         ment by the Secretary under paragraph (3)

22         with respect to such individual may be made to

23         such individual's representative payee or fidu-

24         ciary and the entire payment shall be—

158

1         "(i) provided to the individual who is

2   entitled to the payment, or

3         "(ii) used only for the benefit of the

4   individual who is entitled to the payment.

5   "(B) APPLICATION OF ENFORCEMENT

6   PROVISIONS.—

7         "(i) In the case of a payment de-

8   scribed in subparagraph (A) which is made

9   with respect to a social security beneficiary

10   or a supplemental security income recipi-

11   ent, section 1129(a)(3) of the Social Secu-

12   rity Act (42 U.S.C. 1320a–8(a)(3)) shall

13   apply to such payment in the same manner

14   as such section applies to a payment under

15   title II or XVI of such Act.

16         "(ii) In the case of a payment de-

17   scribed in subparagraph (A) which is made

18   with respect to a railroad retirement bene-

19   ficiary, section 13 of the Railroad Retire-

20   ment Act (45 U.S.C. 231l) shall apply to

21   such payment in the same manner as such

22   section applies to a payment under such

23   Act.

24         "(iii) In the case of a payment de-

25   scribed in subparagraph (A) which is made

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002463

159

1     with respect to a veterans beneficiary, sec-
2     tions 5502, 6106, and 6108 of title 38,
3     United States Code, shall apply to such
4     payment in the same manner as such sec-
5     tions apply to a payment under such
6     title.''.

7 (b) EFFECTIVE DATE.—The amendments made by
8 this section shall take effect as if included in section 2201
9 of the CARES Act.

10 **SEC. 20106. APPLICATION TO TAXPAYERS WITH RESPECT**
11     **TO WHOM ADVANCE PAYMENT HAS ALREADY**
12     **BEEN MADE.**

13 In the case of any taxpayer with respect to whom re-
14 fund or credit was made or allowed before the date of the
15 enactment of this Act under subsection (f) of section 6428
16 of the Internal Revenue Code of 1986 (as added by the
17 CARES Act), such subsection shall be applied separately
18 with respect to the excess (if any) of—

19  (1) the advance refund amount determined
20  under section 6428(f)(2) of such Code after the ap-
21  plication of the amendments made by this subtitle,
22  over

23  (2) the amount of such refund or credit so
24  made or allowed.

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002464

160

1    Subtitle B—Additional Recovery Rebates to Individuals

2    **SEC. 20111. ADDITIONAL RECOVERY REBATES TO INDIVID-**
3    **UALS.**

4    (a) IN GENERAL.—Subchapter B of chapter 65 of the

5    Internal Revenue Code of 1986 is amended by inserting

6    after section 6428 the following new section:

7    **"SEC. 6428A. ADDITIONAL RECOVERY REBATES TO INDIVID-**
8    **UALS.**

9    "(a) IN GENERAL.—In the case of an eligible indi-

10   vidual, there shall be allowed as a credit against the tax

11   imposed by subtitle A for the first taxable year beginning

12   in 2020 an amount equal to the additional rebate amount

13   determined for such taxable year.

14   "(b) ADDITIONAL REBATE AMOUNT.—For purposes

15   of this section, the term 'additional rebate amount' means,

16   with respect to any taxpayer for any taxable year, the sum

17   of—

18       "(1) $1,200 ($2,400 in the case of a joint re-

19       turn), plus

20       "(2) $1,200 multiplied by the number of de-

21       pendents of the taxpayer for such taxable year (not

22       in excess of 3 such dependents).

23   "(c) ELIGIBLE INDIVIDUAL.—For purposes of this

24   section, the term 'eligible individual' means any individual

25   other than—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002465

161

1        "(1) any nonresident alien individual,

2        "(2) any individual with respect to whom a de-

3    duction under section 151 is allowable to another

4    taxpayer for a taxable year beginning in the cal-

5    endar year in which the individual's taxable year be-

6    gins, and

7        "(3) an estate or trust.

8    "(d) Limitation Based on Modified Adjusted

9  Gross Income.—The amount of the credit allowed by

10  subsection (a) (determined without regard to this sub-

11  section and subsection (f)) shall be reduced (but not below

12  zero) by 5 percent of so much of the taxpayer's modified

13  adjusted gross income as exceeds—

14        "(1) $150,000 in the case of a joint return or

15    a surviving spouse (as defined in section 2(a)),

16        "(2) $112,500 in the case of a head of house-

17    hold (as defined in section 2(b)), and

18        "(3) $75,000 in any other case.

19  "(e) Definitions and Special Rules.—

20        "(1) Modified adjusted gross income.—

21    For purposes of this subsection (other than this

22    paragraph), the term 'modified adjusted gross in-

23    come' means adjusted gross income determined with-

24    out regard to sections 911, 931, and 933.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002466

162

1      "(2) DEPENDENT DEFINED.—For purposes of

2    this section, the term 'dependent' has the meaning

3    given such term by section 152.

4      "(3) CREDIT TREATED AS REFUNDABLE.—The

5    credit allowed by subsection (a) shall be treated as

6    allowed by subpart C of part IV of subchapter A of

7    chapter 1.

8      "(4)   IDENTIFICATION   NUMBER   REQUIRE-

9    MENT.—

10        "(A) IN GENERAL.—The $1,200 amount in

11       subsection (b)(1) shall be treated as being zero

12       unless the taxpayer includes the TIN of the

13       taxpayer on the return of tax for the taxable

14       year.

15        "(B) JOINT RETURNS.—In the case of a

16       joint return, the $2,400 amount in subsection

17       (b)(1) shall be treated as being—

18           "(i) zero if the TIN of neither spouse

19          is included on the return of tax for the

20          taxable year, and

21           "(ii) $1,200 if the TIN of only one

22          spouse is so included.

23        "(C)  DEPENDENTS.—A  dependent  shall

24       not be taken into account under subsection

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002467

163

1        (b)(2) unless the TIN of such dependent is in-

2        cluded on the return of tax for the taxable year.

3             "(D) COORDINATION WITH CERTAIN AD-

4        VANCE PAYMENTS.—In the case of any payment

5        made pursuant to subsection (g)(5)(A)(ii), a

6        TIN shall be treated for purposes of this para-

7        graph as included on the taxpayer's return of

8        tax if such TIN is provided pursuant to such

9        subsection.

10      "(f) COORDINATION WITH ADVANCE REFUNDS OF

11  CREDIT.—

12            "(1) REDUCTION OF REFUNDABLE CREDIT.—

13        The amount of the credit which would (but for this

14        paragraph) be allowable under subsection (a) shall

15        be reduced (but not below zero) by the aggregate re-

16        funds and credits made or allowed to the taxpayer

17        (or any dependent of the taxpayer) under subsection

18        (g). Any failure to so reduce the credit shall be

19        treated as arising out of a mathematical or clerical

20        error and assessed according to section 6213(b)(1).

21            "(2) JOINT RETURNS.—In the case of a refund

22        or credit made or allowed under subsection (g) with

23        respect to a joint return, half of such refund or cred-

24        it shall be treated as having been made or allowed

25        to each individual filing such return.

DOC_0002468

164

1 &ldquo;(g) ADVANCE REFUNDS AND CREDITS.—

2 &ldquo;(1) IN GENERAL.—Subject to paragraph (5),

3 each individual who was an eligible individual for

4 such individual's first taxable year beginning in

5 2019 shall be treated as having made a payment

6 against the tax imposed by chapter 1 for such tax-

7 able year in an amount equal to the advance refund

8 amount for such taxable year.

9 &ldquo;(2) ADVANCE REFUND AMOUNT.—For pur-

10 poses of paragraph (1), the advance refund amount

11 is the amount that would have been allowed as a

12 credit under this section for such taxable year if this

13 section (other than subsection (f) and this sub-

14 section) had applied to such taxable year.

15 &ldquo;(3) TIMING AND MANNER OF PAYMENTS.—

16 &ldquo;(A) TIMING.—The Secretary shall, sub-

17 ject to the provisions of this title, refund or

18 credit any overpayment attributable to this sec-

19 tion as rapidly as possible. No refund or credit

20 shall be made or allowed under this subsection

21 after December 31, 2020.

22 &ldquo;(B) DELIVERY OF PAYMENTS.—Notwith-

23 standing any other provision of law, the Sec-

24 retary may certify and disburse refunds payable

25 under this subsection electronically to any ac-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002469

165

1    count to which the payee authorized, on or after

2    January 1, 2018, the delivery of a refund of

3    taxes under this title or of a Federal payment

4    (as defined in section 3332 of title 31, United

5    States Code).

6        ''(C) WAIVER OF CERTAIN RULES.—Not-

7    withstanding section 3325 of title 31, United

8    States Code, or any other provision of law, with

9    respect to any payment of a refund under this

10   subsection, a disbursing official in the executive

11   branch of the United States Government may

12   modify payment information received from an

13   officer   or   employee   described   in   section

14   3325(a)(1)(B) of such title for the purpose of

15   facilitating the accurate and efficient delivery of

16   such payment. Except in cases of fraud or reck-

17   less neglect, no liability under sections 3325,

18   3527, 3528, or 3529 of title 31, United States

19   Code, shall be imposed with respect to pay-

20   ments made under this subparagraph.

21       ''(4) NO INTEREST.—No interest shall be al-

22   lowed on any overpayment attributable to this sec-

23   tion.

24       ''(5) APPLICATION TO INDIVIDUALS WHO DO

25   NOT FILE A RETURN OF TAX FOR 2019.—

166

1      ''(A) IN GENERAL.—In the case of an indi-
2      vidual who, at the time of any determination
3      made pursuant to paragraph (3), has not filed
4      a tax return for the year described in para-
5      graph (1), the Secretary shall—

6           ''(i) apply paragraph (1) by sub-
7           stituting '2018' for '2019', and

8           ''(ii) in the case of a specified indi-
9           vidual who has not filed a tax return for
10          such individual's first taxable year begin-
11          ning in 2018, determine the advance re-
12          fund amount with respect to such indi-
13          vidual without regard to subsections (d)
14          and on the basis of information with re-
15          spect to such individual which is provided
16          by—

17               ''(I) in the case of a specified so-
18               cial security beneficiary or a specified
19               supplemental security income recipi-
20               ent, the Commissioner of Social Secu-
21               rity,

22               ''(II) in the case of a specified
23               railroad retirement beneficiary, the
24               Railroad Retirement Board, and

DOC_0002471

167

1          ''(III) in the case of a specified

2      veterans beneficiary, the Secretary of

3      Veterans Affairs (in coordination

4      with, and with the assistance of, the

5      Commissioner of Social Security if ap-

6      propriate).

7      ''(B) SPECIFIED INDIVIDUAL.—For pur-

8  poses of this paragraph, the term 'specified in-

9  dividual' means any individual who is—

10          ''(i) a specified social security bene-

11      ficiary,

12          ''(ii) a specified supplemental security

13      income recipient,

14          ''(iii) a specified railroad retirement

15      beneficiary, or

16          ''(iv) a specified veterans beneficiary.

17      ''(C) SPECIFIED SOCIAL SECURITY BENE-

18  FICIARY.—For purposes of this paragraph—

19          ''(i) IN GENERAL.—The term 'speci-

20      fied social security beneficiary' means any

21      individual who, for the last month that

22      ends prior to the date of enactment of this

23      section, is entitled to any monthly insur-

24      ance benefit payable under title II of the

25      Social Security Act (42 U.S.C. 401 et

168

1   seq.), including payments made pursuant
2   to sections 202(d), 223(g), and 223(i)(7)
3   of such Act.

4       "(ii) EXCEPTION.—Such term shall
5   not include any individual if such benefit is
6   not payable for such month by reason of
7   section 202(x) of the Social Security Act
8   (42 U.S.C. 402(x)) or section 1129A of
9   such Act (42 U.S.C. 1320a–8a).

10   "(D) SPECIFIED SUPPLEMENTAL SECU-
11   RITY INCOME RECIPIENT.—For purposes of this
12   paragraph—

13       "(i) IN GENERAL.—The term 'speci-
14   fied supplemental security income recipi-
15   ent' means any individual who, for the last
16   month that ends prior to the date of enact-
17   ment of this section, is eligible for a
18   monthly benefit payable under title XVI of
19   the Social Security Act (42 U.S.C. 1381 et
20   seq.) (other than a benefit to an individual
21   described in section 1611(e)(1)(B) of such
22   Act (42 U.S.C. 1382(e)(1)(B)), includ-
23   ing—

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002473

169

1          "(I) payments made pursuant to

2      section 1614(a)(3)(C) of such Act (42

3      U.S.C. 1382c(a)(3)(C)),

4          "(II) payments made pursuant to

5      section 1619(a) (42 U.S.C. 1382h) or

6      subsections (a)(4), (a)(7), or (p)(7) of

7      section 1631 (42 U.S.C. 1383) of

8      such Act, and

9          "(III) State supplementary pay-

10      ments of the type referred to in sec-

11      tion 1616(a) of such Act (42 U.S.C.

12      1382e(a)) (or payments of the type

13      described in section 212(a) of Public

14      Law 93–66) which are paid by the

15      Commissioner under an agreement re-

16      ferred to in such section 1616(a) (or

17      section 212(a) of Public Law 93–66).

18      "(ii) EXCEPTION.—Such term shall

19      not include any individual if such monthly

20      benefit is not payable for such month by

21      reason of subsection (e)(1)(A) or (e)(4) of

22      section 1611 (42 U.S.C. 1382) or section

23      1129A of such Act (42 U.S.C. 1320a–8a).

24      "(E) SPECIFIED RAILROAD RETIREMENT

25      BENEFICIARY.—For purposes of this para-

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002474

170

graph, the term 'specified railroad retirement
beneficiary' means any individual who, for the
last month that ends prior to the date of enact-
ment of this section, is entitled to a monthly
annuity or pension payment payable (without
regard to section 5(a)(ii) of the Railroad Retire-
ment Act of 1974 (45 U.S.C. 231d(a)(ii)))
under—

"(i) section 2(a)(1) of such Act (45
U.S.C. 231a(a)(1)),

"(ii) section 2(c) of such Act (45
U.S.C. 231a(c)),

"(iii) section 2(d)(1) of such Act (45
U.S.C. 231a(d)(1)), or

"(iv) section 7(b)(2) of such Act (45
U.S.C. 231f(b)(2)) with respect to any of
the benefit payments described in subpara-
graph (C)(i).

"(F) SPECIFIED VETERANS BENE-
FICIARY.—For purposes of this paragraph—

"(i) IN GENERAL.—The term 'speci-
fied veterans beneficiary' means any indi-
vidual who, for the last month that ends
prior to the date of enactment of this sec-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002475

171

1         tion, is entitled to a compensation or pen-

2         sion payment payable under—

3                 "(I) section 1110, 1117, 1121,

4             1131, 1141, or 1151 of title 38,

5             United States Code,

6                 "(II) section 1310, 1312, 1313,

7             1315, 1316, or 1318 of title 38,

8             United States Code,

9                 "(III) section 1513, 1521, 1533,

10            1536, 1537, 1541, 1542, or 1562 of

11            title 38, United States Code, or

12                 "(IV) section 1805, 1815, or

13            1821 of title 38, United States Code,

14         to a veteran, surviving spouse, child, or

15         parent as described in paragraph (2), (3),

16         (4)(A)(ii), or (5) of section 101, title 38,

17         United States Code.

18            "(ii) EXCEPTION.—Such term shall

19         not include any individual if such com-

20         pensation or pension payment is not pay-

21         able, or was reduced, for such month by

22         reason of section 1505, 5313, or 5313B of

23         title 38, United States Code.

24         "(G) SUBSEQUENT DETERMINATIONS AND

25 REDETERMINATIONS NOT TAKEN INTO AC-

DOC_0002476

172

1 COUNT.—For purposes of this section, any indi-
2 vidual's status as a specified social security ben-
3 eficiary, a specified supplemental security in-
4 come recipient, a specified railroad retirement
5 beneficiary, or a specified veterans beneficiary
6 shall be unaffected by any determination or re-
7 determination of any entitlement to, or eligi-
8 bility for, any benefit, payment, or compensa-
9 tion, if such determination or redetermination
10 occurs after the last month that ends prior to
11 the date of enactment of this section.
12     "(H) PAYMENT TO REPRESENTATIVE PAY-
13 EES AND FIDUCIARIES.—
14         "(i) IN GENERAL.—If the benefit,
15     payment, or compensation referred to in
16     subparagraph (C)(i), (D)(i), (E), or (F)(i)
17     with respect to any specified individual is
18     paid to a representative payee or fiduciary,
19     payment by the Secretary under paragraph
20     (3) with respect to such specified indi-
21     vidual shall be made to such individual's
22     representative payee or fiduciary and the
23     entire payment shall be used only for the
24     benefit of the individual who is entitled to
25     the payment.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002477

G:\CMTE\AP\16\FY20\_D\HEROES.XML

173

1                                                    ''(ii) APPLICATION OF ENFORCEMENT

2      PROVISIONS.—

3           ''(I) In the case of a payment de-

4      scribed in clause (i) which is made

5      with respect to a specified social secu-

6      rity beneficiary or a specified supple-

7      mental security income recipient, sec-

8      tion 1129(a)(3) of the Social Security

9      Act (42 U.S.C. 1320a–8(a)(3)) shall

10      apply to such payment in the same

11      manner as such section applies to a

12      payment under title II or XVI of such

13      Act.

14           ''(II) In the case of a payment

15      described in clause (i) which is made

16      with respect to a specified railroad re-

17      tirement beneficiary, section 13 of the

18      Railroad Retirement Act (45 U.S.C.

19      231l) shall apply to such payment in

20      the same manner as such section ap-

21      plies to a payment under such Act.

22           ''(III) In the case of a payment

23      described in clause (i) which is made

24      with respect to a specified veterans

25      beneficiary, sections 5502, 6106, and

DOC_0002478

174

1          6108 of title 38, United States Code,

2          shall apply to such payment in the

3          same manner as such sections apply

4          to a payment under such title.

5      "(6) NOTICE TO TAXPAYER.—Not later than 15

6  days after the date on which the Secretary distrib-

7  uted any payment to an eligible taxpayer pursuant

8  to this subsection, notice shall be sent by mail to

9  such taxpayer's last known address. Such notice

10  shall indicate the method by which such payment

11  was made, the amount of such payment, and a

12  phone number for the appropriate point of contact

13  at the Internal Revenue Service to report any error

14  with respect to such payment.

15      "(h) REGULATIONS.—The Secretary shall prescribe

16  such regulations or other guidance as may be necessary

17  or appropriate to carry out the purposes of this section,

18  including—

19          "(1) regulations or other guidance providing

20      taxpayers the opportunity to provide the Secretary

21      information sufficient to allow the Secretary to make

22      payments to such taxpayers under subsection (g)

23      (including the determination of the amount of such

24      payment) if such information is not otherwise avail-

25      able to the Secretary, and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002479

175

1         ''(2) regulations or other guidance providing for
2     the proper treatment of joint returns and taxpayers
3     with dependents to ensure that an individual is not
4     taken into account more than once in determining
5     the amount of any credit under subsection (a) and
6     any credit or refund under subsection (g).

7   ''(i) OUTREACH.—The Secretary shall carry out a ro-
8 bust and comprehensive outreach program to ensure that
9 all taxpayers described in subsection (h)(1) learn of their
10 eligibility for the advance refunds and credits under sub-
11 section (g); are advised of the opportunity to receive such
12 advance refunds and credits as provided under subsection
13 (h)(1); and are provided assistance in applying for such
14 advance refunds and credits. In conducting such outreach
15 program, the Secretary shall coordinate with other govern-
16 ment, State, and local agencies; federal partners; and com-
17 munity-based nonprofit organizations that regularly inter-
18 face with such taxpayers.''.

19   (b) TREATMENT OF CERTAIN POSSESSIONS.—

20     (1) PAYMENTS TO POSSESSIONS WITH MIRROR
21     CODE TAX SYSTEMS.—The Secretary of the Treas-
22     ury shall pay to each possession of the United States
23     which has a mirror code tax system amounts equal
24     to the loss (if any) to that possession by reason of
25     the amendments made by this section. Such

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002480

176

1 amounts shall be determined by the Secretary of the
2 Treasury based on information provided by the gov-
3 ernment of the respective possession.

4 (2) PAYMENTS TO OTHER POSSESSIONS.—The
5 Secretary of the Treasury shall pay to each posses-
6 sion of the United States which does not have a mir-
7 ror code tax system amounts estimated by the Sec-
8 retary of the Treasury as being equal to the aggre-
9 gate benefits (if any) that would have been provided
10 to residents of such possession by reason of the
11 amendments made by this section if a mirror code
12 tax system had been in effect in such possession.
13 The preceding sentence shall not apply unless the re-
14 spective possession has a plan, which has been ap-
15 proved by the Secretary of the Treasury, under
16 which such possession will promptly distribute such
17 payments to its residents.

18 (3) COORDINATION WITH CREDIT ALLOWED
19 AGAINST UNITED STATES INCOME TAXES.—No cred-
20 it shall be allowed against United States income
21 taxes under section 6428A of the Internal Revenue
22 Code of 1986 (as added by this section), nor shall
23 any credit or refund be made or allowed under sub-
24 section (g) of such section, to any person—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002481

177

1     (A) to whom a credit is allowed against

2     taxes imposed by the possession by reason of

3     the amendments made by this section, or

4     (B) who is eligible for a payment under a

5     plan described in paragraph (2).

6     (4) MIRROR CODE TAX SYSTEM.—For purposes

7 of this subsection, the term "mirror code tax sys-

8 tem" means, with respect to any possession of the

9 United States, the income tax system of such posses-

10 sion if the income tax liability of the residents of

11 such possession under such system is determined by

12 reference to the income tax laws of the United

13 States as if such possession were the United States.

14 (c) ADMINISTRATIVE PROVISIONS.—

15     (1) DEFINITION OF DEFICIENCY.—Section

16     6211(b)(4)(A) of the Internal Revenue Code of 1986

17     is amended by striking "and 6428" and inserting

18     "6428, and 6428A".

19     (2) MATHEMATICAL OR CLERICAL ERROR AU-

20     THORITY.—Section 6213(g)(2) of such Code is

21     amended—

22     (A) by inserting "or section 6428A (relat-

23     ing to additional recovery rebates to individ-

24     uals)" before the comma at the end of subpara-

25     graph (H), and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002482

178

1      (B) by striking ''or 6428'' in subparagraph

2      (L) and inserting ''6428, or 6428A''.

3      (3) EXCEPTION FROM REDUCTION OR OFF-

4      SET.—Any credit or refund allowed or made to any

5      individual by reason of section 6428A of the Internal

6      Revenue Code of 1986 (as added by this section) or

7      by reason of subsection (b) of this section shall not

8      be—

9          (A) subject to reduction or offset pursuant

10         to section 3716 or 3720A of title 31, United

11         States Code,

12         (B) subject to reduction or offset pursuant

13         to subsection (c), (d), (e), or (f) of section 6402

14         of the Internal Revenue Code of 1986, or

15         (C) reduced or offset by other assessed

16         Federal taxes that would otherwise be subject

17         to levy or collection.

18     (4) ASSIGNMENT OF BENEFITS.—

19         (A) IN GENERAL.—Any applicable pay-

20         ment shall not be subject to transfer, assign-

21         ment, execution, levy, attachment, garnishment,

22         or other legal process, or the operation of any

23         bankruptcy or insolvency law, to the same ex-

24         tent as payments described in section 207 of

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002483

G:\CMTE\AP\16\FY20\_D\HEROES.XML

179

1 the Social Security Act (42 U.S.C. 407) without

2 regard to subsection (b) thereof.

3 (B) ENCODING OF PAYMENTS.—As soon as

4 practicable after the date of the enactment of

5 the paragraph, the Secretary of the Treasury

6 shall encode applicable payments that are paid

7 electronically to any account—

8 (i) with a unique identifier that is rea-

9 sonably sufficient to allow a financial insti-

10 tution to identify the payment as a pay-

11 ment protected under subparagraph (A),

12 and

13 (ii) pursuant to the same specifica-

14 tions as required for a benefit payment to

15 which part 212 of title 31, Code of Federal

16 regulations applies.

17 (C) GARNISHMENT.—

18 (i) ENCODED PAYMENTS.—Upon re-

19 ceipt of a garnishment order that applies

20 to an account that has received an applica-

21 ble payment that is encoded as provided in

22 subparagraph (B), a financial institution

23 shall follow the requirements and proce-

24 dures set forth in part 212 of title 31,

25 Code of Federal Regulations. This para-

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002484

180

1             graph shall not alter the status of pay-

2             ments as tax refunds or other nonbenefit

3             payments for purpose of any reclamation

4             rights of the Department of Treasury or

5             the Internal Revenue Serves as per part

6             210 of title 31 of the Code of Federal Reg-

7             ulations.

8                    (ii) OTHER PAYMENTS.—If a financial

9             institution receives a garnishment order

10           (other than an order that has been served

11           by the United States) that applies to an

12           account into which an applicable payment

13           that has not been encoded as provided in

14           subparagraph (B) has been deposited on

15           any date in the prior 60 days (including

16           any date before the date of the enactment

17           of this paragraph), the financial institu-

18           tion, upon the request of the account hold-

19           er or for purposes of complying in good

20           faith with a State order, State law, court

21           order, or interpretation by a State Attor-

22           ney General relating to garnishment order,

23           may, but is not required to, treat the

24           amount of the payment as exempt under

25           law from garnishment without requiring

DOC_0002485

181

1 the account holder to assert any right of
2 garnishment exemption or requiring the
3 consent of the judgment creditor.

4 (iii) LIABILITY.—A financial institu-
5 tion that complies in good faith with clause
6 (i) or that acts in good faith in reliance on
7 clause (ii) shall not be liable under any
8 Federal or State law, regulation, or court
9 or other order to a creditor that initiates
10 an order for any protected amounts, to an
11 account holder for any frozen amounts or
12 garnishment order applied.

13 (D) DEFINITIONS.—For purposes of this
14 paragraph—

15 (i) ACCOUNT HOLDER.—The term
16 "account holder" means a natural person
17 against whom a garnishment order is
18 issued and whose name appears in a finan-
19 cial institution's records.

20 (ii) APPLICABLE PAYMENT.—The
21 term "applicable payment" means any pay-
22 ment of credit or refund by reason of sec-
23 tion 6428 of such Code (as so added) or by
24 reason of subsection (c) of this section.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002486

182

1           (iii) GARNISHMENT.—The term "gar-

2           nishment" means execution, levy, attach-

3           ment, garnishment, or other legal process.

4           (iv) GARNISHMENT ORDER.—The

5           term "garnishment order" means a writ,

6           order, notice, summons, judgment, levy, or

7           similar written instruction issued by a

8           court, a State or State agency, a munici-

9           pality or municipal corporation, or a State

10          child support enforcement agency, includ-

11          ing a lien arising by operation of law for

12          overdue child support or an order to freeze

13          the assets in an account, to effect a gar-

14          nishment against a debtor.

15     (5) TREATMENT OF CREDIT AND ADVANCE PAY-

16 MENTS.—For purposes of section 1324 of title 31,

17 United States Code, any credit under section

18 6428A(a) of the Internal Revenue Code of 1986, any

19 credit or refund under section 6428A(g) of such

20 Code, and any payment under subsection (b) of this

21 section, shall be treated in the same manner as a re-

22 fund due from a credit provision referred to in sub-

23 section (b)(2) of such section 1324.

24     (6) AGENCY INFORMATION SHARING AND AS-

25 SISTANCE.—The Commissioner of Social Security,

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002487

183

1 the Railroad Retirement Board, and the Secretary of
2 Veterans Affairs shall each provide the Secretary of
3 the Treasury (or the Secretary's delegate) such in-
4 formation and assistance as the Secretary of the
5 Treasury (or the Secretary's delegate) may require
6 for purposes of making payments under section
7 6428A(g) of the Internal Revenue Code of 1986 to
8 individuals described in paragraph (5)(A)(ii) thereof.

9     (7) CLERICAL AMENDMENT.—The table of sec-
10 tions for subchapter B of chapter 65 of the Internal
11 Revenue Code of 1986 is amended by inserting after
12 the item relating to section 6428 the following new
13 item:

"Sec. 6428A. Additional recovery rebates to individuals.".

14     (d) APPROPRIATIONS TO CARRY OUT THIS SEC-
15 TION.—

16     (1) IN GENERAL.—Immediately upon the enact-
17 ment of this Act, the following sums are appro-
18 priated, out of any money in the Treasury not other-
19 wise appropriated, for the fiscal year ending Sep-
20 tember 30, 2020—

21         (A) DEPARTMENT OF THE TREASURY.—

22             (i) For an additional amount for "De-
23         partment of the Treasury—Bureau of Fis-
24         cal Services—Salaries and Expenses",

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002488

184

1    $78,650,000, to remain available until

2    September 30, 2021.

3        (ii) For an additional amount for

4    "Department of the Treasury—Internal

5    Revenue    Service—Taxpayer    Services",

6    $298,700,000, to remain available until

7    September 30, 2021.

8        (iii) For an additional amount for

9    "Department of the Treasury—Internal

10   Revenue          Service—Enforcement",

11   $37,200,000, to remain available until

12   September 30, 2021.

13       (iv) For an additional amount for

14   "Department of the Treasury—Internal

15   Revenue   Service—Operations   Support",

16   $185,000,000, to remain available until

17   September 30, 2021.

18       (v) For an additional amount for "De-

19   partment   of   the   Treasury—Office   of

20   Treasury Inspector General for Tax Ad-

21   ministration",   $10,000,000,   to   remain

22   available until September 30, 2024, for

23   necessary expenses related to COVID–19

24   including carrying out investigations.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002489

185

1    Amounts made available in appropriations
2    under clauses (ii), (iii), and (iv) of this subpara-
3    graph may be transferred between such appro-
4    priations upon the advance notification of the
5    Committees on Appropriations of the House of
6    Representatives and the Senate. Such transfer
7    authority is in addition to any other transfer
8    authority provided by law.

9        (B) SOCIAL SECURITY ADMINISTRATION.—
10   For an additional amount for "Social Security
11   Administration—Limitation on Administrative
12   Expenses", $40,500,000, to remain available
13   until September 30, 2021: Provided, that
14   $2,500,000, to remain available until Sep-
15   tember 30, 2024, shall be transferred to "Social
16   Security Administration—Office of Inspector
17   General" for necessary expenses in carrying out
18   the provisions of the Inspector General Act of
19   1978.

20       (C) RAILROAD RETIREMENT BOARD.—For
21   an additional amount for "Railroad Retirement
22   Board—Limitation on Administration", $8,300,
23   to remain available until September 30, 2021.

24   (2) REPORTS.—No later than 15 days after en-
25   actment of this Act, the Secretary of the Treasury

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002490

186

1    shall submit a plan to the Committees on Appropria-
2    tions of the House of Representatives and the Sen-
3    ate detailing the expected use of the funds provided
4    by clauses (i) through (iv) paragraph (1)(A). Begin-
5    ning 90 days after enactment of this Act, the Sec-
6    retary of the Treasury shall submit a quarterly re-
7    port to the Committees on Appropriations of the
8    House of Representatives and the Senate detailing
9    the actual expenditure of such funds and the ex-
10   pected expenditure of such funds in the subsequent
11   quarter.

12   (e) CERTAIN REQUIREMENTS RELATED TO RECOV-
13   ERY REBATES AND ADDITIONAL RECOVERY REBATES.—

14       (1) SIGNATURES ON CHECKS AND NOTICES,
15   ETC., BY THE DEPARTMENT OF THE TREASURY.—
16   Any check issued to an individual by the Depart-
17   ment of the Treasury pursuant to section 6428 or
18   6428A of the Internal Revenue Code of 1986, and
19   any notice issued pursuant to section 6428(f)(6) or
20   section 6428A(g)(6) of such Code, may not be
21   signed by or otherwise bear the name, signature,
22   image or likeness of the President, the Vice Presi-
23   dent or any elected official or cabinet level officer of
24   the United States, or any individual who, with re-
25   spect to any of the aforementioned individuals, bears

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002491

1    any relationship described in subparagraphs (A)
2    through (G) of section 152(d)(2) of the Internal
3    Revenue Code of 1986.

4        (2) EFFECTIVE DATE.—Paragraph (1) shall
5    apply to checks and notices issued after the date of
6    the enactment of this Act.

7    (f) REPORTS TO CONGRESS.—Each week beginning
8    after the date of the enactment of this Act and beginning
9    before December 31, 2020, on Friday of such week, not
10   later than 3 p.m. Eastern Time, the Secretary of the
11   Treasury shall provide a written report to the Committee
12   on Ways and Means of the House of Representatives and
13   the Committee on Finance of the Senate. Such report shall
14   include the following information with respect to payments
15   made pursuant to each of sections 6428 and 6428A of
16   the Internal Revenue Code of 1986:

17       (1) The number of scheduled payments sent to
18       the Bureau of Fiscal Service for payment by direct
19       deposit or paper check for the following week (stated
20       separately for direct deposit and paper check).

21       (2) The total dollar amount of the scheduled
22       payments described in paragraph (1).

23       (3) The number of direct deposit payments re-
24       turned to the Department of the Treasury and the
25       total dollar value of such payments, for the week

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002492

188

1 ending on the day prior to the day on which the re-

2 port is provided.

3  (4) The total number of letters related to pay-

4 ments under section 6428 or 6428A of such Code

5 mailed to taxpayers during the week ending on the

6 day prior to the day on which the report is provided.

7  Subtitle C—Earned Income Tax Credit

**8 SEC. 20121. STRENGTHENING THE EARNED INCOME TAX**

**9    CREDIT FOR INDIVIDUALS WITH NO QUALI-**

**10    FYING CHILDREN.**

11 (a) SPECIAL RULES FOR 2020.—Section 32 of the

12 Internal Revenue Code of 1986 is amended by adding at

13 the end the following new subsection:

14 "(n) SPECIAL RULES FOR INDIVIDUALS WITHOUT

15 QUALIFYING CHILDREN.—In the case of any taxable year

16 beginning after December 31, 2019, and before January

17 1, 2021—

18  "(1) DECREASE IN MINIMUM AGE FOR CRED-

19 IT.—

20   "(A) IN GENERAL.—Subsection

21   (c)(1)(A)(ii)(II) shall be applied by substituting

22   'the applicable minimum age' for 'age 25'.

23   "(B) APPLICABLE MINIMUM AGE.—For

24   purposes of this paragraph, the term 'applicable

25   minimum age' means—

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002493

189

1             ''(i) except as otherwise provided in

2         this subparagraph, age 19,

3             ''(ii) in the case of a full-time student

4         (other than a qualified former foster youth

5         or a qualified homeless youth), age 25, and

6             ''(iii) in the case of a qualified former

7         foster youth or a qualified homeless youth,

8         age 18.

9       ''(C) FULL-TIME STUDENT.—For purposes

10 of this paragraph, the term 'full-time student'

11 means, with respect to any taxable year, an in-

12 dividual who is an eligible student (as defined

13 in section 25A(b)(3)) during at least 5 calendar

14 months during the taxable year.

15       ''(D) QUALIFIED FORMER FOSTER

16 YOUTH.—For purposes of this paragraph, the

17 term 'qualified former foster youth' means an

18 individual who—

19             ''(i) on or after the date that such in-

20         dividual attained age 14, was in foster care

21         provided under the supervision or adminis-

22         tration of a State or tribal agency admin-

23         istering (or eligible to administer) a plan

24         under part B or part E of the Social Secu-

25         rity Act (without regard to whether Fed-

DOC_0002494

G:\CMTE\AP\16\FY20\_D\HEROES.XML

190

1      eral assistance was provided with respect

2      to such child under such part E), and

3          "(ii) provides (in such manner as the

4      Secretary may provide) consent for State

5      and tribal agencies which administer a

6      plan under part B or part E of the Social

7      Security Act to disclose to the Secretary

8      information related to the status of such

9      individual as a qualified former foster

10     youth.

11     "(E) QUALIFIED HOMELESS YOUTH.—For

12     purposes of this paragraph, the term 'qualified

13     homeless youth' means, with respect to any tax-

14     able year, an individual who—

15         "(i) is certified by a local educational

16     agency or a financial aid administrator

17     during such taxable year as being either an

18     unaccompanied youth who is a homeless

19     child or youth, or as unaccompanied, at

20     risk of homelessness, and self-supporting.

21     Terms used in the preceding sentence

22     which are also used in section 480(d)(1) of

23     the Higher Education Act of 1965 shall

24     have the same meaning as when used in

25     such section, and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002495

G:\CMTE\AP\16\FY20\_D\HEROES.XML

191

1           "(ii) provides (in such manner as the

2       Secretary may provide) consent for local

3       educational agencies and financial aid ad-

4       ministrators to disclose to the Secretary in-

5       formation related to the status of such in-

6       dividual as a qualified homeless youth.

7       "(2) INCREASE IN MAXIMUM AGE FOR CRED-

8   IT.—Subsection (c)(1)(A)(ii)(II) shall be applied by

9   substituting 'age 66' for 'age 65'.

10      "(3) INCREASE IN CREDIT AND PHASEOUT PER-

11  CENTAGES.—The table contained in subsection

12  (b)(1) shall be applied by substituting '15.3' for

13  '7.65' each place it appears therein.

14      "(4) INCREASE IN EARNED INCOME AND

15  PHASEOUT AMOUNTS.—

16          "(A) IN GENERAL.—The table contained in

17      subsection (b)(2)(A) shall be applied—

18              "(i) by substituting '$9,720' for

19          '$4,220', and

20              "(ii) by substituting '$11,490' for

21          '$5,280'.

22          "(B) COORDINATION WITH INFLATION AD-

23      JUSTMENT.—Subsection (j) shall not apply to

24      any dollar amount specified in this paragraph.".

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002496

192

1    (b) INFORMATION RETURN MATCHING.—As soon as
2 practicable, the Secretary of the Treasury (or the Sec-
3 retary's delegate) shall develop and implement procedures
4 to use information returns under section 6050S (relating
5 to returns relating to higher education tuition and related
6 expenses) to check the status of individuals as full-time
7 students for purposes of section 32(n)(1)(B)(ii) of the In-
8 ternal Revenue Code of 1986 (as added by this section).

9    (c) EFFECTIVE DATE.—The amendment made by
10 this section shall apply to taxable years beginning after
11 December 31, 2019.

12 **SEC. 20122. TAXPAYER ELIGIBLE FOR CHILDLESS EARNED**
13              **INCOME CREDIT IN CASE OF QUALIFYING**
14              **CHILDREN WHO FAIL TO MEET CERTAIN**
15              **IDENTIFICATION REQUIREMENTS.**

16    (a) IN GENERAL.—Section 32(c)(1) of the Internal
17 Revenue Code of 1986 is amended by striking subpara-
18 graph (F).

19    (b) EFFECTIVE DATE.—The amendment made by
20 this section shall apply to taxable years beginning after
21 the date of the enactment of this Act.

22 **SEC. 20123. CREDIT ALLOWED IN CASE OF CERTAIN SEPA-**
23              **RATED SPOUSES.**

24    (a) IN GENERAL.—Section 32(d) of the Internal Rev-
25 enue Code of 1986 is amended—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002497

193

1     (1) by striking "MARRIED INDIVIDUALS.—In

2    the case of" and inserting the following: "MARRIED

3    INDIVIDUALS.—

4     "(1) IN GENERAL.—In the case of", and

5    (2) by adding at the end the following new

6    paragraph:

7     "(2) DETERMINATION OF MARITAL STATUS.—

8    For purposes of this section—

9       "(A) IN GENERAL.—Except as provided in

10       subparagraph (B), marital status shall be deter-

11       mined under section 7703(a).

12       "(B) SPECIAL RULE FOR SEPARATED

13       SPOUSE.—An individual shall not be treated as

14       married if such individual—

15          "(i) is married (as determined under

16          section 7703(a)) and does not file a joint

17          return for the taxable year,

18          "(ii) lives with a qualifying child of

19          the individual for more than one-half of

20          such taxable year, and

21          "(iii)(I) during the last 6 months of

22          such taxable year, does not have the same

23          principal place of abode as the individual's

24          spouse, or

DOC_0002498

194

1              "(II) has a decree, instrument, or
2          agreement (other than a decree of divorce)
3          described in section 121(d)(3)(C) with re-
4          spect to the individual's spouse and is not
5          a member of the same household with the
6          individual's spouse by the end of the tax-
7          able year.".

8      (b) CONFORMING AMENDMENTS.—

9          (1) Section 32(c)(1)(A) of such Code is amend-
10     ed by striking the last sentence.

11         (2) Section 32(c)(1)(E)(ii) of such Code is
12     amended by striking "(within the meaning of section
13     7703)".

14         (3) Section 32(d)(1) of such Code, as amended
15     by subsection (a), is amended by striking "(within
16     the meaning of section 7703)".

17     (c) EFFECTIVE DATE.—The amendments made by
18 this section shall apply to taxable years beginning after
19 the date of the enactment of this Act.

**20 SEC. 20124. ELIMINATION OF DISQUALIFIED INVESTMENT**
**21          INCOME TEST.**

22     (a) IN GENERAL.—Section 32 of the Internal Rev-
23 enue Code of 1986 is amended by striking subsection (i).

24     (b) CONFORMING AMENDMENTS.—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002499

G:\CMTE\AP\16\FY20\_D\HEROES.XML

195

1        (1) Section 32(j)(1) of such Code is amended
2    by striking "subsections (b)(2) and (i)(1)" and in-
3    serting "subsection (b)(2)".

4        (2) Section 32(j)(1)(B)(i) of such Code is
5    amended by striking "subsections (b)(2)(A) and
6    (i)(1)" and inserting "subsection (b)(2)(A)".

7        (3) Section 32(j)(2) of such Code is amended—
8            (A) by striking subparagraph (B), and
9            (B) by striking "ROUNDING.—" and all
10           that follows through "If any dollar amount"
11           and inserting the following: "ROUNDING.—If
12           any dollar amount".

13   (c) EFFECTIVE DATE.—The amendments made by
14   this section shall apply to taxable years beginning after
15   the date of the enactment of this Act.

16   **SEC. 20125. APPLICATION OF EARNED INCOME TAX CREDIT**
17                **IN POSSESSIONS OF THE UNITED STATES.**

18   (a) IN GENERAL.—Chapter 77 of the Internal Rev-
19   enue Code of 1986 is amended by adding at the end the
20   following new section:

21   **"SEC. 7530. APPLICATION OF EARNED INCOME TAX CREDIT**
22                **TO POSSESSIONS OF THE UNITED STATES.**

23   "(a) PUERTO RICO.—

24        "(1) IN GENERAL.—With respect to calendar
25    year 2021 and each calendar year thereafter, the

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002500

196

1     Secretary shall, except as otherwise provided in this

2     subsection, make payments to Puerto Rico equal

3     to—

4           ''(A) the specified matching amount for

5     such calendar year, plus

6           ''(B) in the case of calendar years 2021

7     through 2025, the lesser of—

8              ''(i) the expenditures made by Puerto

9     Rico during such calendar year for edu-

10     cation efforts with respect to individual

11     taxpayers and tax return preparers relat-

12     ing to the earned income tax credit, or

13              ''(ii) $1,000,000.

14     ''(2) REQUIREMENT TO REFORM EARNED IN-

15     COME TAX CREDIT.—The Secretary shall not make

16     any payments under paragraph (1) with respect to

17     any calendar year unless Puerto Rico has in effect

18     an earned income tax credit for taxable years begin-

19     ning in or with such calendar year which (relative to

20     the earned income tax credit which was in effect for

21     taxable years beginning in or with calendar year

22     2019) increases the percentage of earned income

23     which is allowed as a credit for each group of indi-

24     viduals with respect to which such percentage is sep-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002501

197

1 arately stated or determined in a manner designed

2 to substantially increase workforce participation.

3   ''(3) SPECIFIED MATCHING AMOUNT.—For pur-

4 poses of this subsection—

5    ''(A) IN GENERAL.—The term 'specified

6   matching amount' means, with respect to any

7   calendar year, the lesser of—

8     ''(i) the excess (if any) of—

9      ''(I) the cost to Puerto Rico of

10     the earned income tax credit for tax-

11     able years beginning in or with such

12     calendar year, over

13      ''(II) the base amount for such

14     calendar year, or

15     ''(ii) the product of 3, multiplied by

16    the base amount for such calendar year.

17   ''(B) BASE AMOUNT.—

18     ''(i) BASE AMOUNT FOR 2020.—In the

19    case of calendar year 2020, the term 'base

20    amount' means the greater of—

21     ''(I) the cost to Puerto Rico of

22     the earned income tax credit for tax-

23     able years beginning in or with cal-

24     endar year 2019 (rounded to the

25     nearest multiple of $1,000,000), or

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002502

G:\CMTE\AP\16\FY20\_D\HEROES.XML

198

1          "(II) $200,000,000.

2          "(ii) INFLATION ADJUSTMENT.—In

3      the case of any calendar year after 2021,

4      the term 'base amount' means the dollar

5      amount determined under clause (i) in-

6      creased by an amount equal to—

7              "(I) such dollar amount, multi-

8          plied by—

9              "(II) the cost-of-living adjust-

10         ment determined under section 1(f)(3)

11         for such calendar year, determined by

12         substituting 'calendar year 2020' for

13         'calendar year 2016' in subparagraph

14         (A)(ii) thereof.

15     Any amount determined under this clause

16     shall be rounded to the nearest multiple of

17     $1,000,000.

18     "(4) RULES RELATED TO PAYMENTS AND RE-

19 PORTS.—

20         "(A) TIMING OF PAYMENTS.—The Sec-

21     retary shall make payments under paragraph

22     (1) for any calendar year—

23             "(i) after receipt of the report de-

24         scribed in subparagraph (B) for such cal-

25         endar year, and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002503

199

1                 ''(ii) except as provided in clause (i),

2                 within a reasonable period of time before

3                 the due date for individual income tax re-

4                 turns (as determined under the laws of

5                 Puerto Rico) for taxable years which began

6                 on the first day of such calendar year.

7         ''(B) ANNUAL REPORTS.—With respect to

8 calendar year 2021 and each calendar year

9 thereafter, Puerto Rico shall provide to the Sec-

10 retary a report which shall include—

11                 ''(i) an estimate of the costs described

12                 in paragraphs (1)(B)(i) and (3)(A)(i)(I)

13                 with respect to such calendar year, and

14                 ''(ii) a statement of such costs with

15                 respect to the preceding calendar year.

16         ''(C) ADJUSTMENTS.—

17                 ''(i) IN GENERAL.—In the event that

18                 any estimate of an amount is more or less

19                 than the actual amount as later deter-

20                 mined and any payment under paragraph

21                 (1) was determined on the basis of such

22                 estimate, proper payment shall be made

23                 by, or to, the Secretary (as the case may

24                 be) as soon as practicable after the deter-

25                 mination that such estimate was inac-

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002504

200

1    curate. Proper adjustment shall be made in

2    the amount of any subsequent payments

3    made under paragraph (1) to the extent

4    that proper payment is not made under the

5    preceding sentence before such subsequent

6    payments.

7        "(ii) ADDITIONAL REPORTS.—The

8    Secretary may require such additional peri-

9    odic reports of the information described in

10   subparagraph (B) as the Secretary deter-

11   mines appropriate to facilitate timely ad-

12   justments under clause (i).

13   "(D) DETERMINATION OF COST OF

14   EARNED INCOME TAX CREDIT.—For purposes

15   of this subsection, the cost to Puerto Rico of

16   the earned income tax credit shall be deter-

17   mined by the Secretary on the basis of the laws

18   of Puerto Rico and shall include reductions in

19   revenues received by Puerto Rico by reason of

20   such credit and refunds attributable to such

21   credit, but shall not include any administrative

22   costs with respect to such credit.

23   "(E) PREVENTION OF MANIPULATION OF

24   BASE AMOUNT.—No payments shall be made

25   under paragraph (1) if the earned income tax

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002505

201

1    credit as in effect in Puerto Rico for taxable

2    years beginning in or with calendar year 2019

3    is modified after the date of the enactment of

4    this subsection.

5    "(b) POSSESSIONS WITH MIRROR CODE TAX SYS-

6 TEMS.—

7    "(1) IN GENERAL.—With respect to calendar

8    year 2020 and each calendar year thereafter, the

9    Secretary shall, except as otherwise provided in this

10    subsection, make payments to the Virgin Islands,

11    Guam, and the Commonwealth of the Northern Mar-

12    iana Islands equal to—

13    "(A) 75 percent of the cost to such posses-

14    sion of the earned income tax credit for taxable

15    years beginning in or with such calendar year,

16    plus

17    "(B) in the case of calendar years 2020

18    through 2024, the lesser of—

19    "(i) the expenditures made by such

20    possession during such calendar year for

21    education efforts with respect to individual

22    taxpayers and tax return preparers relat-

23    ing to such earned income tax credit, or

24    "(ii) $50,000.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002506

G:\CMTE\AP\16\FY20\_D\HEROES.XML

202

1              "(2) Application of certain rules.—Rules

2     similar to the rules of subparagraphs (A), (B), (C),

3     and (D) of subsection (a)(4) shall apply for purposes

4     of this subsection.

5     "(c) American Samoa.—

6              "(1) In general.—With respect to calendar

7     year 2020 and each calendar year thereafter, the

8     Secretary shall, except as otherwise provided in this

9     subsection, make payments to American Samoa

10     equal to—

11                  "(A) the lesser of—

12                     "(i) 75 percent of the cost to Amer-

13     ican Samoa of the earned income tax cred-

14     it for taxable years beginning in or with

15     such calendar year, or

16                     "(ii) $12,000,000, plus

17                  "(B) in the case of calendar years 2020

18     through 2024, the lesser of—

19                     "(i) the expenditures made by Amer-

20     ican Samoa during such calendar year for

21     education efforts with respect to individual

22     taxpayers and tax return preparers relat-

23     ing to such earned income tax credit, or

24                     "(ii) $50,000.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002507

G:\CMTE\AP\16\FY20\_D\HEROES.XML

203

1       "(2) REQUIREMENT TO ENACT AND MAINTAIN

2 AN EARNED INCOME TAX CREDIT.—The Secretary

3 shall not make any payments under paragraph (1)

4 with respect to any calendar year unless American

5 Samoa has in effect an earned income tax credit for

6 taxable years beginning in or with such calendar

7 year which allows a refundable tax credit to individ-

8 uals on the basis of the taxpayer's earned income

9 which is designed to substantially increase workforce

10 participation.

11       "(3) INFLATION ADJUSTMENT.—In the case of

12 any calendar year after 2020, the $12,000,000

13 amount in paragraph (1)(A)(ii) shall be increased by

14 an amount equal to—

15       "(A) such dollar amount, multiplied by—

16       "(B) the cost-of-living adjustment deter-

17       mined under section 1(f)(3) for such calendar

18       year, determined by substituting 'calendar year

19       2019' for 'calendar year 2016' in subparagraph

20       (A)(ii) thereof.

21 Any increase determined under this clause shall be

22 rounded to the nearest multiple of $100,000.

23       "(4) APPLICATION OF CERTAIN RULES.—Rules

24 similar to the rules of subparagraphs (A), (B), (C),

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002508

204

1    and (D) of subsection (a)(4) shall apply for purposes

2    of this subsection.

3    "(d) TREATMENT OF PAYMENTS.—For purposes of

4    section 1324 of title 31, United States Code, the payments

5    under this section shall be treated in the same manner

6    as a refund due from a credit provision referred to in sub-

7    section (b)(2) of such section.".

8    (b) CLERICAL AMENDMENT.—The table of sections

9    for chapter 77 of the Internal Revenue Code of 1986 is

10    amended by adding at the end the following new item:

> "Sec. 7529. Application of earned income tax credit to possessions of the United States.".

11 **SEC. 20126. TEMPORARY SPECIAL RULE FOR DETERMINING**

12         **EARNED INCOME FOR PURPOSES OF EARNED**

13         **INCOME TAX CREDIT.**

14    (a) IN GENERAL.—If the earned income of the tax-

15    payer for the taxpayer's first taxable year beginning in

16    2020 is less than the earned income of the taxpayer for

17    the preceding taxable year, the credit allowed under sec-

18    tion 32 of the Internal Revenue Code of 1986 may, at

19    the election of the taxpayer, be determined by sub-

20    stituting—

21        (1) such earned income for the preceding tax-

22        able year, for

23        (2) such earned income for the taxpayer's first

24        taxable year beginning in 2020.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002509

205

1    (b) EARNED INCOME.—

2        (1) IN GENERAL.—For purposes of this section,

3    the term ''earned income'' has the meaning given

4    such term under section 32(c) of the Internal Rev-

5    enue Code of 1986.

6        (2) APPLICATION TO JOINT RETURNS.—For

7    purposes of subsection (a), in the case of a joint re-

8    turn, the earned income of the taxpayer for the pre-

9    ceding taxable year shall be the sum of the earned

10   income of each spouse for such preceding taxable

11   year.

12   (c) SPECIAL RULES.—

13       (1) ERRORS TREATED AS MATHEMATICAL

14   ERROR.—For purposes of section 6213 of the Inter-

15   nal Revenue Code of 1986, an incorrect use on a re-

16   turn of earned income pursuant to subsection (a)

17   shall be treated as a mathematical or clerical error.

18       (2) NO EFFECT ON DETERMINATION OF GROSS

19   INCOME, ETC.—Except as otherwise provided in this

20   subsection, the Internal Revenue Code of 1986 shall

21   be applied without regard to any substitution under

22   subsection (a).

23   (d) TREATMENT OF CERTAIN POSSESSIONS.—

24       (1) PAYMENTS TO POSSESSIONS WITH MIRROR

25   CODE TAX SYSTEMS.—The Secretary of the Treas-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002510

206

1 ury shall pay to each possession of the United States
2 which has a mirror code tax system amounts equal
3 to the loss (if any) to that possession by reason of
4 the application of the provisions of this section
5 (other than this subsection) with respect to section
6 32 of the Internal Revenue Code of 1986. Such
7 amounts shall be determined by the Secretary of the
8 Treasury based on information provided by the gov-
9 ernment of the respective possession.

10  (2) PAYMENTS TO OTHER POSSESSIONS.—The
11 Secretary of the Treasury shall pay to each posses-
12 sion of the United States which does not have a mir-
13 ror code tax system amounts estimated by the Sec-
14 retary of the Treasury as being equal to the aggre-
15 gate benefits (if any) that would have been provided
16 to residents of such possession by reason of the pro-
17 visions of this section (other than this subsection)
18 with respect to section 32 of the Internal Revenue
19 Code of 1986 if a mirror code tax system had been
20 in effect in such possession. The preceding sentence
21 shall not apply unless the respective possession has
22 a plan, which has been approved by the Secretary of
23 the Treasury, under which such possession will
24 promptly distribute such payments to its residents.

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002511

1         (3) MIRROR CODE TAX SYSTEM.—For purposes

2     of this section, the term "mirror code tax system"

3     means, with respect to any possession of the United

4     States, the income tax system of such possession if

5     the income tax liability of the residents of such pos-

6     session under such system is determined by ref-

7     erence to the income tax laws of the United States

8     as if such possession were the United States.

9         (4) TREATMENT OF PAYMENTS.—For purposes

10    of section 1324 of title 31, United States Code, the

11    payments under this section shall be treated in the

12    same manner as a refund due from a credit provi-

13    sion referred to in subsection (b)(2) of such section.

14                   Subtitle D—Child Tax Credit

15    **SEC. 20131. CHILD TAX CREDIT IMPROVEMENTS FOR 2020.**

16    (a) IN GENERAL.—Section 24 of the Internal Rev-

17    enue Code of 1986 is amended by adding at the end the

18    following new subsection:

19    "(i) SPECIAL RULES FOR 2020.—In the case of any

20    taxable year beginning in 2020—

21         "(1) REFUNDABLE CREDIT.—Subsection (h)(5)

22    shall not apply and the increase determined under

23    the first sentence of subsection (d)(1) shall be the

24    amount determined under subsection (d)(1)(A) (de-

25    termined without regard to subsection (h)(4)).

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002512

208

1    ''(2) CREDIT AMOUNT.—Subsection (h)(2) shall

2    not apply and subsection (a) shall be applied by sub-

3    stituting '$3,000 ($3,600 in the case of a qualifying

4    child who has not attained age 6 as of the close of

5    the calendar year in which the taxable year of the

6    taxpayer begins)' for '$1,000'.

7    ''(3) 17-YEAR-OLDS ELIGIBLE FOR TREATMENT

8    AS QUALIFYING CHILDREN.—This section shall be

9    applied—

10    ''(A) by substituting 'age 18' for 'age 17'

11    in subsection (c)(1), and

12    ''(B) by substituting 'described in sub-

13    section (c) (determined after the application of

14    subsection (i)(3)(A))' for 'described in sub-

15    section (c)' in subsection (h)(4)(A).''.

16    (b) ADVANCE PAYMENT OF CREDIT.—

17    (1) IN GENERAL.—Chapter 77 of such Code is

18    amended by inserting after section 7527 the fol-

19    lowing new section:

20    **''SEC. 7527A. ADVANCE PAYMENT OF CHILD TAX CREDIT.**

21    ''(a) IN GENERAL.—As soon as practicable after the

22    date of the enactment of this Act, the Secretary shall es-

23    tablish a program for making advance payments of the

24    credit allowed under subsection (a) of section 24 on a

25    monthly basis (determined without regard to subsection

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002513

G:\CMTE\AP\16\FY20\_D\HEROES.XML

209

1 (i)(4) of such section), or as frequently as the Secretary

2 determines to be administratively feasible, to taxpayers de-

3 termined to be eligible for advance payment of such credit.

4     ''(b) LIMITATION.—

5         ''(1) IN GENERAL.—The Secretary may make

6     payments under subsection (a) only to the extent

7     that the total amount of such payments made to any

8     taxpayer during the taxable year does not exceed an

9     amount equal to the excess, if any, of—

10            ''(A) subject to paragraph (2), the amount

11        determined under subsection (a) of section 24

12        with respect to such taxpayer (determined with-

13        out regard to subsection (i)(4) of such section)

14        for such taxable year, over

15            ''(B) the estimated tax imposed by subtitle

16        A, as reduced by the credits allowable under

17        subparts A and C (other than section 24) of

18        such part IV, with respect to such taxpayer for

19        such taxable year, as determined in such man-

20        ner as the Secretary deems appropriate.

21        ''(2) APPLICATION OF THRESHOLD AMOUNT

22    LIMITATION.—The program described in subsection

23    (a) shall make reasonable efforts to apply the limita-

24    tion of section 24(b) with respect to payments made

25    under such program.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002514

G:\CMTE\AP\16\FY20\_D\HEROES.XML

210

1    "(c) APPLICATION.—The advance payments de-
2  scribed in this section shall only be made with respect to
3  credits allowed under section 24 for taxable years begin-
4  ning during 2020.".

5       (2) RECONCILIATION OF CREDIT AND ADVANCE
6     CREDIT.—Section 24(i) of such Code, as amended by
7     subsection (a), is amended by adding at the end the
8     following new paragraph:

9       "(4) RECONCILIATION OF CREDIT AND AD-
10    VANCE CREDIT.—

11          "(A) IN GENERAL.—The amount of the
12        credit allowed under this section for any taxable
13        year shall be reduced (but not below zero) by
14        the aggregate amount of any advance payments
15        of such credit under section 7527A for such
16        taxable year.

17          "(B) EXCESS ADVANCE PAYMENTS.—If the
18        aggregate amount of advance payments under
19        section 7527A for the taxable year exceeds the
20        amount of the credit allowed under this section
21        for such taxable year (determined without re-
22        gard to subparagraph (A)), the tax imposed by
23        this chapter for such taxable year shall be in-
24        creased by the amount of such excess.".

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002515

211

1    (3) CLERICAL AMEMDMENT.—The table of sec-
2   tions for chapter 77 of such Code is amended by in-
3   serting after the item relating to section 7527 the
4   following new item:

"Sec. 7527A. Advance payment of child tax credit.".

5   (c) EFFECTIVE DATE.—The amendments made by
6 this section shall apply to taxable years beginning after
7 December 31, 2019.

**8   SEC. 20132. APPLICATION OF CHILD TAX CREDIT IN POS-**
**9        SESSIONS.**

10   (a) IN GENERAL.—Section 24 of the Internal Rev-
11 enue Code of 1986 is amended by adding at the end the
12 following new subsection:

13   "(i) APPLICATION OF CREDIT IN POSSESSIONS.—

14      "(1) MIRROR CODE POSSESSIONS.—

15         "(A) IN GENERAL.—The Secretary shall
16         pay to each possession of the United States
17         with a mirror code tax system amounts equal to
18         the loss to that possession by reason of the ap-
19         plication of this section (determined without re-
20         gard to this subsection) with respect to taxable
21         years beginning after 2019. Such amounts shall
22         be determined by the Secretary based on infor-
23         mation provided by the government of the re-
24         spective possession.

DOC_0002516

212

1          "(B) COORDINATION WITH CREDIT AL-

2      LOWED AGAINST UNITED STATES INCOME

3      TAXES.—No credit shall be allowed under this

4      section for any taxable year to any individual to

5      whom a credit is allowable against taxes im-

6      posed by a possession with a mirror code tax

7      system by reason of the application of this sec-

8      tion in such possession for such taxable year.

9          "(C) MIRROR CODE TAX SYSTEM.—For

10     purposes of this paragraph, the term 'mirror

11     code tax system' means, with respect to any

12     possession of the United States, the income tax

13     system of such possession if the income tax li-

14     ability of the residents of such possession under

15     such system is determined by reference to the

16     income tax laws of the United States as if such

17     possession were the United States.

18        "(2) PUERTO RICO.—In the case of any bona

19     fide resident of Puerto Rico (within the meaning of

20     section 937(a))—

21            "(A) the credit determined under this sec-

22        tion shall be allowable to such resident,

23            "(B) in the case of any taxable year begin-

24        ning during 2020, the increase determined

25        under the first sentence of subsection (d)(1)

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002517

G:\CMTE\AP\16\FY20\_D\HEROES.XML

213

1 shall be the amount determined under sub-

2 section (d)(1)(A) (determined without regard to

3 subsection (h)(4)),

4  "(C) in the case of any taxable year begin-

5 ning after December 31, 2020, and before Jan-

6 uary 1, 2026, the increase determined under

7 the first sentence of subsection (d)(1) shall be

8 the lesser of—

9  "(i) the amount determined under

10 subsection (d)(1)(A) (determined without

11 regard to subsection (h)(4)), or

12  "(ii) the dollar amount in effect under

13 subsection (h)(5), and

14  "(D) in the case of any taxable year after

15 December 31, 2025, the increase determined

16 under the first sentence of subsection (d)(1)

17 shall be the amount determined under sub-

18 section (d)(1)(A).

19 "(3) AMERICAN SAMOA.—

20  "(A) IN GENERAL.—The Secretary shall

21 pay to American Samoa amounts estimated by

22 the Secretary as being equal to the aggregate

23 benefits that would have been provided to resi-

24 dents of American Samoa by reason of the ap-

25 plication of this section for taxable years begin-

DOC_0002518

214

1    ning after 2019 if the provisions of this section

2    had been in effect in American Samoa.

3        ''(B) DISTRIBUTION REQUIREMENT.—Sub-

4    paragraph (A) shall not apply unless American

5    Samoa has a plan, which has been approved by

6    the Secretary, under which American Samoa

7    will promptly distribute such payments to the

8    residents of American Samoa in a manner

9    which replicates to the greatest degree prac-

10   ticable the benefits that would have been so

11   provided to each such resident.

12       ''(C)   COORDINATION   WITH   CREDIT   AL-

13   LOWED   AGAINST   UNITED   STATES   INCOME

14   TAXES.—

15           ''(i) IN GENERAL.—In the case of a

16       taxable year with respect to which a plan

17       is approved under subparagraph (B), this

18       section (other than this subsection) shall

19       not apply to any individual eligible for a

20       distribution under such plan.

21           ''(ii) APPLICATION OF SECTION IN

22       EVENT   OF   ABSENCE   OF   APPROVED

23       PLAN.—In the case of a taxable year with

24       respect to which a plan is not approved

25       under subparagraph (B), rules similar to

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002519

215

1      the rules of paragraph (2) shall apply with

2      respect to bona fide residents of American

3      Samoa (within the meaning of section

4      937(a)).

5      "(4) TREATMENT OF PAYMENTS.—The pay-

6      ments made under this subsection shall be treated in

7      the same manner for purposes of section 1324(b)(2)

8      of title 31, United States Code, as refunds due from

9      the credit allowed under this section.".

10    (b) EFFECTIVE DATE.—The amendment made by

11  this section shall apply to taxable years beginning after

12  December 31, 2019.

13      Subtitle E—Dependent Care Assistance

14  **SEC. 20141. REFUNDABILITY AND ENHANCEMENT OF CHILD**

15        **AND DEPENDENT CARE TAX CREDIT.**

16    (a) IN GENERAL.—Section 21 of the Internal Rev-

17  enue Code of 1986 is amended by adding at the end the

18  following new subsection:

19    "(g) SPECIAL RULES FOR 2020.—In the case of any

20  taxable year beginning after December 31, 2019, and be-

21  fore January 1, 2021—

22      "(1) CREDIT MADE REFUNDABLE.—In the case

23      of an individual other than a nonresident alien, the

24      credit allowed under subsection (a) shall be treated

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002520

216

1 as a credit allowed under subpart C (and not allowed

2 under this subpart).

3  "(2) INCREASE IN APPLICABLE PERCENTAGE.—

4 Subsection (a)(2) shall be applied—

5   "(A) by substituting '50 percent' for '35

6  percent ', and

7   "(B) by substituting '$120,000' for

8  '$15,000'.

9  "(3) INCREASE IN DOLLAR LIMIT ON AMOUNT

10 CREDITABLE.—Subsection (c) shall be applied—

11   "(A) by substituting '$6,000' for '$3,000'

12  in paragraph (1) thereof, and

13   "(B) by substituting 'twice the amount in

14  effect under paragraph (1)' for '$6,000' in

15  paragraph (2) thereof.".

16 (b) CONFORMING AMENDMENT.—Section 1324(b)(2)

17 of title 31, United States Code, is amended by inserting

18 "21 (by reason of subsection (g) thereof)," before "25A".

19 (c) COORDINATION WITH POSSESSION TAX SYS-

20 TEMS.—Section 21(g)(1) of the Internal Revenue Code of

21 1986 (as added by this section) shall not apply to any per-

22 son—

23  (1) to whom a credit is allowed against taxes

24  imposed by a possession with a mirror code tax sys-

25  tem by reason of the application of section 21 of

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002521

217

1 such Code in such possession for such taxable year,

2 or

3     (2) to whom a credit would be allowed against

4 taxes imposed by a possession which does not have

5 a mirror code tax system if the provisions of section

6 21 of such Code had been in effect in such posses-

7 sion for such taxable year.

8     (d) EFFECTIVE DATE.—The amendments made by

9 this section shall apply to taxable years beginning after

10 December 31, 2019.

**11 SEC. 20142. INCREASE IN EXCLUSION FOR EMPLOYER-PRO-**

**12               VIDED DEPENDENT CARE ASSISTANCE.**

13     (a) IN GENERAL.—Section 129(a)(2) of the Internal

14 Revenue Code of 1986 is amended by adding at the end

15 the following new subparagraph:

16         ''(D) SPECIAL RULE FOR 2020.—In the

17         case of any taxable year beginning during 2020,

18         subparagraph (A) shall be applied be sub-

19         stituting '$10,500 (half such dollar amount' for

20         '$5,000 ($2,500'.''.

21     (b) EFFECTIVE DATE.—The amendment made by

22 this section shall apply to taxable years beginning after

23 December 31, 2019.

24     (c) RETROACTIVE PLAN AMENDMENTS.—A plan or

25 other arrangement that otherwise satisfies all applicable

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002522

218

1 requirements of sections 106, 125, and 129 of the Internal
2 Revenue Code of 1986 (including any rules or regulations
3 thereunder) shall not fail to be treated as a cafeteria plan
4 or dependent care flexible spending arrangement merely
5 because such plan or arrangement is amended pursuant
6 to a provision under this section and such amendment is
7 retroactive, if—

8 　　　(1) such amendment is adopted no later than
9 　　the last day of the plan year in which the amend-
10 　　ment is effective, and

11 　　　(2) the plan or arrangement is operated con-
12 　　sistent with the terms of such amendment during
13 　　the period beginning on the effective date of the
14 　　amendment and ending on the date the amendment
15 　　is adopted.

16 Subtitle F—Flexibility for Certain Employee Benefits

17 **SEC. 20151. INCREASE IN CARRYOVER FOR HEALTH FLEXI-**
18 　　　　　　**BLE SPENDING ARRANGEMENTS.**

19 　　(a) IN GENERAL.—A plan or other arrangement that
20 otherwise satisfies all of the applicable requirements of
21 sections 106 and 125 of the Internal Revenue Code of
22 1986 (including any rules or regulations thereunder) shall
23 not fail to be treated as a cafeteria plan or health flexible
24 spending arrangement merely because such plan or ar-
25 rangement permits participants to carry over an amount

219

1 not in excess of $2,750 of unused benefits or contributions

2 remaining in a health flexible spending arrangement from

3 the plan year ending in 2020 to the plan year ending in

4 2021.

5     (b) DEFINITIONS.—Any term used in this section

6 which is also used in section 106 or 125 of the Internal

7 Revenue Code of 1986 or the rules or regulations there-

8 under shall have the same meaning as when used in such

9 section or rules or regulations.

**10 SEC. 20152. CARRYOVER FOR DEPENDENT CARE FLEXIBLE**

**11            SPENDING ARRANGEMENTS.**

12     (a) IN GENERAL.—A plan or other arrangement that

13 otherwise satisfies all applicable requirements of sections

14 106, 125, and 129 of the Internal Revenue Code of 1986

15 (including any rules or regulations thereunder) shall not

16 fail to be treated as a cafeteria plan or dependent care

17 flexible spending arrangement merely because such plan

18 or arrangement permits participants to carry over (under

19 rules similar to the rules applicable to health flexible

20 spending arrangements) an amount, not in excess of the

21 amount in effect under section 129(a)(2)(A) of such Code,

22 of unused benefits or contributions remaining in a depend-

23 ent care flexible spending arrangement from the plan year

24 ending in 2020 to the plan year ending in 2021.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002524

220

1    (b) DEFINITIONS.—Any term used in this section
2  which is also used in section 106, 125, or 129 of the Inter-
3  nal Revenue Code of 1986 or the rules or regulations
4  thereunder shall have the same meaning as when used in
5  such section or rules or regulations.

## SEC. 20153. CARRYOVER OF PAID TIME OFF.

7    (a) IN GENERAL.—A plan that otherwise satisfies all
8  applicable requirements of section 125 of the Internal Rev-
9  enue Code of 1986 (including any rules or regulations
10 thereunder) shall not fail to be treated as a cafeteria plan
11 merely because such plan permits participants to carry
12 over (under rules similar to the rules applicable to health
13 flexible spending arrangements) any amount of paid time
14 off (without limitation) from the plan year ending in 2020
15 to the plan year ending in 2021.

16   (b) DEFINITIONS.—Any term used in this section
17 which is also used in section 125 of the Internal Revenue
18 Code of 1986 or the rules or regulations thereunder shall
19 have the same meaning as when used in such section or
20 rules or regulations.

## SEC. 20154. CHANGE IN ELECTION AMOUNT.

22   (a) IN GENERAL.—A plan or other arrangement that
23 otherwise satisfies all applicable requirements of sections
24 106 and 125 of the Internal Revenue Code of 1986 (in-
25 cluding any rules or regulations thereunder) shall not fail

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002525

221

1 to be treated as a cafeteria plan or health flexible spending
2 arrangement merely because such plan or arrangement al-
3 lows an employee to make, with respect to the remaining
4 portion of a period of coverage within the applicable pe-
5 riod—

6     (1) an election modifying the amount of such
7     employee's contributions to such a health flexible
8     spending arrangement (without regard to any
9     change in status), or

10     (2) an election modifying the amount of such
11     employee's elective paid time off.

12 Any election as modified under paragraph (1) shall not
13 exceed the limitation applicable under section 125(i) for
14 the taxable year.

15     (b) ONE-TIME APPLICATION.—Paragraphs (1) and
16 (2) of subsection (a) shall each apply to only 1 election
17 change described in such paragraph with respect to an em-
18 ployee (in addition to any other election changes during
19 a period of coverage permitted under the plan or arrange-
20 ment without regard to this section).

21     (c) APPLICABLE PERIOD.—For purposes of this sec-
22 tion, the term "applicable period" means the period begin-
23 ning on the date of the enactment of this Act and ending
24 on December 31, 2020.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002526

222

1     (d) DEFINITIONS.—Any term used in this section

2 which is also used in section 106 or 125 of the Internal

3 Revenue Code of 1986 or the rules or regulations there-

4 under shall have the same meaning as when used in such

5 section or rules or regulations.

## SEC. 20155. EXTENSION OF GRACE PERIODS, ETC.

7     (a) IN GENERAL.—A plan or other arrangement that

8 otherwise satisfies all applicable requirements of sections

9 106, 125, or 129 of the Internal Revenue Code (including

10 any rules or regulations thereunder) shall not fail to be

11 treated as a cafeteria plan, health flexible spending ar-

12 rangement, or dependent care flexible spending arrange-

13 ment (whichever is applicable) merely because such plan

14 or arrangement extends the grace period for the plan year

15 ending in 2020 to 12 months after the end of such plan

16 year, with respect to unused benefits or contributions re-

17 maining in a health flexible spending arrangement or a

18 dependent care flexible spending arrangement.

19     (b) POST-TERMINATION REIMBURSEMENTS FROM

20 HEALTH FSAS.—A plan or other arrangement that other-

21 wise satisfies all applicable requirements of sections 106

22 and 125 of the Internal Revenue Code of 1986 (including

23 any rules or regulations thereunder) shall not fail to be

24 treated as a cafeteria plan or health flexible spending ar-

25 rangement merely because such plan or arrangement al-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002527

223

1  lows (under rules similar to the rules applicable to depend-

2  ent care flexible spending arrangements) an employee who

3  ceases participation in the plan during calendar year 2020

4  to continue to receive reimbursements from unused bene-

5  fits or contributions through the end of the plan year (in-

6  cluding any grace period, taking into account any modi-

7  fication of a grace period permitted under subsection (a)).

8      (c) DEFINITIONS.—Any term used in this section

9  which is also used in section 106, 125, or 129 of the Inter-

10  nal Revenue Code of 1986 or the rules or regulations

11  thereunder shall have the same meaning as when used in

12  such section or rules or regulations.

**13  SEC. 20156. PLAN AMENDMENTS.**

14      A plan or other arrangement that otherwise satisfies

15  all applicable requirements of sections 106, 125, and 129

16  of the Internal Revenue Code of 1986 (including any rules

17  or regulations thereunder) shall not fail to be treated as

18  a cafeteria plan, health flexible spending arrangement, or

19  dependent care flexible spending arrangement merely be-

20  cause such plan or arrangement is amended pursuant to

21  a provision under this subtitle and such amendment is ret-

22  roactive, if—

23          (1) such amendment is adopted no later than

24      the last day of the plan year in which the amend-

25      ment is effective, and

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002528

224

1  (2) the plan or arrangement is operated con-
2  sistent with the terms of such amendment during
3  the period beginning on the effective date of the
4  amendment and ending on the date the amendment
5  is adopted.

6  Subtitle G—Deduction of State and Local Taxes

7  **SEC. 20161. ELIMINATION FOR 2020 AND 2021 OF LIMITA-**
8  **TION ON DEDUCTION OF STATE AND LOCAL**
9  **TAXES.**

10  (a) IN GENERAL.—Section 164(b)(6)(B) of the Inter-
11  nal Revenue Code of 1986 is amended by inserting "in
12  the case of a taxable year beginning before January 1,
13  2020, or after December 31, 2021," before "the aggregate
14  amount of taxes".

15  (b) CONFORMING AMENDMENTS.—Section 164(b)(6)
16  of the Internal Revenue Code of 1986 is amended—

17  (1) by striking "For purposes of subparagraph
18  (B)" and inserting "For purposes of this section",

19  (2) by striking "January 1, 2018" and insert-
20  ing "January 1, 2022",

21  (3) by striking "December 31, 2017, shall" and
22  inserting "December 31, 2021, shall", and

23  (4) by adding at the end the following: "For
24  purposes of this section, in the case of State or local
25  taxes with respect to any real or personal property

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002529

225

1    paid during a taxable year beginning in 2020 or

2    2021, the Secretary shall prescribe rules which treat

3    all or a portion of such taxes as paid in a taxable

4    year or years other than the taxable year in which

5    actually paid as necessary or appropriate to prevent

6    the avoidance of the limitations of this subsection.''.

7    (c) EFFECTIVE DATE.—The amendments made by

8 this section shall apply to taxes paid or accrued in taxable

9 years beginning after December 31, 2019.

10  TITLE II—ADDITIONAL RELIEF FOR WORKERS

11            Subtitle A—Additional Relief

12  **SEC. 20201. INCREASE IN ABOVE-THE-LINE DEDUCTION FOR**

13              **CERTAIN EXPENSES OF ELEMENTARY AND**

14              **SECONDARY SCHOOL TEACHERS.**

15    (a) INCREASE.—Section 62(a)(2)(D) of the Internal

16 Revenue Code of 1986 is amended by striking ''$250'' and

17 inserting ''$500''.

18    (b) CONFORMING AMENDMENTS.—Section 62(d)(3)

19 of the Internal Revenue Code of 1986 is amended—

20        (1) by striking ''2015'' and inserting ''2020'',

21        (2) by striking ''$250'' and inserting ''$500'',

22    and

23        (3) in subparagraph (B), by striking ''2014''

24    and inserting ''2019''.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002530

226

1  (c) EFFECTIVE DATE.—The amendments made by
2  this section shall apply to taxable years beginning after
3  December 31, 2019.

**SEC. 20202. ABOVE-THE-LINE DEDUCTION ALLOWED FOR**
**CERTAIN EXPENSES OF FIRST RESPONDERS.**

6  (a) IN GENERAL.—Section 62(a)(2) of the Internal
7  Revenue Code of 1986 is amended by adding at the end
8  the following new subparagraph:

9  ''(F) CERTAIN EXPENSES OF FIRST RE-
10  SPONDERS.—The deductions allowed by section
11  162 which consist of expenses, not in excess of
12  $500, paid or incurred by a first responder—

13  ''(i) as tuition or fees for the partici-
14  pation of the first responder in profes-
15  sional development courses related to serv-
16  ice as a first responder, or

17  ''(ii) for uniforms used by the first re-
18  sponder in service as a first responder.''.

19  (b) FIRST RESPONDER DEFINED.—Section 62(d) of
20  the Internal Revenue Code of 1986 is amended by adding
21  at the end the following new paragraph:

22  ''(4) FIRST RESPONDER.—For purposes of sub-
23  section (a)(2)(F), the term 'first responder' means,
24  with respect to any taxable year, any employee who
25  provides at least 1000 hours of service during such

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002531

227

1        taxable year as a law enforcement officer, firefighter,

2        paramedic, or emergency medical technician.''.

3        (c) INFLATION ADJUSTMENT.—Section 62(d)(3) of

4 the Internal Revenue Code of 1986, as amended by the

5 preceding provisions of this Act, is further amended by

6 striking ''the $500 amount in subsection (a)(2)(D)'' and

7 inserting ''the $500 amount in each of subparagraphs (D)

8 and (F) of subsection (a)(2)''.

9        (d) EFFECTIVE DATE.—The amendments made by

10 this section shall apply to taxable years beginning after

11 December 31, 2019.

12 **SEC. 20203. TEMPORARY ABOVE-THE-LINE DEDUCTION FOR**

13                 **SUPPLIES AND EQUIPMENT OF FIRST RE-**

14                 **SPONDERS AND COVID–19 FRONT LINE EM-**

15                 **PLOYEES.**

16        (a) IN GENERAL.—Section 62(d) of the Internal Rev-

17 enue Code of 1986, as amended by the preceding provi-

18 sions of this Act, is amended by adding at the end of the

19 following new paragraph:

20        ''(5) TEMPORARY RULE FOR FIRST RESPOND-

21 ERS AND COVID–19 FRONT LINE EMPLOYEES.—

22        ''(A) IN GENERAL.—In the case of any

23        taxable year beginning in 2020—

g:\VHLC\051220\051220.072.xml     (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002532

228

1          "(i) subsection (a)(2)(F)(ii) shall be

2     applied by substituting 'uniforms, supplies,

3     or equipment' for 'uniforms', and

4          "(ii) for purposes of subsection

5     (a)(2)(F), the term 'first responder' shall

6     include any COVID–19 front line em-

7     ployee.

8     "(B) COVID–19 FRONT LINE EM-

9     PLOYEE.—For purposes of this paragraph, the

10     term 'COVID–19 front line employee' means,

11     with respect to any taxable year, any individual

12     who performs at least 1000 hours of essential

13     work (as defined in the COVID–19 Heroes

14     Fund Act except without regard to the time pe-

15     riod during which such work is performed) dur-

16     ing such taxable year as an employee in a trade

17     or business of an employer.''.

18     (b) EFFECTIVE DATE.—The amendment made by

19     this section shall apply to taxable years beginning after

20     December 31, 2019.

21     **SEC. 20204. PAYROLL CREDIT FOR CERTAIN PANDEMIC-RE-**

22     **LATED EMPLOYEE BENEFIT EXPENSES PAID**

23     **BY EMPLOYERS.**

24     (a) IN GENERAL.—In the case of an employer, there

25     shall be allowed as a credit against applicable employment

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002533

G:\CMTE\AP\16\FY20\_D\HEROES.XML

229

1    taxes for each calendar quarter an amount equal to the

2    applicable percentage of the qualified pandemic-related

3    employee benefit expenses paid by such employer with re-

4    spect to such calendar quarter.

5        (b) LIMITATIONS AND REFUNDABILITY.—

6            (1) DOLLAR LIMITATION PER EMPLOYEE.—The

7        qualified pandemic-related employee benefit expenses

8        which may be taken into account under subsection

9        (a) with respect to any employee for any calendar

10       quarter shall not exceed $5,000.

11           (2) CREDIT LIMITED TO CERTAIN EMPLOYMENT

12       TAXES.—The credit allowed by subsection (a) with

13       respect to any calendar quarter shall not exceed the

14       applicable employment taxes for such calendar quar-

15       ter (reduced by any credits allowed under sub-

16       sections (e) and (f) of section 3111 of such Code,

17       sections 7001 and 7003 of the Families First

18       Coronavirus Response Act, and section 2301 of the

19       CARES Act, for such quarter) on the wages paid

20       with respect to the employment of all the employees

21       of the employer for such calendar quarter.

22           (3) REFUNDABILITY OF EXCESS CREDIT.—

23               (A) IN GENERAL.—If the amount of the

24           credit under subsection (a) exceeds the limita-

25           tion of paragraph (2) for any calendar quarter,

DOC_0002534

230

1       such excess shall be treated as an overpayment

2       that shall be refunded under sections 6402(a)

3       and 6413(b) of the Internal Revenue Code of

4       1986.

5          (B) TREATMENT OF PAYMENTS.—For pur-

6       poses of section 1324 of title 31, United States

7       Code, any amounts due to an employer under

8       this paragraph shall be treated in the same

9       manner as a refund due from a credit provision

10      referred to in subsection (b)(2) of such section.

11     (4) COORDINATION WITH GOVERNMENT

12     GRANTS.—The qualified pandemic-related employee

13     benefit expenses taken into account under this sec-

14     tion by any employer shall be reduced by any

15     amounts provided by and Federal, State, or local

16     government for purposes of making or reimbursing

17     such expenses.

18   (c) QUALIFIED PANDEMIC-RELATED EMPLOYEE

19 BENEFIT EXPENSES.—For purposes of this section, the

20 term ''qualified pandemic-related employee benefit ex-

21 penses'' means any amount paid to or for the benefit of

22 an employee in the employment of the employer if—

23     (1) such amount is excludible from the gross in-

24     come of the employee under section 139 of the Inter-

25     nal Revenue Code of 1986 by reason of being a

DOC_0002535

G:\CMTE\AP\16\FY20\_D\HEROES.XML

231

1  qualified disaster relief payment described in sub-

2  section (b)(1) of such section with respect to a quali-

3  fied disaster described in subsection (c)(2) of such

4  section which was declared by reason of COVID–19,

5  and

6      (2) the employer elects (at such time and in

7  such manner as the Secretary may provide) to treat

8  such amount as a qualified pandemic-related em-

9  ployee benefit expense.

10  (d) APPLICABLE PERCENTAGE.—For purposes of

11  this section—

12      (1) IN GENERAL.—The term "applicable per-

13  centage" means—

14          (A) 50 percent, in the case of qualified

15      pandemic-related employee benefit expenses

16      paid with respect to an essential employee, and

17          (B) 30 percent, in any other case.

18      (2) ESSENTIAL EMPLOYEE.—The term "essen-

19  tial employee" means, with respect to any employer

20  for any calendar quarter, any employee of such em-

21  ployer if a substantial portion of the services per-

22  formed by such employee for such employer during

23  such calendar quarter are essential work (as defined

24  in the COVID–19 Heroes Fund Act except without

DOC_0002536

232

1    regard to the time period during which such work is

2    performed).

3    (e) SPECIAL RULES; OTHER DEFINITIONS.—

4        (1) APPLICATION OF CERTAIN NON-DISCRIMINA-

5    TION RULES.—No credit shall be allowed under this

6    section to any employer for any calendar quarter if

7    qualified pandemic-related employee benefit expenses

8    are provided by such employer to employees for such

9    calendar quarter in a manner which discriminates in

10   favor of highly compensated individuals (within the

11   meaning of section 125) as to eligibility for, or the

12   amount of, such benefit expenses. An employer may

13   elect with respect to any calendar quarter to apply

14   this paragraph separately with respect to essential

15   employees and with respect to all other employees.

16       (2) DENIAL OF DOUBLE BENEFIT.—For pur-

17   poses of chapter 1 of such Code, no deduction or

18   credit (other than the credit allowed under this sec-

19   tion) shall be allowed for so much of qualified pan-

20   demic-related employee benefit expenses as is equal

21   to the credit allowed under this section.

22       (3) THIRD PARTY PAYORS.—Any credit allowed

23   under this section shall be treated as a credit de-

24   scribed in section 3511(d)(2) of such Code.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002537

233

1 (4) APPLICABLE EMPLOYMENT TAXES.—For

2 purposes of this section, the term "applicable em-

3 ployment taxes" means the following:

4 (A) The taxes imposed under section

5 3111(a) of the Internal Revenue Code of 1986.

6 (B) So much of the taxes imposed under

7 section 3221(a) of such Code as are attrib-

8 utable to the rate in effect under section

9 3111(a) of such Code.

10 (5) SECRETARY.—For purposes of this section,

11 the term "Secretary" means the Secretary of the

12 Treasury or the Secretary's delegate.

13 (6) CERTAIN TERMS.—

14 (A) IN GENERAL.—Any term used in this

15 section which is also used in chapter 21 or 22

16 of such Code shall have the same meaning as

17 when used in such chapter (as the case may

18 be).

19 (B) CERTAIN PROVISIONS NOT TAKEN

20 INTO ACCOUNT EXCEPT FOR PURPOSES OF LIM-

21 ITING CREDIT TO EMPLOYMENT TAXES.—For

22 purposes of subparagraph (A) (other than with

23 respect to subsection (b)(2)), section 3121(b) of

24 such Code shall be applied without regard to

25 paragraphs (1), (5), (6), (7), (8), (10), (13),

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002538

234

1      (18), (19), and (22) thereof (except with re-
2      spect to services performed in a penal institu-
3      tion by an inmate thereof) and section
4      3231(e)(1) shall be applied without regard to
5      the sentence that begins "Such term does not
6      include remuneration".

7 (f) CERTAIN GOVERNMENTAL EMPLOYERS.—

8      (1) IN GENERAL.—The credit under this section
9 shall not be allowed to the Federal Government or
10 any agency or instrumentality thereof.

11      (2) EXCEPTION.—Paragraph (1) shall not
12 apply to any organization described in section
13 501(c)(1) of the Internal Revenue Code of 1986 and
14 exempt from tax under section 501(a) of such Code.

15 (g) TREATMENT OF DEPOSITS.—The Secretary shall
16 waive any penalty under section 6656 of such Code for
17 any failure to make a deposit of applicable employment
18 taxes if the Secretary determines that such failure was due
19 to the anticipation of the credit allowed under this section.

20 (h) REGULATIONS.—The Secretary shall prescribe
21 such regulations or other guidance as may be necessary
22 to carry out the purposes of this section, including regula-
23 tions or other guidance—

24      (1) to allow the advance payment of the credit
25      determined under subsection (a), subject to the limi-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002539

235

1      tations provided in this section, based on such infor-

2      mation as the Secretary shall require,

3          (2) to provide for the reconciliation of such ad-

4      vance payment with the amount of the credit at the

5      time of filing the return of tax for the applicable

6      quarter or taxable year,

7          (3) for recapturing the benefit of credits deter-

8      mined under this section in cases where there is a

9      subsequent adjustment to the credit determined

10     under subsection (a), and

11         (4) with respect to the application of the credit

12     to third party payors (including professional em-

13     ployer organizations, certified professional employer

14     organizations, or agents under section 3504 of such

15     Code), including to allow such payors to submit doc-

16     umentation necessary to substantiate eligibility for,

17     and the amount of, the credit allowed under this sec-

18     tion.

19     (i) APPLICATION OF SECTION.—This section shall

20 apply only to qualified pandemic-related employee benefit

21 expenses paid after March 12, 2020, and before January

22 1, 2021.

23     (j) TRANSFERS TO CERTAIN TRUST FUNDS.—There

24 are hereby appropriated to the Federal Old-Age and Sur-

25 vivors Insurance Trust Fund and the Federal Disability

DOC_0002540

236

1 Insurance Trust Fund established under section 201 of

2 the Social Security Act (42 U.S.C. 401) and the Social

3 Security Equivalent Benefit Account established under

4 section 15A(a) of the Railroad Retirement Act of 1974

5 (45 U.S.C. 231n–1(a)) amounts equal to the reduction in

6 revenues to the Treasury by reason of this section (without

7 regard to this subsection). Amounts appropriated by the

8 preceding sentence shall be transferred from the general

9 fund at such times and in such manner as to replicate

10 to the extent possible the transfers which would have oc-

11 curred to such Trust Fund or Account had this section

12 not been enacted.

13     Subtitle B—Tax Credits to Prevent Business

14                   Interruption

**15 SEC. 20211. IMPROVEMENTS TO EMPLOYEE RETENTION**

**16           CREDIT.**

17     (a) INCREASE IN CREDIT PERCENTAGE.—Section

18 2301(a) of the CARES Act is amended by striking ''50

19 percent'' and inserting ''80 percent''.

20     (b) INCREASE IN PER EMPLOYEE LIMITATION.—Sec-

21 tion 2301(b)(1) of the CARES Act is amended by striking

22 ''for all calendar quarters shall not exceed $10,000.'' and

23 inserting ''shall not exceed—

24           ''(A) $15,000 in any calendar quarter, and

DOC_0002541

237

1             "(B) $45,000 in the aggregate for all cal-

2          endar quarters.".

3    (c) MODIFICATION OF THRESHOLD FOR TREATMENT

4  AS A LARGE EMPLOYER.—

5        (1) IN GENERAL.—Section 2301(c)(3)(A) of the

6        CARES Act is amended—

7            (A) by striking "for which the average

8            number of full-time employees (within the

9            meaning of section 4980H of the Internal Rev-

10           enue Code of 1986) employed by such eligible

11           employer during 2019 was greater than 100" in

12           clause (i) and inserting "which is a large em-

13           ployer", and

14            (B) by striking "for which the average

15            number of full-time employees (within the

16           meaning of section 4980H of the Internal Rev-

17           enue Code of 1986) employed by such eligible

18           employer during 2019 was not greater than

19           100" in clause (ii) and inserting "which is not

20           a large employer".

21        (2) LARGE EMPLOYER DEFINED.—Section

22        2301(c) of the CARES Act is amended by redesig-

23        nating paragraph (6) as paragraph (7) and by in-

24        serting after paragraph (5) the following new para-

25        graph:

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002542

238

1     "(6) LARGE EMPLOYER.—The term 'large em-
2     ployer' means any eligible employer if—

3          "(A) the average number of full-time em-
4     ployees (as determined for purposes of deter-
5     mining whether an employer is an applicable
6     large employer for purposes of section
7     4980H(c)(2) of the Internal Revenue Code of
8     1986) employed by such eligible employer dur-
9     ing calendar year 2019 was greater than 1,500,
10    and

11         "(B) the gross receipts (within the mean-
12    ing of section 448(c) of the Internal Revenue
13    Code of 1986) of such eligible employer during
14    calendar year 2019 was greater than
15    $41,500,000.".

16    (d) PHASE-IN OF ELIGIBILITY BASED ON REDUC-
17    TION IN GROSS RECEIPTS.—

18         (1) DECREASE OF REDUCTION IN GROSS RE-
19    CEIPTS NECESSARY TO QUALIFY FOR CREDIT.—Sec-
20    tion 2301(c)(2)(B) of the CARES Act is amended—

21         (A) by striking "50 percent" in clause (i)
22    and inserting "90 percent", and

23         (B) by striking "80 percent" in clause (ii)
24    and inserting "90 percent".

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002543

239

1          (2) PHASE-IN OF CREDIT IF REDUCTION IN
2      GROSS RECEIPTS IS LESS THAN 50 PERCENT.—Sec-
3      tion 2301(c)(2) of the CARES Act is amended by
4      adding at the end the following new subparagraph:
5              ‘‘(D) PHASE-IN OF CREDIT WHERE BUSI-
6          NESS NOT SUSPENDED AND REDUCTION IN
7          GROSS RECEIPTS LESS THAN 50 PERCENT.—
8                  ‘‘(i) IN GENERAL.—In the case of any
9              calendar quarter with respect to which an
10             eligible employer would not be an eligible
11             employer if subparagraph (B)(i) were ap-
12             plied by substituting ‘50 percent’ for ‘90
13             percent’, the amount of the credit allowed
14             under subsection (a) shall be reduced by
15             the amount which bears the same ratio to
16             the amount of such credit (determined
17             without regard to this subparagraph) as—
18                     ‘‘(I) the excess gross receipts per-
19                 centage point amount, bears to
20                     ‘‘(II) 40 percentage points.
21                 ‘‘(ii) EXCESS GROSS RECEIPTS PER-
22             CENTAGE POINT AMOUNT.—For purposes
23             of this subparagraph, the term ‘excess
24             gross receipts percentage point amount’

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002544

G:\CMTE\AP\16\FY20\_D\HEROES.XML

240

1           means, with respect to any calendar quar-

2           ter, the excess of—

3                     "(I) the lowest of the gross re-

4                 ceipts percentage point amounts de-

5                 termined with respect to any calendar

6                 quarter during the period ending with

7                 such calendar quarter and beginning

8                 with the first calendar quarter during

9                 the period described in subparagraph

10                (B), over

11                   "(II) 50 percentage points.

12            "(iii) GROSS RECEIPTS PERCENTAGE

13         POINT AMOUNTS.—For purposes of this

14         subparagraph, the term 'gross receipts per-

15         centage point amount' means, with respect

16         to any calendar quarter, the percentage

17         (expressed as a number of percentage

18         points) obtained by dividing—

19                 "(I) the gross receipts (within

20                 the meaning of subparagraph (B)) for

21                 such calendar quarter, by

22                 "(II) the gross receipts for the

23                 same calendar quarter in calendar

24                 year 2019.".

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002545

241

1   (3) GROSS RECEIPTS OF TAX-EXEMPT ORGANI-

2  ZATIONS.—Section 2301(c)(2)(C) of the CARES Act

3  is amended—

4    (A) by striking "of such Code, clauses (i)

5   and (ii)(I)" and inserting "of such Code—

6     "(i) clauses (i) and (ii)(I)",

7    (B) by striking the period at the end and

8   inserting ", and", and

9    (C) by adding at the end the following new

10   clause:

11     "(ii) any reference in this section to

12    gross receipts shall be treated as a ref-

13    erence to gross receipts within the meaning

14    of section 6033 of such Code.".

15  (e) MODIFICATION OF TREATMENT OF HEALTH

16 PLAN EXPENSES.—

17   (1) IN GENERAL.—Section 2301(c)(5) of the

18  CARES Act is amended to read as follows:

19   "(5) WAGES.—

20    "(A) IN GENERAL.—The term 'wages'

21   means wages (as defined in section 3121(a) of

22   the Internal Revenue Code of 1986) and com-

23   pensation (as defined in section 3231(e) of such

24   Code).

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002546

242

1            "(B) ALLOWANCE FOR CERTAIN HEALTH

2    PLAN EXPENSES.—

3            "(i) IN GENERAL.—Such term shall

4        include amounts paid or incurred by the el-

5        igible employer to provide and maintain a

6        group health plan (as defined in section

7        5000(b)(1) of the Internal Revenue Code

8        of 1986), but only to the extent that such

9        amounts are excluded from the gross in-

10       come of employees by reason of section

11       106(a) of such Code.

12            "(ii) ALLOCATION RULES.—For pur-

13        poses of this section, amounts treated as

14        wages under clause (i) shall be treated as

15        paid with respect to any employee (and

16        with respect to any period) to the extent

17        that such amounts are properly allocable to

18        such employee (and to such period) in such

19        manner as the Secretary may prescribe.

20        Except as otherwise provided by the Sec-

21        retary, such allocation shall be treated as

22        properly made if made on the basis of

23        being pro rata among periods of cov-

24        erage.".

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002547

243

1      (2) CONFORMING AMENDMENT.—Section

2  2301(c)(3) of the CARES Act is amended by strik-

3  ing subparagraph (C).

4      (f) QUALIFIED WAGES PERMITTED TO INCLUDE

5  AMOUNTS FOR TIP REPLACEMENT.—

6      (1) IN GENERAL.—Section 2301(c)(3)(B) of the

7  CARES Act is amended by inserting "(including tips

8  which would have been deemed to be paid by the em-

9  ployer under section 3121(q))" after "would have

10  been paid".

11      (2) CONFORMING AMENDMENT.—Section

12  2301(h)(2) of the CARES Act is amended by insert-

13  ing "45B or" before "45S".

14      (g) CERTAIN GOVERNMENTAL EMPLOYERS ELIGIBLE

15  FOR CREDIT.—

16      (1) IN GENERAL.—Section 2301(f) of the

17  CARES Act is amended to read as follows:

18  "(f) CERTAIN GOVERNMENTAL EMPLOYERS.—

19      "(1) IN GENERAL.—The credit under this sec-

20  tion shall not be allowed to the Federal Government

21  or any agency or instrumentality thereof.

22      "(2) EXCEPTION.—Paragraph (1) shall not

23  apply to any organization described in section

24  501(c)(1) of the Internal Revenue Code of 1986 and

25  exempt from tax under section 501(a) of such Code.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002548

244

1    ''(3) SPECIAL RULES.—In the case of any State

2    government, Indian tribal government, or any agen-

3    cy, instrumentality, or political subdivision of the

4    foregoing—

5         ''(A) clauses (i) and (ii)(I) of subsection

6         (c)(2)(A) shall apply to all operations of such

7         entity, and

8         ''(B) subclause (II) of subsection

9         (c)(2)(A)(ii) shall not apply.''.

10   (2) COORDINATION WITH APPLICATION OF CER-

11   TAIN DEFINITIONS.—

12        (A) IN GENERAL.—Section 2301(c)(5)(A)

13        of the CARES Act, as amended by the pre-

14        ceding provisions of this Act, is amended by

15        adding at the end the following: ''For purposes

16        of the preceding sentence (other than for pur-

17        poses of subsection (b)(2)), wages as defined in

18        section 3121(a) of the Internal Revenue Code

19        of 1986 shall be determined without regard to

20        paragraphs (1), (5), (6), (7), (8), (10), (13),

21        (18), (19), and (22) of section 3212(b) of such

22        Code (except with respect to services performed

23        in a penal institution by an inmate thereof).''.

24        (B) CONFORMING AMENDMENTS.—Sec-

25        tions 2301(c)(6) of the CARES Act is amended

g:\VHLC\051220\051220.072.xml       (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002549

245

1       by striking "Any term" and inserting "Except
2       as otherwise provided in this section, any
3       term".

4    (h) EFFECTIVE DATE.—The amendments made by
5  this section shall take effect as if included in section 2301
6  of the CARES Act.

7  SEC. 20212. PAYROLL CREDIT FOR CERTAIN FIXED EX-
8              PENSES OF EMPLOYERS SUBJECT TO CLO-
9              SURE BY REASON OF COVID–19.

10    (a) IN GENERAL.—In the case of an eligible em-
11  ployer, there shall be allowed as a credit against applicable
12  employment taxes for each calendar quarter an amount
13  equal to 50 percent of the qualified fixed expenses paid
14  or incurred by such employer during such calendar quar-
15  ter.

16    (b) LIMITATIONS AND REFUNDABILITY.—

17      (1) LIMITATION.—The qualified fixed expenses
18      which may be taken into account under subsection
19      (a) by any eligible employer for any calendar quarter
20      shall not exceed the least of—

21          (A) the qualified fixed expenses paid by the
22          eligible employer in the same calendar quarter
23          of calendar year 2019,

24          (B) $50,000, or

25          (C) the greater of—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002550

246

          (i) 25 percent of the wages paid with respect to the employment of all the employees of the eligible employer for such calendar quarter, or

          (ii) 6.25 percent of the gross receipts of the eligible employer for calendar year 2019.

(2) CREDIT LIMITED TO CERTAIN EMPLOYMENT TAXES.—The credit allowed by subsection (a) with respect to any calendar quarter shall not exceed the applicable employment taxes for such calendar quarter (reduced by any credits allowed under subsections (e) and (f) of section 3111 of such Code, sections 7001 and 7003 of the Families First Coronavirus Response Act, section 2301 of the CARES Act, and section 20204 of this division, for such quarter) on the wages paid with respect to the employment of all the employees of the eligible employer for such calendar quarter.

(3) REFUNDABILITY OF EXCESS CREDIT.—

    (A) IN GENERAL.—If the amount of the credit under subsection (a) exceeds the limitation of paragraph (2) for any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a)

g:\VHLC\051220\051220.072.xml      (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002551

247

1 and 6413(b) of the Internal Revenue Code of
2 1986.

3     (B) TREATMENT OF PAYMENTS.—For pur-
4 poses of section 1324 of title 31, United States
5 Code, any amounts due to an employer under
6 this paragraph shall be treated in the same
7 manner as a refund due from a credit provision
8 referred to in subsection (b)(2) of such section.

9 (c) DEFINITIONS.—For purposes of this section—

10     (1) APPLICABLE EMPLOYMENT TAXES.—The
11 term "applicable employment taxes" means the fol-
12 lowing:

13     (A) The taxes imposed under section
14 3111(a) of the Internal Revenue Code of 1986.

15     (B) So much of the taxes imposed under
16 section 3221(a) of such Code as are attrib-
17 utable to the rate in effect under section
18 3111(a) of such Code.

19 (2) ELIGIBLE EMPLOYER.—

20     (A) IN GENERAL.—The term "eligible em-
21 ployer" means any employer—

22         (i) which was carrying on a trade or
23 business during calendar year 2020,

24         (ii) which had either—

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002552

248

1          (I) not more than 1,500 full-time
2          equivalent employees (as determined
3          for purposes of determining whether
4          an employer is an applicable large em-
5          ployer for purposes of section
6          4980H(c)(2) of the Internal Revenue
7          Code of 1986) for calendar year 2019,
8          or
9          (II) not more than $41,500,000
10         of gross receipts in the last taxable
11         year ending in 2019, and
12         (iii) with respect to any calendar
13         quarter, for which—
14         (I) the operation of the trade or
15         business described in clause (i) is fully
16         or partially suspended during the cal-
17         endar quarter due to orders from an
18         appropriate governmental authority
19         limiting commerce, travel, or group
20         meetings (for commercial, social, reli-
21         gious, or other purposes) due to the
22         coronavirus disease 2019 (COVID–
23         19), or

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002553

249

1         (II) such calendar quarter is

2         within the period described in sub-

3         paragraph (B).

4     (B) SIGNIFICANT DECLINE IN GROSS RE-

5 CEIPTS.—The period described in this subpara-

6 graph is the period—

7         (i) beginning with the first calendar

8         quarter beginning after December 31,

9         2019, for which gross receipts (within the

10         meaning of section 448(c) of the Internal

11         Revenue Code of 1986) for the calendar

12         quarter are less than 90 percent of gross

13         receipts for the same calendar quarter in

14         the prior year, and

15         (ii) ending with the calendar quarter

16         following the first calendar quarter begin-

17         ning after a calendar quarter described in

18         clause (i) for which gross receipts of such

19         employer are greater than 90 percent of

20         gross receipts for the same calendar quar-

21         ter in the prior year.

22     (C) TAX-EXEMPT ORGANIZATIONS.—In the

23 case of an organization which is described in

24 section 501(c) of the Internal Revenue Code of

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002554

250

1  1986 and exempt from tax under section 501(a)

2  of such Code—

3    (i) clauses (i) and (iii)(I) of subpara-

4   graph (A) shall apply to all operations of

5   such organization, and

6    (ii) any reference in this section to

7   gross receipts shall be treated as a ref-

8   erence to gross receipts within the meaning

9   of section 6033 of the Internal Revenue

10   Code of 1986.

11   (D) PHASE-IN OF CREDIT WHERE BUSI-

12  NESS NOT SUSPENDED AND REDUCTION IN

13  GROSS RECEIPTS LESS THAN 50 PERCENT.—

14    (i) IN GENERAL.—In the case of any

15   calendar quarter with respect to which an

16   eligible employer would not be an eligible

17   employer if subparagraph (B)(i) were ap-

18   plied by substituting ''50 percent'' for ''90

19   percent'', the amount of the credit allowed

20   under subsection (a) shall be reduced by

21   the amount which bears the same ratio to

22   the amount of such credit (determined

23   without regard to this subparagraph) as—

24    (I) the excess gross receipts per-

25    centage point amount, bears to

DOC_0002555