G:\CMTE\AP\16\FY20\_D\HEROES.XML

251

1          (II) 40 percentage points.

2          (ii) EXCESS GROSS RECEIPTS PER-

3      CENTAGE POINT AMOUNT.—For purposes

4      of this subparagraph, the term "excess

5      gross receipts percentage point amount"

6      means, with respect to any calendar quar-

7      ter, the excess of—

8              (I) the lowest of the gross re-

9          ceipts percentage point amounts de-

10         termined with respect to any calendar

11         quarter during the period ending with

12         such calendar quarter and beginning

13         with the first calendar quarter during

14         the period described in subparagraph

15         (B), over

16             (II) 50 percentage points.

17         (iii) GROSS RECEIPTS PERCENTAGE

18     POINT AMOUNTS.—For purposes of this

19     subparagraph, the term "gross receipts

20     percentage point amount" means, with re-

21     spect to any calendar quarter, the percent-

22     age (expressed as a number of percentage

23     points) obtained by dividing—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002556

252

1    (I) the gross receipts (within the

2    meaning of subparagraph (B)) for

3    such calendar quarter, by

4    (II) the gross receipts for the

5    same calendar quarter in calendar

6    year 2019.

7   (3) QUALIFIED FIXED EXPENSES.—

8    (A) IN GENERAL.—The term "qualified

9   fixed expenses" means the payment or accrual,

10   in the ordinary course of the eligible employer's

11   trade or business, of any covered mortgage obli-

12   gation, covered rent obligation, or covered util-

13   ity payment. Such term shall not include the

14   prepayment of any obligation for a period in ex-

15   cess of a month unless the payment for such

16   period is customarily due in advance.

17    (B) APPLICATION OF DEFINITIONS.—The

18   terms "covered mortgage obligation", "covered

19   rent obligation", and "covered utility payment"

20   shall each have the same meaning as when used

21   in section 1106 of the CARES Act.

22   (4) SECRETARY.—The term "Secretary" means

23  the Secretary of the Treasury or the Secretary's del-

24  egate.

25   (5) WAGES.—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002557

253

(A) IN GENERAL.—The term "wages" means wages (as defined in section 3121(a) of the Internal Revenue Code of 1986) and compensation (as defined in section 3231(e) of such Code). For purposes of the preceding sentence (other than for purposes of subsection (b)(2)), wages as defined in section 3121(a) of such Code shall be determined without regard to paragraphs (1), (8), (10), (13), (18), (19), and (22) of section 3121(b) of such Code.

(B) ALLOWANCE FOR CERTAIN HEALTH PLAN EXPENSES.—

(i) IN GENERAL.—Such term shall include amounts paid or incurred by the eligible employer to provide and maintain a group health plan (as defined in section 5000(b)(1) of the Internal Revenue Code of 1986), but only to the extent that such amounts are excluded from the gross income of employees by reason of section 106(a) of such Code.

(ii) ALLOCATION RULES.—For purposes of this section, amounts treated as wages under clause (i) shall be treated as paid with respect to any employee (and

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002558

254

1          with respect to any period) to the extent
2          that such amounts are properly allocable to
3          such employee (and to such period) in such
4          manner as the Secretary may prescribe.
5          Except as otherwise provided by the Sec-
6          retary, such allocation shall be treated as
7          properly made if made on the basis of
8          being pro rata among periods of coverage.
9          (6) EMPLOYER.—The term "employer" means
10   any employer (as defined in section 3401(d) of such
11   Code) of at least one employee on any day in cal-
12   endar year 2020.
13          (7) OTHER TERMS.—Except as otherwise pro-
14   vided in this section, any term used in this section
15   which is also used in chapter 21 or 22 of the Inter-
16   nal Revenue Code of 1986 shall have the same
17   meaning as when used in such chapter.
18   (d) AGGREGATION RULE.—All persons treated as a
19   single employer under subsection (a) or (b) of section 52
20   of the Internal Revenue Code of 1986, or subsection (m)
21   or (o) of section 414 of such Code, shall be treated as
22   one employer for purposes of this section.
23   (e) DENIAL OF DOUBLE BENEFIT.—For purposes of
24   chapter 1 of such Code, the gross income of any eligible
25   employer, for the taxable year which includes the last day

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002559

1 of any calendar quarter with respect to which a credit is
2 allowed under this section, shall be increased by the
3 amount of such credit.

4 (f) CERTAIN GOVERNMENTAL EMPLOYERS.—

5 (1) IN GENERAL.—The credit under this section
6 shall not be allowed to the Federal Government, the
7 government of any State, of the District of Colum-
8 bia, or of any possession of the United States, any
9 tribal government, or any political subdivision, agen-
10 cy, or instrumentality of any of the foregoing.

11 (2) EXCEPTION.—Paragraph (1) shall not
12 apply to any organization described in section
13 501(c)(1) of the Internal Revenue Code of 1986 and
14 exempt from tax under section 501(a) of such Code.

15 (g) ELECTION NOT TO HAVE SECTION APPLY.—This
16 section shall not apply with respect to any eligible em-
17 ployer for any calendar quarter if such employer elects (at
18 such time and in such manner as the Secretary may pre-
19 scribe) not to have this section apply.

20 (h) TRANSFERS TO CERTAIN TRUST FUNDS.—There
21 are hereby appropriated to the Federal Old-Age and Sur-
22 vivors Insurance Trust Fund and the Federal Disability
23 Insurance Trust Fund established under section 201 of
24 the Social Security Act (42 U.S.C. 401) and the Social
25 Security Equivalent Benefit Account established under

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002560

1  section 15A(a) of the Railroad Retirement Act of 1974
2  (45 U.S.C. 231n–1(a)) amounts equal to the reduction in
3  revenues to the Treasury by reason of this section (without
4  regard to this subsection). Amounts appropriated by the
5  preceding sentence shall be transferred from the general
6  fund at such times and in such manner as to replicate
7  to the extent possible the transfers which would have oc-
8  curred to such Trust Fund or Account had this section
9  not been enacted.

10  (i) TREATMENT OF DEPOSITS.—The Secretary shall
11  waive any penalty under section 6656 of such Code for
12  any failure to make a deposit of applicable employment
13  taxes if the Secretary determines that such failure was due
14  to the anticipation of the credit allowed under this section.

15  (j) THIRD PARTY PAYORS.—Any credit allowed
16  under this section shall be treated as a credit described
17  in section 3511(d)(2) of such Code.

18  (k) REGULATIONS AND GUIDANCE.—The Secretary
19  shall issue such forms, instructions, regulations, and guid-
20  ance as are necessary—

21      (1) to allow the advance payment of the credit
22      under subsection (a), subject to the limitations pro-
23      vided in this section, based on such information as
24      the Secretary shall require,

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002561

257

1       (2) regulations or other guidance to provide for

2   the reconciliation of such advance payment with the

3   amount of the credit at the time of filing the return

4   of tax for the applicable quarter or taxable year,

5       (3) with respect to the application of the credit

6   under subsection (a) to third party payors (including

7   professional employer organizations, certified profes-

8   sional employer organizations, or agents under sec-

9   tion 3504 of the Internal Revenue Code of 1986),

10   including regulations or guidance allowing such

11   payors to submit documentation necessary to sub-

12   stantiate the eligible employer status of employers

13   that use such payors,

14       (4) for application of subsection (b)(1)(A) and

15   subparagraphs (A)(ii)(II) and (B) of subsection

16   (c)(2) in the case of any employer which was not

17   carrying on a trade or business for all or part of the

18   same calendar quarter in the prior year, and

19       (5) for recapturing the benefit of credits deter-

20   mined under this section in cases where there is a

21   subsequent adjustment to the credit determined

22   under subsection (a).

23   (l) APPLICATION OF SECTION.—This section shall

24   apply only to qualified fixed expenses paid or accrued after

25   March 12, 2020, and before January 1, 2021.

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002562

G:\CMTE\AP\16\FY20\_D\HEROES.XML

258

### SEC. 20213. BUSINESS INTERRUPTION CREDIT FOR CERTAIN SELF-EMPLOYED INDIVIDUALS.

1
2

3    (a) CREDIT AGAINST TAX.—In the case of an eligible
4 self-employed individual, there shall be allowed as a credit
5 against the tax imposed by chapter 1 of subtitle A of the
6 Internal Revenue Code of 1986 for the taxpayer's first
7 taxable year beginning in 2020 an amount equal to 90
8 percent of the eligible self-employed individual's qualified
9 self-employment income.

10    (b) LIMITATIONS.—

11    (1) OVERALL LIMITATION.—The amount of
12 qualified self-employment income taken into account
13 under subsection (a) with respect to any eligible self-
14 employed individual shall not exceed $45,000.

15    (2) LIMITATION BASED ON MODIFIED AD-
16 JUSTED GROSS INCOME.—

17    (A) IN GENERAL.—The amount of the
18 credit allowed by subsection (a) (after applica-
19 tion of paragraph (1)) shall be reduced (but not
20 below zero) by 50 percent of so much of the
21 taxpayer's modified adjusted gross income for
22 the taxpayer's first taxable year beginning in
23 2020 as exceeds $60,000 ($120,000 in the case
24 of a joint return).

25    (B) MODIFIED ADJUSTED GROSS IN-
26 COME.—For purposes of this section the term

DOC_0002563

1   "modified adjusted gross income" means ad-

2   justed gross income determined without regard

3   to sections 911, 931, and 933 of such Code.

4 (c) ELIGIBLE SELF-EMPLOYED INDIVIDUAL.—For

5 purposes of this section, the term "eligible self-employed

6 individual" means an individual—

7   (1) who—

8     (A) regularly carries on one or more trades

9    or businesses within the meaning of section

10    1402 of such Code, or

11     (B) is allocated income or loss described in

12    section 702(a)(8) of such Code from any trade

13    or business carried on by a partnership which

14    is not excluded under section 1402 of such

15    Code, and

16   (2) for whom gross self-employment income

17  during the first taxable year beginning in 2020 is

18  less than 90 percent of such individual's gross self-

19  employment income during the first taxable year be-

20  ginning in 2019.

21 (d) QUALIFIED SELF-EMPLOYMENT INCOME.—For

22 purposes of this section—

23   (1) IN GENERAL.—The term "qualified self-em-

24  ployment income" means the product of—

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002564

260

1        (A) the specified gross self-employment in-
2    come reduction for the first taxable year begin-
3    ning in 2020, multiplied by
4        (B) the ratio of—
5            (i) self-employment income (as deter-
6        mined under section 1402(b) of such Code,
7        but not below zero) for the first taxable
8        year beginning in 2019, divided by
9            (ii) gross self-employment income for
10       the first taxable year beginning in 2019.
11   (2) LIMITATION BASED ON MODIFIED AD-
12   JUSTED GROSS INCOME.—In the case of any tax-
13   payer, qualified self-employment income shall not ex-
14   ceed the excess (if any) of—
15       (A) modified adjusted gross income for the
16   first taxable year beginning in 2019, over
17       (B) modified adjusted gross income for the
18   first taxable year beginning in 2020.
19   (3) SPECIFIED GROSS SELF-EMPLOYMENT IN-
20   COME REDUCTION.—For purposes of paragraph (1),
21   the term "specified gross self-employment income re-
22   duction" means, with respect to a taxable year, the
23   excess (if any) of—

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002565

261

1          (A) 90 percent of gross self-employment

2          income for the taxable year preceding such tax-

3          able year, over

4          (B) gross self-employment income for such

5          taxable year.

6     (e) GROSS SELF-EMPLOYMENT INCOME.—For pur-

7 poses of this section, the term ''gross self-employment in-

8 come'' means, with respect to any taxable year, the sum

9 of—

10          (1) the eligible self-employed individuals' gross

11          income derived from all trades or business carried on

12          by such individual for purposes of determining net

13          earnings from self-employment under section 1402

14          of such Code for such taxable year, and

15          (2) the eligible individual's distributive share of

16          gross income (as determined under section 702(c) of

17          such Code) from any trade or business carried on by

18          a partnership for purposes of determining net earn-

19          ings from self-employment under section 1402 of

20          such Code (and which is not excluded under such

21          section) for such taxable year.

22     (f) SPECIAL RULES.—

23          (1) CREDIT REFUNDABLE.—

24          (A) IN GENERAL.—The credit determined

25          under this section shall be treated as a credit

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002566

1          allowed to the taxpayer under subpart C of part
2          IV of subchapter A of chapter 1 of such Code.
3                    (B) TREATMENT OF PAYMENTS.—For pur-
4          poses of section 1324 of title 31, United States
5          Code, any refund due from the credit allowed
6          under this section shall be treated in the same
7          manner as a refund due from a credit provision
8          referred to in subsection (b)(2) of such section.
9          (2) DOCUMENTATION.—No credit shall be al-
10         lowed under this section unless the taxpayer main-
11         tains such documentation as the Secretary of the
12         Treasury (or the Secretary's delegate) may prescribe
13         to establish such individual as an eligible self-em-
14         ployed individual.
15         (3) DENIAL OF DOUBLE BENEFIT.—Qualified
16         self-employment income shall be reduced by—
17                   (A) the qualified sick leave equivalent
18         amount for which a credit is allowed under sec-
19         tion 7002(a) of the Families First Coronavirus
20         Response Act and the qualified family leave
21         equivalent amount for which a credit is allowed
22         under section 7004(a) of such Act,
23                   (B) the qualified wages for which a credit
24         is allowed under section 2301 of the CARES
25         Act,

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002567

G:\CMTE\AP\16\FY20\_D\HEROES.XML

263

1    (C) the amount of the credit allowed under
2   section 6432 of the Internal Revenue Code of
3   1986 (as added by this Act), and

4    (D) except to the extent taken into account
5   in determining gross self-employment income,
6   amounts from a covered loan under section
7   7(a)(36) of the Small Business Act that are—

8    (i) forgiven pursuant to section
9   1106(b) of the CARES Act, and

10    (ii) paid or distributed to the eligible
11   self-employed individual as payroll costs
12   described in section 7(a)(36)(A)(viii)(I) of
13   the Small Business Act.

14 (4) JOINT RETURNS.—

15   (A) IN GENERAL.—In the case of a joint
16  return, the taxpayer shall be treated for pur-
17  poses of this section as an eligible self-employed
18  individual if either spouse is an eligible self-em-
19  ployed individual.

20   (B) APPLICATION OF MODIFIED ADJUSTED
21  GROSS INCOME LIMITATION ON QUALIFIED
22  SELF-EMPLOYMENT INCOME.—If the taxpayer
23  filed a joint return for only one of the taxable
24  years described in subsection (d)(2), such limi-
25  tation shall apply in such manner as the Sec-

DOC_0002568

264

1     retary of the Treasury (or the Secretary's dele-

2     gate) may provide.

3     (5) ELECTION NOT TO HAVE SECTION APPLY.—

4     This section shall not apply with respect to any tax-

5     payer for any taxable year if such taxpayer elects (at

6     such time and in such manner as the Secretary of

7     the Treasury, or the Secretary's delegate, may pre-

8     scribe) not to have this section apply.

9     (g) APPLICATION OF CREDIT IN CERTAIN POSSES-

10  SIONS.—

11     (1) PAYMENTS TO POSSESSIONS WITH MIRROR

12     CODE TAX SYSTEMS.—The Secretary of the Treas-

13     ury (or the Secretary's delegate) shall pay to each

14     possession of the United States which has a mirror

15     code tax system amounts equal to the loss (if any)

16     to that possession by reason of the application of the

17     provisions of this section. Such amounts shall be de-

18     termined by the Secretary of the Treasury (or the

19     Secretary's delegate) based on information provided

20     by the government of the respective possession.

21     (2) PAYMENTS TO OTHER POSSESSIONS.—The

22     Secretary of the Treasury (or the Secretary's dele-

23     gate) shall pay to each possession of the United

24     States which does not have a mirror code tax system

25     amounts estimated by the Secretary of the Treasury

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002569

265

1 (or the Secretary's delegate) as being equal to the

2 aggregate benefits (if any) that would have been

3 provided to residents of such possession by reason of

4 the provisions of this section if a mirror code tax

5 system had been in effect in such possession. The

6 preceding sentence shall not apply unless the respec-

7 tive possession has a plan, which has been approved

8 by the Secretary of the Treasury (or the Secretary's

9 delegate), under which such possession will promptly

10 distribute such payments to its residents.

11 (3) MIRROR CODE TAX SYSTEM.—For purposes

12 of this section, the term ''mirror code tax system''

13 means, with respect to any possession of the United

14 States, the income tax system of such possession if

15 the income tax liability of the residents of such pos-

16 session under such system is determined by ref-

17 erence to the income tax laws of the United States

18 as if such possession were the United States.

19 (4) TREATMENT OF PAYMENTS.—For purposes

20 of section 1324 of title 31, United States Code, the

21 payments under this section shall be treated in the

22 same manner as a refund due from a credit provi-

23 sion referred to in subsection (b)(2) of such section.

24 (h) CERTAIN TERMS.—Any term used in this section

25 which is also used in chapter 2 of the Internal Revenue

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002570

266

1 Code of 1986 shall have the same meaning as when used

2 in such chapter.

3     (i) REGULATIONS AND GUIDANCE.—The Secretary of

4 the Treasury (or the Secretary's delegate) shall issue such

5 forms, instructions, regulations, and guidance as are nec-

6 essary or appropriate—

7         (1) to allow the advance payment of the credit

8     under subsection (a) (including allowing use of the

9     anticipated credit to offset estimated taxes) based on

10    the taxpayer's good faith estimates of gross self-em-

11    ployment income and qualified self-employment in-

12    come for the first taxable year beginning in 2020

13    and such other information as the Secretary of the

14    Treasury (or the Secretary's delegate) shall require,

15    subject to the limitations provided in this section,

16        (2) to provide for the reconciliation of such ad-

17    vance payment with the amount of the credit at the

18    time of filing the return of tax for the taxpayer's

19    first taxable year beginning in 2020,

20        (3) to provide for the application of this section

21    to partners in partnerships, and

22        (4) to implement the purposes of this section.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002571

267

1    Subtitle C—Credits for Paid Sick and Family Leave

2  **SEC. 20221. EXTENSION OF CREDITS.**

3    (a) IN GENERAL.—Sections 7001(g), 7002(e),

4  7003(g), and 7004(e) of the Families First Coronavirus

5  Response Act are each amended by striking "2020" and

6  inserting "2021".

7    (b) EFFECTIVE DATE.—The amendments made by

8  this section shall take effect as if included in the provisions

9  of the Families First Coronavirus Response Act to which

10  they relate.

11  **SEC. 20222. REPEAL OF REDUCED RATE OF CREDIT FOR**

12  **CERTAIN LEAVE.**

13    (a) PAYROLL CREDIT.—Section 7001(b) of the Fami-

14  lies First Coronavirus Response Act is amended by insert-

15  ing "or any day on or after the date of the enactment

16  of the COVID–19 Tax Relief Act of 2020" after "in the

17  case of any day any portion of which is paid sick time

18  described in paragraph (1), (2), or (3) of section 5102(a)

19  of the Emergency Paid Sick Leave Act".

20    (b) SELF-EMPLOYED CREDIT.—

21        (1) IN GENERAL.—Clauses (i) and (ii) of sec-

22    tion 7002(c)(1)(B) of the Families First

23    Coronavirus Response Act are each amended by in-

24    serting inserting "or any day on or after the date of

25    the enactment of the COVID–19 Tax Relief Act of

DOC_0002572

268

1    2020'' after ''in the case of any day any portion of

2    which is paid sick time described in paragraph (1),

3    (2), or (3) of section 5102(a) of the Emergency Paid

4    Sick Leave Act''.

5        (2)    CONFORMING    AMENDMENT.—Section

6    7002(d)(3) of the Families First Coronavirus Re-

7    sponse Act is amended by inserting inserting ''or

8    any day on or after the date of the enactment of the

9    COVID–19 Tax Relief Act of 2020'' after ''in the

10    case of any day any portion of which is paid sick

11    time described in paragraph (1), (2), or (3) of sec-

12    tion 5102(a) of the Emergency Paid Sick Leave

13    Act''.

14   (c) EFFECTIVE DATE.—The amendments made by

15   this section shall apply to days on or after the date of

16   the enactment of this Act.

17   **SEC. 20223. INCREASE IN LIMITATIONS ON CREDITS FOR**

18            **PAID FAMILY LEAVE.**

19   (a) INCREASE IN OVERALL LIMITATION ON QUALI-

20   FIED FAMILY LEAVE WAGES.—

21        (1) IN GENERAL.—Section 7003(b)(1)(B) of

22    the Families First Coronavirus Response Act is

23    amended by striking ''$10,000'' and inserting

24    ''$12,000''.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002573

269

1 (2) CONFORMING AMENDMENT.—Section

2 7004(d)(3) of the Families First Coronavirus Re-

3 sponse Act is amended by striking "$10,000" and

4 inserting "$12,000".

5 (b) INCREASE IN QUALIFIED FAMILY LEAVE EQUIV-

6 ALENT AMOUNT FOR SELF-EMPLOYED INDIVIDUALS.—

7 Section 7004(c)(1)(A) of the Families First Coronavirus

8 Response Act is amended by striking "50" and inserting

9 "60".

10 (c) EFFECTIVE DATE.—The amendments made by

11 this section shall take effect as if included in the provisions

12 of the Families First Coronavirus Response Act to which

13 they relate.

14 **SEC. 20224. ELECTION TO USE PRIOR YEAR NET EARNINGS**

15    **FROM SELF-EMPLOYMENT IN DETERMINING**

16    **AVERAGE DAILY SELF-EMPLOYMENT IN-**

17    **COME.**

18 (a) CREDIT FOR SICK LEAVE.—Section 7002(c) of

19 the Families First Coronavirus Response Act is amended

20 by adding at the end the following new paragraph:

21 "(4) ELECTION TO USE PRIOR YEAR NET EARN-

22 INGS FROM SELF-EMPLOYMENT INCOME.—In the

23 case of an individual who elects (at such time and

24 in such manner as the Secretary, or the Secretary's

25 delegate, may provide) the application of this para-

270

1    graph, paragraph (2)(A) shall be applied by sub-
2    stituting 'the prior taxable year' for 'the taxable
3    year'.''.

4    (b) CREDIT FOR FAMILY LEAVE.—Section 7004(c)
5    of the Families First Coronavirus Response Act is amend-
6    ed by adding at the end the following new paragraph:

7        ''(4) ELECTION TO USE PRIOR YEAR NET EARN-
8        INGS FROM SELF-EMPLOYMENT INCOME.—In the
9        case of an individual who elects (at such time and
10       in such manner as the Secretary, or the Secretary's
11       delegate, may provide) the application of this para-
12       graph, paragraph (2)(A) shall be applied by sub-
13       stituting 'the prior taxable year' for 'the taxable
14       year'.''.

15    (c) EFFECTIVE DATE.—The amendments made by
16    this section shall take effect as if included in the provisions
17    of the Families First Coronavirus Response Act to which
18    they relate.

19    SEC. 20225. FEDERAL, STATE, AND LOCAL GOVERNMENTS
20               ALLOWED TAX CREDITS FOR PAID SICK AND
21               PAID FAMILY AND MEDICAL LEAVE.

22    (a) IN GENERAL.—Sections 7001(e) and 7003(e) of
23    the Families First Coronavirus Response Act are each
24    amended by striking paragraph (4).

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002575

271

(b) COORDINATION WITH APPLICATION OF CERTAIN DEFINITIONS.—

(1) IN GENERAL.—Sections 7001(e) and 7003(e) of the Families First Coronavirus Response Act are each amended—

(A) by inserting ", determined without regard to paragraphs (1) through (22) of section 3121(b) of such Code" after "as defined in section 3121(a) of the Internal Revenue Code of 1986", and

(B) by inserting ", determined without regard to the sentence in paragraph (1) thereof which begins 'Such term does include remuneration'" after "as defined in section 3231(e) of the Internal Revenue Code".

(2) CONFORMING AMENDMENTS.—Sections 7001(e)(3) and 7003(e)(3) of the Families First Coronavirus Response Act are each amended by striking "Any term" and inserting "Except as otherwise provided in this section, any term".

(c) EFFECTIVE DATE.—The amendments made by this section shall take effect as if included in the provisions of the Families First Coronavirus Response Act to which they relate.

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002576

272

1 **SEC. 20226. CERTAIN TECHNICAL IMPROVEMENTS.**

2     (a) COORDINATION WITH EXCLUSION FROM EM-

3 PLOYMENT TAXES.—Sections 7001(c) and 7003(c) of the

4 Families First Coronavirus Response Act, as amended by

5 the preceding provisions of this Act, are each amended—

6       (1) by inserting "and section 7005(a) of this

7     Act," after "determined without regard to para-

8     graphs (1) through (22) of section 3121(b) of such

9     Code", and

10       (2) by inserting "and without regard to section

11     7005(a) of this Act" after "which begins 'Such term

12     does not include remuneration' ".

13     (b) CLARIFICATION OF APPLICABLE RAILROAD RE-

14 TIREMENT TAX FOR PAID LEAVE CREDITS.—Sections

15 7001(e) and 7003(e) of the Families First Coronavirus

16 Response Act, as amended by the preceding provisions of

17 this Act, are each amended by adding at the end the fol-

18 lowing new paragraph:

19       "(4) REFERENCES TO RAILROAD RETIREMENT

20     TAX.—Any reference in this section to the tax im-

21     posed by section 3221(a) of the Internal Revenue

22     Code of 1986 shall be treated as a reference to so

23     much of such tax as is attributable to the rate in ef-

24     fect under section 3111(a) of such Code.".

25     (c) CLARIFICATION OF TREATMENT OF PAID LEAVE

26 FOR APPLICABLE RAILROAD RETIREMENT TAX.—Section

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002577

273

1 7005(a) of the Families First Coronavirus Response Act
2 is amended by adding the following sentence at the end
3 of such subsection: "Any reference in this subsection to
4 the tax imposed by section 3221(a) of such Code shall be
5 treated as a reference to so much of the tax as is attrib-
6 utable to the rate in effect under section 3111(a) of such
7 Code."

8 (d) CLARIFICATION OF APPLICABLE RAILROAD RE-
9 TIREMENT TAX FOR HOSPITAL INSURANCE TAX CRED-
10 IT.—Section 7005(b)(1) of the Families First Coronavirus
11 Response Act is amended as follows:

12 "(1) IN GENERAL.—The credit allowed by sec-
13 tion 7001 and the credit allowed by section 7003
14 shall each be increased by the amount of the tax im-
15 posed by section 3111(b) of the Internal Revenue
16 Code of 1986 and so much of the taxes imposed
17 under section 3221(a) of such Code as are attrib-
18 utable to the rate in effect under section 3111(b) of
19 such Code on qualified sick leave wages, or qualified
20 family leave wages, for which credit is allowed under
21 such section 7001 or 7003 (respectively).".

22 (e) EFFECTIVE DATE.—The amendments made by
23 this section shall take effect as if included in the provisions
24 of the Families First Coronavirus Response Act to which
25 they relate.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002578

274

## SEC. 20227. CREDITS NOT ALLOWED TO CERTAIN LARGE EMPLOYERS.

1
2

3    (a) CREDIT FOR REQUIRED PAID SICK LEAVE.—

4        (1) IN GENERAL.—Section 7001(a) of the Fam-

5    ilies First Coronavirus Response Act is amended by

6    striking "In the case of an employer" and inserting

7    "In the case of an eligible employer".

8        (2) ELIGIBLE EMPLOYER.—Section 7001(c) of

9    the Families First Coronavirus Response Act, as

10    amended by the preceding provisions of this Act, is

11    amended by striking "For purposes of this section,

12    the term" and all that precedes it and inserting the

13    following:

14    "(c) DEFINITIONS.—For purposes of this section—

15        "(1) ELIGIBLE EMPLOYER.—The term 'eligible

16    employer' means any employer other than an appli-

17    cable large employer (as defined in section

18    4980H(c)(2), determined by substituting '500' for

19    '50' each place it appears in subparagraphs (A) and

20    (B) thereof and without regard to subparagraphs

21    (D) and (F) thereof). For purposes of the preceding

22    sentence, the Government of the United States, the

23    government of any State or political subdivision

24    thereof, or any agency or instrumentality of any of

25    the foregoing shall not be treated as an applicable

26    large employer.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002579

275

1       "(2) QUALIFIED SICK LEAVE WAGES.—The

2   term".

3   (b) CREDIT FOR REQUIRED PAID FAMILY LEAVE.—

4       (1) IN GENERAL.—Section 7003(a) of the Fam-

5   ilies First Coronavirus Response Act is amended by

6   striking "In the case of an employer" and inserting

7   "In the case of an eligible employer".

8       (2) ELIGIBLE EMPLOYER.—Section 7003(e) of

9   the Families First Coronavirus Response Act, as

10  amended by the preceding provisions of this Act, is

11  amended by striking "For purposes of this section,

12  the term" and all that precedes it and inserting the

13  following:

14  "(e) DEFINITIONS.—For purposes of this section—

15      "(1) ELIGIBLE EMPLOYER.—The term 'eligible

16  employer' means any employer other than an appli-

17  cable large employer (as defined in section

18  4980H(c)(2), determined by substituting '500' for

19  '50' each place it appears in subparagraphs (A) and

20  (B) thereof and without regard to subparagraphs

21  (D) and (F) thereof). For purposes of the preceding

22  sentence, the Government of the United States, the

23  government of any State or political subdivision

24  thereof, or any agency or instrumentality of any of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002580

276

1 the foregoing, shall not be treated as an applicable

2 large employer.

3  "(2) QUALIFIED FAMILY LEAVE WAGES.—The

4 term".

5 (c) EFFECTIVE DATE.—The amendments made by

6 this section shall apply to wages paid after the date of

7 the enactment of this Act.

8     Subtitle D—Other Relief

**9 SEC. 20231. PAYROLL TAX DEFERRAL ALLOWED FOR RE-**

**10     CIPIENTS OF CERTAIN LOAN FORGIVENESS.**

11 (a) IN GENERAL.—Section 2302(a) of the CARES

12 Act is amended by striking paragraph (3).

13 (b) EFFECTIVE DATE.—The amendment made by

14 this section shall take effect as if included in section 2302

15 of the CARES Act.

**16 SEC. 20232. EMERGENCY FINANCIAL AID GRANTS.**

17 (a) IN GENERAL.—In the case of a student receiving

18 a qualified emergency financial aid grant—

19  (1) such grant shall not be included in the

20  gross income of such individual for purposes of the

21  Internal Revenue Code of 1986, and

22  (2) such grant shall not be treated as described

23  in subparagraph (A), (B), or (C) of section

24  25A(g)(2) of such Code.

1    (b) DEFINITIONS.—For purposes of this subsection,

2  the term "qualified emergency financial aid grant"

3  means—

4         (1) any emergency financial aid grant awarded

5      by an institution of higher education under section

6      3504 of the CARES Act,

7         (2) any emergency financial aid grant from an

8      institution of higher education made with funds

9      made available under section 18004 of the CARES

10      Act, and

11         (3) any other emergency financial aid grant

12      made to a student from a Federal agency, a State,

13      an Indian tribe, an institution of higher education,

14      or a scholarship-granting organization (including a

15      tribal organization, as defined in section 4 of the In-

16      dian Self-Determination and Education Assistance

17      Act (25 U.S.C.5304)) for the purpose of providing

18      financial relief to students enrolled at institutions of

19      higher education in response to a qualifying emer-

20      gency (as defined in section 3502(a)(4) of the

21      CARES Act).

22    (c) LIMITATION.—This section shall not apply to that

23  portion of any amount received which represents payment

24  for teaching, research, or other services required as a con-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002582

278

1 dition for receiving the qualified emergency financial aid

2 grant.

3     (d) EFFECTIVE DATE.—This section shall apply to

4 qualified emergency financial aid grants made after March

5 26, 2020.

6 **SEC. 20233. CERTAIN LOAN FORGIVENESS AND OTHER**

7 **BUSINESS FINANCIAL ASSISTANCE UNDER**

8 **CARES ACT NOT INCLUDIBLE IN GROSS IN-**

9 **COME.**

10     (a) UNITED STATES TREASURY PROGRAM MANAGE-

11 MENT AUTHORITY.—For purposes of the Internal Rev-

12 enue Code of 1986, no amount shall be included in gross

13 income by reason of loan forgiveness described in section

14 1109(d)(2)(D) of the CARES Act.

15     (b) EMERGENCY EIDL GRANTS.—For purposes of

16 the Internal Revenue Code of 1986, any advance described

17 in section 1110(e) of the CARES Act shall not be included

18 in the gross income of the person that receives such ad-

19 vance.

20     (c) SUBSIDY FOR CERTAIN LOAN PAYMENTS.—For

21 purposes of the Internal Revenue Code of 1986, any pay-

22 ment described in section 1112(c) of the CARES Act shall

23 not be included in the gross income of the person on whose

24 behalf such payment is made.

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002583

279

1    (d) EFFECTIVE DATE.—Subsections (a), (b), and (c)

2 shall apply to taxable years ending after the date of the

3 enactment of the CARES Act.

**4 SEC. 20234. AUTHORITY TO WAIVE CERTAIN INFORMATION**

**5         REPORTING REQUIREMENTS.**

6    The Secretary of the Treasury (or the Secretary's

7 delegate) may provide an exception from any requirement

8 to file an information return otherwise required by chapter

9 61 of the Internal Revenue Code of 1986 with respect to

10 any amount excluded from gross income by reason of sec-

11 tion 1106(i) of the CARES Act or section 20232 or 20233

12 of this Act.

**13 SEC. 20235. CLARIFICATION OF TREATMENT OF EXPENSES**

**14         PAID OR INCURRED WITH PROCEEDS FROM**

**15         CERTAIN GRANTS AND LOANS.**

16    (a) IN GENERAL.—For purposes of the Internal Rev-

17 enue Code of 1986 and notwithstanding any other provi-

18 sion of law, any deduction and the basis of any property

19 shall be determined without regard to whether any amount

20 is excluded from gross income under section 20233 of this

21 Act or section 1106(i) of the CARES Act.

22    (b) CLARIFICATION OF EXCLUSION OF LOAN FOR-

23 GIVENESS.—Section 1106(i) of the CARES Act is amend-

24 ed to read as follows:

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002584

1    ''(i) TAXABILITY.—For purposes of the Internal Rev-
2    enue Code of 1986, no amount shall be included in the
3    gross income of the eligible recipient by reason of forgive-
4    ness of indebtedness described in subsection (b).''.

5    (c) EFFECTIVE DATE.—Subsection (a) and the
6    amendment made by subsection (b) shall apply to taxable
7    years ending after the date of the enactment of the
8    CARES Act.

## SEC. 20236. REINSTATEMENT OF CERTAIN PROTECTIONS FOR TAXPAYER RETURN INFORMATION.

11    (a) IN GENERAL.—Section 6103(a)(3) of the Internal
12    Revenue Code of 1986, as amended by section 3516 of
13    the CARES Act, is amended by striking ''(13)(A),
14    (13)(B), (13)(C), (13)(D)(i), (16)'' and inserting ''(13),
15    (16)''.

16    (b) RECORDS REQUIREMENTS.—Section
17    6103(p)(3)(A) of such Code, as so amended, is amended
18    by striking ''(12), (13)(A), (13)(B), (13)(C), (13)(D)(i)''
19    and inserting ''(12),''.

20    (c) APPLICATION OF SAFEGUARDS.—Section
21    6103(p)(4) of such Code, as so amended, is amended by
22    striking ''(13)(A), (13)(B), (13)(C), (13)(D)(i)'' each
23    place it appears and inserting ''(13)''.

24    (d) EFFECTIVE DATE.—The amendments made by
25    this section shall apply to disclosures made after the date

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002585

281

1  of the enactment of the FUTURE Act (Public Law 116–

2  91).

3  TITLE III—NET OPERATING LOSSES

4  **SEC. 20301. LIMITATION ON EXCESS BUSINESS LOSSES OF**

5  **NON-CORPORATE TAXPAYERS RESTORED**

6  **AND MADE PERMANENT.**

7  (a) IN GENERAL.—Section 461(l)(1) of the Internal

8  Revenue Code of 1986 is amended to read as follows:

9  "(1) LIMITATION.—In the case of a taxpayer

10  other than a corporation, any excess business loss of

11  the taxpayer shall not be allowed.".

12  (b) FARMING LOSSES.—Section 461 of such Code is

13  amended by striking subsection (j).

14  (c) EFFECTIVE DATE.—The amendments made by

15  this section shall apply to taxable years beginning after

16  December 31, 2017.

17  **SEC. 20302. CERTAIN TAXPAYERS ALLOWED CARRYBACK OF**

18  **NET OPERATING LOSSES ARISING IN 2019 AND**

19  **2020.**

20  (a) CARRYBACK OF LOSSES ARISING IN 2019 AND

21  2020.—

22  (1) IN GENERAL.—Section 172(b)(1)(D)(i) of

23  the Internal Revenue Code of 1986 is amended to

24  read as follows:

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002586

282

1          "(i) IN GENERAL.—In the case of any

2      net operating loss arising in a taxable year

3      beginning after December 31, 2018, and

4      before January 1, 2021, and to which sub-

5      paragraphs (B) and (C)(i) do not apply,

6      such loss shall be a net operating loss

7      carryback to each taxable year preceding

8      the taxable year of such loss, but not to

9      any taxable year beginning before January

10      1, 2018.".

11      (2) CONFORMING AMENDMENTS.—

12          (A) The heading for section 172(b)(1)(D)

13      of such Code is amended by striking "2018,

14      2019, AND" and inserting "2019 AND".

15          (B) Section 172(b)(1)(D) of such Code is

16      amended by striking clause (iii) and by redesig-

17      nating clauses (iv) and (v) as clauses (iii) and

18      (iv), respectively.

19          (C) Section 172(b)(1)(D)(iii) of such Code,

20      as so redesignated, is amended by striking

21      "(i)(I)" and inserting "(i)".

22          (D) Section 172(b)(1)(D)(iv) of such Code,

23      as so redesignated, is amended—

24          (i) by striking "If the 5-year

25      carryback period under clause (i)(I)" in

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002587

283

1        subclause (I) and inserting "If the

2        carryback period under clause (i)", and

3                (ii) by striking "2018 or" in subclause

4        (II).

5    (b) DISALLOWED FOR CERTAIN TAXPAYERS.—Sec-

6  tion 172(b)(1)(D) of such Code, as amended by the pre-

7  ceding provisions of this Act, is amended by adding at the

8  end the following new clauses:

9                "(v) CARRYBACK DISALLOWED FOR

10        CERTAIN TAXPAYERS.—Clause (i) shall not

11        apply with respect to any loss arising in a

12        taxable year in which—

13                "(I) the taxpayer (or any related

14                person) is not allowed a deduction

15                under this chapter for the taxable

16                year by reason of section 162(m) or

17                section 280G, or

18                "(II) the taxpayer (or any related

19                person) is a specified corporation for

20                the taxable year.

21                "(vi) SPECIFIED CORPORATION.—For

22        purposes of clause (v)—

23                "(I) IN GENERAL.—The term

24                'specified corporation' means, with re-

25                spect to any taxable year, a corpora-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002588

284

1   tion the aggregate distributions (in-
2   cluding redemptions) of which during
3   all taxable years ending after Decem-
4   ber 31, 2017, exceed the sum of appli-
5   cable stock issued of such corporation
6   and 5 percent of the fair market value
7   of the stock of such corporation as of
8   the last day of the taxable year.

9   ''(II) APPLICABLE STOCK
10  ISSUED.—The term 'applicable stock
11  issued' means, with respect to any
12  corporation, the aggregate fair market
13  value of stock (as of the issue date of
14  such stock) issued by the corporation
15  during all taxable years ending after
16  December 31, 2017, in exchange for
17  money or property other than stock in
18  such corporation.

19  ''(III) CERTAIN PREFERRED
20  STOCK DISREGARDED.—For purposes
21  of subclause (I), stock described in
22  section 1504(a)(4), and distributions
23  (including redemptions) with respect
24  to such stock, shall be disregarded.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002589

285

1          "(vii) RELATED PERSON.—For pur-
2          poses of clause (v), a person is a related
3          person to a taxpayer if the related person
4          bears a relationship to the taxpayer speci-
5          fied in section 267(b) or section
6          707(b)(1).".

7     (c) EFFECTIVE DATE.—The amendments made by
8  this section shall take effect as if included in the enact-
9  ment of section 2302(b) of the Coronavirus Aid, Relief,
10 and Economic Security Act.

g:\VHLC\051220\051220.072.xml      (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002590

286

# DIVISION C—HEALTH PROVISIONS

## TITLE I—MEDICAID PROVISIONS

COVID–19-RELATED TEMPORARY INCREASE OF MEDICAID

FMAP

SEC. 30101.

(a) IN GENERAL.—Section 6008 of the Families First Coronavirus Response Act (42 U.S.C. 1396d note) is amended—

　　(1) in subsection (a)—

　　　　(A) by inserting "(or, if later, June 30, 2021)" after "last day of such emergency period occurs"; and

　　　　(B) by striking "6.2 percentage points." and inserting "the percentage points specified in subsection (e). In no case may the application of this section result in the Federal medical assistance percentage determined for a State being more than 95 percent."; and

　　(2) by adding at the end the following new subsections:

"(e) SPECIFIED PERCENTAGE POINTS.—For purposes of subsection (a), the percentage points specified in this subsection are—

　　"(1) for each calendar quarter occurring during the period beginning on the first day of the emer-

g:\VHLC\051220\051220.072.xml　　(763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002591

1    gency period described in paragraph (1)(B) of sec-

2    tion 1135(g) of the Social Security Act (42 U.S.C.

3    1320b-5(g)) and ending on June 30, 2020, 6.2 per-

4    centage points;

5         ''(2) for each calendar quarter occurring during

6    the period beginning on July 1, 2020, and ending on

7    June 30, 2021, 14 percentage points; and

8         ''(3) for each calendar quarter, if any, occurring

9    during the period beginning on July 1, 2021, and

10   ending on the last day of the calendar quarter in

11   which the last day of such emergency period occurs,

12   6.2 percentage points.

13   ''(f) CLARIFICATIONS.—

14        ''(1) In the case of a State that treats an indi-

15   vidual described in subsection (b)(3) as eligible for

16   the benefits described in such subsection, for the pe-

17   riod described in subsection (a), expenditures for

18   medical assistance and administrative costs attrib-

19   utable to such individual that would not otherwise be

20   included as expenditures under section 1903 of the

21   Social Security Act shall be regarded as expendi-

22   tures under the State plan approved under title XIX

23   of the Social Security Act or for administration of

24   such State plan.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002592

288

1      "(2) The limitations on payment under sub-

2  sections (f) and (g) of section 1108 of the Social Se-

3  curity Act (42 U.S.C. 1308) shall not apply to Fed-

4  eral payments made under section 1903(a)(1) of the

5  Social Security Act (42 U.S.C. 1396b(a)(1)) attrib-

6  utable to the increase in the Federal medical assist-

7  ance percentage under this section.

8      "(3) Expenditures attributable to the increased

9  Federal medical assistance percentage under this

10  section shall not be counted for purposes of the limi-

11  tations under section 2104(b)(4) of such Act (42

12  U.S.C. 1397dd(b)(4)).

13      "(g) SCOPE OF APPLICATION.—An increase in the

14  Federal medical assistance percentage for a State under

15  this section shall not be taken into account for purposes

16  of payments under part D of title IV of the Social Security

17  Act (42 U.S.C. 651 et seq.).".

18      (b) EFFECTIVE DATE.—The amendments made by

19  subsection (a) shall take effect and apply as if included

20  in the enactment of section 6008 of the Families First

21  Coronavirus Response Act (Public Law 116–127).

22  LIMITATION ON ADDITIONAL SECRETARIAL ACTION WITH

23      RESPECT TO MEDICAID SUPPLEMENTAL PAYMENTS

24      REPORTING REQUIREMENTS

25  SEC. 30102.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002593

289

1    (a) IN GENERAL.—Notwithstanding any other provi-
2  sion of law, during the period that begins on the date of
3  enactment of this section and ends on the last day of the
4  emergency period described in paragraph (1)(B) of section
5  1135(g) of the Social Security Act (42 U.S.C. 1320b–
6  5(g)), the Secretary of Health and Human Services shall
7  not take any action (through promulgation of regulation,
8  issue of regulatory guidance, or otherwise) to—

9        (1) finalize or otherwise implement provisions
10      contained in the proposed rule published on Novem-
11      ber 18, 2019, on pages 63722 through 63785 of vol-
12      ume 84, Federal Register (relating to parts 430,
13      433, 447, 455, and 457 of title 42, Code of Federal
14      Regulations); or

15        (2) promulgate or implement any rule or provi-
16      sion similar to the provisions described in paragraph
17      (1) pertaining to the Medicaid program established
18      under title XIX of the Social Security Act (42
19      U.S.C. 1396 et seq.) or the State Children's Health
20      Insurance Program established under title XXI of
21      such Act (42 U.S.C. 1397aa et seq.).

22    (b) CONTINUATION OF OTHER SECRETARIAL AU-
23  THORITY.—Nothing in this section shall be construed as
24  prohibiting the Secretary during the period described in
25  subsection (a) from taking any action (through promulga-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002594

290

1   tion of regulation, issuance of regulatory guidance, or

2   other administrative action) to enforce a provision of law

3   in effect as of the date of enactment of this section with

4   respect to the Medicaid program established under title

5   XIX of the Social Security Act (42 U.S.C. 1396 et seq.)

6   or the State Children's Health Insurance Program estab-

7   lished under title XXI of such Act (42 U.S.C. 1397aa et

8   seq.), or to promulgate or implement a new rule or provi-

9   sion during such period with respect to such programs,

10   other than a rule or provision described in subsection (a)

11   and subject to the prohibition set forth in that subsection.

12   ADDITIONAL SUPPORT FOR MEDICAID HOME AND COMMU-

13       NITY-BASED SERVICES DURING THE COVID–19 EMER-

14       GENCY PERIOD

15   SEC. 30103.

16   (a) INCREASED FMAP.—

17       (1) IN GENERAL.—Notwithstanding section

18   1905(b) of the Social Security Act (42 U.S.C.

19   1396d(b)), in the case of an HCBS program State,

20   the Federal medical assistance percentage deter-

21   mined for the State under section 1905(b) of such

22   Act and, if applicable, increased under subsection

23   (y), (z), or (aa) of section 1905 of such Act (42

24   U.S.C. 1396d), section 1915(k) of such Act (42

25   U.S.C. 1396n(k)), or section 6008(a) of the Fami-

26   lies First Coronavirus Response Act (Public Law

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002595

G:\CMTE\AP\16\FY20\_D\HEROES.XML

291

1   116–127), shall be increased by 10 percentage
2   points with respect to expenditures of the State
3   under the State Medicaid program for home and
4   community-based services that are provided during
5   the HCBS program improvement period. In no case
6   may the application of the previous sentence result
7   in the Federal medical assistance percentage deter-
8   mined for a State being more than 95 percent.

9       (2) DEFINITIONS.—In this section:

10          (A) HCBS PROGRAM IMPROVEMENT PE-
11      RIOD.—The term "HCBS program improve-
12      ment period" means, with respect to a State,
13      the period—

14              (i) beginning on July 1, 2020; and

15              (ii) ending on June 30, 2021.

16          (B) HCBS PROGRAM STATE.—The term
17      "HCBS program State" means a State that
18      meets the condition described in subsection (b)
19      by submitting an application described in such
20      subsection, which is approved by the Secretary
21      pursuant to subsection (c).

22          (C) HOME AND COMMUNITY-BASED SERV-
23      ICES.—The term "home and community-based
24      services" means home health care services au-
25      thorized under paragraph (7) of section 1905(a)

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002596

292

1   of the Social Security Act (42 U.S.C.
2   1396d(a)), personal care services authorized
3   under paragraph (24) of such section, PACE
4   services authorized under paragraph (26) of
5   such section, services authorized under sub-
6   sections (b), (c), (i), (j), and (k) of section 1915
7   of such Act (42 U.S.C. 1396n), such services
8   authorized under a waiver under section 1115
9   of such Act (42 U.S.C. 1315), and such other
10   services specified by the Secretary.

11   (b) CONDITION.—The condition described in this sub-
12   section, with respect to a State, is that the State submits
13   an application to the Secretary, at such time and in such
14   manner as specified by the Secretary, that includes, in ad-
15   dition to such other information as the Secretary shall re-
16   quire—

17       (1) a description of which activities described in
18       subsection (d) that a state plans to implement and
19       a description of how it plans to implement such ac-
20       tivities;

21       (2) assurances that the Federal funds attrib-
22       utable to the increase under subsection (a) will be
23       used—

24           (A) to implement the activities described in
25           subsection (d); and

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002597

293

1          (B) to supplement, and not supplant, the

2          level of State funds expended for home and

3          community-based services for eligible individ-

4          uals through programs in effect as of the date

5          of the enactment of this section; and

6      (3) assurances that the State will conduct ade-

7    quate oversight and ensure the validity of such data

8    as may be required by the Secretary.

9    (c) APPROVAL OF APPLICATION.—Not later than 90

10  days after the date of submission of an application of a

11  State under subsection (b), the Secretary shall certify if

12  the application is complete. Upon certification that an ap-

13  plication of a State is complete, the application shall be

14  deemed to be approved for purposes of this section.

15    (d) ACTIVITIES TO IMPROVE THE DELIVERY OF

16  HCBS.—

17    (1) IN GENERAL.—A State shall work with

18    community partners, such as Area Agencies on

19    Aging, Centers for Independent Living, non-profit

20    home and community-based services providers, and

21    other entities providing home and community-based

22    services, to implement—

23          (A) the purposes described in paragraph

24          (2) during the COVID–19 public health emer-

25          gency period; and

DOC_0002598

294

1          (B) the purposes described in paragraph

2     (3) after the end of such emergency period.

3          (2) FOCUSED AREAS OF HCBS IMPROVE-

4     MENT.—The purposes described in this paragraph,

5     with respect to a State, are the following:

6          (A) To increase rates for home health

7          agencies and agencies that employ direct sup-

8          port professionals (including independent pro-

9          viders in a self-directed or consumer-directed

10         model) to provide home and community-based

11         services under the State Medicaid program,

12         provided that any agency or individual that re-

13         ceives payment under such an increased rate in-

14         creases the compensation it pays its home

15         health workers or direct support professionals.

16         (B) To provide paid sick leave, paid family

17         leave, and paid medical leave for home health

18         workers and direct support professionals.

19         (C) To provide hazard pay, overtime pay,

20         and shift differential pay for home health work-

21         ers and direct support professionals.

22         (D) To provide home and community-

23         based services to eligible individuals who are on

24         waiting lists for programs approved under sec-

DOC_0002599

295

1 tions 1115 or 1915 of the Social Security Act

2 (42 U.S.C. 1315, 1396n).

3 (E) To purchase emergency supplies and

4 equipment, which may include items not typi-

5 cally covered under the Medicaid program, such

6 as personal protective equipment, necessary to

7 enhance access to services and to protect the

8 health and well-being of home health workers

9 and direct support professionals.

10 (F) To pay for the travel of home health

11 workers and direct support professionals to con-

12 duct home and community-based services.

13 (G) To recruit new home health workers

14 and direct support professionals.

15 (H) To support family care providers of el-

16 igible individuals with needed supplies and

17 equipment, which may include items not typi-

18 cally covered under the Medicaid program, such

19 as personal protective equipment, and pay.

20 (I) To pay for training for home health

21 workers and direct support professionals that is

22 specific to the COVID–19 public health emer-

23 gency.

24 (J) To pay for assistive technologies, staff-

25 ing, and other costs incurred during the

296

1    COVID–19 public health emergency period in
2    order to facilitate community integration and
3    ensure an individual's person-centered service
4    plan continues to be fully implemented.

5    (K) To prepare information and public
6    health and educational materials in accessible
7    formats (including formats accessible to people
8    with low literacy or intellectual disabilities)
9    about prevention, treatment, recovery and other
10   aspects of COVID–19 for eligible individuals,
11   their families, and the general community
12   served by agencies described in subparagraph
13   (A).

14   (L) To pay for American sign language in-
15   terpreters to assist in providing home and com-
16   munity-based services to eligible individuals and
17   to inform the general public about COVID–19.

18   (M) To allow day services providers to pro-
19   vide home and community-based services.

20   (N) To pay for other expenses deemed ap-
21   propriate by the Secretary to enhance, expand,
22   or strengthen Home and Community-Based
23   Services, including retainer payments, and ex-
24   penses which meet the criteria of the home and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002601

G:\CMTE\AP\16\FY20\_D\HEROES.XML

297

1  community-based settings rule published on

2  January 16, 2014.

3  (3) PERMISSIBLE USES AFTER THE EMER-

4  GENCY PERIOD.—The purpose described in this

5  paragraph, with respect to a State, is to assist eligi-

6  ble individuals who had to relocate to a nursing fa-

7  cility or institutional setting from their homes dur-

8  ing the COVID–19 public health emergency period

9  in—

10   (A) moving back to their homes (including

11   by paying for moving costs, first month's rent,

12   and other one-time expenses and start-up

13   costs);

14   (B) resuming home and community-based

15   services;

16   (C) receiving mental health services and

17   necessary rehabilitative service to regain skills

18   lost while relocated during the public health

19   emergency period; and

20   (D) while funds attributable to the in-

21   creased FMAP under this section remain avail-

22   able, continuing home and community-based

23   services for eligible individuals who were served

24   from a waiting list for such services during the

25   public health emergency period.

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002602

298

1    (e) REPORTING REQUIREMENTS.—

2    (1) STATE REPORTING REQUIREMENTS.—Not

3    later than December 31, 2022, any State with re-

4    spect to which an application is approved by the Sec-

5    retary pursuant to subsection (c) shall submit a re-

6    port to the Secretary that contains the following in-

7    formation:

8    (A) Activities and programs that were

9    funded using Federal funds attributable to such

10    increase.

11    (B) The number of eligible individuals who

12    were served by such activities and programs.

13    (C) The number of eligible individuals who

14    were able to resume home and community-

15    based services as a result of such activities and

16    programs.

17    (2) HHS EVALUATION.—

18    (A) IN GENERAL.—The Secretary shall

19    evaluate the implementation and outcomes of

20    this section in the aggregate using an external

21    evaluator with experience evaluating home and

22    community-based services, disability programs,

23    and older adult programs.

DOC_0002603

299

1     (B) EVALUATION CRITERIA.—For pur-
2     poses of subparagraph (A), the external eval-
3     uator shall—
4         (i) document and evaluate changes in
5         access, availability, and quality of home
6         and community-based services in each
7         HCBS program State;
8         (ii) document and evaluate aggregate
9         changes in access, availability, and quality
10       of home and community-based services
11       across all such States; and
12       (iii) evaluate the implementation and
13       outcomes of this section based on—
14           (I) the impact of this section on
15           increasing funding for home and com-
16           munity-based services;
17           (II) the impact of this section on
18           achieving targeted access, availability,
19           and quality of home and community-
20           based services; and
21           (III) promising practices identi-
22           fied by activities conducted pursuant
23           to subsection (d) that increase access
24           to, availability of, and quality of home
25           and community-based services.

DOC_0002604

300

1          (C) DISSEMINATION OF EVALUATION FIND-

2     INGS.—The Secretary shall—

3               (i) disseminate the findings from the

4          evaluations conducted under this para-

5          graph to—

6                    (I) all State Medicaid directors;

7               and

8                    (II) the Committee on Energy

9               and Commerce of the House of Rep-

10              resentatives, the Committee on Fi-

11              nance of the Senate, and the Special

12              Committee on Aging of the Senate;

13              and

14              (ii) make all evaluation findings pub-

15         licly available in an accessible electronic

16         format and any other accessible format de-

17         termined appropriate by the Secretary.

18         (D) OVERSIGHT.—Each State with respect

19    to which an application is approved by the Sec-

20    retary pursuant to subsection (c) shall ensure

21    adequate oversight of the expenditure of Fed-

22    eral funds pursuant to such increase in accord-

23    ance with the Medicaid regulations, including

24    section 1115 and 1915 waiver regulations and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002605

301

1        special terms and conditions for any relevant

2        waiver or grant program.

3        (3) NON-APPLICATION OF THE PAPERWORK RE-

4    DUCTION ACT.—Chapter 35 of title 44, United

5    States Code (commonly referred to as the "Paper-

6    work Reduction Act of 1995"), shall not apply to the

7    provisions of this subsection.

8    (f) ADDITIONAL DEFINITIONS.—In this section:

9        (1) COVID–19 PUBLIC HEALTH EMERGENCY

10    PERIOD.—The term "COVID–19 public health emer-

11    gency period" means the portion of the emergency

12    period described in paragraph (1)(B) of section

13    1135(g) of the Social Security Act (42 U.S.C.

14    1320b–5(g)) beginning on or after the date of the

15    enactment of this Act.

16        (2) ELIGIBLE INDIVIDUAL.—The term "eligible

17    individual" means an individual who is eligible for or

18    enrolled for medical assistance under a State Med-

19    icaid program.

20        (3) MEDICAID PROGRAM.—The term "Medicaid

21    program" means, with respect to a State, the State

22    program under title XIX of the Social Security Act

23    (42 U.S.C. 1396 et seq.) (including any waiver or

24    demonstration under such title or under section

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002606

302

1   1115 of such Act (42 U.S.C. 1315) relating to such

2   title).

3       (4) SECRETARY.—The term "Secretary" means

4   the Secretary of Health and Human Services.

5       (5) STATE.—The term "State" has the mean-

6   ing given such term for purposes of title XIX of the

7   Social Security Act (42 U.S.C. 1396 et seq.).

8   COVERAGE AT NO COST SHARING OF COVID–19 VACCINE

9                    AND TREATMENT

10  SEC. 30104.

11  (a) MEDICAID.—

12      (1) IN GENERAL.—Section 1905(a)(4) of the

13  Social Security Act (42 U.S.C. 1396d(a)(4)) is

14  amended—

15          (A) by striking "and (D)" and inserting

16      "(D)"; and

17          (B) by striking the semicolon at the end

18      and inserting "; (E) during the portion of the

19      emergency period described in paragraph (1)(B)

20      of section 1135(g) beginning on the date of the

21      enactment of the HEROES Act, a COVID–19

22      vaccine licensed under section 351 of the Public

23      Health Service Act, or approved or authorized

24      under sections 505 or 564 of the Federal Food,

25      Drug, and Cosmetic Act, and administration of

26      the vaccine; (F) during such portion of the

DOC_0002607

303

1    emergency period described in paragraph (1)(B)
2    of section 1135(g), items or services for the
3    prevention or treatment of COVID–19, includ-
4    ing drugs approved or authorized under such
5    section 505 or such section 564 or, without re-
6    gard to the requirements of section
7    1902(a)(10)(B) (relating to comparability), in
8    the case of an individual who is diagnosed with
9    or presumed to have COVID–19, during such
10   portion of such emergency period during which
11   such individual is infected (or presumed in-
12   fected) with COVID–19, the treatment of a
13   condition that may complicate the treatment of
14   COVID–19;''.

15   (2) PROHIBITION OF COST SHARING.—

16       (A) IN GENERAL.—Subsections (a)(2) and
17   (b)(2) of section 1916 of the Social Security
18   Act (42 U.S.C. 1396o) are each amended—

19           (i) in subparagraph (F), by striking
20       ''or'' at the end;

21           (ii) in subparagraph (G), by striking
22       ''; and'' and inserting '', or''; and

23           (iii) by adding at the end the fol-
24       lowing subparagraphs:

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002608

G:\CMTE\AP\16\FY20\_D\HEROES.XML

304

1          "(H) during the portion of the emergency

2      period described in paragraph (1)(B) of section

3      1135(g) beginning on the date of the enactment

4      of this subparagraph, a COVID–19 vaccine li-

5      censed under section 351 of the Public Health

6      Service Act, or approved or authorized under

7      section 505 or 564 of the Federal Food, Drug,

8      and Cosmetic Act, and the administration of

9      such vaccine, or

10         "(I) during such portion of the emergency

11     period described in paragraph (1)(B) of section

12     1135(g), any item or service furnished for the

13     treatment of COVID–19, including drugs ap-

14     proved or authorized under such section 505 or

15     such section 564 or, in the case of an individual

16     who is diagnosed with or presumed to have

17     COVID–19, during the portion of such emer-

18     gency period during which such individual is in-

19     fected (or presumed infected) with COVID–19,

20     the treatment of a condition that may com-

21     plicate the treatment of COVID–19; and".

22         (B) APPLICATION TO ALTERNATIVE COST

23     SHARING.—Section 1916A(b)(3)(B) of the So-

24     cial Security Act (42 U.S.C. 1396o–1(b)(3)(B))

25     is amended—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002609

305

1    (i) in clause (xi), by striking ''any

2    visit'' and inserting ''any service''; and

3    (ii) by adding at the end the following

4    clauses:

5    ''(xii) During the portion of the emer-

6    gency period described in paragraph (1)(B)

7    of section 1135(g) beginning on the date of

8    the enactment of this clause, a COVID–19

9    vaccine licensed under section 351 of the

10    Public Health Service Act, or approved or

11    authorized under section 505 or 564 of the

12    Federal Food, Drug, and Cosmetic Act,

13    and the administration of such vaccine.

14    ''(xiii) During such portion of the

15    emergency period described in paragraph

16    (1)(B) of section 1135(g), an item or serv-

17    ice furnished for the treatment of COVID–

18    19, including drugs approved or authorized

19    under such section 505 or such section 564

20    or, in the case of an individual who is diag-

21    nosed with or presumed to have COVID–

22    19, during such portion of such emergency

23    period during which such individual is in-

24    fected (or presumed infected) with

25    COVID–19, the treatment of a condition

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002610

306

1    that may complicate the treatment of

2    COVID–19.''.

3    (C) CLARIFICATION.—The amendments

4    made by this subsection shall apply with respect

5    to a State plan of a territory in the same man-

6    ner as a State plan of one of the 50 States.

7 (b) STATE PEDIATRIC VACCINE DISTRIBUTION PRO-

8 GRAM.—Section 1928 of the Social Security Act (42

9 U.S.C. 1396s) is amended—

10    (1) in subsection (a)(1)—

11    (A) in subparagraph (A), by striking '';

12    and'' and inserting a semicolon;

13    (B) in subparagraph (B), by striking the

14    period and inserting ''; and''; and

15    (C) by adding at the end the following sub-

16    paragraph:

17    ''(C) during the portion of the emergency

18    period described in paragraph (1)(B) of section

19    1135(g) beginning on the date of the enactment

20    of this subparagraph, each vaccine-eligible child

21    (as defined in subsection (b)) is entitled to re-

22    ceive a COVID–19 vaccine from a program-reg-

23    istered provider (as defined in subsection

24    (h)(7)) without charge for—

25     ''(i) the cost of such vaccine; or

DOC_0002611

307

1         ''(ii) the administration of such vac-

2         cine.'';

3     (2) in subsection (c)(2)—

4         (A) in subparagraph (C)(ii), by inserting '',

5     but, during the portion of the emergency period

6     described in paragraph (1)(B) of section

7     1135(g) beginning on the date of the enactment

8     of the HEROES Act, may not impose a fee for

9     the administration of a COVID–19 vaccine'' be-

10     fore the period; and

11         (B) by adding at the end the following sub-

12     paragraph:

13         ''(D) The provider will provide and admin-

14     ister an approved COVID–19 vaccine to a vac-

15     cine-eligible child in accordance with the same

16     requirements as apply under the preceding sub-

17     paragraphs to the provision and administration

18     of a qualified pediatric vaccine to such a

19     child.''; and

20     (3) in subsection (d)(1), in the first sentence,

21   by inserting '', including, during the portion of the

22   emergency period described in paragraph (1)(B) of

23   section 1135(g) beginning on the date of the enact-

24   ment of the HEROES Act, with respect to a

25   COVID–19 vaccine licensed under section 351 of the

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002612

308

1    Public Health Service Act, or approved or authorized

2    under section 505 or 564 of the Federal Food,

3    Drug, and Cosmetic Act'' before the period.

4    (c) CHIP.—

5       (1) IN GENERAL.—Section 2103(c) of the So-

6    cial Security Act (42 U.S.C. 1397cc(c)) is amended

7    by adding at the end the following paragraph:

8       ''(11) COVERAGE OF COVID–19 VACCINES AND

9    TREATMENT.—Regardless of the type of coverage

10    elected by a State under subsection (a), child health

11    assistance provided under such coverage for targeted

12    low-income children and, in the case that the State

13    elects to provide pregnancy-related assistance under

14    such coverage pursuant to section 2112, such preg-

15    nancy-related assistance for targeted low-income

16    pregnant women (as defined in section 2112(d))

17    shall include coverage, during the portion of the

18    emergency period described in paragraph (1)(B) of

19    section 1135(g) beginning on the date of the enact-

20    ment of this paragraph, of—

21       ''(A) a COVID–19 vaccine licensed under

22    section 351 of the Public Health Service Act, or

23    approved or authorized under section 505 or

24    564 of the Federal Food, Drug, and Cosmetic

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002613

309

1    Act, and the administration of such vaccine;

2    and

3        ''(B) any item or service furnished for the

4    treatment of COVID–19, including drugs ap-

5    proved or authorized under such section 505 or

6    such section 564, or, in the case of an indi-

7    vidual who is diagnosed with or presumed to

8    have COVID–19, during the portion of such

9    emergency period during which such individual

10   is infected (or presumed infected) with COVID–

11   19, the treatment of a condition that may com-

12   plicate the treatment of COVID–19.''.

13   (2) PROHIBITION OF COST SHARING.—Section

14   2103(e)(2) of the Social Security Act (42 U.S.C.

15   1397cc(e)(2)), as amended by section 6004(b)(3) of

16   the Families First Coronavirus Response Act, is

17   amended—

18       (A) in the paragraph header, by inserting

19   ''A COVID–19 VACCINE, COVID–19 TREATMENT,''

20   before ''OR PREGNANCY-RELATED ASSISTANCE'';

21   and

22       (B) by striking ''visits described in section

23   1916(a)(2)(G), or'' and inserting ''services de-

24   scribed in section 1916(a)(2)(G), vaccines de-

25   scribed in section 1916(a)(2)(H) administered

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002614

310

1 during the portion of the emergency period de-

2 scribed in paragraph (1)(B) of section 1135(g)

3 beginning on the date of the enactment of the

4 HEROES Act, items or services described in

5 section 1916(a)(2)(I) furnished during such

6 emergency period, or''.

7 (d) CONFORMING AMENDMENTS.—Section 1937 of

8 the Social Security Act (42 U.S.C. 1396u–7) is amend-

9 ed—

10 (1) in subsection (a)(1)(B), by inserting '',

11 under subclause (XXIII) of section

12 1902(a)(10)(A)(ii),'' after ''section

13 1902(a)(10)(A)(i)''; and

14 (2) in subsection (b)(5), by adding before the

15 period the following: '', and, effective on the date of

16 the enactment of the HEROES Act, must comply

17 with subparagraphs (F) through (I) of subsections

18 (a)(2) and (b)(2) of section 1916 and subsection

19 (b)(3)(B) of section 1916A''.

20 (e) EFFECTIVE DATE.—The amendments made by

21 this section shall take effect on the date of enactment of

22 this Act and shall apply with respect to a COVID–19 vac-

23 cine beginning on the date that such vaccine is licensed

24 under section 351 of the Public Health Service Act (42

311

1  U.S.C. 262), or approved or authorized under section 505

2  or 564 of the Federal Food, Drug, and Cosmetic Act.

3  OPTIONAL COVERAGE AT NO COST SHARING OF COVID–19

4      TREATMENT AND VACCINES UNDER MEDICAID FOR

5      UNINSURED INDIVIDUALS

6      SEC. 30105.

7      (a) IN GENERAL.—Section 1902(a)(10) of the Social

8  Security Act (42 U.S.C. 1396a(a)(10) is amended, in the

9  matter following subparagraph (G), by striking "and any

10  visit described in section 1916(a)(2)(G)" and inserting the

11  following: ", any COVID–19 vaccine that is administered

12  during any such portion (and the administration of such

13  vaccine), any item or service that is furnished during any

14  such portion for the treatment of COVID–19, including

15  drugs approved or authorized under section 505 or 564

16  of the Federal Food, Drug, and Cosmetic Act, or, in the

17  case of an individual who is diagnosed with or presumed

18  to have COVID–19, during the period such individual is

19  infected (or presumed infected) with COVID–19, the

20  treatment of a condition that may complicate the treat-

21  ment of COVID–19, and any services described in section

22  1916(a)(2)(G)".

23      (b) DEFINITION OF UNINSURED INDIVIDUAL.—

24      (1) IN GENERAL.—Subsection (ss) of section

25      1902 of the Social Security Act (42 U.S.C. 1396a)

26      is amended to read as follows:

312

1    "(ss) UNINSURED INDIVIDUAL DEFINED.—For pur-
2    poses of this section, the term 'uninsured individual'
3    means, notwithstanding any other provision of this title,
4    any individual who is not covered by minimum essential
5    coverage (as defined in section 5000A(f)(1) of the Internal
6    Revenue Code of 1986).''.

7         (2) EFFECTIVE DATE.—The amendment made
8         by paragraph (1) shall take effect and apply as if in-
9         cluded in the enactment of the Families First
10        Coronavirus Response Act (Public Law 116–127).

11   (c) CLARIFICATION REGARDING EMERGENCY SERV-
12   ICES FOR CERTAIN INDIVIDUALS.—Section 1903(v)(2) of
13   the Social Security Act (42 U.S.C. 1396b(v)(2)) is amend-
14   ed by adding at the end the following flush sentence:

15        "For purposes of subparagraph (A), care and serv-
16        ices described in such subparagraph include any in
17        vitro   diagnostic   product   described   in   section
18        1905(a)(3)(B) (and the administration of such prod-
19        uct), any COVID–19 vaccine (and the administra-
20        tion of such vaccine), any item or service that is fur-
21        nished for the treatment of COVID–19, including
22        drugs approved or authorized under section 505 or
23        564 of the Federal Food, Drug, and Cosmetic Act,
24        or a condition that may complicate the treatment of

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002617

313

1    COVID–19, and any services described in section

2    1916(a)(2)(G).''.

3    (d) INCLUSION OF COVID–19 CONCERN AS AN

4 EMERGENCY CONDITION.—Section 1903(v)(3) of the So-

5 cial Security Act (42 U.S.C. 1396b(v)(3)) is amended by

6 adding at the end the following flush sentence:

7    ''Such term includes any indication that an alien de-

8    scribed in paragraph (1) may have contracted

9    COVID–19.''.

10 EXTENSION OF FULL FEDERAL MEDICAL ASSISTANCE

11    PERCENTAGE TO INDIAN HEALTH CARE PROVIDERS

12    SEC. 30106.

13    Section 1905 of the Social Security Act (42 U.S.C.

14 1396d) is amended—

15    (1) in subsection (a), by amending paragraph

16    (9) to read as follows:

17    ''(9) clinic services furnished by or under the

18    direction of a physician, without regard to whether

19    the clinic itself is administered by a physician, in-

20    cluding—

21        ''(A) such services furnished outside the

22        clinic by clinic personnel to an eligible indi-

23        vidual who does not reside in a permanent

24        dwelling or does not have a fixed home or mail-

25        ing address; and

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002618

314

1            ''(B) for the period beginning on July 1,
2          2020, and ending on June 30, 2021, such serv-
3          ices provided outside the clinic on the basis of
4          a referral from a clinic administered by an In-
5          dian Health Program (as defined in paragraph
6          (12) of section 4 of the Indian Health Care Im-
7          provement Act, or an Urban Indian Organiza-
8          tion as defined in paragraph (29) of section 4
9          of such Act that has a grant or contract with
10         the Indian Health Service under title V of such
11         Act;''.

12         (2) in subsection (b), by inserting after ''(as de-
13      fined in section 4 of the Indian Health Care Im-
14      provement Act)'' the following: ''; for the period be-
15      ginning on July 1, 2020, and ending on June 30,
16      2021, the Federal medical assistance percentage
17      shall also be 100 per centum with respect to
18      amounts expended as medical assistance for services
19      which are received through an Urban Indian organi-
20      zation (as defined in section 4 of the Indian Health
21      Care Improvement Act) that has a grant or contract
22      with the Indian Health Service under title V of such
23      Act; and, for such period, the Federal medical as-
24      sistance percentage shall also be 100 per centum
25      with respect to amounts expended as medical assist-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002619

315

1 ance for services provided to an individual who is eli-
2 gible to receive services from the Indian Health
3 Service and is eligible for assistance under the State
4 plan, by a participating provider under the State
5 plan whether provided directly or on the basis of a
6 referral from the Indian Health Service, a Indian
7 Health Service facility operated by an Indian tribe
8 or tribal organization, or an Urban Indian organiza-
9 tion (as defined in section 4 of such Act) that has
10 a grant or contract with the Indian Health Service
11 under title V of such Act''.

12 MEDICAID COVERAGE FOR CITIZENS OF FREELY
13 ASSOCIATED STATES

14 SEC. 30107.

15 (a) IN GENERAL.—Section 402(b)(2) of the Personal
16 Responsibility and Work Opportunity Reconciliation Act
17 of 1996 (8 U.S.C. 1612(b)(2)) is amended by adding at
18 the end the following new subparagraph:

19 ''(G) MEDICAID EXCEPTION FOR CITIZENS
20 OF FREELY ASSOCIATED STATES.—With respect
21 to eligibility for benefits for the designated Fed-
22 eral program defined in paragraph (3)(C) (re-
23 lating to the Medicaid program), section 401(a)
24 and paragraph (1) shall not apply to any indi-
25 vidual who lawfully resides in 1 of the 50 States
26 or the District of Columbia in accordance with

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002620

316

1    the Compacts of Free Association between the
2    Government of the United States and the Gov-
3    ernments of the Federated States of Micro-
4    nesia, the Republic of the Marshall Islands, and
5    the Republic of Palau and shall not apply, at
6    the option of the Governor of Puerto Rico, the
7    Virgin Islands, Guam, the Northern Mariana
8    Islands, or American Samoa as communicated
9    to the Secretary of Health and Human Services
10   in writing, to any individual who lawfully re-
11   sides in the respective territory in accordance
12   with such Compacts.''.

13   (b) EXCEPTION TO 5–YEAR LIMITED ELIGIBILITY.—
14   Section 403(d) of such Act (8 U.S.C. 1613(d)) is amend-
15   ed—

16       (1) in paragraph (1), by striking ''or'' at the
17       end;

18       (2) in paragraph (2), by striking the period at
19       the end and inserting ''; or''; and

20       (3) by adding at the end the following new
21       paragraph:

22       ''(3)  an  individual  described  in  section
23       402(b)(2)(G), but only with respect to the des-
24       ignated  Federal  program  defined  in  section
25       402(b)(3)(C).''.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002621

317

1 (c) DEFINITION OF QUALIFIED ALIEN.—Section

2 431(b) of such Act (8 U.S.C. 1641(b)) is amended—

3     (1) in paragraph (6), by striking "; or" at the

4     end and inserting a comma;

5     (2) in paragraph (7), by striking the period at

6     the end and inserting ", or"; and

7     (3) by adding at the end the following new

8     paragraph:

9     "(8) an individual who lawfully resides in the

10    United States in accordance with a Compact of Free

11    Association referred to in section 402(b)(2)(G), but

12    only with respect to the designated Federal program

13    defined in section 402(b)(3)(C) (relating to the Med-

14    icaid program).".

15 (d) APPLICATION TO STATE PLANS.—Section

16 1902(a)(10)(A)(i) of the Social Security Act (42 U.S.C.

17 1396a(a)(10)(A)(i)) is amended by inserting after sub-

18 clause (IX) the following:

19          "(X) who are described in section

20          402(b)(2)(G) of the Personal Respon-

21          sibility and Work Opportunity Rec-

22          onciliation Act of 1996 and eligible

23          for benefits under this title by reason

24          of application of such section;".

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002622

318

1    (e) CONFORMING AMENDMENTS.—Section 1108 of

2 the Social Security Act (42 U.S.C. 1308) is amended—

3        (1) in subsection (f), in the matter preceding

4        paragraph (1), by striking "subsections (g) and (h)

5        and section 1935(e)(1)(B)" and inserting "sub-

6        sections (g), (h), and (i) and section 1935(e)(1)(B)";

7        and

8        (2) by adding at the end the following:

9    "(i) EXCLUSION OF MEDICAL ASSISTANCE EXPENDI-

10 TURES FOR CITIZENS OF FREELY ASSOCIATED STATES.—

11 Expenditures for medical assistance provided to an indi-

12 vidual described in section 431(b)(8) of the Personal Re-

13 sponsibility and Work Opportunity Reconciliation Act of

14 1996 (8 U.S.C. 1641(b)(8)) shall not be taken into ac-

15 count for purposes of applying payment limits under sub-

16 sections (f) and (g).".

17    (f) EFFECTIVE DATE.—The amendments made by

18 this section shall apply to benefits for items and services

19 furnished on or after the date of the enactment of this

20 Act.

21    TEMPORARY INCREASE IN MEDICAID DSH ALLOTMENTS

22    SEC. 30108.

23    (a) IN GENERAL.—Section 1923(f)(3) of the Social

24 Security Act (42 U.S.C. 1396r–4(f)(3)) is amended—

DOC_0002623

1        (1) in subparagraph (A), by striking "and sub-

2    paragraph (E)" and inserting "and subparagraphs

3    (E) and (F)"; and

4        (2) by adding at the end the following new sub-

5    paragraph:

6        "(F) TEMPORARY INCREASE IN ALLOT-

7    MENTS DURING CERTAIN PUBLIC HEALTH

8    EMERGENCY.—The DSH allotment for any

9    State for each of fiscal years 2020 and 2021 is

10    equal to 102.5 percent of the DSH allotment

11    that would be determined under this paragraph

12    for the State for each respective fiscal year

13    without application of this subparagraph, not-

14    withstanding subparagraphs (B) and (C). For

15    each fiscal year after fiscal year 2021, the DSH

16    allotment for a State for such fiscal year is

17    equal to the DSH allotment that would have

18    been determined under this paragraph for such

19    fiscal year if this subparagraph had not been

20    enacted.

21    ".

22   (b) DSH ALLOTMENT ADJUSTMENT FOR TEN-

23  NESSEE.—Section 1923(f)(6)(A)(vi) of the Social Security

24  Act (42 U.S.C. 1396r–4(f)(6)(A)(vi)) is amended—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002624

320

1      (1) by striking ''Notwithstanding any other pro-

2  vision of this subsection'' and inserting the fol-

3  lowing:

4          ''(I)   IN   GENERAL.—Notwith-

5          standing any other provision of this

6          subsection (except as provided in sub-

7          clause (II) of this clause)''; and

8      (2) by adding at the end the following:

9          ''(II)  TEMPORARY  INCREASE  IN

10         ALLOTMENTS.—The   DSH   allotment

11         for Tennessee for each of fiscal years

12         2020  and  2021  shall  be  equal  to

13         $54,427,500.''.

14  (c) SENSE OF CONGRESS.—It is the sense of Con-

15  gress that a State should prioritize making payments

16  under the State plan of the State under title XIX of the

17  Social Security Act (42 U.S.C. 1396 et seq.) (or a waiver

18  of such plan) to disproportionate share hospitals that have

19  a higher share of COVID–19 patients relative to other

20  such hospitals in the State.

21      EXTENSION OF EXISTING SECTION 1115

22          DEMONSTRATIONS

23  SEC. 30109.

24  (a) APPLICABILITY.—This section shall apply with

25  respect to demonstrations operated by States pursuant to

26  section 1115(a) of the Social Security Act (42 U.S.C.

321

1    1315(a)) to promote the objectives of title XIX or XXI

2    of the Social Security Act with a project term set to end

3    on or before February 28, 2021.

4       (b) APPROVAL OF EXTENSION.—Upon request by a

5    State, the Secretary of Health and Human Services shall

6    approve an extension of the waiver and expenditure au-

7    thorities for a demonstration project described in sub-

8    section (a) for a period up to and including December 31,

9    2021, to ensure continuity of programs and funding dur-

10   ing the emergency period described in section

11   1135(g)(1)(B) of the Social Security Act (42 U.S.C.

12   1320b–5(g)(1)(B)).

13      (c) EXTENSION TERMS AND CONDITIONS.—(1) The

14   approval pursuant to this section shall extend the terms

15   and conditions that applied to the demonstration project

16   to the extension period. Financial terms and conditions

17   shall continue at levels equivalent to the prior demonstra-

18   tion or program year. All demonstration program compo-

19   nents shall be extended to operate through the end of the

20   extension term. In its request for an extension, the State

21   shall identify operational and programmatic changes nec-

22   essary to continue and stabilize programs into the exten-

23   sion period and shall work with the Secretary of Health

24   and Human Services to implement such changes.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002626

322

1　　(2) Notwithstanding the foregoing, the State may re-
2　quest, and the Secretary of Health and Human Services
3　may approve, modifications to a demonstration project's
4　terms and conditions to address the impact of the federally
5　designated public health emergency with respect to
6　COVID–19. Such modifications may, at the option of the
7　State, become effective retroactive to the start of the cal-
8　endar quarter in which the first day of the emergency pe-
9　riod described in paragraph (1)(B) of section 1135(g) of
10　the Social Security Act (42 U.S.C. 1320b–5(g)) occurs.

11　　(d) Budget Neutrality.—Budget neutrality for
12　extensions under this section shall be deemed to have been
13　met at the conclusion of the extension period, and States
14　receiving extensions under this section shall not be re-
15　quired to submit a budget neutrality analysis for the ex-
16　tension period.

17　　(e) Expedited Application Process.—The Fed-
18　eral and State public notice and comment procedures or
19　other time constraints otherwise applicable to demonstra-
20　tion project amendments shall be waived to expedite a
21　State's extension request pursuant to this section. The
22　Secretary of Health and Human Services shall approve the
23　extension application within 45 days of a State's submis-
24　sion of its request, or such other timeframe as is mutually
25　agreed to with the State.

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002627

323

1    (f) CONTINUATION OF SECRETARIAL AUTHORITY

2 UNDER DECLARED EMERGENCY.—This section does not

3 restrict the Secretary of Health and Human Services from

4 exercising existing flexibilities through demonstration

5 projects operated pursuant to section 1115 of the Social

6 Security Act (42 U.S.C. 1315) in conjunction with the

7 COVID–19 public health emergency.

8    (g) RULE OF CONSTRUCTION.—Nothing in this sec-

9 tion shall authorize the Secretary of Health and Human

10 Service to approve or extend a waiver that fails to meet

11 the requirements of section 1115 of the Social Security

12 Act (42 U.S.C. 1315).

13 ALLOWING FOR MEDICAL ASSISTANCE UNDER MEDICAID

14       FOR INMATES DURING 30-DAY PERIOD PRECEDING

15       RELEASE

16    SEC. 30110.

17    (a) IN GENERAL.—The subdivision (A) following

18 paragraph (30) of section 1905(a) of the Social Security

19 Act (42 U.S.C. 1396d(a)) is amended by inserting ''and

20 except during the 30-day period preceding the date of re-

21 lease of such individual from such public institution'' after

22 ''medical institution''.

23    (b) REPORT.—Not later than June 30, 2022, the

24 Medicaid and CHIP Payment and Access Commission

25 shall submit a report to Congress on the Medicaid inmate

26 exclusion under the subdivision (A) following paragraph

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002628

324

1 (30) of section 1905(a) of the Social Security Act (42
2 U.S.C. 1396d(a)). Such report may, to the extent prac-
3 ticable, include the following information:

4     (1) The number of incarcerated individuals who
5 would otherwise be eligible to enroll for medical as-
6 sistance under a State plan approved under title
7 XIX of the Social Security Act (42 U.S.C. 1396 et
8 seq.) (or a waiver of such a plan).

9     (2) Access to health care for incarcerated indi-
10 viduals, including a description of medical services
11 generally available to incarcerated individuals.

12     (3) A description of current practices related to
13 the discharge of incarcerated individuals, including
14 how prisons interact with State Medicaid agencies to
15 ensure that such individuals who are eligible to en-
16 roll for medical assistance under a State plan or
17 waiver described in paragraph (1) are so enrolled.

18     (4) If determined appropriate by the Commis-
19 sion, recommendations for Congress, the Depart-
20 ment of Health and Human Services, or States re-
21 garding the Medicaid inmate exclusion.

22     (5) Any other information that the Commission
23 determines would be useful to Congress.

24     MEDICAID COVERAGE OF CERTAIN MEDICAL
25                  TRANSPORTATION

26 SEC. 30111.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002629

325

1    (a) CONTINUING REQUIREMENT OF MEDICAID COV-
2    ERAGE OF NECESSARY TRANSPORTATION.—

3        (1) REQUIREMENT.—Section 1902(a)(4) of the
4    Social Security Act (42 U.S.C. 1396a(a)(4)) is
5    amended—

6            (A) by striking "and including provision
7        for utilization" and inserting "including provi-
8        sion for utilization"; and

9            (B) by inserting after "supervision of ad-
10       ministration of the plan" the following: ", and,
11       subject to section 1903(i), including a specifica-
12       tion that the single State agency described in
13       paragraph (5) will ensure necessary transpor-
14       tation for beneficiaries under the State plan to
15       and from providers and a description of the
16       methods that such agency will use to ensure
17       such transportation".

18       (2) APPLICATION WITH RESPECT TO BENCH-
19   MARK BENEFIT PACKAGES AND BENCHMARK EQUIV-
20   ALENT COVERAGE.—Section 1937(a)(1) of the Social
21   Security Act (42 U.S.C. 1396u–7(a)(1)) is amend-
22   ed—

23           (A) in subparagraph (A), by striking "sub-
24       section (E)" and inserting "subparagraphs (E)
25       and (F)"; and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002630

326

1    (B) by adding at the end the following new

2  subparagraph:

3    "(F) Necessary transportation.—The

4  State may only exercise the option under sub-

5  paragraph (A)(i) if, subject to section

6  1903(i)(9) and in accordance with section

7  1902(a)(4), the benchmark benefit package or

8  benchmark equivalent coverage described in

9  such subparagraph (or the State)—

10     "(i) ensures necessary transportation

11     for individuals enrolled under such package

12     or coverage to and from providers; and

13     "(ii) provides a description of the

14     methods that will be used to ensure such

15     transportation.

16  ".

17  (3) Limitation on federal financial par-

18  ticipation.—Section 1903(i) of the Social Security

19  Act (42 U.S.C. 1396b(i)) is amended by inserting

20  after paragraph (8) the following new paragraph:

21    "(9) with respect to any amount expended

22    for non-emergency transportation described in

23    section 1902(a)(4), unless the State plan pro-

24    vides for the methods and procedures required

25    under section 1902(a)(30)(A); or".

DOC_0002631

327

1       (4) EFFECTIVE DATE.—The amendments made
2   by this subsection shall take effect on the date of the
3   enactment of this Act and shall apply to transpor-
4   tation furnished on or after such date.

5   (b) MEDICAID PROGRAM INTEGRITY MEASURES RE-
6   LATED TO COVERAGE OF NONEMERGENCY MEDICAL
7   TRANSPORTATION.—

8       (1) GAO STUDY.—Not later than two years
9   after the date of the enactment of this Act, the
10   Comptroller General of the United States shall con-
11   duct a study, and submit to Congress, a report on
12   coverage under the Medicaid program under title
13   XIX of the Social Security Act of nonemergency
14   transportation to medically necessary services. Such
15   study shall take into account the 2009 report of the
16   Office of the Inspector General of the Department of
17   Health and Human Services, titled "Fraud and
18   Abuse Safeguards for Medicaid Nonemergency Med-
19   ical Transportation" (OEI–06–07–003200). Such
20   report shall include the following:

21           (A) An examination of the 50 States and
22       the District of Columbia to identify safeguards
23       to prevent and detect fraud and abuse with re-
24       spect to coverage under the Medicaid program

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002632

328

1   of nonemergency transportation to medically
2   necessary services.

3       (B) An examination of transportation bro-
4   kers to identify the range of safeguards against
5   such fraud and abuse to prevent improper pay-
6   ments for such transportation.

7       (C) Identification of the numbers, types,
8   and outcomes of instances of fraud and abuse,
9   with respect to coverage under the Medicaid
10  program of such transportation, that State
11  Medicaid Fraud Control Units have investigated
12  in recent years.

13      (D) Identification of commonalities or
14  trends in program integrity, with respect to
15  such coverage, to inform risk management
16  strategies of States and the Centers for Medi-
17  care & Medicaid Services.

18  (2) STAKEHOLDER WORKING GROUP.—

19      (A) IN GENERAL.—Not later than one year
20  after the date of the enactment of this Act, the
21  Secretary of Health and Human Services,
22  through the Centers of Medicare & Medicaid
23  Services, shall convene a series of meetings to
24  obtain input from appropriate stakeholders to
25  facilitate discussion and shared learning about

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002633

329

1   the leading practices for improving Medicaid
2   program integrity, with respect to coverage of
3   nonemergency transportation to medically nec-
4   essary services.

5   (B) TOPICS.—The meetings convened
6   under subparagraph (A) shall—

7   (i) focus on ongoing challenges to
8   Medicaid program integrity as well as lead-
9   ing practices to address such challenges;
10   and

11   (ii) address specific challenges raised
12   by stakeholders involved in coverage under
13   the Medicaid program of nonemergency
14   transportation to medically necessary serv-
15   ices, including unique considerations for
16   specific groups of Medicaid beneficiaries
17   meriting particular attention, such as
18   American Indians and tribal land issues or
19   accommodations for individuals with dis-
20   abilities.

21   (C) STAKEHOLDERS.—Stakeholders de-
22   scribed in subparagraph (A) shall include indi-
23   viduals from State Medicaid programs, brokers
24   for nonemergency transportation to medically
25   necessary services that meet the criteria de-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002634

330

1    scribed in section 1902(a)(70)(B) of the Social

2    Security Act (42 U.S.C. 1396a(a)(70)(B)), pro-

3    viders (including transportation network compa-

4    nies), Medicaid patient advocates, and such

5    other individuals specified by the Secretary.

6    (3) GUIDANCE REVIEW.—Not later than 18

7    months after the date of the enactment of this Act,

8    the Secretary of Health and Human Services,

9    through the Centers for Medicare & Medicaid Serv-

10   ices, shall assess guidance issued to States by the

11   Centers for Medicare & Medicaid Services relating to

12   Federal requirements for nonemergency transpor-

13   tation to medically necessary services under the

14   Medicaid program under title XIX of the Social Se-

15   curity Act and update such guidance as necessary to

16   ensure States have appropriate and current guidance

17   in designing and administering coverage under the

18   Medicaid program of nonemergency transportation

19   to medically necessary services.

20   (4) NEMT TRANSPORTATION PROVIDER AND

21   DRIVER REQUIREMENTS.—

22       (A) STATE PLAN REQUIREMENT.—Section

23   1902(a) of the Social Security Act (42 U.S.C.

24   1396a(a)) is amended—

DOC_0002635

331

1      (i) by striking "and" at the end of

2    paragraph (85);

3      (ii) by striking the period at the end

4    of paragraph (86) and inserting "; and";

5    and

6      (iii) by inserting after paragraph (86)

7    the following new paragraph:

8    "(87) provide for a mechanism, which may in-

9 clude attestation, that ensures that, with respect to

10 any provider (including a transportation network

11 company) or individual driver of nonemergency

12 transportation to medically necessary services receiv-

13 ing payments under such plan (but excluding any

14 public transit authority), at a minimum—

15    "(A) each such provider and individual

16    driver is not excluded from participation in any

17    Federal health care program (as defined in sec-

18    tion 1128B(f)) and is not listed on the exclu-

19    sion list of the Inspector General of the Depart-

20    ment of Health and Human Services;

21    "(B) each such individual driver has a

22    valid driver's license;

23    "(C) each such provider has in place a

24    process to address any violation of a State drug

25    law; and

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002636

332

1    "(D) each such provider has in place a
2    process to disclose to the State Medicaid pro-
3    gram the driving history, including any traffic
4    violations, of each such individual driver em-
5    ployed by such provider, including any traffic
6    violations.".

7        (B) EFFECTIVE DATE.—

8            (i) IN GENERAL.—Except as provided
9        in clause (ii), the amendments made by
10       subparagraph (A) shall take effect on the
11       date of the enactment of this Act and shall
12       apply to services furnished on or after the
13       date that is one year after the date of the
14       enactment of this Act.

15           (ii) EXCEPTION IF STATE LEGISLA-
16       TION REQUIRED.—In the case of a State
17       plan for medical assistance under title XIX
18       of the Social Security Act which the Sec-
19       retary of Health and Human Services de-
20       termines requires State legislation (other
21       than legislation appropriating funds) in
22       order for the plan to meet the additional
23       requirement imposed by the amendments
24       made by subparagraph (A), the State plan
25       shall not be regarded as failing to comply

g:\VHLC\051220\051220.072.xml       (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002637

333

1            with the requirements of such title solely
2            on the basis of its failure to meet this ad-
3            ditional requirement before the first day of
4            the first calendar quarter beginning after
5            the close of the first regular session of the
6            State legislature that begins after the date
7            of the enactment of this Act. For purposes
8            of the previous sentence, in the case of a
9            State that has a 2-year legislative session,
10           each year of such session shall be deemed
11           to be a separate regular session of the
12           State legislature.

13      (5) ANALYSIS OF T–MSIS DATA.—Not later
14 than one year after the date of the enactment of this
15 Act, the Secretary of Health and Human Services,
16 through the Centers for Medicare & Medicaid Serv-
17 ices, shall analyze, and submit to Congress a report
18 on, the nation-wide data set under the Transformed
19 Medicaid Statistical Information System to identify
20 recommendations relating to coverage under the
21 Medicaid program under title XIX of the Social Se-
22 curity Act of nonemergency transportation to medi-
23 cally necessary services.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002638

334

1     TITLE II—MEDICARE PROVISIONS

2   HOLDING   MEDICARE   BENEFICIARIES   HARMLESS   FOR

3       SPECIFIED   COVID–19   TREATMENT   SERVICES   FUR-

4       NISHED   UNDER   PART   A   OR   PART   B   OF   THE   MEDI-

5       CARE PROGRAM

6   SEC. 30201.

7     (a) IN GENERAL.—Notwithstanding any other provi-

8   sion of law, in the case of a specified COVID–19 treat-

9   ment service (as defined in subsection (b)) furnished dur-

10  ing any portion of the emergency period described in para-

11  graph (1)(B) of section 1135(g) of the Social Security Act

12  (42 U.S.C. 1320b-5(g)) beginning on or after the date of

13  the enactment of this Act to an individual entitled to bene-

14  fits under part A or enrolled under part B of title XVIII

15  of the Social Security Act (42 U.S.C. 1395 et seq.) for

16  which payment is made under such part A or such part

17  B, the Secretary of Health and Human Services (in this

18  section   referred   to   as   the   "Secretary")   shall   provide

19  that—

20        (1) any cost-sharing required (including any de-

21      ductible, copayment, or coinsurance) applicable to

22      such individual under such part A or such part B

23      with respect to such item or service is paid by the

24      Secretary; and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002639

335

1      (2) the provider of services or supplier (as de-

2    fined in section 1861 of the Social Security Act (42

3    U.S.C. 1395x)) does not hold such individual liable

4    for such requirement.

5   (b) DEFINITION OF SPECIFIED COVID–19 TREAT-

6 MENT SERVICES.—For purposes of this section, the term

7 ''specified COVID–19 treatment service'' means any item

8 or service furnished to an individual for which payment

9 may be made under part A or part B of title XVIII of

10 the Social Security Act (42 U.S.C. 1395 et seq.) if such

11 item or service is included in a claim with an ICD–10–

12 CM code relating to COVID–19 (as described in the docu-

13 ment entitled ''ICD–10–CM Official Coding Guidelines -

14 Supplement Coding encounters related to COVID–19

15 Coronavirus Outbreak'' published on February 20, 2020,

16 or as otherwise specified by the Secretary).

17   (c) RECOVERY OF COST-SHARING AMOUNTS PAID BY

18 THE SECRETARY IN THE CASE OF SUPPLEMENTAL IN-

19 SURANCE COVERAGE.—

20      (1) IN GENERAL.—In the case of any amount

21    paid by the Secretary pursuant to subsection (a)(1)

22    that the Secretary determines would otherwise have

23    been paid by a group health plan or health insurance

24    issuer (as such terms are defined in section 2791 of

25    the Public Health Service Act (42 U.S.C. 300gg–

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002640

336

1     91)), a private entity offering a medicare supple-

2     mental policy under section 1882 of the Social Secu-

3     rity Act (42 U.S.C. 1395ss), any other health plan

4     offering supplemental coverage, a State plan under

5     title XIX of the Social Security Act, or the Secretary

6     of Defense under the TRICARE program, such

7     plan, issuer, private entity, other health plan, State

8     plan, or Secretary of Defense, as applicable, shall

9     pay to the Secretary, not later than 1 year after

10     such plan, issuer, private entity, other health plan,

11     State plan, or Secretary of Defense receives a notice

12     under paragraph (3), such amount in accordance

13     with this subsection.

14     (2) REQUIRED INFORMATION.—Not later than

15     9 months after the date of the enactment of this

16     Act, each group health plan, health insurance issuer,

17     private entity, other health plan, State plan, and

18     Secretary of Defense described in paragraph (1)

19     shall submit to the Secretary such information as

20     the Secretary determines necessary for purposes of

21     carrying out this subsection. Such information so

22     submitted shall be updated by such plan, issuer, pri-

23     vate entity, other health plan, State plan, or Sec-

24     retary of Defense, as applicable, at such time and in

25     such manner as specified by the Secretary.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002641

337

1     (3) REVIEW OF CLAIMS AND NOTIFICATION.—
2   The Secretary shall establish a process under which
3   claims for items and services for which the Secretary
4   has paid an amount pursuant to subsection (a)(1)
5   are reviewed for purposes of identifying if such
6   amount would otherwise have been paid by a plan,
7   issuer, private entity, other health plan, State plan,
8   or Secretary of Defense described in paragraph (1).
9   In the case such a claim is so identified, the Sec-
10   retary shall determine the amount that would have
11   been otherwise payable by such plan, issuer, private
12   entity, other health plan, State plan, or Secretary of
13   Defense and notify such plan, issuer, private entity,
14   other health plan, State plan, or Secretary of De-
15   fense of such amount.

16     (4) ENFORCEMENT.—The Secretary may im-
17   pose a civil monetary penalty in an amount deter-
18   mined appropriate by the Secretary in the case of a
19   plan, issuer, private entity, other health plan, or
20   State plan that fails to comply with a provision of
21   this section. The provisions of section 1128A of the
22   Social Security Act shall apply to a civil monetary
23   penalty imposed under the previous sentence in the
24   same manner as such provisions apply to a penalty

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002642

338

1     or proceeding under subsection (a) or (b) of such

2     section.

3     (d) FUNDING.—The Secretary shall provide for the

4 transfer to the Centers for Medicare & Medicaid Program

5 Management Account from the Federal Hospital Insur-

6 ance Trust Fund and the Federal Supplementary Trust

7 Fund (in such portions as the Secretary determines appro-

8 priate) $100,000,000 for purposes of carrying out this

9 section.

10     (e) REPORT.—Not later than 3 years after the date

11 of the enactment of this Act, the Inspector General of the

12 Department of Health and Human Services shall submit

13 to Congress a report containing an analysis of amounts

14 paid pursuant to subsection (a)(1) compared to amounts

15 paid to the Secretary pursuant to subsection (c).

16     (f) IMPLEMENTATION.—Notwithstanding any other

17 provision of law, the Secretary may implement the provi-

18 sions of this section by program instruction or otherwise.

19 ENSURING COMMUNICATIONS ACCESSIBILITY FOR RESI-

20     DENTS OF SKILLED NURSING FACILITIES DURING

21     THE COVID–19 EMERGENCY PERIOD

22 SEC. 30202.

23     (a) IN GENERAL.—Section 1819(c)(3) of the Social

24 Security Act (42 U.S.C. 1395i–3(c)(3)) is amended—

25         (1) in subparagraph (D), by striking "and" at

26         the end;

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002643

339

1    (2) in subparagraph (E), by striking the period

2    and inserting ''; and''; and

3    (3) by adding at the end the following new sub-

4    paragraph:

5        ''(F) provide for reasonable access to the

6        use of a telephone, including TTY and TDD

7        services (as defined for purposes of section

8        483.10 of title 42, Code of Federal Regulations

9        (or a successor regulation)), and the internet

10       (to the extent available to the facility) and in-

11       form each such resident (or a representative of

12       such resident) of such access and any changes

13       in policies or procedures of such facility relating

14       to limitations on external visitors.''.

15   (b) COVID–19 PROVISIONS.—

16    (1) GUIDANCE.—Not later than 15 days after

17   the date of the enactment of this Act, the Secretary

18   of Health and Human Service shall issue guidance

19   on steps skilled nursing facilities may take to ensure

20   residents have access to televisitation during the

21   emergency period defined in section $1135(g)(1)(B)$

22   of the Social Security Act (42 U.S.C. 1320b–

23   $5(g)(1)(B)$). Such guidance shall include information

24   on how such facilities will notify residents of such

25   facilities, representatives of such residents, and rel-

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002644

340

1 atives of such residents of the rights of such resi-

2 dents to such televisitation, and ensure timely and

3 equitable access to such televisitation.

4 (2) REVIEW OF FACILITIES.—The Secretary of

5 Health and Human Services shall take such steps as

6 determined appropriate by the Secretary to ensure

7 that residents of skilled nursing facilities and rel-

8 atives of such residents are made aware of the ac-

9 cess rights described in section 1819(c)(3)(F) of the

10 Social Security Act (42 U.S.C. 1395i–3(c)(3)(F)).

11 MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT

12 SYSTEM OUTLIER PAYMENTS FOR COVID–19 PA-

13 TIENTS DURING CERTAIN EMERGENCY PERIOD

14 SEC. 30203.

15 (a) IN GENERAL.—Section 1886(d)(5)(A) of the So-

16 cial Security Act (42 U.S.C. 1395ww(d)(5)(A)) is amend-

17 ed—

18 (1) in clause (ii), by striking ''For cases'' and

19 inserting ''Subject to clause (vii), for cases'';

20 (2) in clause (iii), by striking ''The amount''

21 and inserting ''Subject to clause (vii), the amount'';

22 (3) in clause (iv), by striking ''The total

23 amount'' and inserting ''Subject to clause (vii), the

24 total amount''; and

25 (4) by adding at the end the following new

26 clause:

DOC_0002645

341

1 ''(vii) For discharges that have a primary or sec-
2 ondary diagnosis of COVID–19 and that occur during the
3 period beginning on the date of the enactment of this
4 clause and ending on the sooner of January 31, 2021, or
5 the last day of the emergency period described in section
6 1135(g)(1)(B), the amount of any additional payment
7 under clause (ii) for a subsection (d) hospital for such a
8 discharge shall be determined as if—

9     ''(I) clause (ii) was amended by striking 'plus
10     a fixed dollar amount determined by the Secretary';

11     ''(II) the reference in clause (iii) to 'approxi-
12     mate the marginal cost of care beyond the cutoff
13     point applicable under clause (i) or (ii)' were a ref-
14     erence to 'approximate the marginal cost of care be-
15     yond the cutoff point applicable under clause (i), or,
16     in the case of an additional payment requested
17     under clause (ii), be equal to 100 percent of the
18     amount by which the costs of the discharge for
19     which such additional payment is so requested ex-
20     ceed the applicable DRG prospective payment rate';
21     and

22     ''(III) clause (iv) does not apply.''.

23 (b) Exclusion From Reduction in Average
24 Standardized Amounts Payable to Hospitals Lo-
25 cated in Certain Areas.—Section 1886(d)(3)(B) of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002646

342

1 the Social Security Act (42 U.S.C. 1395ww(d)(3)(B)) is

2 amended by inserting before the period the following: '',

3 other than additional payments described in clause (vii)

4 of such paragraph''.

5 (c) APPLICATION TO SITE NEUTRAL IPPS PAYMENT

6 RATES.—Section 1886(m)(6)(B) of the Social Security

7 Act (42 U.S.C. 1395ww(m)(6)(B)) is amended—

8 (1) in clause (i)—

9 (A) in the matter preceding subclause (I),

10 by striking ''In this paragraph'' and inserting

11 ''Subject to clause (ii), in this paragraph'';

12 (B) in subclause (I), by striking ''clause

13 (iii)'' and inserting ''clause (iv)''; and

14 (C) in subclause (II), by striking ''clause

15 (ii)'' and inserting ''clause (iii)'';

16 (2) in clause (ii), in the matter preceding sub-

17 clause (I), by striking ''clause (iv)'' and inserting

18 ''clause (v)'';

19 (3) in clause (iii)(I), by striking ''clause (ii)''

20 and inserting ''clause (iii)'';

21 (4) in clause (iv), by striking ''clause (ii)(I)''

22 and inserting ''clause (iii)(I)'';

23 (5) by redesignating clauses (ii) through (iv) as

24 clauses (iii) through (v), respectively; and

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002647

343

1        (6) by inserting after clause (i) the following

2    new clause:

3                "(ii)   EXCEPTION.—Notwithstanding

4            clause (i), the term 'applicable site neutral

5            payment rate' means—

6                    "(I) for discharges that have a

7                primary or secondary diagnosis of

8                COVID–19 and that occur during any

9                portion of the emergency period de-

10               scribed in section 1135(g)(1)(B) oc-

11               curring during a cost reporting period

12               described in clause (i)(I), the greater

13               of the blended payment rate specified

14               in clause (iv) or the percent described

15               in clause (iii)(II); and

16                   "(II) for discharges that have a

17               primary or secondary diagnosis of

18               COVID–19 and that occur during any

19               portion of the emergency period de-

20               scribed in section 1135(g)(1)(B) oc-

21               curring during a cost reporting period

22               described in clause (i)(II), the percent

23               described in clause (iii)(II).".

24       (d) IMPLEMENTATION.—Notwithstanding any other

25    provision of law, the Secretary of Health and Human

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002648

G:\CMTE\AP\16\FY20\_D\HEROES.XML

344

1 Services may implement the amendments made by this

2 section by program instruction or otherwise.

3 COVERAGE OF TREATMENTS FOR COVID–19 AT NO COST

4 SHARING UNDER THE MEDICARE ADVANTAGE PROGRAM

5     SEC. 30204.

6     (a) IN GENERAL.—Section 1852(a)(1)(B) of the So-

7 cial Security Act (42 U.S.C. 1395w–22(a)(1)(B)) is

8 amended by adding at the end the following new clause:

9             ''(vii) SPECIAL COVERAGE RULES FOR

10          SPECIFIED COVID–19 TREATMENT SERV-

11          ICES.—Notwithstanding clause (i), in the

12          case of a specified COVID–19 treatment

13          service (as defined in section 30201(b) of

14          the HEROES Act) that is furnished dur-

15          ing a plan year occurring during any por-

16          tion of the emergency period defined in

17          section 1135(g)(1)(B) beginning on or

18          after the date of the enactment of this

19          clause, a Medicare Advantage plan may

20          not, with respect to such service, impose—

21               ''(I) any cost-sharing require-

22             ment (including a deductible, copay-

23             ment, or coinsurance requirement);

24             and

25               ''(II) in the case such service is a

26             critical specified COVID–19 treat-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002649

345

1             ment service (including ventilator

2             services and intensive care unit serv-

3             ices), any prior authorization or other

4             utilization management requirement.

5             A Medicare Advantage plan may not take

6             the application of this clause into account

7             for purposes of a bid amount submitted by

8             such plan under section 1854(a)(6).''.

9    (b) IMPLEMENTATION.—Notwithstanding any other

10 provision of law, the Secretary of Health and Human

11 Services may implement the amendments made by this

12 section by program instruction or otherwise.

13 REQUIRING COVERAGE UNDER MEDICARE PDPS AND MA–

14       PD PLANS, WITHOUT THE IMPOSITION OF COST

15       SHARING OR UTILIZATION MANAGEMENT REQUIRE-

16       MENTS, OF DRUGS INTENDED TO TREAT COVID–19

17       DURING CERTAIN EMERGENCIES

18 SEC. 30205.

19    (a) COVERAGE REQUIREMENT.—

20       (1) IN GENERAL.—Section 1860D–4(b)(3) of

21    the Social Security Act (42 U.S.C. 1395w–

22    104(b)(3)) is amended by adding at the end the fol-

23    lowing new subparagraph:

24          ''(I) REQUIRED INCLUSION OF DRUGS IN-

25       TENDED TO TREAT COVID–19.—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002650

346

1            "(i) IN GENERAL.—Notwithstanding

2      any other provision of law, a PDP sponsor

3      offering a prescription drug plan shall,

4      with respect to a plan year, any portion of

5      which occurs during the period described

6      in clause (ii), be required to—

7            "(I) include in any formulary—

8               "(aa) all covered part D

9           drugs with a medically accepted

10          indication (as defined in section

11          1860D–2(e)(4)) to treat COVID–

12          19 that are marketed in the

13          United States; and

14               "(bb) all drugs authorized

15          under section 564 or 564A of the

16          Federal Food, Drug, and Cos-

17          metic Act to treat COVID–19;

18          and

19            "(II) not impose any prior au-

20          thorization or other utilization man-

21          agement requirement with respect to

22          such drugs described in item (aa) or

23          (bb) of subclause (I) (other than such

24          a requirement that limits the quantity

25          of drugs due to safety).

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002651

347

1          "(ii) PERIOD DESCRIBED.—For pur-
2     poses of clause (i), the period described in
3     this clause is the period during which there
4     exists the public health emergency declared
5     by the Secretary pursuant to section 319
6     of the Public Health Service Act on Janu-
7     ary 31, 2020, entitled 'Determination that
8     a Public Health Emergency Exists Nation-
9     wide as the Result of the 2019 Novel
10    Coronavirus' (including any renewal of
11    such declaration pursuant to such sec-
12    tion).''.

13   (b) ELIMINATION OF COST SHARING.—

14        (1) ELIMINATION OF COST-SHARING FOR

15   DRUGS INTENDED TO TREAT COVID–19 UNDER

16   STANDARD AND ALTERNATIVE PRESCRIPTION DRUG

17   COVERAGE.—Section 1860D–2 of the Social Security

18   Act (42 U.S.C. 1395w–102) is amended—

19        (A) in subsection (b)—

20             (i) in paragraph (1)(A), by striking

21        "The coverage" and inserting "Subject to

22        paragraph (8), the coverage";

23             (ii) in paragraph (2)—

24                  (I) in subparagraph (A), by in-

25             serting after "Subject to subpara-

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002652

348

1              graphs (C) and (D)'' the following:

2              ''and paragraph (8)'';

3                   (II) in subparagraph (C)(i), by

4              striking ''paragraph (4)'' and insert-

5              ing ''paragraphs (4) and (8)''; and

6                   (III) in subparagraph (D)(i), by

7              striking ''paragraph (4)'' and insert-

8              ing ''paragraphs (4) and (8)'';

9              (iii) in paragraph (4)(A)(i), by strik-

10             ing ''The coverage'' and inserting ''Subject

11             to paragraph (8), the coverage''; and

12             (iv) by adding at the end the following

13             new paragraph:

14     ''(8) ELIMINATION OF COST-SHARING FOR

15 DRUGS INTENDED TO TREAT COVID–19.—The cov-

16 erage does not impose any deductible, copayment,

17 coinsurance, or other cost-sharing requirement for

18 drugs described in section 1860D–4(b)(3)(I)(i)(I)

19 with respect to a plan year, any portion of which oc-

20 curs during the period during which there exists the

21 public health emergency declared by the Secretary

22 pursuant to section 319 of the Public Health Service

23 Act on January 31, 2020, entitled 'Determination

24 that a Public Health Emergency Exists Nationwide

25 as the Result of the 2019 Novel Coronavirus' (in-

349

1   cluding any renewal of such declaration pursuant to

2   such section).''; and

3         (B) in subsection (c), by adding at the end

4         the following new paragraph:

5     ''(4) SAME ELIMINATION OF COST-SHARING FOR

6   DRUGS INTENDED TO TREAT COVID–19.—The cov-

7   erage is in accordance with subsection (b)(8).''.

8     (2) ELIMINATION OF COST-SHARING FOR

9   DRUGS INTENDED TO TREAT COVID–19 DISPENSED

10   TO INDIVIDUALS WHO ARE SUBSIDY ELIGIBLE INDI-

11   VIDUALS.—Section 1860D–14(a) of the Social Secu-

12   rity Act (42 U.S.C. 1395w–114(a)) is amended—

13         (A) in paragraph (1)—

14             (i) in subparagraph (D)—

15                 (I) in clause (ii), by striking ''In

16             the case of'' and inserting ''Subject to

17             subparagraph (F), in the case of'';

18             and

19                 (II) in clause (iii), by striking

20             ''In the case of'' and inserting ''Sub-

21             ject to subparagraph (F), in the case

22             of''; and

23             (ii) by adding at the end the following

24             new subparagraph:

G:\CMTE\AP\16\FY20\_D\HEROES.XML

350

1         "(F) ELIMINATION OF COST-SHARING FOR

2         DRUGS INTENDED TO TREAT COVID–19.—Cov-

3         erage that is in accordance with section

4         1860D–2(b)(8).''; and

5         (B) in paragraph (2)—

6         (i) in subparagraph (B), by striking

7         "A reduction" and inserting "Subject to

8         subparagraph (F), a reduction";

9         (ii) in subparagraph (D), by striking

10         "The substitution" and inserting "Subject

11         to subparagraph (F), the substitution";

12         (iii) in subparagraph (E), by inserting

13         after "Subject to" the following: "subpara-

14         graph (F) and"; and

15         (iv) by adding at the end the following

16         new subparagraph:

17         "(F) ELIMINATION OF COST-SHARING FOR

18         DRUGS INTENDED TO TREAT COVID–19.—Cov-

19         erage that is in accordance with section

20         1860D–2(b)(8).''.

21   (c) IMPLEMENTATION.—Notwithstanding any other

22 provision of law, the Secretary of Health and Human

23 Services may implement the amendments made by this

24 section by program instruction or otherwise.

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002655

351

1 MODIFYING THE ACCELERATED AND ADVANCE PAYMENT

2 PROGRAMS UNDER PARTS A AND B OF THE MEDI-

3 CARE PROGRAM DURING THE COVID–19 EMERGENCY

4 SEC. 30206.

5 (a) SPECIAL REPAYMENT RULES.—

6 (1) PART A.—Section 1815(f)(2)(C) of the So-

7 cial Security Act (42 U.S.C. 1395g(f)(2)(C)) is

8 amended to read as follows:

9 "(C) In the case of an accelerated payment

10 made under the program under subsection (e)(3) on

11 or after the date of the enactment of the CARES

12 Act and so made during the emergency period de-

13 scribed in section 1135(g)(1)(B)—

14 "(i) such payment shall be treated as if

15 such payment were made from the General

16 Fund of the Treasury; and

17 "(ii) upon request of the hospital, the Sec-

18 retary shall—

19 "(I) provide up to 1 year before

20 claims are offset to recoup such payment;

21 "(II) provide that any such offset of a

22 claim to recoup such payment shall not ex-

23 ceed 25 percent of the amount of such

24 claim; and

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002656

352

1            ''(III) allow not less than 2 years

2            from the date of the first accelerated pay-

3            ment before requiring that the outstanding

4            balance be paid in full.''.

5     (2) PART B.—In carrying out the program de-

6 scribed in section 421.214 of title 42, Code of Fed-

7 eral Regulations (or any successor regulation), in the

8 case of a payment made under such program on or

9 after the date of the enactment of the CARES Act

10 (Public Law 116–136) and so made during the

11 emergency period described in section $1135(g)(1)(B)$

12 of the Social Security Act (42 U.S.C. 1320b–

13 $5(g)(1)(B))$, the Secretary of Health and Human

14 Services shall—

15     (A) treat such payment as if such payment

16 were made from the General Fund of the

17 Treasury; and

18     (B) upon request of the entity receiving

19 such payment—

20         (i) provide up to 1 year before claims

21 are offset to recoup such payment;

22         (ii) provide that any such offset of a

23 claim to recoup such payment shall not ex-

24 ceed 25 percent of the amount of such

25 claim; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002657

353

1          (iii) allow not less than 2 years from
2              the date of the first advance payment be-
3              fore requiring that the outstanding balance
4              be paid in full.

5      (b) INTEREST RATES.—

6          (1) PART A.—Section 1815(d) of the Social Se-
7      curity Act (42 U.S.C. 1395g(d)) is amended by in-
8      serting before the period at the end the following:
9      "(or, in the case of such a determination made with
10     respect to a payment made on or after the date of
11     the enactment of the CARES Act and during the
12     emergency period described in section 1135(g)(1)(B)
13     under the program under subsection (e)(3), at a rate
14     of 1 percent)".

15         (2) PART B.—Section 1833(j) of the Social Se-
16     curity Act (42 U.S.C. 1395l(j)) is amended by in-
17     serting before the period at the end the following:
18     "(or, in the case of such a determination made with
19     respect to a payment made on or after the date of
20     the enactment of the CARES Act and during the
21     emergency period described in section 1135(g)(1)(B)
22     under the program described in section 421.214 of
23     title 42, Code of Federal Regulations (or any suc-
24     cessor regulation), at a rate of 1 percent)".

25     (c) REPORT.—

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002658

354

1 (1) REPORTS DURING COVID–19 EMERGENCY.—

2 Not later than 2 weeks after the date of the enact-

3 ment of this section, and every 2 weeks thereafter

4 during the emergency period described in section

5 1135(g)(1)(B) of the Social Security Act (42 U.S.C.

6 1320b–5(g)(1)(B)), the Secretary of Health and

7 Human Services shall submit to the Committee on

8 Ways and Means and the Committee on Energy and

9 Commerce of the House of Representatives, and the

10 Committee on Finance of the Senate, a report that

11 includes the following:

12 (A) The total amount of payments made

13 under section 1815(e)(3) of the Social Security

14 Act (42 U.S.C. 1395g(e)(3)) and under the pro-

15 gram described in section 421.214 of title 42,

16 Code of Federal Regulations (or any successor

17 regulation) during the most recent 2-week pe-

18 riod for which data is available that precedes

19 the date of the submission of such report.

20 (B) The number of entities receiving such

21 payments during such period.

22 (C) A specification of each such entity.

23 (2) REPORTS AFTER COVID–19 EMERGENCY.—

24 (A) IN GENERAL.—Not later than 6

25 months after the termination of the emergency

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002659

355

1       period described in paragraph (1), and every 6

2       months thereafter until all specified payments

3       (as defined in subparagraph (B)) have been re-

4       couped or repaid, the Secretary of Health and

5       Human Services shall submit to the Committee

6       on Ways and Means and the Committee on En-

7       ergy and Commerce of the House of Represent-

8       atives, and the Committee on Finance of the

9       Senate, a report that includes the following:

10       (i) The total amount of all specified

11       payments for which claims have been offset

12       to recoup such payment or the balance has

13       been repaid.

14       (ii) The amount of interest that has

15       accrued with respect to all specified pay-

16       ments.

17       (B) SPECIFIED PAYMENTS.—For purposes

18       of subparagraph (A), the term "specified pay-

19       ments" means all payments made under section

20       1815(e)(3) of the Social Security Act (42

21       U.S.C. 1395g(e)(3)) or under the program de-

22       scribed in section 421.214 of title 42, Code of

23       Federal Regulations (or any successor regula-

24       tion) made on or after the date of the enact-

25       ment of the CARES Act (Public Law 116–136)

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002660

356

1       during the emergency period described in such

2       subparagraph.

3       MEDICARE SPECIAL ENROLLMENT PERIOD FOR

4 INDIVIDUALS RESIDING IN COVID–19 EMERGENCY AREAS

5       SEC. 30207.

6       (a) IN GENERAL.—Section 1837(i) of the Social Se-

7 curity Act (42 U.S.C. 1395p(i)) is amended by adding at

8 the end the following new paragraph:

9       ''(5)(A) In the case of an individual who—

10       ''(i) is eligible under section 1836 to enroll

11       in the medical insurance program established by

12       this part,

13       ''(ii) did not enroll (or elected not to be

14       deemed enrolled) under this section during an

15       enrollment period, and

16       ''(iii) during the emergency period (as de-

17       scribed in section 1135(g)(1)(B)), resided in an

18       emergency area (as described in such section),

19       there shall be a special enrollment period de-

20       scribed in subparagraph (B).

21       ''(B) The special enrollment period re-

22       ferred to in subparagraph (A) is the period that

23       begins not later than July 1, 2020, and ends on

24       the last day of the month in which the emer-

25       gency period (as described in section

26       1135(g)(1)(B)) ends.''.

G:\CMTE\AP\16\FY20\_D\HEROES.XML

357

1    (b) COVERAGE PERIOD FOR INDIVIDUALS

2  TRANSITIONING FROM OTHER COVERAGE.—Section

3  1838(e) of the Social Security Act (42 U.S.C. 1395q(e))

4  is amended—

5       (1) by striking "pursuant to section 1837(i)(3)

6    or 1837(i)(4)(B)—" and inserting the following:

7    "pursuant to—

8       "(1) section 1837(i)(3) or 1837(i)(4)(B)—";

9       (2) by redesignating paragraphs (1) and (2) as

10    subparagraphs (A) and (B), respectively, and mov-

11    ing the indentation of each such subparagraph 2

12    ems to the right;

13       (3) by striking the period at the end of the sub-

14    paragraph (B), as so redesignated, and inserting ";

15    or"; and

16       (4) by adding at the end the following new

17    paragraph:

18       "(2) section 1837(i)(5), the coverage period

19    shall begin on the first day of the month following

20    the month in which the individual so enrolls.".

21  (c) FUNDING.—The Secretary of Health and Human

22  Services shall provide for the transfer from the Federal

23  Hospital Insurance Trust Fund (as described in section

24  1817 of the Social Security Act (42 U.S.C. 1395i)) and

25  the Federal Supplementary Medical Insurance Trust

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002662

358

1 Fund (as described in section 1841 of such Act (42 U.S.C.

2 1395t)), in such proportions as determined appropriate by

3 the Secretary, to the Social Security Administration, of

4 $30,000,000, to remain available until expended, for pur-

5 poses of carrying out the amendments made by this sec-

6 tion.

7     (d) IMPLEMENTATION.—Notwithstanding any other

8 provision of law, the Secretary of Health and Human

9 Services may implement the amendments made by this

10 section by program instruction or otherwise.

11     COVID–19 SKILLED NURSING FACILITY PAYMENT

12                  INCENTIVE PROGRAM

13     SEC. 30208.

14     (a) IN GENERAL.—Section 1819 of the Social Secu-

15 rity Act (42 U.S.C. 1395i–3) is amended by adding at the

16 end the following new subsection:

17     "(k) COVID–19 DESIGNATION PROGRAM.—

18         "(1) IN GENERAL.—Not later than 2 weeks

19     after the date of the enactment of this subsection,

20     the Secretary shall establish a program under which

21     a skilled nursing facility that makes an election de-

22     scribed in paragraph (2)(A) and meets the require-

23     ments described in paragraph (2)(B) is designated

24     (or a portion of such facility is so designated) as a

25     COVID–19 treatment center and receives incentive

26     payments under section 1888(e)(13).

DOC_0002663

359

1    "(2) DESIGNATION.—

2        "(A) IN GENERAL.—A skilled nursing fa-

3    cility may elect to be designated (or to have a

4    portion of such facility designated) as a

5    COVID–19 treatment center under the program

6    established under paragraph (1) if the facility

7    submits to the Secretary, at a time and in a

8    manner specified by the Secretary, an applica-

9    tion for such designation that contains such in-

10   formation as required by the Secretary and

11   demonstrates that such facility meets the re-

12   quirements described in subparagraph (B).

13       "(B) REQUIREMENTS.—The requirements

14   described in this subparagraph with respect to

15   a skilled nursing facility are the following:

16           "(i) The facility has a star rating with

17       respect to staffing of 4 or 5 on the Nurs-

18       ing Home Compare website (as described

19       in subsection (i)) and has maintained such

20       a rating on such website during the 2-year

21       period ending on the date of the submis-

22       sion of the application described in sub-

23       paragraph (A).

24           "(ii) The facility has a star rating of

25       4 or 5 with respect to health inspections on

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002664

360

1    such website and has maintained such a

2    rating on such website during such period.

3    ''(iii) During such period, the Sec-

4    retary or a State has not found a defi-

5    ciency with such facility relating to infec-

6    tion control that the Secretary or State de-

7    termined immediately jeopardized the

8    health or safety of the residents of such fa-

9    cility (as described in paragraph (1) or

10    (2)(A) of subsection (h), as applicable).

11    ''(iv) The facility provides care at

12    such facility (or, in the case of an election

13    made with respect to a portion of such fa-

14    cility, to provide care in such portion of

15    such facility) only to eligible individuals.

16    ''(v) The facility arranges for and

17    transfers all residents of such facility (or

18    such portion of such facility, as applicable)

19    who are not eligible individuals to other

20    skilled nursing facilities (or other portions

21    of such facility, as applicable).

22    ''(vi) The facility complies with the

23    notice requirement described in paragraph

24    (4).

DOC_0002665

361

1                   ''(vii) The facility meets the reporting

2               requirement described in paragraph (5).

3                   ''(viii) Any other requirement deter-

4               mined appropriate by the Secretary.

5     ''(3) DURATION OF DESIGNATION.—

6         ''(A) IN GENERAL.—A designation of a

7 skilled nursing facility (or portion of such facil-

8 ity) as a COVID–19 treatment center shall

9 begin on a date specified by the Secretary and

10 end upon the earliest of the following:

11                 ''(i) The revocation of such designa-

12              tion under subparagraph (B).

13                 ''(ii) The submission of a notification

14              by such facility to the Secretary that such

15              facility elects to terminate such designa-

16              tion.

17                 ''(iii) The termination of the program

18              (as specified in paragraph (6)).

19         ''(B) REVOCATION.—The Secretary may

20 revoke the designation of a skilled nursing facil-

21 ity (or portion of such facility) as a COVID–19

22 treatment center if the Secretary determines

23 that the facility is no longer in compliance with

24 a requirement described in paragraph (2)(B).

DOC_0002666

362

1     "(4) RESIDENT NOTICE REQUIREMENT.—For

2 purposes of paragraph (2)(B)(vi), the notice require-

3 ment described in this paragraph is that, not later

4 than 72 hours before the date specified by the Sec-

5 retary under paragraph (3)(A) with respect to the

6 designation of a skilled nursing facility (or portion

7 of such facility) as a COVID–19 treatment center,

8 the facility provides a notification to each resident of

9 such facility (and to appropriate representatives or

10 family members of each such resident, as specified

11 by the Secretary) that contains the following:

12     "(A) Notice of such designation.

13     "(B) In the case such resident is not an el-

14 igible individual (and, in the case such designa-

15 tion is made only with respect to a portion of

16 such facility, resides in such portion of such fa-

17 cility)—

18     "(i) a specification of when and where

19 such resident will be transferred (or moved

20 within such facility);

21     "(ii) an explanation that, in lieu of

22 such transfer or move, such resident may

23 arrange for transfer to such other setting

24 (including a home) selected by the resi-

25 dent; and

DOC_0002667

363

1     "(iii) if such resident so arranges to

2    be transferred to a home, information on

3    Internet resources for caregivers who elect

4    to care for such resident at home.

5   "(C) Contact information for the State

6   long-term care ombudsman (established under

7   section 307(a)(12) of the Older Americans Act

8   of 1965) for the applicable State.

9   "(5) REPORTING REQUIREMENT.—

10    "(A) IN GENERAL.—For purposes of para-

11    graph (2)(B)(vii), the reporting requirement de-

12    scribed in this paragraph is, with respect to a

13    skilled nursing facility, that the facility reports

14    to the Secretary, weekly and in such manner

15    specified by the Secretary, the following (but

16    only to the extent the information described in

17    clauses (i) through (vii) is not otherwise re-

18    ported to the Secretary weekly):

19     "(i) The number of COVID–19 re-

20    lated deaths at such facility.

21     "(ii) The number of discharges from

22    such facility.

23     "(iii) The number of admissions to

24    such facility.

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002668

364

1          "(iv) The number of beds occupied

2      and the number of beds available at such

3      facility.

4          "(v) The number of residents on a

5      ventilator at such facility.

6          "(vi) The number of clinical and non-

7      clinical staff providing direct patient care

8      at such facility.

9          "(vii) Such other information deter-

10     mined appropriate by the Secretary.

11     "(B) NONAPPLICATION OF PAPERWORK

12     REDUCTION ACT.—Chapter 35 of title 44,

13     United States Code (commonly known as the

14     'Paperwork Reduction Act'), shall not apply to

15     the collection of information under this para-

16     graph.

17     "(6) DEFINITION.—For purposes of this sub-

18     section, the term 'eligible individual' means an indi-

19     vidual who, during the 30-day period ending on the

20     first day on which such individual is a resident of a

21     COVID–19 treatment center (on or after the date

22     such center is so designated), was furnished a test

23     for COVID–19 that came back positive.

24     "(7) TERMINATION.—The program established

25     under paragraph (1) shall terminate upon the termi-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002669

365

1    nation of the emergency period described in section

2    1135(g)(1)(B).

3    "(8) Prohibition on administrative and

4    judicial review.—There shall be no administrative

5    or judicial review under section 1869, 1878, or oth-

6    erwise of a designation of a skilled nursing facility

7    (or portion of such facility) as a COVID–19 treat-

8    ment center, or revocation of such a designation,

9    under this subsection.".

10   (b) Payment Incentive.—Section 1888(e) of the

11   Social Security Act (42 U.S.C. 1395yy(e)) is amended—

12       (1) in paragraph (1), in the matter preceding

13       subparagraph (A), by striking "and (12)" and in-

14       serting "(12), and (13)"; and

15       (2) by adding at the end the following new

16       paragraph:

17       "(13) Adjustment for COVID–19 treatment

18       centers.—In the case of a resident of a skilled

19       nursing facility that has been designated as a

20       COVID–19 treatment center under section 1819(k)

21       (or in the case of a resident who resides in a portion

22       of such facility that has been so designated), if such

23       resident is an eligible individual (as defined in para-

24       graph (5) of such section), the per diem amount of

25       payment for such resident otherwise applicable shall

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002670

366

1    be increased by 20 percent to reflect increased costs

2    associated with such residents.''.

3    FUNDING FOR STATE STRIKE TEAMS FOR RESIDENT AND

4       EMPLOYEE SAFETY IN SKILLED NURSING FACILITIES

5       AND NURSING FACILITIES

6    SEC. 30209.

7    (a) IN GENERAL.—Of the amounts made available

8    under subsection (c), the Secretary of Health and Human

9    Services (referred to in this section as the ''Secretary'')

10   shall allocate such amounts among the States, in a man-

11   ner that takes into account the percentage of skilled nurs-

12   ing facilities and nursing facilities in each State that have

13   residents or employees who have been diagnosed with

14   COVID–19, for purposes of establishing and implementing

15   strike teams in accordance with subsection (b).

16   (b) USE OF FUNDS.—A State that receives funds

17   under this section shall use such funds to establish and

18   implement a strike team that will be deployed to a skilled

19   nursing facility or nursing facility in the State with diag-

20   nosed or suspected cases of COVID–19 among residents

21   or staff for the purposes of assisting with clinical care,

22   infection control, or staffing.

23   (c) AUTHORIZATION OF APPROPRIATIONS.—For pur-

24   poses of carrying out this section, there is authorized to

25   be appropriated $500,000,000.

26   (d) DEFINITIONS.—In this section:

DOC_0002671

367

1       (1) NURSING FACILITY.—The term ''nursing

2   facility'' has the meaning given such term in section

3   1919(a) of the Social Security Act (42 U.S.C.

4   1396r(a)).

5       (2) SKILLED NURSING FACILITY.—The term

6   ''skilled nursing facility'' has the meaning given such

7   term in section 1819(a) of the Social Security Act

8   (42 U.S.C. 1395i–3(a)).

9   PROVIDING FOR INFECTION CONTROL SUPPORT TO

10   SKILLED NURSING FACILITIES THROUGH CONTRACTS

11   WITH QUALITY IMPROVEMENT ORGANIZATIONS

12   SEC. 30210.

13   (a) IN GENERAL.—Section 1862(g) of the Social Se-

14   curity Act (42 U.S.C. 1395y(g)) is amended—

15       (1) by striking ''The Secretary'' and inserting

16   ''(1) The Secretary''; and

17       (2) by adding at the end the following new

18   paragraph:

19   ''(2)(A) The Secretary shall ensure that at least 1

20   contract with a quality improvement organization de-

21   scribed in paragraph (1) entered into on or after the date

22   of the enactment of this paragraph and before the end

23   of the emergency period described in section

24   1135(g)(1)(B) (or in effect as of such date) includes the

25   requirement that such organization provide to skilled

26   nursing facilities with cases of COVID–19 (or facilities at-

DOC_0002672

368

1 tempting to prevent outbreaks of COVID–19) infection
2 control support described in subparagraph (B) during
3 such period.

4 "(B) For purposes of subparagraph (A), the infection
5 control support described in this subparagraph is, with re-
6 spect to skilled nursing facilities described in such sub-
7 paragraph, the development and dissemination to such fa-
8 cilities of protocols relating to the prevention or mitigation
9 of COVID–19 at such facilities and the provision of train-
10 ing materials to such facilities relating to such prevention
11 or mitigation.".

12    (b) FUNDING.—The Secretary of Health and Human
13 Services shall provide for the transfer from the Federal
14 Supplementary Medical Insurance Trust Fund (as de-
15 scribed in section 1841 of the Social Security Act (42
16 U.S.C. 1395t)) and the Federal Hospital Insurance Trust
17 Fund (as described in section 1817 of such Act (42 U.S.C.
18 1395i)), in such proportions as determined appropriate by
19 the Secretary, to the Centers for Medicare & Medicaid
20 Services Program Management Account, of $210,000,000,
21 to remain available until expended, for purposes of enter-
22 ing into contracts with quality improvement organizations
23 under part B of title XI of such Act (42 U.S.C. 1320c
24 et seq.). Of the amount transferred pursuant to the pre-
25 vious sentence, not less that $110,000,000 shall be used

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002673

369

1 for purposes of entering into such a contract that includes

2 the requirement described in section 1862(g)(2)(A) of

3 such Act (as added by subsection (a)).

4 REQUIRING LONG TERM CARE FACILITIES TO REPORT

5     CERTAIN INFORMATION RELATING TO COVID–19

6     CASES AND DEATHS

7 SEC. 30211.

8     (a) IN GENERAL.—The Secretary of Health and

9 Human Services (in this section referred to as the "Sec-

10 retary") shall, as soon as practicable, require that the in-

11 formation described in paragraph (1) of section 483.80(g)

12 of title 42, Code of Federal Regulations, or a successor

13 regulation, be reported by a facility (as defined for pur-

14 poses of such section).

15     (b) DEMOGRAPHIC INFORMATION.—The Secretary

16 shall post the following information with respect to skilled

17 nursing facilities (as defined in section 1819(a) of the So-

18 cial Security Act (42 U.S.C. 1395i–3(a))) and nursing fa-

19 cilities (as defined in section 1919(a) of such Act (42

20 U.S.C. 1396r(a))) on the Nursing Home Compare website

21 (as described in section 1819(i) of the Social Security Act

22 (42 U.S.C. 1395i–3(i))), or a successor website, aggre-

23 gated by State:

24         (1) The age, race/ethnicity, and preferred lan-

25         guage of the residents of such skilled nursing facili-

26         ties and nursing facilities with suspected or con-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002674

G:\CMTE\AP\16\FY20\_D\HEROES.XML

370

1  firmed COVID–19 infections, including residents

2  previously treated for COVID–19.

3  (2) The age, race/ethnicity, and preferred lan-

4  guage relating to total deaths and COVID–19

5  deaths among residents of such skilled nursing facili-

6  ties and nursing facilities.

7  (c) CONFIDENTIALITY.—Any information reported

8  under this section that is made available to the public shall

9  be made so available in a manner that protects the identity

10  of residents of skilled nursing facilities and nursing facili-

11  ties.

12  (d) IMPLEMENTATION.—The Secretary may imple-

13  ment the provisions of this section be program instruction

14  or otherwise.

15  FLOOR ON THE MEDICARE AREA WAGE INDEX FOR

16  HOSPITALS IN ALL-URBAN STATES

17  SEC. 30212.

18  (a) IN GENERAL.—Section 1886(d)(3)(E) of the So-

19  cial Security Act (42 U.S.C. 1395ww(d)(3)(E)) is amend-

20  ed—

21  (1) in clause (i), in the first sentence, by strik-

22  ing "or (iii)" and inserting ", (iii), or (iv)"; and

23  (2) by adding at the end the following new

24  clause:

25  "(iv) FLOOR ON AREA WAGE INDEX

26  FOR HOSPITALS IN ALL-URBAN STATES.—

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002675

G:\CMTE\AP\16\FY20\_D\HEROES.XML

371

1             "(I) IN GENERAL.—For dis-

2 charges occurring on or after October

3 1, 2021, the area wage index applica-

4 ble under this subparagraph to any

5 hospital in an all-urban State (as de-

6 fined in subclause (IV)) may not be

7 less than the minimum area wage

8 index for the fiscal year for hospitals

9 in that State, as established under

10 subclause (II).

11             "(II) MINIMUM AREA WAGE

12 INDEX.—For purposes of subclause

13 (I), the Secretary shall establish a

14 minimum area wage index for a fiscal

15 year for hospitals in each all-urban

16 State using the methodology described

17 in section 412.64(h)(4) of title 42,

18 Code of Federal Regulations, as in ef-

19 fect for fiscal year 2018.

20             "(III) WAIVING BUDGET NEU-

21 TRALITY.—Pursuant to the fifth sen-

22 tence of clause (i), this subsection

23 shall not be applied in a budget neu-

24 tral manner.

g:\VHLC\051220\051220.072.xml (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002676

372

1         "(IV) ALL-URBAN STATE DE-
2         FINED.—In this clause, the term 'all-
3         urban State' means a State in which
4         there are no rural areas (as defined in
5         paragraph (2)(D)) or a State in which
6         there are no hospitals classified as
7         rural under this section.".

8 (b) WAIVING BUDGET NEUTRALITY.—

9     (1) TECHNICAL AMENDATORY CORRECTION.—
10 Section 10324(a)(2) of Public Law 111–148 is
11 amended by striking "third sentence" and inserting
12 "fifth sentence".

13     (2) WAIVER.—Section 1886(d)(3)(E)(i) of the
14 Social Security Act (42 U.S.C. 1395ww(d)(3)(E)(i))
15 is amended, in the fifth sentence—

16         (A) by striking "and the amendments" and
17     inserting ", the amendments"; and

18         (B) by inserting ", and the amendments
19     made by section 30212 of the HEROES Act"
20     after "Care Act".

DOC_0002677

G:\CMTE\AP\16\FY20\_D\HEROES.XML

373

1    TITLE III—PRIVATE INSURANCE PROVISIONS

2             Subtitle A—Health Plans

3    SPECIAL ENROLLMENT PERIOD THROUGH EXCHANGES;

4        FEDERAL EXCHANGE OUTREACH AND EDUCATIONAL

5        ACTIVITIES

6    SEC. 30301.

7    (a) SPECIAL ENROLLMENT PERIOD THROUGH EX-

8    CHANGES.—Section 1311(c) of the Patient Protection and

9    Affordable Care Act (42 U.S.C. 18031(c)) is amended—

10        (1) in paragraph (6)—

11            (A) in subparagraph (C), by striking at the

12        end "and";

13            (B) in subparagraph (D), by striking at

14        the end the period and inserting "; and"; and

15            (C) by adding at the end the following new

16        subparagraph:

17            "(E) subject to subparagraph (B) of para-

18        graph (8), the special enrollment period de-

19        scribed in subparagraph (A) of such para-

20        graph."; and

21        (2) by adding at the end the following new

22    paragraph:

23            "(8) SPECIAL ENROLLMENT PERIOD FOR CER-

24        TAIN PUBLIC HEALTH EMERGENCY.—

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002678

374

1          ''(A) IN GENERAL.—The Secretary shall,

2     subject to subparagraph (B), require an Ex-

3     change to provide—

4          ''(i) for a special enrollment period

5          during the emergency period described in

6          section 1135(g)(1)(B) of the Social Secu-

7          rity Act—

8               ''(I) which shall begin on the

9               date that is one week after the date of

10               the enactment of this paragraph and

11               which, in the case of an Exchange es-

12               tablished or operated by the Secretary

13               within a State pursuant to section

14               1321(c), shall be an 8-week period;

15               and

16               ''(II) during which any individual

17               who is otherwise eligible to enroll in a

18               qualified health plan through the Ex-

19               change may enroll in such a qualified

20               health plan; and

21          ''(ii) that, in the case of an individual

22          who enrolls in a qualified health plan

23          through the Exchange during such enroll-

24          ment period, the coverage period under

25          such plan shall begin, at the option of the

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002679

375

1 individual, on April 1, 2020, or on the first
2 day of the month following the day the in-
3 dividual selects a plan through such special
4 enrollment period.

5 ''(B) EXCEPTION.—The requirement of
6 subparagraph (A) shall not apply to a State-op-
7 erated or State-established Exchange if such
8 Exchange, prior to the date of the enactment of
9 this paragraph, established or otherwise pro-
10 vided for a special enrollment period to address
11 access to coverage under qualified health plans
12 offered through such Exchange during the
13 emergency period described in section
14 1135(g)(1)(B) of the Social Security Act.''.

15 (b) FEDERAL EXCHANGE OUTREACH AND EDU-
16 CATIONAL ACTIVITIES.—Section 1321(c) of the Patient
17 Protection and Affordable Care Act (42 U.S.C. 18041(c))
18 is amended by adding at the end the following new para-
19 graph:

20 ''(3) OUTREACH AND EDUCATIONAL ACTIVI-
21 TIES.—

22 ''(A) IN GENERAL.—In the case of an Ex-
23 change established or operated by the Secretary
24 within a State pursuant to this subsection, the
25 Secretary shall carry out outreach and edu-

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002680

376

1 cational activities for purposes of informing po-
2 tential enrollees in qualified health plans offered
3 through the Exchange of the availability of cov-
4 erage under such plans and financial assistance
5 for coverage under such plans. Such outreach
6 and educational activities shall be provided in a
7 manner that is culturally and linguistically ap-
8 propriate to the needs of the populations being
9 served by the Exchange (including hard-to-
10 reach populations, such as racial and sexual mi-
11 norities, limited English proficient populations,
12 and young adults).

13 "(B) LIMITATION ON USE OF FUNDS.—No
14 funds appropriated under this paragraph shall
15 be used for expenditures for promoting non-
16 ACA compliant health insurance coverage.

17 "(C) NON-ACA COMPLIANT HEALTH IN-
18 SURANCE COVERAGE.—For purposes of sub-
19 paragraph (B):

20 "(i) The term 'non-ACA compliant
21 health insurance coverage' means health
22 insurance coverage, or a group health plan,
23 that is not a qualified health plan.

24 "(ii) Such term includes the following:

25 "(I) An association health plan.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002681

G:\CMTE\AP\16\FY20\_D\HEROES.XML

377

1                         "(II) Short-term limited duration

2                 insurance.

3          "(D) FUNDING.—There are appropriated,

4 out of any funds in the Treasury not otherwise

5 appropriated, $25,000,000, to remain available

6 until expended—

7              "(i) to carry out this paragraph;

8              and—

9              "(ii) at the discretion of the Sec-

10              retary, to carry out section 1311(i), with

11              respect to an Exchange established or op-

12              erated by the Secretary within a State pur-

13              suant to this subsection.".

14   (c) IMPLEMENTATION.—The Secretary of Health and

15 Human Services may implement the provisions of (includ-

16 ing amendments made by) this section through subregu-

17 latory guidance, program instruction, or otherwise.

18 EXPEDITED MEETING OF ACIP FOR COVID–19 VACCINES

19   SEC. 30302.

20   (a) IN GENERAL.—Notwithstanding section 3091 of

21 the 21st Century Cures Act (21 U.S.C. 360bbb–4 note),

22 the Advisory Committee on Immunization Practices shall

23 meet and issue a recommendation with respect to a vac-

24 cine that is intended to prevent or treat COVID–19 not

25 later than 15 business days after the date on which such

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002682

378

1 vaccine is licensed under section 351 of the Public Health

2 Service Act (42 U.S.C. 262).

3     (b) DEFINITION.—In this section, the term "Advisory

4 Committee on Immunization Practices" means the Advi-

5 sory Committee on Immunization Practices established by

6 the Secretary of Health and Human Services pursuant to

7 section 222 of the Public Health Service Act (42 U.S.C.

8 217a), acting through the Director of the Centers for Dis-

9 ease Control and Prevention.

10     COVERAGE OF COVID–19 RELATED TREATMENT AT NO

11               COST SHARING

12     SEC. 30303.

13     (a) IN GENERAL.—A group health plan and a health

14 insurance issuer offering group or individual health insur-

15 ance coverage (including a grandfathered health plan (as

16 defined in section 1251(e) of the Patient Protection and

17 Affordable Care Act)) shall provide coverage, and shall not

18 impose any cost sharing (including deductibles, copay-

19 ments, and coinsurance) requirements, for the following

20 items and services furnished during any portion of the

21 emergency period defined in paragraph (1)(B) of section

22 1135(g) of the Social Security Act (42 U.S.C. 1320b–

23 5(g)) beginning on or after the date of the enactment of

24 this Act:

25         (1) Medically necessary items and services (in-

26         cluding in-person or telehealth visits in which such

DOC_0002683

379

1    items and services are furnished) that are furnished

2    to an individual who has been diagnosed with (or

3    after provision of the items and services is diagnosed

4    with) COVID–19 to treat or mitigate the effects of

5    COVID–19.

6        (2) Medically necessary items and services (in-

7    cluding in-person or telehealth visits in which such

8    items and services are furnished) that are furnished

9    to an individual who is presumed to have COVID–

10   19 but is never diagnosed as such, if the following

11   conditions are met:

12        (A) Such items and services are furnished

13            to the individual to treat or mitigate the effects

14            of COVID–19 or to mitigate the impact of

15            COVID–19 on society.

16        (B) Health care providers have taken ap-

17            propriate steps under the circumstances to

18            make a diagnosis, or confirm whether a diag-

19            nosis was made, with respect to such individual,

20            for COVID–19, if possible.

21   (b) ITEMS AND SERVICES RELATED TO COVID–

22   19.—For purposes of this section—

23        (1) not later than one week after the date of

24            the enactment of this section, the Secretary of

25            Health and Human Services, Secretary of Labor,

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002684

380

1  and Secretary of the Treasury shall jointly issue
2  guidance specifying applicable diagnoses and medi-
3  cally necessary items and services related to
4  COVID–19; and

5      (2) such items and services shall include all
6  items or services that are relevant to the treatment
7  or mitigation of COVID–19, regardless of whether
8  such items or services are ordinarily covered under
9  the terms of a group health plan or group or indi-
10  vidual health insurance coverage offered by a health
11  insurance issuer.

12  (c) ENFORCEMENT.—

13      (1) APPLICATION WITH RESPECT TO PHSA,
14  ERISA, AND IRC.—The provisions of this section
15  shall be applied by the Secretary of Health and
16  Human Services, Secretary of Labor, and Secretary
17  of the Treasury to group health plans and health in-
18  surance issuers offering group or individual health
19  insurance coverage as if included in the provisions of
20  part A of title XXVII of the Public Health Service
21  Act, part 7 of the Employee Retirement Income Se-
22  curity Act of 1974, and subchapter B of chapter 100
23  of the Internal Revenue Code of 1986, as applicable.

24      (2) PRIVATE RIGHT OF ACTION.—An individual
25  with respect to whom an action is taken by a group

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002685

381

1    health plan or health insurance issuer offering group

2    or individual health insurance coverage in violation

3    of subsection (a) may commence a civil action

4    against the plan or issuer for appropriate relief. The

5    previous sentence shall not be construed as limiting

6    any enforcement mechanism otherwise applicable

7    pursuant to paragraph (1).

8    (d) IMPLEMENTATION.—The Secretary of Health and

9 Human Services, Secretary of Labor, and Secretary of the

10 Treasury may implement the provisions of this section

11 through sub-regulatory guidance, program instruction or

12 otherwise.

13    (e) TERMS.—The terms "group health plan"; "health

14 insurance issuer"; "group health insurance coverage", and

15 "individual health insurance coverage" have the meanings

16 given such terms in section 2791 of the Public Health

17 Service Act (42 U.S.C. 300gg–91), section 733 of the Em-

18 ployee Retirement Income Security Act of 1974 (29

19 U.S.C. 1191b), and section 9832 of the Internal Revenue

20 Code of 1986, as applicable.

21 REQUIRING PRESCRIPTION DRUG REFILL NOTIFICATIONS

22                DURING EMERGENCIES

23    SEC. 30304.

24    (a) ERISA.—

25    (1) IN GENERAL.—Subpart B of part 7 of sub-

26    title B of title I of the Employee Retirement Income

DOC_0002686

382

1    Security Act of 1974 (29 U.S.C. 1185 et seq.) is

2    amended by adding at the end the following new sec-

3    tion:

**"SEC. 716. PROVISION OF PRESCRIPTION DRUG REFILL NO-**

**TIFICATIONS DURING EMERGENCIES.**

6    "(a) IN GENERAL.—A group health plan, and a

7    health insurance issuer offering health insurance coverage

8    in connection with a group health plan, that provides bene-

9    fits for prescription drugs under such plan or such cov-

10   erage shall provide to each participant or beneficiary

11   under such plan or such coverage who resides in an emer-

12   gency area during an emergency period—

13        "(1) not later than 5 business days after the

14        date of the beginning of such period with respect to

15        such area (or, the case of the emergency period de-

16        scribed in section 30304(d)(2) of the HEROES Act,

17        not later than 5 business days after the date of the

18        enactment of this section), a notification (written in

19        a manner that is clear and understandable to the av-

20        erage participant or beneficiary)—

21             "(A) of whether such plan or coverage will

22             waive, during such period with respect to such

23             a participant or beneficiary, any time restric-

24             tions under such plan or coverage on any au-

25             thorized refills for such drugs to enable such re-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002687

G:\CMTE\AP\16\FY20\_D\HEROES.XML

383

1      fills in advance of when such refills would oth-

2      erwise have been permitted under such plan or

3      coverage; and

4           ''(B) in the case that such plan or coverage

5      will waive such restrictions during such period

6      with respect to such a participant or bene-

7      ficiary, that contains information on how such

8      a participant or beneficiary may obtain such a

9      refill; and

10      ''(2) in the case such plan or coverage elects to

11      so waive such restrictions during such period with

12      respect to such a participant or beneficiary after the

13      notification described in paragraph (1) has been pro-

14      vided with respect to such period, not later than 5

15      business days after such election, a notification of

16      such election that contains the information described

17      in subparagraph (B) of such paragraph.

18      ''(b) EMERGENCY AREA; EMERGENCY PERIOD.—For

19 purposes of this section, an 'emergency area' is a geo-

20 graphical area in which, and an 'emergency period' is the

21 period during which, there exists—

22      ''(1) an emergency or disaster declared by the

23      President pursuant to the National Emergencies Act

24      or the Robert T. Stafford Disaster Relief and Emer-

25      gency Assistance Act; and

DOC_0002688

384

1    ''(2) a public health emergency declared by the

2    Secretary pursuant to section 319 of the Public

3    Health Service Act.''.

4        (2) CLERICAL AMENDMENT.—The table of con-

5    tents of the Employee Retirement Income Security

6    Act of 1974 is amended by inserting after the item

7    relating to section 714 the following:

"Sec. 715. Additional market reforms.
"Sec. 716. Provision of prescription drug refill notifications during emer-
     gencies.".

8        (b) PHSA.—Subpart II of part A of title XXVII of

9    the Public Health Service Act (42 U.S.C. 300gg–11 et

10   seq.) is amended by adding at the end the following new

11   section:

12   **"SEC. 2730. PROVISION OF PRESCRIPTION DRUG REFILL**

13                **NOTIFICATIONS DURING EMERGENCIES.**

14       ''(a) IN GENERAL.—A group health plan, and a

15   health insurance issuer offering group or individual health

16   insurance coverage, that provides benefits for prescription

17   drugs under such plan or such coverage shall provide to

18   each participant, beneficiary, or enrollee enrolled under

19   such plan or such coverage who resides in an emergency

20   area during an emergency period—

21       ''(1) not later than 5 business days after the

22       date of the beginning of such period with respect to

23       such area (or, the case of the emergency period de-

24       scribed in section 30304(d)(2) of the HEROES Act,

385

1 not later than 5 business days after the date of the

2 enactment of this section), a notification (written in

3 a manner that is clear and understandable to the av-

4 erage participant, beneficiary, or enrollee)—

5  ''(A) of whether such plan or coverage will

6  waive, during such period with respect to such

7  a participant, beneficiary, or enrollee, any time

8  restrictions under such plan or coverage on any

9  authorized refills for such drugs to enable such

10  refills in advance of when such refills would

11  otherwise have been permitted under such plan

12  or coverage; and

13  ''(B) in the case that such plan or coverage

14  will waive such restrictions during such period

15  with respect to such a participant, beneficiary,

16  or enrollee, that contains information on how

17  such a participant, beneficiary, or enrollee may

18  obtain such a refill; and

19  ''(2) in the case such plan or coverage elects to

20 so waive such restrictions during such period with

21 respect to such a participant, beneficiary, or enrollee

22 after the notification described in paragraph (1) has

23 been provided with respect to such period, not later

24 than 5 business days after such election, a notifica-

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002690

386

1    tion of such election that contains the information

2    described in subparagraph (B) of such paragraph.

3    "(b) EMERGENCY AREA; EMERGENCY PERIOD.—For

4    purposes of this section, an 'emergency area' is a geo-

5    graphical area in which, and an 'emergency period' is the

6    period during which, there exists—

7        "(1) an emergency or disaster declared by the

8        President pursuant to the National Emergencies Act

9        or the Robert T. Stafford Disaster Relief and Emer-

10       gency Assistance Act; and

11       "(2) a public health emergency declared by the

12       Secretary pursuant to section 319.".

13   (c) IRC.—

14       (1) IN GENERAL.—Subchapter B of chapter

15       100 of the Internal Revenue Code of 1986 is amend-

16       ed by adding at the end the following new section:

17   **"SEC. 9816. PROVISION OF PRESCRIPTION DRUG REFILL**

18                **NOTIFICATIONS DURING EMERGENCIES.**

19   "(a) IN GENERAL.—A group health plan that pro-

20   vides benefits for prescription drugs under such plan shall

21   provide to each participant or beneficiary enrolled under

22   such plan who resides in an emergency area during an

23   emergency period, not later than 5 business days after the

24   date of the beginning of such period with respect to such

25   area (or, the case of the emergency period described in

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002691

387

1   section 30304(d)(2) of the HEROES Act, not later than

2   5 business days after the date of the enactment of this

3   section)—

4           ''(1) a notification (written in a manner that is

5         clear and understandable to the average participant

6         or beneficiary)—

7                 ''(A) of whether such plan will waive, dur-

8             ing such period with respect to such a partici-

9             pant or beneficiary, any time restrictions under

10             such plan on any authorized refills for such

11             drugs to enable such refills in advance of when

12             such refills would otherwise have been per-

13             mitted under such plan; and

14                 ''(B) in the case that such plan will waive

15             such restrictions during such period with re-

16             spect to such a participant or beneficiary, that

17             contains information on how such a participant

18             or beneficiary may obtain such a refill; and

19           ''(2) in the case such plan elects to so waive

20         such restrictions during such period with respect to

21         such a participant or beneficiary after the notifica-

22         tion described in paragraph (1) has been provided

23         with respect to such period, not later than 5 busi-

24         ness days after such election, a notification of such

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002692

388

1    election that contains the information described in

2    subparagraph (B) of such paragraph.

3    "(b) EMERGENCY AREA; EMERGENCY PERIOD.—For

4  purposes of this section, an 'emergency area' is a geo-

5  graphical area in which, and an 'emergency period' is the

6  period during which, there exists—

7    "(1) an emergency or disaster declared by the

8    President pursuant to the National Emergencies Act

9    or the Robert T. Stafford Disaster Relief and Emer-

10    gency Assistance Act; and

11    "(2) a public health emergency declared by the

12    Secretary pursuant to section 319 of the Public

13    Health Service Act.".

14    (2) CLERICAL AMENDMENT.—The table of sec-

15    tions for subchapter B of chapter 100 of the Inter-

16    nal Revenue Code of 1986 is amended by adding at

17    the end the following new item:

"Sec. 9816. Provision of prescription drug refill notifications during emer-
gencies.".

18    (d) EFFECTIVE DATE.—The amendments made by

19  this section shall apply with respect to—

20    (1) emergency periods beginning on or after the

21    date of the enactment of this Act; and

22    (2) the emergency period relating to the public

23    health emergency declared by the Secretary of

24    Health and Human Services pursuant to section 319

DOC_0002693

389

1     of the Public Health Service Act on January 31,

2     2020, entitled "Determination that a Public Health

3     Emergency Exists Nationwide as the Result of the

4     2019 Novel Coronavirus".

5 IMPROVEMENT OF CERTAIN NOTIFICATIONS PROVIDED TO

6     QUALIFIED BENEFICIARIES BY GROUP HEALTH

7     PLANS IN THE CASE OF QUALIFYING EVENTS

8 SEC. 30305.

9     (a) EMPLOYEE RETIREMENT INCOME SECURITY ACT

10 OF 1974.—

11     (1) IN GENERAL.—Section 606 of the Employee

12     Retirement Income Security Act of 1974 (29 U.S.C.

13     1166) is amended—

14         (A) in subsection (a)(4), in the matter fol-

15         lowing subparagraph (B), by striking "under

16         this subsection" and inserting "under this part

17         in accordance with the notification requirements

18         under subsection (c)"; and

19         (B) in subsection (c)—

20             (i) by striking "For purposes of sub-

21             section (a)(4), any notification" and insert-

22             ing "For purposes of subsection (a)(4)—

23     "(1) any notification";

24             (ii) by striking ", whichever is applica-

25             ble, and any such notification" and insert-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002694

390

1     ing "of subsection (a), whichever is appli-

2     cable;

3    "(2) any such notification"; and

4      (iii) by striking "such notification is

5      made" and inserting "such notification is

6      made; and

7    "(3) any such notification shall, with respect to

8  each qualified beneficiary with respect to whom such

9  notification is made, include information regarding

10  any Exchange established under title I of the Pa-

11  tient Protection and Affordable Care Act through

12  which such a qualified beneficiary may be eligible to

13  enroll in a qualified health plan (as defined in sec-

14  tion 1301 of the Patient Protection and Affordable

15  Care Act), including—

16     "(A) the publicly accessible Internet

17    website address for such Exchange;

18     "(B) the publicly accessible Internet

19    website address for the Find Local Help direc-

20    tory maintained by the Department of Health

21    and Human Services on the healthcare.gov

22    Internet website (or a successor website);

23     "(C) a clear explanation that—

24      "(i) an individual who is eligible for

25      continuation coverage may also be eligible

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002695

391

1    to enroll, with financial assistance, in a

2    qualified health plan offered through such

3    Exchange, but, in the case that such indi-

4    vidual elects to enroll in such continuation

5    coverage and subsequently elects to termi-

6    nate such continuation coverage before the

7    period of such continuation coverage ex-

8    pires, such individual will not be eligible to

9    enroll in a qualified health plan offered

10   through such Exchange during a special

11   enrollment period; and

12       ''(ii) an individual who elects to enroll

13   in continuation coverage will remain eligi-

14   ble to enroll in a qualified health plan of-

15   fered through such Exchange during an

16   open enrollment period and may be eligible

17   for financial assistance with respect to en-

18   rolling in such a qualified health plan;

19       ''(D) information on consumer protections

20   with respect to enrolling in a qualified health

21   plan offered through such Exchange, including

22   the requirement for such a qualified health plan

23   to provide coverage for essential health benefits

24   (as defined in section 1302(b) of the Patient

25   Protection and Affordable Care Act) and the re-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002696

G:\CMTE\AP\16\FY20\_D\HEROES.XML

392

1    quirements applicable to such a qualified health

2    plan under part A of title XXVII of the Public

3    Health Service Act; and

4        ''(E) information on the availability of fi-

5    nancial assistance with respect to enrolling in a

6    qualified health plan, including the maximum

7    income limit for eligibility for a premium tax

8    credit under section 36B of the Internal Rev-

9    enue Code of 1986.''.

10    (2) EFFECTIVE DATE.—The amendments made

11    by paragraph (1) shall apply with respect to quali-

12    fying events occurring on or after the date that is

13    14 days after the date of the enactment of this Act.

14    (b) PUBLIC HEALTH SERVICE ACT.—

15    (1) IN GENERAL.—Section 2206 of the Public

16    Health Service Act (42 U.S.C. 300bb–6) is amend-

17    ed—

18        (A) by striking ''In accordance'' and in-

19    serting the following:

20    ''(a) IN GENERAL.—In accordance'';

21        (B) by striking ''of such beneficiary's

22    rights under this subsection'' and inserting ''of

23    such beneficiary's rights under this title in ac-

24    cordance with the notification requirements

25    under subsection (b)''; and

DOC_0002697

393

1        (C) by striking "For purposes of para-

2        graph (4)," and all that follows through "such

3        notification is made." and inserting the fol-

4        lowing:

5  "(b) RULES RELATING TO NOTIFICATION OF QUALI-

6 FIED BENEFICIARIES BY PLAN ADMINISTRATOR.—For

7 purposes of subsection (a)(4)—

8        "(1) any notification shall be made within 14

9 days of the date on which the plan administrator is

10 notified under paragraph (2) or (3) of subsection

11 (a), whichever is applicable;

12        "(2) any such notification to an individual who

13 is a qualified beneficiary as the spouse of the cov-

14 ered employee shall be treated as notification to all

15 other qualified beneficiaries residing with such

16 spouse at the time such notification is made; and

17        "(3) any such notification shall, with respect to

18 each qualified beneficiary with respect to whom such

19 notification is made, include information regarding

20 any Exchange established under title I of the Pa-

21 tient Protection and Affordable Care Act through

22 which such a qualified beneficiary may be eligible to

23 enroll in a qualified health plan (as defined in sec-

24 tion 1301 of the Patient Protection and Affordable

25 Care Act), including—

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002698

394

1          ''(A)   the   publicly   accessible   Internet

2     website address for such Exchange;

3          ''(B)   the   publicly   accessible   Internet

4     website address for the Find Local Help direc-

5     tory maintained by the Department of Health

6     and   Human   Services   on   the   healthcare.gov

7     Internet website (or a successor website);

8          ''(C) a clear explanation that—

9               ''(i) an individual who is eligible for

10          continuation coverage may also be eligible

11          to enroll, with financial assistance, in a

12          qualified health plan offered through such

13          Exchange, but, in the case that such indi-

14          vidual elects to enroll in such continuation

15          coverage and subsequently elects to termi-

16          nate such continuation coverage before the

17          period of such continuation coverage ex-

18          pires, such individual will not be eligible to

19          enroll in a qualified health plan offered

20          through   such   Exchange   during   a   special

21          enrollment period; and

22               ''(ii) an individual who elects to enroll

23          in continuation coverage will remain eligi-

24          ble to enroll in a qualified health plan of-

25          fered   through   such   Exchange   during   an

DOC_0002699

G:\CMTE\AP\16\FY20\_D\HEROES.XML

395

1        open enrollment period and may be eligible

2        for financial assistance with respect to en-

3        rolling in such a qualified health plan;

4        ''(D) information on consumer protections

5     with respect to enrolling in a qualified health

6     plan offered through such Exchange, including

7     the requirement for such a qualified health plan

8     to provide coverage for essential health benefits

9     (as defined in section 1302(b) of the Patient

10    Protection and Affordable Care Act) and the re-

11    quirements applicable to such a qualified health

12    plan under part A of title XXVII; and

13       ''(E) information on the availability of fi-

14    nancial assistance with respect to enrolling in a

15    qualified health plan, including the maximum

16    income limit for eligibility for a premium tax

17    credit under section 36B of the Internal Rev-

18    enue Code of 1986.''.

19    (2) EFFECTIVE DATE.—The amendments made

20  by paragraph (1) shall apply with respect to quali-

21  fying events occurring on or after the date that is

22  14 days after the date of the enactment of this Act.

23  (c) INTERNAL REVENUE CODE OF 1986.—

24    (1) IN GENERAL.—Section 4980B(f)(6) of the

25  Internal Revenue Code of 1986 is amended—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002700

G:\CMTE\AP\16\FY20\_D\HEROES.XML

396

1          (A) in subparagraph (D)—

2                    (i) in clause (ii), by striking "under

3          subparagraph (C)" and inserting "under

4          clause (iii)"; and

5                    (ii) by redesignating clauses (i) and

6          (ii) as subclauses (I) and (II), respectively,

7          and moving the margin of each such sub-

8          clause, as so redesignated, 2 ems to the

9          right;

10          (B) by redesignating subparagraphs (A)

11          through (D) as clauses (i) through (iv), respec-

12          tively, and moving the margin of each such

13          clause, as so redesignated, 2 ems to the right;

14          (C) by striking "In accordance" and in-

15          serting the following:

16                    "(A) IN GENERAL.—In accordance";

17          (D) by inserting after "of such bene-

18          ficiary's rights under this subsection" the fol-

19          lowing: "in accordance with the notification re-

20          quirements under subparagraph (C)"; and

21          (E) by striking "The requirements of sub-

22          paragraph (B)" and all that follows through

23          "such notification is made." and inserting the

24          following:

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002701

G:\CMTE\AP\16\FY20\_D\HEROES.XML

397

1          "(B) ALTERNATIVE MEANS OF COMPLI-
2      ANCE WITH REQUIREMENT FOR NOTIFICATION
3      OF MULTIEMPLOYER PLANS BY EMPLOYERS.—
4      The requirements of subparagraph (A)(ii) shall
5      be considered satisfied in the case of a multiem-
6      ployer plan in connection with a qualifying
7      event described in paragraph (3)(B) if the plan
8      provides that the determination of the occur-
9      rence of such qualifying event will be made by
10     the plan administrator.

11         "(C) RULES RELATING TO NOTIFICATION
12     OF QUALIFIED BENEFICIARIES BY PLAN ADMIN-
13     ISTRATOR.—For     purposes    of    subparagraph
14     (A)(iv)—

15             "(i) any notification shall be made
16         within 14 days (or, in the case of a group
17         health plan which is a multiemployer plan,
18         such longer period of time as may be pro-
19         vided in the terms of the plan) of the date
20         on which the plan administrator is notified
21         under clause (ii) or (iii) of subparagraph
22         (A), whichever is applicable;

23             "(ii) any such notification to an indi-
24         vidual who is a qualified beneficiary as the
25         spouse of the covered employee shall be

DOC_0002702

398

1    treated as notification to all other qualified

2    beneficiaries residing with such spouse at

3    the time such notification is made; and

4          "(iii) any such notification shall, with

5    respect to each qualified beneficiary with

6    respect to whom such notification is made,

7    include information regarding any Ex-

8    change established under title I of the Pa-

9    tient Protection and Affordable Care Act

10    through which such a qualified beneficiary

11    may be eligible to enroll in a qualified

12    health plan (as defined in section 1301 of

13    the Patient Protection and Affordable Care

14    Act), including—

15          "(I) the publicly accessible Inter-

16    net website address for such Ex-

17    change;

18          "(II) the publicly accessible

19    Internet website address for the Find

20    Local Help directory maintained by

21    the Department of Health and

22    Human Services on the healthcare.gov

23    Internet website (or a successor

24    website);

25          "(III) a clear explanation that—

DOC_0002703

G:\CMTE\AP\16\FY20\_D\HEROES.XML

399

1          ''(aa) an individual who is

2     eligible for continuation coverage

3     may also be eligible to enroll,

4     with financial assistance, in a

5     qualified health plan offered

6     through such Exchange, but, in

7     the case that such individual

8     elects to enroll in such continu-

9     ation coverage and subsequently

10    elects to terminate such continu-

11    ation coverage before the period

12    of such continuation coverage ex-

13    pires, such individual will not be

14    eligible to enroll in a qualified

15    health plan offered through such

16    Exchange during a special enroll-

17    ment period; and

18          ''(bb) an individual who

19    elects to enroll in continuation

20    coverage will remain eligible to

21    enroll in a qualified health plan

22    offered through such Exchange

23    during an open enrollment period

24    and may be eligible for financial

25    assistance with respect to enroll-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002704

400

1         ing in such a qualified health

2         plan;

3            ''(IV) information on consumer

4         protections with respect to enrolling in

5         a qualified health plan offered

6         through such Exchange, including the

7         requirement for such a qualified

8         health plan to provide coverage for es-

9         sential health benefits (as defined in

10        section 1302(b) of the Patient Protec-

11        tion and Affordable Care Act) and the

12        requirements applicable to such a

13        qualified health plan under part A of

14        title XXVII of the Public Health

15        Service Act; and

16           ''(V) information on the avail-

17        ability of financial assistance with re-

18        spect to enrolling in a qualified health

19        plan, including the maximum income

20        limit for eligibility for a premium tax

21        credit under section 36B.''.

22    (2) EFFECTIVE DATE.—The amendments made

23  by paragraph (1) shall apply with respect to quali-

24  fying events occurring on or after the date that is

25  14 days after the date of the enactment of this Act.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002705

401

1  (d) MODEL NOTICES.—Not later than 14 days after
2  the date of the enactment of this Act, the Secretary of
3  the Labor, in consultation with the Secretary of the Treas-
4  ury and the Secretary of Health and Human Services,
5  shall—

6       (1) update the model Consolidated Omnibus
7    Budget Reconciliation Act of 1985 (referred to in
8    this subsection as "COBRA") continuation coverage
9    general notice and the model COBRA continuation
10   coverage election notice developed by the Secretary
11   of Labor for purposes of facilitating compliance of
12   group health plans with the notification require-
13   ments under section 606 of the Employee Retire-
14   ment Income Security Act of 1974 (29 U.S.C. 1166)
15   to include the information described in paragraph
16   (3) of subsection (c) of such section 606, as added
17   by subsection (a)(1);

18      (2) provide an opportunity for consumer testing
19   of each such notice, as so updated, to ensure that
20   each such notice is clear and understandable to the
21   average participant or beneficiary of a group health
22   plan; and

23      (3) rename the model COBRA continuation
24   coverage general notice and the model COBRA con-
25   tinuation coverage election notice as the "model

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002706

402

1    COBRA continuation coverage and Affordable Care

2    Act coverage general notice" and the "model

3    COBRA continuation coverage and Affordable Care

4    Act coverage election notice", respectively.

5    SOONER COVERAGE OF TESTING FOR COVID–19

6    SEC. 30306.

7    Section 6001(a) of division F of the Families First

8    Coronavirus Response Act (42 U.S.C. 1320b–5 note) is

9    amended by striking "beginning on or after" and inserting

10    "beginning before, on, or after".

11    Subtitle B—Worker Health Coverage Protection

12    SHORT TITLE

13    SEC. 30311.

14    This subtitle may be cited as the "Worker Health

15    Coverage Protection Act".

16    PRESERVING HEALTH BENEFITS FOR WORKERS

17    SEC. 30312.

18    (a) PREMIUM ASSISTANCE FOR COBRA CONTINU-

19    ATION COVERAGE AND FURLOUGHED CONTINUATION

20    COVERAGE FOR INDIVIDUALS AND THEIR FAMILIES.—

21    (1) PROVISION OF PREMIUM ASSISTANCE.—

22    (A) REDUCTION OF PREMIUMS PAY-

23    ABLE.—

24    (i) COBRA CONTINUATION COV-

25    ERAGE.—In the case of any premium for a

26    period of coverage during the period begin-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002707

403

1      ning on March 1, 2020, and ending on
2      January 31, 2021 for COBRA continu-
3      ation coverage with respect to any assist-
4      ance eligible individual described in para-
5      graph (3)(A), such individual shall be
6      treated for purposes of any COBRA con-
7      tinuation provision as having paid the
8      amount of such premium if such individual
9      pays (and any person other than such indi-
10     vidual's employer pays on behalf of such
11     individual) 0 percent of the amount of
12     such premium owed by such individual (as
13     determined without regard to this sub-
14     section).

15         (ii) FURLOUGHED CONTINUATION
16     COVERAGE.—In the case of any premium
17     for a period of coverage during the period
18     beginning on March 1, 2020, and ending
19     on January 31, 2021 for coverage under a
20     group health plan with respect to any as-
21     sistance eligible individual described in
22     paragraph (3)(B), such individual shall be
23     treated for purposes of coverage under the
24     plan offered by the plan sponsor in which
25     the individual is enrolled as having paid

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002708

404

1    the amount of such premium if such indi-

2    vidual pays (and any person other than

3    such individual's employer pays on behalf

4    of such individual) 0 percent of the

5    amount of such premium owed by such in-

6    dividual (as determined without regard to

7    this subsection).

8    (B) PLAN ENROLLMENT OPTION.—

9    (i) IN GENERAL.—Notwithstanding

10    the COBRA continuation provisions, any

11    assistance eligible individual who is en-

12    rolled in a group health plan offered by a

13    plan sponsor may, not later than 90 days

14    after the date of notice of the plan enroll-

15    ment option described in this subpara-

16    graph, elect to enroll in coverage under a

17    plan offered by such plan sponsor that is

18    different than coverage under the plan in

19    which such individual was enrolled at the

20    time—

21    (I) in the case of any assistance

22    eligible individual described in para-

23    graph (3)(A), the qualifying event

24    specified in section 603(2) of the Em-

25    ployee Retirement Income Security

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002709

405

1 Act of 1974, section 4980B(f)(3)(B)
2 of the Internal Revenue Code of 1986,
3 section 2203(2) of the Public Health
4 Service Act, or section 8905a of title
5 5, United States Code (except for the
6 voluntary termination of such individ-
7 ual's employment by such individual),
8 occurred, and such coverage shall be
9 treated as COBRA continuation cov-
10 erage for purposes of the applicable
11 COBRA continuation coverage provi-
12 sion; or

13 (II) in the case of any assistance
14 eligible individual described in para-
15 graph (3)(B), the furlough period
16 began with respect to such individual.

17 (ii) REQUIREMENTS.—Any assistance
18 eligible individual may elect to enroll in
19 different coverage as described in clause (i)
20 only if—

21 (I) the employer involved has
22 made a determination that such em-
23 ployer will permit such assistance eli-
24 gible individual to enroll in different

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002710

406

1    coverage as provided under this sub-

2    paragraph;

3        (II) the premium for such dif-

4    ferent coverage does not exceed the

5    premium for coverage in which such

6    individual was enrolled at the time

7    such qualifying event occurred or im-

8    mediately before such furlough began;

9        (III) the different coverage in

10   which the individual elects to enroll is

11   coverage that is also offered to the ac-

12   tive employees of the employer, who

13   are not in a furlough period, at the

14   time at which such election is made;

15   and

16       (IV) the different coverage in

17   which the individual elects to enroll is

18   not—

19           (aa) coverage that provides

20       only dental, vision, counseling, or

21       referral services (or a combina-

22       tion of such services);

23           (bb) a qualified small em-

24       ployer health reimbursement ar-

25       rangement (as defined in section

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002711

407

1                9831(d)(2) of the Internal Rev-

2                enue Code of 1986);

3                     (cc) a flexible spending ar-

4                rangement (as defined in section

5                106(c)(2) of the Internal Rev-

6                enue Code of 1986); or

7                     (dd) benefits that provide

8                coverage for services or treat-

9                ments furnished in an on-site

10               medical facility maintained by

11               the employer and that consists

12               primarily of first-aid services,

13               prevention and wellness care, or

14               similar care (or a combination of

15               such care).

16        (C) PREMIUM REIMBURSEMENT.—For pro-

17     visions providing the payment of such premium,

18     see section 6432 of the Internal Revenue Code

19     of 1986, as added by paragraph (14).

20       (2) LIMITATION OF PERIOD OF PREMIUM AS-

21   SISTANCE.—

22        (A) ELIGIBILITY FOR ADDITIONAL COV-

23     ERAGE.—Paragraph (1)(A) shall not apply with

24     respect to—

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002712

G:\CMTE\AP\16\FY20\_D\HEROES.XML

408

1     (i) any assistance eligible individual
2     described in paragraph (3)(A) for months
3     of coverage beginning on or after the ear-
4     lier of—

5               (I) the first date that such indi-
6          vidual is eligible for coverage under
7          any other group health plan (other
8          than coverage consisting of only den-
9          tal, vision, counseling, or referral serv-
10         ices (or a combination thereof), cov-
11         erage under a flexible spending ar-
12         rangement (as defined in section
13         106(c)(2) of the Internal Revenue
14         Code of 1986), coverage of treatment
15         that is furnished in an on-site medical
16         facility maintained by the employer
17         and that consists primarily of first-aid
18         services, prevention and wellness care,
19         or similar care (or a combination
20         thereof)), or eligible for benefits under
21         the Medicare program under title
22         XVIII of the Social Security Act; or
23               (II) the earliest of—
24                    (aa) the date following the
25               expiration of the maximum pe-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002713

409

1           riod of continuation coverage re-

2           quired    under    the    applicable

3           COBRA    continuation    coverage

4           provision; or

5                    (bb) the date following the

6           expiration of the period of con-

7           tinuation coverage allowed under

8           paragraph (4)(B)(ii); or

9       (ii) any assistance eligible individual

10      described in paragraph (3)(B) for months

11      of coverage beginning on or after the ear-

12      lier of—

13               (I) the first date that such indi-

14      vidual is eligible for coverage under

15      any other group health plan (other

16      than coverage consisting of only den-

17      tal, vision, counseling, or referral serv-

18      ices (or a combination thereof), cov-

19      erage under a flexible spending ar-

20      rangement (as defined in section

21      106(c)(2) of the Internal Revenue

22      Code of 1986), coverage of treatment

23      that is furnished in an on-site medical

24      facility maintained by the employer

25      and that consists primarily of first-aid

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002714

410

1    services, prevention and wellness care,

2    or similar care (or a combination

3    thereof)), or eligible for benefits under

4    the Medicare program under title

5    XVIII of the Social Security Act; or

6     (II) the first date that such indi-

7    vidual is no longer in the furlough pe-

8    riod.

9  (B) NOTIFICATION REQUIREMENT.—Any

10 assistance eligible individual shall notify the

11 group health plan with respect to which para-

12 graph (1)(A) applies if such paragraph ceases

13 to apply by reason of clause (i)(I) or (ii)(I) of

14 subparagraph (A) (as applicable). Such notice

15 shall be provided to the group health plan in

16 such time and manner as may be specified by

17 the Secretary of Labor.

18  (C) SPECIAL ENROLLMENT PERIOD FOL-

19 LOWING EXPIRATION OF PREMIUM ASSIST-

20 ANCE.—Notwithstanding section 1311 of the

21 Patient Protection and Affordable Care Act (42

22 U.S.C. 18031), the expiration of premium as-

23 sistance pursuant to a limitation specified

24 under subparagraph (A) shall be treated as a

25 qualifying event for which any assistance eligi-

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002715

411

1    ble individual is eligible to enroll in a qualified

2    health plan offered through an Exchange under

3    title I of such Act (42 U.S.C. 18001 et seq.)

4    during a special enrollment period.

5    (3) ASSISTANCE ELIGIBLE INDIVIDUAL.—For

6    purposes of this section, the term "assistance eligible

7    individual" means, with respect to a period of cov-

8    erage during the period beginning on March 1,

9    2020, and ending on January 31, 2021—

10        (A) any individual that is a qualified bene-

11        ficiary that—

12            (i) is eligible for COBRA continuation

13            coverage by reason of a qualifying event

14            specified in section 603(2) of the Employee

15            Retirement Income Security Act of 1974,

16            section 4980B(f)(3)(B) of the Internal

17            Revenue Code of 1986, section 2203(2) of

18            the Public Health Service Act, or section

19            8905a of title 5, United States Code (ex-

20            cept for the voluntary termination of such

21            individual's employment by such indi-

22            vidual); and

23            (ii) elects such coverage; or

24        (B) any covered employee that is in a fur-

25        lough period that remains eligible for coverage

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002716

412

1    under a group health plan offered by the em-

2    ployer of such covered employee.

3    (4) EXTENSION OF ELECTION PERIOD AND EF-

4    FECT ON COVERAGE.—

5    (A) IN GENERAL.—For purposes of apply-

6    ing section 605(a) of the Employee Retirement

7    Income Security Act of 1974, section

8    4980B(f)(5)(A) of the Internal Revenue Code

9    of 1986, section 2205(a) of the Public Health

10    Service Act, and section 8905a(c)(2) of title 5,

11    United States Code, in the case of—

12    (i) an individual who does not have an

13    election of COBRA continuation coverage

14    in effect on the date of the enactment of

15    this Act but who would be an assistance el-

16    igible individual described in paragraph

17    (3)(A) if such election were so in effect; or

18    (ii) an individual who elected COBRA

19    continuation coverage on or after March 1,

20    2020, and discontinued from such coverage

21    before the date of the enactment of this

22    Act,

23    such individual may elect the COBRA continu-

24    ation coverage under the COBRA continuation

25    coverage provisions containing such provisions

DOC_0002717

413

1    during the period beginning on the date of the

2    enactment of this Act and ending 60 days after

3    the date on which the notification required

4    under paragraph (7)(C) is provided to such in-

5    dividual.

6    (B) COMMENCEMENT OF COBRA CONTINU-

7    ATION COVERAGE.—Any COBRA continuation

8    coverage elected by a qualified beneficiary dur-

9    ing an extended election period under subpara-

10    graph (A)—

11    (i) shall apply as if such qualified ben-

12    eficiary had been covered as of the date of

13    a qualifying event specified in section

14    603(2) of the Employee Retirement In-

15    come Security Act of 1974, section

16    4980B(f)(3)(B) of the Internal Revenue

17    Code of 1986, section 2203(2) of the Pub-

18    lic Health Service Act, or section 8905a of

19    title 5, United States Code, except for the

20    voluntary termination of such beneficiary's

21    employment by such beneficiary, that oc-

22    curs no earlier than March 1, 2020 (in-

23    cluding the treatment of premium pay-

24    ments under paragraph (1)(A) and any

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002718

414

1 cost-sharing requirements for items and

2 services under a group health plan); and

3  (ii) shall not extend beyond the period

4  of COBRA continuation coverage that

5  would have been required under the appli-

6  cable COBRA continuation coverage provi-

7  sion if the coverage had been elected as re-

8  quired under such provision.

9 (5) EXPEDITED REVIEW OF DENIALS OF PRE-

10 MIUM ASSISTANCE.—In any case in which an indi-

11 vidual requests treatment as an assistance eligible

12 individual described in subparagraph (A) or (B) of

13 paragraph (3) and is denied such treatment by the

14 group health plan, the Secretary of Labor (or the

15 Secretary of Health and Human Services in connec-

16 tion with COBRA continuation coverage which is

17 provided other than pursuant to part 6 of subtitle B

18 of title I of the Employee Retirement Income Secu-

19 rity Act of 1974), in consultation with the Secretary

20 of the Treasury, shall provide for expedited review of

21 such denial. An individual shall be entitled to such

22 review upon application to such Secretary in such

23 form and manner as shall be provided by such Sec-

24 retary, in consultation with the Secretary of Treas-

25 ury. Such Secretary shall make a determination re-

DOC_0002719

415

1    garding such individual's eligibility within 15 busi-

2    ness days after receipt of such individual's applica-

3    tion for review under this paragraph. Either Sec-

4    retary's determination upon review of the denial

5    shall be de novo and shall be the final determination

6    of such Secretary. A reviewing court shall grant def-

7    erence to such Secretary's determination. The provi-

8    sions of this paragraph, paragraphs (1) through (4),

9    and paragraphs (7) through (9) shall be treated as

10    provisions of title I of the Employee Retirement In-

11    come Security Act of 1974 for purposes of part 5 of

12    subtitle B of such title.

13    (6) DISREGARD OF SUBSIDIES FOR PURPOSES

14    OF FEDERAL AND STATE PROGRAMS.—Notwith-

15    standing any other provision of law, any premium

16    assistance with respect to an assistance eligible indi-

17    vidual under this subsection shall not be considered

18    income, in-kind support, or resources for purposes of

19    determining the eligibility of the recipient (or the re-

20    cipient's spouse or family) for benefits or assistance,

21    or the amount or extent of benefits or assistance, or

22    any other benefit provided under any Federal pro-

23    gram or any program of a State or political subdivi-

24    sion thereof financed in whole or in part with Fed-

25    eral funds.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002720

416

1    (7) COBRA-SPECIFIC NOTICE.—

2        (A) GENERAL NOTICE.—

3            (i) IN GENERAL.—In the case of no-
4        tices provided under section 606(a)(4) of
5        the Employee Retirement Income Security
6        Act of 1974 (29 U.S.C. 1166(4)), section
7        4980B(f)(6)(D) of the Internal Revenue
8        Code of 1986, section 2206(4) of the Pub-
9        lic Health Service Act (42 U.S.C. 300bb–
10       6(4)), or section 8905a(f)(2)(A) of title 5,
11       United States Code, with respect to indi-
12       viduals who, during the period described in
13       paragraph (3), become entitled to elect
14       COBRA continuation coverage, the re-
15       quirements of such provisions shall not be
16       treated as met unless such notices include
17       an additional notification to the recipient a
18       written notice in clear and understandable
19       language of—

20               (I) the availability of premium
21           assistance with respect to such cov-
22           erage under this subsection; and

23               (II) the option to enroll in dif-
24           ferent coverage if the employer per-
25           mits assistance eligible individuals de-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002721

417

1          scribed in paragraph (3)(A) to elect

2          enrollment in different coverage (as

3          described in paragraph (1)(B)).

4          (ii) ALTERNATIVE NOTICE.—In the

5          case of COBRA continuation coverage to

6          which the notice provision under such sec-

7          tions does not apply, the Secretary of

8          Labor, in consultation with the Secretary

9          of the Treasury and the Secretary of

10         Health and Human Services, shall, in con-

11         sultation with administrators of the group

12         health plans (or other entities) that provide

13         or administer the COBRA continuation

14         coverage involved, provide rules requiring

15         the provision of such notice.

16         (iii) FORM.—The requirement of the

17         additional notification under this subpara-

18         graph may be met by amendment of exist-

19         ing notice forms or by inclusion of a sepa-

20         rate document with the notice otherwise

21         required.

22         (B) SPECIFIC REQUIREMENTS.—Each ad-

23         ditional notification under subparagraph (A)

24         shall include—

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002722

418

(i) the forms necessary for estab-
lishing eligibility for premium assistance
under this subsection;

(ii) the name, address, and telephone
number necessary to contact the plan ad-
ministrator and any other person main-
taining relevant information in connection
with such premium assistance;

(iii) a description of the extended elec-
tion period provided for in paragraph
(4)(A);

(iv) a description of the obligation of
the qualified beneficiary under paragraph
(2)(B) and the penalty provided under sec-
tion 6720C of the Internal Revenue Code
of 1986 for failure to carry out the obliga-
tion;

(v) a description, displayed in a
prominent manner, of the qualified bene-
ficiary's right to a reduced premium and
any conditions on entitlement to the re-
duced premium;

(vi) a description of the option of the
qualified beneficiary to enroll in different
coverage if the employer permits such ben-

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002723

419

1    eficiary to elect to enroll in such different

2    coverage under paragraph (1)(B); and

3           (vii) information regarding any Ex-

4    change established under title I of the Pa-

5    tient Protection and Affordable Care Act

6    (42 U.S.C. 18001 et seq.) through which a

7    qualified beneficiary may be eligible to en-

8    roll in a qualified health plan, including—

9           (I) the publicly accessible inter-

10       net website address for such Ex-

11       change;

12           (II) the publicly accessible inter-

13       net website address for the Find

14       Local Help directory maintained by

15       the Department of Health and

16       Human Services on the healthcare.gov

17       internet website (or a successor

18       website);

19           (III) a clear explanation that—

20               (aa) an individual who is eli-

21           gible for continuation coverage

22           may also be eligible to enroll,

23           with financial assistance, in a

24           qualified health plan offered

25           through such Exchange, but, in

DOC_0002724

420

1 the case that such individual

2 elects to enroll in such continu-

3 ation coverage and subsequently

4 elects to terminate such continu-

5 ation coverage before the period

6 of such continuation coverage ex-

7 pires, such termination does not

8 initiate a special enrollment pe-

9 riod (absent a qualifying event

10 specified in section 603(2) of the

11 Employee Retirement Income Se-

12 curity Act of 1974, section

13 4980B(f)(3)(B) of the Internal

14 Revenue Code of 1986, section

15 2203(2) of the Public Health

16 Service Act, or section 8905a of

17 title 5, United States Code, with

18 respect to such individual); and

19  (bb) an individual who elects

20 to enroll in continuation coverage

21 will remain eligible to enroll in a

22 qualified health plan offered

23 through such Exchange during

24 an open enrollment period and

25 may be eligible for financial as-

421

1          sistance with respect to enrolling

2          in such a qualified health plan;

3          (IV) information on consumer

4          protections with respect to enrolling in

5          a    qualified    health    plan    offered

6          through such Exchange, including the

7          requirement   for   such   a   qualified

8          health plan to provide coverage for es-

9          sential health benefits (as defined in

10          section   1302(b)   of   such   Act   (42

11          U.S.C.   18022(b)))   and   the   require-

12          ments   applicable   to   such   a   qualified

13          health   plan   under   part   A   of   title

14          XXVII of the Public Health Service

15          Act (42 U.S.C. 300gg et seq.);

16          (V)  information  on  the  avail-

17          ability of financial assistance with re-

18          spect to enrolling in a qualified health

19          plan,  including  the  maximum  income

20          limit   for   eligibility   for   the   premium

21          tax   credit   under   section   36B   of   the

22          Internal Revenue Code of 1986; and

23          (VI)  information  on  any  special

24          enrollment   periods   during   which   any

25          assistance eligible individual described

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002726

422

1       in paragraph (3)(A)(i) may be eligible

2       to enroll, with financial assistance, in

3       a qualified health plan offered

4       through such Exchange (including a

5       special enrollment period for which an

6       individual may be eligible due to the

7       expiration of premium assistance pur-

8       suant to a limitation specified under

9       paragraph (2)(A)).

10   (C) NOTICE IN CONNECTION WITH EX-

11  TENDED ELECTION PERIODS.—In the case of

12  any assistance eligible individual described in

13  paragraph (3)(A) (or any individual described

14  in paragraph (4)(A)) who became entitled to

15  elect COBRA continuation coverage before the

16  date of the enactment of this Act, the adminis-

17  trator of the applicable group health plan (or

18  other entity) shall provide (within 60 days after

19  the date of enactment of this Act) for the addi-

20  tional notification required to be provided under

21  subparagraph (A) and failure to provide such

22  notice shall be treated as a failure to meet the

23  notice requirements under the applicable

24  COBRA continuation provision.

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002727

423

1     (D) MODEL NOTICES.—Not later than 30

2     days after the date of enactment of this Act,

3     with respect to any assistance eligible individual

4     described in paragraph (3)(A)—

5         (i) the Secretary of Labor, in con-

6         sultation with the Secretary of the Treas-

7         ury and the Secretary of Health and

8         Human Services, shall prescribe models for

9         the additional notification required under

10        this paragraph (other than the additional

11        notification described in clause (ii)); and

12        (ii) in the case of any additional noti-

13        fication provided pursuant to subpara-

14        graph (A) under section 8905a(f)(2)(A) of

15        title 5, United States Code, the Office of

16        Personnel Management shall prescribe a

17        model for such additional notification.

18   (8) FURLOUGH-SPECIFIC NOTICE.—

19     (A) IN GENERAL.—With respect to any as-

20     sistance eligible individual described in para-

21     graph (3)(B) who, during the period described

22     in such paragraph, becomes eligible for assist-

23     ance pursuant to paragraph (1)(A)(ii), the re-

24     quirements of section 606(a)(4) of the Em-

25     ployee Retirement Income Security Act of 1974

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002728

G:\CMTE\AP\16\FY20\_D\HEROES.XML

424

1    (29 U.S.C. 1166(4)), section 4980B(f)(6)(D) of

2    the Internal Revenue Code of 1986, section

3    2206(4) of the Public Health Service Act (42

4    U.S.C. 300bb–6(4)), or section 8905a(f)(2)(A)

5    of title 5, United States Code, shall not be

6    treated as met unless the group health plan ad-

7    ministrator, in accordance with the timing re-

8    quirement specified under subparagraph (B),

9    provides to the individual a written notice in

10   clear and understandable language of—

11        (i) the availability of premium assist-

12        ance with respect to such coverage under

13        this subsection;

14        (ii) the option of the qualified bene-

15        ficiary to enroll in different coverage if the

16        employer permits such beneficiary to elect

17        to enroll in such different coverage under

18        paragraph (1)(B); and

19        (iii) the information specified under

20        paragraph (7)(B) (as applicable).

21    (B) TIMING SPECIFIED.—For purposes of

22    subparagraph (A), the timing requirement spec-

23    ified in this subparagraph is—

24        (i) with respect to such an individual

25        who is within a furlough period during the

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002729

425

1 period beginning on March 1, 2020, and
2 ending on the date of the enactment of this
3 Act, 30 days after the date of such enact-
4 ment; and

5   (ii) with respect to such an individual
6 who is within a furlough period during the
7 period beginning on the first day after the
8 date of the enactment of this Act and end-
9 ing on January 31, 2021, 30 days after
10 the date of the beginning of such furlough
11 period.

12 (C) MODEL NOTICES.—Not later than 30
13 days after the date of enactment of this Act,
14 with respect to any assistance eligible individual
15 described in paragraph (3)(B)—

16   (i) the Secretary of Labor, in con-
17 sultation with the Secretary of the Treas-
18 ury and the Secretary of Health and
19 Human Services, shall prescribe models for
20 the notification required under this para-
21 graph (other than the notification de-
22 scribed in clause (ii)); and

23   (ii) in the case of any notification pro-
24 vided pursuant to subparagraph (A) under
25 section 8905a(f)(2)(A) of title 5, United

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002730

426

1    States Code, the Office of Personnel Man-
2    agement shall prescribe a model for such
3    notification.

4    (9) NOTICE OF EXPIRATION OF PERIOD OF
5    PREMIUM ASSISTANCE.—

6    (A) IN GENERAL.—With respect to any as-
7    sistance eligible individual, subject to subpara-
8    graph (B), the requirements of section
9    606(a)(4) of the Employee Retirement Income
10   Security Act of 1974 (29 U.S.C. 1166(4)), sec-
11   tion 4980B(f)(6)(D) of the Internal Revenue
12   Code of 1986, section 2206(4) of the Public
13   Health Service Act (42 U.S.C. 300bb–6(4)), or
14   section 8905a(f)(2)(A) of title 5, United States
15   Code, shall not be treated as met unless the
16   employer of the individual, during the period
17   specified under subparagraph (C), provides to
18   such individual a written notice in clear and un-
19   derstandable language—

20   (i) that the premium assistance for
21   such individual will expire soon and the
22   prominent identification of the date of
23   such expiration;

DOC_0002731

427

1 (ii) that such individual may be eligi-

2 ble for coverage without any premium as-

3 sistance through—

4  (I) COBRA continuation cov-

5  erage; or

6  (II) coverage under a group

7  health plan;

8 (iii) that the expiration of premium

9 assistance is treated as a qualifying event

10 for which any assistance eligible individual

11 is eligible to enroll in a qualified health

12 plan offered through an Exchange under

13 title I of such Act (42 U.S.C. 18001 et

14 seq.) during a special enrollment period;

15 and

16 (iv) the information specified in para-

17 graph (7)(B)(vii).

18 (B) EXCEPTION.—The requirement for the

19 group health plan administrator to provide the

20 written notice under subparagraph (A) shall be

21 waived in the case the premium assistance for

22 such individual expires pursuant to clause (i)(I)

23 or (ii)(I) of paragraph (2)(A).

24 (C) PERIOD SPECIFIED.—For purposes of

25 subparagraph (A), the period specified in this

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002732

428

1      subparagraph is, with respect to the date of ex-
2      piration of premium assistance for any assist-
3      ance eligible individual pursuant to a limitation
4      requiring a notice under this paragraph, the pe-
5      riod beginning on the day that is 45 days before
6      the date of such expiration and ending on the
7      day that is 15 days before the date of such ex-
8      piration.

9          (D) MODEL NOTICES.—Not later than 30
10     days after the date of enactment of this Act,
11     with respect to any assistance eligible indi-
12     vidual—

13              (i) the Secretary of Labor, in con-
14          sultation with the Secretary of the Treas-
15          ury and the Secretary of Health and
16          Human Services, shall prescribe models for
17          the notification required under this para-
18          graph (other than the notification de-
19          scribed in clause (ii)); and

20              (ii) in the case of any notification pro-
21          vided pursuant to subparagraph (A) under
22          section 8905a(f)(2)(A) of title 5, United
23          States Code, the Office of Personnel Man-
24          agement shall prescribe a model for such
25          notification.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002733

429

1   (10) REGULATIONS.—The Secretary of the

2   Treasury and the Secretary of Labor may jointly

3   prescribe such regulations or other guidance as may

4   be necessary or appropriate to carry out the provi-

5   sions of this subsection, including the prevention of

6   fraud and abuse under this subsection, except that

7   the Secretary of Labor and the Secretary of Health

8   and Human Services may prescribe such regulations

9   (including interim final regulations) or other guid-

10   ance as may be necessary or appropriate to carry

11   out the provisions of paragraphs (5), (7), (8), (9),

12   and (11).

13   (11) OUTREACH.—

14   (A) IN GENERAL.—The Secretary of

15   Labor, in consultation with the Secretary of the

16   Treasury and the Secretary of Health and

17   Human Services, shall provide outreach con-

18   sisting of public education and enrollment as-

19   sistance relating to premium assistance pro-

20   vided under this subsection. Such outreach shall

21   target employers, group health plan administra-

22   tors, public assistance programs, States, insur-

23   ers, and other entities as determined appro-

24   priate by such Secretaries. Such outreach shall

25   include an initial focus on those individuals

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002734

430

1 electing continuation coverage who are referred

2 to in paragraph (7)(C). Information on such

3 premium assistance, including enrollment, shall

4 also be made available on websites of the De-

5 partments of Labor, Treasury, and Health and

6 Human Services.

7  (B) ENROLLMENT UNDER MEDICARE.—

8 The Secretary of Health and Human Services

9 shall provide outreach consisting of public edu-

10 cation. Such outreach shall target individuals

11 who lose health insurance coverage. Such out-

12 reach shall include information regarding en-

13 rollment for benefits under title XVIII of the

14 Social Security Act (42 U.S.C. 1395 et seq.) for

15 purposes of preventing mistaken delays of such

16 enrollment by such individuals, including life-

17 time penalties for failure of timely enrollment.

18 (12) DEFINITIONS.—For purposes of this sec-

19 tion:

20  (A) ADMINISTRATOR.—The term "admin-

21 istrator" has the meaning given such term in

22 section 3(16)(A) of the Employee Retirement

23 Income Security Act of 1974.

24  (B) COBRA CONTINUATION COVERAGE.—

25 The term "COBRA continuation coverage"

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002735

431

1      means continuation coverage provided pursuant

2      to part 6 of subtitle B of title I of the Em-

3      ployee Retirement Income Security Act of 1974

4      (other than under section 609), title XXII of

5      the Public Health Service Act, section 4980B of

6      the Internal Revenue Code of 1986 (other than

7      subsection (f)(1) of such section insofar as it

8      relates to pediatric vaccines), or section 8905a

9      of title 5, United States Code, or under a State

10     program that provides comparable continuation

11     coverage. Such term does not include coverage

12     under a health flexible spending arrangement

13     under a cafeteria plan within the meaning of

14     section 125 of the Internal Revenue Code of

15     1986.

16         (C) COBRA CONTINUATION PROVISION.—

17     The term ''COBRA continuation provision''

18     means the provisions of law described in sub-

19     paragraph (B).

20         (D) COVERED EMPLOYEE.—The term

21     ''covered employee'' has the meaning given such

22     term in section 607(2) of the Employee Retire-

23     ment Income Security Act of 1974.

24         (E) QUALIFIED BENEFICIARY.—The term

25     ''qualified beneficiary'' has the meaning given

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002736

432

1    such term in section 607(3) of the Employee

2    Retirement Income Security Act of 1974.

3        (F) GROUP HEALTH PLAN.—The term

4    "group health plan" has the meaning given

5    such term in section 607(1) of the Employee

6    Retirement Income Security Act of 1974.

7        (G) STATE.—The term "State" includes

8    the District of Columbia, the Commonwealth of

9    Puerto Rico, the Virgin Islands, Guam, Amer-

10   ican Samoa, and the Commonwealth of the

11   Northern Mariana Islands.

12       (H) PERIOD OF COVERAGE.—Any ref-

13   erence in this subsection to a period of coverage

14   shall be treated as a reference to a monthly or

15   shorter period of coverage with respect to which

16   premiums are charged with respect to such cov-

17   erage.

18       (I) PLAN SPONSOR.—The term "plan

19   sponsor" has the meaning given such term in

20   section 3(16)(B) of the Employee Retirement

21   Income Security Act of 1974.

22       (J) FURLOUGH PERIOD.—

23           (i) IN GENERAL.—The term "furlough

24       period" means, with respect to an indi-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002737

433

vidual and an employer of such individual,
a period—

(I) beginning with the first
month beginning on or after March 1,
2020 and before January 31, 2021,
during which such individual's em-
ployer reduces such individual's work
hours (due to a lack of work, funds,
or other nondisciplinary reason) to an
amount that is less than 70 percent of
the base month amount; and

(II) ending with the earlier of—

(aa) the first month begin-
ning after January 31, 2021; or

(bb) the month following the
first month during which work
hours of such employee are great-
er than 80 percent of work hours
of the base month amount.

(ii) BASE MONTH AMOUNT.—For pur-
poses of clause (i), the term ''base month
amount'' means, with respect to an indi-
vidual and an employer of such individual,
the greater of—

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002738

434

1           (I) such individual's work hours

2           in the month prior (or in the case

3           such individual had no work hours in

4           the month prior and had work hours

5           in the 3 months prior, the last month

6           with work hours within the prior 3

7           months); and

8           (II) such individual's work hours

9           during the period beginning January

10           1, 2020 and ending January 31,

11           2020.

12    (13) REPORTS.—

13      (A) INTERIM REPORT.—The Secretary of

14 the Treasury and the Secretary of Labor shall

15 jointly submit an interim report to the Com-

16 mittee on Education and Labor, the Committee

17 on Ways and Means, and the Committee on En-

18 ergy and Commerce of the House of Represent-

19 atives and the Committee on Health, Edu-

20 cation, Labor, and Pensions and the Committee

21 on Finance of the Senate regarding the pre-

22 mium assistance provided under this subsection

23 that includes—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002739

435

1                (i) the number of individuals provided

2            such assistance as of the date of the re-

3            port; and

4                (ii) the total amount of expenditures

5            incurred (with administrative expenditures

6            noted separately) in connection with such

7            assistance as of the date of the report.

8         (B) FINAL REPORT.—As soon as prac-

9      ticable after the last period of COBRA continu-

10      ation coverage for which premium assistance is

11      provided under this section, the Secretary of the

12      Treasury and the Secretary of Labor shall

13      jointly submit a final report to each Committee

14      referred to in subparagraph (A) that includes—

15              (i) the number of individuals provided

16            premium assistance under this section;

17              (ii) the average dollar amount

18            (monthly and annually) of premium assist-

19            ance provided to such individuals; and

20              (iii) the total amount of expenditures

21            incurred (with administrative expenditures

22            noted separately) in connection with pre-

23            mium assistance under this section.

24     (14) COBRA PREMIUM ASSISTANCE.—

DOC_0002740

436

1           (A) IN GENERAL.—Subchapter B of chap-

2         ter 65 of the Internal Revenue Code of 1986 is

3         amended by adding at the end the following

4         new section:

5 **"SEC. 6432. CONTINUATION COVERAGE PREMIUM ASSIST-**

6           **ANCE.**

7     "(a) IN GENERAL.—The person to whom premiums

8 are payable for continuation coverage under section

9 30312(a)(1) of the Worker Health Coverage Protection

10 Act shall be allowed as a credit against the tax imposed

11 by section 3111(a), or so much of the taxes imposed under

12 section 3221(a) as are attributable to the rate in effect

13 under section 3111(a), for each calendar quarter an

14 amount equal to the premiums not paid by assistance eligi-

15 ble individuals for such coverage by reason of such section

16 30312(a)(1) with respect to such calendar quarter.

17     "(b) PERSON TO WHOM PREMIUMS ARE PAYABLE.—

18 For purposes of subsection (a), except as otherwise pro-

19 vided by the Secretary, the person to whom premiums are

20 payable under such continuation coverage shall be treated

21 as being—

22         "(1) in the case of any group health plan which

23         is a multiemployer plan (as defined in section 3(37)

24         of the Employee Retirement Income Security Act of

25         1974), the plan,

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002741

G:\CMTE\AP\16\FY20\_D\HEROES.XML

437

1           "(2) in the case of any group health plan not

2     described in paragraph (1)—

3           "(A) which provides furlough continuation

4       coverage described in section 30312(a)(1)(A)(ii)

5       of the Worker Health Coverage Protection Act

6       or subject to the COBRA continuation provi-

7       sions contained in—

8           "(i) this title,

9           "(ii) the Employee Retirement Income

10       Security Act of 1974,

11           "(iii) the Public Health Service Act,

12       or

13           "(iv) title 5, United States Code, or

14           "(B) under which some or all of the cov-

15       erage is not provided by insurance,

16     the employer maintaining the plan, and

17           "(3) in the case of any group health plan not

18     described in paragraph (1) or (2), the insurer pro-

19     viding the coverage under the group health plan.

20     "(c) LIMITATIONS AND REFUNDABILITY.—

21           "(1) CREDIT LIMITED TO CERTAIN EMPLOY-

22     MENT TAXES.—The credit allowed by subsection (a)

23     with respect to any calendar quarter shall not exceed

24     the tax imposed by section 3111(a), or so much of

25     the taxes imposed under section 3221(a) as are at-

DOC_0002742

438

1 tributable to the rate in effect under section
2 3111(a), for such calendar quarter (reduced by any
3 credits allowed under subsections (e) and (f) of sec-
4 tion 3111, sections 7001 and 7003 of the Families
5 First Coronavirus Response Act, section 2301 of the
6 CARES Act, and sections 20204 and 20212 of the
7 COVID–19 Tax Relief Act of 2020 for such quarter)
8 on the wages paid with respect to the employment
9 of all employees of the employer.

10 ''(2) REFUNDABILITY OF EXCESS CREDIT.—

11 ''(A) CREDIT IS REFUNDABLE.—If the
12 amount of the credit under subsection (a) ex-
13 ceeds the limitation of paragraph (1) for any
14 calendar quarter, such excess shall be treated
15 as an overpayment that shall be refunded under
16 sections 6402(a) and 6413(b).

17 ''(B) CREDIT MAY BE ADVANCED.—In an-
18 ticipation of the credit, including the refundable
19 portion under subparagraph (A), the credit may
20 be advanced, according to forms and instruc-
21 tions provided by the Secretary, up to an
22 amount calculated under subsection (a) through
23 the end of the most recent payroll period in the
24 quarter.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002743

439

1           "(C) TREATMENT OF DEPOSITS.—The

2 Secretary shall waive any penalty under section

3 6656 for any failure to make a deposit of the

4 tax imposed by section 3111(a), or so much of

5 the taxes imposed under section 3221(a) as are

6 attributable to the rate in effect under section

7 3111(a), if the Secretary determines that such

8 failure was due to the anticipation of the credit

9 allowed under this section.

10           "(D) TREATMENT OF PAYMENTS.—For

11 purposes of section 1324 of title 31, United

12 States Code, any amounts due to an employer

13 under this paragraph shall be treated in the

14 same manner as a refund due from a credit

15 provision referred to in subsection (b)(2) of

16 such section.

17           "(3) LIMITATION ON REIMBURSEMENT FOR

18 FURLOUGHED EMPLOYEES.—In the case of an indi-

19 vidual who for any month is an assistance eligible

20 individual described in section 30312(a)(3)(B) of the

21 Worker Health Coverage Protection Act with respect

22 to any coverage, the credit determined with respect

23 to such individual under subsection (a) for any such

24 month ending during a calendar quarter shall not

25 exceed the amount of premium the individual would

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002744

440

1    have paid for a full month of such coverage for the

2    month preceding the first month for which an indi-

3    vidual is such an assistance eligible individual.

4    ‘‘(d) GOVERNMENTAL ENTITIES.—For purposes of

5    this section, the term ‘person’ includes any governmental

6    entity or Indian tribal government (as defined in section

7    139E(c)(1)).

8    ‘‘(e) DENIAL OF DOUBLE BENEFIT.—For purposes

9    of chapter 1, the gross income of any person allowed a

10    credit under this section shall be increased for the taxable

11    year which includes the last day of any calendar quarter

12    with respect to which such credit is allowed by the amount

13    of such credit. No amount for which a credit is allowed

14    under this section shall be taken into account as qualified

15    wages under section 2301 of the CARES Act or as quali-

16    fied health plan expenses under section 7001(d) or

17    7003(d) of the Families First Coronavirus Response Act.

18    ‘‘(f) REPORTING.—Each person entitled to reim-

19    bursement under subsection (a) for any period shall sub-

20    mit such reports (at such time and in such manner) as

21    the Secretary may require, including—

22        ‘‘(1) an attestation of involuntary termination

23        of employment, reduction of hours, or furloughing,

24        for each assistance eligible individual on the basis of

25        whose termination, reduction of hours, or fur-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002745

441

1 loughing entitlement to reimbursement is claimed

2 under subsection (a),

3     "(2) a report of the amount of payroll taxes off-

4 set under subsection (a) for the reporting period,

5 and

6     "(3) a report containing the TINs of all covered

7 employees, the amount of subsidy reimbursed with

8 respect to each employee, and a designation with re-

9 spect to each employee as to whether the subsidy re-

10 imbursement is for coverage of 1 individual or 2 or

11 more individuals.

12 "(g) REGULATIONS.—The Secretary shall issue such

13 regulations or other guidance as may be necessary or ap-

14 propriate to carry out this section, including—

15     "(1) the requirement to report information or

16 the establishment of other methods for verifying the

17 correct amounts of reimbursements under this sec-

18 tion,

19     "(2) the application of this section to group

20 health plans that are multiemployer plans (as de-

21 fined in section 3(37) of the Employee Retirement

22 Income Security Act of 1974),

23     "(3) to allow the advance payment of the credit

24 determined under subsection (a), subject to the limi-

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002746

442

1 tations provided in this section, based on such infor-

2 mation as the Secretary shall require,

3     ''(4) to provide for the reconciliation of such

4 advance payment with the amount of the credit at

5 the time of filing the return of tax for the applicable

6 quarter or taxable year, and

7     ''(5) with respect to the application of the cred-

8 it to third party payors (including professional em-

9 ployer organizations, certified professional employer

10 organizations, or agents under section 3504).''.

11     (B) SOCIAL SECURITY TRUST FUNDS HELD

12     HARMLESS.—There are hereby appropriated to

13     the Federal Old-Age and Survivors Insurance

14     Trust Fund and the Federal Disability Insur-

15     ance Trust Fund established under section 201

16     of the Social Security Act (42 U.S.C. 401) and

17     the Social Security Equivalent Benefit Account

18     established under section 15A(a) of the Rail-

19     road Retirement Act of 1974 (45 U.S.C. 231n–

20     1(a)) amounts equal to the reduction in reve-

21     nues to the Treasury by reason of this section

22     (without regard to this subparagraph).

23     Amounts appropriated by the preceding sen-

24     tence shall be transferred from the general fund

25     at such times and in such manner as to rep-

g:\VHLC\051220\051220.072.xml    (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002747

443

1   licate to the extent possible the transfers which
2   would have occurred to such Trust Fund or Ac-
3   count had this section not been enacted.

4   (C) CLERICAL AMENDMENT.—The table of
5   sections for subchapter B of chapter 65 of the
6   Internal Revenue Code of 1986 is amended by
7   adding at the end the following new item:

"Sec. 6432. Continuation coverage premium assistance.".

8   (D) EFFECTIVE DATE.—The amendments
9   made by this paragraph shall apply to pre-
10   miums to which subsection (a)(1)(A) applies.

11   (E) SPECIAL RULE IN CASE OF EMPLOYEE
12   PAYMENT THAT IS NOT REQUIRED UNDER THIS
13   SECTION.—

14   (i) IN GENERAL.—In the case of an
15   assistance eligible individual who pays,
16   with respect any period of coverage to
17   which subsection (a)(1)(A) applies, the
18   amount of the premium for such coverage
19   that the individual would have (but for this
20   Act) been required to pay, the person to
21   whom such payment is payable shall reim-
22   burse such individual for the amount of
23   such premium paid.

24   (ii) CREDIT OF REIMBURSEMENT.—A
25   person to which clause (i) applies shall be

DOC_0002748

444

1        allowed a credit in the manner provided

2        under section 6432 of the Internal Rev-

3        enue Code of 1986 for any payment made

4        to the employee under such clause.

5           (iii) PAYMENT OF CREDITS.—Any

6        person to which clause (i) applies shall

7        make the payment required under such

8        clause to the individual not later than 60

9        days after the date on which such indi-

10       vidual elects continuation coverage under

11       section 30312(a)(1) of the Worker Health

12       Coverage Protection Act.

13     (15) PENALTY FOR FAILURE TO NOTIFY

14   HEALTH PLAN OF CESSATION OF ELIGIBILITY FOR

15   PREMIUM ASSISTANCE.—

16        (A) IN GENERAL.—Part I of subchapter B

17        of chapter 68 of the Internal Revenue Code of

18        1986 is amended by adding at the end the fol-

19        lowing new section:

20  **"SEC. 6720C. PENALTY FOR FAILURE TO NOTIFY HEALTH**

21       **PLAN OF CESSATION OF ELIGIBILITY FOR**

22       **CONTINUATION COVERAGE PREMIUM ASSIST-**

23       **ANCE.**

24    "(a) IN GENERAL.—Except in the case of failure de-

25  scribed in subsection (b) or (c), any person required to

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002749

445

1 notify a group health plan under section 30312(a)(2)(B)

2 of the Worker Health Coverage Protection Act who fails

3 to make such a notification at such time and in such man-

4 ner as the Secretary of Labor may require shall pay a

5 penalty of $250.

6    "(b) INTENTIONAL FAILURE.—In the case of any

7 such failure that is fraudulent, such person shall pay a

8 penalty equal to the greater of—

9        "(1) $250, or

10        "(2) 110 percent of the premium assistance

11        provided under section 30312(a)(1)(A) of such Act

12        after termination of eligibility under such section.

13    "(c) REASONABLE CAUSE EXCEPTION.—No penalty

14 shall be imposed under this section with respect to any

15 failure if it is shown that such failure is due to reasonable

16 cause and not to willful neglect.".

17        (B) CLERICAL AMENDMENT.—The table of

18        sections of part I of subchapter B of chapter 68

19        of such Code is amended by adding at the end

20        the following new item:

"Sec. 6720C. Penalty for failure to notify health plan of cessation of eligibility
for continuation coverage premium assistance.".

21     (16) COORDINATION WITH HCTC.—

22        (A) IN GENERAL.—Section 35(g)(9) of the

23        Internal Revenue Code of 1986 is amended to

24        read as follows:

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002750

446

1       "(9) CONTINUATION COVERAGE PREMIUM AS-

2     SISTANCE.—In the case of an assistance eligible in-

3     dividual who receives premium assistance for con-

4     tinuation coverage under section 30312(a)(1) of the

5     Worker Health Coverage Protection Act for any

6     month during the taxable year, such individual shall

7     not be treated as an eligible individual, a certified

8     individual, or a qualifying family member for pur-

9     poses of this section or section 7527 with respect to

10     such month.".

11        (B) EFFECTIVE DATE.—The amendment

12       made by subparagraph (A) shall apply to tax-

13       able years ending after the date of the enact-

14       ment of this Act.

15     (17) EXCLUSION OF CONTINUATION COVERAGE

16     PREMIUM ASSISTANCE FROM GROSS INCOME.—

17        (A) IN GENERAL.—Part III of subchapter

18       B of chapter 1 of the Internal Revenue Code of

19       1986 is amended by inserting after section

20       139H the following new section:

21 **"SEC. 139I. CONTINUATION COVERAGE PREMIUM ASSIST-**

22          **ANCE.**

23     "In the case of an assistance eligible individual (as

24 defined in subsection (a)(3) of section 30312 of the Work-

25 er Health Coverage Protection Act), gross income does not

447

1  include any premium assistance provided under subsection

2  (a)(1) of such section.''.

3         (B) CLERICAL AMENDMENT.—The table of

4         sections for part III of subchapter B of chapter

5         1 of such Code is amended by inserting after

6         the item relating to section 139H the following

7         new item:

"Sec. 139I. Continuation coverage premium assistance.".

8         (C) EFFECTIVE DATE.—The amendments

9         made by this paragraph shall apply to taxable

10        years ending after the date of the enactment of

11        this Act.

12     (18) DEADLINES WITH RESPECT TO NO-

13     TICES.—Notwithstanding section 518 of the Em-

14     ployee Retirement Income Security Act of 1974 and

15     section 7508A of the Internal Revenue Code of

16     1986, the Secretary of Labor and the Secretary of

17     the Treasury, respectively, may not waive or extend

18     any deadline with respect to the provision of notices

19     described in paragraphs (7), (8), and (9).

20  (b) RULE OF CONSTRUCTION.—In all matters of in-

21  terpretation, rules, and operational procedures, the lan-

22  guage of this section shall be interpreted broadly for the

23  benefit of workers and their families.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002752

448

1   TITLE IV—APPLICATION TO OTHER HEALTH

2       PROGRAMS

3   PROHIBITION ON COPAYMENTS AND COST SHARING FOR

4       TRICARE    BENEFICIARIES    RECEIVING    COVID–19

5       TREATMENT

6   Sec. 30401.

7       (a) In General.—Section 6006(a) of the Families

8   First Coronavirus Response Act (Public Law 116–127; 38

9   U.S.C. 1074 note) is amended by striking "or visits de-

10  scribed in paragraph (2) of such section" and inserting

11  ", visits described in paragraph (2) of such section, or

12  medical care to treat COVID–19".

13      (b) Effective Date.—The amendment made by

14  subsection (a) shall apply with respect to medical care fur-

15  nished on or after the date of the enactment of this Act.

16  PROHIBITION ON COPAYMENTS AND COST SHARING FOR

17      VETERANS RECEIVING COVID–19 TREATMENT FUR-

18      NISHED BY DEPARTMENT OF VETERANS AFFAIRS

19  Sec. 30402.

20      (a) In General.—Section 6006(b) of the Families

21  First Coronavirus Response Act (Public Law 116–127; 38

22  U.S.C. 1701 note) is amended by striking "or visits de-

23  scribed in paragraph (2) of such section" and inserting

24  ", visits described in paragraph (2) of such section, or hos-

25  pital care or medical services to treat COVID–19".

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002753

449

1     (b) EFFECTIVE DATE.—The amendment made by

2   subsection (a) shall apply with respect to hospital care and

3   medical services furnished on or after the date of the en-

4   actment of this Act.

5   PROHIBITION ON COPAYMENTS AND COST SHARING FOR

6       FEDERAL CIVILIAN EMPLOYEES RECEIVING COVID–19

7       TREATMENT

8     SEC. 30403.

9     (a) IN GENERAL.—Section 6006(c) of the Families

10   First Coronavirus Response Act (Public Law 116–127; 5

11   U.S.C. 8904 note) is amended by striking ''or visits de-

12   scribed in paragraph (2) of such section'' and inserting

13   '', visits described in paragraph (2) of such section, or hos-

14   pital care or medical services to treat COVID–19''.

15     (b) EFFECTIVE DATE.—The amendment made by

16   subsection (a) shall apply with respect to hospital care and

17   medical services furnished on or after the date of the en-

18   actment of this Act.

19     TITLE V—PUBLIC HEALTH POLICIES

20               DEFINITIONS

21     SEC. 30501.

22     In this title:

23     (1) Except as inconsistent with the provisions

24       of this title, the term ''Secretary'' means the Sec-

25       retary of Health and Human Services.

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002754

450

1     (2) The term ''State'' refers to each of the 50
2 States and the District of Columbia.

3     (3) The term ''Tribal'', with respect to a de-
4 partment of health (or health department), in-
5 cludes—

6     (A) Indian Tribes that—

7     (i) are operating one or more health
8 facilities pursuant to an agreement under
9 the Indian Self-Determination and Edu-
10 cation Assistance Act (25 U.S.C. 5301 et
11 seq.); or

12     (ii) receive services from a facility op-
13 erated by the Indian Health Services; and

14     (B) Tribal organizations and Urban Indian
15 organizations.

16     Subtitle A—Supply Chain Improvements

17     MEDICAL SUPPLIES RESPONSE COORDINATOR

18 SEC. 30511.

19     (a) IN GENERAL.—The President shall appoint a
20 Medical Supplies Response Coordinator to coordinate the
21 efforts of the Federal Government regarding the supply
22 and distribution of critical medical supplies and equipment
23 related to detecting, diagnosing, preventing, and treating
24 COVID–19, including personal protective equipment, med-
25 ical devices, drugs, and vaccines.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002755

451

1    (b) QUALIFICATIONS.—To qualify to be appointed as

2 the Medical Supplies Response Coordinator, an individual

3 shall be a senior government official with—

4        (1) health care training, including training re-

5    lated to infectious diseases or hazardous exposures;

6    and

7        (2) a familiarity with medical supply chain lo-

8    gistics.

9    (c) ACTIVITIES.—The Medical Supplies Response Co-

10 ordinator shall—

11       (1) consult with State, local, territorial, and

12    Tribal officials to ensure that health care facilities

13    and health care workers have sufficient personal pro-

14    tective equipment and other medical supplies;

15       (2) evaluate ongoing needs of States, localities,

16    territories, Tribes, health care facilities, and health

17    care workers to determine the need for critical med-

18    ical supplies and equipment;

19       (3) serve as a point of contact for industry for

20    procurement and distribution of critical medical sup-

21    plies and equipment, including personal protective

22    equipment, medical devices, testing supplies, drugs,

23    and vaccines;

24       (4) procure and distribute critical medical sup-

25    plies and equipment, including personal protective

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002756

452

1    equipment, medical devices, testing supplies, drugs,

2    and vaccines;

3         (5)(A) establish and maintain an up-to-date na-

4    tional database of hospital capacity, including beds,

5    ventilators, and supplies, including personal protec-

6    tive equipment, medical devices, drugs, and vaccines;

7    and

8         (B) provide weekly reports to the Congress on

9    gaps in such capacity and progress made toward

10   closing the gaps;

11        (6) require, as necessary, industry reporting on

12   production and distribution of personal protective

13   equipment, medical devices, testing supplies, drugs,

14   and vaccines and assess financial penalties as may

15   be specified by the Medical Supplies Response Coor-

16   dinator for failure to comply with such requirements

17   for reporting on production and distribution;

18        (7) consult with the Secretary and the Adminis-

19   trator of the Federal Emergency Management Agen-

20   cy, as applicable, to ensure sufficient production lev-

21   els under the Defense Production Act (50 U.S.C.

22   4501 et seq.); and

23        (8) monitor the prices of critical medical sup-

24   plies and equipment, including personal protective

25   equipment and medical devices, drugs, and vaccines

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002757

453

1    related to detecting, diagnosing, preventing, and

2    treating COVID–19 and report any suspected price

3    gouging of such materials to the Federal Trade

4    Commission and appropriate law enforcement offi-

5    cials.

6    INFORMATION TO BE INCLUDED IN LIST OF DEVICES

7        DETERMINED TO BE IN SHORTAGE

8    SEC. 30512.

9    Section 506J(g)(2)(A) of the Federal Food, Drug,

10    and Cosmetic Act, as added by section 3121 of the

11    CARES Act (Public Law 116–136), is amended by insert-

12    ing ", including the device identifier or national product

13    code for such device, if applicable" before the period at

14    the end.

15    EXTENDED SHELF LIFE DATES FOR ESSENTIAL DEVICES

16    SEC. 30513.

17    (a) IN GENERAL.—The Federal Food, Drug, and

18    Cosmetic Act is amended by inserting after section 506J

19    (21 U.S.C. 356j) the following:

20    **"SEC. 506K. EXTENDED SHELF LIFE DATES FOR ESSENTIAL**

21        **DEVICES.**

22    "(a) IN GENERAL.—A manufacturer of a device sub-

23    ject to notification requirements under section 506J (in

24    this section referred to as an 'essential device') shall—

25        "(1) submit to the Secretary data and informa-

26        tion as required by subsection (b)(1);

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002758

454

1         ''(2) conduct and submit the results of any

2 studies required under subsection (b)(3); and

3         ''(3) make any labeling change described in

4 subsection (c) by the date specified by the Secretary

5 pursuant to such subsection.

6     ''(b) NOTIFICATION.—

7         ''(1) IN GENERAL.—The Secretary may issue

8 an order requiring the manufacturer of any essential

9 device to submit, in such manner as the Secretary

10 may prescribe, data and information from any stage

11 of development of the device (including pilot, inves-

12 tigational, and final product validation) that are

13 adequate to assess the shelf life of the device to de-

14 termine the longest supported expiration date.

15         ''(2) UNAVAILABLE OR INSUFFICIENT DATA

16 AND INFORMATION.—If the data and information re-

17 ferred to in paragraph (1) are not available or are

18 insufficient, the Secretary may require the manufac-

19 turer of the device to—

20         ''(A) conduct studies adequate to provide

21 the data and information; and

22         ''(B) submit to the Secretary the results,

23 data, and information generated by such studies

24 when available.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002759

455

1    ''(c) LABELING.—The Secretary may issue an order

2  requiring the manufacturer of an essential device to make

3  by a specified date any labeling change regarding the expi-

4  ration period that the Secretary determines to be appro-

5  priate based on the data and information required to be

6  submitted under this section or any other data and infor-

7  mation available to the Secretary.

8    ''(d) CONFIDENTIALITY.—Nothing in this section

9  shall be construed as authorizing the Secretary to disclose

10  any information that is a trade secret or confidential infor-

11  mation subject to section 552(b)(4) of title 5, United

12  States Code, or section 1905 of title 18, United States

13  Code.''.

14    (b) CIVIL MONETARY PENALTY.—Section 303(f) of

15  the Federal Food, Drug, and Cosmetic Act (21 U.S.C.

16  333(f)) is amended by adding at the end the following:

17    ''(10) CIVIL MONETARY PENALTY WITH RESPECT

18  TO EXTENDED SHELF LIFE DATES FOR ESSENTIAL DE-

19  VICES.—If the manufacturer of a device subject to notifi-

20  cation requirements under section 506J violates section

21  506K by failing to submit data and information as re-

22  quired under section 506K(b)(1), failing to conduct or

23  submit the results of studies as required under section

24  506K(b)(3), or failing to make a labeling change as re-

25  quired under section 506K(c), such manufacturer shall be

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002760

456

1  liable to the United States for a civil penalty in an amount

2  not to exceed $10,000 for each such violation.''.

3  (c) EMERGENCY USE ELIGIBLE PRODUCTS.—Sub-

4  paragraph (A) of section 564A(a)(1) of the Federal Food,

5  Drug, and Cosmetic Act (21 U.S.C. 360bbb–3a(a)(1)) is

6  amended to read as follows:

7  "(A) is approved or cleared under this

8  chapter, otherwise listed as a device pursuant to

9  section 510(j), conditionally approved under

10  section 571, or licensed under section 351 of

11  the Public Health Service Act;".

12  AUTHORITY TO DESTROY COUNTERFEIT DEVICES

13  SEC. 30514.

14  (a) IN GENERAL.—Section 801(a) of the Federal

15  Food, Drug, and Cosmetic Act (21 U.S.C. 381(a)) is

16  amended—

17  (1) in the fourth sentence, by inserting "or

18  counterfeit device" after "counterfeit drug"; and

19  (2) by striking "The Secretary of the Treasury

20  shall cause the destruction of" and all that follows

21  through "liable for costs pursuant to subsection

22  (c)." and inserting the following: "The Secretary of

23  the Treasury shall cause the destruction of any such

24  article refused admission unless such article is ex-

25  ported, under regulations prescribed by the Sec-

26  retary of the Treasury, within 90 days of the date

DOC_0002761

457

1    of notice of such refusal or within such additional

2    time as may be permitted pursuant to such regula-

3    tions, except that the Secretary of Health and

4    Human Services may destroy, without the oppor-

5    tunity for export, any drug or device refused admis-

6    sion under this section, if such drug or device is val-

7    ued at an amount that is $2,500 or less (or such

8    higher amount as the Secretary of the Treasury may

9    set by regulation pursuant to section 498(a)(1) of

10    the Tariff Act of 1930 (19 U.S.C. 1498(a)(1))) and

11    was not brought into compliance as described under

12    subsection (b). The Secretary of Health and Human

13    Services shall issue regulations providing for notice

14    and an opportunity to appear before the Secretary

15    of Health and Human Services and introduce testi-

16    mony, as described in the first sentence of this sub-

17    section, on destruction of a drug or device under the

18    seventh sentence of this subsection. The regulations

19    shall provide that prior to destruction, appropriate

20    due process is available to the owner or consignee

21    seeking to challenge the decision to destroy the drug

22    or device. Where the Secretary of Health and

23    Human Services provides notice and an opportunity

24    to appear and introduce testimony on the destruc-

25    tion of a drug or device, the Secretary of Health and

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002762

458

1    Human Services shall store and, as applicable, dis-

2    pose of the drug or device after the issuance of the

3    notice, except that the owner and consignee shall re-

4    main liable for costs pursuant to subsection (c).''.

5    (b) DEFINITION.—Section 201(h) of the Federal

6    Food, Drug, and Cosmetic Act (21 U.S.C. 321(h)) is

7    amended—

8        (1) by redesignating subparagraphs (1), (2),

9    and (3) as clauses (A), (B), and (C), respectively;

10    and

11        (2) after making such redesignations—

12            (A) by striking ''(h) The term'' and insert-

13            ing ''(h)(1) The term''; and

14            (B) by adding at the end the following:

15    ''(2) The term 'counterfeit device' means a device

16    which, or the container, packaging, or labeling of which,

17    without authorization, bears a trademark, trade name, or

18    other identifying mark, imprint, or symbol, or any likeness

19    thereof, or is manufactured using a design, of a device

20    manufacturer, packer, or distributor other than the person

21    or persons who in fact manufactured, packed, or distrib-

22    uted such device and which thereby falsely purports or is

23    represented to be the product of, or to have been packed

24    or distributed by, such other device manufacturer, packer,

25    or distributor.

DOC_0002763

459

1    "(3) For purposes of subparagraph (2)—

2        "(A) the term 'manufactured' refers to any of

3    the following activities: manufacture, preparation,

4    propagation, compounding, assembly, or processing;

5    and

6        "(B) the term 'manufacturer' means a person

7    who is engaged in any of the activities listed in

8    clause (A).".

9    REPORTING REQUIREMENT FOR DRUG MANUFACTURERS

10       SEC. 30515.

11       (a) ESTABLISHMENTS IN A FOREIGN COUNTRY.—

12   Section 510(i) of the Federal Food, Drug, and Cosmetic

13   Act (21 U.S.C. 360(i)) is amended by inserting at the end

14   the following new paragraph:

15       "(5) The requirements of paragraphs (1) and (2)

16   shall apply to establishments within a foreign country en-

17   gaged in the manufacture, preparation, propagation,

18   compounding, or processing of any drug, including the ac-

19   tive pharmaceutical ingredient, that is required to be listed

20   pursuant to subsection (j). Such requirements shall apply

21   regardless of whether the drug or active pharmaceutical

22   ingredient undergoes further manufacture, preparation,

23   propagation, compounding, or processing at a separate es-

24   tablishment or establishments outside the United States

25   prior to being imported or offered for import into the

26   United States.".

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002764

460

1    (b) LISTING OF DRUGS.—Section 510(j)(1) of the

2 Federal Food, Drug, and Cosmetic Act (21 U.S.C.

3 360(j)(1)) is amended—

4    (1) in subparagraph (D), by striking ''and'' at

5    the end;

6    (2) in subparagraph (E), by striking the period

7    at the end and inserting ''; and''; and

8    (3) by adding at the end the following new sub-

9    paragraph:

10    ''(F) in the case of a drug contained in the ap-

11    plicable list, a certification that the registrant has—

12    ''(i) identified every other establishment

13    where manufacturing is performed for the drug;

14    and

15    ''(ii) notified each known foreign establish-

16    ment engaged in the manufacture, preparation,

17    propagation, compounding, or processing of the

18    drug, including the active pharmaceutical ingre-

19    dient, of the inclusion of the drug in the list

20    and the obligation to register.''.

21    (c) QUARTERLY REPORTING ON AMOUNT OF DRUGS

22 MANUFACTURED.—Section 510(j)(3)(A) of the Federal

23 Food, Drug, and Cosmetic Act (as added by section 3112

24 of the CARES Act (Public Law 116–136)) is amended

25 by striking ''annually'' and inserting ''once during the

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002765

461

1 month of March of each year, once during the month of

2 June of each year, once during the month of September

3 of each year, and once during the month of December of

4 each year''.

5    RECOMMENDATIONS TO ENCOURAGE DOMESTIC

6         MANUFACTURING OF CRITICAL DRUGS

7    SEC. 30516.

8    (a) IN GENERAL.—Not later than 14 days after the

9 date of enactment of this Act, the Secretary shall enter

10 into an agreement with the National Academies of

11 Sciences, Engineering, and Medicine (referred to in this

12 section as the "National Academies") under which, not

13 later than 90 days after the date of entering into the

14 agreement, the National Academies will—

15    (1) establish a committee of experts who are

16       knowledgeable about drug and device supply issues,

17       including—

18          (A) sourcing and production of critical

19       drugs and devices;

20          (B) sourcing and production of active

21       pharmaceutical ingredients in critical drugs;

22          (C) the raw materials and other compo-

23       nents for critical drugs and devices; and

24          (D) the public health and national security

25       implications of the current supply chain for

26       critical drugs and devices;

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002766

G:\CMTE\AP\16\FY20\_D\HEROES.XML

462

1    (2) convene a public symposium to—

2        (A) analyze the impact of United States

3        dependence on the foreign manufacturing of

4        critical drugs and devices on patient access and

5        care, including in hospitals and intensive care

6        units; and

7        (B) recommend strategies to end United

8        States dependence on foreign manufacturing to

9        ensure the United States has a diverse and vital

10        supply chain for critical drugs and devices to

11        protect the Nation from natural or hostile oc-

12        currences; and

13    (3) submit a report on the symposium's pro-

14    ceedings to the Congress and publish a summary of

15    such proceedings on the public website of the Na-

16    tional Academies.

17    (b) SYMPOSIUM.—In carrying out the agreement

18    under subsection (a), the National Academies shall consult

19    with—

20        (1) the Department of Health and Human

21        Services, the Department of Homeland Security, the

22        Department of Defense, the Department of Com-

23        merce, the Department of State, the Department of

24        Veterans Affairs, the Department of Justice, and

25        any other Federal agencies as appropriate; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002767

463

1    (2) relevant stakeholders, including drug and
2 device manufacturers, health care providers, medical
3 professional societies, State-based societies, public
4 health experts, State and local public health depart-
5 ments, State medical boards, patient groups, health
6 care distributors, wholesalers and group purchasing
7 organizations, pharmacists, and other entities with
8 experience in health care and public health, as ap-
9 propriate.

10  (c) DEFINITIONS.—For the purposes of this section:

11    (1) The term "critical"—

12        (A) with respect to a device, refers to a de-
13        vice classified by the Food and Drug Adminis-
14        tration as implantable, life-saving, and life-sus-
15        taining; or

16        (B) with respect to a drug, refers to a
17        drug that is described in subsection (a) of sec-
18        tion 506C of the Federal Food, Drug, and Cos-
19        metic Act (21 U.S.C. 356c) (relating to notifi-
20        cation of any discontinuance or interruption in
21        the production of life-saving drugs).

22    (2) The terms "device" and "drug" have the
23 meanings given to those terms in section 201 of the
24 Federal Food, Drug, and Cosmetic Act (21 U.S.C.
25 321).

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002768

464

1 FAILURE TO NOTIFY OF A PERMANENT DISCONTINUANCE

2 OR AN INTERRUPTION

3 SEC. 30517.

4 Section 301 of the Federal Food, Drug, and Cosmetic

5 Act (21 U.S.C. 331) is amended by adding at the end the

6 following:

7 "(fff) The failure of a manufacturer of a drug de-

8 scribed in section 506C(a) or an active pharmaceutical in-

9 gredient of such a drug, without a reasonable basis as de-

10 termined by the Secretary, to notify the Secretary of a

11 permanent discontinuance or an interruption, and the rea-

12 sons for such discontinuance or interruption, as required

13 by section 506C.".

14 FAILURE TO DEVELOP RISK MANAGEMENT PLAN

15 SEC. 30518.

16 Section 301 of the Federal Food, Drug, and Cosmetic

17 Act (21 U.S.C. 331), as amended by section 30517, is fur-

18 ther amended by adding at the end the following:

19 "(ggg) The failure to develop, maintain, and imple-

20 ment a risk management plan, as required by section

21 506C(j).".

22 NATIONAL CENTERS OF EXCELLENCE IN CONTINUOUS

23 PHARMACEUTICAL MANUFACTURING

24 SEC. 30519.

25 (a) IN GENERAL.—Section 3016 of the 21st Century

26 Cures Act (21 U.S.C. 399h) is amended to read as follows:

DOC_0002769

465

1    "NATIONAL CENTERS OF EXCELLENCE IN CONTINUOUS

2        PHARMACEUTICAL MANUFACTURING

3    "SEC. 3016.

4    "(a) IN GENERAL.—The Secretary of Health and

5 Human Services, acting through the Commissioner of

6 Food and Drugs—

7       "(1) shall solicit and, beginning not later than

8    1 year after the date of enactment of the National

9    Centers of Excellence in Continuous Pharmaceutical

10    Manufacturing Act of 2019, receive requests from

11    institutions of higher education to be designated as

12    a National Center of Excellence in Continuous Phar-

13    maceutical Manufacturing (in this section referred to

14    as a 'National Center of Excellence') to support the

15    advancement and development of continuous manu-

16    facturing; and

17       "(2) shall so designate any institution of higher

18    education that—

19          "(A) requests such designation; and

20          "(B) meets the criteria specified in sub-

21       section (c).

22    "(b) REQUEST FOR DESIGNATION.—A request for

23 designation under subsection (a) shall be made to the Sec-

24 retary at such time, in such manner, and containing such

25 information as the Secretary may require. Any such re-

466

1 quest shall include a description of how the institution of

2 higher education meets or plans to meet each of the cri-

3 teria specified in subsection (c).

4    "(c) CRITERIA FOR DESIGNATION DESCRIBED.—The

5 criteria specified in this subsection with respect to an in-

6 stitution of higher education are that the institution has,

7 as of the date of the submission of a request under sub-

8 section (a) by such institution—

9        "(1) physical and technical capacity for re-

10     search and development of continuous manufac-

11     turing;

12       "(2) manufacturing knowledge-sharing net-

13     works with other institutions of higher education,

14     large and small pharmaceutical manufacturers, ge-

15     neric and nonprescription manufacturers, contract

16     manufacturers, and other entities;

17       "(3) proven capacity to design and demonstrate

18     new, highly effective technology for use in contin-

19     uous manufacturing;

20       "(4) a track record for creating and transfer-

21     ring knowledge with respect to continuous manufac-

22     turing;

23       "(5) the potential to train a future workforce

24     for research on and implementation of advanced

25     manufacturing and continuous manufacturing; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002771

G:\CMTE\AP\16\FY20\_D\HEROES.XML

467

1       ''(6) experience in participating in and leading
2 a continuous manufacturing technology partnership
3 with other institutions of higher education, large and
4 small pharmaceutical manufacturers (including ge-
5 neric and nonprescription drug manufacturers), con-
6 tract manufacturers, and other entities—

7       ''(A) to support companies with continuous
8 manufacturing in the United States;

9       ''(B) to support Federal agencies with
10 technical assistance, which may include regu-
11 latory and quality metric guidance as applica-
12 ble, for advanced manufacturing and continuous
13 manufacturing;

14       ''(C) with respect to continuous manufac-
15 turing, to organize and conduct research and
16 development activities needed to create new and
17 more effective technology, capture and dissemi-
18 nate expertise, create intellectual property, and
19 maintain technological leadership;

20       ''(D) to develop best practices for design-
21 ing continuous manufacturing; and

22       ''(E) to assess and respond to the work-
23 force needs for continuous manufacturing, in-
24 cluding the development of training programs if
25 needed.

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002772

468

1    ''(d) TERMINATION OF DESIGNATION.—The Sec-
2    retary may terminate the designation of any National Cen-
3    ter of Excellence designated under this section if the Sec-
4    retary determines such National Center of Excellence no
5    longer meets the criteria specified in subsection (c). Not
6    later than 60 days before the effective date of such a ter-
7    mination, the Secretary shall provide written notice to the
8    National Center of Excellence, including the rationale for
9    such termination.

10    ''(e) CONDITIONS FOR DESIGNATION.—As a condi-
11    tion of designation as a National Center of Excellence
12    under this section, the Secretary shall require that an in-
13    stitution of higher education enter into an agreement with
14    the Secretary under which the institution agrees—

15        ''(1) to collaborate directly with the Food and
16        Drug Administration to publish the reports required
17        by subsection (g);

18        ''(2) to share data with the Food and Drug Ad-
19        ministration regarding best practices and research
20        generated through the funding under subsection (f);

21        ''(3) to develop, along with industry partners
22        (which may include large and small biopharma-
23        ceutical manufacturers, generic and nonprescription
24        manufacturers, and contract manufacturers) and an-
25        other institution or institutions designated under

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002773

469

1    this section, if any, a roadmap for developing a con-
2    tinuous manufacturing workforce;

3        ''(4) to develop, along with industry partners
4    and other institutions designated under this section,
5    a roadmap for strengthening existing, and devel-
6    oping new, relationships with other institutions; and

7        ''(5) to provide an annual report to the Food
8    and Drug Administration regarding the institution's
9    activities under this section, including a description
10   of how the institution continues to meet and make
11   progress on the criteria listed in subsection (e).

12   ''(f) FUNDING.—

13       ''(1) IN GENERAL.—The Secretary shall award
14   funding, through grants, contracts, or cooperative
15   agreements, to the National Centers of Excellence
16   designated under this section for the purpose of
17   studying and recommending improvements to contin-
18   uous manufacturing, including such improvements
19   as may enable the Centers—

20           ''(A) to continue to meet the conditions
21       specified in subsection (e); and

22           ''(B) to expand capacity for research on,
23       and development of, continuing manufacturing.

24       ''(2) CONSISTENCY WITH FDA MISSION.—As a
25   condition on receipt of funding under this sub-

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002774

470

1    section, a National Center of Excellence shall agree

2    to consider any input from the Secretary regarding

3    the use of funding that would—

4        ''(A) help to further the advancement of

5    continuous manufacturing through the National

6    Center of Excellence; and

7        ''(B) be relevant to the mission of the

8    Food and Drug Administration.

9    ''(3) AUTHORIZATION OF APPROPRIATIONS.—

10   There is authorized to be appropriated to carry out

11   this subsection $100,000,000, to remain available

12   until expended.

13   ''(4) RULE OF CONSTRUCTION.—Nothing in

14   this section shall be construed as precluding a Na-

15   tional Center for Excellence designated under this

16   section from receiving funds under any other provi-

17   sion of this Act or any other Federal law.

18   ''(g) ANNUAL REVIEW AND REPORTS.—

19   ''(1) ANNUAL REPORT.—Beginning not later

20   than 1 year after the date on which the first des-

21   ignation is made under subsection (a), and annually

22   thereafter, the Secretary shall—

23       ''(A) submit to Congress a report describ-

24   ing the activities, partnerships and collabora-

25   tions, Federal policy recommendations, previous

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002775

471

1 and continuing funding, and findings of, and

2 any other applicable information from, the Na-

3 tional Centers of Excellence designated under

4 this section; and

5 ''(B) make such report available to the

6 public in an easily accessible electronic format

7 on the website of the Food and Drug Adminis-

8 tration.

9 ''(2) REVIEW OF NATIONAL CENTERS OF EX-

10 CELLENCE AND POTENTIAL DESIGNEES.—The Sec-

11 retary shall periodically review the National Centers

12 of Excellence designated under this section to ensure

13 that such National Centers of Excellence continue to

14 meet the criteria for designation under this section.

15 ''(3) REPORT ON LONG-TERM VISION OF FDA

16 ROLE.—Not later than 2 years after the date on

17 which the first designation is made under subsection

18 (a), the Secretary, in consultation with the National

19 Centers of Excellence designated under this section,

20 shall submit a report to the Congress on the long-

21 term vision of the Department of Health and

22 Human Services on the role of the Food and Drug

23 Administration in supporting continuous manufac-

24 turing, including—

472

1        ''(A) a national framework of principles re-
2    lated to the implementation and regulation of
3    continuous manufacturing;

4        ''(B) a plan for the development of Federal
5    regulations and guidance for how advanced
6    manufacturing and continuous manufacturing
7    can be incorporated into the development of
8    pharmaceuticals and regulatory responsibilities
9    of the Food and Drug Administration; and

10        ''(C) appropriate feedback solicited from
11    the public, which may include other institutions,
12    large and small biopharmaceutical manufactur-
13    ers, generic and nonprescription manufacturers,
14    and contract manufacturers.

15    ''(h) DEFINITIONS.—In this section:

16        ''(1) ADVANCED MANUFACTURING.—The term
17    'advanced manufacturing' means an approach for
18    the manufacturing of pharmaceuticals that incor-
19    porates novel technology, or uses an established
20    technique or technology in a new or innovative way
21    (such as continuous manufacturing where the input
22    materials are continuously transformed within the
23    process by two or more unit operations) that en-
24    hances drug quality or improves the manufacturing
25    process.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002777

473

1         "(2) CONTINUOUS MANUFACTURING.—The

2 term 'continuous manufacturing'—

3         "(A) means a process where the input ma-

4 terials are continuously fed into and trans-

5 formed within the process, and the processed

6 output materials are continuously removed from

7 the system; and

8         "(B) consists of an integrated process that

9 consists of a series of two or more unit oper-

10 ations.

11         "(3) INSTITUTION OF HIGHER EDUCATION.—

12 The term 'institution of higher education' has the

13 meaning given such term in section 101(a) of the

14 Higher Education Act of 1965 (20 U.S.C. 1001(a)).

15         "(4) SECRETARY.—The term 'Secretary' means

16 the Secretary of Health and Human Services, acting

17 through the Commissioner of Food and Drugs.".

18 (b) TRANSITION RULE.—Section 3016 of the 21st

19 Century Cures Act (21 U.S.C. 399h), as in effect on the

20 day before the date of the enactment of this section, shall

21 apply with respect to grants awarded under such section

22 before such date of enactment.

23     VACCINE MANUFACTURING AND ADMINISTRATION

24                  CAPACITY

25 SEC. 30520.

26 (a) ENHANCING MANUFACTURING CAPACITY.—

DOC_0002778

474

1    (1) IN GENERAL.—The Secretary, acting

2    through the Director of the Biomedical Advanced

3    Research and Development Authority, shall, as ap-

4    propriate, award contracts, grants, and cooperative

5    agreements, and enter into other transactions, to ex-

6    pand and enhance manufacturing capacity of vac-

7    cines and vaccine candidates to prevent the spread

8    of SARS–CoV–2 and COVID–19.

9    (2) AUTHORIZATION OF APPROPRIATIONS.—To

10   carry out this subsection, there are authorized to be

11   appropriated such sums as may be necessary for fis-

12   cal years 2020 through 2024, to remain available

13   until expended.

14   (b) REPORT ON VACCINE MANUFACTURING AND AD-

15   MINISTRATION CAPACITY.—

16   (1) IN GENERAL.—Not later than December 31,

17   2020, the Secretary shall submit to the Committee

18   on Energy and Commerce of the House of Rep-

19   resentatives and the Committee on Health, Edu-

20   cation, Labor and Pensions of the Senate a report

21   detailing—

22       (A) an assessment of the estimated supply

23       of vaccines and ancillary medical products re-

24       lated to vaccine administration necessary to

25       control and stop the spread of SARS–CoV–2

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002779

475

1     and COVID–19, domestically and internation-

2     ally;

3          (B) an assessment of current and future

4     domestic manufacturing capacity for vaccines or

5     vaccine candidates to control or stop the spread

6     of SARS–CoV–2 and COVID–19, vaccine can-

7     didates, and ancillary products related to the

8     administration of such vaccines, including iden-

9     tification of any gaps in manufacturing capac-

10     ity;

11          (C) activities conducted to expand and en-

12     hance manufacturing capacity for vaccines, vac-

13     cine candidates, and ancillary medical products

14     to levels sufficient to control and stop the

15     spread of SARS–CoV–2 and COVID–19, do-

16     mestically and internationally, including a list

17     and explanation of all contracts, grants, and co-

18     operative agreements awarded, and other trans-

19     actions entered into, for purposes of such ex-

20     pansion and enhancement and how such activi-

21     ties will help to meet future domestic manufac-

22     turing capacity needs;

23          (D) a plan for the ongoing support of en-

24     hanced manufacturing capacity for vaccines,

25     vaccine candidates, and ancillary medical prod-

DOC_0002780

476

1    ucts sufficient to control and stop the spread of

2    SARS–CoV–2 and COVID–19, domestically

3    and internationally; and

4        (E) a plan to support the administration of

5    vaccines approved or authorized by the Food

6    and Drug Administration to control and stop

7    the spread of SARS–CoV–2 and COVID–19,

8    domestically and internationally, including Fed-

9    eral workforce enhancements necessary to ad-

10   minister such vaccines.

11       (2) ANCILLARY MEDICAL PRODUCTS.—For pur-

12   poses of this subsection, "ancillary medical prod-

13   ucts" includes—

14       (A) vials;

15       (B) bandages;

16       (C) alcohol swabs;

17       (D) syringes;

18       (E) needles;

19       (F) gloves and other personal protective

20   equipment; and

21       (G) other medical products the Secretary

22   determines necessary for the administration of

23   vaccines.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002781

477

1  Subtitle B—Strategic National Stockpile Improvements

2                    EQUIPMENT MAINTENANCE

3  SEC. 30531.

4      Section 319F–2 of the Public Health Service Act (42

5  U.S.C. 247d–6b) is amended—

6          (1) in subsection (a)(3)—

7              (A) in subparagraph (I), by striking ";

8          and" and inserting a semicolon;

9              (B) in subparagraph (J), by striking the

10         period at the end and inserting a semicolon;

11         and

12             (C) by inserting the following new subpara-

13         graph at the end:

14             "(K) ensure the contents of the stockpile

15         remain in good working order and, as appro-

16         priate, conduct maintenance services on such

17         contents; and"; and

18         (2) in subsection (c)(7)(B), by adding at the

19     end the following new clause:

20                 "(ix) EQUIPMENT MAINTENANCE

21             SERVICE.—In carrying out this section, the

22             Secretary may enter into contracts for the

23             procurement of equipment maintenance

24             services.".

25  SUPPLY CHAIN FLEXIBILITY MANUFACTURING PILOT

26  SEC. 30532.

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002782

G:\CMTE\AP\16\FY20\_D\HEROES.XML

478

1   (a) IN GENERAL.—Section 319F–2(a)(3) of the Pub-

2   lic Health Service Act (42 U.S.C. 247d–6b(a)(3)), as

3   amended by section 30531, is further amended by adding

4   at the end the following new subparagraph:

5         "(L) enhance medical supply chain elas-

6       ticity and establish and maintain domestic re-

7       serves of critical medical supplies (including

8       personal protective equipment, ancillary medical

9       supplies, and other applicable supplies required

10      for the administration of drugs, vaccines and

11      other biological products, and other medical de-

12      vices (including diagnostic tests)) by—

13            "(i) increasing emergency stock of

14          critical medical supplies;

15            "(ii) geographically diversifying pro-

16          duction of such medical supplies;

17            "(iii) purchasing, leasing, or entering

18          into joint ventures with respect to facilities

19          and equipment for the production of such

20          medical supplies; and

21            "(iv) working with distributors of

22          such medical supplies to manage the do-

23          mestic reserves established under this sub-

24          paragraph by refreshing and replenishing

25          stock of such medical supplies.".

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002783

G:\CMTE\AP\16\FY20\_D\HEROES.XML

479

1    (b) REPORTING; SUNSET.—Section 319F–2(a) of the

2  Public Health Service Act (42 U.S.C. 247d–6b(a)) is

3  amended by adding at the end the following:

4      "(6) REPORTING.—Not later than September

5    30, 2022, the Secretary shall submit to the Com-

6    mittee on Energy and Commerce of the House of

7    Representatives and the Committee on Health, Edu-

8    cation, Labor and Pensions of the Senate a report

9    on the details of each purchase, lease, or joint ven-

10    ture entered into under paragraph (3)(L), including

11    the amount expended by the Secretary on each such

12    purchase, lease, or joint venture.

13      "(7) SUNSET.—The authority to make pur-

14    chases, leases, or joint ventures pursuant to para-

15    graph (3)(L) shall cease to be effective on Sep-

16    tember 30, 2023.".

17    (c) FUNDING.—Section 319F–2(f) of the Public

18  Health Service Act (42 U.S.C. 247d–6b(f)) is amended by

19  adding at the end the following:

20      "(3) SUPPLY CHAIN ELASTICITY.—

21        "(A) IN GENERAL.—For the purpose of

22      carrying out subsection (a)(3)(L), there is au-

23      thorized to be appropriated $500,000,000 for

24      each of fiscal years 2020 through 2023, to re-

25      main available until expended.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002784

480

1        "(B) RELATION TO OTHER AMOUNTS.—

2    The amount authorized to be appropriated by

3    subparagraph (A) for the purpose of carrying

4    out subsection (a)(3)(L) is in addition to any

5    other amounts available for such purpose.".

6  REIMBURSABLE TRANSFERS FROM STRATEGIC NATIONAL

7                     STOCKPILE

8    SEC. 30533.

9    Section 319F–2(a) of the Public Health Service Act

10  (42 U.S.C. 247d–6b(a)), as amended, is further amended

11  by adding at the end the following:

12        "(8) TRANSFERS AND REIMBURSEMENTS.—

13            "(A) IN GENERAL.—Without regard to

14        chapter 5 of title 40, United States Code, the

15        Secretary may transfer to any Federal depart-

16        ment or agency, on a reimbursable basis, any

17        drugs, vaccines and other biological products,

18        medical devices, and other supplies in the stock-

19        pile if—

20                "(i) the transferred supplies are less

21            than 6 months from expiry;

22                "(ii) the stockpile is able to replenish

23            the supplies, as appropriate; and

24                "(iii) the Secretary decides the trans-

25            fer is in the best interest of the United

26            States Government.

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002785

481

1        "(B) USE OF REIMBURSEMENT.—Reim-
2   bursement derived from the transfer of supplies
3   pursuant to subparagraph (A) may be used by
4   the Secretary, without further appropriation
5   and without fiscal year limitation, to carry out
6   this section.

7        "(C) REPORT.—Not later than September
8   30, 2022, the Secretary shall submit to the
9   Committee on Energy and Commerce of the
10   House of Representatives and the Committee
11   on Health, Education, Labor and Pensions of
12   the Senate a report on each transfer made
13   under this paragraph and the amount received
14   by the Secretary in exchange for that transfer.

15        "(D) SUNSET.—The authority to make
16   transfers under this paragraph shall cease to be
17   effective on September 30, 2023.".

18  STRATEGIC NATIONAL STOCKPILE ACTION REPORTING

19    SEC. 30534.

20   (a) IN GENERAL.—The Assistant Secretary for Pre-
21 paredness and Response (in this section referred to as the
22 "Assistant Secretary"), in coordination with the Adminis-
23 trator of the Federal Emergency Management Agency,
24 shall—

25    (1) not later than 30 days after the date of en-
26   actment of this Act, issue a report to the Committee

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002786

482

1    on Energy and Commerce of the House of Rep-

2    resentatives and the Committee on Health, Edu-

3    cation, Labor and Pensions of the Senate regarding

4    all State, local, Tribal, and territorial requests for

5    supplies from the Strategic National Stockpile re-

6    lated to COVID–19; and

7    (2) not less than every 30 days thereafter

8    through the end of the emergency period (as such

9    term is defined in section 1135(g)(1)(B) of the So-

10    cial Security Act (42 U.S.C. 1320b–5(g)(1)(B))),

11    submit to such committees an updated version of

12    such report.

13    (b) REPORTING PERIOD.—

14    (1) INITIAL REPORT.—The initial report under

15    subsection (a) shall address all requests described in

16    such subsection made during the period—

17    (A) beginning on January 31, 2020; and

18    (B) ending on the date that is 30 days be-

19    fore the date of submission of the report.

20    (2) UPDATES.—Each update to the report

21    under subsection (a) shall address all requests de-

22    scribed in such subsection made during the period—

23    (A) beginning at the end of the previous

24    reporting period under this section; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002787

483

1          (B) ending on the date that is 30 days be-
2      fore the date of submission of the updated re-
3      port.

4      (c) CONTENTS OF REPORT.—The report under sub-
5  section (a) (and updates thereto) shall include—

6          (1) the details of each request described in such
7      subsection, including—

8              (A) the specific medical countermeasures,
9          including devices such as personal protective
10          equipment, and other materials requested; and

11              (B) the amount of such materials re-
12          quested; and

13          (2) the outcomes of each request described in
14      subsection (a), including—

15              (A) whether the request was wholly ful-
16          filled, partially fulfilled, or denied;

17              (B) if the request was wholly or partially
18          fulfilled, the fulfillment amount; and

19              (C) if the request was partially fulfilled or
20          denied, a rationale for such outcome.

21  IMPROVED, TRANSPARENT PROCESSES FOR THE

22          STRATEGIC NATIONAL STOCKPILE

23  SEC. 30535.

24      (a) IN GENERAL.—Not later than January 1, 2021,
25  the Secretary, in collaboration with the Assistant Sec-
26  retary for Preparedness and Response and the Director

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002788

484

1 of the Centers for Disease Control and Prevention, shall

2 develop and implement improved, transparent processes

3 for the use and distribution of drugs, vaccines and other

4 biological products, medical devices, and other supplies

5 (including personal protective equipment, ancillary med-

6 ical supplies, and other applicable supplies required for the

7 administration of drugs, vaccines and other biological

8 products, diagnostic tests, and other medical devices ) in

9 the Strategic National Stockpile under section 319F–2 of

10 the Public Health Service Act (42 U.S.C. 247d–6b) (in

11 this section referred to as the "Stockpile").

12    (b) PROCESSES.—The processes developed under

13 subsection (a) shall include—

14        (1) the form and manner in which States, local-

15    ities, Tribes, and territories are required to submit

16    requests for supplies from the Stockpile;

17        (2) the criteria used by the Secretary in re-

18    sponding to such requests, including the reasons for

19    fulfilling or denying such requests;

20        (3) what circumstances result in prioritization

21    of distribution of supplies from the Stockpile to

22    States, localities, Tribes, or territories;

23        (4) clear plans for future, urgent communica-

24    tion between the Secretary and States, localities,

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002789

485

1    Tribes, and territories regarding the outcome of

2    such requests; and

3    (5) any differences in the processes developed

4    under subsection (a) for geographically related emer-

5    gencies, such as weather events, and national emer-

6    gencies, such as pandemics.

7    (c) REPORT TO CONGRESS.—Not later than January

8    1, 2021, the Secretary shall—

9    (1) submit a report to the Committee Energy

10    and Commerce of the House of Representatives and

11    the Committee on Health, Education, Labor and

12    Pensions of the Senate regarding the improved,

13    transparent processes developed under this section;

14    and

15    (2) include in such report recommendations for

16    opportunities for communication (by telebriefing,

17    phone calls, or in-person meetings) between the Sec-

18    retary and States, localities, Tribes, and territories

19    regarding such improved, transparent processes.

20    GAO STUDY ON THE FEASIBILITY AND BENEFITS OF A

21    STRATEGIC NATIONAL STOCKPILE USER FEE AGREEMENT

22    SEC. 30536.

23    (a) IN GENERAL.— The Comptroller General of the

24    United States shall conduct a study to investigate the fea-

25    sibility of establishing user fees to offset certain Federal

26    costs attributable to the procurement of single-source ma-

DOC_0002790

486

1 terials for the Strategic National Stockpile under section

2 319F–2 of the Public Health Service Act (42 U.S.C.

3 247d–6b) and distributions of such materials from the

4 Stockpile. In conducting this study, the Comptroller Gen-

5 eral shall consider, to the extent information is available—

6     (1) whether entities receiving such distributions

7     generate profits from those distributions;

8     (2) any Federal costs attributable to such dis-

9     tributions;

10     (3) whether such user fees would provide the

11     Secretary with funding to potentially offset procure-

12     ment costs of such materials for the Strategic Na-

13     tional Stockpile; and

14     (4) any other issues the Comptroller General

15     identifies as relevant.

16 (b) REPORT.—Not later than February 1, 2023, the

17 Comptroller General of the United States shall submit to

18 the Congress a report on the findings and conclusions of

19 the study under subsection (a).

20     Subtitle C—Testing and Testing Infrastructure

21                    Improvements

22              COVID–19 TESTING STRATEGY

23 SEC. 30541.

24 (a) STRATEGY.—Not later than June 15, 2020, the

25 Secretary shall update the COVID–19 strategic testing

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002791

487

1 plan under the heading ''Department of Health and
2 Human Services—Office of the Secretary—Public Health
3 and Social Service Emergency Fund'' in title I of division
4 B of the Paycheck Protection Program and Health Care
5 Enhancement Act (Public Law 116–139, 134 Stat. 620,
6 626–627) and submit to the appropriate congressional
7 committees such updated national plan identifying—

8      (1) what level of, types of, and approaches to
9      testing (including predicted numbers of tests, popu-
10     lations to be tested, and frequency of testing and the
11     appropriate setting whether a health care setting
12     (such as hospital-based, high-complexity laboratory,
13     point-of-care, mobile testing units, pharmacies or
14     community health centers) or non-health care setting
15     (such as workplaces, schools, or child care centers))
16     are necessary—

17          (A) to sufficiently monitor and contribute
18          to the control of the transmission of SARS–
19          CoV–2 in the United States;

20          (B) to ensure that any reduction in social
21          distancing efforts, when determined appropriate
22          by public health officials, can be undertaken in
23          a manner that optimizes the health and safety
24          of the people of the United States, and reduces
25          disparities (including disparities related to race,

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002792

488

1   ethnicity, sex, age, disability status, socio-
2   economic status, and geographic location) in the
3   prevalence of, incidence of, and health outcomes
4   with respect to, COVID–19; and

5   (C) to provide for ongoing surveillance suf-
6   ficient to support contact tracing, case identi-
7   fication, quarantine, and isolation to prevent fu-
8   ture outbreaks of COVID–19;

9   (2) specific plans and benchmarks, each with
10   clear timelines, to ensure—

11   (A) such level of, types of, and approaches
12   to testing as are described in paragraph (1),
13   with respect to optimizing health and safety;

14   (B) sufficient availability of all necessary
15   testing materials and supplies, including extrac-
16   tion and testing kits, reagents, transport media,
17   swabs, instruments, analysis equipment, per-
18   sonal protective equipment if necessary for test-
19   ing (including point-of-care testing), and other
20   equipment;

21   (C) allocation of testing materials and sup-
22   plies in a manner that optimizes public health,
23   including by considering the variable impact of
24   SARS–CoV–2 on specific States, territories, In-
25   dian Tribes, Tribal organizations, urban Indian

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002793

489

 1    organizations, communities, industries, and pro-

 2    fessions;

 3         (D) sufficient evidence of validation for

 4    tests that are deployed as a part of such strat-

 5    egy;

 6         (E) sufficient laboratory and analytical ca-

 7    pacity, including target turnaround time for

 8    test results;

 9         (F) sufficient personnel, including per-

10    sonnel to collect testing samples, conduct and

11    analyze results, and conduct testing follow-up,

12    including contact tracing, as appropriate; and

13         (G) enforcement of the Families First

14    Coronavirus Response Act (Public Law 116–

15    127) to ensure patients who are tested are not

16    subject to cost sharing;

17    (3) specific plans to ensure adequate testing in

18    rural areas, frontier areas, health professional short-

19    age areas, and medically underserved areas (as de-

20    fined in section 330I(a) of the Public Health Service

21    Act (42 U.S.C. 254c–14(a))), and for underserved

22    populations, Native Americans (including Indian

23    Tribes, Tribal organizations, and urban Indian orga-

24    nizations), and populations at increased risk related

25    to COVID–19;

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002794

490

1     (4) specific plans to ensure accessibility of test-

2    ing to people with disabilities, older individuals, and

3    individuals with underlying health conditions or

4    weakened immune systems; and

5     (5) specific plans for broadly developing and

6    implementing testing for potential immunity in the

7    United States, as appropriate, in a manner suffi-

8    cient—

9        (A) to monitor and contribute to the con-

10      trol of SARS–CoV–2 in the United States;

11       (B) to ensure that any reduction in social

12      distancing efforts, when determined appropriate

13      by public health officials, can be undertaken in

14      a manner that optimizes the health and safety

15      of the people of the United States; and

16       (C) to reduce disparities (including dispari-

17      ties related to race, ethnicity, sex, age, dis-

18      ability status, socioeconomic status, and geo-

19      graphic location) in the prevalence of, incidence

20      of, and health outcomes with respect to,

21      COVID–19.

22    (b) COORDINATION.—The Secretary shall carry out

23  this section—

24     (1) in coordination with the Administrator of

25    the Federal Emergency Management Agency;

DOC_0002795

491

1      (2) in collaboration with other agencies and de-

2   partments, as appropriate; and

3      (3) taking into consideration the State plans for

4   COVID–19 testing prepared as required under the

5   heading "Department of Health and Human Serv-

6   ices—Office of the Secretary—Public Health and

7   Social Service Emergency Fund" in title I of divi-

8   sion B of the Paycheck Protection Program and

9   Health Care Enhancement Act (Public Law 116–

10   139; 134 Stat. 620, 624).

11   (c) UPDATES.—

12      (1) FREQUENCY.—The updated national plan

13   under subsection (a) shall be updated every 30 days

14   until the end of the public health emergency first de-

15   clared by the Secretary under section 319 of the

16   Public Health Service Act (42 U.S.C. 247d) on Jan-

17   uary 31, 2020, with respect to COVID–19.

18      (2) RELATION TO OTHER LAW.—Paragraph (1)

19   applies in lieu of the requirement (for updates every

20   90 days until funds are expended) in the second to

21   last proviso under the heading "Department of

22   Health and Human Services—Office of the Sec-

23   retary—Public Health and Social Service Emergency

24   Fund" in title I of division B of the Paycheck Pro-

g:\VHLC\051220\051220.072.xml      (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002796

492

1 tection Program and Health Care Enhancement Act

2 (Public Law 116–139; 134 Stat. 620, 627).

3 (d) APPROPRIATE CONGRESSIONAL COMMITTEES.—

4 In this section, the term "appropriate congressional com-

5 mittees" means—

6 (1) the Committee on Appropriations and the

7 Committee on Energy and Commerce of the House

8 of Representatives; and

9 (2) the Committee on Appropriations and the

10 Committee on Health, Education, Labor and Pen-

11 sions and of the Senate.

12 CENTRALIZED TESTING INFORMATION WEBSITE

13 SEC. 30542.

14 The Secretary shall establish and maintain a public,

15 searchable webpage, to be updated and corrected as nec-

16 essary through a process established by the Secretary, on

17 the website of the Department of Health and Human

18 Services that—

19 (1) identifies all in vitro diagnostic and sero-

20 logical tests used in the United States to analyze

21 clinical specimens for detection of SARS–CoV–2 or

22 antibodies specific to SARS–CoV–2, including—

23 (A) those tests—

24 (i) that are approved, cleared, or au-

25 thorized under section 510(k), 513, 515, or

26 564 of the Federal Food, Drug, and Cos-

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002797

493

1     metic Act (21 U.S.C. 360(k), 360c, 360e,

2     360bbb–3);

3     (ii) that have been validated by the

4     test's developers for use on clinical speci-

5     mens and for which the developer has noti-

6     fied the Food and Drug Administration of

7     the developer's intent to market the test

8     consistent with applicable guidance issued

9     by the Secretary; or

10     (iii) that have been developed and au-

11     thorized by a State that has notified the

12     Secretary of the State's intention to review

13     tests intended to diagnose COVID–19; and

14     (B) other SARS–CoV–2-related tests that

15     the Secretary determines appropriate in guid-

16     ance, which may include tests related to the

17     monitoring of COVID–19 patient status;

18     (2) provides relevant information, as deter-

19     mined by the Secretary, on each test identified pur-

20     suant to paragraph (1), which may include—

21     (A) the name and contact information of

22     the developer of the test;

23     (B) the date of receipt of notification by

24     the Food and Drug Administration of the devel-

25     oper's intent to market the test;

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002798

494

1          (C) the date of authorization for use of the

2      test on clinical specimens, where applicable;

3          (D) the letter of authorization for use of

4      the test on clinical specimens, where applicable;

5          (E) any fact sheets, manufacturer instruc-

6      tions, and package inserts for the test, includ-

7      ing information on intended use;

8          (F) sensitivity and specificity of the test;

9      and

10         (G) in the case of tests distributed by com-

11     mercial manufacturers, the number of tests dis-

12     tributed and, if available, the number of labora-

13     tories in the United States with the required

14     platforms installed to perform the test; and

15     (3) includes—

16         (A) a list of laboratories certified under

17     section 353 of the Public Health Service Act

18     (42 U.S.C. 263a; commonly referred to as

19     "CLIA") that—

20             (i) meet the regulatory requirements

21         under such section to perform high- or

22         moderate-complexity testing; and

23             (ii) are authorized to perform SARS–

24         CoV–2 diagnostic or serological tests on

25         clinical specimens; and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002799

495

1        (B) information on each laboratory identi-

2    fied pursuant to subparagraph (A), including—

3        (i) the name and address of the lab-

4        oratory;

5        (ii) the CLIA certificate number;

6        (iii) the laboratory type;

7        (iv) the certificate type; and

8        (v) the complexity level.

9    MANUFACTURER REPORTING OF TEST DISTRIBUTION

10    SEC. 30543.

11    (a) IN GENERAL.—A commercial manufacturer of an

12 in vitro diagnostic or serological COVID–19 test shall, on

13 a weekly basis, submit a notification to the Secretary re-

14 garding distribution of each such test, which notifica-

15 tion—

16    (1) shall include the number of tests distributed

17    and the entities to which the tests are distributed;

18    and

19    (2) may include the quantity of such tests dis-

20    tributed by the manufacturer.

21    (b) CONFIDENTIALITY.—Nothing in this section shall

22 be construed as authorizing the Secretary to disclose any

23 information that is a trade secret or confidential informa-

24 tion subject to section 552(b)(4) of title 5, United States

25 Code, or section 1905 of title 18, United States Code.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002800

496

1    (c) FAILURE TO MEET REQUIREMENTS.—If a manu-

2 facturer fails to submit a notification as required under

3 subsection (a), the following applies:

4    (1) The Secretary shall issue a letter to such

5    manufacturer informing such manufacturer of such

6    failure.

7    (2) Not later than 7 calendar days after the

8    issuance of a letter under paragraph (1), the manu-

9    facturer to whom such letter is issued shall submit

10    to the Secretary a written response to such letter—

11        (A) setting forth the basis for noncompli-

12        ance; and

13        (B) providing information as required

14        under subsection (a).

15    (3) Not later than 14 calendar days after the

16    issuance of a letter under paragraph (1), the Sec-

17    retary shall make such letter and any response to

18    such letter under paragraph (2) available to the pub-

19    lic on the internet website of the Food and Drug Ad-

20    ministration, with appropriate redactions made to

21    protect information described in subsection (b). The

22    preceding sentence shall not apply if the Secretary

23    determines that—

24        (A) the letter under paragraph (1) was

25        issued in error; or

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002801

497

1    (B) after review of such response, the
2    manufacturer had a reasonable basis for not
3    notifying as required under subsection (a).

4                    STATE TESTING REPORT

5    SEC. 30544.

6        For any State that authorizes (or intends to author-
7    ize) one or more laboratories in the State to develop and
8    perform in vitro diagnostic COVID–19 tests, the head of
9    the department or agency of such State with primary re-
10   sponsibility for health shall—

11       (1) notify the Secretary of such authorization
12   (or intention to authorize); and

13       (2) provide the Secretary with a weekly re-
14   port—

15           (A) identifying all laboratories authorized
16       (or intended to be authorized) by the State to
17       develop   and   perform   in   vitro   diagnostic
18       COVID–19 tests;

19           (B) including relevant information on all
20       laboratories  identified  pursuant  to  subpara-
21       graph (A), which may include information on
22       laboratory testing capacity;

23           (C)   identifying   all   in   vitro   diagnostic
24       COVID–19 tests developed and approved for
25       clinical use in laboratories identified pursuant
26       to subparagraph (A); and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002802

498

1    (D) including relevant information on all
2    tests identified pursuant to subparagraph (C),
3    which may include—

4        (i) the name and contact information
5        of the developer of any such test;

6        (ii) any fact sheets, manufacturer in-
7        structions, and package inserts for any
8        such test, including information on in-
9        tended use; and

10       (iii) the sensitivity and specificity of
11       any such test.

STATE LISTING OF TESTING SITES

13    SEC. 30545.

14    Not later than 14 days after the date of enactment
15 of this Act, any State receiving funding or assistance
16 under this Act, as a condition on such receipt, shall estab-
17 lish and maintain a public, searchable webpage on the offi-
18 cial website of the State that—

19    (1) identifies all sites located in the State that
20    provide diagnostic or serological testing for SARS–
21    CoV–2; and

22    (2) provides appropriate contact information for
23    SARS–CoV–2 testing sites pursuant to paragraph
24    (1).

REPORTING OF COVID–19 TESTING RESULTS

26    SEC. 30546.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002803

499

1    (a) IN GENERAL.—Every laboratory that performs or

2 analyzes a test that is intended to detect SARS–CoV–2

3 or to diagnose a possible case of COVID–19 shall report

4 daily the number of tests performed and the results from

5 each such test to the Secretary of Health and Human

6 Services and to the Secretary of Homeland Security, in

7 such form and manner as such Secretaries may prescribe.

8 Such information shall be made available to the public in

9 a searchable, electronic format.

10    (b) ADDITIONAL REPORTING REQUIREMENTS.—The

11 Secretaries specified in subsection (a)—

12        (1) may specify additional reporting require-

13        ments under this section by regulation, including by

14        interim final rule, or by guidance; and

15        (2) may issue such regulations or guidance

16        without regard to the procedures otherwise required

17        by section 553 of title 5, United States Code.

18            GAO REPORT ON DIAGNOSTIC TESTS

19    SEC. 30547.

20    (a) GAO STUDY.—Not later than 18 months after

21 the date of enactment of this Act, the Comptroller General

22 of the United States shall submit to the Committee on

23 Energy and Commerce of the House of Representatives

24 and the Committee on Health, Education, Labor and Pen-

25 sions of the Senate a report describing the response of

26 entities described in subsection (b) to the COVID–19 pan-

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002804

500

1 demic with respect to the development, regulatory evalua-

2 tion, and deployment of diagnostic tests.

3 (b) ENTITIES DESCRIBED.—Entities described in

4 this subsection include—

5     (1) laboratories, including public health, aca-

6     demic, clinical, and commercial laboratories;

7     (2) diagnostic test manufacturers;

8     (3) State, local, Tribal, and territorial govern-

9     ments; and

10     (4) the Food and Drug Administration, the

11     Centers for Disease Control and Prevention, the

12     Centers for Medicare & Medicaid Services, the Na-

13     tional Institutes of Health, and other relevant Fed-

14     eral agencies, as appropriate.

15 (c) CONTENTS.—The report under subsection (a)

16 shall include—

17     (1) a description of actions taken by entities de-

18     scribed in subsection (b) to develop, evaluate, and

19     deploy diagnostic tests;

20     (2) an assessment of the coordination of Fed-

21     eral agencies in the development, regulatory evalua-

22     tion, and deployment of diagnostic tests;

23     (3) an assessment of the standards used by the

24     Food and Drug Administration to evaluate diag-

25     nostic tests;

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002805

501

1    (4) an assessment of the clarity of Federal

2    agency guidance related to testing, including the

3    ability for individuals without medical training to

4    understand which diagnostic tests had been evalu-

5    ated by the Food and Drug Administration;

6        (5) a description of—

7            (A) actions taken and clinical processes

8        employed by States and territories that have

9        authorized laboratories to develop and perform

10       diagnostic tests not authorized, approved, or

11       cleared by the Food and Drug Administration,

12       including actions of such States and territories

13       to evaluate the accuracy and sensitivity of such

14       tests; and

15           (B) the standards used by States and ter-

16       ritories when deciding when to authorize labora-

17       tories to develop or perform diagnostic tests;

18       (6) an assessment of the steps taken by labora-

19   tories and diagnostic test manufacturers to validate

20   diagnostic tests, as well as the evidence collected by

21   such entities to support validation; and

22       (7) based on available reports, an assessment of

23   the accuracy and sensitivity of a representative sam-

24   ple of available diagnostic tests.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002806

502

1    (d) DEFINITION.—In this section, the term "diag-

2    nostic test" means an in vitro diagnostic product (as de-

3    fined in section 809.3(a) of title 21, Code of Federal Regu-

4    lations) for—

5        (1) the detection of SARS–CoV–2;

6        (2) the diagnosis of the virus that causes

7    COVID–19; or

8        (3) the detection of antibodies specific to

9    SARS–CoV–2, such as a serological test.

10    PUBLIC HEALTH DATA SYSTEM TRANSFORMATION

11    SEC. 30548.

12    Subtitle C of title XXVIII of the Public Health Serv-

13    ice Act (42 U.S.C. 300hh–31 et seq.) is amended by add-

14    ing at the end the following:

15    **"SEC. 2822. PUBLIC HEALTH DATA SYSTEM TRANS-**

16    **FORMATION.**

17    "(a) EXPANDING CDC AND PUBLIC HEALTH DE-

18    PARTMENT CAPABILITIES.—

19        "(1) IN GENERAL.—The Secretary, acting

20        through the Director of the Centers for Disease

21        Control and Prevention, shall—

22            "(A) conduct activities to expand, enhance,

23            and improve applicable public health data sys-

24            tems used by the Centers for Disease Control

25            and Prevention, related to the interoperability

26            and improvement of such systems (including as

503

it relates to preparedness for, prevention and detection of, and response to public health emergencies); and

"(B) award grants or cooperative agreements to State, local, Tribal, or territorial public health departments for the expansion and modernization of public health data systems, to assist public health departments in—

"(i) assessing current data infrastructure capabilities and gaps to improve and increase consistency in data collection, storage, and analysis and, as appropriate, to improve dissemination of public health-related information;

"(ii) improving secure public health data collection, transmission, exchange, maintenance, and analysis;

"(iii) improving the secure exchange of data between the Centers for Disease Control and Prevention, State, local, Tribal, and territorial public health departments, public health organizations, and health care providers, including by public health officials in multiple jurisdictions within such State, as appropriate, and by

DOC_0002808

G:\CMTE\AP\16\FY20\_D\HEROES.XML

504

1         simplifying and supporting reporting by

2         health care providers, as applicable, pursu-

3         ant to State law, including through the use

4         of health information technology;

5         "(iv) enhancing the interoperability of

6         public health data systems (including sys-

7         tems created or accessed by public health

8         departments) with health information tech-

9         nology, including with health information

10        technology certified under section

11        3001(c)(5);

12        "(v) supporting and training data sys-

13        tems, data science, and informatics per-

14        sonnel;

15        "(vi) supporting earlier disease and

16        health condition detection, such as through

17        near real-time data monitoring, to support

18        rapid public health responses;

19        "(vii) supporting activities within the

20        applicable jurisdiction related to the expan-

21        sion and modernization of electronic case

22        reporting; and

23        "(viii) developing and disseminating

24        information related to the use and impor-

25        tance of public health data.

g:\VHLC\051220\051220.072.xml       (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002809

505

1           "(2) DATA STANDARDS.—In carrying out para-

2 graph (1), the Secretary, acting through the Direc-

3 tor of the Centers for Disease Control and Preven-

4 tion, shall, as appropriate and in consultation with

5 the Office of the National Coordinator for Health

6 Information Technology, designate data and tech-

7 nology standards (including standards for interoper-

8 ability) for public health data systems, with def-

9 erence given to standards published by consensus-

10 based standards development organizations with

11 public input and voluntary consensus-based stand-

12 ards bodies.

13           "(3) PUBLIC-PRIVATE PARTNERSHIPS.—The

14 Secretary may develop and utilize public-private

15 partnerships for technical assistance, training, and

16 related implementation support for State, local,

17 Tribal, and territorial public health departments,

18 and the Centers for Disease Control and Prevention,

19 on the expansion and modernization of electronic

20 case reporting and public health data systems, as

21 applicable.

22     "(b) REQUIREMENTS.—

23           "(1) HEALTH INFORMATION TECHNOLOGY

24 STANDARDS.—The Secretary may not award a grant

25 or cooperative agreement under subsection (a)(1)(B)

DOC_0002810

506

1 unless the applicant uses or agrees to use standards
2 endorsed by the National Coordinator for Health In-
3 formation     Technology     pursuant     to     section
4 3001(c)(1) or adopted by the Secretary under sec-
5 tion 3004.

6     "(2) WAIVER.—The Secretary may waive the
7 requirement under paragraph (1) with respect to an
8 applicant if the Secretary determines that the activi-
9 ties under subsection (a)(1)(B) cannot otherwise be
10 carried out within the applicable jurisdiction.

11     "(3) APPLICATION.—A State, local, Tribal, or
12 territorial health department applying for a grant or
13 cooperative agreement under this section shall sub-
14 mit an application to the Secretary at such time and
15 in such manner as the Secretary may require. Such
16 application shall include information describing—

17         "(A) the activities that will be supported
18 by the grant or cooperative agreement; and

19         "(B) how the modernization of the public
20 health data systems involved will support or im-
21 pact the public health infrastructure of the
22 health department, including a description of
23 remaining gaps, if any, and the actions needed
24 to address such gaps.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002811

507

1     "(c) STRATEGY AND IMPLEMENTATION PLAN.—Not

2 later than 180 days after the date of enactment of this

3 section, the Secretary, acting through the Director of the

4 Centers for Disease Control and Prevention, shall submit

5 to the Committee on Health, Education, Labor and Pen-

6 sions of the Senate and the Committee on Energy and

7 Commerce of the House of Representatives a coordinated

8 strategy and an accompanying implementation plan that

9 identifies and demonstrates the measures the Secretary

10 will utilize to—

11          "(1) update and improve applicable public

12      health data systems used by the Centers for Disease

13      Control and Prevention; and

14          "(2) carry out the activities described in this

15      section to support the improvement of State, local,

16      Tribal, and territorial public health data systems.

17     "(d)  CONSULTATION.—The  Secretary,  acting

18 through the Director of the Centers for Disease Control

19 and Prevention, shall consult with State, local, Tribal, and

20 territorial health departments, professional medical and

21 public health associations, associations representing hos-

22 pitals or other health care entities, health information

23 technology experts, and other appropriate public or private

24 entities regarding the plan and grant program to mod-

25 ernize public health data systems pursuant to this section.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002812

508

1 Activities under this subsection may include the provision
2 of technical assistance and training related to the ex-
3 change of information by such public health data systems
4 used by relevant health care and public health entities at
5 the local, State, Federal, Tribal, and territorial levels, and
6 the development and utilization of public-private partner-
7 ships for implementation support applicable to this sec-
8 tion.

9     "(e) REPORT TO CONGRESS.—Not later than 1 year
10 after the date of enactment of this section, the Secretary
11 shall submit a report to the Committee on Health, Edu-
12 cation, Labor and Pensions of the Senate and the Com-
13 mittee on Energy and Commerce of the House of Rep-
14 resentatives that includes—

15       "(1) a description of any barriers to—

16         "(A) public health authorities imple-
17         menting interoperable public health data sys-
18         tems and electronic case reporting;

19         "(B) the exchange of information pursuant
20         to electronic case reporting; or

21         "(C) reporting by health care providers
22         using such public health data systems, as ap-
23         propriate, and pursuant to State law;

24       "(2) an assessment of the potential public
25       health impact of implementing electronic case re-

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002813

509

1    porting and interoperable public health data sys-

2    tems; and

3        "(3) a description of the activities carried out

4        pursuant to this section.

5    "(f) ELECTRONIC CASE REPORTING.—In this sec-

6  tion, the term 'electronic case reporting' means the auto-

7  mated identification, generation, and bilateral exchange of

8  reports of health events among electronic health record or

9  health information technology systems and public health

10 authorities.

11   "(g) AUTHORIZATION OF APPROPRIATIONS.—To

12 carry out this section, there are authorized to be appro-

13 priated $450,000,000 to remain available until ex-

14 pended.".

15       PILOT PROGRAM TO IMPROVE LABORATORY

16                   INFRASTRUCTURE

17   SEC. 30549.

18   (a) IN GENERAL.—The Secretary shall award grants

19 to States and political subdivisions of States to support

20 the improvement, renovation, or modernization of infra-

21 structure at clinical laboratories (as defined in section 353

22 of the Public Health Service Act (42 U.S.C. 263a)) that

23 will help to improve SARS–CoV–2 and COVID–19 testing

24 and response activities, including the expansion and en-

25 hancement of testing capacity at such laboratories.

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002814

510

1    (b) AUTHORIZATION OF APPROPRIATIONS.—To carry

2    out this section, there is authorized to be appropriated

3    $1,000,000,000 to remain available until expended.

4    CORE PUBLIC HEALTH INFRASTRUCTURE FOR STATE,

5        LOCAL, TRIBAL, AND TERRITORIAL HEALTH DE-

6        PARTMENTS

7    SEC. 30550.

8    (a) PROGRAM.—The Secretary, acting through the

9    Director of the Centers for Disease Control and Preven-

10   tion, shall establish a core public health infrastructure

11   program consisting of awarding grants under subsection

12   (b).

13   (b) GRANTS.—

14       (1) AWARD.—For the purpose of addressing

15       core public health infrastructure needs, the Sec-

16       retary—

17           (A) shall award a grant to each State

18           health department; and

19           (B) may award grants on a competitive

20           basis to State, local, Tribal, or territorial health

21           departments.

22       (2) ALLOCATION.—Of the total amount of

23       funds awarded as grants under this subsection for a

24       fiscal year—

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002815

1           (A) not less than 50 percent shall be for

2           grants to State health departments under para-

3           graph (1)(A); and

4           (B) not less than 30 percent shall be for

5           grants to State, local, Tribal, or territorial

6           health departments under paragraph (1)(B).

7     (c) USE OF FUNDS.—A State, local, Tribal, or terri-

8 torial health department receiving a grant under sub-

9 section (b) shall use the grant funds to address core public

10 health infrastructure needs, including those identified in

11 the accreditation process under subsection (g).

12     (d) FORMULA GRANTS TO STATE HEALTH DEPART-

13 MENTS.—In making grants under subsection (b)(1)(A),

14 the Secretary shall award funds to each State health de-

15 partment in accordance with—

16           (1) a formula based on population size; burden

17           of preventable disease and disability; and core public

18           health infrastructure gaps, including those identified

19           in the accreditation process under subsection (g);

20           and

21           (2) application requirements established by the

22           Secretary, including a requirement that the State

23           health department submit a plan that demonstrates

24           to the satisfaction of the Secretary that the State's

25           health department will—

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002816

512

1          (A) address its highest priority core public

2          health infrastructure needs; and

3          (B) as appropriate, allocate funds to local

4          health departments within the State.

5     (e) COMPETITIVE GRANTS TO STATE, LOCAL, TRIB-

6 AL, AND TERRITORIAL HEALTH DEPARTMENTS.—In

7 making grants under subsection (b)(1)(B), the Secretary

8 shall give priority to applicants demonstrating core public

9 health infrastructure needs identified in the accreditation

10 process under subsection (g).

11     (f) MAINTENANCE OF EFFORT.—The Secretary may

12 award a grant to an entity under subsection (b) only if

13 the entity demonstrates to the satisfaction of the Sec-

14 retary that—

15          (1) funds received through the grant will be ex-

16          pended only to supplement, and not supplant, non-

17          Federal and Federal funds otherwise available to the

18          entity for the purpose of addressing core public

19          health infrastructure needs; and

20          (2) with respect to activities for which the grant

21          is awarded, the entity will maintain expenditures of

22          non-Federal amounts for such activities at a level

23          not less than the level of such expenditures main-

24          tained by the entity for the fiscal year preceding the

25          fiscal year for which the entity receives the grant.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002817

513

1     (g) ESTABLISHMENT OF A PUBLIC HEALTH ACCRED-

2  ITATION PROGRAM.—

3         (1) IN GENERAL.—The Secretary shall—

4              (A) develop, and periodically review and

5         update, standards for voluntary accreditation of

6         State, local, Tribal, and territorial health de-

7         partments and public health laboratories for the

8         purpose of advancing the quality and perform-

9         ance of such departments and laboratories; and

10             (B) implement a program to accredit such

11        health departments and laboratories in accord-

12        ance with such standards.

13        (2) COOPERATIVE AGREEMENT.—The Secretary

14   may enter into a cooperative agreement with a pri-

15   vate nonprofit entity to carry out paragraph (1).

16   (h) REPORT.—The Secretary shall submit to the Con-

17  gress an annual report on progress being made to accredit

18  entities under subsection (g), including—

19        (1) a strategy, including goals and objectives,

20   for accrediting entities under subsection (g) and

21   achieving the purpose described in subsection

22   (g)(1)(A);

23        (2) identification of gaps in research related to

24   core public health infrastructure; and

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002818

514

1      (3) recommendations of priority areas for such

2  research.

3  (i) DEFINITION.—In this section, the term "core pub-

4  lic health infrastructure" includes—

5      (1) workforce capacity and competency;

6      (2) laboratory systems;

7      (3) testing capacity, including test platforms,

8  mobile testing units, and personnel;

9      (4) health information, health information sys-

10  tems, and health information analysis;

11      (5) disease surveillance;

12      (6) contact tracing;

13      (7) communications;

14      (8) financing;

15      (9) other relevant components of organizational

16  capacity; and

17      (10) other related activities.

18  (j) AUTHORIZATION OF APPROPRIATIONS.—To carry

19  out this section, there are authorized to be appropriated

20  $6,000,000,000, to remain available until expended.

21  CORE PUBLIC HEALTH INFRASTRUCTURE AND ACTIVITIES

22                    FOR CDC

23  SEC. 30551.

24  (a) IN GENERAL.—The Secretary, acting through the

25  Director of the Centers for Disease Control and Preven-

26  tion, shall expand and improve the core public health in-

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002819

515

1 frastructure and activities of the Centers for Disease Con-

2 trol and Prevention to address unmet and emerging public

3 health needs.

4     (b) REPORT.—The Secretary shall submit to the Con-

5 gress an annual report on the activities funded through

6 this section.

7     (c) DEFINITION.—In this section, the term "core

8 public health infrastructure" has the meaning given to

9 such term in section 30550.

10     (d) AUTHORIZATION OF APPROPRIATIONS.—To carry

11 out this section, there is authorized to be appropriated

12 $1,000,000,000, to remain available until expended.

13     Subtitle D—COVID–19 National Testing and Contact

14                 Tracing Initiative

15 NATIONAL SYSTEM FOR COVID–19 TESTING, CONTACT

16     TRACING, SURVEILLANCE, CONTAINMENT, AND MITI-

17     GATION

18     SEC. 30561.

19     (a) IN GENERAL.—The Secretary, acting through the

20 Director of the Centers for Disease Control and Preven-

21 tion, and in coordination with State, local, Tribal, and ter-

22 ritorial health departments, shall establish and implement

23 a nationwide evidence-based system for—

24         (1) testing, contact tracing, surveillance, con-

25         tainment, and mitigation with respect to COVID–19;

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002820

516

1      (2) offering guidance on voluntary isolation and

2    quarantine of individuals infected with, or exposed to

3    individuals infected with, the virus that causes

4    COVID–19; and

5      (3) public reporting on testing, contact tracing,

6    surveillance, and voluntary isolation and quarantine

7    activities with respect to COVID–19.

8    (b) COORDINATION; TECHNICAL ASSISTANCE.—In

9 carrying out the national system under this section, the

10 Secretary shall—

11      (1) coordinate State, local, Tribal, and terri-

12    torial activities related to testing, contact tracing,

13    surveillance, containment, and mitigation with re-

14    spect to COVID–19, as appropriate; and

15      (2) provide technical assistance for such activi-

16    ties, as appropriate.

17    (c) CONSIDERATION.—In establishing and imple-

18 menting the national system under this section, the Sec-

19 retary shall take into consideration—

20      (1) the State plans referred to in the heading

21    "Public Health and Social Services Emergency

22    Fund" in title I of division B of the Paycheck Pro-

23    tection Program and Health Care Enhancement Act

24    (Public Law 116–139); and

DOC_0002821

517

1    (2) the testing strategy submitted under section

2    30541.

3    (d) REPORTING.—The Secretary shall—

4        (1) not later than December 31, 2020, submit

5    to the Committee on Energy and Commerce of the

6    House of Representatives and the Committee on

7    Health, Education, Labor and Pensions a prelimi-

8    nary report on the effectiveness of the activities car-

9    ried out pursuant to this subtitle; and

10       (2) not later than December 21, 2021, submit

11   to such committees a final report on such effective-

12   ness.

13                    GRANTS

14   SEC. 30562.

15   (a) IN GENERAL.—To implement the national system

16   under section 30561, the Secretary, acting through the

17   Director of the Centers for Disease Control and Preven-

18   tion, shall, subject to the availability of appropriations,

19   award grants to State, local, Tribal, and territorial health

20   departments that seek grants under this section to carry

21   out coordinated testing, contact tracing, surveillance, con-

22   tainment, and mitigation with respect to COVID–19, in-

23   cluding—

24       (1) diagnostic and surveillance testing and re-

25   porting;

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002822

518

1    (2) community-based contact tracing efforts;

2    and

3    (3) policies related to voluntary isolation and

4    quarantine of individuals infected with, or exposed to

5    individuals infected with, the virus that causes

6    COVID–19.

7    (b) FLEXIBILITY.—The Secretary shall ensure that—

8    (1) the grants under subsection (a) provide

9    flexibility for State, local, Tribal, and territorial

10    health departments to modify, establish, or maintain

11    evidence-based systems; and

12    (2) local health departments receive funding

13    from State health departments or directly from the

14    Centers for Disease Control and Prevention to con-

15    tribute to such systems, as appropriate.

16    (c) ALLOCATIONS.—

17    (1) FORMULA.—The Secretary, acting through

18    the Director of the Centers for Disease Control and

19    Prevention, shall allocate amounts made available

20    pursuant to subsection (a) in accordance with a for-

21    mula to be established by the Secretary that pro-

22    vides a minimum level of funding to each State,

23    local, Tribal, and territorial health department that

24    seeks a grant under this section and allocates addi-

25    tional funding based on the following prioritization:

DOC_0002823

519

1          (A) The Secretary shall give highest pri-
2     ority to applicants proposing to serve popu-
3     lations in one or more geographic regions with
4     a high burden of COVID–19 based on data pro-
5     vided by the Centers for Disease Control and
6     Prevention, or other sources as determined by
7     the Secretary.

8          (B) The Secretary shall give second high-
9     est priority to applicants preparing for, or cur-
10    rently working to mitigate, a COVID–19 surge
11    in a geographic region that does not yet have
12    a high number of reported cases of COVID–19
13    based on data provided by the Centers for Dis-
14    ease Control and Prevention, or other sources
15    as determined by the Secretary.

16         (C) The Secretary shall give third highest
17    priority to applicants proposing to serve high
18    numbers of low-income and uninsured popu-
19    lations, including medically underserved popu-
20    lations (as defined in section 330(b)(3) of the
21    Public Health Service Act (42 U.S.C.
22    254b(b)(3))), health professional shortage areas
23    (as defined under section 332(a) of the Public
24    Health Service Act (42 U.S.C. 254e(a))), racial

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002824

520

1 and ethnic minorities, or geographically diverse

2 areas, as determined by the Secretary.

3 (2) NOTIFICATION.—Not later than the date

4 that is one week before first awarding grants under

5 this section, the Secretary shall submit to the Com-

6 mittee on Energy and Commerce of the House of

7 Representatives and the Committee on Health, Edu-

8 cation, Labor and Pensions of the Senate a notifica-

9 tion detailing the formula established under para-

10 graph (1) for allocating amounts made available pur-

11 suant to subsection (a).

12 (d) USE OF FUNDS.—A State, local, Tribal, and ter-

13 ritorial health department receiving a grant under this

14 section shall, to the extent possible, use the grant funds

15 for the following activities, or other activities deemed ap-

16 propriate by the Director of the Centers for Disease Con-

17 trol and Prevention:

18 (1) TESTING.—To implement a coordinated

19 testing system that—

20 (A) leverages or modernizes existing test-

21 ing infrastructure and capacity;

22 (B) is consistent with the updated testing

23 strategy required under section 30541;

24 (C) is coordinated with the State plan for

25 COVID–19 testing prepared as required under

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002825

521

1    the heading "Department of Health and
2    Human Services—Office of the Secretary—
3    Public Health and Social Service Emergency
4    Fund" in title I of division B of the Paycheck
5    Protection Program and Health Care Enhance-
6    ment Act (Public Law 116–139; 134 Stat. 620,
7    624);

8    (D) is informed by contact tracing and
9    surveillance activities under this subtitle;

10    (E) is informed by guidelines established
11    by the Centers for Disease Control and Preven-
12    tion for which populations should be tested;

13    (F) identifies how diagnostic and sero-
14    logical tests in such system shall be validated
15    prior to use;

16    (G) identifies how diagnostic and serolog-
17    logical tests and testing supplies will be distrib-
18    uted to implement such system;

19    (H) identifies specific strategies for ensur-
20    ing testing capabilities and accessibility in
21    medically underserved populations (as defined
22    in section 330(b)(3) of the Public Health Serv-
23    ice Act (42 U.S.C. 254b(b)(3))), health profes-
24    sional shortage areas (as defined under section
25    332(a) of the Public Health Service Act (42

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002826

522

1    U.S.C. 254e(a))), racial and ethnic minority

2    populations, and geographically diverse areas,

3    as determined by the Secretary;

4        (I) identifies how testing may be used, and

5    results may be reported, in both health care set-

6    tings (such as hospitals, laboratories for mod-

7    erate or high-complexity testing, pharmacies,

8    mobile testing units, and community health cen-

9    ters) and non-health care settings (such as

10   workplaces, schools, childcare centers, or drive-

11   throughs);

12       (J) allows for testing in sentinel surveil-

13   lance programs, as appropriate; and

14       (K) supports the procurement and dis-

15   tribution of diagnostic and serological tests and

16   testing supplies to meet the goals of the system.

17   (2) CONTACT TRACING.—To implement a co-

18   ordinated contact tracing system that—

19       (A) leverages or modernizes existing con-

20   tact tracing systems and capabilities, including

21   community health workers, health departments,

22   and Federally qualified health centers;

23       (B) is able to investigate cases of COVID–

24   19, and help to identify other potential cases of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002827

523

1    COVID–19, through tracing contacts of individ-
2    uals with positive diagnoses;

3        (C) establishes culturally competent and
4    multilingual strategies for contact tracing,
5    which may include consultation with and sup-
6    port for cultural or civic organizations with es-
7    tablished ties to the community;

8        (D) provides individuals identified under
9    the contact tracing program with information
10   and support for containment or mitigation;

11       (E) enables State, local, Tribal, and terri-
12   torial health departments to work with a non-
13   governmental, community partner or partners
14   and State and local workforce development sys-
15   tems (as defined in section 3(67) of Workforce
16   Innovation and Opportunity Act (29 U.S.C.
17   3102(67))) receiving grants under section
18   30566(b) of this Act to hire and compensate a
19   locally-sourced contact tracing workforce, if
20   necessary, to supplement the public health
21   workforce, to—

22           (i) identify the number of contact
23       tracers needed for the respective State, lo-
24       cality, territorial, or Tribal health depart-
25       ment to identify all cases of COVID–19

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002828

524

1 currently in the jurisdiction and those an-
2 ticipated to emerge over the next 18
3 months in such jurisdiction;

4  (ii) outline qualifications necessary for
5 contact tracers;

6  (iii) train the existing and newly hired
7 public health workforce on best practices
8 related to tracing close contacts of individ-
9 uals diagnosed with COVID–19, including
10 the protection of individual privacy and cy-
11 bersecurity protection; and

12  (iv) equip the public health workforce
13 with tools and resources to enable a rapid
14 response to new cases;

15 (F) identifies the level of contact tracing
16 needed within the State, locality, territory, or
17 Tribal area to contain and mitigate the trans-
18 mission of COVID–19;

19 (G) establishes statewide mechanisms to
20 integrate regular evaluation to the Centers for
21 Disease Control and Prevention regarding con-
22 tact tracing efforts, makes such evaluation pub-
23 licly available, and to the extent possible pro-
24 vides for such evaluation at the county level;
25 and

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002829

1      (H) identifies specific strategies for ensur-
2   ing contact tracing activities in medically un-
3   derserved populations (as defined in section
4   330(b)(3) of the Public Health Service Act (42
5   U.S.C. 254b(b)(3))), health professional short-
6   age areas (as defined under section 332(a) of
7   the Public Health Service Act (42 U.S.C.
8   254e(a))), racial and ethnic minority popu-
9   lations, and geographically diverse areas, as de-
10   termined by the Secretary.

11      (3) SURVEILLANCE.—To strengthen the exist-
12   ing public health surveillance system that—

13      (A) leverages or modernizes existing sur-
14   veillance systems within the respective State,
15   local, Tribal, or territorial health department
16   and national surveillance systems;

17      (B) detects and identifies trends in
18   COVID–19 at the county level;

19      (C) evaluates State, local, Tribal, and ter-
20   ritorial health departments in achieving surveil-
21   lance capabilities with respect to COVID–19;

22      (D) integrates and improves disease sur-
23   veillance and immunization tracking; and

24      (E) identifies specific strategies for ensur-
25   ing disease surveillance in medically under-

g:\VHLC\051220\051220.072.xml      (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002830

526

1     served populations (as defined in section

2     330(b)(3) of the Public Health Service Act (42

3     U.S.C. 254b(b)(3))), health professional short-

4     age areas (as defined under section 332(a) of

5     the Public Health Service Act (42 U.S.C.

6     254e(a))), racial and ethnic minority popu-

7     lations, and geographically diverse areas, as de-

8     termined by the Secretary.

9     (4) CONTAINMENT AND MITIGATION.—To im-

10    plement a coordinated containment and mitigation

11    system that—

12        (A) leverages or modernizes existing con-

13        tainment and mitigation strategies within the

14        respective State, local, Tribal, or territorial gov-

15        ernments and national containment and mitiga-

16        tion strategies;

17        (B) may provide for, connect to, and lever-

18        age existing social services and support for indi-

19        viduals who have been infected with or exposed

20        to COVID–19 and who are isolated or quar-

21        antined in their homes, such as through—

22            (i) food assistance programs;

23            (ii) guidance for household infection

24            control;

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002831

527

(iii) information and assistance with childcare services; and

(iv) information and assistance pertaining to support available under the CARES Act (Public Law 116–136) and this Act;

(C) provides guidance on the establishment of safe, high-quality, facilities for the voluntary isolation of individuals infected with, or quarantine of the contacts of individuals exposed to COVID–19, where hospitalization is not required, which facilities should—

(i) be prohibited from making inquiries relating to the citizenship status of an individual isolated or quarantined; and

(ii) be operated by a non-Federal, community partner or partners that—

(I) have previously established relationships in localities;

(II) work with local places of worship, community centers, medical facilities, and schools to recruit local staff for such facilities; and

g:\VHLC\051220\051220.072.xml        (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002832

G:\CMTE\AP\16\FY20\_D\HEROES.XML

528

1          (III) are fully integrated into
2              State, local, Tribal, or territorial con-
3              tainment and mitigation efforts; and

4          (D) identifies specific strategies for ensur-
5              ing containment and mitigation activities in
6              medically underserved populations (as defined
7              in section 330(b)(3) of the Public Health Serv-
8              ice Act (42 U.S.C. 254b(b)(3))), health profes-
9              sional shortage areas (as defined under section
10             332(a) of the Public Health Service Act (42
11             U.S.C. 254e(a))), racial and ethnic minority
12             populations, and geographically diverse areas,
13             as determined by the Secretary.

14     (e) REPORTING.—The Secretary shall facilitate
15 mechanisms for timely, standardized reporting by grantees
16 under this section regarding implementation of the sys-
17 tems established under this section and coordinated proc-
18 esses with the reporting as required and under the heading
19 "Department of Health and Human Services—Office of
20 the Secretary—Public Health and Social Service Emer-
21 gency Fund" in title I of division B of the Paycheck Pro-
22 tection Program and Health Care Enhancement Act (Pub-
23 lic Law 116–139, 134 Stat. 620), including—

24         (1) a summary of county or local health depart-
25             ment level information from the States receiving

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002833

529

1    funding, and information from directly funded local-

2    ities, territories, and Tribal entities, about the activi-

3    ties that will be undertaken using funding awarded

4    under this section, including subgrants;

5        (2) any anticipated shortages of required mate-

6    rials for testing for COVID–19 under subsection (a);

7    and

8        (3) other barriers in the prevention, mitigation,

9    or treatment of COVID–19 under this section.

10    (f) PUBLIC LISTING OF AWARDS.—The Secretary

11    shall—

12        (1) not later than 7 days after first awarding

13    grants under this section, post in a searchable, elec-

14    tronic format a list of all awards made by the Sec-

15    retary under this section, including the recipients

16    and amounts of such awards; and

17        (2) update such list not less than every 7 days

18    until all funds made available to carry out this sec-

19    tion are expended.

20    GUIDANCE, TECHNICAL ASSISTANCE, INFORMATION, AND

21                COMMUNICATION

22    SEC. 30563.

23    (a) IN GENERAL.— Not later than 14 days after the

24    date of the enactment of this Act, the Secretary, in coordi-

25    nation with other Federal agencies, as appropriate, shall

26    issue guidance, provide technical assistance, and provide

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002834

530

1 information to States, localities, Tribes, and territories,

2 with respect to the following:

3    (1) The diagnostic and serological testing of in-

4 dividuals identified through contact tracing for

5 COVID–19, including information with respect to

6 the reduction of duplication related to programmatic

7 activities, reporting, and billing.

8    (2) Best practices regarding contact tracing, in-

9 cluding the collection of data with respect to such

10 contact tracing and requirements related to the

11 standardization of demographic and syndromic infor-

12 mation collected as part of contact tracing efforts.

13    (3) Best practices regarding COVID–19 disease

14 surveillance, including best practices to reduce dupli-

15 cation in surveillance activities, identifying gaps in

16 surveillance and surveillance systems, and ways in

17 which the Secretary plans to effectively support

18 State, local, Tribal and territorial health depart-

19 ments in addressing such gaps.

20    (4) Information on ways for State, local, Tribal,

21 and territorial health departments to establish and

22 maintain the testing, contact tracing, and surveil-

23 lance activities described in paragraphs (1) through

24 (3).

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002835

G:\CMTE\AP\16\FY20\_D\HEROES.XML

531

1          (5) The protection of any personally identifiable

2     health information collected pursuant to this sub-

3     title.

4          (6) Best practices regarding privacy and cyber-

5     security protection related to contact tracing, con-

6     tainment, and mitigation efforts.

7     (b) GUIDANCE ON PAYMENT.—Not later than 14

8 days after the date of the enactment of this Act, the Sec-

9 retary, in coordination with the Administrator of the Cen-

10 ters for Medicare & Medicaid Services, the Director of the

11 Centers for Disease Control and Prevention, and in coordi-

12 nation with other Federal agencies, as appropriate, shall

13 develop and issue to State, local, Tribal, and territorial

14 health departments clear guidance and policies—

15          (1) with respect to the coordination of claims

16     submitted for payment out of the Public Health and

17     Social Services Emergency Fund for services fur-

18     nished in a facility referred to in section

19     30562(d)(4)(C);

20          (2) identifying how an individual who is isolated

21     or quarantined at home or in such a facility—

22               (A) incurs no out-of-pocket costs for any

23          services furnished to such individual while iso-

24          lated; and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002836

532

1　　　　(B) may receive income support for lost
2　　　earnings or payments for expenses such as child
3　　　care or elder care while such individual is iso-
4　　　lated at home or in such a facility;

5　　　(3) providing information and assistance per-
6　　　taining to support available under the CARES Act
7　　　(Public Law 116–136) and this Act; and

8　　　(4) identifying State, local, Tribal, and terri-
9　　　torial health departments or partner agencies that
10　　may provide social support services, such as gro-
11　　ceries or meals, health education, internet access,
12　　and behavioral health services, to individuals who
13　　isolated or quarantined at home or in such a facility.

14　(c) GUIDANCE ON TESTING.—Not later than 14 days
15　after the date of the enactment of this Act, the Secretary,
16　in coordination with the Commissioner of Food and
17　Drugs, the Director of the National Institutes of Health,
18　and the Director of the Centers for Disease Control and
19　Prevention, and in coordination with other Federal agen-
20　cies as appropriate, shall develop and issue to State, local,
21　Tribal, and territorial health departments clear guidance
22　and policies regarding—

23　　　　(1) objective standards to characterize the per-
24　　　formance of all diagnostic and serological tests for

g:\VHLC\051220\051220.072.xml　　　(763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002837

533

1    COVID–19 in order to independently evaluate tests

2    continuously over time;

3        (2) protocols for the evaluation of the perform-

4    ance of diagnostic and serological tests for COVID–

5    19; and

6        (3) a repository of characterized specimens to

7    use to evaluate the performance of those tests that

8    can be made available for appropriate entities to use

9    to evaluate performance.

10    (d) COMMUNICATION.—The Secretary shall identify

11   and publicly announce the form and manner for commu-

12   nication with State, local, Tribal, and territorial health de-

13   partments for purposes of carrying out the activities ad-

14   dressed by guidance issued under subsections (a) and (b).

15    (e) AVAILABILITY TO PROVIDERS.—Guidance issued

16   under subsection (a)(1) shall be issued to health care pro-

17   viders.

18    (f) ONGOING PROVISION OF GUIDANCE AND TECH-

19   NICAL ASSISTANCE.—Notwithstanding whether funds are

20   available specifically to carry out this subtitle, guidance

21   and technical assistance shall continue to be provided

22   under this section.

23        RESEARCH AND DEVELOPMENT

24    SEC. 30564.

25    The Secretary, in coordination with the Director of

26   the Centers for Disease Control and Prevention and in col-

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002838

534

1 laboration with the Director of the National Institutes of

2 Health, the Director of the Agency for Healthcare Re-

3 search and Quality, the Commissioner of Food and Drugs,

4 and the Administrator of the Centers for Medicare & Med-

5 icaid Services, shall support research and development on

6 more efficient and effective strategies—

7     (1) for the surveillance of SARS–CoV–2 and

8     COVID–19;

9     (2) for the testing and identification of individ-

10     uals infected with COVID–19; and

11     (3) for the tracing of contacts of individuals in-

12     fected with COVID–19.

13                  AWARENESS CAMPAIGNS

14 SEC. 30565.

15 The Secretary, acting through the Director of the

16 Centers for Disease Control and Prevention and in coordi-

17 nation with other offices and agencies, as appropriate,

18 shall award competitive grants or contracts to one or more

19 public or private entities, including faith-based organiza-

20 tions, to carry out multilingual and culturally appropriate

21 awareness campaigns. Such campaigns shall—

22     (1) be based on available scientific evidence;

23     (2) increase awareness and knowledge of

24     COVID–19, including countering stigma associated

25     with COVID–19;

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002839

535

1    (3) improve information on the availability of
2    COVID–19 diagnostic testing; and

3    (4) promote cooperation with contact tracing ef-
4    forts.

5    GRANTS TO STATE AND TRIBAL WORKFORCE AGENCIES

6    SEC. 30566.

7    (a) DEFINITIONS.—In this section:

8    (1) IN GENERAL.—Except as otherwise pro-
9    vided, the terms in this section have the meanings
10   given the terms in section 3 of the Workforce Inno-
11   vation and Opportunity Act (29 U.S.C. 3102).

12   (2) APPRENTICESHIP; APPRENTICESHIP PRO-
13   GRAM.—The term ''apprenticeship'' or ''apprentice-
14   ship program'' means an apprenticeship program
15   registered under the Act of August 16, 1937 (com-
16   monly known as the ''National Apprenticeship Act'')
17   (50 Stat. 664, chapter 663; 29 U.S.C. 50 et seq.),
18   including any requirement, standard, or rule promul-
19   gated under such Act, as such requirement, stand-
20   ard, or rule was in effect on December 30, 2019.

21   (3) CONTACT TRACING AND RELATED POSI-
22   TIONS.—The term ''contact tracing and related posi-
23   tions'' means employment related to contact tracing,
24   surveillance, containment, and mitigation activities
25   as described in paragraphs (2), (3), and (4) of sec-
26   tion 30562(d).

DOC_0002840

536

1       (4) ELIGIBLE ENTITY.—The term ''eligible enti-

2   ty'' means—

3           (A) a State or territory, including the Dis-

4          trict of Columbia and Puerto Rico;

5           (B) an Indian Tribe, Tribal organization,

6          Alaska Native entity, Indian-controlled organi-

7          zations serving Indians, or Native Hawaiian or-

8          ganizations;

9           (C) an outlying area; or

10          (D) a local board, if an eligible entity

11         under subparagraphs (A) through (C) has not

12         applied with respect to the area over which the

13         local board has jurisdiction as of the date on

14         which the local board submits an application

15         under subsection (c).

16       (5) ELIGIBLE INDIVIDUAL.—Notwithstanding

17   section 170(b)(2) of the Workforce Innovation and

18   Opportunity Act (29 U.S.C. 3225(b)(2)), the term

19   ''eligible individual'' means an individual seeking or

20   securing employment in contact tracing or related

21   positions and is served by an eligible entity or com-

22   munity-based organization receiving funding under

23   this section.

24       (6) SECRETARY.—The term ''Secretary'' means

25   the Secretary of Labor.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002841

537

1 (b) GRANTS.—

2  (1) IN GENERAL.—Subject to the availability of
3 appropriations under subsection (g), the Secretary
4 shall award national dislocated worker grants under
5 section 170(b)(1)(B) of the Workforce Innovation
6 and Opportunity Act (29 U.S.C. 3225(b)(1)(B)) to
7 each eligible entity that seeks a grant to assist local
8 boards and community-based organizations in car-
9 rying out activities under subsections (f) and (d), re-
10 spectively, for the following purposes:

11   (A) To support the recruitment, place-
12  ment, and training, as applicable, of eligible in-
13  dividuals seeking employment in contact tracing
14  and related positions in accordance with the na-
15  tional system for COVID–19 testing, contact
16  tracing, surveillance, containment, and mitiga-
17  tion established under section 30561.

18   (B) To assist with the employment transi-
19  tion to new employment or education and train-
20  ing of individuals employed under this section
21  in preparation for and upon termination of such
22  employment.

23 (2) TIMELINE.—The Secretary of Labor shall—

g:\VHLC\051220\051220.072.xml (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002842

538

1        (A) issue application requirements under

2    subsection (c) not later than 10 days after the

3    date of enactment of this section; and

4        (B) award grants to an eligible entity

5    under paragraph (1) not later than 10 days

6    after the date on which the Secretary receives

7    an application from such entity.

8    (c) GRANT APPLICATION.—An eligible entity apply-

9 ing for a grant under this section shall submit an applica-

10 tion to the Secretary, at such time and in such form and

11 manner as the Secretary may reasonably require, which

12 shall include a description of—

13    (1) how the eligible entity will support the re-

14    cruitment, placement, and training, as applicable, of

15    eligible individuals seeking employment in contact

16    tracing and related positions by partnering with—

17        (A) a State, local, Tribal, or territorial

18    health department; or

19        (B) one or more nonprofit or community-

20    based organizations partnering with such health

21    departments;

22    (2) how the activities described in paragraph

23    (1) will support State efforts to address the demand

24    for contact tracing and related positions with respect

25    to—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002843

539

1       (A) the State plans referred to in the head-
2   ing "Public Health and Social Services Emer-
3   gency Fund" in title I of division B of the Pay-
4   check Protection Program and Health Care En-
5   hancement Act (Public Law 116–139);
6       (B) the testing strategy submitted under
7   section 30541; and
8       (C) the number of eligible individuals that
9   the State plans to recruit and train under the
10  plans and strategies described in subparagraphs
11  (A) and (B);
12  (3) the specific strategies for recruiting and
13  placement of eligible individuals from or residing
14  within the communities in which they will work, in-
15  cluding—
16      (A) plans for the recruitment of eligible in-
17  dividuals to serve as contact tracers and related
18  positions, including dislocated workers, individ-
19  uals with barriers to employment, veterans, new
20  entrants in the workforce, or underemployed or
21  furloughed workers, who are from or reside in
22  or near the local area in which they will serve,
23  and who, to the extent practicable—
24      (i) have experience or a background in
25  industry-sectors and occupations such as

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002844

G:\CMTE\AP\16\FY20\_D\HEROES.XML

540

1   public health, social services, customer

2   service, case management, or occupations

3   that require related qualifications, skills, or

4   competencies, such as strong interpersonal

5   and communication skills, needed for con-

6   tact tracing or related positions, as de-

7   scribed in section 30562(d)(2)(E)(ii); or

8    (ii) seek to transition to public health

9    and public health related occupations upon

10    the conclusion of employment in contact

11    tracing or related positions; and

12    (B) how such strategies will take into ac-

13   count the diversity of such community, includ-

14   ing racial, ethnic, socioeconomic, linguistic, or

15   geographic diversity;

16   (4) the amount, timing, and mechanisms for

17  distribution of funds provided to local boards or

18  through subgrants as described in subsection (d);

19   (5) for eligible entities described in subpara-

20  graphs (A) through (C) of subsection (a)(4), a de-

21  scription of how the eligible entity will ensure the eq-

22  uitable distribution of funds with respect to—

23   (A) geography (such as urban and rural

24   distribution);

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002845

541

(B) medically underserved populations (as
defined in section 33(b)(3) of the Public Health
Service Act (42 U.S.C. 254b(b)));

(C) health professional shortage areas (as
defined under section 332(a) of the Public
Health Service Act (42 U.S.C. 254e(a))); and

(D) the racial and ethnic diversity of the
area; and

(6) for eligible entities who are local boards, a
description of how a grant to such eligible entity
would serve the equitable distribution of funds as de-
scribed in paragraph (5).

(d) SUBGRANT AUTHORIZATION AND APPLICATION
PROCESS.—

(1) IN GENERAL.—An eligible entity may award
a subgrant to one or more community-based organi-
zations for the purposes of partnering with a State
or local board to conduct outreach and education ac-
tivities to inform potentially eligible individuals
about employment opportunities in contact tracing
and related positions.

(2) APPLICATION.—A community-based organi-
zation shall submit an application at such time and
in such manner as the eligible entity may reasonably
require, including—

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002846

542

1          (A) a demonstration of the community-
2     based organization's established expertise and
3     effectiveness in community outreach in the local
4     area that such organization plans to serve;

5          (B) a demonstration of the community-
6     based organization's expertise in providing em-
7     ployment or public health information to the
8     local areas in which such organization plans to
9     serve; and

10          (C) a description of the expertise of the
11     community-based organization in utilizing cul-
12     turally competent and multilingual strategies in
13     the provision of services.

14  (e) GRANT DISTRIBUTION.—

15     (1) FEDERAL DISTRIBUTION.—

16          (A) USE OF FUNDS.— The Secretary of
17     Labor shall use the funds appropriated to carry
18     out this section as follows:

19               (i) Subject to clause (ii), the Secretary
20          shall distribute funds among eligible enti-
21          ties in accordance with a formula to be es-
22          tablished by the Secretary that provides a
23          minimum level of funding to each eligible
24          entity that seeks a grant under this section
25          and allocates additional funding as follows:

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002847

G:\CMTE\AP\16\FY20\_D\HEROES.XML

543

1          (I) The formula shall give first

2          priority based on the number and pro-

3          portion of contact tracing and related

4          positions that the State plans to re-

5          cruit, place, and train individuals as a

6          part of the State strategy described in

7          subsection (c)(2)(A).

8          (II) Subject to subclause (I), the

9          formula shall give priority in accord-

10          ance with section 30562(c).

11       (ii) Not more than 2 percent of the

12       funding for administration of the grants

13       and for providing technical assistance to

14       recipients of funds under this section.

15     (B) EQUITABLE DISTRIBUTION.—If the ge-

16     ographic region served by one or more eligible

17     entities overlaps, the Secretary shall distribute

18     funds among such entities in such a manner

19     that ensures equitable distribution with respect

20     to the factors under subsection (c)(5).

21   (2) ELIGIBLE ENTITY USE OF FUNDS.—An eli-

22   gible entity described in subparagraphs (A) through

23   (C) of subsection (a)(4)—

24       (A) shall, not later than 30 days after the

25       date on which the entity receives grant funds

g:\VHLC\051220\051220.072.xml          (763351|3)
May 12, 2020 (12:13 p.m.)

DOC_0002848

G:\CMTE\AP\16\FY20\_D\HEROES.XML

544

1       under this section, provide not less than 70 per-

2       cent of grant funds to local boards for the pur-

3       pose of carrying out activities in subsection (f);

4          (B) may use up to 20 percent of such

5       funds to make subgrants to community-based

6       organizations in the service area to conduct out-

7       reach, to potential eligible individuals, as de-

8       scribed in subsection (d);

9          (C) in providing funds to local boards and

10      awarding subgrants under this subsection shall

11      ensure the equitable distribution with respect to

12      the factors described in subsection (c)(5); and

13          (D) may use not more than 10 percent of

14      the funds awarded under this section for the

15      administrative costs of carrying out the grant

16      and for providing technical assistance to local

17      boards and community-based organizations.

18     (3) LOCAL BOARD USE OF FUNDS.—A local

19   board, or an eligible entity that is a local board,

20   shall use—

21          (A) not less than 60 percent of the funds

22      for recruitment and training for COVID–19

23      testing, contact tracing, surveillance, contain-

24      ment, and mitigation established under section

25      30561;

g:\VHLC\051220\051220.072.xml     (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002849

545

1          (B) not less than 30 of the funds to sup-
2      port the transition of individuals hired as con-
3      tact tracers and related positions into an edu-
4      cation or training program, or unsubsidized em-
5      ployment upon completion of such positions;
6      and

7          (C) not more than 10 percent of the funds
8      for administrative costs.

9      (f) ELIGIBLE ACTIVITIES.—The State or local boards
10  shall use funds awarded under this section to support the
11  recruitment and placement of eligible individuals, training
12  and employment transition as related to contact tracing
13  and related positions, and for the following activities:

14      (1) Establishing or expanding partnerships
15      with—

16          (A) State, local, Tribal, and territorial
17      public health departments;

18          (B) community-based health providers, in-
19      cluding community health centers and rural
20      health clinics;

21          (C) labor organizations or joint labor man-
22      agement organizations;

23          (D) two-year and four-year institutions of
24      higher education (as defined in section 101 of
25      the Higher Education Act of 1965 (20 U.S.C.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002850

546

1001)), including institutions eligible to receive
funds under section 371(a) of the Higher Edu-
cation Act of 1965 (20 U.S.C. 1067q(a)); and

(E) community action agencies or other
community-based organizations serving local
areas in which there is a demand for contact
tracers and related positions.

(2) Providing training for contact tracing and
related positions in coordination with State, local,
Tribal, or territorial health departments that is con-
sistent with the State or territorial testing and con-
tact tracing strategy and ensuring that eligible indi-
viduals receive compensation while participating in
such training.

(3) Providing eligible individuals with—

(A) adequate and safe equipment, environ-
ments, and facilities for training and super-
vision, as applicable;

(B) information regarding the wages and
benefits related to contact tracing and related
positions, as compared to State, local, and na-
tional averages;

(C) supplies and equipment needed by the
program participants to support placement of

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002851

547

1    an individual in contact tracing and related po-

2    sitions, as applicable;

3        (D) an individualized employment plan for

4    each eligible individual, as applicable—

5        (i) in coordination with the entity em-

6    ploying the eligible individual in a contact

7    tracing or related position; and

8        (ii) which shall include providing a

9    case manager to work with each eligible in-

10    dividual to develop the plan, which may in-

11    clude—

12        (I) identifying employment and

13    career goals, and setting appropriate

14    achievement objectives to attain such

15    goals; and

16        (II) exploring career pathways

17    that lead to in-demand industries and

18    sectors, including in public health and

19    related occupations; and

20    (E) services for the period during which

21    the individual is employed in a contact tracing

22    and related position to ensure job retention,

23    which may include—

24        (i) supportive services throughout the

25    term of employment;

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002852

548

1            (ii) a continuation of skills training as
2        related to employment as a contact tracer
3        or related positions, that is conducted in
4        collaboration with the employers of such
5        participants;

6            (iii) mentorship services and job re-
7        tention support for eligible individuals; or

8            (iv) targeted training for managers
9        and workers working with eligible individ-
10       uals (such as mentors), and human re-
11       source representatives;

12       (4) Supporting the transition and placement in
13   unsubsidized employment for eligible individuals
14   serving in the contact tracing or related positions
15   after such positions are no longer necessary in the
16   State or local area, including—

17       (A) any additional training and employ-
18       ment activities as described in section 170(d)(4)
19       of the Workforce Innovation and Opportunity
20       Act (29 U.S.C. 3225(d)(4));

21       (B) developing the appropriate combina-
22       tion of services to enable the eligible individual
23       to achieve the employment and career goals
24       identified under paragraph (3)(D)(ii)(I); and

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002853

549

        (C) services to assist eligible individuals in maintaining employment for not less than 12 months after the completion of employment in contact tracing or related positions, as appropriate.

        (5) Any other activities as described in subsections (a)(3) and (b) of section 134 of the Workforce Innovation and Opportunity Act (29 U.S.C. 3174).

    (g) LIMITATION.—Notwithstanding section 170(d)(3)(A) of the Workforce Innovation and Opportunity Act (29 U.S.C. 3225(d)(3)(A)), a person may be employed in a contact tracing or related position using funds under this section for a period not greater than 2 years.

    (h) REPORTING BY THE DEPARTMENT OF LABOR.—

        (1) IN GENERAL.—Not later than 120 days of the enactment of this Act, and once grant funds have been expended under this section, the Secretary shall report to the Committee on Education and Labor of the House of Representatives and the Committee on Health, Education, Labor and Pensions of the Senate, and make publicly available a report containing a description of—

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002854

550

1   (A) the number of eligible individuals re-

2  cruited, hired, and trained as contract tracers

3  and related positions;

4   (B) the number of individuals successfully

5  transitioned to unsubsidized employment or

6  training at the completion of employment in

7  contact tracing or related positions using funds

8  under this subtitle;

9   (C) the number of such individuals who

10  were unemployed prior to being hired, trained,

11  or deployed as described in paragraph (1);

12   (D) the performance of each program sup-

13  ported by funds under this subtitle with respect

14  to the indicators of performance under section

15  116 of the Workforce Innovation and Oppor-

16  tunity Act (29 U.S.C. 3141), as applicable;

17   (E) the number of individuals in unsub-

18  sidized employment within six months and 1

19  year, respectively, of the conclusion of employ-

20  ment in contact tracing or related positions

21  and, of those, the number of individuals within

22  a State, territorial, or local public health de-

23  partment in an occupation related to public

24  health;

g:\VHLC\051220\051220.072.xml  (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002855

551

1          (F) any information on how eligible enti-

2     ties, local boards, or community-based organiza-

3     tions that received funding under this sub-

4     section were able to support the goals of the na-

5     tional system for COVID–19 testing, contact

6     tracing, surveillance, containment, and mitiga-

7     tion established under section 30561 of this

8     Act; and

9          (G) best practices for improving and in-

10     creasing the transition of individuals employed

11     in contract tracing or related positions to per-

12     manent, full-time employment.

13          (2) DISAGGREGATION.—All data reported under

14     paragraph (1) shall be disaggregated by race, eth-

15     nicity, sex, age, and, with respect to individuals with

16     barriers to employment, subpopulation of such indi-

17     viduals, except for when the number of participants

18     in a category is insufficient to yield statistically reli-

19     able information or when the results would reveal

20     personally identifiable information about an indi-

21     vidual participant.

22     (i) SPECIAL RULE.—Any funds used for programs

23     under this section that are used to fund an apprenticeship

24     or apprenticeship program shall only be used for, or pro-

25     vided to, an apprenticeship or apprenticeship program

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002856

552

1 that meets the definition of such term subsection (a) of

2 this section, including any funds awarded for the purposes

3 of grants, contracts, or cooperative agreements, or the de-

4 velopment, implementation, or administration, of an ap-

5 prenticeship or an apprenticeship program.

6     (j) INFORMATION SHARING REQUIREMENT FOR

7 HHS.—The Secretary of Health and Human Services,

8 acting through the Director of the Centers for Disease

9 Control and Prevention, shall provide the Secretary of

10 Labor, acting through the Assistant Secretary of the Em-

11 ployment and Training Administration, with information

12 on grants under section 30562, including—

13     (1) the formula used to award such grants to

14     State, local, Tribal, and territorial health depart-

15     ments;

16     (2) the dollar amounts of and scope of the work

17     funded under such grants;

18     (3) the geographic areas served by eligible enti-

19     ties that receive such grants; and

20     (4) the number of contact tracers and related

21     positions to be hired using such grants.

22     (k) AUTHORIZATION OF APPROPRIATIONS.—Of the

23 amounts appropriated to carry out this subtitle,

24 $500,000,000 shall be used by the Secretary of Labor to

25 carry out subsections (a) through (h) of this section.

DOC_0002857

553

1    APPLICATION OF THE SERVICE CONTRACT ACT TO

2    CONTRACTS AND GRANTS

3    SEC. 30567.

4    Contracts and grants which include contact tracing

5    as part of the scope of work and that are awarded under

6    this subtitle shall require that contract tracers and related

7    positions are paid not less than the prevailing wage and

8    fringe rates required under chapter 67 of title 41, United

9    States Code (commonly known as the "Service Contract

10    Act") for the area in which the work is performed. To

11    the extent that a nonstandard wage determination is re-

12    quired to establish a prevailing wage for contact tracers

13    and related positions for purposes of this subtitle, the Sec-

14    retary of Labor shall issue such determination not later

15    than 14 days after the date of enactment of this Act,

16    based on a job description used by the Centers for Disease

17    Control and Prevention and contractors or grantees per-

18    forming contact tracing for State public health agencies.

19    AUTHORIZATION OF APPROPRIATIONS

20    SEC. 30568.

21    To carry out this subtitle, there are authorized to be

22    appropriated $75,000,000,000, to remain available until

23    expended.

g:\VHLC\051220\051220.072.xml       (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002858

554

1 Subtitle E—Demographic Data and Supply Reporting

2 Related to COVID–19

3 COVID–19 REPORTING PORTAL

4 SEC. 30571.

5 (a) IN GENERAL.—Not later than 15 days after the

6 date of enactment of this Act, the Secretary shall establish

7 and maintain an online portal for use by eligible health

8 care entities to track and transmit data regarding their

9 personal protective equipment and medical supply inven-

10 tory and capacity related to COVID–19.

11 (b) ELIGIBLE HEALTH CARE ENTITIES.—In this sec-

12 tion, the term "eligible health care entity" means a li-

13 censed acute care hospital, hospital system, or long-term

14 care facility with confirmed cases of COVID–19.

15 (c) SUBMISSION.—An eligible health care entity shall

16 report using the portal under this section on a biweekly

17 basis in order to assist the Secretary in tracking usage

18 and need of COVID–related supplies and personnel in a

19 regular and real-time manner.

20 (d) INCLUDED INFORMATION.—The Secretary shall

21 design the portal under this section to include information

22 on personal protective equipment and medical supply in-

23 ventory and capacity related to COVID–19, including with

24 respect to the following:

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002859

555

1      (1) Personal protective equipment.—

2   Total personal protective equipment inventory, in-

3   cluding, in units, the numbers of N95 masks and

4   authorized equivalent respirator masks, surgical

5   masks, exam gloves, face shields, isolation gowns,

6   and coveralls.

7      (2) Medical supply.—

8      (A) Total ventilator inventory, including, in

9   units, the number of universal, adult, pediatric,

10   and infant ventilators.

11      (B) Total diagnostic and serological test

12   inventory, including, in units, the number of

13   test platforms, tests, test kits, reagents, trans-

14   port media, swabs, and other materials or sup-

15   plies determined necessary by the Secretary.

16      (3) Capacity.—

17      (A) Case count measurements, including

18   confirmed positive cases and persons under in-

19   vestigation.

20      (B) Total number of staffed beds, includ-

21   ing medical surgical beds, intensive care beds,

22   and critical care beds.

23      (C) Available beds, including medical sur-

24   gical beds, intensive care beds, and critical care

25   beds.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002860

556

(D) Total number of COVID–19 patients currently utilizing a ventilator.

(E) Average number of days a COVID–19 patient is utilizing a ventilator.

(F) Total number of additionally needed professionals in each of the following categories: intensivists, critical care physicians, respiratory therapists, registered nurses, certified registered nurse anesthetists, and laboratory personnel.

(G) Total number of hospital personnel currently not working due to self-isolation following a known or presumed COVID–19 exposure.

(e) ACCESS TO INFORMATION RELATED TO INVENTORY AND CAPACITY.—The Secretary shall ensure that relevant agencies and officials, including the Centers for Disease Control and Prevention, the Assistant Secretary for Preparedness and Response, and the Federal Emergency Management Agency, have access to information related to inventory and capacity submitted under this section.

(f) WEEKLY REPORT TO CONGRESS.—On a weekly basis, the Secretary shall transmit information related to inventory and capacity submitted under this section to the appropriate committees of the House and Senate.

g:\VHLC\051220\051220.072.xml          (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002861

557

1    REGULAR CDC REPORTING ON DEMOGRAPHIC DATA

2    Sec. 30572.

3    Not later than 14 days after the date of enactment

4  of this Act, the Secretary, in coordination with the Direc-

5  tor of the Centers for Disease Control and Prevention,

6  shall amend the reporting under the heading "Department

7  of Health and Human Services—Office of the Secretary—

8  Public Health and Social Service Emergency Fund" in

9  title I of division B of the Paycheck Protection Program

10  and Health Care Enhancement Act (Public Law 116–139;

11  134 Stat. 620, 626) on the demographic characteristics,

12  including race, ethnicity, age, sex, gender, geographic re-

13  gion, and other relevant factors of individuals tested for

14  or diagnosed with COVID–19, to include—

15        (1) providing technical assistance to State,

16     local, and territorial health departments to improve

17     the collection and reporting of such demographic

18     data;

19        (2) if such data is not so collected or reported,

20     the reason why the State, local, or territorial depart-

21     ment of health has not been able to collect or pro-

22     vide such information; and

23        (3) making a copy of such report available pub-

24     licly on the website of the Centers for Disease Con-

25     trol and Prevention.

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002862

558

FEDERAL MODERNIZATION FOR HEALTH INEQUITIES

DATA

SEC. 30573.

(a) IN GENERAL.—The Secretary shall work with covered agencies to support the modernization of data collection methods and infrastructure at such agencies for the purpose of increasing data collection related to health inequities, such as racial, ethnic, socioeconomic, sex, gender, and disability disparities.

(b) COVERED AGENCY DEFINED.—In this section, the term "covered agency" means each of the following Federal agencies:

(1) The Agency for Healthcare Research and Quality.

(2) The Centers for Disease Control and Prevention.

(3) The Centers for Medicare & Medicaid Services.

(4) The Food and Drug Administration.

(5) The Office of the National Coordinator for Health Information Technology.

(6) The National Institutes of Health.

(c) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated to each covered agency to

g:\VHLC\051220\051220.072.xml        (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002863

559

1 carry out this section $4,000,000, to remain available

2 until expended.

MODERNIZATION OF STATE AND LOCAL HEALTH

INEQUITIES DATA

5 SEC. 30574.

6 (a) IN GENERAL.—Not later than 6 months after the

7 date of enactment of this Act, the Secretary, acting

8 through the Director of the Centers for Disease Control

9 and Prevention, shall award grants to State, local, and

10 territorial health departments in order to support the

11 modernization of data collection methods and infrastruc-

12 ture for the purposes of increasing data related to health

13 inequities, such as racial, ethnic, socioeconomic, sex, gen-

14 der, and disability disparities. The Secretary shall—

15 (1) provide guidance, technical assistance, and

16 information to grantees under this section on best

17 practices regarding culturally competent, accurate,

18 and increased data collection and transmission; and

19 (2) track performance of grantees under this

20 section to help improve their health inequities data

21 collection by identifying gaps and taking effective

22 steps to support States, localities, and territories in

23 addressing the gaps.

24 (b) REPORT.—Not later than 1 year after the date

25 on which the first grant is awarded under this section,

26 the Secretary shall submit to the Committee on Energy

g:\VHLC\051220\051220.072.xml   (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002864

G:\CMTE\AP\16\FY20\_D\HEROES.XML

560

1 and Commerce of the House of Representatives and the

2 Committee on Health, Education, Labor and Pensions of

3 the Senate an initial report detailing—

4     (1) nationwide best practices for ensuring

5 States and localities collect and transmit health in-

6 equities data;

7     (2) nationwide trends which hinder the collec-

8 tion and transmission of health inequities data;

9     (3) Federal best practices for working with

10 States and localities to ensure culturally competent,

11 accurate, and increased data collection and trans-

12 mission; and

13     (4) any recommended changes to legislative or

14 regulatory authority to help improve and increase

15 health inequities data collection.

16 (c) FINAL REPORT.—Not later than December 31,

17 2023, the Secretary shall—

18     (1) update and finalize the initial report under

19 subsection (b); and

20     (2) submit such final report to the committees

21 specified in such subsection.

22 (d) AUTHORIZATION OF APPROPRIATIONS.—There is

23 authorized to be appropriated to carry out this section

24 $100,000,000, to remain available until expended.

g:\VHLC\051220\051220.072.xml    (763351l3)
May 12, 2020 (12:13 p.m.)

DOC_0002865

G:\CMTE\AP\16\FY20\_D\HEROES.XML

561

1   TRIBAL FUNDING TO RESEARCH HEALTH INEQUITIES

2                    INCLUDING COVID–19

3   SEC. 30575.

4       (a) IN GENERAL.—Not later than 6 months after the

5   date of enactment of this Act, the Director of the Indian

6   Health Service, in coordination with Tribal Epidemiology

7   Centers and other Federal agencies, as appropriate, shall

8   conduct or support research and field studies for the pur-

9   poses of improved understanding of Tribal health inequi-

10  ties among American Indians and Alaska Natives, includ-

11  ing with respect to—

12          (1) disparities related to COVID–19;

13          (2) public health surveillance and infrastructure

14      regarding unmet needs in Indian country and Urban

15      Indian communities;

16          (3) population-based health disparities;

17          (4) barriers to health care services;

18          (5) the impact of socioeconomic status; and

19          (6) factors contributing to Tribal health inequi-

20      ties.

21      (b) CONSULTATION, CONFER, AND COORDINATION.—

22  In carrying out this section, the Director of the Indian

23  Health Service shall—

24          (1) consult with Indian Tribes and Tribal orga-

25      nizations;

DOC_0002866