JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al*., | Case No. 5:20-cv-05799-LHK |
| Plaintiffs, | |
| v. | **DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| WILBUR L. ROSS, JR., *et al.*, | |
| Defendants. | |

Defendants' voluminous production of internal Census Bureau and Department of Commerce documents—and the extraordinary efforts required to identify, collect, and review them—confirms what has been evident from the beginning:  decisions about the timing and conduct of the 2020 census are part of the agency's broad, programmatic work.  Those decisions do not constitute discrete, final agency actions.  They are *not* subject to APA review.  And they cannot be set aside merely because Plaintiffs dislike the statutory deadline or various discretionary operational choices Defendants have made in order to meet that deadline.

## I.      The Documents Confirm the Absence of Discrete, Final Agency Action

The documents provided by Defendants draw back the curtain on the Census Bureau's planning, replanning, and continual, ongoing adjustments of census operations to account for ever-changing circumstances is in what is by its very nature a dynamic and evolving process of completing a nationwide enumeration.  Try as Plaintiffs might, these documents refute the existence of any "circumscribed, discrete agency action[]" that is necessary APA review.  *See Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 61-62 (2004).  To the contrary, the vast volume of documents, presentations, and email threads illustrate the inner-workings of a massive government program:  experts considering interrelated possibilities, weighing the costs and benefits of different possible operations, and seeking to optimize results in light of the funding and time constraints that Congress has imposed.

Plaintiffs have attempted to cast the entire set of operational details for how the Bureau would accomplish its goal of meeting the statutory deadline in 13 U.S.C. § 141 as a specific, narrow decision to which the Court can plausibly apply traditional APA standards of review.  *See, e.g.*, Am. Compl. ¶¶ 3, 272, 344; Pls. PI Br. at 2, ECF 36.  Those operational details have been given an omnibus moniker—the "Replan."  But there was no single point of decision to comply with the statutory deadline.  The deadline has been a known entity for the past 60 years, and has figured prominently in the Bureau's operational plan for the census from the beginning.  *See generally* DOC_1-220 (Operational Plan).  In fact, the myriad of interrelated programmatic decisions laid out in the operational plan were made *specifically* to comply with the timing constraints of § 141.  And while the Bureau decided to adjust operations after the onset of the

DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:20-cv-05799-LHK

1

COVID-19 pandemic in the hope that Congress would extend the statutory deadline, the Bureau was constantly aware that such relief was not guaranteed. *See, e.g.*, DOC_1599 (noting that the Bureau asked Congress for an extension); DOC_8037-38 (transmitting to Secretary a newspaper article which addressed whether Congress would take up the extension); DOC_8071 (discussing repeated requests for deadline extension).

Tellingly, Plaintiffs themselves are beginning to equivocate on *what* decision they are trying to challenge, and *when* that decision was made. In their earlier papers, Plaintiffs have repeatedly asserted that the decision they challenge is the Secretary's approval of the Replan and corresponding press announcement on August 3, 2020. *See, e.g.*, Pls. PI Br. at 11-12, ECF 36. They affirmed that position as recently as the September 15, 2020 conference, when they agreed with Defendants and the Court that the OIG production should not include any document from August 4, 2020 onwards. ECF 126 at 72:22-73:5. But Plaintiffs *now* contend that the relevant decision was a *request* by the Secretary on July 29, 2020 for the Bureau to formulate a way to meet the deadline. Pls. Priv. Br. at 2, ECF 170. Plaintiffs' uncertainty about their own claim, and tacit acknowledgement of the fundamentally inchoate nature of the "decision" they purport to challenge, is notable but unsurprising. The continuously moving elements of the Census Bureau's operational planning provide no foothold to find and isolate a single "decision." *See generally NAACP v. Bureau of the Census*, 945 F.3d 183, 190–91 (4th Cir. 2019) (finding lack of final agency action in a case challenging the various elements of the census operational plan because "the various 'design choices' being challenged expressly are tied to one another"). And, contrary to what Plaintiffs now suggest, the choice to comply with a mandatory statutory deadline cannot be seen as a discrete decision at all, given that it informed the formation of the entire census operational plan from the start. *See, e.g.*, *South Carolina v. United States*, 907 F.3d 742, 758 (4th Cir. 2018) ("When Congress by [] statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline." (internal quotes and citation omitted)).

Indeed, the misconceived project Plaintiffs have foisted onto this case of gathering internal documents in an effort to elucidate a non-existent "circumscribed, discrete agency action" simply

demonstrates a basic misunderstanding of Government functions. When the Court requested that Defendants identify the documents considered in formulating the Replan, Defendants' acknowledged a basic truth: like everyone else, the Government creates documents during its work and deliberations. *See* ECF 82 at 32:13-15, 33:2–4 ("[T]he documents that fed into the operational plans and the operational decisions are internal documents"; "the census bureau generates documents as part of its analysis and as part of its decisions and as part of its deliberations"). This is an incontrovertible proposition of how the modern administrative state operates. That government officials use emails, prepare presentations, and exchange memoranda does not in any way establish that there is an *administrative* record that could be coherently assembled, let alone one that is subject to appropriate review under the APA. Indeed, the precedent Plaintiffs have set with their misconceived demands in this case would in many circumstances cripple the federal bureaucracy. Merely upon the *filing* of a motion for expedited injunctive relief, Plaintiffs have successfully compelled the Government to step away from its ordinary business—completion of the decennial census, no less—and instead run expedited document searches, conduct burdensome privilege reviews, and litigate myriad questions. All of this is wholly inappropriate and at odds with what Congress intended when it enacted the APA's limited waiver of sovereign immunity permitting judicial review of final agency action.

## II.     The TRO Should be Dissolved and the Preliminary Injunction Denied

Treating broad, programmatic functions of an agency as subject to APA review has mired the Court in the impossible project of weighing and assessing innumerable inter-related choices about the conduct of the 2020 census. Because "'[s]etting aside' one or more of these 'choices' necessarily would impact the efficacy of the others," the Court now finds itself "involve[d] in 'hands-on' management of the Census Bureau's operations." *NAACP*, 945 F.3d at 191 (citing *SUWA*, 542 U.S. at 66-67). Plaintiffs' complaints about the treatment of individual enumerators, the functionality of software packages, and innumerable other minutia, ECF 108, prove as much. *See, e.g.*, ECF 82 at 29:6-15 (Court inquiring about "rate of no-shows for enumerators," whether the Bureau was "able to hire and replace" personnel); ECF 126 at 22:10-14 (Plaintiffs noting they "would love a detailed declaration on what exactly has been happening with the Optimizer

[software] and what exactly has been happening with the enumerator counts and how the enumerators are actually being moved around or terminated or given assignments").  And these account only for the grievances Plaintiffs have raised in just the last week.  Where does it end?  Will Plaintiffs want the Bureau to account for its weekly staff payroll in the Lincoln, Nebraska field office?[1]  Will the Bureau have to demonstrate sufficient progress on its daily enumeration goals in Bismarck, North Dakota for Plaintiffs to feel at ease?  Will data processing progress have to be tracked gigabyte-by-gigabyte and reported in real time until Plaintiffs' unknown and inscrutable standard of accuracy had been achieved?  "Truly, this is 'turtles all the way down.'" *Rapanos v. United States*, 547 U.S. 715, 754, n.14 (2006).

This outcome, the Fourth Circuit has held, "is precisely the result that the 'discreteness' requirement of the APA is deigned to avoid."  *Id.* (rejecting the "broad, sweeping nature of the allegations that the plaintiffs have elected to assert under the APA").  Where, as here, Plaintiffs themselves cannot identify the relevant action or decision they challenge, no review under the APA is possible, nor any relief warranted.  The APA does not permit a plaintiff to attack an agency program "consisting of . . . many individual actions" simply by characterizing it as "agency action."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990); *see also Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 506 (9th Cir. 1997) (denying relief "which would require reaching into an agency of the executive branch and dictating the details of its internal operations" (quotation omitted)).  The Court should not be in the position of exercising "supervisory control over the execution of the 2020 Census"—a remedy that no court "has the authority, expertise, or time to provide."  *NAACP v. Bureau of the Census*, 399 F. Supp. 3d 406, 416 (D. Md. 2019).

As Defendants previously explained, Plaintiffs' challenge is entirely misplaced.  Rather than seeking to invoke the jurisdiction of an Article III tribunal, Plaintiffs should direct their energies to the one Branch of Government that can meaningfully entertain their concern: Congress.  As Congress itself understands, it—not the Judiciary—is the Branch of Government

---

[1] As Plaintiffs have sought a nationwide injunction this outcome is not far-fetched.  Indeed, Plaintiffs have already complained about the rate of enumeration in San Diego, a jurisdiction which is not a party in this lawsuit, and the alleged failure of an individual enumerator's iPhone in Tennessee. *See* ECF 108.

with the constitutionally-committed power to modify the timing of the census, whether through an extension of § 141's statutory deadline or otherwise.  That question is committed to Congress and Congress alone.

Since the passage of 13 U.S.C. § 141, the Bureau has *never once* missed the deadline to report the census results.  This Court should not force the Bureau to create new precedent.  Indeed, were the Court to hold otherwise, there would be no going back.  Were this Court to find that the statutory deadline—a product of explicit Constitutional delegation to Congress of the "means" of conducting the census—can be extended by four months, what is to stop litigants from requesting a year-long extension?  What about a four-year extension?  Any plaintiff could come to court at any point, and demand that the census be indefinitely extended to avoid a purported undercount.  The floodgates will be flung open, and courts left with no standards to apply.  That prospect is by no means hypothetical—in this very case, the State of Louisiana has filed a notice of intent to intervene, ECF 146, alleging that the Court's injunctive order is harming *its interests* by precluding assignment of enumerators desperately needed in its jurisdiction.  These are questions that the Census Bureau should resolve, not the Judiciary when presented with them in adverse litigation.

For the moment, every court that has extended or disregarded the statutory deadline in § 141 has had its order stayed by the Supreme Court, and its decision subsequently overturned on appeal.  *See, e.g.*, *Klutznick v. Carey*, 449 U.S. 1068, 1068 (1980); *Carey v. Klutznick*, 653 F.2d 732, 736 (2d Cir. 1981).  This history is consistent with the Supreme Court's rejection of last-minute judicial disruption of large government undertakings.  *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *Williams v. Rhodes*, 393 U.S. 23, 34-35 (1968).  The COVID-19 pandemic has not altered this principle, and if anything only calls for courts to be more cautious in intervening in the agency's nuanced and adaptive response.  *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J.) (in responding to COVID "'latitude must be especially broad'" because the courts "lack[] the background, competence, and expertise to assess public health" or to "respon[d] to changing facts on the ground").  This Court should therefore dissolve the Temporary Restraining Order and deny Plaintiffs' motion for a preliminary injunction.

DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:20-cv-05799-LHK

5

DATED:  September 20, 2020                    Respectfully submitted,


                                              JEFFREY BOSSERT CLARK
                                              Acting Assistant Attorney General

                                              ALEXANDER K. HAAS
                                              Branch Director

                                              DIANE KELLEHER
                                              BRAD P. ROSENBERG
                                              Assistant Branch Directors

                                              */s/ Alexander V. Sverdlov*
                                              ALEXANDER V. SVERDLOV
                                                 (New York Bar No. 4918793)
                                              M. ANDREW ZEE (SBN 272510)
                                              Trial Attorneys
                                              U.S. Department of Justice
                                              Civil Division - Federal Programs Branch
                                              1100 L Street, NW
                                              Washington, D.C. 20005
                                              Telephone: (202) 305-0550

                                              *Attorneys for Defendants*

DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:20-cv-05799-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of September, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV