LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Amit Makker (Bar No. 280747)
    amit.makker@lw.com
  Shannon D. Lankenau (Bar No. 294263)
    shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415.391.0600
Facsimile:  415.395.8095

LATHAM & WATKINS LLP
  Richard P. Bress (*pro hac vice*)
    rick.bress@lw.com
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
  Anne W. Robinson (*pro hac vice*)
    anne.robinson@lw.com
  Tyce R. Walters (*pro hac vice*)
    tyce.walters@lw.com
  Genevieve P. Hoffman (*pro hac vice*)
    genevieve.hoffman@lw.com
  Gemma Donofrio (*pro hac vice*)
    gemma.donofrio@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:  202.637.2200
Facsimile:  202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
  Kristen Clarke (*pro hac vice* forthcoming)
    kclarke@lawyerscommittee.org
  Jon M. Greenbaum (Bar No. 166733)
    jgreenbaum@lawyerscommittee.org
  Ezra D. Rosenberg (admitted *pro hac vice*)
    erosenberg@lawyerscommittee.org
  Dorian L. Spence (*pro hac vice* forthcoming
    dspence@lawyerscommittee.org
  Ajay P. Saini (admitted *pro hac vice*)
    asaini@lawyerscommittee.org
  Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
  Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Additional counsel and representation
information listed in signature block*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>                              Plaintiffs,<br><br>          v.<br><br>WILBUR L. ROSS, JR., et al.,<br><br>                              Defendants. | CASE NO.  5:20-cv-05799-LHK<br><br>**NOTICE REGARDING JUST-RELEASED OFFICE OF INSPECTOR GENERAL REPORT; REQUEST FOR CLARIFICATION REGARDING SUPPLEMENTAL BRIEFING**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 8<br>Judge: Hon. Lucy H. Koh |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

1      A few hours ago, the Office of Inspector General for the U.S. Department of Commerce

2 publicly released the attached report, titled *The Acceleration of the Census Schedule Increases*

3 *the Risks to a Complete and Accurate 2020* Census.  In that report, dated September 18, 2020

4 and first provided to the Department of Commerce on or about that date, the Inspector General

5 came to two primary conclusions:  (1) "[t]he decision to accelerate the Census schedule was not

6 made by the Census Bureau," and (2) "[t]he accelerated schedule increases the risks to obtaining

7 a complete and accurate 2020 Census."  The report is attached to this filing as Attachment A, and

8 is also available at https://www.oig.doc.gov/OIGPublications/OIG-20-050-M.pdf.  Given the

9 significance of the OIG's earlier request for materials, the circumstances of Defendants'

10 compelled production of the OIG Documents as a portion of the AR in this case, and tomorrow's

11 scheduled hearing on Plaintiffs' motion for a stay and preliminary injunction, Plaintiffs wanted

12 to flag this report for the Court as soon as possible.

13      In light of the OIG Report, and Plaintiffs' ongoing review of Defendants' AR materials

14 previously withheld on the basis of privilege, Plaintiffs also request a clarification of the optional

15 supplemental briefing schedule ordered in this case.  In its Order of September 20, 2020

16 (Dkt. 183), the Court permitted the parties to file an optional 5-page brief by September 21,

17 2020, at 8 p.m. Pacific Time, as well as an optional 10-page brief by September 22, at 9 a.m.

18 Pacific Time.  To streamline Plaintiffs' response, and to consolidate the information received in

19 the last 24 hours (including the OIG Report), Plaintiffs respectfully request an opportunity to

20 consolidate these two briefs into a single 15-page brief, to be filed tomorrow by 9 a.m. Pacific

21 Time.  Plaintiffs intend for this brief to largely focus on organizing and citing the evidentiary

22 materials before the Court, rather than devoting much time to argument and prose, and believe

23 that a single 15-page brief will minimize redundancy and allow the most fulsome categorization

24 of AR materials for the Court.  Of course, if the Court finds two briefs preferable, Plaintiffs will

25 provide such briefs pursuant to the original schedule set forth above.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

1    Dated: September 21, 2020                    LATHAM & WATKINS LLP

2                                                 By: /s/ Sadik Huseny
3                                                     Sadik Huseny

4                                                 Steven M. Bauer (Bar No. 135067)
                                                  steven.bauer@lw.com
5                                                 Sadik Huseny (Bar No. 224659)
                                                  sadik.huseny@lw.com
6                                                 Amit Makker (Bar No. 280747)
                                                  amit.makker@lw.com
7                                                 Shannon D. Lankenau (Bar. No. 294263)
                                                  shannon.lankenau@lw.com
8                                                 **LATHAM & WATKINS LLP**
                                                  505 Montgomery Street, Suite 2000
9                                                 San Francisco, CA 94111
                                                  Telephone:  415.391.0600
10                                                Facsimile:  415.395.8095

11                                                Richard P. Bress (admitted *pro hac vice*)
                                                  rick.bress@lw.com
12                                                Melissa Arbus Sherry (admitted *pro hac vice*)
                                                  melissa.sherry@lw.com
13                                                Anne W. Robinson (admitted *pro hac vice*)
                                                  anne.robinson@lw.com
14                                                Tyce R. Walters (admitted *pro hac vice*)
                                                  tyce.walters@lw.com
15                                                Genevieve P. Hoffman (admitted *pro hac vice*)
                                                  genevieve.hoffman@lw.com
16                                                Gemma Donofrio (admitted *pro hac vice*)
                                                  gemma.donofrio@lw.com
17                                                **LATHAM & WATKINS LLP**
                                                  555 Eleventh Street NW, Suite 1000
18                                                Washington, D.C. 20004
                                                  Telephone:  202.637.2200
19                                                Facsimile:  202.637.2201

20                                                *Attorneys for Plaintiffs National Urban League;*
                                                  *League of Women Voters; Black Alliance for*
21                                                *Just Immigration; Harris County, Texas; King*
                                                  *County, Washington; City of San Jose,*
22                                                *California; Rodney Ellis; Adrian Garcia; and*
                                                  *the NAACP*

23   Dated: September 21, 2020                    By: /s/ Jon M. Greenbaum
24                                                Kristen Clarke (*pro hac vice* forthcoming)
                                                  kclarke@lawyerscommittee.org
25                                                Jon M. Greenbaum (Bar No. 166733)
                                                  jgreenbaum@lawyerscommittee.org
26                                                Ezra D. Rosenberg (admitted *pro hac vice*)
                                                  erosenberg@lawyerscommittee.org
27                                                Dorian L. Spence (*pro hac vice* forthcoming)
                                                  dspence@lawyerscommittee.org
28                                                Maryum Jordan (*pro hac vice* forthcoming)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

mjordan@lawyerscommittee.org
Ajay Saini (admitted *pro hac vice*)
asaini@lawyerscommittee.org
Pooja Chaudhuri (Bar No. 314847)
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Attorneys for Plaintiffs National Urban League;
City of San Jose, California; Harris County,
Texas; League of Women Voters; King County,
Washington; Black Alliance for Just
Immigration; Rodney Ellis; Adrian Garcia; the
NAACP; and Navajo Nation*

Wendy R. Weiser (admitted *pro hac vice*)
weiserw@brennan.law.nyu.edu
Thomas P. Wolf (admitted *pro hac vice*)
wolf@brennan.law.nyu.edu
Kelly M. Percival (admitted *pro hac vice*)
percivalk@brennan.law.nyu.edu
**BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League;
City of San Jose, California; Harris County,
Texas; League of Women Voters; King County,
Washington; Black Alliance for Just
Immigration; Rodney Ellis; Adrian Garcia; the
NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone:  213.385.2977
Facsimile:  213.385.9089

*Attorneys for Plaintiff City of San Jose*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice* forthcoming)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: September 21, 2020

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: September 21, 2020

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us
Michael Mutalipassi (Bar No. 274858)
michaelmu@ci.salinas.ca.us
**CITY OF SALINAS**
200 Lincoln Avenue
Salinas, CA 93901
Telephone: 831.758.7256
Facsimile: 831.758.7257

*Attorneys for Plaintiff City of Salinas*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

1

2    Dated: September 21, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15    Dated: September 21, 2020

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Rafey S. Balabanian*
Rafey S. Balabanian (Bar No. 315962)
rbalabanian@edelson.com
Lily E. Hough (Bar No. 315277)
lhough@edelson.com
**EDELSON P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435

Rebecca Hirsch (admitted *pro hac vice*)
rebecca.hirsch2@cityofchicago.org
**CORPORATION COUNSEL FOR THE
CITY OF CHICAGO**
Mark A. Flessner
Stephen J. Kane
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Telephone: (312) 744-8143
Facsimile: (312) 744-5185

*Attorneys for Plaintiff City of Chicago*

By: */s/ Donald R. Pongrace*
Donald R. Pongrace (admitted *pro hac vice*)
dpongrace@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
2001 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: 202-887-4288

Dario J. Frommer (Bar No. 161248)
dfrommer@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Phone:  213.254.1270
Fax: 310.229.1001

*Attorneys for Plaintiff Gila River Indian
Community*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 5:20-CV-05799-LHK
NOTICE REGARDING OIG REPORT; REQUEST FOR
CLARIFICATION RE: SUPPLEMENTAL BRIEFING

1

2   Dated: September 21, 2020                By: _/s/ David I. Holtzman_____
                                            David I. Holtzman (Bar No. 299287)
3                                           David.Holtzman@hklaw.com
                                            **HOLLAND & KNIGHT LLP**
4                                           Daniel P. Kappes
                                            Jacqueline N. Harvey
5                                           50 California Street, 28th Floor
                                            San Francisco, CA 94111
6                                           Telephone: (415) 743-6970
                                            Fax: (415) 743-6910
7
                                            *Attorneys for Plaintiff County of Los Angeles*
8

9

10                          **<u>ATTESTATION</u>**

11          I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this

12   document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred

13   in this filing.

14

15   Dated: September 21, 2020                **LATHAM & WATKINS** LLP

16                                           By: _/s/ Sadik Huseny_____
                                                Sadik Huseny
17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO
                            6
                                    CASE NO. 5:20-CV-05799-LHK
                         NOTICE REGARDING OIG REPORT; REQUEST FOR
                         CLARIFICATION RE: SUPPLEMENTAL BRIEFING

# Attachment A

# The Acceleration of the Census Schedule Increases the Risks to a Complete and Accurate 2020 Census

FINAL MANAGEMENT ALERT NO. OIG-20-050-M

SEPTEMBER 18, 2020



U.S. Department of Commerce

Office of Inspector General



UNITED STATES DEPARTMENT OF COMMERCE
**Office of Inspector General**
Washington, D.C. 20230

September 18, 2020

**INFORMATION MEMORANDUM FOR SECRETARY ROSS**

**FROM:**    Peggy E. Gustafson
Inspector General

**SUBJECT:**    *The Acceleration of the Census Schedule Increases the Risks to a Complete and Accurate 2020 Census*
Final Management Alert No. OIG-20-050-M

On August 3, 2020, the U.S. Census Bureau (the Bureau) issued a press release announcing a decision "to accelerate" the 2020 Census.[1] Following the announced schedule acceleration, our office received several Congressional inquiries expressing concern about the expedited schedule. News articles also highlighted these changes, as did former Directors of the U.S. Census Bureau in a joint statement.

In response, beginning on August 12, 2020, we issued requests for information and notices of interviews. This is our management alert on these pressing and emerging issues that we continue to monitor.

In our review of the circumstances surrounding the accelerated 2020 Census schedule, we found the following:

  I.  The decision to accelerate the Census schedule was not made by the Census Bureau.

  II.  The accelerated schedule increases the risks to obtaining a complete and accurate 2020 Census.

We are providing a copy of the report for your review. The final report will be publicly posted on OIG's website on Monday, September 21, 2020.

---

[1] U.S. Department of Commerce, U.S. Census Bureau, August 3, 2020. *Statement from U.S. Census Bureau Director Steven Dillingham: Delivering a Complete and Accurate 2020 Census Count*, Release Number CB20-RTQ.23. Suitland, MD: DOC Census.

If you have any questions concerning this report, please contact me at (202) 482-4661.

Attachment

cc:  Karen Dunn Kelley, Deputy Secretary of Commerce
     Dr. Steven Dillingham, Director, U.S. Census Bureau

# Contents

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 2

    I.   The Office of Inspector General ................................................................ 2

    II.  Overview of the 2020 Census ................................................................... 2

Findings and Conclusion ............................................................................................. 5

    I.   The Decision to Accelerate the Census Schedule Was Not Made by the
Census Bureau ............................................................................................. 5

        A.  *The Bureau extended the Census schedule in April 2020 to account for the
COVID-19 pandemic* ...................................................................................... 5

        B.  *It was not the Bureau's decision to accelerate the 2020 Census schedule* ............... 6

    II.  The Accelerated Schedule Increases the Risks to Obtaining a Complete and
Accurate 2020 Census ............................................................................... 8

        A.  *The accelerated timeline for data collection increases risk that the Bureau may not
collect sufficient data for an accurate and complete count* ............................... 8

        B.  *The streamlined data processing under the accelerated plan poses a myriad of risks
to accuracy and completeness* ........................................................................ 10

    III.  Conclusion ................................................................................................ 11

    **Appendix A: Related Congressional Correspondence** ............................... 12

*Cover: Herbert C. Hoover Building main entrance at
14th Street Northwest in Washington, DC. Completed in
1932, the building is named after the former Secretary
of Commerce and 31st President of the United States.*

# Introduction

The U.S. Census Bureau (the Bureau) spent more than a decade planning how it would count the U.S. population in the 2020 Census. In early August 2020, those plans were significantly condensed in a matter of days, despite serious operational interruptions from the coronavirus disease 2019 (COVID-19) pandemic and warnings from senior Bureau personnel that an accelerated schedule would exacerbate risks. Ultimately, the decision to accelerate the Census schedule was not made by the Bureau.

Following the August 3, 2020, announced schedule acceleration,[1] our office received several Congressional inquiries expressing concern about the expedited schedule.[2] Specifically, we were asked "to closely monitor and assess the implications of operational 'streamlining' and changes to the [original post-COVID-19] operational plan for data quality and accuracy."[3] Our office was also asked to "examine the Bureau's efforts to uphold the highest standards for data quality and analyze whether a compressed schedule interferes with the Bureau's ability to ensure data quality."[4]

Numerous news outlets also highlighted the changes and threats to accuracy from the accelerated schedule. Further, four former Directors of the U.S. Census Bureau issued a joint statement expressing concern over the announced accelerated plan and stating that an end result will be the under-representation of certain populations.[5]

In response, we issued requests for information and notices of interviews beginning on August 12, 2020. This is our management alert on these pressing and emerging issues that we continue to monitor.

---

[1] U.S. Department of Commerce, U.S. Census Bureau, August 3, 2020. *Statement from U.S. Census Bureau Director Steven Dillingham: Delivering a Complete and Accurate 2020 Census Count*, Release Number CB20-RTQ.23. Suitland, MD: DOC Census. Available online at https://2020census.gov/en/news-events/press-releases/delivering-complete-accurate-count.html (accessed September 15, 2020).

[2] Attached as appendix A.

[3] Vice Chair Jeanne Shaheen to Peggy E. Gustafson, August 10, 2020. *Letter from the Vice Chair of the Senate Subcommittee on Commerce, Justice, Science and Related Agencies to the Inspector General of the U.S. Department of Commerce*, p. 2. See appendix A for the complete letter.

[4] Chairman José E. Serrano to Peggy E. Gustafson, August 21, 2020. *Letter from the Chairman of the House Subcommittee on Commerce, Justice, Science, and Related Agencies to the Inspector General of the U.S. Department of Commerce*, p. 2. See appendix A for the complete letter.

[5] Vincent Barabba, Kenneth Prewitt, Robert Groves, and John Thompson, August 4, 2020. *Statement by Former U.S. Census Bureau Directors, August 4, 2020, On the Importance of Extending the 2020 Census Statutory Deadlines to Achieve A Fair and Accurate Enumeration of the United States*. Available online at https://www.documentcloud.org/documents/7013550-Aug-4-2020-Statement-By-Former-U-S-Census-Bureau.html (accessed September 15, 2020).

# Background

## I.  The Office of Inspector General

The Office of Inspector General (OIG) is an independent and objective unit which provides oversight of the programs and operations of the U.S. Department of Commerce (Department), including those of the Bureau.[6] OIG is statutorily entitled to timely access to all records of the Department,[7] and Department employees are obligated to cooperate with OIG.[8] For this management alert, which is part of our ongoing work on the 2020 Census, we reviewed documents from both the Department and the Bureau. We also interviewed senior career Bureau officials working on the 2020 Census, as well as the Director of the Bureau, Dr. Steven Dillingham. We prepared this management alert in alignment with OIG's quality control standards and the Council of the Inspectors General on Integrity and Efficiency's *Quality Standards for Federal Offices of Inspector General*,[9] which require that we conduct our work with integrity, objectivity, and independence.

## II.  Overview of the 2020 Census

The decennial census is mandated by the Constitution of the United States. The Constitution requires the "actual Enumeration" of the "whole number of persons" every 10 years, to provide a basis to apportion representatives in the U.S. House of Representatives among the states.[10] Not only does the decennial census fulfill this critical constitutional role, but census data is used for redistricting Congressional districts, state legislative districts, and school districts.[11] Census data is also used to enforce voting rights and civil rights legislation.[12] Furthermore, the data shapes communities across the country for the next 10 years because the data is key to the appropriation of hundreds of billions of dollars in federal funds every year to local communities, as well as to the decision-making of local governments, businesses, and non-profits who need accurate data to carry out their activities.[13]

---

[6] Inspector General Act of 1978, as amended (IG Act), 5 U.S.C. App. § 2.

[7] IG Act, § 6(a)(1)(A).

[8] DOC Office of the Secretary, April 26, 2013. *Inspector General*, DOO 10-13. Washington, DC: DOC OS, § 4.01.

[9] Council of the Inspectors General on Integrity and Efficiency, August 2012. *Quality Standards for Federal Offices of Inspector General*. Washington, DC: CIGIE.

[10] U.S. Const. art 1, § 2 & amend. XIV, § 2.

[11] DOC Census Bureau, December 2018. *2020 Census Operational Plan: A New Design for the 21st Century*, Version 4.0. Suitland, MD: DOC Census, p. 5. Available online at https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan4.pdf (accessed September 15, 2020).

[12] *Id.* at 5

[13] Census Bureau. *Importance of the Data* [online]. https://2020census.gov/en/census-data.html (accessed September 15, 2020); *2020 Census Operational Plan*, p. 5.

Congress set by statute the deadline of December 31, 2020, for the 2020 Census tabulation of total population by states, as required for the apportionment of House representatives.[14]

To fulfill these duties, Congress delegated responsibility to conduct the decennial census to the Secretary of Commerce (Secretary), who ultimately oversees the Bureau.[15] The Bureau is headed by a Director, who is appointed by the President with the advice and consent of the U.S. Senate.[16] The Bureau's *2020 Census Operational Plan* was developed over more than a decade, with the stated goal "to count everyone once, only once, and in the right place."[17]

The 2020 Census is conducted in two phases. The first phase is *data collection*—how the Bureau counts persons and acquires characteristic information about those persons. An example of data collection is self-response, during which people respond to the 2020 Census online, by phone, or by mail.[18] An additional component of data collection is nonresponse followup (NRFU), where Bureau representatives visit households that have not already responded to the 2020 Census.[19] The second phase is *data processing*—how the Bureau takes the data it collected and converts it into accurate and usable information. This phase is sometimes referred to as "post-processing"[20] and must occur after data collection ends. As one senior Bureau official stated, if the data is not collected, "there's nothing to process." A few examples of data processing include

- resolving duplicate data,

- repairing missing or conflicting data,

- applying data codes to write-in responses to facilitate data tabulation,

- identifying and resolving potential fraudulent returns,

- identifying the return of record for housing units with multiple returns,[21]

- ensuring all addresses are reflected in the correct geography, and

- using subject matter reviews to identify errors.

One senior official described the processing stage as "vitally important to the census" and used the following illustration: "the census is a bit like sausage making. A lot of bits and pieces go into it, and they've got to be sorted and cleaned and fixed. … [T]hat's the part of

---

[14] *See* 13 U.S.C. § 141(b).

[15] 13 U.S.C. §§ 2, 4, & 141(a).

[16] *Id.* § 21(a)(1).

[17] *2020 Census Operational Plan*, sec. 2.1, p. 5.

[18] *Id.* at 208.

[19] Census Bureau. *Nonresponse Followup Completion Rates* [online]. https://2020census.gov/en/response-rates/nrfu-completion.html#:~:text=SHARE%3A,by%20returning%20their%20completed%20questionnaire (accessed September 15, 2020).

[20] *2020 Census Operational Plan*, p. 12.

[21] *Id. at* 132.

the census that … people don't see." In sum, to produce a quality 2020 Census, both the data collection and data processing components are critical.

# Findings and Conclusion

## 1. The Decision to Accelerate the Census Schedule Was Not Made by the Census Bureau

On August 3, 2020, the Bureau issued a press release announcing the decision "to accelerate" the 2020 Census.[22] The schedule change was not the Bureau's decision, nor was it the first time the 2020 Census schedule had been changed. Senior officials at the Bureau, including the Director, did not know who ultimately made the decision to accelerate the Census schedule. As a consequence, this management alert does not identify the decision maker. Some Bureau officials speculated the decision came from the Department, while others thought the decision likely came from the White House. However, Bureau officials confirmed that the decision was not the Bureau's.

### A. The Bureau extended the Census schedule in April 2020 to account for the COVID-19 pandemic

In response to the COVID-19 pandemic, the Bureau temporarily suspended certain 2020 Census operations in March 2020. Then, on April 13, 2020, the Department and the Bureau issued a joint statement adjusting the 2020 Census operations.[23] The statement said in part:

> In order to ensure the completeness and accuracy of the 2020 Census, the Census Bureau is seeking statutory relief from Congress of 120 additional calendar days to deliver final apportionment counts.

> Under this plan, the Census Bureau would extend the window for field data collection and self-response to October 31, 2020, which will allow for apportionment counts to be delivered to the President by April 30, 2021, and redistricting data to be delivered to the states no later than July 31, 2021.[24]

The language in the statement appeared to condition the extension of the data collection phase to October 31, 2020, on obtaining a statutory extension to the apportionment deadline. It noted that the Bureau "would extend the window" for data collection while seeking a 120-day statutory extension to deliver final apportionment counts.

Multiple Bureau officials confirmed that the feasibility of extending the data collection phase to October 31, 2020, was dependent on receiving statutory relief from the apportionment deadline. This is because the data collection and data processing phases

---

[22] Release Number CB20-RTQ.23 (August 3, 2020, Census Bureau press release).

[23] DOC Census Bureau, April 13, 2020. *U.S. Department of Commerce Secretary Wilbur Ross and U.S. Census Bureau Director Steven Dillingham Statement on 2020 Census Operational Adjustments Due to COVID-19*, Release Number CB20-RTQ.16. Suitland, MD: DOC Census. Available online at https://www.census.gov/newsroom/press-releases/2020/statement-covid-19-2020.html (accessed September 15, 2020).

[24] *Id.*

of the 2020 Census are sequential. As previously described in the **Background** section of this management alert, data collection must end before the data can be processed. And the time allotted for data processing cannot be truncated beyond a certain point. If the data collection phase were to extend to October 31, 2020, the time needed for the subsequent data processing phase would extend beyond the December 31, 2020, apportionment deadline, thus requiring an extension of the statutory deadline.

After the April 13, 2020, press release, Bureau officials planned to conduct data collection through October 31, 2020. They did so under the belief that a statutory extension to the apportionment date would be forthcoming because there was no resistance to the extension. One senior Bureau official stated, "we got feedback that both sides of both houses of [C]ongress were supportive." Bureau personnel also believed that the Department, and specifically the Secretary, were supportive of this approach. In fact, before the April 13 extension, the Bureau planned to request a 90-day extension, but the Secretary said they should ask for a 120-day extension to account for possible unknowns, like natural disasters.

The announced October 31, 2020, deadline for data collection shifted the Bureau's planned duration for field data collection activities to account for the COVID-19 shutdown. This shift would allow the Bureau to follow the planned operations it had spent a decade developing.

### B.  *It was not the Bureau's decision to accelerate the 2020 Census schedule*

From the publicized schedule extension in April through mid-July of 2020, Bureau officials continued to believe that a statutory extension to the apportionment deadline was forthcoming. Indeed, both the House of Representatives and Senate introduced legislation that would extend the apportionment deadline for the 2020 Census,[25] though only the House of Representatives passed a bill extending this deadline.[26]

By mid-July 2020, several events occurred that led Bureau officials to believe that executive and legislative branch support for a statutory extension may be in doubt. First, the Department began asking Bureau personnel questions about speeding up field operations, although it was not clear to the Bureau if the Department was motivated by accelerating the 2020 Census schedule to satisfy current statutory deadlines or simply completing necessary fieldwork before any further COVID-19 interruptions. Several Bureau officials felt this pressure from the Department. Second, the Bureau did not see continued movement in Congress to extend the statutory deadline. Third, the Office of Management and Budget (OMB) informed the Bureau that OMB was requesting supplemental appropriations from Congress for the Bureau, in part to "maintain timely delivery." The OMB request did not address the schedule extension issue, and OMB's motivation was unclear to Bureau officials. Fourth, the President issued "Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census"

---

[25] *See, e.g.*, Fair and Accurate Census Act, H.R. 7034, 116th Cong., § 2; Fair and Accurate Census Act, H.R. 7974, 116th Cong., § 2; Fair and Accurate Census Act, S. 4048, 116th Cong., § 2.
[26] *See* The Heroes Act, H.R. 6800, 116th Cong., § 70201.

on July 21, 2020.[27] This Presidential Memorandum set forth the Administration's policy to exclude "illegal aliens" from the 2020 Census calculations that allocate Congressional representatives, and directed the Secretary to take all actions that would allow the President to carry out this policy.[28] As one senior Bureau official told our office, "I think that the Presidential Memorandum had to have played some role in -- in changing … what I would say the [A]dministration's policy is … on the deadline." Another official shared that perspective.

Despite these events in mid-July 2020, the Bureau was not told by Department personnel or external stakeholders that the statutory extension was no longer supported. Nor did the Bureau have an operational plan to meet the December 31, 2020, statutory deadline. According to a senior Bureau official, "[W]e had no plan for … accelerating the schedule at that time." As of mid-July 2020, the Bureau still viewed the statutory extension as necessary in order to conduct the 2020 Census completely and accurately. This view is consistent with previous public statements made by senior Bureau officials that the Bureau would no longer be able to meet the December 31, 2020, statutory deadline.[29]

Then, in the late afternoon of Wednesday, July 29, 2020, a senior Department official told the Bureau to put together options for meeting the apportionment deadline of December 31, 2020, and brief the Secretary on those options on Monday morning, August 3, 2020. Our office heard testimony and reviewed documents demonstrating that the Bureau worked tirelessly over the weekend to analyze its options and devise a plan for meeting the December 31, 2020, apportionment deadline. The Bureau determined that to complete both the data collection and data processing phases by the statutory deadline, it must end field data collection by September 30 instead of October 31, 2020. According to one senior Bureau official:

> [I]f you can't complete the data collection – the input to the census until the end of October, you can't deliver those apportionment counts by the legislative requirement of December 31st. You – you can't do it. There's not enough time in … November and December to put out a quality product with all of the backend processing that has to happen.

The Bureau's analysis, termed the "replan," removed some scheduled operations altogether and streamlined others, creating risks to a complete and accurate count as described below. The Bureau briefed the replan to the Secretary on August 3, 2020, as

---

[27] White House, July 21, 2020. *Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*. Washington, DC: White House. Available online at https://www.whitehouse.gov/presidential-actions/memorandum-excluding-illegal-aliens-apportionment-base-following-2020-census/ (accessed September 15, 2020).

[28] *Id.* at §§ 2–3.

[29] (1) National Congress of American Indians, May 26, 2020. *2020 Census Webinar: Census Bureau Roundtable Discussion* [online]. https://www.youtube.com/watch?v=F6IyJMtDDgY (accessed September 17, 2020); and (2) U.S. Census Bureau, July 8, 2020. *Operational Press Briefing – 2020 Census Update*. Available online at https://www.census.gov/content/dam/Census/newsroom/press-kits/2020/news-briefing-program-transcript-july8.pdf (accessed September 17, 2020).

requested. It was the impression of a senior Bureau official that if the plan was feasible, it would be adopted. According to Bureau officials at the meeting, the Secretary reacted favorably to the replan and gave the impression that it should be executed.  Later that day, the Bureau issued the press release announcing the acceleration of the 2020 Census schedule.[30]

The decision to accelerate the 2020 Census schedule was not made by the Bureau. Senior career officials at the Bureau perceived that this decision resulted from the Administration no longer supporting the schedule extension, but ultimately they lacked visibility into this decision process. Bureau leaders continued to believe that the statutory extension was preferable, and would give the Bureau the best chance to create a high-quality, usable census. A statutory extension would permit the Bureau to adhere, as closely as practicable, to the 2020 Census plan it developed over a decade instead of the replan it developed over a weekend. However, a senior official acknowledged, "we at the Census Bureau … were bound by the statute … in developing and executing the best possible plan to deliver the results according to the schedule set up by the [C]ongress."

> *A statutory extension would permit the Bureau to adhere, as closely as practicable, to the 2020 Census plan it developed over a decade instead of the replan it developed over a weekend.*

## II.  The Accelerated Schedule Increases the Risks to Obtaining a Complete and Accurate 2020 Census

Based on our review of Bureau and Department documents, as well as interviews with senior Bureau officials, we found that the accelerated schedule increases the risks to the accuracy of the 2020 Census. This was the consensus view of the senior Bureau officials we interviewed. The accelerated replan increases risks to both phases of the 2020 Census—i.e., data collection and data processing.

### A.  *The accelerated timeline for data collection increases risk that the Bureau may not collect sufficient data for an accurate and complete count*

Under the accelerated replan, the time set aside for NRFU went from approximately 80 days to approximately 56 days.[31] Other changes to data collection included reducing certain contact attempts from six to one, such as contact attempts to housing units with conflicting information.

We found that senior Bureau officials believed that the largest risk to data collection posed by the accelerated plan was the decreased time to recover from possible external contingencies affecting local areas or regions. As one senior official put it, there is no "time to spare in the operations anymore." This risk exists despite efforts to mitigate

---

[30] Release Number CB20-RTQ.23 (August 3, 2020, Census Bureau press release).

[31] These numbers are approximate because some NRFU operations were started earlier under the accelerated replan. It should also be noted that the self-response option stays open until the end of data collection.

the condensed schedule, such as awards to enumerators for increased productivity and maximizing the in-use time for devices in the field.[32] One of the biggest threats mentioned was weather—including hurricanes—and the possibility of shutdowns from COVID-19. As one senior official stated, "One of the big concerns right now obviously is whether we can get out of the field by September 30th because, you know, we don't usually do field work for the census during hurricane season. And … you do that for a reason." The senior official continued that "there's no time in the schedule to recover from a really major storm that affects a large number of … housing units." Multiple officials expressed concern about natural disasters that could prevent the completion of data collection by September 30, 2020—i.e., shutdowns in operations or in communities due to COVID-19; wildfires out West; or an earthquake.

The accelerated schedule raises risk besides the potential for natural disasters. As one official explained, the Bureau "no longer [has] the runway" of time to correct discovered errors through re-enumeration, as was necessary in the field portion of the 2010 and 2000 Censuses.

> *The Bureau "no longer [has] the runway" of time to correct discovered errors through re-enumeration.*
>
> As described by one **senior Bureau official**

Given this accelerated schedule, the Bureau views "resolving" or "completing" at least 99 percent of housing units in every state, at the end of data collection, to be an acceptable level of accuracy and completeness.[33] "Resolving" or "completing" a housing unit means determining: (1) whether it is in-fact a housing unit; (2) whether it is occupied or vacant; and (3) how many people live there and their basic census characteristics. The 99 percent resolution rate is based on the resolution rates achieved in the fieldwork of the 2010 and 2000 Censuses. Bureau officials expressed confidence that the Bureau could reach the 99 percent figure by the end of data collection.

---

[32] Release Number CB20-RTQ.23 (August 3, 2020, Census Bureau press release).

[33] DOC Census Bureau, August 17, 2020. *Review of 2020 Operational Plan Schedule.* Suitland, MD: DOC Census, p. 9. Available online at https://2020census.gov/content/dam/2020census/materials/news/2020-operational-plan-schedule-review.pdf (accessed September 15, 2020).

Senior Bureau officials do not know what will occur if the 99 percent target is not met by September 30, 2020. If the goal is not reached by that date, a decision must be made to either continue data collection to meet 99 percent completeness in every state (and achieve an acceptable level of accuracy and completeness) or cease data collection. There are risks either way. If data collection ends before 99 percent completeness is met in every state, the Bureau will not achieve what it views as an acceptable level of accuracy and completeness. But, if data collection extends beyond September 30, 2020, that will either further condense an already compressed schedule for data processing—which carries its own risks—or the Bureau will miss the December 31, 2020, statutory deadline. According to several senior Bureau officials, the Bureau will miss the December 31, 2020, deadline if data collection goes beyond September 30, 2020.

> *Senior Bureau officials do not know what will occur if the 99 percent target is not met by September 30, 2020. If the goal is not reached by that date, a decision must be made to either continue data collection to meet 99 percent completeness in every state (and achieve an acceptable level of accuracy and completeness) or cease data collection. There are risks either way.*

B. *The streamlined data processing under the accelerated plan poses a myriad of risks to accuracy and completeness*

The accelerated replan announced on August 3, 2020, "streamlined"[34] the data processing component of the 2020 Census. The Bureau determined that to meet the December 31, 2020, deadline, as the Department asked, data processing must begin October 1, 2020. That, in turn, shortened the time that the Bureau had to process the data from 150 days to 90 days. One official described the accelerated processing this way: the Bureau now has "a plan in place that would enable us to get the processing done by December 31st. The plan has taken out some operations and streamlined others. It has an element of increased risk over the plan that we've spent the decade designing." Several senior Bureau officials thought the streamlined data processing portion of the replan posed the greatest risk to the 2020 Census, with one official calling it the Bureau's "biggest concern" and "the most vulnerable to risk." One official represented that it was the consensus view of the Bureau's career staff that the accelerated processing schedule will negatively impact the accuracy of the 2020 Census. The official continued that "[o]nce you start to cut quality assurance programs … you assume that will have a negative impact on accuracy."

Senior Bureau officials identified several risks in the data processing phase. One risk is that the processing time has been so compressed that if an error is found, and a program needs to be started again, the Bureau may not be able to do so and still meet the December 31, 2020, statutory deadline. As one official explained, "all these changes squeeze out all of the … slack that was in the schedule that is there for a reason

---

[34] Release Number CB20-RTQ.23 (August 3, 2020, Census Bureau press release).

because we often encounter, you know, oddities … problems that need to be solved." This official gave the following overview, given that the census is only conducted once a decade:

> it's not like a lot of [the Bureau's] other processes or the data processing where [the Bureau is] doing it all the time …. So the kinks are worked out … we typically have some … instances in … processing a census where some oddities show up in the data or some errors … in coding or something like that, that … requires someone to investigate the problem, diagnose the problem, fix the thing, and then rerun, … to correct the errors … those often are not known beforehand. And so, typically when … we're done in the field in July and, you know, at worst, early August … that gives us enough time … if there are those problems, to make sure they get fixed … but what we have now for the backend schedule is staff are working weekends, holidays … the schedule is completely crashed. And if you have one of these things … it may be difficult to recover from and keep us on the critical path to getting done by 12/31.

> *"[T]he schedule is completely crashed."*
>
> As described by one **senior Bureau official**

In addition, certain planned data processing reviews have been shortened or removed entirely. One official described the risks from the streamlined processing this way: "the processes … that were … abbreviated or eliminated were things that the Census Bureau had developed and put into plan … because it in fact … makes the census more accurate." The official continued that those reviewers are people who are "very intimately … knowledgeable of the data, … and not just the data in the sort of a general processing sense, but many of those reviews take place with people who are very close … to the small area data." Such reviews have in the past helped the Bureau gain geographic accuracy. The senior official warned that while the Bureau does not expect one of the eliminated reviews to find many errors, that review did find errors in the 2000 and 2010 Censuses.

## III. Conclusion

The COVID-19 pandemic prevented the Bureau from implementing its decade of planning for the 2020 Census. The April 2020 extension to the 2020 Census schedule acknowledged these realities and attempted to mitigate for lost time. However, we found that when that schedule was subsequently accelerated in August 2020, the decision came from outside the Bureau and further increased the risks to the accuracy and completeness of the 2020 Census.

# Appendix A: Related Congressional Correspondence

RICHARD C. SHELBY, ALABAMA, CHAIRMAN

MITCH McCONNELL, KENTUCKY
LAMAR ALEXANDER, TENNESSEE
SUSAN M. COLLINS, MAINE
LISA MURKOWSKI, ALASKA
LINDSEY GRAHAM, SOUTH CAROLINA
ROY BLUNT MISSOURI
JERRY MORAN, KANSAS
JOHN HOEVEN, NORTH DAKOTA
JOHN BOOZMAN, ARKANSAS
SHELLEY MOORE CAPITO, WEST VIRGINIA
JOHN KENNEDY, LOUISIANA
CINDY HYDE-SMITH, MISSISSIPPI
STEVE DAINES, MONTANA
MARCO RUBIO, FLORIDA
JAMES LANKFORD, OKLAHOMA

PATRICK J. LEAHY, VERMONT
PATTY MURRAY, WASHINGTON
DIANNE FEINSTEIN, CALIFORNIA
RICHARD J. DURBIN, ILLINOIS
JACK REED, RHODE ISLAND
JON TESTER, MONTANA
TOM UDALL, NEW MEXICO
JEANNE SHAHEEN, NEW HAMPSHIRE
JEFF MERKLEY, OREGON
CHRISTOPHER A. COONS, DELAWARE
BRIAN SCHATZ, HAWAII
TAMMY BALDWIN, WISCONSIN
CHRISTOPHER S. MURPHY, CONNECTICUT
JOE MANCHIN, III, WEST VIRGINIA
CHRIS VAN HOLLEN, MARYLAND

SHANNON HUTCHERSON HINNES, STAFF DIRECTOR
CHARLES E. KIEFFER, MINORITY STAFF DIRECTOR

**United States Senate**
COMMITTEE ON APPROPRIATIONS
WASHINGTON, DC 20510-6025
http://appropriations.senate.gov

August 10, 2020

Inspector General Peggy E. Gustafson
U.S. Department of Commerce
Office of the Inspector General
1401 Constitution Ave. NW
Washington, DC 20230

Dear Inspector General Gustafson:

I write to express my concerns about the U.S. Census Bureau's expedited schedule for 2020 Decennial Census data collection and processing operations announced in an August 3, 2020, statement.[1]  I am very worried that the rushed schedule will lead to a significant undercount in hard-to-count communities, which puts the accuracy and quality of the Constitutionally-mandated count at risk.  Further, I believe that this deviation in schedule is driven not by expert opinions of career Census Bureau employees but by external pressure from the White House and the Department of Commerce for perceived political gain.  I request that you investigate whether the decision to expedite operations comports with the statutory requirements under title 13, U.S. Code.  I also ask that as the data collection and processing operations unfold, you continue to monitor and assess changes from both the original and April 2020 pandemic-adjusted Decennial Census operational plans and schedules that might impact data quality and, ultimately, the accuracy of the results.

The COVID-19 pandemic has understandably necessitated modification of the original 2020 Decennial Census schedule.  The largest and most important field data collection operation, nonresponse followup, was originally scheduled to take place from May 13 to July 31, 2020.  However, due to the pandemic, Census Bureau Director Steven Dillingham and Secretary of Commerce Wilbur Ross released a joint statement on April 13, 2020, announcing that the Census Bureau would delay field operations, including nonresponse followup, by three months to protect public health.  The release states: "The Census Bureau would extend the window for field data collection and self-response to October 31, 2020."[2]  As part of the statement, Secretary Ross and Director Dillingham also requested a four-month delay in the statutory deadlines for reporting apportionment and redistricting counts to no later than April 30, 2021, and July 31, 2021, respectively.

---

[1] "Statement from U.S. Census Bureau Director Steven Dillingham: Delivering a Complete and Accurate 2020 Census Count," U.S. Census Bureau, 3 August 2020, https://www.census.gov/newsroom/press-releases/2020/delivering-complete-accurate-count.html.
[2] "U.S. Department of Commerce Secretary Wilbur Ross and U.S. Census Bureau Director Steven Dillingham Statement on 2020 Census Operational Adjustments Due to COVID-19," U.S. Census Bureau, 13 April 2020, https://2020census.gov/en/news-events/press-releases/statement-covid-19-2020.

However, over the past several weeks it was widely reported in the press that the Trump Administration was looking to rush 2020 Decennial Census operations in order to allow the Secretary of Commerce to transmit the apportionment counts to the president by December 31, 2020.[3]  Then, on August 3, 2020, Director Dillingham announced that field data collection and self-response operations will be shortened by a month, ending on September 30, 2020.  I fear that compressing these critical operations will force the Census Bureau to reduce the number of attempts to enumerate households and significantly increase the use of administrative records, proxy interviews and whole household imputations.  The greater use of enumeration methods that are known to produce less reliable data could lead to a substantial undercount, especially in historically hard-to-count communities.

Director Dillingham also announced that data processing operations will be "streamlined."  This clearly suggests that quality check, data processing and external review operations, which were originally expected to take about five months, will have to be compressed by several months and curtailed to meet the December 31, 2020, deadline.  Given that most data collection operations will occur long after the April 1, 2020, Census Day due to pandemic-related disruptions and delay, careful quality check and data processing activities will be particularly important to ensure that individuals are counted in the correct location and duplicates are removed.

Previous statements from career Census Bureau leadership lead me to believe that this new, rushed schedule is not based on the need to execute a complete and accurate count, but instead on external pressure.  For the past several months, Census Bureau experts consistently have made clear that additional time provided by delaying the statutory deadlines is needed for a successful count.  In May, Tim Olson, director of field operations for the 2020 Decennial, stated, "We have passed the point where we could even meet the current legislative requirement of Dec. 31…We can't do that anymore."[4]  In July, Albert Fontenot, Jr., associate director for Decennial Census Programs, said in reference to the statutory deadlines, "We are past the window of being able to get those counts by those dates at this point."[5]  Further, Bureau experts believe that the results of accelerating the data collection operations under current conditions could be disastrous.  An unnamed career official stated, "I'm very fearful we're going to have a massive undercount."[6]

It is critical that the Census Bureau execute a complete and accurate 2020 Decennial Census for the purposes of apportionment of the House of Representatives, as well as distribution of $1.5 trillion annually in Federal funding to States, localities, individuals and businesses.  I request that the Department of Commerce (DOC) Office of Inspector General

---

[3] Wines, M. (2020, July 28). New Census Worry: A Rushed Count Could Mean a Botched One. *New York Times*, https://www.nytimes.com/2020/07/28/us/trump-census.html
[4] Lo Wang, H. (2020, May 27). 'We're Running Out Of Time': Census Turns To Congress To Push Deadlines. *National Public Radio*, https://www.npr.org/sections/coronavirus-live-updates/2020/05/27/863290458/we-re-running-out-of-time-census-turns-to-congress-to-push-deadlines
[5] Lo Wang, H. (2020, July 28) Republicans Signal They're Willing To Cut Census Counting Short, *National Public Radio*, https://www.npr.org/2020/07/28/895744449/republicans-signal-theyre-willing-to-cut-short-census-counting
[6] Lo Wang, H. (2020, July 30). Census Door Knocking Cut A Month Short Amid Pressure To Finish Count. *National Public Radio*, https://www.npr.org/2020/07/30/896656747/when-does-census-counting-end-bureau-sends-alarming-mixed-signals

(OIG) investigate whether compressing data collection and processing operations comports with the relevant statutory requirements, as well as traditional lines of authority for making relevant decisions governing the execution of the Decennial Census. Further, I request that the OIG continue to closely monitor and assess the implications of operational "streamlining" and changes to the April 13, 2020, Decennial Census operational plan for data quality and accuracy. I ask that you report periodically on your findings to the Senate and House Committees on Appropriations, the House Committee on Oversight and Reform and the Senate Committee on Homeland Security and Governmental Affairs.

The OIG plays a crucial role in informing Congress and the public of Census Bureau operations. The OIG has received $3,556,000 in each of fiscal years 2019 and 2020 by transfer from the Census Bureau to carry out investigations and audits related to the 2020 Decennial Census. I appreciate the work of the OIG thus far to help improve the planning, execution and outcome of the Census. I expect DOC employees to fully cooperate and assist the OIG, in this, and all other investigative matters. I request that you keep me and my staff informed of any attempts to prevent you from completing your work in direct contravention of the Inspector General Act of 1978. I look forward to the results of your investigation.

Sincerely,

Jeanne Shaheen

Jeanne Shaheen
Vice Chair
Subcommittee on Commerce,
          Justice, Science and Related Agencies

NITA M. LOWEY, NEW YORK, CHAIRWOMAN

MARCY KAPTUR, OHIO
PETER J. VISCLOSKY, INDIANA
JOSÉ E. SERRANO, NEW YORK
ROSA L. DeLAURO, CONNECTICUT
DAVID E. PRICE, NORTH CAROLINA
LUCILLE ROYBAL-ALLARD, CALIFORNIA
SANFORD D. BISHOP, JR., GEORGIA
BARBARA LEE, CALIFORNIA
BETTY McCOLLUM, MINNESOTA
TIM RYAN, OHIO
C. A. DUTCH RUPPERSBERGER, MARYLAND
DEBBIE WASSERMAN SCHULTZ, FLORIDA
HENRY CUELLAR, TEXAS
CHELLIE PINGREE, MAINE
MIKE QUIGLEY, ILLINOIS
DEREK KILMER, WASHINGTON
MATT CARTWRIGHT, PENNSYLVANIA
GRACE MENG, NEW YORK
MARK POCAN, WISCONSIN
KATHERINE M. CLARK, MASSACHUSETTS
PETE AGUILAR, CALIFORNIA
LOIS FRANKEL, FLORIDA
CHERI BUSTOS, ILLINOIS
BONNIE WATSON COLEMAN, NEW JERSEY
BRENDA L. LAWRENCE, MICHIGAN
NORMA J. TORRES, CALIFORNIA
CHARLIE CRIST, FLORIDA
ANN KIRKPATRICK, ARIZONA
ED CASE, HAWAII

KAY GRANGER, TEXAS
HAROLD ROGERS, KENTUCKY
ROBERT B. ADERHOLT, ALABAMA
MICHAEL K. SIMPSON, IDAHO
JOHN R. CARTER, TEXAS
KEN CALVERT, CALIFORNIA
TOM COLE, OKLAHOMA
MARIO DIAZ-BALART, FLORIDA
TOM GRAVES, GEORGIA
STEVE WOMACK, ARKANSAS
JEFF FORTENBERRY, NEBRASKA
CHUCK FLEISCHMANN, TENNESSEE
JAIME HERRERA BEUTLER, WASHINGTON
DAVID P. JOYCE, OHIO
ANDY HARRIS, MARYLAND
MARTHA ROBY, ALABAMA
MARK E. AMODEI, NEVADA
CHRIS STEWART, UTAH
STEVEN M. PALAZZO, MISSISSIPPI
DAN NEWHOUSE, WASHINGTON
JOHN R. MOOLENAAR, MICHIGAN
JOHN H. RUTHERFORD, FLORIDA
WILL HURD, TEXAS

SHALANDA YOUNG
CLERK AND STAFF DIRECTOR
(202) 225-2771

## Congress of the United States
### House of Representatives
### Committee on Appropriations
### Washington, DC 20515-6015

August 21, 2020

Inspector General Peggy E. Gustafson
U.S. Department of Commerce
1401 Constitution Ave NW
Washington, D.C. 20230

Dear Inspector General Gustafson:

I write to express my deep concerns regarding the Department of Commerce's conduct around the 2020 Decennial Census operation and potential external pressures to expedite the U.S. Census Bureau's ("the Bureau") schedule outside of the recommendations of senior career professional staff. I request the Office of Inspector General (OIG) examine the timing and justification for decisions around the various schedules consistent with your authorities under the Office of Inspector General Act of 1978.

Several actions taken by the Department in the past several weeks raise serious concerns about the integrity and accuracy of the 2020 Census. For example, due to the challenges resulting from the novel coronavirus pandemic in early 2020, the Associate Director of Decennial Census Programs and the Associate Director of Field Operations repeatedly informed congressional staff on weekly phone calls that the Bureau would need to continue its field operations, specifically Non-Response Follow-up, until October 31, 2020 to ensure an accurate count and to ensure the health and safety of those conducting the enumeration as well as the public. Further, these career staff communicated that it was simply no longer possible for the Bureau to finish its operations and report initial results by the December 31, 2020 statutory deadline. However, despite the rising number of coronavirus cases this summer and passage by the House of Representatives of a measure that would allow for statutory deadline extensions[1], as initially requested by the Department, it is my understanding that the Secretary subsequently requested that the Bureau develop a new plan to comply with statutory deadlines. This request was made only after the

---

[1] The House of Representatives took immediate action and included this request to shift the decennial statutory deadlines as part of the HEROES Act (H.R. 6800, Sec. 70201). Additionally, the HEROES Act included an additional $400 million to allow the Bureau to address any additional issues that may arise through the remainder of the 2020 Decennial Census operation.

Gustafson – Department of Commerce / Decennial Census
Page 2

arrival of two new political appointees in mid-July and the issuance of the Presidential
Memorandum on July 21, 2020. The revised plan abandons the Department's prior proposal for
legislative relief that would result in a four-month delay in the completion of the 2020 Decennial
Census[2]. Additionally, as part of this new effort, the Administration communicated a $1 billion
supplemental funding request to support this expedited schedule. However, this communication
was sent only to Majority staff of the Senate Appropriations Committee, rather than to all
relevant House and Senate Appropriations staff.

It appears that in the three months after the House passage of a statutory extension and the arrival
of now three[3] new political appointees, rather than working with the Senate to support the
legislative action taken by the House, the Administration opted to work on a plan to
unnecessarily expedite the Bureau's revised schedule, against the recommendations of senior
career staff.

I would like to further note that the compressed schedule will also force a shortened timeframe
for data processing, ultimately cutting that time in half, compared to both the Bureau's original
and initial revised plans. I am gravely concerned that a compressed timeline will greatly impact
the quality of data used to ensure an accurate and complete count which will inform
congressional apportionments, legislative redistricting, and future Federal spending. It is deeply
troubling that this Administration appears to be politicizing the Bureau's operation – one that
was a decade in the making. These actions jeopardize our ability to ensure an accurate count,
especially for hard-to-count communities.

I request that the Office of Inspector General review: the process used to arrive at the revised
schedule announced on August 3rd, 2020 to ensure the proposed changes were and are absent
political considerations, whether these changes were made after intervention from political
appointees at the Department or from individuals employed at the White House, and if partisan
influence impacted communications with Congress about these proposed changes and associated
funding needs. Additionally, I request that the OIG examine the Bureau's efforts to uphold the
highest standards for data quality and analyze whether a compressed schedule interferes with the
Bureau's ability to ensure data quality. Lastly, I request that the OIG determine whether any
violations of law, regulation, or policy occurred as a result of actions taken at the Department
concerning the 2020 Census since July 1, 2020.

Thank you for your attention to this important matter. I appreciate the work the OIG has done
toward ensuring transparency in the 2020 Decennial operation and trust that DOC employees
will assist you in your investigation. However, I would ask that you swiftly notify us if there are
any attempts to contravene your efforts. I further ask that you periodically update the House and

---

[2] Under 13 USC 141(b), the Secretary of Commerce is required to complete and report to the President within 9
months after the decennial census date (defined as the first day of April) the tabulation of the total population by
State as required for apportionment of the Representatives in Congress among the several States. The legislation
requested by the Administration in early April 2020 extended that deadline for the 2020 Census to 13 months after
the census date of April 1, 2020.
[3] Lo Wang, H. (2020, August 17). Amid Partisan Concerns Another Trump Appointee Joins Census Bureau Top
Ranks. *National Public Radio,* https://www.npr.org/2020/08/17/903222947/amid-partisan-concerns-another-trump-
appointee-joins-census-bureaus-top-ranks.

Gustafson – Department of Commerce / Decennial Census
Page 3

Senate Committees on Appropriations, as well as the House Oversight and Reform and Senate
Homeland Security and Governmental Affairs Committees on your findings.

Sincerely,

José E. Serrano
Chairman
Subcommittee on Commerce, Justice, Science, and
Related Agencies