LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Amit Makker (Bar No. 280747)
    amit.makker@lw.com
  Shannon D. Lankenau (Bar No. 294263)
    shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415.391.0600
Facsimile:  415.395.8095

LATHAM & WATKINS LLP
  Richard P. Bress (*pro hac vice*)
    rick.bress@lw.com
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
  Anne W. Robinson (*pro hac vice*)
    anne.robinson@lw.com
  Tyce R. Walters (*pro hac vice*)
    tyce.walters@lw.com
  Genevieve P. Hoffman (*pro hac vice*)
    genevieve.hoffman@lw.com
  Gemma Donofrio (*pro hac vice*)
    gemma.donofrio@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone:  202.637.2200
Facsimile:  202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
  Kristen Clarke (*pro hac vice* forthcoming)
    kclarke@lawyerscommittee.org
  Jon M. Greenbaum (Bar No. 166733)
    jgreenbaum@lawyerscommittee.org
  Ezra D. Rosenberg (admitted *pro hac vice*)
    erosenberg@lawyerscommittee.org
  Dorian L. Spence (*pro hac vice* forthcoming
    dspence@lawyerscommittee.org
  Ajay P. Saini (admitted *pro hac vice*)
    asaini@lawyerscommittee.org
  Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
  Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Additional counsel and representation
information listed in signature block*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al., | CASE NO.  5:20-cv-05799-LHK |
| Plaintiffs, | **PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS** |
| v. | |
| WILBUR L. ROSS, JR., et al., | Date:    TBD |
| Defendants. | Time:    TBD<br>Place:   Courtroom 8<br>Judge:  Hon. Lucy H. Koh |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.      INTRODUCTION

Plaintiffs just want Defendants to follow this Court's orders.  Plaintiffs and the public are suffering irreparable injury every day that Defendants follow an accelerated timeline to finish all data collection and processing by December 31.  Implementation of that timeline should have stopped on September 5 with the Court's TRO.  It has not.  Defendants should have ensured that enumerators and census field supervisors had complete, timely, and accurate information about the need to comply with this Court's orders.  They have not.

The consequence of those failures is rushed completion of field operations in ways that will irretrievably harm the accuracy of the count.  That is because the "target" end date has a direct impact on how non-response follow up (NRFU) is conducted.  Critical operations and metrics are tied to that date.  Defendants know all this.  Yet they still failed to properly and clearly disseminate this Court's orders, admitted that census field supervisors were telling enumerators that data collection would end on September 30, posted on their website the same incorrect September 30 end date for *four days* after the Court's September 24 PI order (and *twenty-three days* after the initial TRO ruling), and affirmatively adopted a new "target date" to implement the December 31 deadline.  There can be no question that Defendants violated the Court's orders several times over.

Despite that, Plaintiffs remain focused on ensuring that Defendants follow the letter and the spirit of this Court's preliminary injunction order, and that the 2020 Census does not suffer from actions taken by Defendants in the field to meet the rushed deadlines they have been enjoined from enforcing since September 5.  Although this Court has authority to find Defendants in contempt, and to award a broad range of sanctions, Plaintiffs ask for one thing: full compliance.  To that end, and given Defendants' prior violations and general course of conduct in this case, the Court should issue an order (i) compelling compliance with the Court's PI Order, ordering field notification, and amending the PI to prevent further violations, and (ii) requiring Defendants to submit a weekly compliance report to this Court as a measured sanction for violating the Court's orders and to remedy the misinformation and misdirection received in the field as a result of their noncompliance.

## II.    BACKGROUND

From the very beginning of this case, Defendants have exhibited a callous disregard for these proceedings—feigning ignorance, refusing to answer basic questions posed by the Court, acting in an obstructive manner, and failing to comply with this Court's orders.  The Court has already recounted much of this procedural history in its prior orders.  The below is a high-level summary of certain key issues.

***Temporary Restraining Order* ("TRO")**.  Plaintiffs filed suit on August 18, 2020. Because data collection was scheduled to continue until September 30 under the Replan, the parties stipulated to an accelerated briefing schedule that would culminate in a preliminary injunction hearing on September 17.  Dkt. 43.  On August 26, this Court held the first case management conference ("CMC") and, to assess how quickly a ruling was needed on Plaintiffs' preliminary injunction motion, ordered Defendants to provide the date upon which the Bureau planned to wind down field operations.  *See* Dkt. 45 at 2.  A full week later, on September 2, Defendants informed the Court they had already begun winding down field operations—nearly a month before September 30 and three weeks after starting non-response follow up ("NRFU") in most of the country.  Dkt. 63.  This early wind down would have left the Court practically incapable of granting effective relief after the September 17 hearing to which the parties jointly agreed.  With no other options, Plaintiffs moved for a TRO.  Dkt. 66.

On September 5, 2020, after full briefing and argument, this Court granted the TRO. TRO Order at 5, Dkt. 84.  The TRO was based, in part, on Associate Director Fontenot's sworn testimony that the "Census Bureau begins terminating staff as operations wind down, even prior to closeout," that the Bureau had "already begun terminating" staff, and that it "is difficult to bring back field staff once we have terminated their employment."  Fontenot Decl. ¶ 98, Dkt. 81-1..  The TRO enjoined Defendants "from implementing the August 3, 2020 Replan or allowing to be implemented any actions as a result of the shortened timelines in the August 3, 2020 Replan, including but not limited to winding down or altering any Census field operations, until the Court conducts its September 17, 2020 hearing on Plaintiffs' PI motion."  TRO Order at 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1   Three days later, Defendants voluntarily filed a notice of compliance, describing how

2   they were complying with the Court's order.  Specifically, Defendants explained that "[w]ithin

3   two hours" of the TRO, "Defendants transmitted a message to all Regional Directors, Deputy

4   Regional Directors, Assistant Regional Census Managers, Area Mangers, and Area Census

5   Office Managers attaching a copy of the Order" and expressing the need to comply with it.  Dkt.

6   86 at 1.  Defendants attached that notification.  *Id.*  By the next day, Defendants had "transmitted

7   a detailed list of instructions to Regional Directors regarding what steps the field offices must

8   take" to comply—and also attached those documents for the Court's review.  *Id.*

9   However, there was no follow-up that Plaintiffs are aware of—and no indication that the

10   message was actually disseminated to all Census employees.  Around this time, the Court began

11   to receive first a trickle and then a flood of emails and filings from Census employees

12   complaining that there were not being told about the Court's Orders, and that the Census Bureau

13   was not in compliance.

14   The Census Bureau, via the declarations of James Christy, directly acknowledges some of

15   these problems.  In particular, after Plaintiffs and the Court addressed some of the complaints

16   being raised with respect to enumerator terminations, Mr. Christy issued a declaration on

17   September 15, 2020 acknowledging that the Bureau terminated 520 enumerators for "lack of

18   work" on September 7, two days after the TRO.  9/15 Second Christy Decl. ¶ 4.

19   ***Order To Produce The Administrative Record***.  At the same August 26 hearing,

20   "Defendants repeatedly denied the existence of an administrative record."  Nonetheless, the

21   Court instructed Defendants that "[i]f there's an administrative record, it should be produced."

22   At the September 4 TRO hearing, Defendants "reiterated their position that no administrative

23   record existed," but for the first time "disclosed that there were documents considered by agency

24   decisionmakers at the time the Replan was adopted."  Defendants insisted that the court must

25   rule on their threshold arguments before ordering production of the administrative record.  After

26   full briefing, the district court rejected their threshold arguments and ordered a phased initial

27   production.  In particular, the court ordered that the most crucial portions of the administrative

28   record be produced on September 13 and 16, before the September 17 hearing.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1    Defendants did not comply.  On the date of the first production, Defendants reviewed

2  only 25% of the responsive documents, stopped that review 12 hours short of the deadline,

3  claimed privilege over the vast majority of the documents, and later informed the court they

4  would be unable to meet the second deadline as well.  This Court found Defendants' failure to

5  comply with its order "unacceptable," and appropriate grounds for "sanctions."  Dkt. 132 at 8.

6  But the Court noted that "Plaintiffs do not ask the Court to sanction Defendants at this time."  *Id.*

7  So rather than sanction Defendants and order the record produced immediately, the Court instead

8  allowed them to produce a subset of the record (for purposes of the preliminary injunction)

9  comprising only those documents previously provided to OIG.  *Id.* at 8-10.

10    ***Order Extending TRO***.  Because of "Defendants' violation of the Court's Order to

11  Produce the Administrative Record," this Court held that a short extension of the TRO was

12  necessary.  Dkt. 142 at 17.  And, on September 17, the Court extended the TRO until a decision

13  on the preliminary injunction motion or through September 24, whichever came earlier.  *Id.*

14    Defendants chose not to submit any voluntarily notice of compliance.  After being

15  ordered to do so, Defendants reported that James Christy, the Assistant Director of Field

16  Operations sent a notification to Regional Directors and "Senior Staff in the Field Directorate" of

17  the Court's order, which he attached to the email along with the Guidance previously sent, and

18  had a conference call with "regional data collection managers" to "explain the extension" and

19  "emphasize that the previous guidance remained in effect."  And Mr. Christy instructed them to

20  communicate with Area Census Office managers.  Dkt. 234-1 ¶¶ 9-10.  But again, there was no

21  follow-up that Plaintiffs are aware of, and the flood of emails and filings from Census employees

22  complaining that there were not being told about the Court's Orders, and that the Census Bureau

23  was not in compliance, continued.

24    ***Order Granting Plaintiffs' Motion for Stay and Preliminary Injunction***.  On September

25  24, the Court issued its order granting Plaintiffs' motion for stay and preliminary injunction ("PI

26  Order").  PI Order, Dkt. 208.  The Court ordered that the "August 3, 2020 Replan's September

27  30, 2020 deadline for the completion of data collection and December 31, 2020 deadline for

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

reporting the tabulation of the total population to the President are stayed," and Defendants "are enjoined from implementing these two deadlines." *Id.* at 78.

Again, Defendants chose not to file a voluntary statement of compliance. After being ordered to do so, Mr. Christy provided a declaration that makes no mention of any written notification or guidance being provided to the field. *See* Dkt. 234-1. Instead, Mr. Christy states that the next morning he "joined a conference call" with "regional data collection managers" to "discuss" the order and "confirm that it stayed the Replan's September 30 deadline for the completion of data collection, and to let staff know they should continue working on the NRFU operation." *Id.* ¶ 11. The agenda from that call that Mr. Christy attaches says nothing about the PI Order. *See* Dkt. 234-2 at Attach. 4. Mr. Christy also states that, five hours later, he "sent an email to all managers working on field operations at Headquarters and in the regions . . . notifying them of our intent to comply with the Court's Preliminary Injunction" and instructing them to "continue to conduct [NRFU] and other field operations as planned." Dkt. 219-1 ¶ 3; Dkt. 234-1 ¶ 12. Later that day, Mr. Christy "briefed" the "Regional Directors" and "Chief of Field Division" about the PI, "emphasizing the stay of the Replan's September 30 deadline and that [he] was awaiting additional guidance." *Id.* ¶ 13. And he "directed" them to "continue to complete" NRFU and said he would "forward information as soon as it was available." *Id.* Judging by Mr. Christy's silence, no additional guidance or information was provided.

***October 5 "Target Date" Tweet***. On September 28, just a few minutes before the beginning of the CMC, Defendants tweeted that the Bureau had set October 5 as the "target date" for the conclusion of self-response and all field operations. Defendants did not warn Plaintiffs or the Court that they intended to take this action. Nor did they provide any information as to when they would begin to terminate enumerators, reduce the quality of operations, and close out offices in reliance on this new "target date"—or indicate whether they had already done so.

In marked contrast to how Defendants chose to disseminate this Court's orders, Defendants widely broadcast this new "target date" with great precision. Just hours after the tweet, Mr. Christy "instructed staff to send a text message to *all* Decennial field staff (Enumerators and CFSs) that read:

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

> A federal district court issued a preliminary injunction on 9/24. The Census Bureau is complying with the Court's Order which moves the finishing date for NRFU operations after September 30. The Secretary announced today that NRFU operations will finish on October 5. We will post updated guidance on the content locker.

Dkt. 234-1 (\ ¶ 14).

## III.   ARGUMENT

Defendants have violated this Court's orders.  The Court has inherent authority to compel compliance, and also has authority to find Defendants in contempt and/or to issue appropriate sanctions for non-compliance.  Plaintiffs ask the Court to compel full compliance, and to order a weekly compliance report as a sanction for prior noncompliance and to ensure future compliance, but to reserve the more severe remedial options for now in the hope and expectation that Defendants will fully comply without the resort to more severe measures.

### A.   Defendants Have Violated This Court's Orders

For the past several weeks, the Court (and Plaintiffs) have been inundated with communications from Census Field Supervisors and enumerators describing how the Defendants are prematurely curtailing enumeration across the country.[1]  Defendants' response to these complaints has generally been to explain them away as miscommunications or disgruntled employees.  But now, in the light of the evidence of Defendants' continuing to post September 30 as the end of enumerations, and their attempt to skirt the Court's PI Order by ending operations five days later, one can see these complaints were well-founded.

As an initial matter, Defendants must concede that they violated the PI Order by continuing to implement the September 30 Replan deadline as late as September 28, 2020, stating that the "2020 Census will conclude data collection on September 30, 2020."  *See* Census Housing Unit Enumeration Progress by State,

---

[1] The Court has asked the parties to respond to the numerous communications received by the Court from concerned citizens working for the Census Bureau.  *See* Dkts. 100, 215, 220, 221, 224, 229, 238, 255, 258.  Defendants have provided declarations James Christy, the Assistant Director of Field Operations, after investigating the various issues raised regarding compliance with the Court's injunctive orders.  *See* Dkts. 127, 133, 219, 234, 244.

https://2020census.gov/content/dam/2020census/news/daily-nrfu-rates/nrfu-rates-report-09-28.pdf.:



This statement is from the Bureau's own website and on a page that has been updated daily.  Only after Plaintiffs alerted the Court to this violation did Defendants finally remove the September 30 date.  *See* Dkt. 243 ¶ 5.

Defendants must also concede that enumerators and census field supervisors are not and never have been receiving complete, accurate, and timely information about the Court's orders. Defendants' declarations confirm as much.  Certainly, there was not an all-employee text announcement clearly telling employees enumeration should continue through October 31 as under the COVID-19 Plan—in contrast to the text announcing the end of field operations on October 5.  Since Defendants appear to have been using the posted September 30 end date (or the new October 5 date), Plaintiffs believe that otherwise unauthorized "closeout" procedures continued to some degree after the TRO and PI.  Nothing in Defendants' various declarations state that "closeout" did ***not*** continue as it would have under the enjoined deadlines of the Replan.

The communications sent to the Court include numerous Census employee complaints that now make sense.  For example, a supervisor in Texas instructed enumerators that counting would cease by September 30 even *after* the PI Order was issued on September 24, stating that "[e]ven though the courts have made a decision; nothing has changed. Our deadline to count everyone is still September 30, 2020. . . . The facts are, we are still moving forward with original plan to finish by September 30, 2020."  Dkt. 214 at 3.  The Bureau's declarant, Mr. Christy, confirmed this occurred.  *See* Dkt. 219-1 ¶ 6.  This can no longer be explained away as an errant,

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

one-off event, since the Bureau continued to advertise a September 30 end date and was preparing to evade the Court's order with a five-day extension.

Similarly, complaints of employees being prematurely terminated after the injunction are borne out by Defendants' declaration showing that the Bureau terminated 520 enumerators on September 7—two days after the Court's TRO Order—due to "Lack of Work."  Dkt. 133-1 ¶¶ 4, 6.  It appears that it was not until September 16 that Defendants specifically told the field that "lack of work" terminations were enjoined.  Dkt 234-2, att. 1.

Census employees also reported directly to the Court about their concerns over accuracy.  These, too, appear well-founded.  *See* AR DOC_0008779.  Indeed, it is passing strange how Defendants have never explained how they can claim 99% completion in areas where there has been far less time in the field than the COVID-19 Plan and where there are significantly fewer enumerators than planned.  Indeed, the bulk of the employee complaints are from employees in the field who clearly do not believe their areas have been 99% counted already.  Whether each of these employee communications to the Court or to Plaintiffs reveals a direct violation of this Court's orders is something Plaintiffs have not been in a position to fully investigate.  But the examples above confirm a pattern of continuing violations.  See Dkts. 127, 133, 219, 234, 244.

All of this, of course, leads to the most flagrant violation, and the impetus for this Motion:  the Bureau's September 28 "tweet" that October 5 is the new "target date" to end self-response and field operations in order to implement the December 31 deadline.  That announcement was posted on the Bureau's website and texted to *all* census field staff (including enumerators and census field supervisors), who were each told that "NRFU operations will finish on October 5."  And to Plaintiffs' knowledge, Defendants *still* have not rescinded that directive.  This is a highly damaging, deliberate, and continuous violation of the Court's preliminary injunction order.

Indeed, the Court itself stated at the September 29 hearing that it believed, based on the evidence before it at that time, that Defendants are currently in violation of the Court's PI Order:

> From what I can see of what I've looked at, the Defendants are implementing that December 31st deadline by creating this target date of October 5th, and I

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

think that's been enjoined.  And I think a target date for data collection that is predicated on an enjoined date is a violation of my order.

9/29 Tr. at 31:7-12.

The PI Order plainly states that Defendants are "enjoined from implementing" both the September 30 deadline for data collection and the December 31 deadline for reporting the tabulation of total population to the President.  PI Order at 78.  Yet that is precisely what the Bureau's September 28 announcement does.  As the record produced by Defendants makes clear, the October 5 "target date" was selected *in order to meet* the Replan's December 31 end date this Court enjoined.  This is now readily apparent, from materials Defendants previously redacted. *See, e.g.*, Dkt. 256-1 at 1-2 (email exchange between Secretary Ross and Mr. Jarmin); Dkt. No. 233 at 139 (stating that October 5 date was intended to meet an "apportionment delivery date of December 31, 2020").

Yesterday evening, Defendants submitted an unredacted document that shows that Plaintiffs were very right to worry that Defendants' 1-sentence tweet and press release meant a continuation of the truncated timelines enjoined by the Court.  As the Court knows, Defendants mentioned nothing about the enjoined December 31, 2020 deadline when sending out their message about the new end of field operations.  And as highlighted above, the Court flagged that its review of materials before it indicated that Defendants were "implementing that December 31st deadline by creating this target date of October 5th, and I think that's been enjoined."  9/29 Tr. at 31:8-10.  The redacted and now unredacted email exchange with the Secretary of Commerce is stark on this issue:

Ron.S.Jarmin@census.gov> wrote:

Yes sir, we need to finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Thanks

_____
Ron S Jarmin, PhD., Deputy Director

U.S. Census Bureau
o: 301-763-1858 | m: ▓▓
census.gov | @uscensusbureau
Shape your future. START HERE > 2020census.gov

From: Wilbur Ross ▓▓ ▓▓▓▓▓ >
Sent: Monday, September 28, 2020 3:52 PM
To: Ron S Jarmin (CENSUS/DEPDIR FED) <Ron.S.Jarmin@census.gov>; Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Enrique Lamas (CENSUS/DEPDIR FED) <Enrique.Lamas@census.gov>
Cc: Kelley, Karen (Federal) <KKelley@doc.gov>; Steven Dillingham (CENSUS/DEPDIR FED)

ook.office365.com/mail/search/id/AAMkADUzMmZjZmE2LTJkMGUtNDhiYi...   9

<steven.dillingham@census.gov>; Walsh, Michael (Federal) <MWalsh@doc.gov>
Subject: Thank you and question

Thank you for the excellent briefing this afternoon.  As I prepare to make the decision, I would like to make sure that I understood correctly that your team's opinion is that ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Please confirm at your earliest convenience as I understand ▓▓▓ ▓▓▓▓▓▓▓▓  Thank you again.

---

Ron.S.Jarmin@census.gov> wrote:

Yes sir, we need to finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, if requested, unlawful aliens in ICE Detention Centers by 12/31.  Other PM related outputs would be pushed to 1/11/2021.

Thanks

_____
Ron S Jarmin, PhD., Deputy Director

U.S. Census Bureau
o: 301-763-1858 | m: ▓▓
census.gov | @uscensusbureau
Shape your future. START HERE > 2020census.gov

From: Wilbur Ross ▓▓ ▓▓▓▓▓ >
Sent: Monday, September 28, 2020 3:52 PM
To: Ron S Jarmin (CENSUS/DEPDIR FED) <Ron.S.Jarmin@census.gov>; Albert E Fontenot (CENSUS/ADDC FED) <Albert.E.Fontenot@census.gov>; James T Christy (CENSUS/LA FED) <James.T.Christy@census.gov>; Timothy P Olson (CENSUS/ADFO FED) <Timothy.P.Olson@census.gov>; Enrique Lamas (CENSUS/DEPDIR FED) <Enrique.Lamas@census.gov>
Cc: Kelley, Karen (Federal) <KKelley@doc.gov>; Steven Dillingham (CENSUS/DEPDIR FED)

ook.office365.com/mail/search/id/AAMkADUzMmZjZmE2LTJkMGUtNDhiYi...   9

<steven.dillingham@census.gov>; Walsh, Michael (Federal) <MWalsh@doc.gov>
Subject: Thank you and question

Thank you for the excellent briefing this afternoon.  As I prepare to make the decision, I would like to make sure that I understood correctly that your team's opinion is that if we stay in the field beyond October 5, we would not be able to meet the statutory deadline of December 31.  Please confirm at your earliest convenience as I understand you would like to make an announcement today.  Thank you.

---

The unredacted exchange reveals troubling issues about Defendants' plans to currently not count undocumented immigrants in ICE Detention Centers, and brings into question exactly how Defendants are intending to define "completeness."  But for the instant purposes of this TRO—and Defendants' current and continuing violation of the Courts' Order—it shows clear as day that circumventing the Court's Order enjoining the December 31, 2020 date is the driving force behind Defendants' actions.  Ending field operations early so that Defendants can implement the Replan's December 31 deadline plainly violates the Court's order.

Defendants' suggestion that their conduct was merely "contingency planning in the event that that [December 31] deadline comes back into effect," 9/29 Tr. 25:4-6, does not excuse the violation.  It makes it worse.  Defendants were of course free to create as many contingency plans as they wished.  But they were not free to violate the Court's PI Order in the hope that it would be vacated on appeal.  The proposition of law is almost too obvious to state: until this

1   Court's order is stayed or vacated on appeal, Defendants are bound by it.[2]  What Defendants

2   have done is not contingency planning; it is lawlessness.

3          Nor does Defendants' myopic focus on the September 30 date help them.  This case is and

4   has always been about the Replan's accelerated timelines for conducting the 2020 Census.[3]  This

5   Court's decision granting the stay and preliminary injunction was also all about the Replan's

6   accelerated timelines.  As the Court explained, the Replan's timelines shortened the 2020 Census

7   from 71.5 weeks to 49.5 weeks; self-response from 33.5 weeks to 29 weeks; NRFU from 11.5

8   weeks to 7.5 weeks; and data processing from 26 weeks to 13 weeks.  Order Granting Plaintiffs'

9   Motion for Stay and Preliminary Injunction ("PI Order") (Dkt. 208) at 9, 11.  The Court found that

10  this "significant compression" of the timelines is what constituted final agency action.  *Id.* at

11  38.  And the Court held that Defendants violated the APA by adopting this compressed timeline—

12  for five independently sufficient reasons.  *Id.* at 46-74.  The Court's stay and preliminary

13  injunction was intended to remedy those violations.

14         Defendants could not possibly have thought that moving the end date for field operations

15  by *five days* would be consistent with this Court's order.  The overall accelerated timeline

16  remained exactly the same.  And as Defendants' counsel explained previously, shifting the internal

17

---

18  [2] *See Maness v. Meyers*, 419 U.S. 449, 458–60 (1975) ("We begin with the basic proposition that
    all orders and judgments of courts must be complied with promptly.  If a person to whom a court

19  directs an order believes that the order is incorrect the remedy is to appeal, but, absent a stay, he
    must comply promptly with the order pending appeal."); *Pasadena City Bd. of Ed. v. Spangler,*

20  427 U.S. 424, 439 (1976) ("It is for the court of first instance to determine the question of the
    validity of the law, and until its decision is reversed for error by orderly review, either by itself or

21  by a higher court, its orders based on its decision are to be respected, and disobedience of them is
    contempt of its lawful authority, to be punished." (citation omitted)); *United States v. Grant*, 17

22  F.3d 397, at *1 (9th Cir. 1994) (unpublished) ("Absent a stay, district courts have the authority to

23  enforce their orders . . . while an appeal of the underlying enforcement order is pending.").

24
    [3] *See* Compl. (Dkt. 1) ¶ 1 ("This lawsuit challenges the unconstitutional and illegal decision by

25  Secretary of Commerce Wilbur Ross, and Census Bureau (the 'Bureau') Director Steven
    Dillingham, to sacrifice the accuracy of the 2020 Census by forcing the Census Bureau to

26  compress eight and a half months of vital data-collection and data-processing into four and a half
    months, against the judgment of the Bureau's staff and in the midst of a once-in-a-century

27  pandemic."); [Proposed] Order 1 ("The U.S. Census Bureau's August 3, 2020 Plan and
    shortened timeline for accomplishing the 2020 United States Census ("Rush Plan"), is stayed,

28  pursuant to 5 U.S.C. § 705); 9/22/20 Tr. 23:21-24:5 (Dkt. 207) ("So I want to be clear about this.
    Our APA action challenges the timelines in the Replan.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1    dates merely takes from one hand and gives to the other.  9/14 Tr. at 70:23.  The intimation that

2    Defendants were entirely free to stop data collection on October 1 is particularly specious in light

3    of Defendants' repeated and recent statements, in court and under oath, that they *could not* meet

4    the statutory deadline if field operations continue even a day beyond September 30.  *E.g.*, Appeal

5    No. 20-16868, Dkt. 4-1, Stay Mot. 20; Appeal No. 20-16868, Dkt. 4-2, Add.149-50 ¶ 24; Add. 113

6    ¶ 100.  In the words of government counsel, it would be "impossible."  9/8/20 Tr. 9:6-10, Dkt. 98.[4]

7           **B.     This Court Has Inherent Authority To Compel Compliance With Its Orders**

8           The Court has inherent authority to enforce compliance with its orders.  *See Goodyear Tire*

9    *& Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain 'inherent

10   powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly

11   and expeditious disposition of cases.") (internal citations and quotation marks omitted); *Fraihat v.*

12   *U.S. Immigration & Customs Enf't*, No. EDCV191546JGBSHKX, 2020 WL 2758553, at *3 (C.D.

13   Cal. May 15, 2020) ("Courts have inherent authority to monitor and enforce their prior orders."

14   (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  For instance, in *Laflamme v. New*

15   *Horizons, Inc.*, 605 F. Supp. 2d 378 (D. Conn. 2009), a plaintiff who had previously obtained a

16   preliminary injunction argued that the defendant had only slightly changed its behavior and moved

17   for an order to compel compliance.  The district court, noting that it was "apparent that [the

18   parties] continue to disagree," explained that nonetheless the "Court already ruled on that

19   [preliminary injunction] request," and Defendants had made only minor adjustments.  *Id*. at 398.

20   Thus, "[l]est there be any doubt about the effect of this previous ruling," the district court granted

21   the motion "and order[ed] Defendants to comply with the terms" of the injunction.  *Id*. at 399; *see*

22   *also Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, No. C-

23   06-04819, 2011 WL 5403453, at *2-5 (N.D. Cal. Nov. 8, 2011) (granting motion to compel

24

25   ───────────────────

26   [4] And Defendants have affirmatively disavowed the notion that the October 5 "target date" tweet is
     new agency action subject to judicial review.  Which—together with the clear evidence in the

27   documents produced that meeting the enjoined December 31 deadline was the impetus for the
     October 5 "target date"—makes the case law governing the agency's ability to issue new rules in

28   compliance with the APA inapposite.  *See Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 159-65
     (2010).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1  compliance, where party had repeatedly failed to make timely payments of monthly contributions

2  to a trust fund, as required by injunction).

3      Courts have also not hesitated to order the government to comply with existing orders in

4  similar circumstances.  In *International Ladies' Garment Workers' Union v. Donovan*, the D.C.

5  Circuit vacated a rule by the Secretary of Labor, which the Secretary—after unsuccessfully

6  moving for a stay—sought to evade by issuing an "emergency" rule temporarily reinstating the

7  terms of the vacated rule.  733 F.2d 920, 921 (D.C. Cir. 1984).  The plaintiffs "then returned to the

8  District Court, and filed a motion to compel compliance" with the prior decision, and "issue relief

9  enforcing the mandate."  *Id*.  Although the district court believed it lacked authority to do so, the

10  D.C. Circuit disagreed, explaining that the "request for enforcement of the court's mandate"

11  implicates "the interest of the judicial branch in seeing that an unambiguous mandate is not

12  blatantly disregarded by parties to a court proceeding"—an interest "that the District Court

13  certainly was empowered to protect."  *Id*.  And the court emphasized that invocation of this

14  authority "is particularly appropriate in a case such as this where an administrative agency plainly

15  neglects the terms of a mandate."  *Id*.; *see id.* at 923 (noting that "the Secretary has now, in effect,

16  implemented the stay on his own" and "reimplemented precisely the same rule that this court

17  vacated as 'arbitrary and capricious' in its first decision").

18      This Court should similarly compel Defendants to comply with its preliminary injunction

19  motion.  At its most basic, the Court should repeat the scope of its preliminary injunction and order

20  Defendants to follow it.  But given Defendants' prior non-compliance, as well as resulting

21  confusion in the field, the Court should take two additional steps.

22      *First*, the Court should order Defendants to fully, clearly, and immediately communicate

23  the scope of the preliminary injunction order to *all* Decennial field staff (Enumerators and CFSs)

24  by text message.  That is precisely how Defendants chose to alert them of the Secretary's decision

25  to end field operations early, on October 5.  This Court's orders deserve the same expedient and

26  effective response.  *See Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 540-41 (N.D. Cal.

27  2019) (requiring Department of Education to notify class members of noncompliance with

28  injunction); *Al-Adahi v. Obama*, 672 F. Supp. 2d 114, 118 (D.D.C. 2009) (ordering, after

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

government inadvertently failed to tape-record a Guantanamo Bay hearing in violation of injunction, that government must post a transcript of the hearing for public to more easily access).

*Second*, the Court should amend the preliminary injunction going forward to prevent further attempts at circumvention during the limited time remaining to conduct the 2020 Census. In *New York v. United States Department of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), the court vacated Secretary Ross's decision to add a citizenship question to the 2020 Census *and* granted an injunction. The court explained that vacatur alone was insufficient to redress the plaintiffs' injuries for two reasons. *First*, "Secretary Ross could theoretically reinstate his decision by simply reissuing his memorandum under a new date or by changing the memorandum in some immaterial way." *Id.* at 676. An injunction was needed to make the "vacatur effective, as it prevents Secretary Ross from arriving at the same decision without curing the problems identified" in the court's decision. *Id. Second*, an injunction would "make it easier for Plaintiffs to seek immediate recourse," which was "critical" given the expedited timing. *Id.* The court accordingly enjoined the defendants "from adding a citizenship question to the 2020 census questionnaire based on Secretary Ross's" existing "memorandum or based on any reasoning that is substantially similar to the reasoning contained in that memorandum." *Id.* at 676-77. And the court enjoined the defendants from "adding a citizenship question to the 2020 census questionnaire unless the Secretary" remedied the violations found—which the court specifically listed. *Id.* at 677; *see also State v. Ross*, 358 F. Supp. 3d 965, 1050 (N.D. Cal. 2019) (endorsing and adopting the same reasoning). The same relief is warranted here. *See Hoffman ex rel NLRB* v. *Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1275-76 (9th Cir. 1976) (permitting modification of injunction in light of party's failure to comply with terms of injunction prohibiting unfair labor practices).

### C.   This Court Has Authority To Award Sanctions

The "power to punish for contempts is inherent in all courts" and is available for the violation of court orders. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). Indeed, the "underlying concern that gave rise to the contempt power . . . was disobedience to the orders of the Judiciary." *Id.* (brackets and citations omitted). When civil contempt is at issue, the party

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1   moving for a contempt finding bears the burden of showing by clear and convincing evidence

2   that contemnors violated a specific and definite order of the court.  *Calvillo Manriquez v. Devos*,

3   411 F. Supp. 3d 535, 540 (N.D. Cal. 2019) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228,

4   1239 (9th Cir. 1999)).  "The burden then shifts to the contemnors to demonstrate why they were

5   unable to comply."  *Id*.  The standard "is generally an objective one.  We have explained before

6   that a party's subjective belief that she was complying with an order ordinarily will not insulate

7   her from civil contempt if that belief was objectively unreasonable."  *Taggart v. Lorenzen*, 139

8   S. Ct. 1795, 1802 (2019).  Instead, good faith (or the absence thereof) "may help to determine an

9   appropriate sanction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).

10          For all the reasons set forth above, the Court could hold Defendants in contempt for

11   violating "specific" and "definite" orders of the Court.  In fact, this case thus bears an

12   unfortunate resemblance to a recent civil contempt decision in this District.  There the

13   Department of Education, facing an order enjoining it from engaging in certain loan collection

14   efforts, admitted that the Department had erroneously done just that.  *See Calvillo Manriquez v.*

15   *Devos,* 411 F. Supp. 3d 535, 538-39 (N.D. Cal. 2019).  The court found that the Department's

16   "efforts to comply with the preliminary injunction were limited to sending electronic mail

17   messages to their third-party companies that service the loans," many of which did "not even

18   mention the existence of the preliminary injunction."  *Id.*  at 539.  The Department "sent no

19   follow-up emails and took no further action."  *Id.*  Indeed, the Department's compliance report

20   was "silent as to the normal actions one would expect from an entity facing a binding court

21   order: multiple in-person meetings or telephone calls to explain the preliminary injunction and to

22   confirm that the contractors were complying with the preliminary injunction."  *Id.*  Faced with

23   these egregious failures, the court held the Department in contempt.

24          That said, Plaintiffs are not asking the Court to hold Defendants in contempt at this time.

25   Nor is contempt the only sanction available for Defendants' misconduct.  As the Court

26   recognized previously, Defendants' violation of the Court's order to produce the administrative

27   record could have been the basis for sanctions.  Dkt. 132, at 8.  The same is true of Defendants'

28   latest violations of the Court's PI Order.  The Court has inherent authority to impose appropriate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

sanctions for violation of a court order.  *Chambers*, 501 U.S. at 44–46 (citations and internal quotation marks omitted); *see also Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) ("[t]he district court has 'broad fact-finding powers' with respect to sanctions, and its findings warrant 'great deference'" (internal citation omitted)); *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981) (federal courts "possess[] broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices."); *Griffin v. County School Board*, 363 F.2d 206, 210 (4th Cir. 1966) (school board in civil contempt for authorizing distribution of tuition grants, even though grants were distributed before court could act to issue injunction against appropriation, where school board knew that injunction had been sought and acted "to thwart the impact of any adverse decree which might ultimately be forthcoming"); *Merrimack River Savings Bank v. City of Clay Center*, 219 U.S. 527, 535-36 (1911) ("irrespective of any such injunction actually issued the willful removal beyond the reach of the court of the subject-matter of the litigation ... is, in and of itself, a contempt of the appellate jurisdiction of this court").  To grant such relief, the Court need only find "bad faith or conduct tantamount to bad faith," such as where "recklessness [is] combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).  For all the reasons set forth above, Defendants' string of reckless and deliberate violations designed to evade and circumvent this Court's orders warrant such a finding.

But here too, Plaintiffs are not asking the Court to impose severe sanctions.  This Court has broad discretion in how best to shape sanctions.  *See* 1 Sanc. Fed. Law of Lit. Abuse § 28 (2019) ("The court is vested with broad discretion to fashion an appropriate inherent power sanction to redress abusive litigation practices."); *Shepherd v. Am. Broad. Companies, Inc*., 62 F.3d 1469, 1475 (D.C. Cir. 1995) ("[I]nherent power sanctions available to courts include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence.").  Plaintiffs seek a measured and tailored sanction for the sole purpose remedying the

misinformation and misdirection received in the field as a result of Defendants' noncompliance

and to ensure future compliance.  To that end, Plaintiffs request the following:

*First*, Defendants should be required to submit a weekly compliance report to this Court

providing "a detailed explanation of all steps [they] ha[ve] taken to ensure that" the violations

found "shall not occur in the future" and that this Court's order is being complied with.  *Al-Adahi*

*v. Obama*, 672 F. Supp. 2d 114, 118 (D.D.C. 2009).  The reports should track the three

categories of issues enumerators and other field employees have been complaining about: (1) any

communications made to field staff regarding the end date for self-response, field operations, or

data collection more generally; (2) any termination of census employees (enumerators, CFSs,

partnership specialists) for reasons other than cause; and (3) any changes to the operations or

metrics for marking a household unit "complete," including reduction in the number of visits and

earlier use of administrative records.  All three are tied directly to the accelerated timeline and

made necessary by Defendants' repeated attempts to rush enumeration to an early and

incomplete end in violation of the letter and spirit of this Court's orders.  And there is ample

support in the case law for such targeted relief.  *See, e.g.*, *Calvillo Manriquez,* 411 F. Supp. 3d at

538-39 (similar relief in contempt context); *Gayle v. Meade*, --F. Supp. 3d--,  2020 WL 304132,

at \*24 (S.D. Fla. June 6, 2020) (requiring that "ICE shall perform an internal review" each week

and "shall submit weekly reports" on compliance with injunction); *Fraihat v. U.S. Immigr. &*

*Customs Enf't*, No. 19-1546, 2020 WL 2758553, at \*6-7 (C.D. Cal. May 15, 2020) (requiring

government to produce "[r]ecords showing the extent of compliance with the [court's]

preliminary injunction] order to issue a new Performance Standard" for handling ICE detainees

with COVID risk factors and "[r]ecords regarding monitoring and enforcement of facility-wide

compliance" with various COVID plans).

*Second*, given the history of vague assertions, failures to communicate this Court's

orders, and shifting stories as to what is being done to comply, the reports should be

accompanied by a declaration from Census Bureau Director Steven Dillingham unequivocally

confirming ongoing compliance with the Court's order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1

2

3

4

5

6

7

*Third*, Defendants should be required to reopen any cases closed based on reduced operations or metrics (such as reduced contact attempts) tied to the September 30 Replan deadline or the October 5 "target" date.  This relief is an appropriate sanction that is needed to return to the *status quo ante*.  And it parallels this Court's earlier TRO.  That is, if Defendants would not have closed out a household on September 28 under the COVID-19 Plan, but did so based on the October 5 "target date," they must reopen and attempt to accurately enumerate that household.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

| | |
|---|---|
| 1 | Dated: September 30, 2020 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | Dated: September 30, 2020 |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

LATHAM & WATKINS LLP

By: /s/ Sadik Huseny
        Sadik Huseny

Steven M. Bauer (Bar No. 135067)
steven.bauer@lw.com
Sadik Huseny (Bar No. 224659)
sadik.huseny@lw.com
Amit Makker (Bar No. 280747)
amit.makker@lw.com
Shannon D. Lankenau (Bar. No. 294263)
shannon.lankenau@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095

Richard P. Bress (admitted *pro hac vice*)
rick.bress@lw.com
Melissa Arbus Sherry (admitted *pro hac vice*)
melissa.sherry@lw.com
Anne W. Robinson (admitted *pro hac vice*)
anne.robinson@lw.com
Tyce R. Walters (admitted *pro hac vice*)
tyce.walters@lw.com
Genevieve P. Hoffman (admitted *pro hac vice*)
genevieve.hoffman@lw.com
Gemma Donofrio (admitted *pro hac vice*)
gemma.donofrio@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201

*Attorneys for Plaintiffs National Urban League;*
*League of Women Voters; Black Alliance for*
*Just Immigration; Harris County, Texas; King*
*County, Washington; City of San Jose,*
*California; Rodney Ellis; Adrian Garcia; and*
*the NAACP*

By: /s/ Jon M. Greenbaum
Kristen Clarke (*pro hac vice* forthcoming)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (Bar No. 166733)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (admitted *pro hac vice*)
erosenberg@lawyerscommittee.org
Dorian L. Spence (*pro hac vice* forthcoming)
dspence@lawyerscommittee.org
Maryum Jordan (*pro hac vice* forthcoming)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1  mjordan@lawyerscommittee.org
Ajay Saini (admitted *pro hac vice*)
2  asaini@lawyerscommittee.org
Pooja Chaudhuri (Bar No. 314847)
3  pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL**
4  **RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
5  Washington, DC 20005
Telephone:  202.662.8600
6  Facsimile:  202.783.0857

7
*Attorneys for Plaintiffs National Urban League;*
8  *City of San Jose, California; Harris County,*
*Texas; League of Women Voters; King County,*
9  *Washington; Black Alliance for Just*
*Immigration; Rodney Ellis; Adrian Garcia; the*
10  *NAACP; and Navajo Nation*

11  Wendy R. Weiser (admitted *pro hac vice*)
weiserw@brennan.law.nyu.edu
12  Thomas P. Wolf (admitted *pro hac vice*)
wolf@brennan.law.nyu.edu
13  Kelly M. Percival (admitted *pro hac vice*)
percivalk@brennan.law.nyu.edu
14  **BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
15  New York, NY 10271
Telephone: 646.292.8310
16  Facsimile: 212.463.7308

17
*Attorneys for Plaintiffs National Urban League;*
18  *City of San Jose, California; Harris County,*
*Texas; League of Women Voters; King County,*
19  *Washington; Black Alliance for Just*
*Immigration; Rodney Ellis; Adrian Garcia; the*
20  *NAACP; and Navajo Nation*

21  Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
22  **PUBLIC COUNSEL**
610 South Ardmore Avenue
23  Los Angeles, California 90005
Telephone:  213.385.2977
24  Facsimile:  213.385.9089

25
*Attorneys for Plaintiff City of San Jose*
26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice* forthcoming)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: September 30, 2020

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: September 30, 2020

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us
Michael Mutalipassi (Bar No. 274858)
michaelmu@ci.salinas.ca.us
**CITY OF SALINAS**
200 Lincoln Avenue
Salinas, CA 93901
Telephone: 831.758.7256
Facsimile: 831.758.7257

*Attorneys for Plaintiff City of Salinas*

1   Dated: September 30, 2020                    By: /s/ Rafey S. Balabanian
                                                 Rafey S. Balabanian (Bar No. 315962)
2                                                rbalabanian@edelson.com
                                                 Lily E. Hough (Bar No. 315277)
3                                                lhough@edelson.com
                                                 **EDELSON P.C.**
4                                                123 Townsend Street, Suite 100
                                                 San Francisco, CA 94107
5                                                Telephone: 415.212.9300
                                                 Facsimile: 415.373.9435
6

7                                                Rebecca Hirsch (admitted *pro hac vice*)
                                                 rebecca.hirsch2@cityofchicago.org
8                                                **CORPORATION COUNSEL FOR THE
                                                 CITY OF CHICAGO**
9                                                Mark A. Flessner
                                                 Stephen J. Kane
10                                               121 N. LaSalle Street, Room 600
                                                 Chicago, IL 60602
11                                               Telephone: (312) 744-8143
                                                 Facsimile: (312) 744-5185
12

13                                               *Attorneys for Plaintiff City of Chicago*

14
     Dated: September 30, 2020                    By: /s/ Donald R. Pongrace
15                                               Donald R. Pongrace (admitted *pro hac vice*)
                                                 dpongrace@akingump.com
16                                               **AKIN GUMP STRAUSS HAUER & FELD
                                                 LLP**
17                                               2001 K St., N.W.
                                                 Washington, D.C. 20006
18                                               Telephone: (202) 887-4000
                                                 Facsimile: 202-887-4288
19

20                                               Dario J. Frommer (Bar No. 161248)
                                                 dfrommer@akingump.com
21                                               **AKIN GUMP STRAUSS HAUER & FELD
                                                 LLP**
22                                               1999 Avenue of the Stars, Suite 600
                                                 Los Angeles, CA  90067-6022
23                                               Phone:  213.254.1270
                                                 Fax: 310.229.1001
24

25                                               *Attorneys for Plaintiff Gila River Indian
                                                 Community*

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

Dated: September 30, 2020

By: _/s/ David I. Holtzman_
David I. Holtzman (Bar No. 299287)
David.Holtzman@hklaw.com
**HOLLAND & KNIGHT LLP**
Daniel P. Kappes
Jacqueline N. Harvey
50 California Street, 28th Floor
San Francisco, CA 94111
Telephone: (415) 743-6970
Fax: (415) 743-6910

*Attorneys for Plaintiff County of Los Angeles*

## ATTESTATION

I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

Dated: September 30, 2020

**LATHAM & WATKINS LLP**

By: _/s/ Sadik Huseny_
Sadik Huseny

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS