JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, | Case No. 5:20-cv-05799-LHK |
| Plaintiff, | **DECLARATION OF JAMES T. CHRISTY** |
| v. | |
| WILBUR L. ROSS, JR., *et al.*, | |
| Defendants. | |

I, James T. Christy, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. This is my eighth declaration in this lawsuit. I am making this declaration in response to order ECF 268.

**ECF 268 Investigation**

2. The "[e]mail to court staff dated 09/30/2020," ECF No. 268, is from a former Census Field Manager who worked on the Group Quarters operations and raised questions about the Service-Based Enumeration (SBE) and Enumeration at Transitory Locations (ETL) operations.

3. There is no alleged violation of the Court's Ordered Preliminary Injunction because the schedule, plans, and activities for the Group Quarters (GQ) activities—including the SBE and ETL operations—have remained unchanged from the COVID-19 Plan. These operations were completed as designed and scheduled in the COVID-19 Plan.

4. There are several statements that are incorrect in this email.

5. The complainant makes reference to hotels and motels that function under the "Project Roomkey" program, alleging they were included improperly in the ETL program rather than the SBE. Under the definitions in our Operational Plan for Group Quarters Enumeration, only hotels and motels that have 100% of the people who experience homelessness are considered GQs. Hotels with occupants less than 100% are considered Transitory Locations. When we made advance calls to hotels and motels, we inquired about anyone staying at the location long term or without a usual residence elsewhere. The hotel would have told the ACO that they have individuals with no usual residence elsewhere. Therefore, certain locations were properly included as part of the ETL workload.

6. The complainant claims "the timeframe to research and add additional service based organizations to the workload was cut short as well as the time to canvass for areas where those experiencing homelessness may be temporarily living outdoors." This

allegation is also false.  Our official timeframe for conducting SBE Rescheduling and Targeted Non-Sheltered Outdoor Locations (TNSOL) canvassing was from August 17–September 11, 2020.  That is the planned schedule we updated in the COVID-19 Plan and we never shortened that timeframe.

7. If a GQ was not contacted during this timeframe, the ACO could still reach out to them up until the time of enumeration.  We did not stop allowing additions to SBE until September 22, 2020.  At the time of SBE Rescheduling, the schedule allowed each ACO adequate time to focus on calling these GQs and recanvasing for TNSOLs because regular GQ enumeration was wrapping up or concluded in many areas.

8. The complainant alleges during the SBE activities, "…a directive was given not to canvass additional locations while enumerating which goes against what the instructions have been set out from HQ Census office in Washington."  This is also false.  The Census Bureau provided for the addition of Service Based Enumeration (SBE) locations until September 22, the day before the Temporary Non-Sheltered Outdoor Location (TNSOL) operation began. We added thousands of TNSOLs in the days and weeks leading up to the operation.  Enumerators were tasked with going to these locations at a specific and varying times in order to have a comprehensive inventory of locations before the enumeration began. We worked with local community partners as well as Department of Housing and Urban Development to ensure we included all service providers and outdoor locations. Enumerators working at an outdoor location, such as a specific street or alley, were instructed to count individuals in the general vicinity as defined by the TNSOL guidelines. Some TNSOL constituted large areas—parks, riverbeds, railyards, caves, beach area, etc.  In those cases, when the TNSOL was listed as a single location, the enumerators systematically and methodically worked to count people on each path, alley, or other feature within the area.

**Effect of Responding to Enumerator Emails per the Court's Orders**

9. I have engaged substantial resources, including staff time from numerous areas, to research issues raised by this communication sent to the Court in order to provide researched and valid responses to the Court's orders. I believe it is important to provide accurate and well-considered responses to these concerns, which is what I have done. According to my best estimates, we devoted over 8 staff hours to research this complaint, including verifying procedures, pulling schedules, reconciling inconsistent information, interviewing staff throughout the Nation and producing documentation.

10. Attending to these matters has detracted significantly from my duties as the Assistant Director for Field Operations at the U.S. Census Bureau, and my ability to monitor key operations such as our data quality programs and efforts to ensure fiscal and administrative compliance. These are critical tasks for this phase of the Census.

I have read the foregoing and it is all true and correct.

DATED this _30th__ day of September, 2020

_____

James T. Christy

Assistant Director for Field Operations

United States Bureau of the Census