## Submission regarding Census

stefanie villalobos <stefanievil@gmail.com>
Thu 10/1/2020 9:56 AM
**To:** CAND LHKpo <lhkpo@cand.uscourts.gov>

📎 2 attachments (612 KB)
letter regarding max attempts and administrative data issue .pdf; message regarding falsfifying data per instruction from ACO.pdf;

Please find two attachments concerning information relevant to the current Census case.

RE: Issue of Administrative Records in relation to Reset and Max attempt cases

Dear Judge,

In an effort to provide further information about the Census operations at the Pasadena ACO, a team of Census Field Supervisors and I wish to provide this information and clarification about the gross over use and reliance on Administrative Records by Census offices.

In Mid August, management at multiple levels began to notice that a significant number of cases were removed from the active enumeration list. These cases were flagged as "administrative record cases." While counsel maintains it's the Bureau's right to exercise that authority based on the "high-quality administrative data", he doesn't include in his investigation that Census Field Managers in the Pasadena office wrote to RCC multiple times to express their concerns that such a significant percentage of the cases were coded as "complete as a result of max attempts after one day." They maintained that cases were categorized so in error and that the administrative data wasn't sufficient to properly complete these cases. After several proddings, the RCC decided that the aforementioned "high quality administrative data" would address only some of these cases, while others would be re-released into rotation for enumeration.

Before September 3, 2020, these cases could easily be "reset" by management, which meant that they were released back to enumerators for enumeration. This was common until Labor Day weekend. Management at our ACO was firmly instructed by the RCC that they could no longer reset these cases  (see attached email from OOS Phillip Reilly). Even in instances where respondents approached a census enumerator and asked to be enumerated, management refused this information to be entered, per RCC instructions.  Office staff were at risk of termination for resetting any of these cases.

Does this immediate exercise of high quality administrative data outweigh the data being collected in real time on the ground? Does this practice as articulated seem to yield a fair, accurate, and complete count? Multiple managers agreed this was problematic. Multiple Supervisors came forward pushing the issue, and managers again addressed the issue with the RCC. By their own admission, the RCC agreed that 16,000 households would be released and properly counted. This email regarding the RCC's admission that "high quality administrative data" would evidently not suffice was two weeks ago, and not one step has been taken toward releasing these cases since. Even after acknowledgement from RCC and promising to release these cases for enumeration, the cases continue to sit there, marked as "completed" within the sub-category "Completed by Max Attempt."  Instead of releasing these cases, Pasadena, like other ACO's are aggressively pushing for immediate closure while claiming that our area has or is near their goal of 99.6% completion. They will close the Pasadena ACO within 48 hours (Oct 5 at the latest) and those 16,000 cases will not be properly counted - 16,000 cases for which the high quality administrative records were insufficient.

This is not only in our Pasadena ACO. Each ACO across the country holds thousands of cases in "completed by max attempt." With your extended order, at least 16,000 households (acknowledged by the RCC) in the Pasadena ACO will have their right to be counted.

We respectfully ask that the Court order the Census to release the previously designated "max attempt" cases for a full, fair, complete, and accurate enumeration immediately and to extend the reporting deadline of the Census from December 2020 to April, 2021.





1 message

**Phillip D Riley (CENSUS/PFLD FED)** <phillip.d.riley@2020census.gov>   Thu, Sep 3, 2020
To:

If information was enter incorrectly, the person must enter in the notes section. Case reset are no longer allowed.

**Phillip Riley**
Office Operations Supervisor
Pasadena Area Census Office
U.S. Census Bureau

Office: 213-314-8632
E-mail: phillip.d.riley@2020census.gov

From:
Sent: Thursday, September 3, 2020
To: LAACO 3274 Field Ops List <laaco.3274.field.ops.list@2020census.gov>
Subject:

Zone 1

Reset Case, wrong info was entered

On-demand more cases to

## Fwd: Some updates on Max Attempts and other news from RCC
1 message

From: "Edward Y Shin (CENSUS/PFLD FED)" <edward.y.shin@2020census.gov>
Date: September 18, 2020 at 3:15:03 PM PDT
Subject: Some updates on Max Attempts and other news from RCC

**Dated** Wed 9/16/2020 4:34 PM

### Self Response QA Cases
Additional SRQA cases were added to the workload last night.

### Cases Closed for Max Attempts
There are approximately 16,000 cases in Closeout CFS Areas that were not reopened after having been closed for max attempts. We are working on a solution, but it will take a few days to deploy. When the fix is made, those cases will be reopened for additional attempts to get at least a population count. We will provide an update when we get a more specific deployment time.

### Enumerating Reinterview Proxy Cases
When working a NRFU RI case where the Original Interview enumerator interviewed a proxy respondent, the Reinterview enumerator should collect roster information pertaining to the *census address* rather than information pertaining to the proxy respondent's address. When beginning the case, they should be sure to check the Case Details screen to confirm if they are making contact with a proxy, and during the interview, they should carefully read the question screens and ensure the proxy respondent understands that they are answering questions about a different address.

### Enumerator and CFS Debriefings
While we know the field staff are all busy working to close out their NRFU cases, please also encourage them to complete the NRFU Debriefing surveys available in the LMS. The responses will be extremely valuable to 2030 planning and so far we have only heard from 4% of Enumerators and 9% of CFSs.

### HUB Messages
Please find the Stateside - English and Puerto Rico - Spanish verbiage below for the HUB messages being deployed to the NRFU Enumerator devices for the next two nights.
Thursday morning, September 17, 2020
For Stateside - English:
Last chance to earn your award! Reminder that the pay period ends on Saturday. You still have time to earn this week's award of up to $100 by inputting your availability to work the maximum hours and cases. If you are out of cases

and can still work, please contact your supervisor. Overtime is available pending supervisor approval. (Please press the home button after reading t is message.)

Friday morning, September 18, 2020
For Stateside - English:
Good morning. Please remember that all field staff must wear a mask that covers both nose and mouth when contacting members of the public. The Census Bureau issued badge must also be worn at all times. If you have questions please contact your supervisor. Thank you for all of your efforts as we complete the 2020 Census. (Please press the home button after reading this message.)

**Edward Shin**
Census Field Manager
Pasadena ACO 3274, U.S. Census Bureau
Cell: 956-308-8821
edward.y.shin@2020census.gov

The U.S. Census is pushing enumerators and supervisors to rush the completion of the work by directing my colleagues and me as well as enumerators to provide falsified information. On the evening of September 28 I was transferred, with my team, from Pasadena ACO to Inglewood ACO.

On September 30, 2020 at 4:22pm, I received a phone call from the Inglewood ACO (424-414-5660) from an Inglewood ACO Field Operations office employee. The employee confirmed my name and position as a Census Field Supervisor and then asked me if I had enumerators actively working at the moment, which I confirmed. Next, he asked me to call each of those enumerators right away and to instruct them with this directive, "put population 1 or 2, select male or female for each and close out all the remaining cases in their list this way." He also instructed me to specify that they should enter the rest of the data as "refused" or "don't know."

For clarity, I asked, "Do you mean if we have received a population count from the respondent, to close the cases with the provided information?" To which he replied in no uncertain terms that I was to instruct the enumerators to "guess either 1 or 2 per household." This concerned me so I asked him to provide me with the name of the person who gave him this directive. He told me that he would not provide me with that information, and that I could contact my own manager if I had concerns. He repeated the instructions I was to give my enumerators. I told him that I would not instruct my enumerators to falsify data under any circumstance. I asked him again who these directives were coming from. He maintained that I should discuss the issue with my own manager. I immediately wrote down the information in an email and sent it to my Inglewood ACO manager Guanlin Li. I cc'ed several other managers. I am attaching a copy of my Email here.

I then reached out to another Census Field Supervisor, N. Hua, who was also transferred to work at this Inglewood ACO. He then informed me that an enumerator on his team had received a similar call on September 29, 2020 at about 5:35 p.m. from a Clerk/Office Operations Supervisor named Thalia Rodriguez. His enumerator had been instructed to improperly close by this employee, due to the case having a history of several unsuccessful attempts. His enumerator was instructed to falsify data in order to complete the case. The enumerator told Thalia that he did not even attempt to enumerate that address yet, and that this action would not be appropriate. N. Hua informed me that he took the issue to management at that point.

In even another instance, a second enumerator of CFS N. Hua was asked if she was done attempting several specific large buildings. When the enumerator said she still had cases open in the building, the office staff explained that there was no need to enumerate them, because they were going to be marking the remaining cases as "Refused." CFS N. Hua pleaded with upper management to not do that, because his team could be successful in properly completing these cases. While the enumerator was entering accurate data from several successful attempts with respondents and proxies, she was called again by another clerk named Denise who instructed her to mark "Refused."

**stefanie villalobos** <s████@gmail.com>   4:54 PM (45 minutes ago)
to Sara, Guanlin, Edward, Gerald, John

The gentleman who called said he **DID** have **CLEAR** directive to make this request, he specified that he was instructed to instruct all CFS to do this today. 424-414-5660 is the number that I received this call from.

4:22pm is the time of the call.

Sara,
Several enumerators have been instructed to do this in Inglewood, they receive calls from the office throughout the day and are given instructions. I am not the only CFS who has been made aware of this issue.

stefanie villalobos

## URGENT - Close out with Guessing pop Count?   Inbox

**stefanie villalobos** <████@gmail.com>   4:30 PM (44 minutes ago)
to Guanlin, Edward, Sara, Gerald, John

I just now received a call from Inglewood ACO clerk asking me to contact my team immediately, and to instruct them to complete the remaining cases by GUESSING pop count. This is falsifying data, and I cannot, in my right conscious and - based on the oath I took with Census - to provide a true and accurate count. I cannot ask my team to do this action. I feel this is wrong and a direct violation of the mission of Census. I am alarmed that they are asking CFS to direct their enumerators to do this. The clerk refused to tell me which management instructed him to make these phone calls. Please advise.

stefanie villalobos

