JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, | Case No. 5:20-cv-05799-LHK |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS** |
| v. | |
| WILBUR L. ROSS, JR., *et al.*, | |
| Defendants. | |

**INTRODUCTION**

On September 28, 2020, Defendants informed the Court that the Secretary of Commerce had established a "target date" of October 5, 2020 to complete field operations in light of the progress made in field operations up to that date and in order to make compliance with the statutory December 31, 2020 deadline possible in the event this Court's September 24, 2020 Preliminary Injunction, ECF 208 ("PI") is overturned. Plaintiffs view this contingency plan as a violation of the PI, but it is nothing of the sort. Pls. Mot. to Compel and Sanctions, ECF No. 265 (Pls. Mot.). The Court's PI was narrowly crafted to enjoin only the implementation of two deadlines: ending field operations by September 30 and submitting the Secretary's report under 13 U.S.C. §141(b) to the President by December 31. Plaintiffs themselves articulated this as a "narrow[]" form of relief during the hearing in which they urged the Court to enter the PI. And this Court stressed in its PI order that it "in no way intends to manage or direct the day-to-day operations of Defendants." *Id.* As a result, the PI does not preclude formulation of new contingency plans based on changing factual circumstances.

The announcement of the October 5 target date thus does not run afoul of the Court's injunction, and no order to compel compliance is therefore necessary. Indeed, a broader injunction that would preclude the Defendants from making any plans to consider or comply with the independent statutory deadline established in 13 U.S.C. § 141 in the event they receive appellate relief would also seemingly preclude any adjustment of operations to reflect the current status of responses—which, as of today, stand at 98.9%.[1] Such an injunction also would not make sense in light of the concededly narrow scope of the Court's decision (and in particular the Court's focus on the two deadlines), the Court's and Plaintiffs' explicit statements, and principles of equity.

Plaintiffs separately complain about various individual actions that Defendants took or did not take that are unrelated to the October 5 announcement. Most of those complaints have already been submitted to the Court and addressed by sworn declarations of Bureau officials. None

---

[1] Total Response Rates by State, https://2020census.gov/en/response-rates/nrfu.html (last visited Oct. 1, 2020).

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL AND FOR SANCTIONS
Case No. 5:20-cv-05799-LHK

1

establishes any actual violation of this Court's order, and certainly none establishes anything that would properly give rise to sanctions or the kind of remedial actions Plaintiffs do seek.

## BACKGROUND

Plaintiffs' suggestion that Defendants are not complying with the Court's orders must be evaluated in light of the record. By Defendants' count, this Court has issued 37 substantive orders over the past four weeks. Defendants have complied or tried to comply with every single one to the best of their ability. These orders have come at all hours of the day on weekdays and weekends, and many gave Defendants mere hours to comply even when issued late at night. *See, e.g.*, ECF No. 182 (order issued shortly before midnight Eastern time on Sunday, giving three hours to comply, and noting that further "orders are expected tonight"). And with every order, Defendants have been transparent about their compliance efforts. That has been especially true with respect to Defendants' efforts to comply with the Court's Temporary Restraining Order, ECF 84 ("TRO"), and the PI.

In numerous declarations, Census Bureau officials have described the communications they transmitted to the field regarding staff's obligations under the Court's orders, and subsequently investigated a deluge of individual complaints that this Court has placed on the docket. *See* ECF No. 127-1 (first declaration of James T. Christy); ECF No. 133-1 (second Christy Declaration); ECF No. 219-1 (third Christy Declaration); ECF No. 234-1 (fourth Christy Declaration); ECF No. 244-1 (fifth Christy Declaration); ECF No. 260-1 (sixth Christy Declaration); ECF No. 266-1 (seventh Christy Declaration); ECF No. 278-1 (eighth Christy Declaration); ECF No. 283-1 (ninth Christy Declaration). And Defendants expeditiously produced—overnight—a large volume of internal agency materials explaining how and why the Secretary of Commerce established a "target date" of October 5, 2020, namely, based on the extraordinary progress made by Census enumarators up to and including September 28, 2020, which allowed the Census to predict that it would obtain satisfactory field results by the end of the day on October 5, 2020.

# ARGUMENT

## I. Defendants Are In Compliance With The PI

The main thrust of Plaintiffs' motion is that this Court's PI Order prohibited Defendants from taking *any* steps to implement or plan for the end-of-year statutory deadline, rendering the Secretary's announcement of the new October 5 "target date" a violation. Pls. Mot. at 8. But under any plausible interpretation given to this Court's injunction, the government is in compliance.

### A. The PI Order Is Necessarily Narrow, And Does Not Preclude Actions Beyond the Replan

By its terms, the Court's PI stays the "Replan's September 30, 2020 deadline for the completion of data collection and December 31, 2020 deadline for reporting the tabulation of the total population to the President," and enjoins Defendants from "implementing these two deadlines." ECF No. 208 at 78. Staying or enjoining a future deadline is inherently unusual and ambiguous, and such an injunction says nothing about can be done prior to that deadline. Further, several critical limitations must be kept in mind.

As the Court noted in its opinion, the injunction affords only the "narrowed [] relief" that Plaintiffs made at the preliminary injunction hearing, where they explained that their "action challenges [only] the timelines in the Replan." *Id.* at 77-78 (emphasis added). Thus, the injunction does not enjoin anything in the Replan other than two deadlines. Further, the Court explained, that "[b]y this order" it "in no way intends to manage or direct the day-to-day operations of Defendants." *Id.* at 78. Thus, the Bureau is free to "direct day to day operations" so as to take account of and respond to evolving circumstances, such as the progress of census enumerators during ongoing field operations. This language stands in contrast to language the Court used in its prior Temporary Restraining Order, where it "enjoined . . . implementing the August 3, 2020 Replan or allowing to be implemeted any actions as a result of the shortened timelines in the August 3, 2020 Replan." *See* ECF 84 at 6-7. Pointedly absent from the injunctive language is any prohibition on contingency planning or limitations on particular activities by the Defendants to prepare for deadlines or respond to developing circumstances. An injunction against

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL AND FOR SANCTIONS
Case No. 5:20-cv-05799-LHK

3

1   "implementing" deadlines must therefore be understood for what it is: an order that precludes
2   taking the proscribed action on the deadline. In the case of the Replan's September 30, 2020,
3   deadline, that would mean concluding field operations—operations which did not conclude on
4   September 30, and are still ongoing now in October. And in the case of the "implementing" the
5   *statutory* December 31, 2020, deadline, that means actually "report[ing] . . . to the President of the
6   United States." 13 U.S.C. § 141. Thus, that injunction can only be violated if a report is made to
7   the President while the injunction is in force.

8         This construction is consistent with both the nature of the action Plaintiffs brought and the
9   Court's authority. Plaintiffs' complaint and the Court's opinion focus on the propriety of the
10  agency taking a discrete agency action on August 3, 2020—not on the broader legality of an
11  agency's operational functions, which the Court's opinion does not and could not properly address
12  in an APA case. *See* ECF No. 208 at 31-32. Indeed, in a subsequent hearing Plaintiffs themselves
13  conceded that the APA, which was this Court's chosen vehicle for resolving Plaintiffs' PI motion,
14  does not give the Court the authority to set aside agency actions beyond the ones actually
15  challenged. Beyond the scope of the Court's power under the APA is the authority to *mandate*
16  that the Bureau continue field operations until October 31, 2020 or some other date, or to preclude
17  new developments or new agency plans that are based on new facts or the passage of time. *See*
18  Sept. 28 Tr. at 28 (explaining Plaintiffs would be "possibly amending the complaint to deal with
19  this latest issue"). Indeed, Plaintiffs themselves made clear that they are "not asking the Court to
20  decide how much time is really needed" and "not asking [the Court] to propose an alternate
21  timeline." Tr. 30 (Sept. 24, 2020). All that the Court may properly do in such an action is to
22  evaluate the discrete agency action before it.

23        In light of these limitations, it would make no sense to find that the Court was enjoining
24  the formation of *any and all* contingency plans to meet the statutory deadline, which is still months
25  away, and which Defendants have of course not yet implemented that deadline by submitting a
26  report. An agency may make a multitude of plans in light of competing obligations. Preventing
27  the very formation of such plans would necessarily embroil the Court in the supervision of how
28

the agency goes about its day-to-day activities and how it adjusts its operations from one day to the next.

### B. The October 5 Target Date Reflects Planning Based on New Circumstances that is Fully Compliant With the Terms of the PI

Because the Court's injunction prevents only the Replan's planned conclusion of field operations by September 30, and the transmittal of the final tabulation to the President by December 31, 2020, the Secretary's decision to make contingency plans for complying with the Bureau's obligation under 13 U.S.C. § 141 was entirely permissible.

*First*, the October 5 "target date" is not a component of the Replan, as the Court has defined it. Specifically, the Court held that "the Replan is a circumscribed, discrete agency action" because "Defendants named it the 'Replan,'" the "Secretary made an explicit decision to adopt the Replan," and the Director announced it "in a single press release". ECF 208 at 31. Further, the Court found that the action was "final" because it "marks the consummation of the Bureau's and Department of Commerce's decision making process" and was not 'subject to further agency review.'" *Id.* at 33 (citations omitted). While Defendants vigorously contested both of those issues, it is the Court's resolution of the matter that informs the scope of the Court's ordered injunction. And here, under the Court's definitions and findings, the deliberations that postdated the Replan by almost two months *could not* be a part of the same "decision making process" that gave rise to the Replan, and thus cannot fall within the injunction's scope.

Put another way, under the Court's (and the Plaintiffs') logic, the announcement of the October 5 "target date" would be a new "agency action," based on new information and new deliberations, such that it is not covered by the injunction. Indeed, the Court appeared to contemplate as much when it ordered the production of what it termed the "administrative record" underpinning the Secretary's decision to target October 5—an order that would make no sense if the action at issue were merely the implementation of the Replan. *See* ECF No. 225. And the documents Defendants filed under that order confirm that the Secretary's decision was based on new information that was not available in August, such as the latest completion rates in various states, and other metrics of census progress in September. Indeed, in August, the Census was predicting the time it would need to progress in field operations; by September 28, the Census

knew that it was very close to the finish line of those operations thanks to the dedicated work of thousands of census enumerators.

*Second*, and relatedly, the announcement of the October 5 "target date" for concluding field operations by definition does not implement a September 30, 2020 date for concluding such operations, which is the first "deadline" that the Court enjoined. And to the extent the conclusion of field operations eyes effectuating an end-of-year *statutory* reporting deadline, doing so does not actually "implement[]" the deadline—because implementation of the deadline only occurs when the Census makes the required report to the President. 13 U.S.C. § 141(b).

*Third*, as Defendants explained at this week's hearings, the October 5 "target date" is properly understood as a contingency plan by which the Defendants could attempt to meet the end-of-year statutory reporting deadline in the event this Court's injunction barring implementation of that deadline date is no longer in effect.. Nothing in the Court's injunction should be understood to preclude Defendants from making such plans to account for that contingency. Were it otherwise, the Court's injunction would not be preliminary at all—nor even reviewable—because it would significantly prejudice Defendants' ability to comply with their statutory obligations in the event it is no longer in force on December 31.

Combined, these factors all distinguish the Secretary's decision regarding the October 5 date from the cases Plaintiffs cite concerning circumvention of injunctions. Pls. Mot at 12-14 (citing cases). Simply put, the Secretary's operational efforts to preserve the *option* of complying with the statutory deadline is not an effort to reimpose an enjoined rule in the guise of new action. *See International Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 921 (D.C. Cir. 1984). Rather, it reflects the consideration of substantial new information, balances competing possibilities, and comes to a different conclusion about the appropriate duration of field operations. That is entirely proper.

**II.     No Order to Compel is Necessary or Appropriate**

Because the scope of the Court's PI is narrow, Plaintiffs' request to have the Court compel compliance with the PI amounts to a request that the Court expand the injunction's scope to reach beyond the Replan or the two discrete deadlines. That would be improper. The injunction was an

appealable order that is, in fact, currently on appeal. That appeal divests this Court of jurisdiction to expand the scope of the injunction. *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000) ("A district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties.") (citing *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734-35 (9th Cir. 1982)); *see also Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). And while the Court retains the power to maintain the status quo between the parties by, for example, clarifying the injunction, *Nat. Res. Def. Council, Inc.*, 242 F.3d at 1166, the kind of interpretation Plaintiffs are proposing would dramatically expand the scope of the injunction.

The Plaintiffs' recent filing of the motion for a temporary restraining order confirms that fact. If the injunction unquestionably set aside or precluded *any* contingency efforts or plans to comply with a *statutory* deadline that is months away, the new relief Plaintiffs now seek would be both unnecessary and meaningless. By requesting additional injunctive relief that goes beyond what this Court ordered, Plaintiffs essentially concede that this Court's existing order does not preclude the Secretary or the Bureau from analyzing the latest information available and—based on that information—targeting October 5 as the date to conclude field operations.

Under these circumstances, the Court should not expand its injunction or bar the October 5 target date by ordering the kind of "compliance" Plaintiffs are requesting. Plaintiffs' request on this ground should be denied.

**III. No Remedial Measures Are Necessary Or Appropriate**

Even if the Court were to interpret its PI order in the manner requested by Plaintiffs, and order "compliance" that would prohibit implementation of the October 5, 2020 target date, that would still not justify the imposition of any sanctions or remedial measures of the kinds Plaintiffs are seeking.

For all the reasons articulated above, the Secretary's announcement of an October 5 target date is consistent with the terms of the injunction. At most, Plaintiffs' papers have proposed an alternative reading of the Court's PI. If the Court were to find such a reading plausible, or even if it were to adopt it in the form of a clarification, that would merely indicate that the Court's PI order

is vague. But a vague order cannot give rise to contempt or sanctions. *See generally Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (explaining that "principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt," and that "civil contempt 'should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct'") (brackets and citations omitted); Fed. R. Civ. P. 65(d)(1) (requiring the Court to "state [the injunction's] terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required"). In other words, clarifying the order would itself be remedy enough.

In seeking additional relief, Plaintiffs attempt to describe a chimerical pattern of noncompliance based on various emails transmitted to the Court following the entry of the TRO and PI. As the Court is aware, however, Defendants have devoted extraordinary efforts to investigate and address these allegations. Over the course of nine separate declarations, James T. Christy described the steps he and his staff took to ensure that the appropriate messages were transmitted to staff in the field, and to correct any misunderstandings. *See, e.g.*, ECF No. 234-1 (explaining messages that were transmitted to the field). The more than 108 staff hours that Mr. Christy devoted to these efforts, ECF No. 260-1 ¶ 14, ECF No. 278-1 ¶ 9, belie any suggestion that Defendants have any intent to violate or disregard any Court order. And the alacrity with which Defendants have moved to remedy any problems should confirm Defendants' commitment to follow this Court's orders on their appropriate terms. *See* ECF No. 133-1 ¶ 7 (second Christy declaration, discussing remedial instructions provided to supervisors).

Plaintiffs complain about the inadequacy of various communications that Defendants have transmitted to comply with the PI, and the TROs before it. Pls. Mot. 4-5. But Defendants took the steps they believed to be reasonable and effective at the time. *See generally* ECF No. 234-1 (describing the communications to the field). Email communications to the supervisors in individual field offices were a means of communication that Defendants believed to be appropriate and effective. Subsequent developments revealed that additional communications may be necessary to forestall problems, which led the Bureau to also use text messages for a subsequent communication. And the fact that the Bureau did not update its website for several days was a

1  simple and inadvertent oversight.  That alone cannot form the basis for sanctions or contempt when
2  properly viewed through the lens of Defendants' extensive and transparent compliance efforts with
3  the dozens of orders issued by the Court, which Defendants described in various notices and
4  responses.  *Cf. Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (to grant sanctions, the Court
5  needs to find "bad faith or conduct tantamount to bad faith.").

6        A final issue must be addressed.  Plaintiffs continue to fault Defendants for their inability to comply with the Court's order to produce a Replan "administrative record."  Pls. Br. at 4.  The Court has repeatedly referenced this fact as well.  Respectfully, the procedural history tells a different story.  Defendants submitted a sworn declaration explaining why the "administrative record" would be "practically impossible" to produce in the Court's contemplated timeframe, days before the Court issued any order to produce such a record.  *See* ECF No. 88-1.  When the Court nevertheless ordered Defendants to produce that record in three days (over their objections), Defendants did what they could within the time allotted, and explained—again, with a sworn declaration—their physical limitations.  *See* ECF No. 104-1.  Defendants cannot defy time.  And in any event, the Court stayed that order and has since required Defendants to produce additional documents for the Replan "administrative record" by October 4, 2020, which Defendants will do.

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel and for sanctions in its entirety.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL AND FOR SANCTIONS
Case No. 5:20-cv-05799-LHK

DATED: October 1, 2020                    Respectfully submitted,

                                                      JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel to the Assistant
  Attorney General

ALEXANDER K. HAAS
Branch Director

DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
  (New York Bar No. 4918793)
M. ANDREW ZEE (SBN 272510)
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of October, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV