UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>WILBUR L. ROSS, et al.,<br><br>  Defendants. | Case No. 20-CV-05799-LHK<br><br>**ORDER RE: CLARIFICATION OF STAY AND PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 279 |

Plaintiffs National Urban League; League of Women Voters; Black Alliance for Just Immigration; Harris County, Texas; King County, Washington; City of Los Angeles, California; City of Salinas, California; City of San Jose, California; Rodney Ellis; Adrian Garcia; National Association for the Advancement of Colored People; City of Chicago, Illinois; County of Los Angeles, California; Navajo Nation; and Gila River Indian Community (collectively, "Plaintiffs") sue Defendants Commerce Secretary Wilbur L. Ross, Jr.; the U.S. Department of Commerce; the Director of the U.S. Census Bureau Steven Dillingham, and the U.S. Census Bureau ("Bureau") (collectively, "Defendants") for violations of the Enumeration Clause and the Administrative Procedure Act ("APA").

Before the Court are two motions: (1) Plaintiffs' motion to compel and for sanctions

("motion to compel"); and (2) Plaintiffs' motion for temporary restraining order pending ruling on Plaintiffs' motion to compel and for sanctions ("second TRO motion"). Having considered the parties' submissions on the motion to compel and the second TRO motion; the parties' arguments at the September 28 and 29, 2020 case management conferences; many briefs and court proceedings discussing Defendants' alleged violations of the Temporary Restraining Order and the Court's Order Granting Plaintiffs' Motion for Stay and Preliminary Injunction ("Injunction Order," ECF No. 208); the relevant law; and the record in this case, the Court:

- CLARIFIES the scope of the Court's Injunction Order;

- ORDERS Defendants to issue on October 2, 2020 a new text message to all Census Bureau employees notifying them of the Court's Injunction Order, stating that the October 5, 2020 "target date" is not operative, and stating that data collection operations will continue through October 31, 2020. On October 2, 2020, after the text message is sent, Defendants shall file a copy of the text message with the Court;

- ORDERS Census Bureau Director Steven Dillingham to file, by Monday, October 5, 2020 at 2 p.m. Pacific Time, a declaration under penalty of perjury that unequivocally confirms Defendants' ongoing compliance with the Injunction Order and details the steps Defendants have taken to prevent future violations of the Injunction Order; and

- DENIES AS MOOT Plaintiffs' motion to compel and second TRO motion.

## I.  BACKGROUND

On Thursday, September 24, 2020, the Court issued an Order Granting Plaintiffs' Motion for Stay and Preliminary Injunction ("Injunction Order"), ECF No. 208. In the Injunction Order, the Court detailed how Defendants had violated the APA by adopting the "Replan": a schedule for the 2020 Census that accelerated the deadlines for Census self-responses, non-response follow-up, data processing, and reports to the President and the states. Although the Census Bureau had taken most of a decade to develop the December 2018 Operational Plan Version 4.0 for the 2020 Census, the Bureau developed the Replan in the span of four or five days.

The Court found that Defendants had acted arbitrarily and capriciously in five independent ways: (1) Defendants failed to consider important aspects of the problem, including their constitutional and statutory obligations to produce an accurate census; (2) Defendants offered an

explanation that runs counter to the evidence before them; (3) Defendants failed to consider an alternative; (4) Defendants failed to articulate a satisfactory explanation for the Replan; and (5) Defendants failed to consider reliance interests. *Id.* at 44–74. Although any one of the five reasons would have supported a preliminary injunction, the Court found for Plaintiffs on all five.[1]

The Court also found that Plaintiffs would suffer irreparable injury; that the balance of hardships tipped sharply in Plaintiffs' favor; and that a preliminary injunction would serve the public interest. *Id.* at 74–75. Accordingly, the Court ordered that, effective as of Thursday, September 24, 2020:

> The U.S. Census Bureau's August 3, 2020 Replan's September 30, 2020 deadline for the completion of data collection and December 31, 2020 deadline for reporting the tabulation of the total population to the President are stayed pursuant to 5 U.S.C. § 705; and Defendants Commerce Secretary Wilbur L. Ross, Jr.; the U.S. Department of Commerce; the Director of the U.S. Census Bureau Steven Dillingham, and the U.S. Census Bureau are enjoined from implementing these two deadlines.

*Id.* at 78.

## II. DISCUSSION

Below, the Court describes (1) the effect of the Injunction Order; (2) Defendants' repeated violations of the Injunction Order; and (3) the further relief needed to ensure Defendants' compliance with the Injunction Order. Given the Bureau's announcement that it will end field operations on Monday, October 5, 2020, time is of the essence.

**A. The Injunction Order enjoined Defendants from implementing the Replan's deadlines and reinstated the COVID-19 Plan's deadlines.**

The effect of staying the two Replan deadlines was to reinstate the rule previously in force. *See, e.g.*, *Dep't of Homeland Security v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1916 & n.7 (2020) (affirming judgment vacating recession and restoring Deferred Action for Childhood Arrivals ("DACA") program); *Organized Village of Kake v. USDA*, 795 F.3d 956, 970 (9th Cir.

---

[1] Before reaching the merits, the Court found that Plaintiffs' claims are reviewable. *See* Injunction Order at 21–44. The Court's Injunction Order is incorporated herein by reference.

3

Case No. 20-CV-05799-LHK
ORDER RE: CLARIFICATION OF STAY AND PRELIMINARY INJUNCTION

2015) (en banc) ("The effect of invalidating an agency rule is to reinstate the rule previously in force." (quoting *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005))).

The rule previously in force was the COVID-19 Plan—specifically, the COVID-19 Plan's deadline of October 31, 2020 for data collection (self-responses and non-response follow-up ("NRFU")) and deadline of April 30, 2021 for reporting the tabulation of total population to the President. *See, e.g.*, Injunction Order at 6–9 (discussing COVID-19 Plan); 29–32 (discussing the broad scope of a "rule" under the APA). The injunction's effect was to require Defendants to cure the legal defects identified in the Injunction Order if Defendants were to insist on implementing the two Replan deadlines. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy (such as partial or complete vacatur of [the agency's] decision) was sufficient to redress [] injury, no recourse to the additional and extraordinary relief of an injunction was warranted."); *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 676–78, 679 (S.D.N.Y.) (analyzing *Monsanto* and enjoining Secretary Ross until he cured the legal defects identified in opinion), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019). Until those legal defects are cured, the two COVID-19 Plan deadlines remain in force.

**B. Defendants violated the Injunction Order by implementing the Replan deadlines.**

Despite the Injunction Order, Defendants continued to implement the Replan's September 30, 2020 deadline for data collection. For instance, as recently as Monday, September 28, 2020, four days after the Injunction Order, the Census Bureau's website, which is updated daily, declared that the "2020 Census will conclude data collection on September 30, 2020." ECF No. 243 (attaching screenshot of https://2020census.gov/content/dam/2020census/news/daily-nrfu-rates/nrfu-rates-report-09-28.pdf). Only after Plaintiffs raised this issue with the Court during the September 28, 2020 case management conference did the Census Bureau finally remove the erroneous statement from the Census Bureau's website.

As another example, on Saturday, September 26, 2020, a Census Bureau enumerator[2] forwarded to the Court a text from the Census Bureau's Regional Director in Dallas, Texas stating:

> Team,
>
> Even though the courts have made a decision; nothing has changed. Our deadline to count everyone is still September 30, 2020. I will keep everyone as updated as possible. DO NOT SPREAD RUMORS, OR MAKE ASSUMPTIONS. STICK TO THE FACTS! The facts are, we are still moving forward with original plan to finish by September 30, 2020.

ECF No. 214 at 4. Defendants responded to this text by confessing error: the Regional Director in Dallas had in fact sent that text message to staff despite the Injunction Order. ECF No. 219-1 (Christy Decl. ¶ 6). According to James T. Christy, the Bureau's Assistant Director for Field Operations, the information in that text message was "not consistent with [his] understanding of what field offices should be doing." *Id.* ¶ 5.

The level of misinformation and confusion nationwide is not surprising given that the Census Bureau's own website continued to tout the September 30, 2020 end of data collection four days after the Injunction Order. The Court has received a slew of emails from enumerators across the country that include supervisor texts with erroneous information and that express concern about the ending of field operations without adequate counts. The following are just a few examples:

- On Monday, September 28, 2020, a Census Field Supervisor stated that he "learned of this court's September 5, 2020 TRO from media reports. As a Census Field Supervisor[,] I have received zero notice from the Census Bureau about the existence of the TRO issued by this court on September 5, 2020." ECF No. 222. In response, Assistant Director Christy avers that "[t]he implementation of the Court's Temporary Restraining Order and the Preliminary Injunction involved actions by Headquarters and Regional Management Staff." ECF No. 244-1 (Christy Decl. ¶ 14). In the Los Angeles Region where the complainant works, the

---

[2] Enumerators are Census Bureau employees who collect data in the field. Specifically, enumerators conduct follow up with housing units that "did not self-respond to the decennial census questionnaire." Injunction Order at 2 (quoting Fontenot Decl. ¶ 48, ECF No. 81-1 and Thompson Decl. ¶ 15, ECF No. 36-2).

1  Regional Director did not email Census Field Supervisors about the TRO or Injunction Order. *Id.* (Christy Decl. ¶ 16).

- On Tuesday, September 29, 2020, an individual claiming to be an attorney at the Environmental Protection Agency wrote that he and his wife, who are working as enumerators, have been told by their census supervisors "that we are wrapping up tomorrow." The individual attached a screenshot of text messages that show the Bureau's instructions "not to enter availability past tomorrow." ECF No. 248.

- Again on Tuesday, September 29, 2020, an enumerator wrote that "in the last few days we have been under strict instructions to close down remaining cases by whatever means necessary." ECF No. 238.

S*ee also, e.g.*, ECF Nos. 214, 224, 229, 235, 254, 257, 263, 268, 270–73, 276, 285 (other allegations).

Perhaps the most egregious violation of the Injunction Order occurred on Monday, September 28, 2020. At 1:58 p.m., two minutes before the Court's case management conference, the Census Bureau tweeted one sentence: "The Secretary of Commerce has announced a target date of October 5, 2020 to conclude 2020 Census self-response and field data collection operations." @USCensusBureau, https://twitter.com/uscensusbureau/status/1310685274104569856. Later, the Census Bureau issued a one sentence press release with the exact same sentence. *See* U.S. Census Bureau, *2020 Census Update* (Sept. 28, 2020), https://www.census.gov/newsroom/press-releases/2020/2020-census-update.html.

Neither the one sentence tweet nor the one sentence press release provided any explanation or information. The Court thus ordered Defendants to produce the administrative record of this announcement. ECF No. 225. The Court notes that Defendants deny that the October 5 end date for data collection constitutes final agency action. For example, minutes after the October 5 "target date" tweet during the Monday, September 28, 2020 case management conference, Defendants stated that the announcement "doesn't involve a final agency action. It is a giant endeavor with constantly changing pieces. And our position is the tweet does not have an administrative record. That is our position." Tr. at 44, ECF No. 237.

Similarly, the next day, at the September 29, 2020 case management conference, the Court

asked whether Defendants had produced the full record of the October 5 "target date" tweet. Tr. at 7, ECF No. 259. Defendants responded in the affirmative, "[s]ubject to not calling it a record because in our view it is not a record." *Id.* When asked about the Secretary's approval of the October 5 "target date," Defendants stated: "[e]ven to call it a decision is perhaps to endow it with significance that it otherwise does not have." *Id.*

Even though the Census is a $15.6 billion dollar operation that took nearly a decade to plan, Defendants' production showed that the Census Bureau developed the October 5 "target date" in the span of four days with the same legal defects as the Replan. For example, Census Bureau Deputy Director Ron Jarmin presented to Secretary Ross two "Proposed Options for Completion of Enumeration"—both of which focused on the December 31, 2020 deadline that the Court had stayed and enjoined Defendants from implementing:

> **Option 1**: Conclude field work by October 5, 2020 *in order to meet apportionment delivery date of December 31, 2020.*
>
> **Option 2**: Continue field work beyond October 5, 2020 in order to increase state completion rates to 99% and to continue to improve enumeration of lagging sub-state areas, such as tribal areas, rural areas, and hard-to-count communities. *However, this would not allow for delivery of state counts for apportionment by December 31, 2020.*

ECF No. 233 at 148 (italics added). As Deputy Director Jarmin explained to Director Dillingham and other senior officials, Option 2 "would preclude meeting the 12/31 date, *but furthers the goal of a complete and accurate 2020 Census*." *Id.* at 130 (emphasis added). Option 1, by contrast, would not further that goal.

Option 1's data processing, like the Replan's data processing, focuses solely on congressional apportionment and leaves redistricting data for another day. *See id.* at 148 (Presentation to Secretary Ross highlighting "streamlined post data collection processing and focusing only on state counts for apportionment"). This bifurcation of data processing is unprecedented. As the Census Bureau found when considering the Replan, "the downstream effect of separating apportionment and redistricting processing activities could not be assessed. This results in additional risk to the delivery of the redistricting products in order to meet the statutory

7

deadline and will have a negative impact on the accuracy of the redistricting data." *E.g.*, Injunction Order at 55 (quoting DOC_9496 (July 31, 2020 email chain with top Bureau officials)); *id.* at 53 (quoting DOC_8019 (July 24, 2020 Apportionment Data Processing Memo)).

In sum, the Census Bureau repeatedly found that "[s]hortening the time period to meet the original statutory deadlines for apportionment and redistricting data will result in a census that has fatal data quality flaws that are unacceptable for a Constitutionally-mandated activity." Injunction Order at 49 (quoting so-called "Elevator Speech" memo prepared by senior Bureau officials shared with the Government Accountability Office, DOC_8070). In the words of Timothy Olson, the Bureau's Associate Director for Field Operations, "it is ludicrous to think we can complete 100% of the nation's data collection earlier than 10/31 and any thinking person who would believe we can deliver apportionment by 12/31 has either a mental deficiency or a political motivation." Injunction Order at 52 (quoting DOC_7738).

Still, to pick between the two options (ending data collection by or after October 5, 2020), Secretary Ross asked which would implement the December 31, 2020 deadline. Three short emails on that enjoined topic ensued:

- On Monday, September 28, 2020 at 3:52 p.m. Eastern, Secretary Ross wrote to Deputy Director Jarmin and other senior Bureau officials: "As I prepare to make the decision, I would like to make sure that I understood correctly that your team's opinion is that if we stay in the field beyond October 5, we would not be able to meet the statutory deadline of December 31." ECF No. 256-1 at 2.

- At 4:30 p.m. Eastern, Deputy Director Jarmin responded: "Yes sir, we need to finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, if requested, unlawful aliens in ICE Detention Centers by 12/31. Other PM [Presidential Memorandum] related outputs would be pushed to 1/11/2021." *Id.* at 1.

- At 5:12 p.m. Eastern—14 minutes *after* the Bureau's tweet announcing the Secretary's decision—Secretary Ross wrote back: "Thanks for the confirmation. Based on the staff recommendation I am extending the field operation toOctober [sic] 5." *Id.*

ECF No. 256-1.

Thus, Defendants' production shows three significant things: (1) Defendants set the

October 5 date to meet the December 31, 2020 statutory deadline, even though Defendants are "enjoined from implementing" that deadline; (2) the December 31, 2020 statutory deadline intertwined with the President's July 21, 2020 Memorandum on Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census; and (3) Secretary Ross approved the October 5 date 14 minutes after the Census Bureau tweeted the October 5 date.

Moreover, Defendants' claim that October 5 is merely a "target date" is belied by Defendants' own documents, representations in federal court, and communications with Bureau enumerators:

- The "Proposed Options for Completion of Enumeration" presentation to Secretary Ross on Monday, September 28, 2020 shows that the Bureau will "[c]onclude field work by October 5, 2020 in order to meet apportionment delivery date of December 31, 2020." ECF No. 233 at 148.

- Hours after the tweet on Monday, September 28, 2020, Assistant Director Christy "instructed staff to send a text message to all Decennial field staff (Enumerators and [Census Field Supervisor]s) that read: 'A federal district court issued a preliminary injunction on 9/24. The Census Bureau is complying with the Court's Order which moves the finishing date for NRFU operations after September 30. The Secretary announced today that *NRFU operations will finish on October 5*. We will post updated guidance on the content locker.'" ECF No. 234 (Christy Decl. ¶ 14) (emphasis added).

- Also on Monday, September 28, 2020, an enumerator received a text message that stated: "The Secretary announced today that NRFU operations will finish on October 5." ECF No. 230-1. Several enumerators have alerted the Court that they have received this text message. *See, e.g.*, ECF No. 238 ("I awoke this morning to an internal message from the Bureau that Secretary Ross has ordered that the NRFU (non response follow up) cases will be terminating on October 5th."); ECF No. 231 (text message dated September 29, 2020 that "NRFU operations will finish on October 5"). Assistant Director Christy confirms that he ordered this message sent to field staff. ECF No. 234 (Christy Decl. ¶ 14).

- The Government has represented to a three-judge court of the United States District Court for the District of Columbia that field operations "are set to conclude" on October 5. Rough Tr. of Oral Argument at 8, *Common Cause v. Trump*, No. 20-cv-02023-CRC-GGK-DLF (D.D.C. Sept. 29, 2020).

If that were not enough, Defendants' clear, fast, and concerted advertising of the October 5 date stands in stark contrast with Defendants' chaotic, dilatory, and incomplete compliance with

9
Case No. 20-CV-05799-LHK
ORDER RE: CLARIFICATION OF STAY AND PRELIMINARY INJUNCTION

the Injunction Order. As recounted above, Defendants have violated the Injunction Order in several ways. A flood of emails to the Court and the parties suggests ongoing non-compliance in the field.

Even today, in response to Plaintiffs' second TRO motion, Associate Director Fontenot again failed to acknowledge the COVID-19 Plan dates that the Injunction Order reinstated. *See* ECF No. 284-1 (comparing December 2018 Operational Plan Version 4.0, the Replan, and "clos[ing] field data collection on October 5, 2020 and submit[ting] apportionment counts by the statutory deadline, December 31, 2020"); ECF No. 81-1 ¶ 69 (comparing dates under the December 2018 Operational Plan Version 4.0 and the Replan). At no point have Defendants unambiguously communicated to all field staff what the Injunction Order requires: immediate reinstatement of the COVID-19 Plan's deadlines of October 31, 2020 for data collection and April 30, 2021 for reporting the tabulation of total population to the President.

**C. The Ninth Circuit has denied Defendants' request to stay the Injunction Order.**

On September 30, 2020, the Court of Appeals for the Ninth Circuit denied Defendants' motion for an administrative stay of the Injunction Order. ECF No. 277. The Ninth Circuit held in its published opinion that, among other things, this Court's "September 5 temporary restraining order and September 24 preliminary injunction preserve the status quo because they maintain the Bureau's data-collection apparatus." *Id.* at 5.

The Ninth Circuit also held that:

> Given the extraordinary importance of the census, it is imperative that the Bureau conduct the census in a manner that is most likely to produce a workable report in which the public can have confidence. The Bureau must account for its competing constitutional and statutory obligation to produce a fair and accurate census report. The hasty and unexplained changes to the Bureau's operations contained in the Replan, created in just 4 to 5 days, risks undermining the Bureau's mission.

*Id.* at 7–8. Despite the Ninth Circuit's ruling, the Bureau is still "conclud[ing] field work by October 5, 2020 in order to meet [the] apportionment delivery date of December 31, 2020." ECF No. 233 at 148.

Like the Replan, the decision to end data collection on October 5 is a hasty and

10

unexplained change to the Bureau's operations that was created in 4 days. The decision also risks further undermining trust in the Bureau and its partners, sowing more confusion, and depressing Census participation. Consider, for instance, the whiplash inflicted on the Bureau's partners by the Bureau's rapid changes in deadlines. The Bureau recognized its "extensive partnerships" with organizations such as Plaintiff National Urban League. Injunction Order at 72 (quoting Fontenot Decl. ¶¶ 28, 41). Before the Replan's adoption, those partners advertised the COVID-19 Plan's October 31, 2020 data collection deadline for four months. After the Replan's adoption, partners diverted significant resources to mitigate the widely advertised October 31 deadline:

- The City of Salinas already promoted the October 31 deadline "on social media and in thousands of paper flyers." Gurmilan Decl. ¶¶ 11–12. Thus, "some residents who received the City's messaging will fail to respond before the R[eplan] deadline because the City has limited remaining resources to correct what is now misinformation." *Id.* ¶ 12. Moreover, the City "is still advertising for census enumerator job listings because traditional applicant groups like senior citizens have concerns about the risk of catching COVID-19. With fewer enumerators working, every extra day the City has to use [] existing staff to support the count . . . ." *Id.* ¶ 13.

- Harris County "participated in over 150 events," including "food distribution events," during which it "announced the October 31, 2020 deadline for the 2020 Census." Briggs Decl. ¶ 12. Consequently, "Harris County will be forced to expend additional resources to clear confusion about the last date for self-response during the Census, to ensure that people who have not responded are counted in time." *Id.* ¶ 16.

- The Black Alliance for Just Immigration already "publicized the October 31 deadline for self-response during digital events between April and July" and is diverting resources to publicize the new September 30 deadline. Gyamfi Decl. ¶¶ 13–14.

- The League of Women Voters "has already had to spend time and financial resources" developing and distributing public education materials on the Replan timeline. Stewart Decl. ¶ 12.

- The National Urban League has similarly had "to divert resources from other programs and projects" to "alleviate the confusion" about the change in deadlines. Green Decl. ¶ 15.

*See, e.g., id.* at 27–28, 37. Yet on Monday, September 28, 2020, the Bureau announced it will end field operations by October 5, 2020 in order to meet the December 31, 2020 deadline. This announcement gives the Bureau's partners just one week to advertise yet another accelerated deadline.

11
Case No. 20-CV-05799-LHK
ORDER RE: CLARIFICATION OF STAY AND PRELIMINARY INJUNCTION

Moreover, Defendants' sole witness in this case, Associate Director Fontenot, swore under penalty of perjury that the Census Bureau could not meet the December 31, 2020 statutory deadline if data collection were to extend past September 30, 2020. Specifically, Associate Director Fontenot declared under oath that:

> We wish to be **crystal clear** that if the Court were to extend the data collection period past September 30, 2020, the Census Bureau would be unable to meet its statutory deadlines to produce apportionment counts prior to December 31, 2020 and redistricting data prior to April 1, 2021. The post processing deadlines for the Replan Schedule are tight, and **extending the data collection deadline would, of necessity, cause the Census Bureau to fail to be able to process the response data in time to meet its statutory obligations.** We have already compressed the post processing schedule from 5 months to only 3 months. We previously planned and tested our post processing systems assuming that we would follow a traditional, sequential processing sequence, and the 3-month schedule necessary for the Replan Schedule has already increased risk. **We simply cannot shorten post processing beyond the already shortened 3-month period.**

Letter Order, *La Union Del Pueblo Entero, et al. v. Trump, et al.*, 19-cv-02710-PX-PAH-ELH (D. Md. Oct. 1, 2020) (three-judge court), ECF No. 125 (emphasis in original) (quoting ECF No. 117-1 ¶ 107). As a result of this blatant contradiction, the three-judge court in the District of Maryland ordered Defendants to explain how the Census Bureau would "accomplish an accurate final enumeration given that the post-data processing phase has been shortened further." *Id.* at 2.

### D. The Court clarifies the Injunction Order and orders tailored relief to ensure compliance.

Defendants' dissemination of erroneous information; lurching from one hasty, unexplained plan to the next; and unlawful sacrifices of completeness and accuracy of the 2020 Census are upending the status quo, violating the Injunction Order, and undermining the credibility of the Census Bureau and the 2020 Census. This must stop.

Time is of the essence. Every day that passes, the Bureau winds down field operations in order to end data collection by Monday, October 5, 2020 and start data processing. Once field operations are terminated, they are difficult to resume; and once data processing begins, no more data can be added for processing. *See* ECF No. 81-1 (Fontenot Decl. at ¶¶ 67–68) ("[P]ost data

collection activities are like building a house . . . . There is an order of steps that must be maintained. . . . [T]here is no opportunity to begin the post data collection processing until data collection operations close everywhere.").

As Associate Director Fontenot stated on September 5, 2020 in opposition to the motion for stay and preliminary injunction, the sooner the Court enjoins Defendants, the fewer field staff Defendants would terminate and not be able to rehire:

> Lack of field staff would be a barrier to reverting to the COVID Schedule were the Court to rule later in September. The Census Bureau begins terminating staff as operations wind down, even prior to closeout. Based on progress to date, as is standard in prior censuses, we have already begun terminating some of our temporary field staff in areas that have completed their work. It is difficult to bring back field staff once we have terminated their employment. Were the Court to enjoin us tomorrow we would be able to keep more staff on board than were the Court to enjoin us on September 29, at which point we will have terminated many more employees.

*Id.* (Fontenot Decl. at ¶ 98).

The Court thus exercises its authority to enforce compliance with its orders. *See, e.g.*, *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (per curiam) (holding that "the District Court certainly was empowered to protect" "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding").[3]

Pursuant to that authority, the Court clarifies[4] that until Defendants cure all the legal

---

[3] Defendants argue that the Court lacks jurisdiction to "radically modify the preliminary injunction" now that the Injunction Order is on appeal. ECF No. 284 at 3. Defendants' argument misses the point. Far from "radically modifying" the Injunction Order, the Court simply enforces the Injunction Order to halt Defendants' repeated violations. In any event, even the case that Defendants cite holds that a district court may modify an injunction "to maintain the status quo among the parties." *Id.* (quoting *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000)). Defendants are upending the status quo here.

[4] The Court notes that broad swaths of the public and the judiciary understood the Injunction Order. For instance, during oral argument in *Common Cause v. Trump*, United States Circuit Judge

13

Case No. 20-CV-05799-LHK
ORDER RE: CLARIFICATION OF STAY AND PRELIMINARY INJUNCTION

defects identified in the Injunction Order, Defendants are enjoined from "implementing the September 30, 2020 deadline for the completion of data collection and December 31, 2020 deadline for reporting the tabulation of the total population to the President." Injunction Order at 78. In the meantime, the Court's stay pursuant to 5 U.S.C. § 705 "postpone[s] the effective date of" those two Replan deadlines and so reinstates the rule previously in force: the COVID-19 Plan deadlines of October 31, 2020 for the completion of data collection and April 30, 2021 for reporting the tabulation of total population to the President.

Moreover, to preserve the status quo, the Court orders some of the relief requested in Plaintiffs' motion to compel and second TRO motion. On October 2, 2020, Defendants shall issue a text message to all the Census Bureau's employees notifying them of the Court's Injunction Order, stating that the October 5, 2020 "target date" is not operative, and stating that data collection operations will continue through October 31, 2020. On October 2, 2020, after the text message is sent, Defendants shall file a copy of the text message with the Court. In addition, by October 5, 2020 at 2 p.m. Pacific Time, Census Bureau Director Steven Dillingham shall file a declaration under penalty of perjury that unequivocally confirms Defendants' ongoing compliance with the Injunction Order and details the steps Defendants have taken to prevent future violations of the Injunction Order.

The Court will subject Defendants to sanctions or contempt proceedings if Defendants violate the Injunction Order again.

The Court sets a case management conference on Tuesday, October 6, 2020 at 2 p.m.

---

Gregory G. Katsas of the Court of Appeals for the D.C. Circuit stated that census operations "would have stopped September 30, and [Judge Koh] extended it until the end of October." Judge Katsas further stated, "[a]gain, maybe I misread the Koh order, but I thought that in terms of deadlines, it extended the transmittal date from December 31st to April 1st, and that's four months [sic; in fact a four-month extension but to April 30, 2021]." Rough Tr. of Oral Argument at 9, 15; *see also, e.g.*, Associated Press, *Federal Judge Says 2020 Census Must Continue for Another Month*, Wall Street Journal (Sept. 25, 2020), https://www.wsj.com/articles/federal-judge-says-2020-census-must-continue-for-another-month-11601034711.

Pacific Time and vacates the Friday, October 2, 2020 hearing on the motion to compel.

### III. CONCLUSION

For the foregoing reasons, the Court:

- CLARIFIES the scope of the Court's Injunction Order;

- ORDERS Defendants to issue on October 2, 2020 a new text message to all Census Bureau employees notifying them of the Court's Injunction Order, stating that the October 5, 2020 "target date" is not operative, and stating that data collection operations will continue through October 31, 2020. On October 2, 2020, after the text message is sent, Defendants shall file a copy of the text message with the Court;

- ORDERS Census Bureau Director Steven Dillingham to file, by Monday, October 5, 2020 at 2 p.m. Pacific Time, a declaration under penalty of perjury that unequivocally confirms Defendants' ongoing compliance with the Injunction Order and details the steps Defendants have taken to prevent future violations of the Injunction Order; and

- DENIES AS MOOT Plaintiffs' motion to compel and second TRO motion.

**IT IS SO ORDERED.**

Dated: October 1, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge