JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
JOHN V. COGHLAN
Deputy Assistant Attorney General
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
BRAD P. ROSENBERG
Assistant Branch Directors
M. ANDREW ZEE
ALEXANDER V. SVERDLOV
STEPHEN EHRLICH
Trial Attorneys
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-0550

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, | Case No. 5:20-cv-05799-LHK |
| Plaintiff, | **DECLARATION OF BRIAN D. DIGIACOMO** |
| v. | |
| WILBUR L. ROSS, JR., *et al.*, | |
| Defendants. | |

1  I, Brian D. DiGiacomo, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

2  1. I am the Assistant General Counsel for Employment, Litigation, and Information, Office of the General Counsel (OGC), U.S. Department of Commerce (DOC). In my capacity as the Assistant General Counsel, I advise and oversee the preparation of records evidencing decisions made by the Department and its constituent bureaus and their filing in courts and administrative tribunals. One of the Department's bureaus is the Census Bureau. I submit this declaration to describe to the Court the nature and extent of the set of documents identified by the Court's December 10, 2020 Order to be produced to Plaintiffs by December 14, 2020. The information in this declaration is based upon my personal knowledge and information I obtained in the course of my official duties in connection with this production process.

3  2. Immediately upon receipt of the Court's Order on the morning of December 11, DOC undertook to identify documents responsive to the Court's Order. As explained below, and for reasons Defendants previously explained in their Opposition to Plaintiffs' Motion to Compel, ECF No. 371, this process identified about 88,765 documents that would need to be produced to comply with the Court's Order.

4  3. That set of documents contains all materials and emails that DOC collected from 18 specified custodians in DOC and the Census Bureau. These custodians' documents were collected by DOC in order to respond to Plaintiffs' November 17, 2020 Requests for Production (RFPs). The identification of custodians and collection of documents began on November 16, 2020, after the Court granted discovery and is ongoing.

**Requests from Plaintiffs and the House Oversight Committee**

5  4. In Plaintiffs' Motion to Compel, ECF No. 368-1, Plaintiffs allege that DOC possesses a "separate" file of documents that had been collected in response to a November 19, 2020 request (renewed on December 2, 2020) for DOC documents from the Committee on Oversight and Reform, U.S. House of Representatives. As explained in Census Bureau Director Steven Dillingham's declaration, ECF 371-1, that is not true. There was no separate collection of documents

made in order to respond to the Committee's request.  And because Plaintiffs' RFPs and the Committee's request cover the same subject matter, the custodians DOC identified as having documents responsive to Plaintiffs' RFPs are the same custodians DOC identified as having documents responsive to the Committee's request.

5. Because the collective total of Plaintiffs' RFPs subsumes the Committee's request, it is virtually impossible to segregate documents that are responsive solely to the Committee before the Court's four-day production deadline.  In fact, it appears at this point in time that all documents collected by DOC are potentially responsive to both requests.  Therefore, to date, in an effort to comply with Defendants' discovery obligations in this case and DOC's obligations to comply with the Committee's request, a single review process has been set up with identical productions of documents provided to both Plaintiffs and the Committee.

## Status of Production of Documents

6. The Court's December 10 Order requires Defendants to produce by December 14 "[d]ocuments responsive to the requests in the November 19, 2020 letter from the House Committee on Oversight and Reform to Secretary Wilbur L. Ross."  Because there is no preexisting collection of documents responsive to the Committee's request, and because DOC cannot segregate documents that are responsive solely to the Committee in time to meet the Court's four-day production deadline, DOC has no choice but to produce all documents responsive to Plaintiffs' RFPs.  On December 11, DOC therefore applied search terms from sixteen searches proposed by Plaintiffs and two searches proposed by Defendants to ensure that all necessary documents are available for compliance.  This results in a total of about 88,765 documents.

7. Using search terms, DOC has determined that within that approximately 88,765 documents, there are about 25,512 documents that are likely to contain material protected by the attorney-client, attorney-work-product, and Executive privileges.

8. The sheer number of responsive documents for compliance with the Order presents several practical problems.  First, there exist technical limitations inherent in DOC's document processing platform (Relativity) that will require dozens of hours to prepare the documents for production consistent with the specifications ordered by the Court.  Second, large segments of

DECLARATION OF BRIAN D. DIGIACOMO
Case No. 5:20-cv-05799-LHK

computer time (again amounting to many hours) are required to upload the set of documents into a file transfer protocol for secure and complete delivery to Plaintiffs by the Court-ordered December 14 deadline.  Together, these two technical processes require about 48 hours lead time to finalize a production.  DOC has explored several alternative methods of delivery, but none of them are feasible due to the extreme time constraints or COVID-19 restrictions imposed by local authorities.[1]  Third, the amount of time required for manual review of these documents to identify, redact, and segregate privileged material far exceeds DOC's resources available over this weekend.  Even after allocating substantial additional resources to conduct review for privilege, it would take DOC two weeks at minimum to complete this review.

9. These difficulties are aggravated by Plaintiffs' allegations that there is a "separate" file of documents responsive to the Oversight Committee's request.  Identifying any documents that would be responsive *only* to the Committee's requests would require exhaustive manual review of each document.  Sufficient time does not exist to conduct this manual review and comply with the Court's December 14 deadline.  There is no readily recognizable means of conducting this review electronically or through the use of search terms that would provide with certainty a full set of documents responsive *only* to the Committee's request.

10. There is no doubt that, in view of all the difficulties mentioned above, compliance with the Court's December 14 deadline will require Defendants to produce documents that contain privileged information.  Many documents are intra-agency emails and other materials that discuss, analyze, and recommend actions concerning a number of decisions at issue in this litigation.  Numerous documents, for example, contain Census Bureau and DOC officials' reactions and analysis of census operations, statistical data, and demographic data.  It is also safe to say that the information in many of these documents is pre-decisional and deliberative.  If pre-decisional, deliberative communications are released to the public as a result of the Court's Order, DOC and Census

---

[1] For example, under ordinary circumstances, a hard drive could be made available at DOC's Relativity contractor headquarters in New York City.  But I understand local COVID-19 restrictions and employee safety procedures of DOC's Relativity contractor preclude the ability to make a hard drive available for pickup or delivery in time to meet the Court's December 14 deadline.

DECLARATION OF BRIAN D. DIGIACOMO
Case No. 5:20-cv-05799-LHK

Bureau employees will be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency decisionmakers. This lack of candor would seriously impair DOC's and the Census Bureau's ability to foster the forthright, internal discussions necessary for efficient and proper Executive Branch decisionmaking related to the census or on any other matter.

11. In addition, a significant number of these documents—at least 22,568—likely contain requests for, and discussions of, confidential legal advice between DOC and DOJ attorneys and their clients in the Census Bureau and DOC. Among other things, this includes drafts of litigation-related documents, such as briefs, motions, and declarations. Release of this and other legal advice would destroy the privileged nature of communications between the attorneys and their clients, and would reveal attorney work product prepared in anticipation of litigation. Given the many lawsuits surrounding the 2020 Census, numerous documents have been prepared by officials in the Census Bureau and in DOC for use in, or in anticipation of, litigation.

12. Finally, a significant number of documents—as many as 2,944—are likely subject to Executive privilege. These documents potentially include communications between federal agency personnel and presidential advisers or members of their staff in the Office of the President.

I have read the foregoing and it is all true and correct.

DATED this 12th day of December, 2020

_____

Brian D. DiGiacomo

Assistant General Counsel for Employment, Litigation, and Information