[Counsel identified on signature pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| NATIONAL URBAN LEAGUE, et al., | CASE NO. 5:20-cv-05799-LHK |
|---|---|
| Plaintiffs, | **JOINT DISCOVERY STATUS REPORT** |
| v. | |
| WILBUR L. ROSS, JR., et al., | |
| Defendants. | |

Pursuant to the Court's Order on December 18, 2020 (Dkt. 396), the parties to this action, by their respective counsel, respectfully submit the following Joint Discovery Status Report.

## I.     BACKGROUND

On December 13, 2020, the Court entered an Amended Order ("December 13 Amended Order") (Dkt. 380), clarifying the Court's December 10, 2020 Order to Compel (Dkt. 372), which granted Plaintiffs' motion to compel.  Among other things, the December 13 Amended Order required Defendants to produce all summary report data responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues, and improprieties on December 14, 2020; to provide a 30(b)(6) witness on the limited topics of Defendants' retention, organization, collection, review, and production of documents and data, as well as the search functionalities and capabilities of Defendants' various databases; and to produce, on a rolling basis from December 14 through December 21, documents sufficient to show the Bureau's current data-processing plans, procedures, and schedule, and documents responsive to the November 19, 2020 letter from the House Committee on Oversight and Reform to Secretary Wilbur L. Ross.  Dkt. 380 at 6, 9.  The December 13 Amended Order also ordered the parties to file a joint statement proposing an expedited schedule to produce a privilege log and to brief privilege disputes.  *Id.* at 9.

Pursuant to the Court's December 13 Amended Order, the parties filed a Joint Statement re: Privilege Log and Disputes (Dkt. 382), and the Magistrate Judge Panel subsequently entered an Order on Further Procedures for *In Camera* Review of Documents and Privilege Logs ("Magistrate Judge Panel Order") (Dkt. 383).  The Magistrate Judge Panel further ordered the following privilege review schedule:

> For the December 14 privilege log, Plaintiffs must provide a list of challenged entries by December 16 at 3:00 p.m.; counsel must confer regarding any privilege disputes by December 16 at 7:00 p.m.; and the parties must file simultaneous briefs and any supporting declarations on the privilege issues by December 17 at noon.  Plaintiffs must designate their highest-priority objections in their brief and provide a proposed order that tracks the challenged privilege entries.  Defendants must lodge the privileged documents with the undersigned Magistrate Judges and file the log (as revised to reflect any changes from the meet and confer process) by December 17 at noon.

> By December 21 at 7:00 p.m., Defendants must produce a second privilege log including any additional documents that have been withheld as privileged up to the time of the final production. For the December 21 log, Plaintiffs must provide a list of challenged entries by December 22 at 3:00 p.m.; counsel must confer regarding any privilege disputes by December 22 at 7:00 p.m.; and the parties must file simultaneous briefs and any supporting declarations on the privilege issues by December 23 at noon. Plaintiffs must designate their highest-priority objections in their brief and provide a proposed order that tracks the challenged privilege entries. Defendants must log the privileged documents with the undersigned Magistrate Judges and file the log (as revised to reflect any changes from the meet and confer process) by December 23 at noon.

*Id.* at 2.[1] The Magistrate Judge Panel also outlined the process for *in camera* review and post-privilege order document production. *Id.* at 2-3.

Because Defendants did not provide a privilege log on December 14, on December 17, Plaintiffs filed a Statement re: Privilege Logs (Dkt. 389) describing the situation and proposing a modified privilege log schedule requiring Defendants to provide a privilege log on December 17 so that two rounds of challenges to Defendants' privilege claims as contemplated by the Magistrate Judge Panel Order could still occur. Defendants filed a Response (Dkt. 390), explaining that there were no documents withheld from their December 14 production, and that there were not in a position to provide a log on December 17 with a significant number of documents.

In light of the parties' filings regarding privilege logs, the Magistrate Judge Panel ordered Defendants to show cause in writing "why they should not be found to have waived all privileges in connection with the documents responsive to Plaintiffs' pending document requests and those ordered produced by Judge Koh in ECF 372 and 380." Dkt. 392 at 2. Pursuant to the order to show cause, Defendants and Plaintiffs both filed responses. Dkts. 398, 400. The Magistrate Judge Panel has not issued any further order on the issue.

## II.   DOCUMENT PRODUCTIONS

On the evening of Monday, December 14, 2020, Defendants made a production of 63,423 documents, which Plaintiffs were able to load on December 15, 2020 after Defendants provided

---

[1] All times referenced in PT.

an updated load file at approximately 11:40 a.m. PT on December 15, 2020. Because the parties' Joint Statement re: Privilege Log and Disputes (Dkt. 382) indicated that Defendants would not be making productions every day, the Magistrate Judge Panel Order ordered daily rolling productions.

On December 16, 2020, Defendants made another production of 4,000 documents. On December 17, 2020, Defendants made another production of 4,000 documents. On December 18, 2020, Defendants made another production of 4,052 documents. On December 19, 2020, Defendants made another production of 3,998 documents. On December 20, 2020, Defendants made another production of 3,913 documents. On December 21, 2020, Defendants made another production of 5,022 documents. Since December 1, 2020, Defendants have produced 89,228 documents.

### A. Missing Key Documents

**Plaintiffs' Position**

On December 14, 2020, Plaintiffs sent Defendants a letter regarding issues with Defendants' document production to date. Plaintiffs' letter detailed each Request for Production ("RFP"), and requested that the parties meet and confer on December 15 regarding Defendants' ongoing document production. Plaintiffs followed up with Defendants by email on December 15, again requesting a meet and confer, again on December 16, and again on December 17. Defendants responded via email to some, but not all, of Plaintiffs' requests, and provided limited information on specific requested documents. To date, the parties have not had a detailed meet and confer on these issues (which cover the scope and specifics of Defendants' productions to date, including where particular responsive materials are and whether all RFPs have been at least partially responded to).

While Plaintiffs are still reviewing Defendants' document productions, thus far Plaintiffs believe Defendants' productions remain woefully deficient. While Defendants represented that the Census Integration Group ("CIG") documents would provide information responsive to Plaintiffs sufficient-to-show requests, *see, e.g.*, Dkt. 371 at 3, those materials do not provide the

detail nor granularity that Plaintiffs seek. For example, Plaintiffs' RFP No. 4 seeks percentages of enumeration methods during NRFU at the national, state, county, and census tract levels. But Plaintiffs are not aware of any CIG presentations providing such a full set of information. As the Court-ordered 30(b)(6) depositions showed, the Census Bureau has access to the information Plaintiffs seek in their databases. But once again, Defendants forced Plaintiffs to wait through their lengthy Title 13 review process, only to provide redacted versions of documents that mostly contained only summary information and not the information Plaintiffs seek by way of their RFPs. Defendants were surely aware that the CIG presentations did not contain information sufficient to show the specific information sought by Plaintiffs' RFPs, despite Defendants' representations to Plaintiffs in meet and confers. The Bureau's 30(b)(6) deponent plainly testified that various data that Plaintiffs seek are readily available from the Bureau's databases. *See, e.g.*, Dec. 17, 2020 Adams Depo. Tr. (rough) at 41:7-43:4, 76:16-78:12, 101:17-102:3. Contrary to Defendants' assertions below, an interrogatory is not necessary for Defendants to pull responsive data from their databases. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases …."); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (denying third party Google's motion to quash government subpoena which required production of information from databases, despite the need for Google to create "new code to format and extra query and URL data from many computer banks"). Defendants should have already been querying these databases for information responsive to Plaintiffs' RFPs from the get go, rather than forcing Plaintiffs to seek a 30(b)(6) deposition to determine that such information exists in the Bureau's databases.

Moreover, Defendants have failed to provide, to date, the most recent Title 13 "protocol" document that was put in place to guide, ostensibly, the Title 13 review and production in this very case. According to the declaration of Bureau Chief Scientist John Abowd, that document was apparently created on December 7—which itself tells you how long Defendants waited before even *starting* any review of materials that would be produced pursuant to Plaintiffs'

November 17, 2020 RFPs—and is critical to assessing whether Defendants are making aggressive and unjustified Title 13 withholdings and redactions. But it has not been produced.

Plaintiffs have raised these issues with Defendants and hope to resolve them quickly, but at this point are not certain if Defendants will ever timely produce the critical materials requested. As a result—and particularly given Defendants' remarkable position set forth below that Defendants' ongoing defiance of Court orders in this case and discovery failings are somehow all *Plaintiffs'* fault—Plaintiffs expect they will have to very shortly seek alternative means of obtaining this information—including an inspection demand for Plaintiffs' experts to obtain direct access to inspect the core data itself, via Defendants' relevant databases and programs. Plaintiffs believe this is covered by the Court's earlier orders, but to the extent Defendants refuse to allow this inspection, will shortly ask the Court to compel Defendants' compliance.

**Defendants' Position**

Defendants refer the Court to their omnibus response to Plaintiffs' statement, in part C below.

**B.     Missing Key Custodians and Sources**

**Plaintiffs' Position**

To date, Defendants have produced no custodian documents for Timothy P. Olson and Enrique Lamas. Mr. Olson was identified in Defendants' response to Plaintiffs' RFPs as a custodian for which Defendants would be producing documents. Mr. Lamas was identified by Plaintiffs as a custodian from which documents should be produced. Both Mr. Olson and Mr. Lamas were identified on Plaintiffs' list of priority custodians, to which Defendants stated no objection. Additionally, Defendants have collected, but not searched, reviewed, or produced *any* documents for ten custodians identified by Plaintiffs as custodians from which documents should be produced (based on Defendants' initial disclosures of the individuals likely to have information relevant to this litigation). This information was disclosed in a reference sheet provided to Defendants' Rule 30(b)(b) witnesses, outlining the steps that the Census Bureau took

to collect, review, and produce documents in response to Plaintiffs' requests for production. Plaintiffs have raised this issue with Defendants and hope to resolve it quickly, but may be forced to seek relief from the Court as to this issue as well.

Document productions from Defendants *this week* also revealed a number of sources from which Defendants should have already been producing data. But Defendants' approach of producing predominantly data from email custodians rather than documents from known networked repositories has led to productions of far more irrelevant documents than relevant ones.

For example, as the Court is aware, data quality and accuracy in the 2020 Census is one of the key issues in this case. The Bureau has a "Data Quality Executive Governance Group," or "EGG." This EGG has its own email list (2020.data.quality.egg.list@census.gov), and its own networked location (\\it171oafs-oa03.boc.ad.census.gov\DEMO_SHARE\2020_Quality) where presentations are stored, which appear specifically *not* shared over email. Given the membership of this EGG, there is no way Defendants could not have known about the EGG, its email, and its networked location. Rather than produce these documents in the first instance, Defendants never identified them as a likely source of information. Defendants instead waited until Plaintiffs happened upon this information in their document productions this week. Now, as the discovery period nears its close, Defendants will surely cry that these documents must pass Title 13 review—something that should have started the day after Defendants received Plaintiffs' RFPs in mid-November.

Similarly, Defendants' productions indicate that the majority of documents provided to OIG are saved on a shared drive. Defendants' production further indicates that an administrative search for anything to or from an oig.doc.gov email domain would yield a complete production of such documents. OIG has started inquiries into numerous facets of the 2020 Census directly relevant to this case, including data quality. Rather than provide documents from these locations, Defendants are only producing materials to the extent they traveled over the specifically identified custodial emails. These materials should have been produced long ago.

As a last example, Plaintiffs seek information about communications with enumerators, including enumerator complaints or concerns with data collection. Defendants used at least the email fld.regional.directors@census.gov to communicate to regional field directors, and likely there are other such email addresses. But Defendants do not appear to have even tried to pull emails from these addresses in response to Plaintiffs' RFPs. Defendants' production further suggests that instances of fraud or complaints could be emailed to rumors@census.gov or provided through an oig.doc.gov email domain, yet Defendants do not appear to have even tried to pull emails from these locations either. Finally, the Census Bureau's 30(b)(6) witness testified that at least some enumerator complaints would come through regular channels and be logged in the Communications Directorate. But no such documents appear to have been produced.

Plaintiffs have raised these issues with Defendants and had hoped to resolve them quickly, but given Defendants' remarkable "omnibus" position set forth below that Defendants' ongoing defiance of Court orders in this case and discovery failings are somehow all *Plaintiffs'* fault—Plaintiffs expect they will have to shortly seek additional relief from the Court once again.

**Defendants' Position**

Defendants refer the Court to their omnibus response to Plaintiffs' statement, in part C below.

C.     **"Bloated" Production**

**Plaintiffs' Position**

Of the documents produced to date, only 43% of the 89,228 documents are dated after September 1, 2020, according to the metadata provided. And hundreds of documents were produced with metadata that appears to reflect a collection date in December rather than the date of the documents, further skewing the 43%. Additionally, documents for the majority of custodians—including custodians identified by Plaintiffs as priority custodians, e.g., John Abowd, James Christy, Steven Dillingham, and Albert Fontenot—abruptly end on November 19, 2020. Productions in December 2020 come from only one custodian, "Census Bureau" and, as previously noted, the metadata in the vast majority of these documents appears to reflect a

collection date in December, as opposed to the actual dates of the documents, which go back as far as 2011. Plaintiffs have also identified over 4,500 documents that are wholly irrelevant or junk email materials that have been included in Defendants' productions.

In their own words to this Court, Defendants dropped a "truckload" of 63,423 documents on Plaintiffs on December 14—after the Court granted Plaintiffs' motion to compel. They did so, they admit, with very little review of the materials. But they also very deliberately had the production dates largely stop a month prior—and there was no reason for that but for the fact that Defendants wanted to bury Plaintiffs with a ton of older documents while keeping many current documents safe within their custody for later review (which review, as far as Plaintiffs can tell, is ongoing).

Plaintiffs will continue to try and resolve these issues via meet and confer with Defendants, but given Defendants' remarkable "omnibus" position set forth below that Defendants' ongoing defiance of Court orders in this case and discovery failings are somehow all *Plaintiffs'* fault—Plaintiffs expect they will have to shortly seek additional relief from the Court once again.

**Defendants' Position**

To the extent Plaintiffs are unhappy with Defendants' document productions, they have only themselves to blame. Defendants explained to Plaintiffs during the December 2 meet and confer that they would focus their collection on email, rather than network drives that contain large volumes of documents and frequently contain information that would require Title 13 review. Instead, Defendants identified the custodians from whom they would be collecting email, and discussed with Plaintiffs the potential inclusion of additional custodians. Defendants then ran the search terms *Plaintiffs* proposed on the collected materials. Plaintiffs cannot now feign indignation when Defendants used *Plaintiffs'* search terms on the emails of custodians that the parties discussed. Until this filing, Plaintiffs had never contested this collection-and-search process. So to the extent Plaintiffs are unhappy with the results of the searches thus far, that is a product of their own broad, unfocussed, and over-inclusive search terms and requests.

Plaintiffs' complaints about the sufficient-to-show requests are no different. Defendants explicitly explained to Plaintiffs during the December 2 meet and confer that a number of the sufficient-to-show requests sought information that either was not available at the level of granularity Plaintiffs desired or would require creating new queries of Census's databases and subsequent Title 13 review. The same information was provided to Plaintiffs by the Census Bureau's 30(b)(6) witness. To provide Plaintiffs as much information as was reasonably available, Defendants identified specific sets of documents that would be most likely to contain the types of information Plaintiffs were seeking, and prioritized review and production of those materials. Plaintiffs cannot complain that Defendants have not *created* materials that do not currently exist to respond to the sufficient-to-show requests. Nor can they complain that data is not kept in precisely the format they want.

The other complaints Plaintiffs make in this statement are likewise issues they have never before raised with Defendants. For instance, prior to this statement, Plaintiffs had never broached their newfound desire to collect information from OIG email addresses, group email addresses such as fld.regional.directors@census.gov, or multi-custodian addresses such as rumors@census.gov. Similarly, Plaintiffs never previously complained about the cut-off dates for the first round of Defendants' collection and production. Had Plaintiffs raised that issue with Defendants, Defendants would have explained that, because Plaintiffs' requests seek the production of materials in real time *as those materials are being generated*, Defendants have had to choose cut-off dates for those collections and update those collections continuously.

Defendants have previously explained to Plaintiffs that the way they have sought to collect information about the operations of the Census Bureau is inefficient, unfocussed, and wasteful. Defendants explained that a better way to arrive at the information Plaintiffs want would be through *targeted* interrogatories. Plaintiffs, however, insisted on making Defendants respond to their burdensome and overbroad requests for production, and sought an order to compel Defendants to turn over voluminous materials in an expedited timeframe, thus preventing Defendants from updating the collection of documents before the production was due.

Defendants will continue to confer with Plaintiffs regarding the issues Plaintiffs have identified, but note that the manner in which Plaintiffs have pursued discovery has been counterproductive.

### D. Privilege Logs and Disputes

On December 14, Plaintiffs produced a privilege log corresponding to their December 8 production. This December 8 privilege log consisted of only 42 withheld or redacted documents. After Plaintiffs and Defendants met and conferred, Defendants agreed to produce 40 of the 42 withheld or redacted documents. Because the parties were able to come to agreement regarding their privilege disputes, neither Plaintiffs nor Defendants filed briefing regarding redacted or withheld documents. On December 21, Defendants provided Plaintiffs with a privilege log with 135 entries. Counsel for Plaintiffs responded by email immediately, given that Defendants have produced almost 90,000 documents and Defendants represented to the Court that 25,512 documents required privilege review. Pursuant to the Magistrate Judge Panel Order, Plaintiffs provided a list of objections today, and the parties met and conferred regarding the disputes. In the event that the parties are unable to resolve all disputes, they will file simultaneous briefings tomorrow.

**Plaintiffs' Position**

Prior to the parties' meet and confer, Defendants represented that approximately 19,000 documents and emails "to, from, or originating from" DOJ litigation counsel or Department of Commerce litigation counsel were withheld, but not logged, across the productions made through yesterday. In response, Plaintiffs clarified that communications involving attorneys other than the Department of Justice attorneys serving as litigation counsel in this case need to be logged. Of course, documents involving other Department of Commerce attorneys involved in the issues in this case (i.e., the timeline for data collection and data processing in the 2020 census) should be reflected on the privilege log so that Plaintiffs and the Court can assess whether such communications are properly protected by any privilege. In anticipation of this precise issue, Plaintiffs previously asked several times for a list of attorneys Defendants believe qualify as "litigation counsel," but, to date, none has been provided.

On the parties' meet and confer, Defendants agreed to provide Plaintiffs with a list of "litigation counsel" that Defendants carved out of the privilege log process, as well as the subset of that number that do not include any attorney from the Department of Justice.

As to the specific privilege log issues Plaintiffs raised, Defendants agreed to reconsider their position and respond in advance of the parties' briefing deadline tomorrow.

**Defendants' Position**

It is unclear why Plaintiffs raise the issue of privilege logs here, as any privilege disputes will be resolved by the parties or fully briefed to the Magistrate Judge Panel tomorrow. The same goes for Plaintiffs' concerns regarding DOJ and Department of Commerce litigation counsel, since the parties are in the process of conferring on this issue and Defendants intend to provide additional information to Plaintiffs on December 23.

### III.    30(b)(6) DEPOSITION

**Plaintiffs' Position**

As discussed in the Joint Statement filed on December 18, Plaintiffs maintain that neither witness was adequately prepared on various aspects of the noticed topics. Plaintiffs will provide Defendants a list of tailored questions which are critical to Plaintiff's case and which Defendants' deponents were unable to answer at the deposition. Plaintiffs will request that the Defendants provide written answers in a declaration or other document under penalty of perjury and are willing to meet and confer to the extent necessary to discuss these requests. The parties will apprise the Court if they cannot reach agreement on this issue.

**Defendants' Position**

Both Rule 30(b)(6) witnesses were adequately prepared to testify on the noticed topics. Tamara Adams, a mathematical statistician who has worked at the Census Bureau for twenty-two years, testified that she met with counsel for approximately twelve hours over the course of two days to prepare to testify on the noticed topics, about many of which she was already deeply knowledgeable. Defendants also provided to Plaintiffs the documents that Ms. Adams reviewed as part of her preparation, including a detailed, 12-page reference sheet outlining the steps that

the Census Bureau took to collect, review, and produce documents in response to Plaintiffs' requests for production. Ms. Adams then provided over five hours of testimony on a broad range of topics, including the exceedingly technical aspects of the Census Bureau's organization and management of data.

Likewise, Dr. Lawrence Anderson, the Deputy Chief Information Officer at the Department of Commerce, testified that he met with counsel on at least three separate occasions to prepare to testify on the noticed topics. Defendants also provided to Plaintiffs the documents that Dr. Anderson reviewed, including a separate reference sheet that outlined the Commerce Department's efforts to collect and produce documents in response to Plaintiffs' requests for production. Dr. Anderson also provided detailed testimony on the Commerce Department's organization and management of data. Both witnesses were well prepared to testify about the noticed topics, especially considering the overbroad nature of the noticed topics, *see* Defs.' Mot. for Protective Order, Dkt. 384, and the limited amount of time (three business days) between service of the original deposition notice and the date of the deposition.

To the extent that Ms. Adams or Dr. Anderson did not know answers to particular questions, those questions were generally outside the scope of topics authorized by the Court and noticed for the deposition. For example, Plaintiffs asked both witnesses about the steps that their respective agencies were taking with regard to data to effectuate the President's July 21, 2020 memorandum regarding the exclusion of illegal aliens from the apportionment base, a topic well outside the document collection and production issues relevant to the discovery in this case. If Plaintiffs believe that there are topics within the scope of the deposition notice on which the Rule 30(b)(6) witnesses were not prepared, Plaintiffs may seek that information through written discovery or any one of their five upcoming depositions. *See* Note 3, *supra*. Defendants are also willing to meet and confer on those issues and address any further questions concerning the litigation hold for this case.

| | | |
|---|---|---|
| 1 | Dated: December 22, 2020 | LATHAM & WATKINS LLP |
| 2 | | |
| 3 | | By: /s/ Sadik Huseny |
| | |     Sadik Huseny |
| 4 | | Sadik Huseny (Bar No. 224659) |
| 5 | | sadik.huseny@lw.com |
| | | Steven M. Bauer (Bar No. 135067) |
| 6 | | steven.bauer@lw.com |
| | | Amit Makker (Bar No. 280747) |
| 7 | | amit.makker@lw.com |
| | | Shannon D. Lankenau (Bar. No. 294263) |
| 8 | | shannon.lankenau@lw.com |
| | | **LATHAM & WATKINS LLP** |
| 9 | | 505 Montgomery Street, Suite 2000 |
| | | San Francisco, CA 94111 |
| 10 | | Telephone: 415.391.0600 |
| | | Facsimile: 415.395.8095 |
| 11 | | |
| | | Melissa Arbus Sherry (*pro hac vice*) |
| 12 | | melissa.sherry@lw.com |
| | | Richard P. Bress (*pro hac vice*) |
| 13 | | rick.bress@lw.com |
| | | Anne W. Robinson (*pro hac vice*) |
| 14 | | anne.robinson@lw.com |
| | | Tyce R. Walters (*pro hac vice*) |
| 15 | | tyce.walters@lw.com |
| | | Gemma Donofrio (*pro hac vice*) |
| 16 | | gemma.donofrio@lw.com |
| | | Christine C. Smith (*pro hac vice*) |
| 17 | | christine.smith@lw.com |
| | | **LATHAM & WATKINS LLP** |
| 18 | | 555 Eleventh Street NW, Suite 1000 |
| | | Washington, D.C. 20004 |
| 19 | | Telephone: 202.637.2200 |
| | | Facsimile: 202.637.2201 |
| 20 | | |
| | | *Attorneys for Plaintiffs National Urban League; League of Women Voters; Black Alliance for Just Immigration; Harris County, Texas; King County, Washington; City of San Jose, California; Rodney Ellis; Adrian Garcia; and the NAACP* |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | Dated: December 22, 2020 | By: /s/ Jon M. Greenbaum |
| | | Kristen Clarke (*pro hac vice*) |
| 25 | | kclarke@lawyerscommittee.org |
| | | Jon M. Greenbaum (Bar No. 166733) |
| 26 | | jgreenbaum@lawyerscommittee.org |
| | | Ezra D. Rosenberg (*pro hac vice*) |
| 27 | | erosenberg@lawyerscommittee.org |
| | | Ajay Saini (*pro hac vice*) |
| 28 | | asaini@lawyerscommitee.org |

Maryum Jordan (Bar No. 325447)
mjordan@lawyerscommittee.org
Pooja Chaudhuri (Bar No. 314847)
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Wendy R. Weiser (*pro hac vice*)
weiserw@brennan.law.nyu.edu
Thomas P. Wolf (*pro hac vice*)
wolft@brennan.law.nyu.edu
Kelly M. Percival (*pro hac vice*)
percivalk@brennan.law.nyu.edu
**BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone:  213.385.2977
Facsimile:  213.385.9089

*Attorneys for Plaintiff City of San Jose*

|   |   |
|---|---|
|   | Doreen McPaul, Attorney General<br>dmcpaul@nndoj.org<br>Jason Searle (*pro hac vice*)<br>jasearle@nndoj.org<br>**NAVAJO NATION DEPARTMENT OF JUSTICE**<br>P.O. Box 2010<br>Window Rock, AZ 86515<br>Telephone: (928) 871-6345<br><br>*Attorneys for Navajo Nation* |
| Dated: December 22, 2020 | By: /s/ Danielle Goldstein<br>Michael N. Feuer (Bar No. 111529)<br>mike.feuer@lacity.org<br>Kathleen Kenealy (Bar No. 212289)<br>kathleen.kenealy@lacity.org<br>Danielle Goldstein (Bar No. 257486)<br>danielle.goldstein@lacity.org<br>Michael Dundas (Bar No. 226930)<br>mike.dundas@lacity.org<br>**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**<br>200 N. Main Street, 8th Floor<br>Los Angeles, CA 90012<br>Telephone: 213.473.3231<br>Facsimile: 213.978.8312<br><br>*Attorneys for Plaintiff City of Los Angeles* |
| Dated: December 22, 2020 | By: /s/ Michael Mutalipassi<br>Christopher A. Callihan (Bar No. 203010)<br>legalwebmail@ci.salinas.ca.us<br>Michael Mutalipassi (Bar No. 274858)<br>michaelmu@ci.salinas.ca.us<br>**CITY OF SALINAS**<br>200 Lincoln Avenue<br>Salinas, CA 93901<br>Telephone: 831.758.7256<br>Facsimile: 831.758.7257<br><br>*Attorneys for Plaintiff City of Salinas* |
| Dated: December 22, 2020 | By: /s/ Rafey S. Balabanian<br>Rafey S. Balabanian (Bar No. 315962)<br>rbalabanian@edelson.com<br>Lily E. Hough (Bar No. 315277)<br>lhough@edelson.com<br>**EDELSON P.C.**<br>123 Townsend Street, Suite 100<br>San Francisco, CA 94107 |

|   |   |
|---|---|
|   | Telephone: 415.212.9300<br>Facsimile: 415.373.9435<br><br>Rebecca Hirsch (*pro hac vice*)<br>rebecca.hirsch2@cityofchicago.org<br>**CORPORATION COUNSEL FOR THE CITY OF CHICAGO**<br>Mark A. Flessner<br>Stephen J. Kane<br>121 N. LaSalle Street, Room 600<br>Chicago, IL 60602<br>Telephone: (312) 744-8143<br>Facsimile: (312) 744-5185<br><br>*Attorneys for Plaintiff City of Chicago* |
| Dated: December 22, 2020 | By: /s/ Donald R. Pongrace<br>Donald R. Pongrace (*pro hac vice*)<br>dpongrace@akingump.com<br>Merrill C. Godfrey (Bar No. 200437)<br>mgodfrey@akingump.com<br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>2001 K St., N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 887-4000<br>Facsimile: 202-887-4288<br><br>*Attorneys for Plaintiff Gila River Indian Community* |
| Dated: December 22, 2020 | By: /s/ David I. Holtzman<br>David I. Holtzman (Bar No. 299287)<br>David.Holtzman@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>Daniel P. Kappes<br>Jacqueline N. Harvey<br>50 California Street, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 743-6970<br>Fax: (415) 743-6910<br><br>*Attorneys for Plaintiff County of Los Angeles* |

| | |
|---|---|
| DATED:  December 22, 2020 | JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General<br><br>JOHN V. COGHLAN<br>Deputy Assistant Attorney General<br><br>AUGUST E. FLENTJE<br>Special Counsel to the Assistant<br> Attorney General<br><br>ALEXANDER K. HAAS<br>Branch Director<br><br>DIANE KELLEHER<br>BRAD P. ROSENBERG<br>Assistant Branch Directors<br><br>*/s/ Alexander V. Sverdlov*<br>ELLIOTT M. DAVIS<br>ALEXANDER V. SVERDLOV<br>  (New York Bar No. 4918793)<br>STEPHEN EHRLICH<br>JOHN J. ROBINSON<br>M. ANDREW ZEE<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division - Federal Programs Branch<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 305-0550<br><br>*Attorneys for Defendants* |

## **ATTESTATION**

I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

Dated: December 22, 2020               **LATHAM & WATKINS LLP**

By:  */s/ Sadik Huseny*
       Sadik Huseny