1    [Counsel identified on signature pages]

2

3

4

5

6

7

8

9

10

11                          UNITED STATES DISTRICT COURT

12                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                               SAN JOSE DIVISION

14

15   NATIONAL URBAN LEAGUE, et al.,          CASE NO.  5:20-cv-05799-LHK

16                        Plaintiffs,         **JOINT DISCOVERY STATUS**
                    v.                        **REPORT**
16

17   WILBUR L. ROSS, JR., et al.,
                                              Place:  Courtroom 8
18                        Defendants.         Judge:  Hon. Lucy H. Koh

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Pursuant to Civil Local Rule 16-10(d) and the Court's Order, the parties to this action, by

2   their respective counsel, respectfully submit the following Joint Discovery Status Report.

3   Pursuant to the Court's December 18 Order (Dkt. 396), the parties submitted a Joint

4   Discovery Status Report on December 22, 2020 (Dkt. 402), which described the parties'

5   numerous discovery disputes in detail.  Essentially all of those disputes remain ongoing, and the

6   parties respectfully request that the Court definitively resolve these disputes at the January 4,

7   2021 Case Management Conference.

8   **I.      DOCUMENT PRODUCTIONS**

9   **Plaintiffs' Position**

10  **A.      Introduction and Summary**

11  Plaintiffs note one important request at the outset.  It is not disputed that, as of the filing

12  of this report, certain information that Plaintiffs deem critical to their case has not yet been

13  produced by Defendants.  The parties discuss their views of this issue below.  But in light of

14  where we are in the schedule, and the limited amount of time left in the fact discovery period and

15  the inability to process additional documents and information (whenever Defendants eventually

16  produce it) so that it is usable for deposition and expert reports, Plaintiffs request a 14-day

17  extension to the fact discovery cutoff for Plaintiffs' discovery and initial expert report.  Plaintiffs

18  do not see any other way, at this point, to avoid substantial prejudice to their case given

19  Defendants' conduct during discovery.  As set forth in the chart below, this limited extension

20  will not move the trial date in this case.

21  Plaintiffs issued 22 tailored Requests for Production on Defendants on November 17,

22  2020, a few days after the Court ordered a narrow 8-week fact discovery period in this case.

23  Plaintiffs took those few days to ensure that the Requests were as limited as possible, with fully

24  half of the requests crafted as sufficient-to-show RFPs aimed at critical Census data/reports

25  necessary to understand the 2020 collection and NRFU efforts and metrics, so as to assess the

26  reasonableness of the count and Defendants' decisions with respect thereto, including as to

27  undercounts and differential undercounts.  Plaintiffs did not even use the full allotment of their

28  25 RFPs.

1    What should have followed was a straightforward document production period, whereby

2    the parties would meet and confer and expeditiously resolve any disputes given the extremely

3    limited 8-week fact discovery period, and Plaintiffs would obtain the necessary materials in early

4    December.  That would have allowed for (i) Plaintiffs to issue tailored RFAs and Interrogatories,

5    focused on the core issues in the case; (ii) Plaintiffs to take proper depositions of Defendants'

6    fact and Rule 30(b)(6) witnesses, prior to the January 7, 2021 fact discovery cutoff, and (iii)

7    Plaintiffs' experts to properly assess the relevant census metrics, including critical data related to

8    the claimed "completion rates" in this case, collection metrics and processes, and

9    undercounts/differential undercounts, so as to be able to put together appropriate reports by the

10   January 14, 2020 initial expert report deadline.  It was a very tight schedule.  But it would have

11   worked had Defendants complied with their obligations.

12   Instead, Defendants chose a different path—stalling and fighting Plaintiffs at essentially

13   every turn.  They resisted meet and confers and resisted production, waiting weeks before

14   agreeing to talk to Plaintiffs.  Then, over a two-week period in early December, they produced

15   175 and then 516 documents total—most of which were duplicates and irrelevant materials, such

16   hundreds of calendar entries, as the Court has previously found.  They produced no reports or

17   data on the collection metrics, claiming the material was forthcoming but undergoing

18   confidentiality review.  They only started true production when ordered to by the Court—after

19   Plaintiffs filed a motion to compel.  And even then, the amount of effort required by this Court

20   and the Magistrate Judge Panel has been significant, as a review of the docket in this case shows.

21   Defendants' position in the past has been that it is *Plaintiffs'* fault that Defendants have

22   failed to comply with their discovery obligations.  That is a remarkable and false assertion.  And

23   Defendants' secondary argument—that all should now be fine because they have provided

24   Plaintiffs with over 80,000 documents—is similarly not true.  Plaintiffs continue to wait for a

25   large but tailored set of critical materials that Defendants have never produced—despite

26   agreement and Court orders—that Defendants know are critical for Plaintiffs' case.

27   Two days ago, on Monday, December 28, the parties had a two hour meet and confer on

28   these issues.  The below is a portion of Plaintiffs' agenda for that meeting:

**Plaintiffs' Issues with Defendants' Production**

- Failure to produce critical, sufficient-to-show materials on Census metrics (including via CIG reports, despite claims), contrary to Court order and availability of data per 30(b)(6) deposition

- Failure to produce current plans/schedule, contrary to Court order

- Failure to produce any recent documents, but instead decide to make mid/late December *en masse* productions that had arbitrary cutoffs in November

- Failure to produce any documents from key custodians (Olson, Lamas) contrary to discovery schedule and representations to Court

- Failure to produce any documents from 10 of the identified custodians, contrary to agreement

- Failure to produce documents from known relevant sources—i.e., EGG (Data Quality Executive Governance Group); OIG shared drive repository; enumerator complaint and communications emails/repositories

- Failure to produce Dec. 7 Title 13 protocol document, ostensibly used for CIG review

- Failure to state which RFPs have been fully responded to and which have not (per Plaintiffs' 12/14 letter); no productions for one week

- Failure to start any meaningful review until early December, shortly before Plaintiffs had to file a MTC

- Failure to review 60k+ document release, ensuring many junk files (meaning blank pages, logo files, etc.) and waiving arguments that release of claimed nonresponsive documents is prejudicial

Plaintiffs discuss the specifics of some of these failings below.  But there is a recent positive note, in all this.  At the two-hour meet and confer, Defendants' counsel Diane Kelleher took the lead, and the parties had a productive conversation about how to move forward with the core discovery Plaintiffs have not received in the case.  Then, yesterday evening, Defendants responded to the issues above with a detailed email/attachments, and assurances that they would keep working on producing, for example, the data and reports laying out Census collection operations and metrics as asked for in Plaintiffs' sufficient-to-show and similar requests (and previously ordered to be produced by the Court, but not yet produced).  Defendants also stated

1    that they would work on Plaintiffs' other requests, including materials from priority

2    custodians/sources necessary for depositions—where in some instance not a single document had

3    been produced (i.e., from Tim Olson—the head of the Census Bureau NRFU/data collection

4    efforts, who previously wrote among other things, that it was "ludicrous to think we can

5    complete 100% of the nation's data collection earlier than 10/31";  Enrique Lamas—a longtime

6    Census Bureau veteran heavily involved in, among other things, Census Bureau implementation

7    of the Presidential Memorandum; and the Data Quality Executive Governance Group, a core set

8    of players in the census data processing underway).

9         Plaintiffs have received promises before, from Defendants.  And frankly, Plaintiffs have

10    yet to see the materials being promised—and were disappointed to see yesterday that, instead of

11    focusing all available resources on complying with their Court-ordered obligations, Defendants

12    are still doing things like filing a frivolous motion for a three-judge panel in this case, all in the

13    apparent hopes of continual delay.[1]  At the same time, Plaintiffs simply want to finish discovery

14    in this case.  Plaintiffs are willing to give Defendants a final opportunity to do so, prior to filing

15    another motion to compel, this time accompanied by a far-reaching motion for procedural and

16    substantive sanctions.

17         **B.    Missing Key Documents**

18         On December 14, 2020, Plaintiffs sent Defendants a letter regarding issues with

19    Defendants' document production to date.  Plaintiffs' letter detailed each Request for Production

20    ("RFP"), and requested that the parties meet and confer on December 15 regarding Defendants'

21    ongoing document production.  Plaintiffs followed up with Defendants by email on December

22    15, again requesting a meet and confer, again on December 16, and again on December 17.

23

24         _____

25    [1] Apparently, Defendants now believe that the exact same allegations that have been in
      Plaintiffs' complaints since the inception of this case, in August 2020, in fact are truly claims for
      statistical sampling (nowhere to be found in the complaint) brought under an Appropriations Bill

26    cause of action (nowhere to be found in the complaint) that mandates a three-judge panel be
      appointed to hear such a claim brought under the Act.  And their attempt to take one line from

27    this Court's recent order denying Defendants' motion to dismiss and for stay, Dkt. 401, and twist
      it into support for the motion is shameful—and Plaintiffs do not use that word lightly. The filing
      comes awfully close to Rule 11, but Plaintiffs are not interested in such a delay, and instead will

28    respond in due course.

1    Defendants responded via email to some, but not all, of Plaintiffs' requests, and provided limited

2    information on specific requested documents.

3              While Plaintiffs are still reviewing Defendants' document productions, thus far Plaintiffs

4    believe Defendants' productions remain woefully deficient.  While Defendants represented that

5    the Census Integration Group ("CIG") documents would provide information responsive to

6    Plaintiffs sufficient-to-show requests, *see, e.g.*, Dkt. 371 at 3, they simply do not.  For example,

7    Plaintiffs' RFP No. 4 seeks percentages of enumeration methods used during NRFU at the

8    national, state, county, and census tract levels.  But Plaintiffs are not aware of any CIG

9    presentations providing such a full set of information.  As the Court-ordered 30(b)(6) depositions

10   showed, the Census Bureau has access to the information Plaintiffs seek in their databases.  But

11   once again, Defendants forced Plaintiffs to wait through their lengthy Title 13 review process,

12   only to provide redacted versions of documents that mostly contained only summary information

13   and not the information Plaintiffs seek by way of their RFPs.  Defendants were surely aware that

14   the CIG presentations did not contain information sufficient to show the specific information

15   sought by Plaintiffs' RFPs, despite Defendants' representations to Plaintiffs in meet and confers.

16   The Bureau's 30(b)(6) deponent plainly testified that various data that Plaintiffs seek are readily

17   available from the Bureau's databases.  *See, e.g.*, Dec. 17, 2020 Adams Depo. Tr. (rough) at

18   41:7-43:4, 76:16-78:12, 101:17-102:3.  And contrary to Defendants' assertions, an interrogatory

19   is not necessary for Defendants to pull responsive data from their databases.  *See, e.g.*, *Apple Inc.*

20   *v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug.

21   14, 2013) ("Courts regularly require parties to produce reports from dynamic databases ….");

22   *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (denying third party Google's

23   motion to quash government subpoena which required production of information from databases,

24   despite the need for Google to "create new code to format and extract query and URL data from

25   many computer banks").  Defendants should have already been querying these databases for

26   information responsive to Plaintiffs' RFPs from the get go, rather than forcing Plaintiffs to seek a

27   30(b)(6) deposition to determine that such information exists in the Bureau's databases.

28            **C.    Missing Key Custodians and Sources**

1   To date, Defendants have produced no custodian documents for Timothy P. Olson and
2   Enrique Lamas.  Mr. Olson was identified in Defendants' response to Plaintiffs' RFPs as a
3   custodian for which Defendants would be producing documents.  Mr. Lamas was identified by
4   Plaintiffs as a custodian from which documents should be produced.  Both Mr. Olson and Mr.
5   Lamas were identified on Plaintiffs' list of priority custodians, to which Defendants stated no
6   objection.  Additionally, Defendants have collected, but not searched, reviewed, or produced *any*
7   documents for ten custodians identified by Plaintiffs as custodians from which documents should
8   be produced (based on Defendants' initial disclosures of the individuals likely to have
9   information relevant to this litigation).  This information was disclosed in a reference sheet
10  provided to Defendants' Rule 30(b)(b) witnesses, outlining the steps that the Census Bureau took
11  to collect, review, and produce documents in response to Plaintiffs' requests for production.
12  Plaintiffs have raised this issue with Defendants and hope to resolve it quickly, but may be
13  forced to seek relief from the Court as to this issue as well.

14  Defendants' document productions also revealed a number of sources from which
15  Defendants should have already been producing data.  But Defendants' approach of producing
16  predominantly data from email custodians rather than documents from known networked
17  repositories has led to productions of far more irrelevant documents than relevant ones.

18  For example, as the Court is aware, data quality and accuracy in the 2020 Census is one
19  of the key issues in this case.  The Bureau has a "Data Quality Executive Governance Group," or
20  "EGG."  This EGG has its own email list (2020.data.quality.egg.list@census.gov), and its own
21  networked location (\\it171oafs-oa03.boc.ad.census.gov\DEMO_SHARE\2020_Quality) where
22  presentations are stored, which appear specifically *not* shared over email.  Given the membership
23  of this EGG, there is no way Defendants could not have known about the EGG, its email, and its
24  networked location.  Rather than produce these documents in the first instance, Defendants never
25  identified them as a likely source of information.  Defendants instead waited until Plaintiffs
26  happened upon this information in Defendants' document productions.  Now, as the discovery
27  period nears its close, Defendants will surely cry that these documents must pass Title 13

28

1   review—something that should have started the day after Defendants received Plaintiffs' RFPs in

2   mid-November.

3          Similarly, Defendants' productions indicate that the majority of documents provided to

4   OIG are saved on a shared drive.  Defendants' production further indicates that an administrative

5   search for anything to or from an oig.doc.gov email domain would yield a complete production

6   of such documents.  OIG has started inquiries into numerous facets of the 2020 Census directly

7   relevant to this case, including data quality.  Rather than provide documents from these

8   locations, Defendants are only producing materials to the extent they traveled over the

9   specifically identified custodial emails.  These materials should have been produced long ago.

10         As a last example, Plaintiffs seek information about communications with enumerators,

11  including enumerator complaints or concerns with data collection.  Defendants used at least the

12  email fld.regional.directors@census.gov to communicate to regional field directors, and likely

13  there are other such email addresses.  But Defendants do not appear to have even tried to pull

14  emails from these addresses in response to Plaintiffs' RFPs.  Defendants' production further

15  suggests that instances of fraud or complaints could be emailed to rumors@census.gov or

16  provided through an oig.doc.gov email domain, yet Defendants do not appear to have even tried

17  to pull emails from these locations either.  Finally, the Census Bureau's 30(b)(6) witness testified

18  that at least some enumerator complaints would come through regular channels and be logged in

19  the Communications Directorate.  But no such documents appear to have been produced.

20         **D.      Improper Productions to Date And Failure to Provide Requisite Information**

21         Of the documents produced to date, only 43% of the 89,228 documents are dated after

22  September 1, 2020, according to the metadata provided.  And hundreds of documents were

23  produced with metadata that appears to reflect a collection date in December rather than the date

24  of the documents, further skewing the 43%.  Additionally, documents for the majority of

25  custodians—including custodians identified by Plaintiffs as priority custodians, e.g., John

26  Abowd, James Christy, Steven Dillingham, and Albert Fontenot—abruptly end on November 19,

27  2020.  Productions in December 2020 come from only one custodian, "Census Bureau" and, as

28  previously noted, the metadata in the vast majority of these documents appears to reflect a

1   collection date in December, as opposed to the actual dates of the documents, which go back as

2   far as 2011.  Plaintiffs have also identified over 4,500 documents that are wholly irrelevant or

3   junk email materials that have been included in Defendants' productions.[2]

4          In their own words to this Court, Defendants dropped a "truckload" of 63,423 documents

5   on Plaintiffs on December 14—after the Court granted Plaintiffs' motion to compel.  Dkt. 394 at

6   6.  They did so, they admit, with very little review of the materials.  But they also very

7   deliberately had the production dates largely stop a month prior—and there was no reason for

8   that but for the fact that Defendants wanted to bury Plaintiffs with a ton of older documents

9   while keeping many current documents safe within their custody for later review (which review,

10  as far as Plaintiffs can tell, is ongoing and will be subsequently provided according to

11  Defendants' omnibus statement).

12          **E.       Plaintiffs' Requested Relief**

13          Plaintiffs have raised these issues with Defendants multiple times, and until the meet and

14  confer on Monday, December 28—two days ago—had concluded that Defendants had no

15  intention of ever timely producing the critical materials requested.  Plaintiffs thus began

16  preparing a second motion to compel and a motion for sanctions, in light of the fact that

17  Defendants are *already* under Court order to produce many of these materials (the order granting

18  Plaintiffs' motion to compel, and then denying Defendants' motion for reconsideration and

19  clarifying the order to compel, Dkts. 372, 380).

20

21          [2] Non-responsive documents range from newsletters and trade emails, to vendor coupons and
22  political campaign fundraising solicitations.  With tens of thousands of documents yet reviewed,
    plaintiffs have already identified over 200 trump campaign fundraising emails addressed to
23  Secretary Ross, and emails completely unrelated to the census bureau, such as updates from the
    Western Pacific Regional Fishery Management Council.  There are over 1,300 bureau wide
24  emails from census@subscriptions.gov with things like "twitter digests," blog posts, daily news,
    and holiday updates.  We have identified vendor promotions and coupons for pizza deliveries,
25  restaurants, GNC, rental cars, iPhone pre-orders, water filters, Verizon Fios, audio mixing
    equipment, hand bags (close to 40 just from Vera Bradley), and "Vegas Movie Studio" video
26  editing software.  Trade and special interest emails include over 200 emails from Law360, over
    100 news updates about Caracas, Venezuela, and press releases and event reminders from the
27  Washington Institute (a non-profit focused on American interests in the middle east).
    Additionally, we received dozens of LinkedIn request and notifications, emails from the
28  Kennedy Center regarding arts programing, over 50 emails from the peace corps about job
    openings, and even a unicorn emoji.

1   Things changed with the most recent meet and confer.  There is now a glimmer of hope
2   that Defendants will produce the key materials requested, and that Defendants understand that
3   they are in fact under previous Order from this Court to do so.  As a result, Plaintiffs believe the
4   best course of action right now is for the Court to modify the schedule very slightly—as set forth
5   below—to provide 2 more weeks of discovery.  Plaintiffs will remain vigilant, of course, and if
6   Defendants do not meaningfully produce—notwithstanding these late promises—Plaintiffs will
7   file a motion to compel and for sanctions early next week.

8   **Defendants' Position**

9   Plaintiffs' aspersions about Defendants' motion to convene a three-judge Court pursuant
10  to the provisions of 28 U.S.C. § 2284 are not only inappropriate in the context of this discovery
11  status report, but are also irrelevant.  Plaintiffs are free to articulate their views in a timely
12  response; however, they should note that Defendants' motion merely follows the conclusions
13  that this Court has drawn about the nature of Plaintiffs' action.  And there is surely nothing
14  improper about Defendants raising threshold—and critical—legal issues to the attention of the
15  Court while working to satisfy Plaintiffs' extensive discovery requests.

16  Turning to Plaintiffs' complaints about that discovery, Defendants have undertaken
17  extensive efforts to satisfy Plaintiffs' discovery demands and have fully complied with the
18  Court's orders in this action.  Defendants have been transparent with Plaintiffs about which
19  custodians they were searching, and emphasized that Defendants would focus their collection on
20  email, rather than network drives (which contain large volumes of documents that could have to
21  undergo Title 13 review).  Defendants further identified for Plaintiffs the search terms that
22  Defendants would be using, and ran search terms that Plaintiffs proposed.  In the parties' last
23  joint case management statement, ECF No. 402, Plaintiffs raised—for the first time—a request
24  that Defendants collect information from OIG email addresses, group email addresses such as
25  fld.regional.directors@census.gov, or multi-custodian addresses such as rumors@census.gov.
26  Similarly, in that statement Plaintiffs raised, for the first time, issues about the cut-off dates for
27  the first round of Defendants' collection and production.
28

1    In order to resolve these issues without the need for this Court's intervention, Defendants

2    have engaged in negotiations with Plaintiffs regarding the best way to address these disputes.  As

3    Defendants have repeatedly explained, many of Plaintiffs' requests cannot be easily fulfilled

4    because the information is not readily available in the level of granularity that Plaintiffs want.

5    The Census Bureau's Rule 30(b)(6) witness testified to many of these limitations, and made clear

6    that deriving this information would require crafting new computer code to query or extract

7    information in novel ways from Census Bureau data systems.  In other words, Plaintiffs are

8    seeking information beyond the ways it is normally kept or extracted in the ordinary course of

9    business, and Defendants do not believe Plaintiffs are entitled to have the Census Bureau *create*

10   materials to respond to Plaintiffs' document requests.  Nonetheless, Defendants are committed to

11   finding ways to resolve the impasse; in that spirit, Defendants report on the following issues,

12   which Defendants expect to satisfy what Plaintiffs have identified as their top priority items:

13   **1. Tim Olsen:**  As a result of a collection error, not all of Mr. Olsen's materials were

14   collected in late November; that error has been rectified, and Defendants will be producing

15   responsive documents to Plaintiffs from Mr. Olsen's files as soon as practically possible, and his

16   most recent documents (i.e., from late November to mid-December) will be produced by the end

17   of this week.

18   **2. Enrique Lamas:**  Mr. Lamas was included in the list of ten additional custodians

19   Plaintiffs had asked Defendants to search; Defendants, however, had not agreed to add Mr.

20   Lamas or any other of these custodians to their searches.  But Defendants understand Mr. Lamas

21   is a priority custodian for Plaintiffs, so his material is being collected and Defendants agree to

22   produce responsive material from his files to Plaintiffs by the end of this week.

23   **3. Post-November documents:**   Defendants have explained to Plaintiffs that they are

24   satisfying Plaintiffs' requests in two ways.  First, Defendants have collected various materials to

25   respond to Plaintiffs' sufficient-to-show requests manually; those documents have been collected

26   throughout the document review process, and do not have any firm date cut-off.  Indeed,

27   Defendants produced documents from as recently as December 10, 2020, reflecting the Census

28   Bureau's current timelines and plans.

Second, in an effort to satisfy the breadth of Plaintiffs' other requests, Defendants collected email materials in late November from both Census and Commerce custodians; the two agencies use different systems, which requires additional time to collect materials from each. The material collected in November was then sent to the contractor working with Commerce and Census and uploaded to the Relativity database and then reviewed and processed for production. The logistics of this process meant that, at the time the Court issued its Order compelling Defendants to produce documents, only those materials were available for production.  Because Plaintiffs' requests seek the production of materials in real time *as those materials are being generated*, Defendants are in the process of updating their late November collection to include materials through on or about December 12, 2020, and these materials are being processed for production.  Defendants note, however, that Plaintiffs appear to be dissatisfied with the results of Defendants' collections and search terms.  Accordingly, Defendants have discussed with Plaintiffs the possibility of targeting custodians or searches differently, or providing Plaintiffs other means of obtaining the information they want.  Doing so would alleviate the considerable burdens on the Commerce Department and Census Bureau, while streamlining for Plaintiffs the prioritized discovery materials to which they want access.  In the meantime, Defendants have produced documents related to the Census Bureau's most recent plans and schedule today to Plaintiffs via File Transfer Protocol.  The documents are current as of December 29, 2020.

**4. Databases:**  Plaintiffs have asked their experts be authorized for temporary access to relevant Census Bureau databases in order to access census data at the tract level.  This inspection would be lieu of litigating disputes over the adequacy of Defendants' responses to Plaintiffs' sufficient-to-show document requests.  The problem with this proposal is that there are stringent, statutory confidentiality protections for Census Bureau databases, as stipulated in  Title 13.  While Title 13 does permit access to census confidential data for, "temporary staff . . . to assist the Bureau in performing the work authorized by this title," 13 U.S.C. § 23(c), there is no statutory provision for opposing counsel or their experts.  *See* 13 U.S.C. § 9 (a) (stating that ". . . Copies of census reports which have been so retained shall be immune from legal process, and shall not without the consent of the individual or establishment concerned, be admitted as

1   evidence or used for any purpose in any action, suit, or other judicial or administrative

2   proceeding."); *Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) ("[S]ections 8(b) and 9(a) of the

3   Census Act embody explicit congressional intent to preclude all disclosure of raw census data

4   reported by or on behalf of individuals.  This strong policy of nondisclosure indicates that

5   Congress intended the confidentiality provisions to constitute a 'privilege' within the meaning of

6   the Federal Rules.  Disclosure by way of civil discovery would undermine the very purpose of

7   confidentiality contemplated by Congress.").

8         Defendants are considering whether they might run queries against the databases for

9   census tract level information and whether providing the reports would resolve your concerns,

10   but such search results would also implicate Title 13.  There are no databases with information at

11   the census tract level to which Title 13 does not apply.  In the interests of transparency,

12   Defendants have also provided the December 7, 2020 Title 13 Protocol, which Dr. Abowd cited

13   in his prior declaration (371-2 ¶ 16).

14         **5. Additional email accounts:** Defendants are prepared to produce emails sent to

15   rumors@census.gov and those emails will be added into Defendants' planned productions.

16   Defendants are still investigating what burdens collecting from the other additional email

17   accounts Plaintiffs have identified (regional directors' accounts; oig.doc.gov domain) would

18   entail beyond the burdens Plaintiffs' other requests have imposed.  Again, however, Plaintiffs

19   should target custodians or searches differently—rather than adding more requests—if they want

20   to alleviate the considerable burdens on the Commerce Department and Census Bureau while

21   streamlining for Plaintiffs the prioritized discovery materials to which they want access.

22         **6.  Search Terms**: During the meet and confer, the parties discussed whether there were

23   ways to narrow some of these outstanding items, either by prioritized substantive areas, date

24   ranges, custodians, or other search terms.  Defendants will also investigate which of Plaintiffs

25   search terms and strings are potentially causing the production of less responsive information.

26   Defendants believe such narrowing would be helpful and would allow them to efficiently focus

27   their resources.  The parties continue their efforts in this regard.

28

1    **7. Litigation Carve-out:**  Plaintiffs have requested additional information from

2    Defendants related to the litigation carve-out from Defendants' production (*i.e.*, Defendants'

3    effort to ensure that litigation-related material involving DOJ and DOC counsel, or material

4    generated by DOC or Census personnel connected with the litigation, not be included in

5    productions to Plaintiffs).  Defendants have provided all of Plaintiffs' prior-requested

6    information and are continuing to evaluate Plaintiffs' further questions as the meet-and-confer

7    process on this issue moves forward.

8    **8. Defendants' Responses to Plaintiffs' Interrogatories and Requests for**

9    **Admissions:**  Plaintiffs have sent Interrogatories and Requests for Admission to Defendants;

10   responses thereto are due on January 4, 2021 and January 7, 2021, respectively.  Defendants will

11   respond on those dates.  As noted below, the Court has set two different deadlines for the parties'

12   responses to these forms of discovery, with Defendants' responses being due sooner than

13   Plaintiffs'—a distinction between the parties to which Defendants previously objected.  ECF 371

14   at 14.

15   **9. Defendants' Discovery to Plaintiffs:**  Defendants also note they have served

16   discovery on Plaintiffs; Plaintiffs responded to Defendants' requests for production on December

17   29, 2020, noting many burden and breadth objections, far in excess of what Defendants have

18   claimed in their own responses.  Defendants will follow up with Plaintiffs on these objections.

19   Additionally, Defendants have also sent interrogatories and requests for admission to Plaintiffs;

20   responses to those discovery requests are due next week.

21   **II.    PRIVILEGE LOGS AND RELATED DISPUTES**

22   **A.    Privilege Log Disputes**

23   **Plaintiffs' Position**

24   Since December 1, Defendants have provided two privilege logs: the first containing 42

25   entries for Defendants' December 8 production; the second containing 135 entries for

26   Defendants' subsequent productions.

27

28

1    The parties resolved all disputes regarding the first (December 8) privilege log, with

2    Defendants agreeing to produce 42 of the 44 documents over which privilege was initially

3    claimed.

4    The parties submitting briefing regarding the second privilege log as to 63 disputed

5    privilege assertions.  *See* Dkts. 403, 404, 405, 406.  The Magistrate Judge Panel ordered

6    production of 39 of the log entries, and sustained the privilege assertions as to 24 of the log

7    entries.  *See* Dkt. 407 at 7.

8    **Defendants' Position**

9    Under the Court's Order (ECF 416), Defendants provided Plaintiffs with correct

10   information for the documents produced or logged from the set of documents referenced in Mr.

11   DiGiacomo's declaration (ECF 387-2).  Defendants have also made a proposal about how such

12   documents would be produced to the Magistrate Judges for in camera review.  Plaintiffs'

13   contention that Defendants December 29, 2020 Objections to Plaintiffs' Rule 30(b)(6) notice for

14   a DOC deposition reflect a skewed responsiveness determinations with respect to the specified

15   documents is wrong.  Defendants conducted a broad responsiveness review (*i.e.*, ECF 408-1 at

16   ¶ 9, noting "attorneys [were] to consider any document touching upon the 2020 Decennial

17   Census as responsive").  Nothing in Mr. DiGiacomo's declaration suggests that this broad

18   instruction meant "any document about the census except those about the Presidential

19   Memorandum."  And indeed, Plaintiffs have received such documents, DOC_0175753 to

20   175765.  Nor is there merit to Plaintiffs' intimation that there is something amiss in Defendants'

21   decision to segregate out these documents for additional attention.  The documents were

22   identified by simply looking for White House emails (ECF 408-1 at ¶ 9); searching by email

23   suffixes is not a substantive determination that these are "hot" documents central to this

24   litigation, as Plaintiffs allege (ECF 415 at 2).  As Plaintiffs begin to respond to Defendants'

25   requests for production, and perhaps the discovery disputes will begin to be less one-sided in this

26   matter, it is not difficult to imagine that Plaintiffs too may take additional review time with

27   documents from certain of their own custodians (*e.g.*, mayors, county commissioners, in-house

28   counsel, directors and officers, etc.).

**B.    "Executive Privilege" Documents**

The Magistrate Judge Panel also ordered production of "the 2,944 documents that declarant Brian DiGiacomo identified on December 12 as 'likely subject to Executive privilege' in ECF 376-2 ¶ 12, unless they were identified on the December 21 log and the privilege was not overruled in this order." *Id.*  Defendants filed an objection and motion for relief as to that latter part of the Magistrate Judge Panel order (Dkt. 408), Plaintiffs' responded, and the Court issued an order on that dispute just yesterday.  Dkt. 416.

**Plaintiffs' Position**

Pursuant to that order, the parties have agreed to propose the following audit procedures for the 2,477 documents at issue in the order:

1.  Defendants will provide a subset of documents to the Magistrate Judge Panel on or before January 3, 2021 for purposes of the audit;

2.  The subset will be comprised of:

    a.  every document hit when the document vendor searches for "census" "data collection" or "data processing"; plus

    b.  every document hit when the document vendor searches for "Presidential Memorandum" "PM" "apportionment," or "undocumented"; plus

    c.  a random sampling of 50 documents without families, and a random sampling of 50 documents with all of their family attachments (accompanied by an explanation to the Court as to how that random sample was pulled).

**Defendants' Position**

In the interests of simplifying the audit procedure the Court has ordered, Defendants propose making available for *in camera* review all the non-responsive materials that formed the basis of the relief Defendants sought in their Rule 72 motion.  This seems more straightforward than providing 4 categories of sampled documents as Plaintiffs suggest.  Defendants further propose that the Magistrate Judges exercise discretion to select which documents (and how

1    many) to subject to review.  To the extent the Magistrate Judges determine that the materials

2    they review are, indeed, non-responsive, Defendants request that the Court grant Defendants'

3    Rule 72 motion.

4         **C.      ~19,000 Documents Withheld and Not Logged**

5         **Plaintiffs' Position**

6              The Magistrate Judge Panel's Order After In Camera Review of Disputed Documents

7    Identified in Government's December Privilege Log (Dkt. 407) noted that "Defendants may be

8    withholding additional documents that do not appear on a privilege log" and

9    ordered:  "Additional explanation of this gap is required."  *Id.* at 3.  Although Defendants

10   complied with the order to provide Plaintiffs a list of "litigation counsel" that Defendants carved

11   out of the privilege log process, they still have failed to provide the basic information requested

12   by Plaintiffs regarding (1) the total number of documents not logged that do not include a

13   Department of Justice attorney or (2) the number of documents not logged because they include

14   one of seven Department of Commerce counsel.  Notably, at least three of those seven attorneys

15   appear not to be litigation counsel at all, and instead work in economic affairs.  Moreover,

16   Defendants have produced over 600 documents including one or more of these seven

17   Department of Commerce attorneys – making clear that they are involved in the substantive

18   issues in this case.  These emails include discussions related to the Census Bureau's request to

19   Congress for additional time to complete the census, various aspects of the Replan, and the

20   legality of various document collection issues related to the Presidential Memorandum (e.g.,

21   DOC_0089145, DOC_0089294, DOC_0092449, DOC_0094729, DOC_0097687,

22   DOC_0098710, DOC_0099708).

23             Moreover, while Defendants have repeatedly represented that the "carved out" 19,000

24   documents and emails from their logs because they were "to, from, or originating" from

25   litigation counsel, in fact they failed to log thousands of documents simply because they hit on a

26   privilege term, such as "ACP" and "WP."  By failing to log these documents, Defendants are

27   preventing both Plaintiffs and the Court from assessing whether these communications are

28   properly protected by any privilege.

1   Defendants have failed to properly claim privilege under the Federal Rules of Civil

2   Procedure for all documents that do not contain a Department of Justice attorney.

3   **Defendants' Position**

4   Plaintiffs' position misstates the nature of Defendants' attempt to ensure that counsels'

5   work product is not disclosed to Plaintiffs.  Defendants understood this to be an issue on which

6   the parties are still actively conferring, and do not understand why Plaintiffs raise it here.

7   Defendants will continue to meet and confer with Plaintiffs on this issue in good faith.

8   **III.    DEPOSITIONS**

9   **A.    December 17, 2020 30(b)(6) Deposition**

10   <u>**Plaintiffs' Position**</u>

11   As discussed in the Joint Statement filed on December 18, Plaintiffs maintain that neither

12   witness was adequately prepared on various aspects of the noticed topics.  Plaintiffs have

13   provided Defendants a list of tailored questions which are critical to Plaintiffs' case and which

14   Defendants' deponents were unable to answer at the deposition.  Plaintiffs have requested that

15   the Defendants provide written answers in a declaration or other document under penalty of

16   perjury.   The parties are discussing this issue and Plaintiffs are hopeful that it will not need

17   further Court involvement

18   <u>**Defendants' Position**</u>

19   Defendants maintain that both witnesses were adequately prepared for the depositions.  In

20   the interest of resolving the dispute, however, Defendants are willing to provide Plaintiffs

21   answers to the questions they posed via declarations and plan to do so by January 4, 2020.

22   Defendants have also responded to various emails from Plaintiffs on matters related to these

23   follow-up questions.

24   **B.    Additional Depositions**

25   Plaintiffs served a 30(b)(6) notice on Defendants on December 24, 2020 for a deposition

26   from the Department of Commerce.  That deposition was supposed to occur tomorrow,

27   December 31, 2020, but Defendants have asked to move it to January 5, 2020 in light of the

28

holidays, and also sent a letter stating that they will not make their witness available to testify as to certain topics.

Plaintiffs have agreed to the requested date change, subject to Defendants providing the name of the witness(es) and confirming that Commerce is not sending any population, Presidential Memo, or apportionment counts/numbers to the President prior to the January 5 deposition. Plaintiffs believe that Defendants' attempt to unilaterally restrict the deposition topics is improper, but will meet and confer with Defendants in good faith to try and resolve any issue.

## IV.    DISCOVERY SCHEDULE

As it stands, fact discovery is set to end on January 7, 2021, with opening expert reports due on January 14, 2021, rebuttal reports due on January 21, 2021, and the close of expert discovery on January 28, 2021.

### **Plaintiffs' Position**

For the reasons set forth above, Plaintiffs propose slightly amending the case schedule to allow 2 more weeks for Defendants to produce critical discovery in this case. Nothing else should move, including any deadlines specific to Defendant. The parties are in this position solely because of Defendants' actions, so the limited extension should be such so as to provide enough time for Defendants to solve the problems they have created, but without providing a boon to Defendants for their own improper conduct.

Plaintiffs propose the following schedule, subject of course to the to the Court's availability:

| Scheduled Event | Current Dates (2021) | New Dates (2021) |
|---|---|---|
| Close of Fact Discovery | January 7 | January 21 |
| Opening Expert Reports | January 14 | January 26 |
| Rebuttal Expert Reports | January 21 | February 2 |
| Close of Expert Discovery | January 28 | February 9 |
| Cross-Motions for Summary Judgment (one per side in entire case) | February 4 | February 16 |
| Oppositions to Cross-Motions for Summary Judgment | February 11 | February 23 |

| Hearing on Motions for Summary Judgment | February 18, 1:30 p.m. | March 2, 1:30 p.m. |
| Motions in Limine (three per side, limited to three pages each) | March 5 | March 5 |
| Oppositions to Motions in Limine | March 8 | March 8 |
| Final Pretrial Conference | March 11, 1:30 p.m. | March 11, 1:30 p.m. |
| Bench Trial | March 19, 9:00 a.m. | March 19, 9:00 a.m. |
| Length of Trial | 5 days | 5 days |

**Defendants' Position**

The parties have discussed a possible extension of the fact discovery deadline in order to address various discovery items.  Defendants do not understand Plaintiffs to be proposing different discovery cut-offs for the parties, as that would undermine fundamental principles of fairness in adversarial proceedings.

Defendants propose extending fact discovery by eight days, with document production to finish by January 7 and all fact depositions to take place the week of January 11.  This staggering addresses the complaints Plaintiffs have raised about the availability of documents in advance of depositions.  Absent this staggering, the burdens of document production could yet again prove an obstacle to depositions in two weeks.  The new schedule would be as follows:

| Event | Current Dates | New Dates |
|---|---|---|
| Close of Fact Discovery for document productions | January 7 | January 7 |
| Close of All Fact Discovery | January 7 | January 15 |
| Opening Expert Reports | January 14 | January 22 |
| Rebuttal Expert Reports | January 21 | January 29 |
| Close of Expert Discovery | January 28 | February 5 |
| Cross-Motions for Summary Judgment | February 4 | February 12 |
| Oppositions to Cross-Motions for Summary Judgment | February 11 | February 19 |
| Hearing on Motions for Summary Judgment | February 18, 1:30 pm | February 26 or whenever convenient for the Court |
| Motions in Limine | March 5 | March 5 |
| Oppositions to Motions in Limine | March 8 | March 8 |
| Final Pretrial Conference | March 11, 1:30 pm | March 11, 1:30 pm |
| Bench Trial | March 19, 9:00am | March 19, 9:00am |
| Length of Trial | 5 days | 5 days |

1    This schedule appropriately balances the parties' interests with the Court's desire for

2  expeditious resolution of this case.

3

4

5

6

7
Dated: December 30, 2020                          LATHAM & WATKINS LLP

8
                                                  By: /s/ Sadik Huseny
9                                                     Sadik Huseny

10                                                Sadik Huseny (Bar No. 224659)
                                                  sadik.huseny@lw.com
11                                                Steven M. Bauer (Bar No. 135067)
                                                  steven.bauer@lw.com
12                                                Amit Makker (Bar No. 280747)
                                                  amit.makker@lw.com
13                                                Shannon D. Lankenau (Bar. No. 294263)
                                                  shannon.lankenau@lw.com
14                                                **LATHAM & WATKINS LLP**
                                                  505 Montgomery Street, Suite 2000
15                                                San Francisco, CA 94111
                                                  Telephone:  415.391.0600
16                                                Facsimile:  415.395.8095

17                                                Melissa Arbus Sherry (*pro hac vice*)
                                                  melissa.sherry@lw.com
18                                                Richard P. Bress (*pro hac vice*)
                                                  rick.bress@lw.com
19                                                Anne W. Robinson (*pro hac vice*)
                                                  anne.robinson@lw.com
20                                                Tyce R. Walters (*pro hac vice*)
                                                  tyce.walters@lw.com
21                                                Gemma Donofrio (*pro hac vice*)
                                                  gemma.donofrio@lw.com
22                                                Christine C. Smith (*pro hac vice*)
                                                  christine.smith@lw.com
23                                                **LATHAM & WATKINS LLP**
                                                  555 Eleventh Street NW, Suite 1000
24                                                Washington, D.C. 20004
                                                  Telephone:  202.637.2200
25                                                Facsimile:  202.637.2201

26                                                *Attorneys for Plaintiffs National Urban League;*
                                                  *League of Women Voters; Black Alliance for*
27                                                *Just Immigration; Harris County, Texas; King*
                                                  *County, Washington; City of San Jose,*

28

| | |
|---|---|
| 1 | *California; Rodney Ellis; Adrian Garcia; and the NAACP* |
| 2 | |
| 3 | Dated: December 30, 2020     By: /s/ Jon M. Greenbaum |

California; Rodney Ellis; Adrian Garcia; and
the NAACP

Dated: December 30, 2020

By: /s/ Jon M. Greenbaum
Kristen Clarke (*pro hac vice*)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (Bar No. 166733)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (*pro hac vice*)
erosenberg@lawyerscommittee.org
Ajay Saini (*pro hac vice*)
asaini@lawyerscommitee.org
Maryum Jordan (Bar No. 325447)
mjordan@lawyerscommittee.org
Pooja Chaudhuri (Bar No. 314847)
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

*Attorneys for Plaintiffs National Urban League;
City of San Jose, California; Harris County,
Texas; League of Women Voters; King County,
Washington; Black Alliance for Just
Immigration; Rodney Ellis; Adrian Garcia; the
NAACP; and Navajo Nation*

Wendy R. Weiser (*pro hac vice*)
weiserw@brennan.law.nyu.edu
Thomas P. Wolf (*pro hac vice*)
wolft@brennan.law.nyu.edu
Kelly M. Percival (*pro hac vice*)
percivalk@brennan.law.nyu.edu
**BRENNAN CENTER FOR JUSTICE**
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League;
City of San Jose, California; Harris County,
Texas; League of Women Voters; King County,
Washington; Black Alliance for Just
Immigration; Rodney Ellis; Adrian Garcia; the
NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org

**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone:  213.385.2977
Facsimile:  213.385.9089

*Attorneys for Plaintiff City of San Jose*

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice*)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: December 30, 2020

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: December 30, 2020

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us
Michael Mutalipassi (Bar No. 274858)
michaelmu@ci.salinas.ca.us
**CITY OF SALINAS**
200 Lincoln Avenue
Salinas, CA 93901
Telephone: 831.758.7256
Facsimile: 831.758.7257

*Attorneys for Plaintiff City of Salinas*

| | |
|---|---|
| 1 | Dated: December 30, 2020 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

By: /s/ Rafey S. Balabanian
Rafey S. Balabanian (Bar No. 315962)
rbalabanian@edelson.com
Lily E. Hough (Bar No. 315277)
lhough@edelson.com
**EDELSON P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435

Rebecca Hirsch (*pro hac vice*)
rebecca.hirsch2@cityofchicago.org
**CORPORATION COUNSEL FOR THE CITY OF CHICAGO**
Celia Mexa
Stephen J. Kane
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Telephone: (312) 744-8143
Facsimile: (312) 744-5185

*Attorneys for Plaintiff City of Chicago*

Dated: December 30, 2020

By: /s/ Donald R. Pongrace
Donald R. Pongrace (*pro hac vice*)
dpongrace@akingump.com
Merrill C. Godfrey (Bar No. 200437)
mgodfrey@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: 202-887-4288

*Attorneys for Plaintiff Gila River Indian Community*

Dated: December 30, 2020

By: /s/ David I. Holtzman
David I. Holtzman (Bar No. 299287)
David.Holtzman@hklaw.com
**HOLLAND & KNIGHT LLP**
Daniel P. Kappes
Jacqueline N. Harvey
50 California Street, 28th Floor
San Francisco, CA 94111
Telephone: (415) 743-6970
Fax: (415) 743-6910

*Attorneys for Plaintiff County of Los Angeles*

1

2

3   DATED:  December 30, 2020                    JEFFREY BOSSERT CLARK
                                                 Acting Assistant Attorney General
4
                                                 JOHN V. COGHLAN
5                                                Deputy Assistant Attorney General

6                                                AUGUST E. FLENTJE
                                                 Special Counsel to the Assistant
7                                                  Attorney General

8                                                ALEXANDER K. HAAS
                                                 Branch Director
9
                                                 DIANE KELLEHER
10                                               BRAD P. ROSENBERG
                                                 Assistant Branch Directors
11
                                                 */s/ Alexander V. Sverdlov*
12                                               ALEXANDER V. SVERDLOV
                                                   (New York Bar No. 4918793)
13                                               STEPHEN EHRLICH
                                                 M. ANDREW ZEE
14                                               Trial Attorneys
                                                 U.S. Department of Justice
15                                               Civil Division - Federal Programs Branch
                                                 1100 L Street, NW
16                                               Washington, D.C. 20005
                                                 Telephone: (202) 305-0550
17
                                                 *Attorneys for Defendants*
18

19

20

21

22                              **ATTESTATION**

23           I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this

24   document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred

25   in this filing.

26   Dated: December 30, 2020                    **LATHAM & WATKINS** LLP

27
                                                 By: */s/ Sadik Huseny*
28                                                    Sadik Huseny