1   LATHAM & WATKINS LLP
      Sadik Huseny (Bar No. 224659)
2       sadik.huseny@lw.com
      Steven M. Bauer (Bar No. 135067)
3       steven.bauer@lw.com
      Amit Makker (Bar No. 280747)
4       amit.makker@lw.com
      Shannon D. Lankenau (Bar No. 294263)
5       shannon.lankenau@lw.com
      505 Montgomery Street, Suite 2000
6   San Francisco, CA 94111
      Telephone:  415.391.0600
7   Facsimile:  415.395.8095

8   LATHAM & WATKINS LLP
      Melissa Arbus Sherry (pro hac vice)
9       melissa.sherry@lw.com
      Richard P. Bress (pro hac vice)
10      rick.bress@lw.com
      Anne W. Robinson (pro hac vice)
11      anne.robinson@lw.com
      Tyce R. Walters (pro hac vice)
12      tyce.walters@lw.com
      Gemma Donofrio (pro hac vice)
13      gemma.donofrio@lw.com
      555 Eleventh Street NW, Suite 1000
14  Washington, D.C. 20004
      Telephone:  202.637.2200
15  Facsimile:  202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
    Kristen Clarke (pro hac vice)
      kclarke@lawyerscommittee.org
    Jon M. Greenbaum (Bar No. 166733)
      jgreenbaum@lawyerscommittee.org
    Ezra D. Rosenberg (pro hac vice)
      erosenberg@lawyerscommittee.org
    Ajay P. Saini (pro hac vice)
      asaini@lawyerscommittee.org
    Maryum Jordan (Bar No. 325447)
      mjordan@lawyerscommittee.org
    Pooja Chaudhuri (Bar No. 314847)
      pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202.662.8600
Facsimile:  202.783.0857

Additional counsel and representation
information listed in signature block

16                UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                      SAN JOSE DIVISION

18  NATIONAL URBAN LEAGUE, et al.,          CASE NO.  5:20-cv-05799-LHK

19                          Plaintiffs,     **PLAINTIFFS' RENEWED MOTION
20      v.                                  TO COMPEL AND FOR SANCTIONS**

21  WILBUR L. ROSS, JR., et al.,            Place:  Courtroom 8
                                            Judge:  Hon. Lucy H. Koh
22                          Defendants.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1

## TABLE OF CONTENTS

2

**Page**

3

I.      INTRODUCTION ........................................................................................................... 1

4

II.     BACKGROUND ............................................................................................................. 2

5

III.    ARGUMENT ................................................................................................................ 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Apple Inc. v. Samsung Elecs. Co.*,
5    No. 12-CV-0630-LHK (PSG), 2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ..................... 12

6 *Calvillo Manriquez v. Devos*,
   411 F. Supp. 3d 535 (N.D. Cal. 2019) ................................................................................ 11
7

8 *Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ...................................................................................................... 11, 18

9

10 *In re eBay Seller Antitrust Litig.*,
   No. C 07-1882 JF (RS), 2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) ............................ 12

11 *F.T.C. v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999) ........................................................................................... 11
12

13 *Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ............................................................................................. 18

14

15 *Fraihat v. U.S. Immigration & Customs Enf't*,
   No. EDCV191546JGBSHKX, 2020 WL 2758553 (C.D. Cal. May 15, 2020) .................... 11

16 *Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) ....................................................................................... 12
17

18 *Goodyear Tire & Rubber Co. v. Haeger*,
   137 S. Ct. 1178 (2017) ....................................................................................................... 11

19

20 *Penthouse Int'l, Ltd. v. Playboy Enters.*,
   663 F.2d 371 (2d Cir. 1981) ............................................................................................... 18

21 *Primus Automotive Financial Services, Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ............................................................................................. 18
22

23 *Richmark Corp v. Timber Failing Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ........................................................................................... 18

24 *Shepherd v. Am. Broad. Companies, Inc.*,
   62 F.3d 1469 (D.C. Cir. 1995) ........................................................................................... 18
25

26 *Shillitani v. United States*,
   384 U.S. 364 (1966) ........................................................................................................... 11

27

28 *Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ....................................................................................................... 11

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

**Other Authorities**

1 Sanc. Fed. Law of Lit. Abuse § 28 (2019)...................................................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

## I.      INTRODUCTION

On December 10, 2020, the Court granted Plaintiffs' motion to compel and ordered Defendants to produce "All summary data reports responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18)."  Dkt. 372.  On December 12, Defendants filed a motion for reconsideration in part, but did not ask for reconsideration of the above aspect of the Court's order compelling production; instead, Defendants said they would comply and produce the materials by December 14.  Dkt. 376-1 at 4.  The Court recognized this in its December 13, 2020 Order Denying Motion for Reconsideration and Clarifying Motion to Compel:  "Defendants do not seek reconsideration of the following requirements in the Order to Compel and thus must comply with these requirements:  Defendants must produce by December 14, 2020 …. All summary report data responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18)."  Dkt. 379 at 8-9.

Defendants have defied the Court's orders.  They did not produce the requisite summary data reports on December 14, and have not produced them since.  They cannot identify for Plaintiffs a single summary data report produced in compliance with the Court's orders, let alone all such reports responsive to Plaintiffs' sufficient-to-show RFPs.  And in a long meet and confer on Sunday, January 3, Defendants told Plaintiffs they would not provide these reports as requested by Plaintiffs and ordered by the Court.  When asked whether Defendants had produced a single such report, and to identify where, Defendants' counsel Aleks Sverdlov answered that Plaintiffs should search Defendants' productions themselves.  Plaintiffs have.  The reports aren't in there.  And Defendants know that.  Plaintiffs have tried for weeks to get Defendants to comply with their obligations, short of filing yet another motion to compel and for sanctions, and thought last week there might be movement.  Instead, Defendants remain fixated on delay.  And contrary to Defendants' volunteering at the January 4, 2020 case management conference that Defendants cannot "live-stream" the Census, Plaintiffs are not interested in a live-stream.  They are interested in Defendants halting their bald defiance of this Court's orders, and providing Plaintiffs with basic, critical data necessary to the claims in this case.  That Defendants now very

LATHAM&WATKINS\scriptsize{LLP}
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS

badly want to hide these summary data reports raises red flags.  Also raising red flags are the new "burden" and "Title 13 immunity" arguments they make about why they should not have to produce them—arguments they never made to the Court in response to Plaintiffs' initial motion to compel, and never made to the Court when Defendants filed a motion for reconsideration on separate issues but said that they <u>would</u> produce the summary data reports.  And were ordered to do so.

Plaintiffs respectfully request that the Court grant this motion, compel yet again the immediate production of this material, issue a sanction of a substantial daily fine until full compliance, and award any and all other sanctions and relief the Court deems appropriate so that Plaintiffs are not further prejudiced by Defendants' egregious, ongoing behavior.

## II.   BACKGROUND

As the Court will recall, approximately three months ago, Plaintiffs filed a motion to compel and for sanctions aimed at forcing Defendants to comply with the Court's preliminary injunction order.  In it, Plaintiffs discussed at length how Defendants had exhibited a callous disregard for these proceedings from inception—denying the existence of documents, feigning ignorance, refusing to answer basic questions posed by the Court, acting in an obstructive manner, and failing to comply with this Court's orders.  Dkt. 265.  The Court, in later clarifying its preliminary injunction order, discussed Defendants' improper conduct in detail and referred back to previous orders finding Defendants' compliance insufficient.  Dkt. 288 at 4-10.  Plaintiffs thought those days were behind this case.  The chronology below shows otherwise.

***November 17, 2020***.  Plaintiffs issue 22 tailored requests for production, less than their allotment (in order to minimize the burden on Defendants while swiftly producing core materials for Plaintiffs' claims in the Second Amended Complaint).  Dkt. 368-2, Exs. 1, 2.  Eleven (half) of these Requests are "sufficient to show" requests aimed at summary data reports on key issues of the case, among them the following requests for information, readily and easily available in Defendants' databases:

REQUEST FOR PRODUCTION NO. 4:  Documents Sufficient to Show the percentage and number of housing units/addresses, at the national, state, county, and census tract level, resolved through particular methods for the 2020 Census, including but not limited to the following: (a) enumerations by administrative

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

records (for occupied, vacant, and delete/nonexistent); (b) enumerations by proxies (for occupied, vacant, and delete/nonexistent); (c) "pop count only" enumerations; (d) enumerations as vacant (and how so determined); (e) enumerations as delete/nonexistent (and how so determined); (f) enumerations that do not contain name and/or date of birth; (g) enumerations using fictitious names (e.g., ADULT ONE); (h) enumerations with a popcount of 1 and information entered as "refused" or "don't know"; (i) enumerations of closed cases that were reopened in the close-out phase of NRFU; (j) enumerations where the geo-location data does not match the housing unit/address; and (k) all actual and potential housing units/addresses unresolved.

REQUEST FOR PRODUCTION NO. 6:  As to housing units/addresses resolved by administrative records, Documents Sufficient to Show in summary detail all actual and potential housing units/addresses resolved by administrative records for each of the 2000, 2010 and 2020 censuses, including but not limited to documents regarding what types of administrative records were used for each such closeout; when and how the use of various administrative records was triggered; where various administrative records were used to close housing units after zero visits or one visit; the housing units that were eligible to be closed using various administrative records after zero visits or one visit; how many housing units/addresses were enumerated with administrative records not validated by another source; how close in time to April 1, 2020 the administrative records were; any quality assessment of the administrative records; and the changing rules and parameters regarding the use of administrative records.

REQUEST FOR PRODUCTION NO. 7:  As to housing units/addresses resolved by proxy, Documents Sufficient to Show in summary detail all actual and potential housing units/addresses resolved by proxy for each of the 2000, 2010 and 2020 censuses, including but not limited to Documents regarding what types of proxies were used for each such closeout; when and how the use of proxies was triggered; where proxies were used to close housing units after zero visits or one visit; the housing units that were eligible to be closed using proxy after zero visits or one visit; the geo-location/proximity of the device making the enumeration to the housing unit/address being enumerated; and the changing rules and parameters regarding the use of proxies.

REQUEST FOR PRODUCTION NO. 8:  As to housing units/addresses resolved as vacant or nonexistent/delete, Documents Sufficient to Show in summary detail all actual and potential housing units/addresses resolved as vacant or nonexistent/delete for each of the 2000, 2010 and 2020 censuses, including but not limited to Documents regarding when and how vacancy or nonexistent/delete was determined; how many visits were made prior to the resolution of vacancy or nonexistent/delete; where, when, and in what fashion the vacancy or nonexistent/delete enumeration was made, including by whom (field enumerator or any supervisors or management); the geo-location/proximity of the device making the enumeration to the housing unit/address being enumerated; and the changing rules and parameters regarding the use of any methods allowing for a vacant or nonexistent/delete enumeration.

REQUEST FOR PRODUCTION NO. 9:  As to housing units/addresses resolved through "pop count only," Documents Sufficient to Show in summary detail all actual and potential housing units/addresses resolved as "pop count only" for each of the 2000, 2010 and 2020 censuses, including but not limited to documents regarding when and how the determination of making a "pop count

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

only" count was triggered; where "pop count only" enumerations were used to close housing units after zero visits or one visit; the housing units that were eligible to be closed using "pop count only" enumerations after zero visits or one visit; the geo-location/proximity of the device making the enumeration to the housing unit/address being enumerated; and the changing rules and parameters regarding the use of "pop count only" enumerations.

REQUEST FOR PRODUCTION NO. 10:  Documents Sufficient to Show the total number and relevant percentages of housing units/addresses in the entire NRFU universe as of each Date, including but not limited to all housing units/addresses obtained during the NRFU process and closeout phases, all vacant and nonexistent/delete housing units/addresses identified in the NRFU process, when and whether any additional housing units/addresses obtained during the NRFU process were enumerated and were to be accounted for, and whether and how any completion rates as of the Dates included or failed to include any additional housing units/addresses in the calculations.

REQUEST FOR PRODUCTION NO. 18:  Documents Sufficient to Show the Census Unedited File (CUF) quality indicators, including but not limited to the numbers and percent of records (a) identified as duplicate enumerations across different addresses, (b) that do not contain information sufficient for deduplication, (c) that required status or count imputation, (d) created by count imputation, (e) that will require whole person imputation, (f) missing a complete name, (g) missing a date of birth, (h) from administrative records, (i) from administrative records lacking complete names or date of birth, and (j) that required item imputation for race, Hispanic origin, sex, and age.

There is no question this data is highly relevant to the case and easily obtained by Defendants.  Indeed, at the October 6, 2020 case management conference, Defendants touted the high completion rates of the Census count, and there was a lengthy discussion about the nature of those rates and whether the completion metrics were in fact apples-to-apples comparisons.  The Court asked for responses to question covering identical or similar issues to the RFPs set forth above—questions aimed at understanding the definition of completion, quality indicators, how units had been counted or enumerated, the issue of vacant units, and so on.  Oct. 6, 2020 Tr. at 6-8; 19:20.  This was in partial response to the declaration of Bureau Director Dillingham a few days earlier, highlighting completion rates.  Dkt. 300-1.  And in response to the Court's questions, Defendants responded by filing, two days later, a declaration by Al Fontenot discussing these issues at a high level.  Dkt. 323-1.  As a review of the Court's questions and Mr. Fontenot's declaration shows, Defendants did not fully answer all of the Court's questions, but clearly had ready access to whatever data they wanted—very, very quickly.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

Plaintiffs seek this data in their RFPs, so as to test Defendants' various assertions regarding the claimed robust completion rates and metrics of the 2020 Census.  And to be sure, these assertions were not limited to just the filings in this Court.  Defendants wove their completion rate/metrics story at the Ninth Circuit, arguing to overturn this Court's preliminary injunction order, stating, "the way we are calculating these 99% numbers, etc., is exactly the same way we've always calculated it."  When that failed, they described the same narrative before the Supreme Court (claiming, at that point, even higher rates of completion due to the passage of time—which prompted in part the dissent from Justice Sotomayor on how Defendants' claims were last-minute and untested).  *See Ross v. Nat'l Urban League*, 592 U.S. ___, No. 20A62, slip op. at 6 (2020) (Sotomayor, J., dissenting) ("It is thus unsurprising that, for the 2010 census, the Bureau continued its field operations for a full month after reaching the 99 percent threshold that the Government now deems good enough.").  And they repeated that story further when they terminated the census count on October 15, 2020—right after the Supreme Court's decision staying the preliminary injunction order in this case.  It is worth highlighting the first page of that release, found here: https://www.census.gov/content/dam/ Census/newsroom/press-kits/2020/nrfu-deadline-completion-rates-faq.pdf:

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

Plaintiffs discussed these issues at length in their Second Amended Complaint. *See, e.g.,* Dkt. 352 ("SAC") at ¶¶ 2, 23, 26-28, 34-40. And one of the primary issues Plaintiffs have raised—in the SAC, in filings with this Court, and in appellate filings—is that Defendants are able to pick and choose among their calculations strategically, bouncing between their denominator universes (e.g., all housing units; addresses nationwide; all housing units in the NRFU operation; all housing units in the NRFU workload; occupied housing units alone, and so on), highlighting what they want for the public and Court and, Plaintiffs believe, hiding the data and calculations from the data that reveal serious flaws in the census. And one of the main ways Defendants are able to do this is by providing data only at the 30,000 foot level—making broad assertions about "national" completion rates and even statewide completion rates, and seeking to hide from view that the metrics tell a *far* different story—one that reveals significant undercounts and differential undercounts. *See, e.g.*, SAC at ¶¶ 26-27, 35, 39, 222, 307-318, 413.

This is exactly why Plaintiffs seek the production of summary data reports at the closer-to-ground levels, including by census tract. To be clear, Defendants are free to present whatever completion and "best Census ever" stories they want, via their expert reports, in summary judgment, and at trial in this case. What they *cannot do* is keep the data to themselves, so that no one can test their assertions. The importance of this data to the full elucidation of this case's issues and claims cannot be overstated. Defendants and only Defendants have full access to their data. And it will surely come as a surprise to no one that, when government statisticians want to present data comparisons (as between the 2020 census and previous censuses), that they can pick and choose comparisons and tables that shine the best light on their position. For example, when making comparisons to the 2010 Census like they did in the October 23, 2020 FAQ document pasted above, and similar such documents, Defendants apparently have the ability to pull data at their whim. Though they are perhaps less concerned with whether such comparisons are actually "apples to apples." Here is what Bureau employees were saying internally, as shown in a few email exchanges that Plaintiffs have now uncovered, in the documents that this Court separately compelled Defendants to produce:

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

To:        Ali Mohammad Ahmad (CENSUS/ADCOM FED)[ali.m.ahmad@census.gov]
Cc:        Albert E Fontenot (CENSUS/ADCOM FED)[Albert.E.Fontenot@census.gov]; Timothy P Olson (CENSUS/ADFO FED)[Timothy.P.Olson@census.gov]; Kathleen M Styles (CENSUS/ADCO
           FED)[kathleen.m.styles@census.gov]; Burton H Reist (CENSUS/ADCOM FED)[burton.h.reist@census.gov]
From:      Christopher M Denno (CENSUS/ADCC FED)
Sent:      Wed 10/21/2020 3:47:01 PM
Subject:   Re: DOC request - list of 2010 to 2020 comparisons

I'll touch base with the NRFU guys and see what we can get.  I just want to ensure we're comparing apples to apples... or as
close as possible anyways.

        The summary data reports—at the levels of geographic scope that Plaintiffs requested—
were and are necessary for Plaintiffs and Plaintiffs' experts to present what they think are the real
metrics, and for a full and fair assessment of the 2020 Census and Plaintiffs' claims in this case.

        *November 17 – December 2, 2020*.  Defendants refused multiple requests to meet and
confer about the RFPs—including as to how to best and most easily run the data summary
reports to satisfy the 11 sufficient-to-show RFPS.  Dkt. 368-2, Ex. 3.

        *December 2 – December 8, 2020*.   After producing 175 documents on December 1,
Defendants finally agreed to meet and confer on December 2.  *Id.*, Exs. 4-5.  Defendants
represented that "CIG" briefing decks could satisfy Plaintiffs' sufficient-to-show requests and
would be "granular," but were going through Title 13 confidentiality review.  Makker Decl. ¶ 3.
Defendants also stated that they would pursue the issue of database queries.  *Id.*  On December 4,
Plaintiffs followed up, pressing on the lack of CIG decks or on any "summary/aggregate report
data;" Defendants stated they were working on them and trying to do things systematically rather
than ad-hoc.  Dkt. 368-2, Exs. 4-5.  No information was provided about the Title 13
"confidentiality" review being undertaken, or when it would complete, though Plaintiffs
indicated productions would occur in late December (i.e., a week before fact discovery was to
close).  *Id.*  Plaintiffs warned they would have to file a motion to compel as to numerous
deficiencies in Defendants' productions if Defendants continued to purposefully delay.  *Id.*  On
December 8, 2020—a week after their first production, and 3 weeks after the RFPs, Defendants
produced only 516 more documents (and what's more, largely duplicates and obviously
irrelevant material)—and no summary reports/data.  *Id.*, Ex. 6.

        *December 9, 2020*.  Plaintiffs filed their second motion to compel in this case, focused on
Defendants' discovery failings and intentional delay (including as to basic discovery obligations,
such as refusing to provide metadata with their electronic productions).  For purposes of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1    motion, Plaintiffs explained the importance of their straightforward "sufficient to show" data

2    requests, and how the failure to provide Plaintiffs with the requisite summary data reports was

3    highly prejudicial.  Dkt. 368.

4           ***December 10, 2020***.  The Court granted Plaintiffs' motion to compel and orders

5    Defendants to produce, among other things, "All summary data reports responsive to Plaintiffs'

6    sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties

7    (RFP Nos. 2-4, 6-10, 15, 16 and 18)."  Dkt. 372.

8           ***December 12, 2020***.  Defendants filed a motion for reconsideration of a few parts of that

9    order, but expressly <u>did not</u> ask for reconsideration of that aspect of the Court's order compelling

10    production (nor the ruling on the equally basic requirement that Defendants produce metadata

11    with their electronic productions).  Instead, Defendants said they would comply and produce the

12    materials by Monday, December 14.  Dkt. 376-1 at 4.

13           ***December 13, 2020***.  The Court issued its Order Denying Motion for Reconsideration

14    and Clarifying Motion to Compel, ordering as follows:  "Defendants do not seek reconsideration

15    of the following requirements in the Order to Compel and thus must comply with these

16    requirements:  Defendants must produce by December 14, 2020…All summary report data

17    responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics,

18    issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18)."  Dkt. 379 at 8-9.

19           ***December 18, 2020***.   In the parties' December 18, 2020 Joint Case Management

20    Statement, Plaintiffs flagged that they were reviewing Defendants' productions (in Defendants'

21    words, a "truckload" of ~72,000+ documents they had dropped on Plaintiffs between December

22    14 and December 17) and had asked Defendants for direction on where specific, critical

23    materials could be found.  In that same Statement, Defendants crowed that "any such discussions

24    will not be productive until Plaintiffs actually review the [approximately 72,000] documents they

25    have so desperately sought," and that "Plaintiffs' counsel should be able to complete their review

26    and be in a position to assess the sufficiency of the productions in no time[;] it is simply

27    premature for Plaintiffs to imply that the productions—which are rolling in nature and therefore

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

ongoing—may be insufficient." Dkt. 394 at 3.  Plaintiffs did review.  And did not find the materials.

***December 18-22, 2020***.  Defendants made additional productions throughout the next few days, pursuant to the Court's order, up until December 21—but the materials weren't there either.  Plaintiffs flagged the issue in the parties' December 22, 2020 Joint Discovery Status Report, Dkt. 402 at 3-4, and at that point had taken the Court-ordered 30(b)(6) deposition related to document issues, and <u>knew</u> that the sufficient-to-show summary data reports Plaintiffs had sought were available.  Defendants simply had not produced them.  Defendants' response?  That the reports "would require creating new queries of the Census's database and subsequent Title 13 review," Dkt. 402 at 9, and that Defendants essentially weren't obligated to actually produce *all* summary report data responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties.  They had produced none—but no matter.

***December 22 – 30, 2020***.  Plaintiffs tried everything they could to resolve the issue without further Court intervention.  During a long meet and confer on December 28, Plaintiffs thought they had finally started to make some progress, and that Defendants would produce (late, but still produce) the summary data reports requested.  Plaintiffs flagged this potential progress in the December 30 Joint Discovery Status Report; Defendants also seemed to indicate that they were moving toward finally producing the materials, stating that "Plaintiffs' requests cannot be easily fulfilled because the information is not readily available in the level of granularity that Plaintiffs want," but that "Defendants are considering whether they might run queries against the databases for census tract level information and whether providing the reports would resolve your concerns, but such search results would also implicate Title 13." Dkt. 417 at 10:1-4, 13:8-13).  Never mind that providing the reports was already what Defendants had agreed to do, and the Court had ordered.  Dkt. 376-1, 379.

***January 3, 2020***.  Plaintiffs were willing to overlook everything preceding, if the materials were produced (notwithstanding that, as of January 3, fact discovery was scheduled to close on January 7, and initial expert reports were due on January 14).  They were not, and Defendants have now definitively said they will not be.  During another long meet and confer on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

Sunday, January 3, Defendants stated that producing summary data reports to Plaintiffs at the ACO (Area Census Office) level of scope would not implicate Title 13 but that Defendants just weren't going to produce them because Plaintiffs supposedly already had some such materials in the production sets.  *See* Makker Decl., Ex. 2.  When asked yet again to identify where, Defendants told Plaintiffs to search the productions themselves, refusing to identify a single document or report.  *Id.*  Defendants also stated that producing summary data reports to Plaintiffs at the more focused geographic levels being discussed—the CFS (Census Field Supervisor) and Census Tract level of scope—might implicate Title 13 confidentiality concerns.  *Id.*  Defendants did not raise any other reason, on that call for failing to produce the materials they had agreed to produce and had been ordered to produce, weeks prior.  *Id.*

Plaintiffs stated that they would be forced to file a motion to compel and for sanctions, and asked Defendants to provide, by 8 p.m. that evening, (1) Defendants' case authority for their position that Title 13 immunized the summary data reports at the CFS and Census Tract level of scope, and (2) the Bates number of any summary data report produced.  *Id.*  Defendants refused. *Id.*  Instead, Defendants sent an email claiming that they should not be required to query their databases to produce such summary data reports (and argument they never raised, during the December 9 to 13 motion to compel filings), and stating that Defendants' response to an interrogatory would provide some information to Plaintiffs—and that Plaintiffs should essentially be happy with that.  *Id.*  Defendants did not explain why the summary report data they had been ordered to produce, at each of the levels of geographic scope, was protected by Title 13 (nor explain of why any reports could not be appropriately tailored to avoid such concerns, since Plaintiffs are not interested in the slightest in individual-level data that is protected by Title 13). *Id.*  Moreover, Defendants did not provide any authority for their extreme claim that they cannot be obligated to query their database for these reports.  *Id.*  The parties' discussion on this issue— and Defendants' lack of any authority for their positions—is encapsulated in a brief email correspondence.  *Id.*

## III.   ARGUMENT

In its December 13, 2020 Order Denying Motion for Reconsideration and Clarifying

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

Motion to Compel, the Court ruled as follows:  "Defendants do not seek reconsideration of the following requirements in the Order to Compel and thus must comply with these requirements: Defendants must produce by December 14, 2020 .… All summary report data responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18)."  Dkt. 379 at 8-9.

Defendants are squarely and deliberately violating this order.

The Court has inherent authority to enforce compliance with its orders.  *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal citations and quotation marks omitted); *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 2758553, at *3 (C.D. Cal. May 15, 2020) ("Courts have inherent authority to monitor and enforce their prior orders." (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

Defendants' continued and open defiance of the Court's ruling—now using arguments never raised with the Court, and in direct contradiction to their representing to the Court they *would* produce these materials—is in fact grounds for contempt of court.  The "power to punish for contempts is inherent in all courts" and is available for the violation of court orders. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).  Indeed, the "underlying concern that gave rise to the contempt power . . . was disobedience to the orders of the Judiciary."  *Id.* (brackets and citations omitted).  When civil contempt is at issue, the party moving for a contempt finding bears the burden of showing by clear and convincing evidence that contemnors violated a specific and definite order of the court.  *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 540 (N.D. Cal. 2019) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).  "The burden then shifts to the contemnors to demonstrate why they were unable to comply."  *Id.*  The standard "is generally an objective one.  We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1    Instead, good faith (or the absence thereof) "may help to determine an appropriate sanction."

2    *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).

3          There is no good faith rationale for Defendants' conduct, in violation of very clear, very

4    specific, and very definite orders of the Court.  And their meager new excuses to Plaintiffs, for

5    why they are *still* not producing the data, only serve to demonstrate this.

6          <u>First</u>, Defendants' argument that they should not be required to create new materials, or

7    <u>have to apparently write source code in order to retrieve the summary data reports from their</u>

8    <u>database, is without any merit</u>.  Defendants never raised this issue in the motion to compel

9    briefing (including in their motion for reconsideration)—the <u>only</u> argument they ever raised was

10   that it would take some time to run an appropriate Title 13 review to make sure the aggregate

11   summary report data did not accidentally contain individualized information.  Dkt. 371 at 8-9.

12   They have thus waived it.  But they never raised it because it is contrary to law.  No one writes

13   source code to query a database.  Obviously, some work needs to be done to put forth the

14   parameter of a database query, so that the right report comes out—and this happens daily, as

15   anyone knows who works with databases, especially those containing large amounts of data (i.e.,

16   the date range, the requisite substantive fields, if necessary the requisite geographic fields, the

17   data sources, and so on).  "Coding" such a query is straightforward: the Bureau's 30(b)(6)

18   deponent plainly testified that various data that Plaintiffs seek are readily available from the

19   Bureau's databases.  *See, e.g.*, Makker Decl., Ex. 3, Dec. 17, 2020 Adams Depo. Tr. (rough) at

20   41:7-43:4, 76:16-78:12, 101:17-102:3.  And it is black letter law that easily querying a database

21   in such fashion is required, when sought—as made clear by cases before this very district, and

22   Court.  *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co*., No. 12-CV-0630-LHK (PSG), 2013 WL

23   4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports

24   from dynamic databases …."); *Gonzales v. Google, Inc*., 234 F.R.D. 674, 683 (N.D. Cal. 2006)

25   (denying third party Google's motion to quash government subpoena which required production

26   of information from databases, despite the need for Google to "create new code to format and

27   extract query and URL data from many computer banks"); *In re eBay Seller Antitrust Litig.*, No.

28   C 07-1882 JF (RS), 2009 WL 3613511, at *2 (N.D. Cal. Oct. 28, 2009) ("The Federal Rules of

1    Civil Procedure clearly contemplate the production of information from dynamic databases.").

2    Defendants should have already been querying these databases for information responsive to

3    Plaintiffs' RFPs from the get go, rather than forcing Plaintiffs to seek a 30(b)(6) deposition to

4    determine that such information exists in the Bureau's databases.

5         Second, Defendants' argument that they can defy the Court's orders because Plaintiffs

6    should ask for this information in an Interrogatory—and be satisfied with whatever response

7    Defendants give—is equally meritless.  Once again, Defendants never raised this argument in

8    connection with the motion to compel briefing, and thus waived it.  But it also provides a

9    remarkable insight into Defendants' bad faith conduct with respect this this issue.  With

10   Defendants not producing any material, and the fact discovery deadline of January 7 and initial

11   expert report deadline of January 14 fast approaching, Plaintiffs felt compelled to use a few of

12   their limited Interrogatories to try and separately obtain a portion of the data that Defendants

13   refused to provide.  Just last night—after the Court set this schedule on Plaintiffs' motion to

14   compel and for sanctions—Defendants provided their responses to those Interrogatories.  Makker

15   Decl., Ex. 4.  Here is a snippet:

16   
17   
18   
19   
20   
21   
22   
23   
24   
25   
26   

> **Interrogatory No. 4.**  Identify the number and percentage of total housing units/addresses that, as of the date You ceased field operations in 2020, 2010, and 2000, were enumerated/closed out as to each State, ACO, CFS, and CT through each of the following methods:  *[19, 20, 21]* (1) household response data (obtained either by self-response or in-person direct enumeration through NRFU); *[22, 23, 24]* (2) use of proxies (excluding vacant and delete/nonexistent), including number of visits prior to proxy enumeration; *[25, 26, 27]* (3) use of AR; *[28, 29, 30]* (4) "pop count only" enumerations; *[31, 32, 33]* (5) enumerations or determinations as vacant; *[34, 35, 36]* (6) enumerations or determinations as delete/nonexistent; *[37, 38, 39]* (7) enumerations that do not contain name and/or date of birth; *[40, 41, 42]* (8) enumerations using fictitious names (e.g., ADULT ONE); *[43, 44, 45]* (9) enumerations with a "pop count" of 0 or 1 and information entered as "refused" or "don't know"; *[46, 47, 48]* (10) enumerations of closed cases that were reopened in the close-out phase of NRFU; *[49, 50, 51]* (11) enumerations where the geo-location data does not match the housing unit/address; and *[52, 53, 54]* (12) all actual and potential unresolved housing units/addresses (and actual or planned imputation). Your response should also identify by produced Bates-number/other markings all Documents or Things on which Your response is based and *[55]* the three Persons most knowledgeable about the content of Your response.

27   
28   

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1

**OBJECTION:** Defendants incorporate by reference the above objections.

2
    Defendants further object to Plaintiff's characterization of this interrogatory as one

3
interrogatory, when in fact it contains at least 12 "discrete subparts" for *each* of the three censuses
about which Plaintiffs are seeking information. Fed. R. Civ. P. 33(a)(l). The request to identify

4
the total number of housing units enumerated on a given date in a given area by each of the 12
methods Plaintiffs specify is a distinct inquiry. And because the request asks this information for

5
three different censuses, the interrogatory contains 36 subparts. And the request to identify the

6
people knowledgeable about the substance of the response is a separate inquiry still. Defendants
will therefore consider this interrogatory to count as 37 interrogatories for purposes of the 10-

7
interrogatory limit established by the Court's scheduling order, ECF 357.

8
    Defendants separately object to this interrogatory to the extent it calls for producing
information that is not readily available from Census Bureau's data systems, including information

9
at a level of geography lower than the ACO. To derive such information would require drafting

10
new computer code. Drafting such code is unduly burdensome, particularly given the expedited
timeframe permitted for Defendants' interrogatory responses, and disproportionate to the needs of

11
the case. Further, 13 U.S.C. §§ 8 and 9 preclude the release of data without fully vetted
confidentiality protections. The Census Bureau has determined that sub-ACO-level data, such as

12
data at the census tract level, must go through a robust disclosure-avoidance process. Because this

13
process is itself onerous and likely to mask the data, drafting any code to derive such data would
be unnecessary and disproportionate to the needs of the case.

14

15
*See id.*

16
    The response evidences Defendants' self-help and bad faith conduct. After refusing to

17
provide the Court-ordered materials to Plaintiffs for weeks, and insisting that Plaintiffs will only

18
get some of the information regarding completion/enumeration metrics through Interrogatories,

19
Defendants (1) unilaterally decide that a single interrogatory is in fact 37 separate interrogatories

20
(which they then use, later in their interrogatory response, to refuse to answer the interrogatories

21
from Plaintiffs regarding the Presidential Memorandum or data processing anomalies as beyond

22
the 10 interrogatories authorized by the Court), and (2) provide a small portion of the data alone,

23
at only the highest sub-state level of geographic scope: the ACO level (of which there are 248).

24
    Defendants do provide, with their interrogatory response, detailed Excel spreadsheets

25
(many thousands of lines long) that have some of that ACO-level data (but no lower). And that

26
also reveals Defendants' gambit. As an initial matter, it puts the lie to Defendants' claim that

27
they cannot possible query their database to provide the summary data reports ordered by the

28
Court—they can, and they did, at the level and scope they preferred, last night … just before this

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1  motion was scheduled to be filed.  And they never did before—no such summary data reports

2  were <u>ever</u> produced prior to last night, as an attachment to Defendants' Interrogatory Responses.

3  Moreover, they provide just a tiny (and incomplete) window into *exactly* why Defendants

4  need all such reports, at each of the geographic levels of scope, asked for by Plaintiffs and

5  ordered produced by the Court.  As the Court may recall, on September 22, 2020—just prior to

6  the Court's ruling on Plaintiffs' motion for a preliminary injunction, Defendants (without leave)

7  filed a declaration by Albert Fontenot (ECF No. 196-1), wherein Mr. Fontenot stated, among

8  other things as follows:

> 12  data collection prior to September 30, 2020.  As of September 21, 2020 we are finished with 88.8%
>
> 13  of the NRFU field work and 95.8% of the housing units in the nation have been enumerated - and
>
> 14  those numbers increase daily.  Additionally, 4 states have 99% or more of their housing unit
>
> 15  enumeration completed.  A total of 49 states, plus Washington D.C. and the Commonwealth of
>
> 16  Puerto Rico, have completed 90% or more of the housing units.

14  *Id.* ¶ 13.  The summary data report Excels Defendants produced last night, at the ACO level

15  alone, indicates that, as of September 21, 2020, numerous ACOs had not come anywhere close to

16  achieving a 95.8% completion rate.  Makker Decl., ¶ 7.  For example, the Window Rock,

17  Arizona ACO (3110), which is home to Plaintiff Navajo Nation, had reached only 63.6%

18  completion.  *Id.*  The Shreveport, Louisiana ACO (2991) had reached only 61.2% completion.

19  *Id.*  These completion rate disparities between ACOs demonstrate why Plaintiffs urgently need

20  more granular data at the tract level to understand precisely where undercounts and differential

21  undercounts of hard-to-count populations occurred:

| 2 | ACO | Date | Measure Names | Nation | RCC | ad C | Measure Val |
|---|-----|------|---------------|--------|-----|------|-------------|
| 15143 | 2376 - Philadelphia-Penn | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2399 - Philadelphia | NRFU | 0.781553554 |
| 15287 | 2902 - Jackson | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.739923811 |
| 15290 | 2904 - Birmingham | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.715351003 |
| 15293 | 2905 - Huntsville | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.779373418 |
| 15296 | 2906 - Mobile | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.742948131 |
| 15299 | 2907 - Charleston | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.766235938 |
| 15302 | 2908 - Columbia | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.787063849 |
| 15341 | 2976 - Pensacola | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.746749441 |
| 15356 | 2981 - Columbus | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.679830397 |
| 15362 | 2983 - Douglasville | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.774393898 |
| 15368 | 2985 - Gwinnett County | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.750491078 |
| 15386 | 2991 - Shreveport | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.611503335 |
| 15395 | 2994 - Durham | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.766407219 |
| 15401 | 2996 - Greenville, NC | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 2999 - Atlanta | NRFU | 0.787367764 |
| 15419 | 3108 - Maricopa West | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 3199 - Dallas | NRFU | 0.788253265 |
| 15425 | 3110 - Window Rock | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 3199 - Dallas | NRFU | 0.63635035 |
| 15434 | 3156 - Colorado Springs | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 3199 - Dallas | NRFU | 0.760683328 |
| 15446 | 3160 - Billings | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 3199 - Dallas | NRFU | 0.786488769 |
| 15497 | 3178 - Fort Bend Co. | 9/21/2020 | Total Completed as % of Current Followup Workload | National | 3199 - Dallas | NRFU | 0.79985729 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1   *Id.*  At the lower levels of geographic scope—continuing all the way through the data collection

2   termination date of October 15—Plaintiffs are quite certain they will find significant areas of

3   undercount, and differential undercount, showing how Defendants' decision to truncate the

4   Census did not bear a reasonable relationship to an actual, accurate Census.  It is this data that

5   Defendants very much do not want to produce.

6         In addition, the new summary report data Excels produced by Defendants last night also

7   shows that in the run-up to Defendants' first planned early termination of the NRFU operation,

8   September 30, enumerator productivity was especially high.  Makker Decl., ¶ 8  The below

9   snapshot  shows selected ACOs with productivity rates (closed cases per hour) above 2.0

10  between September 26 and September 30.  *Id.*  Those highlighted show more than a 0.5 increase

11  in the productivity rate versus the cumulative rate (i.e., the overall rate for all of NRFU as of the

12  date).  *Id.*  For example, the Harris Co. East ACO, part of Plaintiff Harris County, showed more

13  than a 0.6 increase in productivity on September 29.  *Id.*  Such spikes in productivity evidence

14  that enumerators were heavily pressured to close cases before the end of NRFU.

| 2 | ACO | Date | Cases Completed for Day | Enumerator Hours Worked for Day | Productivity Rate for Day | Cumulative Cases Completed | Cumulative Enumerator Hours Worked | Cumulative Productivity Rate |
|---|---|---|---|---|---|---|---|---|
| 6187 | 2262 - Gardiner | 9/26/2020 | 162 | 68 | 2.382352941 | 377616 | 195414.25 | 1.932387224 |
| 6212 | 2287 - Rochester | 9/26/2020 | 2391 | 1182.75 | 2.021559924 | 339343 | 125073.5 | 2.713148669 |
| 6282 | 2579 - Minneapolis | 9/26/2020 | 3075 | 328 | 9.375 | 137465 | 66498.25 | 2.067197257 |
| 6293 | 2904 - Birmingham | 9/26/2020 | 6892 | 3428 | 2.01050175 | 291440 | 134905.25 | 2.160331047 |
| 6296 | 2907 - Charleston | 9/26/2020 | 6943 | 2989.5 | 2.32246195 | 357548 | 137409.75 | 2.602056986 |
| 6297 | 2908 - Columbia | 9/26/2020 | 3663 | 1635.5 | 2.239682054 | 265570 | 112393.75 | 2.362853806 |
| 6310 | 2976 - Pensacola | 9/26/2020 | 5636 | 2678.5 | 2.104162778 | 286496 | 115750.75 | 2.475113932 |
| 6322 | 2988 - Baton Rouge | 9/26/2020 | 4300 | 1940 | 2.216494845 | 220275 | 98996 | 2.225089903 |
| 6330 | 2996 - Greenville, NC | 9/26/2020 | 8223 | 2786.75 | 2.95074908 | 316725 | 136189.5 | 2.325619817 |
| 6434 | 2262 - Gardiner | 9/27/2020 | 167 | 61.25 | 2.726530612 | 377783 | 195475.5 | 1.932636059 |
| 6437 | 2265 - Parsippany | 9/27/2020 | 50 | 22 | 2.272727273 | 123928 | 59227 | 2.092424063 |
| 6459 | 2287 - Rochester | 9/27/2020 | 2423 | 1051.5 | 2.304327152 | 341766 | 126125 | 2.709740337 |
| 6544 | 2908 - Columbia | 9/27/2020 | 2872 | 1426.5 | 2.013319313 | 268442 | 113820.25 | 2.358473119 |
| 6569 | 2988 - Baton Rouge | 9/27/2020 | 3560 | 1762.5 | 2.019858156 | 223835 | 100758.5 | 2.221499923 |
| 6571 | 2990 - New Orleans | 9/27/2020 | 192 | 52.25 | 3.674641148 | 178867 | 94279.5 | 1.897199285 |
| 6577 | 2996 - Greenville, NC | 9/27/2020 | 6254 | 1922.25 | 3.253478996 | 322979 | 138111.75 | 2.338533832 |
| 6732 | 2370 - South Point, OH | 9/28/2020 | 691 | 320 | 2.159375 | 246989 | 117113.5 | 2.108971212 |
| 6793 | 2910 - Atlanta | 9/28/2020 | 3648 | 1748 | 2.086956522 | 198833 | 99944.25 | 1.989439112 |
| 6824 | 2996 - Greenville, NC | 9/28/2020 | 6266 | 2449.75 | 2.557812922 | 329245 | 140561.5 | 2.342355481 |
| 6863 | 3186 - Houston West | 9/28/2020 | 79 | 19.75 | 4 | 161033 | 72294.5 | 2.22745852 |
| 6869 | 3192 - San Antonio West | 9/28/2020 | 24 | 4.5 | 5.333333333 | 103313 | 60282.75 | 1.713807018 |
| 6903 | 3283 - Santa Ana | 9/28/2020 | 117 | 3 | 39 | 187515 | 92865.25 | 2.019216015 |
| 6921 | 2255 - New Haven | 9/29/2020 | 1444 | 581.75 | 2.482165879 | 160004 | 86380.25 | 1.852321567 |
| 6932 | 2266 - South Plainfield | 9/29/2020 | 1526 | 651 | 2.344086022 | 123720 | 70017 | 1.766999443 |
| 6954 | 2288 - Brooklyn 3 | 9/29/2020 | 777 | 371 | 2.094339623 | 140775 | 79853 | 1.762926878 |
| 6963 | 2297 - Burlington | 9/29/2020 | 267 | 123.25 | 2.1663286 | 159695 | 75341.5 | 2.119615351 |
| 7037 | 2907 - Charleston | 9/29/2020 | 9791 | 3609.25 | 2.712751957 | 377505 | 146301 | 2.580330962 |
| 7063 | 2988 - Baton Rouge | 9/29/2020 | 3923 | 1945.25 | 2.016707364 | 230758 | 104504.75 | 2.208110158 |
| 7071 | 2996 - Greenville, NC | 9/29/2020 | 6837 | 2660.75 | 2.569576247 | 336082 | 143222.25 | 2.346576737 |
| 7072 | 2997 - Raleigh | 9/29/2020 | 2808 | 1354.75 | 2.072707142 | 230511 | 95393 | 2.416435168 |
| 7104 | 3180 - Harris Co. East | 9/29/2020 | 407 | 151.75 | 2.682042834 | 138128 | 67193 | 2.055690325 |
| 7110 | 3186 - Houston West | 9/29/2020 | 18 | 8 | 2.25 | 161051 | 72302.5 | 2.227461014 |
| 7150 | 3283 - Santa Ana | 9/29/2020 | 106 | 47.25 | 2.243386243 | 187621 | 92912.5 | 2.019330015 |
| 7176 | 2263 - Concord | 9/30/2020 | 1323 | 564.25 | 2.344705361 | 255318 | 120824.75 | 2.113126657 |
| 7179 | 2266 - South Plainfield | 9/30/2020 | 1071 | 507.25 | 2.111384919 | 124791 | 70524.25 | 1.769476457 |
| 7284 | 2907 - Charleston | 9/30/2020 | 9430 | 3661.25 | 2.57562308 | 386935 | 149962.25 | 2.580216021 |
| 7317 | 2995 - Fayetteville | 9/30/2020 | 15589 | 2524.5 | 6.175084175 | 314057 | 145636.25 | 2.156448 |
| 7318 | 2996 - Greenville, NC | 9/30/2020 | 7950 | 2826 | 2.813163482 | 344032 | 146048.25 | 2.355605083 |
| 7381 | 3267 - Fullerton | 9/30/2020 | 75 | 6.75 | 11.11111111 | 159692 | 85749.5 | 1.862308235 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1   *Id.*  Additionally, Defendants' data shows that days showing extremely high productivity in

2   ACOs all appear close in time to the Bureau's various end dates for NRFU (September 30,

3   October 5, and October 15), further indicating that enumerators were under extreme pressure to

4   close cases as the end of NRFU approached:

| | ACO | Date | Cases Completed for Day | Enumerator Hours Worked for Day | Productivity Rate for Day | Cumulative Cases Completed | Cumulative Enumerator Hours Worked | Cumulative Productivity Rate |
|---|---|---|---|---|---|---|---|---|
| 5 | 2579 - Minneapolis | 9/25/2020 | 8085 | 191.25 | 42.2745098 | 134390 | 66170.25 | 2.030973134 |
| 6 | 3173 - Dallas | 10/5/2020 | 42 | 1 | 42 | 136181 | 79226.5 | 1.71888194 |
| 7 | 3283 - Santa Ana | 9/28/2020 | 117 | 3 | 39 | 187515 | 92865.25 | 2.019216015 |
| 8 | 2569 - Evansville | 10/13/2020 | 68 | 3.75 | 18.13333333 | 239543 | 116440.25 | 2.057218187 |
| 9 | 3186 - Houston West | 10/15/2020 | 18 | 1.5 | 12 | 163735 | 73492 | 2.227929571 |
| 10 | 3267 - Fullerton | 9/30/2020 | 75 | 6.75 | 11.11111111 | 159692 | 85749.5 | 1.862308235 |
| 11 | 2579 - Minneapolis | 9/26/2020 | 3075 | 328 | 9.375 | 137465 | 66498.25 | 2.067197257 |
| 12 | 2269 - Fairlawn | 10/5/2020 | 1241 | 133 | 9.330827068 | 168712 | 96401.75 | 1.750092711 |
| 13 | 3195 - Williamson Co. | 10/4/2020 | 122 | 16.75 | 7.28358209 | 282308 | 130217 | 2.167981139 |
| 14 | 2907 - Charleston | 10/15/2020 | 1370 | 206.5 | 6.634382567 | 443587 | 183698 | 2.414762273 |
| 15 | 2569 - Evansville | 10/12/2020 | 59 | 9 | 6.555555556 | 239475 | 116436.5 | 2.056700433 |
| 16 | 2996 - Greenville, NC | 10/14/2020 | 143 | 22.5 | 6.355555556 | 366125 | 154078 | 2.376231519 |
| 17 | 2995 - Fayetteville | 9/30/2020 | 15589 | 2524.5 | 6.175084175 | 314057 | 145636.25 | 2.156448 |
| 18 | 2290 - Staten Island | 10/14/2020 | 173 | 30.25 | 5.719008264 | 80583 | 49595.75 | 1.624796648 |
| 19 | 2988 - Baton Rouge | 10/14/2020 | 619 | 113.25 | 5.465783664 | 251502 | 117732.25 | 2.13622011 |
| 20 | 3166 - Cleveland Co. | 10/15/2020 | 423 | 78.25 | 5.405750799 | 282728 | 136577 | 2.070099651 |
| 21 | 3192 - San Antonio West | 9/28/2020 | 24 | 4.5 | 5.333333333 | 103313 | 60282.75 | 1.713807018 |
| 22 | 2569 - Evansville | 10/14/2020 | 64 | 12.5 | 5.12 | 239607 | 116452.75 | 2.057546945 |
| 23 | 2268 - Newark | 10/5/2020 | 284 | 59.5 | 4.773109244 | 143891 | 89304 | 1.611249216 |

13   *Id.*  While this data indicates that enumerator productivity spiked around the dates of

14   Defendants' curtailments of the NRFU process, more granular data will likely show even larger

15   spikes in hard-to-count communities.  Again, it is this data that Defendants very much do not

16   want to produce.

17        <u>Third, Defendants' argument that Title 13 immunizes all summary report data at the CFS</u>

18   <u>or Census Tract level is unsupported and meritless.</u>  Defendants' last argument is to seek refuge

19   behind Title 13, with the unfounded claim that they cannot possibly produce summary data

20   reports at the narrower geographic scope level without violating Title 13.  Once again,

21   Defendants never raised this argument at the motion to compel stage, and once again it is

22   waived.  All Defendants said, at the motion to compel stage, was that it would take time for them

23   to review these reports for potential Title 13 slippage.  But when the Court first ordered them, on

24   December 10, to produce the data by December 14, Defendants' only response was: ok.  They

25   agreed, and said they would.  Dkt. 376-1 at 4.  The Court then ordered them a second time to

26   produce all such reports.  Dkt. 379 at 5.   Defendants' response only makes sense in that they

27   knew they could produce all such reports within 4 days (which also comports with the testimony

28   from their 30(b)(6) deponent that these queries take two days at most), and that Title 13 did not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1   block such aggregated reports.  Of course it does not—which is why Defendants could not cite a

2   single case to Plaintiffs.

3                                    *        *        *

4        The Court has inherent authority to impose appropriate sanctions for violation of a court

5   order.  *Chambers*, 501 U.S. at 44–46 (citations and internal quotation marks omitted); *see also*

6   *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) ("[t]he

7   district court has 'broad fact-finding powers' with respect to sanctions, and its findings warrant

8   'great deference'" (internal citation omitted)); *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d

9   371, 386 (2d Cir. 1981) (federal courts "possess[] broad inherent power to protect the

10  administration of justice by levying sanctions in response to abusive litigation practices.").  To

11  grant such relief, the Court need only find "bad faith or conduct tantamount to bad faith," such as

12  where "recklessness [is] combined with an additional factor such as frivolousness, harassment, or

13  an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

14       For all the reasons set forth above, Defendants' string of reckless and deliberate

15  violations designed to evade and circumvent this Court's orders warrant such a finding.  And the

16  Court has broad discretion in how best to shape sanctions.  *See* 1 Sanc. Fed. Law of Lit. Abuse §

17  28 (2019) ("The court is vested with broad discretion to fashion an appropriate inherent power

18  sanction to redress abusive litigation practices."); *Shepherd v. Am. Broad. Companies, Inc.*, 62

19  F.3d 1469, 1475 (D.C. Cir. 1995) ("[I]nherent power sanctions available to courts include fines,

20  awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of

21  counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence.");

22  *Richmark Corp v. Timber Failing Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) (affirming

23  $10,000 contempt fine per day for failing to comply with discovery orders ordering responses to

24  requests for production and interrogatories).

25       Plaintiffs respectfully request that the Court order the following:

26       1.  Production, within two days of the Court's order, of all summary
            report data responsive to Plaintiffs' sufficient-to-show requests
27          regarding data collection processes, metrics, issues and
            improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18).
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18        CASE NO. 5:20-CV-05799-LHK
          PLAINTIFFS' RENEWED MOTION TO COMPEL AND
          FOR SANCTIONS

2. A declaration from the Census Bureau employee(s) responsible for producing these materials, providing detailed explanations of the reports being delivered and how they were compiled, and unequivocally confirming compliance with the Court's order and production of the summary status reports responsive to Plaintiffs' 11 sufficient-to-show RFPs.

3. A fine in the amount of $5000, or an amount the Court deems appropriate, for each day that passes, after the deadline, where Defendants have not produced the entirety of the materials.

4. Any and all other sanctions and relief the Court deems appropriate so that Plaintiffs are not prejudiced by Defendants' egregious, ongoing behavior

Plaintiffs do not move or ask, at this time, for attorneys' fees or costs—in line with their decisions in the past to not complicate straightforward issues regarding the Court's enforcement of its orders.  Plaintiffs continue to reserve on that issue until the end of the case, where appropriate Plaintiffs can present, and the Court can assess, the overall sweep of this case and Defendants' conduct throughout.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1    Dated: January 5, 2021                    LATHAM & WATKINS LLP

2

3                                              By: /s/ Sadik Huseny

4                                                  Sadik Huseny

5                                              Sadik Huseny (Bar No. 224659)
                                               sadik.huseny@lw.com
6                                              Steven M. Bauer (Bar No. 135067)
                                               steven.bauer@lw.com
7                                              Amit Makker (Bar No. 280747)
                                               amit.makker@lw.com
8                                              Shannon D. Lankenau (Bar. No. 294263)
                                               shannon.lankenau@lw.com
9                                              **LATHAM & WATKINS LLP**
                                               505 Montgomery Street, Suite 2000
10                                             San Francisco, CA 94111
                                               Telephone:  415.391.0600
11                                             Facsimile:  415.395.8095

12                                             Melissa Arbus Sherry (*pro hac vice*)
                                               melissa.sherry@lw.com
13                                             Richard P. Bress (*pro hac vice*)
                                               rick.bress@lw.com
14                                             Anne W. Robinson (*pro hac vice*)
                                               anne.robinson@lw.com
15                                             Tyce R. Walters (*pro hac vice*)
                                               tyce.walters@lw.com
16                                             Gemma Donofrio (*pro hac vice*)
                                               gemma.donofrio@lw.com
17                                             Christine C. Smith (*pro hac vice*)
                                               christine.smith@lw.com
18                                             **LATHAM & WATKINS LLP**
                                               555 Eleventh Street NW, Suite 1000
19                                             Washington, D.C. 20004
                                               Telephone:  202.637.2200
20                                             Facsimile:  202.637.2201

21                                             *Attorneys for Plaintiffs National Urban League;*
                                               *League of Women Voters; Black Alliance for*
22                                             *Just Immigration; Harris County, Texas; King*
                                               *County, Washington; City of San Jose,*
23                                             *California; Rodney Ellis; Adrian Garcia; and*
                                               *the NAACP*
24

25   Dated: January 5, 2021                    By: /s/ Jon M. Greenbaum
                                               Kristen Clarke (*pro hac vice*)
26                                             kclarke@lawyerscommittee.org
                                               Jon M. Greenbaum (Bar No. 166733)
27                                             jgreenbaum@lawyerscommittee.org
                                               Ezra D. Rosenberg (*pro hac vice*)
28                                             erosenberg@lawyerscommittee.org

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1   Ajay Saini (*pro hac vice*)
    asaini@lawyerscommitee.org
2   Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
3   Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
4   **LAWYERS' COMMITTEE FOR CIVIL**
    **RIGHTS UNDER LAW**
5   1500 K Street NW, Suite 900
    Washington, DC 20005
6   Telephone:  202.662.8600
    Facsimile:  202.783.0857
7

8   *Attorneys for Plaintiffs National Urban League;*
    *City of San Jose, California; Harris County,*
9   *Texas; League of Women Voters; King County,*
    *Washington; Black Alliance for Just*
10  *Immigration; Rodney Ellis; Adrian Garcia; the*
    *NAACP; and Navajo Nation*
11

12  Wendy R. Weiser (*pro hac vice*)
    weiserw@brennan.law.nyu.edu
13  Thomas P. Wolf (*pro hac vice*)
    wolft@brennan.law.nyu.edu
14  Kelly M. Percival (*pro hac vice*)
    percivalk@brennan.law.nyu.edu
15  **BRENNAN CENTER FOR JUSTICE**
    120 Broadway, Suite 1750
16  New York, NY 10271
    Telephone: 646.292.8310
17  Facsimile: 212.463.7308

18  *Attorneys for Plaintiffs National Urban League;*
    *City of San Jose, California; Harris County,*
19  *Texas; League of Women Voters; King County,*
    *Washington; Black Alliance for Just*
20  *Immigration; Rodney Ellis; Adrian Garcia; the*
    *NAACP; and Navajo Nation*
21

22  Mark Rosenbaum (Bar No. 59940)
    mrosenbaum@publiccounsel.org
23  **PUBLIC COUNSEL**
    610 South Ardmore Avenue
24  Los Angeles, California 90005
    Telephone:  213.385.2977
25  Facsimile:  213.385.9089

26  *Attorneys for Plaintiff City of San Jose*

27

28

LATHAM&WATKINS⊔ᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

21

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice*)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: January 5, 2021

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: January 5, 2021

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us
Michael Mutalipassi (Bar No. 274858)
michaelmu@ci.salinas.ca.us
**CITY OF SALINAS**
200 Lincoln Avenue
Salinas, CA 93901
Telephone: 831.758.7256
Facsimile: 831.758.7257

*Attorneys for Plaintiff City of Salinas*

Dated: January 5, 2021

By: /s/ Rafey S. Balabanian
Rafey S. Balabanian (Bar No. 315962)
rbalabanian@edelson.com
Lily E. Hough (Bar No. 315277)
lhough@edelson.com
**EDELSON P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Telephone: 415.212.9300
     Facsimile: 415.373.9435
2

3    Rebecca Hirsch (*pro hac vice*)
     rebecca.hirsch2@cityofchicago.org
4    **CORPORATION COUNSEL FOR THE
     CITY OF CHICAGO**
5    Celia Meza
     Stephen J. Kane
6    121 N. LaSalle Street, Room 600
     Chicago, IL 60602
7    Telephone: (312) 744-8143
     Facsimile: (312) 744-5185
8

9    *Attorneys for Plaintiff City of Chicago*

10   Dated: January 5, 2021         By: /s/ Donald R. Pongrace
     Donald R. Pongrace (*pro hac vice*)
11   dpongrace@akingump.com
     Merrill C. Godfrey (Bar No. 200437)
12   mgodfrey@akingump.com
     **AKIN GUMP STRAUSS HAUER & FELD
13   LLP**
     2001 K St., N.W.
14   Washington, D.C. 20006
     Telephone: (202) 887-4000
15   Facsimile: 202-887-4288

16   *Attorneys for Plaintiff Gila River Indian
     Community*
17

18   Dated: January 5, 2021         By: /s/ David I. Holtzman
     David I. Holtzman (Bar No. 299287)
19   David.Holtzman@hklaw.com
     **HOLLAND & KNIGHT LLP**
20   Daniel P. Kappes
     Jacqueline N. Harvey
21   50 California Street, 28th Floor
     San Francisco, CA 94111
22   Telephone: (415) 743-6970
     Fax: (415) 743-6910
23

24   *Attorneys for Plaintiff County of Los Angeles*

25

26

27

28

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

23

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS

1

## **ATTESTATION**

2      I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this

3   document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred

4   in this filing.

5

6   Dated: January 5, 2021                                   **LATHAM & WATKINS** LLP

7                                                            By:  */s/ Sadik Huseny*
                                                                 Sadik Huseny
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24   CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' RENEWED MOTION TO COMPEL AND
FOR SANCTIONS