LATHAM & WATKINS LLP
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Amit Makker (Bar No. 280747)
    amit.makker@lw.com
  Shannon D. Lankenau (Bar No. 294263)
    shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
  Richard P. Bress (*pro hac vice*)
    rick.bress@lw.com
  Anne W. Robinson (*pro hac vice*)
    anne.robinson@lw.com
  Tyce R. Walters (*pro hac vice*)
    tyce.walters@lw.com
  Gemma Donofrio (*pro hac vice*)
    gemma.donofrio@lw.com
  Christine C. Smith (*pro hac vice*)
    christine.smith@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
  Kristen Clarke (*pro hac vice*)
    kclarke@lawyerscommittee.org
  Jon M. Greenbaum (Bar No. 166733)
    jgreenbaum@lawyerscommittee.org
  Ezra D. Rosenberg (*pro hac vice*)
    erosenberg@lawyerscommittee.org
  Ajay P. Saini (*pro hac vice*)
    asaini@lawyerscommittee.org
  Maryum Jordan (Bar No. 325447)
    mjordan@lawyerscommittee.org
  Pooja Chaudhuri (Bar No. 314847)
    pchaudhuri@lawyerscommittee.org
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202.662.8600
Facsimile: 202.783.0857

*Additional counsel and representation information listed in signature block*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WILBUR L. ROSS, JR., et al.,<br><br>                    Defendants. | CASE NO. 5:20-cv-05799-LHK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL AND FOR SANCTIONS**<br><br>Re: Dkt. No. 416<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 8<br>Judge: Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | DISCUSSION | | 2 |
| | A. | It is Unchallenged and Undisputed That Defendants Have Defied the Court's Orders | 2 |
| | B. | Defendants' New Argument That They Apparently Didn't *Know* that Plaintiffs Had Asked For Summary Data Reports From Defendants' Database Or That The Court Compelled Such Production Is Frivolous | 3 |
| | C. | Defendants' Self-Serving And Vague New Assertions About Title 13 Confidentiality Protections Are Contrived and Do Not Shield The Aggregate Summary Report Data Requested | 4 |
| | D. | Defendants' Newfound Claims of "Burden" Are Meritless and Raise Troubling Issues About Defendants' Failure to Present Any Such Issues to the Court or to Plaintiffs at an Appropriate Earlier Time | 7 |
| | E. | Contrary to Defendants' Assertions, The Court Can Issue Monetary Sanctions Under Rule 37(b) for Any Continuing Defiance | 10 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Baldrige v. Shapiro*,
  455 U.S. 345 361 (1982) ................................................................................................................5

*Barry v. Bowen*,
  884 F.2d 442 (9th Cir. 1989) ........................................................................................................11

*Mattingly v. United States*,
  939 F.2d 816 (9th Cir. 1991) ..................................................................................................11, 12

*United States v. Nat'l Medical Enterprises, Inc.*,
  792 F.2d 906 (9th Cir. 1986) ..................................................................................................10, 11

*United States v. Simpson*,
  927 F.2d 1088 (9th Cir. 1991), *abrogated on other grounds by*
  *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .......................................................10

*United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*,
  617 F.2d 1365 (9th Cir. 1980) ................................................................................................11, 12

*United States v. Woodley*,
  9 F.3d 774 (1993) ..........................................................................................................10, 11, 12

### RULES

Fed.R.Civ.P. 37 ................................................................................................................................11

Fed. R. Civ. P. 37(b) ..................................................................................................................10, 11

### OTHER AUTHORITIES

https://2020census.gov/en/response-rates/self-response.html .........................................................5

https://data.world/uscensusbureau/2020-census-response-rate-data ...............................................5

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' REPLY ISO RENEWED MOTION TO
COMPEL AND FOR SANCTIONS

## I. INTRODUCTION

Defendants' opposition and new declarations confirm beyond doubt that Defendants have defied this Court's orders and deliberately acted to keep critical Court-ordered materials out of Plaintiffs' hands. They have done so precisely so that Defendants' "best-Census-ever!" assertions, that Defendants also made a lynchpin of their argument to the Supreme Court when seeking to overturn this Court's preliminary injunction order, can never be fully tested. And they now raise three contrived arguments to justify their ongoing defiance, and their attempts at keeping these materials locked up forever, that they never raised with the Court or Plaintiffs during the motion to compel period one month ago. Those arguments would have failed then, which is why Defendants never brought them. And they fail now, notwithstanding the self-help Defendants have gifted themselves by first defying the Court's orders for nearly a month and now claiming that there is just no time to adequately respond. Defendants have used this same tactic before—feign ignorance, delay with all might, partially comply when forced, then wail there is no time left for full compliance—in trying to avoid scrutiny of the Trump administration's attack on the accuracy and integrity of the 2020 Census. That they use it again, in these circumstances, is inexcusable.

Plaintiffs have a limited amount of time to respond to Defendants' near-midnight filing, last night, of 21 pages of briefing and 17 pages of new, substantive declarations. As a result, this reply is necessarily abbreviated, and Plaintiffs would be more than happy to respond more fulsomely on any issue the Court may desire. But even this limited amount of time is sufficient to highlight for the Court the half-truths and omissions regarding Defendants' purported justifications—ignorance, confidentiality and burden—for their ongoing defiance.

It is worth highlighting one additional point up front. Defendant's final fallback argument—that this Court cannot possibly issue a go-forward monetary sanction against Defendants for any continual defiance of the Court's orders—reveals much of what may be motivating Defendants' ongoing intransigence in this case. Defendants simply think there is nothing this Court can do, not really, to force Defendants to obey its dictates. Defendants are mistaken. The Ninth Circuit has made clear, in authority that Defendant neglect to flag for the

Court, that this Court absolutely has the power to address and sanction Defendants' contemptible behavior. And let us make no mistake. Defendants could have chosen to finally play this case straight. They could have met and conferred with Plaintiffs in good faith months ago, and the parties could have come up with a reasonable solution to any actual issues of burden and confidentiality. That is what normally happens in discovery. And Plaintiffs have implored Defendants to do so, for weeks. But it apparently does not happen in situations like here where Defendants think they can just unilaterally declare what will and will not be produced and act with impunity—apparently believing themselves "immune" from a Court enforcing its orders.

Plaintiffs respectfully request that the Court grant Plaintiffs' renewed motion to compel and for sanctions and order the relief requested, along with any other relief the Court thinks appropriate in these circumstances.

## II.     DISCUSSION

### A.     It is Unchallenged and Undisputed That Defendants Have Defied the Court's Orders

As laid out in Plaintiffs' original motion to compel, Plaintiffs seek "summary report data responsive to Defendants' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16, 18). ECF No. 368-1. The Court ordered the production of precisely this data. ECF No. 372. When challenging the Court's order, Defendants *never* took issue with this portion of the Court's directive. ECF 376-1. Instead, agreed to comply, stating "Defendants are prepared to produce other materials that Plaintiffs requested … including numerous 'summary report data responsive to Plaintiffs' sufficient-to-show requests[.]" *Id.* at 4. Accordingly, the Court reiterated its prior order that Defendants produce such materials by December 14, 2020.

Defendants never once state that they have complied with the Court's order. Not once. Instead, they just raise various arguments as to why they should essentially be excused for noncompliance.

Plaintiffs address each of those arguments for excuse (ignorance, confidentiality, and burden) below. But there are two additional points worth flagging here. Parsing through their

various arguments, Defendants seem to assert that (i) they have produced some other materials as part of their overall production that relate to Plaintiffs' sufficient-to-show requests, and (ii) they have produced some data now—as part of their Interrogatory response—that relate to Plaintiffs' sufficient-to-show requests. As to the former, Plaintiffs have asked Defendants repeatedly to identify the Bates-numbers of such documents. They refused, saying "search yourself." It is therefore not surprising that Defendants' opposition still does not contain a single such identifying number. That is, of course, because notwithstanding their claims (discussed below) that Defendants thought they could just satisfy these data summary reports with things *other* than data summary reports, they have not done that either. And as to the latter, as Plaintiffs stated in their motion, the Excel spreadsheets provided as part of Defendants' Interrogatory response—after the Court set the schedule on this motion to compel and for sanctions—do provide some but <u>nowhere close</u> to all of the data requested, even at the "ACO level." Instead, those Excels show that Defendants *had the ability all along to provide requested summary data reports from the Data Lake to Plaintiffs but deliberately withheld them.*

      Had Defendants acted in good faith, the Parties may have by now worked through all of these issues, and Plaintiffs' experts would have a full, appropriate set of data from which to run their analyses. Instead, Defendants chose the path of defiance and delay. And their excuses below—never before raised during the motion to compel—fail.

    **B.**     **Defendants' New Argument That They Apparently Didn't *Know* that Plaintiffs Had Asked For Summary Data Reports From Defendants' Database Or That The Court Compelled Such Production Is Frivolous**

      Plaintiffs brought a motion to compel one month ago when it seemed clear that Defendants would not comply. The Court's orders from that process could not have been any clearer as to what Defendants were required to produce in response to Plaintiffs' 11 sufficient-to-show requests, and the Court-ordered Rule 30(b)(6) deposition on the Bureau's document/database materials confirmed that Defendants had ready access to those reports. So it is rather remarkable that Defendants' primary argument to the Court now is that Defendants apparently *never knew* that Plaintiffs were asking for summary data reports from Defendants' databases to satisfy the 11 sufficient-to-show RFPs (or that the Court had ordered all such reports

produced). Defendants apparently thought that Plaintiffs were only asking for—and the Court had only ordered—various reports already printed out. Defendants' claim is provably wrong for at least the following four reasons.

First, Plaintiffs specifically requested, and the Court ordered, production of "all summary report data" separate and apart from the CIG and other documents that were *already* in existence. *See* ECF No. 368-1, at 3 (compare request no. 2 with request no. 3); *see also* ECF No. 372, at 8.

Second, as discussed above, Plaintiffs have not identified any such data in the CIG or other reports Defendants have produced to date. Defendants' claim that they can be found somewhere in their production, but they refuse to identify even a single one.

Third, it is not credible to think that Plaintiffs were only seeking reports that were already "printed." At the November 13, 2020 CMC, counsel for Plaintiffs stated specifically, "we expect a lot of the materials that we are seeking, *not all*, but a lot of them, to be data reports that they already have for statistical data." Nov. 13, 2020 Tr. at 27:20-22 (emphasis added). He went on to state, "we are going to be asking for data *and* reports in large part[.]" *Id.* at 34:17-19 (emphasis added). There was nothing said anywhere—at the CMC, in discussions, during the motion to compel briefing, or anywhere else that Defendants were to be absolved from every producing summary data reports from their database. It is an absurd concept, given the nature of the data at issue (and given when Defendants themselves do—and have told the Court they do— in issuing their own releases and responding to the Court's questions: query their database).

Fourth, in an effort to avoid this very undertaking, Defendants have repeatedly claimed that the law does not require them to produce such data from their databases. That was their primary argument. And as Plaintiffs demonstrated in their motion, it is contrary to law. Switching now, from a "I don't have to query my database" to a "I never knew you wanted me to query my database" demonstrates the paucity of Defendants' new arguments.

### C.   Defendants' Self-Serving And Vague New Assertions About Title 13 Confidentiality Protections Are Contrived and Do Not Shield The Aggregate Summary Report Data Requested

Defendants' attempt to bar Plaintiffs from relevant discovery due to Title 13 should be rejected. Defendants cite no case holding that the type of information sought by Plaintiffs results

in a violation of Title 13.  In *Baldridge*, the Supreme Court explained that Title 13 protections work "a bar on disclosure of all *raw data* reported by or on behalf of individuals." *Baldridge v. Shapiro*, 455 U.S. 345 361 (1982) (emphasis added).  *Baldridge* did not hold that all operational data such as "vacancy status" is shielded by Title 13 as Defendants suggest.  Dkt. 437 at 11.  While vacancy status was information sought in *Baldridge*, it was sought through the raw data provided in the master address register.  *See Baldridge*, 455 U.S. at 349, 358 ("A list of vacant addresses is part of the *raw census data* . . . ." (emphasis added)).[1]

Plaintiffs do not ask for such protected raw data information, and have never so asked.  Instead, Plaintiffs ask for summary data reports about the NRFU process that is similar in kind to data that the Bureau itself has published on its website for self-response.  *See* https://2020census.gov/en/response-rates/self-response.html.  On the Bureau's website, completion rate information for self-response is available down to the census tract-level, overlaying zip codes with census tracts.[2]  In publishing this data, the Bureau has concluded there is no Title 13 violation.  For good reason.  There is no violation of Title 13 under *Baldrige* because the raw data from the responses is not available.  The page even includes a link to "Historical Data" providing "All Data used to create the 2020 Census Response Rate Map" apparently almost daily from March 20, 2020 through October 28, 2020. https://data.world/uscensusbureau/2020-census-response-rate-data.  This directly contradicts Defendants' Title 13 assertions, including that any data "at the sub-ACO level is *categorically* protected under Title XIII and barred from publication."  Dkt. 437 at 12 (emphasis added); *see also* Dkt. 371-2 ¶ 14 ("The primary issue with the sequence of management reports … is that they cover the same reference populations with very short time intervals between successive snapshots.").  Nowhere have Defendants explained why such information can be published on

---

[1] Defendants state that "the Supreme Court has made clear, this information cannot be provided even under a protective order."  Dkt. 437 at 10.  Because *Baldridge* concerned disclosure of raw data, which Plaintiffs do not seek here, the fact the Supreme Court reversed the Third Circuit on that point is inapposite.  Plaintiffs provide nothing indicating that, where aggregate data is sought, that a protective order limiting disclosure of the data to Plaintiffs' counsel and their experts is not appropriate.

[2] As Defendants acknowledge, the CFS area is even broader than the census tract level. *See* Dkt. 437 at 14 (noting 13,000 CFS Areas and 80,000 census tracts).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' REPLY ISO RENEWED MOTION TO
COMPEL AND FOR SANCTIONS

the Bureau's website, but similar information for other parts of the Census, which likewise do not publish raw data, cannot be provided to Plaintiffs.

Defendants make the case that there may be an increased risk to privacy by disclosure of more data, but have not provided legal authority barring disclosure of the materials sought by Plaintiffs, nor explained why the materials cannot be produced through a disclosure avoidance procedure. Their only authority is Dr. Abowd's declaration—and even he suggests the information can be provided with a disclosure avoidance procedure. But Dr. Abowd cannot, on his own, determine what information may be produced in litigation in federal court. Furthermore, Dr. Abowd's examples focus only on the tract level. *See* Dkt. 437-1 ¶ 17. Nowhere does he explain that privacy and Title 13 would be violated by disclosure of data at the CFS Area level. This is a tacit admission that information at the CFS Area level can be provided to Plaintiffs—as it should have already been. Moreover, Plaintiffs are asking for information similar to that asked for by the American Statistical Association to assess the quality of the 2020 Census.[3] These statisticians also understand the importance of privacy, but also still call for such information to be provided from the Bureau for analysis and review.

Plaintiffs never objected to Defendants applying disclosure avoidance procedures to the data Defendants' must produce. But Defendants cannot now say that Title 13 review is too burdensome in light of the tight turnaround when they should have started such review as soon as they received Plaintiffs' requests for production in November—and at an absolute minimum, on December 13, 2020 when the Court clarified its order (along with Defendants' acquiescence) requiring the production of all such summary report data. Defendants' unilateral decision to ignore the responsive and highly relevant information they have, and instead produce other information easier for them to collect, does not absolve Defendants' of their discovery obligations.[4]

---

[3] *See* https://www.amstat.org/ASA/News/ASA-Board-Releases-2020-Census-Quality-Indicators.aspx; https://www.amstat.org/asa/files/pdfs/POL-2020CensusQualityIndicators.pdf.

[4] Defendants did not even approve a disclosure avoidance procedure for CIG decks until December 7, *see* Dkt. 371-2 ¶ 16, but have provided no explanation why they could not have implemented a procedure for the data they knew Plaintiffs were seeking.

In light of the situation of Defendants' own making, the Court should order production of this data immediately. If Title 13 review is required, Defendants should be ordered to use all available resources to complete that review as expeditiously as possible as a sanction for their discovery misconduct.

### D. Defendants' Newfound Claims of "Burden" Are Meritless and Raise Troubling Issues About Defendants' Failure to Present Any Such Issues to the Court or to Plaintiffs at an Appropriate Earlier Time

As a fall back, Defendants assert, *for the first time in this litigation*, that much of the information Plaintiffs seek cannot be derived until post-processing is complete. Opp. at 12-13. Defendants have never claimed (until now) that the data Plaintiffs seek—at the CFS and census tract levels—is unattainable until post-processing is complete *or* that it would "require the full time work of two to three programmers and several testers over multiple weeks." *Id.* at 14. Defendants ignore that their own court-ordered Rule 30(b)(6) witness, Tamara Adams (who designated as the person most knowledgeable on the subject of access to data at the Census Bureau), testified that such data is readily available and would take a mere "day or two" to query and calculate *and* "[t]he same" amount of time to "ensure they're properly calculated." *See* Ex. 1, Adams Dep. Tr. at 85:10-87:12.

Defendants claim that operational and response data from the CFS area and census tract level is "not maintained in the UTS system," ignoring that such data *is* maintained in numerous other databases. Unlike the UTS, which generates "predesignated reports," the CDL "can be used to generate reports, the aggregates for reports, and it can also be used to – for ad hoc analyses." Adams Dep. Tr. at 84:7-24. Specifically, Ms. Adams testified that, while self-response data in the NRFU universe is not maintained on a tract level in the CDL, "[i]t can be computed at other levels [including the tract level], should we so desire." *Id.* at 68:11-69:3. Ms. Adams further testified, for example, that "calculations" of the numbers and percentages of NRFU housing units enumerated by proxy are maintained in the CDL, and it would be possible to run such calculations in "[a] day or two." *Id.* at 85:10-86:18; *see also id.* at 89:19-23. Likewise, it would take "[t]he same" amount of time—"several-day sorts of things to ensure they're calculated properly"—to determine the numbers and percentages of NRFU housing units

enumerated by population count only by querying the CDL.  *Id.* at 86:19-87:12.  Such calculations can be made at both the ACO and the tract level.  *See id.* at 90:1-8.

Mr. Christy also submitted a declaration in this case, wherein he states "As of 8:21 p.m. Mountain [time] on 10/2/2020, the Census Field Supervisor area was 95.63% complete."  ECF No. 292-1, ¶ 4.  Ms. Adams confirmed that data from MOJO Hermes reflects completion percentages in a given CFS area.  Adams Dep. Tr. at 138:16-140:11, 140:24-141:10 (citing Christy Decl., ECF No. 292-1, ¶ 7).  MOJO Hermes can also be queried to determine enumerator productivity—specifically, completed cases per attempt and completed cases per hour—on a CFS area basis.  *Id.* at 141:12-142:12.  Ms. Adams also testified that you can calculate the percentage of addresses in the NRFU universe that were obtained during the closeout phase "us[ing] the MOJO Hermes system to perform that calculation on the FDL OCS data."  *Id.* at 108:21-109:14.  Similarly, data reflecting the number of cases that were selected for re-interview, which is derived using paradata (i.e., operational data), is kept within the SMaRCS database, from which summary tabulations can be exported on a tract level.  *See id.* at 116:16-118:24 ("Q.  Would the summary tabulations be by tract?  A. They can be.").

As for the availability of like data in 2000 and 2010, Ms. Adams testified that 2010 data in the CDW—including, for example, how many households were enumerated by proxy—is "maintained on a record-by-record [level of] granularity."  *Id.* at 107:13-25.  Just like the CDL, the Bureau can query the CDW to determine the numbers and percentages of housing units enumerated by proxy on a tract level.  *Id.* at 108:1-7.  While it may not be possible for Plaintiffs to compare "apples-to-apples" because the ACOs and census tracts changed from 2000 to 2010 to 2020 (id. at …), that does not in any respect impact the accessibility of data from 2010 (at a minimum).  And it certainly has no bearing on Defendants' obligation to produce data related to the 2020 Census.[5]

---

[5] Moreover, this argument once again shows Defendants' failure to confer with Plaintiffs in good faith on these issues.  This case is about the 2020 census, and the 2010 and 2000 census results are important in part because *Defendants* have crowed about favorable comparisons, whenever it suits their fancy.  Plaintiffs need to be able to test those assertions, hence requested the data from 2010 and 2000.  If it were truly cumbersome to provide that data, notwithstanding Defendants' own use of it, that would have been a perfect thing to meet and confer about, and resolve.  But Defendants would not do so—and Plaintiffs hear about the specifics of these

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' REPLY ISO RENEWED MOTION TO
COMPEL AND FOR SANCTIONS

1	Of course, deciphering what type of census response and operational data is available and
2	at what level such data could be queried was precisely the reason the Court ordered a Rule
3	30(b)(6) deposition on the subject of "Defendants' retention, organization, collection, review,
4	and production of documents and data, as well as the search functionalities and capabilities of
5	Defendants' various databases" in the first place.  ECF No. 379 at 9:7-12 (ordering Rule 30(b)(6)
6	witness "so that Plaintiffs have definitive, sworn answers regarding key document production
7	issues in this case, and *meaningful guidance regarding how Defendants retain, manage, and*
8	*organize data and how they are collecting and producing documents in this litigation*, that will
9	help finalize this portion of discovery without further delay") (emphasis added).
10	Defendants' claim that Plaintiffs' only "now want data at the much-more-granular CFS
11	and tract levels" (Opp. at 8:21-22) is belied by Plaintiffs' crystal clear discovery requests, served
12	almost two months ago, and Defendants' own representations to the Court.  Defendants have
13	known precisely the data Plaintiffs are seeking since November 17, 2020, when Plaintiffs served
14	their RFPs, the very first of which requests "census completion rates, at *each* level tracked by the
15	Bureau, for the 2020 Census as of each Date" and the fourth of which requests "the percentage
16	and number of housing units/addresses, at the national, state, county, and census tract level,
17	resolved through [various] methods," specified therein.  Moreover, as set forth above, on
18	October 2, 2020, over three months ago, Mr. Christy submitted a declaration in this case,
19	specifying a 95.63% completion rate in a "Census Field Supervisor area," making it
20	unequivocally clear that Defendants "track" census completion rates by CFS.  ECF No. 292-1,
21	¶ 4. And Plaintiffs made it abundantly clear, no later than December 2, 2020, when the parties
22	had their first meet and confer on the subject (after Defendants had refused to do so for weeks),
23	that they were seeking granular data at the ACO, CFS and census tract level.  Instead of
24	inquiring into the feasibility of obtaining such information at that time (when there would have
25	been ample time in the discovery schedule for Defendants to run the very queries they now claim
26	will take "multiple weeks"), Defendants' counsel assured Plaintiffs that such information, at the
27
28	complexities of 2000 and 2010 data for the first time via Defendants' filing last night.
	Defendants don't want to resolve true issues of burden—they want to take exemplars that may be favorable to them and use them to falsely argue that *everything* is thus unduly burdensome.

1  level of "granularity" Plaintiffs sought, would be provided in the CIG reports Defendants were
2  already in the process of producing.  ECF No. 433-1, ¶ 3.  Of course, none of the CIG reports or
3  any of Defendants' other productions, contain such data.
4      Finally, by these discovery requests, Plaintiffs do not seek the results of Defendants'
5  post-processing efforts.  Instead, they seek a fulsome production of data that, in many cases, has
6  already been provided in limited form (e.g., ECF No. 292-1 (Christy Decl.), ¶ 4).  To the extent
7  certain data is truly non-existent, Defendants should provide a declaration that states, for each
8  RFP, precisely what that metric of data is (including the geographic level of granularity), why it
9  is non-existent, and that it has never before been calculated by the Bureau.

    **E.**    **Contrary to Defendants' Assertions, The Court Can Issue Monetary Sanctions Under Rule 37(b) for Any Continuing Defiance**

    Defendants' final argument is that the Court is prohibited from awarding any sanctions on Defendants to force them to comply.  Defendants are mistaken.

    The Court has clear, unambiguous authority under Federal Rule of Civil Procedure 37(b) to issue sanctions due to Defendants' continual refusal to produce summary data reports, and Defendants' Opposition misrepresents the clear case law on this subject.  As the Ninth Circuit held in *United States v. Woodley*, 9 F.3d 774 (1993), sovereign immunity does *not* prohibit a court from imposing monetary sanctions on the federal government "to deter future governmental misconduct and protect the integrity of the judicial process."  9 F.3d at 782 (quoting *United States v. Simpson*, 927 F.2d 1088, 1092 (9th Cir. 1991), *abrogated on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)).  Contrary to Defendants' assertions, the Ninth Circuit in *Woodley* explicitly stated that "money penalties" against the government are allowable under Rule 37(b).  *Woodley*, 9 F.3d at 781 (noting that monetary sanctions against the government under Rules 11 and 37(b) are appropriate).  Consistent with that finding, the Ninth Circuit has upheld the imposition of monetary sanctions by district courts against the federal government under Rule 37(b), finding that district courts do not abuse their discretion to where they issue a "just" sanction related a "claim at issue in the [district court's] order."  *United States v. Nat'l Medical Enterprises, Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986).

*See also United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1367, 1371 (9th Cir. 1980).

Here, monetary sanctions "to deter future governmental misconduct and protect the integrity of the judicial process" are clearly necessary. *Woodley*, 9 F.3d at 782. In defiance of the Court's Order Granting Motion to Compel (Dkt. 372), Defendants have *still* failed to produce "[a]ll summary data reports responsive to Plaintiffs' sufficient-to-show requests regarding data collection processes, metrics, issues and improprieties (RFP Nos. 2-4, 6-10, 15, 16 and 18)" as they were ordered to do by December 12, 2020, nearly a month ago. Dkt. 372. Defendants' blatant failure to produce the discovery required by the Court's Order Granting Motion to Compel, despite several attempts by Plaintiffs to allow Defendants to produce the information, warrants the "just" imposition of monetary sanctions. *United States v. Nat'l Medical Enterprises, Inc.*, 792 F.2d at 910-11 (affirming district court's issuance of monetary sanctions against the federal government under Rule 37(b) due to government attorney's violation of a protective order). *See also Sumitomo*, 617 F.2d at 1367, 1371 (affirming district court's issuance of monetary sanctions under Rule 37(b) because the government "demonstrated a callous disregard for the discovery processes and the orders of this Court" in failing to timely respond to interrogatories).

Defendants' Opposition misrepresents the case law to this Court by alleging that the Ninth Circuit has expressed "doubts" about the ability to overcome sovereign immunity to impose sanctions. Opposition at 16. To the contrary, in the case Defendants cite, the Ninth Circuit in fact states that it has "no desire to call into question the decisions of this court that imposed sanctions on the United States on the basis of Rule 11, 37(b), and 60." *Barry v. Bowen*, 884 F.2d 442, 444 (9th Cir. 1989). And the Ninth Circuit has since reiterated that "when the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant" and thus that the federal government "is subject to the sanction provisions of Rule 37(b)." *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991). Defendants severely mislead the Court regarding the case law in this area to suggest that the Court cannot impose well-deserved monetary penalties that, at this point, appear to be the only

effective mechanism by which to communicate to Defendants that they cannot continually violate this Court's orders and discovery procedures.

The Ninth Circuit is clear that a monetary sanction "'meant not only to compensate [the opposing litigant], but also to deter' future government misconduct in litigation may appropriately be awarded under Fed.R.Civ.P. 37 for violations of discovery orders." *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) (quoting *Sumitomo*, 617 F.2d at 1371). Defendants have blatantly violated this Court's Order Granting Motion to Compel, and while Plaintiffs could seek contempt on that basis, *see Woodley*, 9 F.3d at 783, Plaintiffs are focused on the most expeditious resolution to this discovery dispute.

## III. CONCLUSION

For the reasons set forth above, and in Plaintiffs' motion, Plaintiffs respectfully request that the Court grant their renewed motion to compel and for sanctions.

Dated: January 8, 2021

LATHAM & WATKINS LLP

By: /s/ Sadik Huseny
    Sadik Huseny

Sadik Huseny (Bar No. 224659)
sadik.huseny@lw.com
Steven M. Bauer (Bar No. 135067)
steven.bauer@lw.com
Amit Makker (Bar No. 280747)
amit.makker@lw.com
Shannon D. Lankenau (Bar. No. 294263)
shannon.lankenau@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415.391.0600
Facsimile:  415.395.8095

Melissa Arbus Sherry (*pro hac vice*)
melissa.sherry@lw.com
Richard P. Bress (*pro hac vice*)
rick.bress@lw.com
Anne W. Robinson (*pro hac vice*)
anne.robinson@lw.com
Tyce R. Walters (*pro hac vice*)
tyce.walters@lw.com
Gemma Donofrio (*pro hac vice*)

| | | |
|---|---|---|
| 1 | | gemma.donofrio@lw.com |
| 2 | | Christine C. Smith (*pro hac vice*)<br>christine.smith@lw.com |
| 3 | | **LATHAM & WATKINS LLP**<br>555 Eleventh Street NW, Suite 1000 |
| 4 | | Washington, D.C. 20004<br>Telephone:  202.637.2200 |
| 5 | | Facsimile:  202.637.2201 |
| 6 | | *Attorneys for Plaintiffs National Urban League;*<br>*League of Women Voters; Black Alliance for* |
| 7 | | *Just Immigration; Harris County, Texas; King*<br>*County, Washington; City of San Jose,* |
| 8 | | *California; Rodney Ellis; Adrian Garcia; and*<br>*the NAACP* |
| 9 | Dated: January 8, 2021 | By: /s/ Jon M. Greenbaum |
| 10 | | Kristen Clarke (*pro hac vice*)<br>kclarke@lawyerscommittee.org |
| 11 | | Jon M. Greenbaum (Bar No. 166733)<br>jgreenbaum@lawyerscommittee.org |
| 12 | | Ezra D. Rosenberg (*pro hac vice*)<br>erosenberg@lawyerscommittee.org |
| 13 | | Ajay Saini (*pro hac vice*)<br>asaini@lawyerscommitee.org |
| 14 | | Maryum Jordan (Bar No. 325447)<br>mjordan@lawyerscommittee.org |
| 15 | | Pooja Chaudhuri (Bar No. 314847)<br>pchaudhuri@lawyerscommittee.org |
| 16 | | **LAWYERS' COMMITTEE FOR CIVIL**<br>**RIGHTS UNDER LAW** |
| 17 | | 1500 K Street NW, Suite 900 |
| 18 | | Washington, DC 20005<br>Telephone:  202.662.8600 |
| 19 | | Facsimile:  202.783.0857 |
| 20 | | *Attorneys for Plaintiffs National Urban League;*<br>*City of San Jose, California; Harris County,* |
| 21 | | *Texas; League of Women Voters; King County,*<br>*Washington; Black Alliance for Just* |
| 22 | | *Immigration; Rodney Ellis; Adrian Garcia; the*<br>*NAACP; and Navajo Nation* |
| 23 | | |
| 24 | | Wendy R. Weiser (*pro hac vice*)<br>weiserw@brennan.law.nyu.edu |
| 25 | | Thomas P. Wolf (*pro hac vice*)<br>wolft@brennan.law.nyu.edu |
| 26 | | Kelly M. Percival (*pro hac vice*)<br>percivalk@brennan.law.nyu.edu |
| 27 | | **BRENNAN CENTER FOR JUSTICE**<br>120 Broadway, Suite 1750 |
| 28 | | New York, NY 10271 |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' REPLY ISO RENEWED MOTION TO
COMPEL AND FOR SANCTIONS

Telephone: 646.292.8310
Facsimile: 212.463.7308

*Attorneys for Plaintiffs National Urban League; City of San Jose, California; Harris County, Texas; League of Women Voters; King County, Washington; Black Alliance for Just Immigration; Rodney Ellis; Adrian Garcia; the NAACP; and Navajo Nation*

Mark Rosenbaum (Bar No. 59940)
mrosenbaum@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: 213.385.2977

*Attorneys for Plaintiff City of San Jose*

Doreen McPaul, Attorney General
dmcpaul@nndoj.org
Jason Searle (*pro hac vice*)
jasearle@nndoj.org
**NAVAJO NATION DEPARTMENT OF JUSTICE**
P.O. Box 2010
Window Rock, AZ 86515
Telephone: (928) 871-6345

*Attorneys for Navajo Nation*

Dated: January 8, 2021

By: /s/ Danielle Goldstein
Michael N. Feuer (Bar No. 111529)
mike.feuer@lacity.org
Kathleen Kenealy (Bar No. 212289)
kathleen.kenealy@lacity.org
Danielle Goldstein (Bar No. 257486)
danielle.goldstein@lacity.org
Michael Dundas (Bar No. 226930)
mike.dundas@lacity.org
**CITY ATTORNEY FOR THE CITY OF LOS ANGELES**
200 N. Main Street, 8th Floor
Los Angeles, CA 90012
Telephone: 213.473.3231
Facsimile: 213.978.8312

*Attorneys for Plaintiff City of Los Angeles*

Dated: January 8, 2021

By: /s/ Michael Mutalipassi
Christopher A. Callihan (Bar No. 203010)
legalwebmail@ci.salinas.ca.us

|   |   |   |
|---|---|---|
| 1 | | Michael Mutalipassi (Bar No. 274858) |
| 2 | | michaelmu@ci.salinas.ca.us |
|   | | **CITY OF SALINAS** |
| 3 | | 200 Lincoln Avenue |
|   | | Salinas, CA 93901 |
| 4 | | Telephone: 831.758.7256 |
|   | | Facsimile: 831.758.7257 |
| 5 | | |
|   | | *Attorneys for Plaintiff City of Salinas* |
| 6 | | |
|   | Dated: January 8, 2021 | By: /s/ Rafey S. Balabanian |
| 7 | | Rafey S. Balabanian (Bar No. 315962) |
|   | | rbalabanian@edelson.com |
| 8 | | Lily E. Hough (Bar No. 315277) |
|   | | lhough@edelson.com |
| 9 | | **EDELSON P.C.** |
|   | | 123 Townsend Street, Suite 100 |
| 10 | | San Francisco, CA 94107 |
|   | | Telephone: 415.212.9300 |
| 11 | | Facsimile: 415.373.9435 |
| 12 | | |
|   | | Rebecca Hirsch (*pro hac vice*) |
| 13 | | rebecca.hirsch2@cityofchicago.org |
|   | | **CORPORATION COUNSEL FOR THE** |
| 14 | | **CITY OF CHICAGO** |
|   | | Mark A. Flessner |
| 15 | | Stephen J. Kane |
|   | | 121 N. LaSalle Street, Room 600 |
| 16 | | Chicago, IL 60602 |
|   | | Telephone: (312) 744-8143 |
| 17 | | Facsimile: (312) 744-5185 |
| 18 | | |
|   | | *Attorneys for Plaintiff City of Chicago* |
| 19 | | |
|   | Dated: January 8, 2021 | By: /s/ Donald R. Pongrace |
| 20 | | Donald R. Pongrace (*pro hac vice*) |
|   | | dpongrace@akingump.com |
| 21 | | Merrill C. Godfrey (Bar No. 200437) |
|   | | mgodfrey@akingump.com |
| 22 | | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| 23 | | 2001 K St., N.W. |
|   | | Washington, D.C. 20006 |
| 24 | | Telephone: (202) 887-4000 |
|   | | Facsimile: 202-887-4288 |
| 25 | | |
|   | | *Attorneys for Plaintiff Gila River Indian* |
| 26 | | *Community* |
| 27 | | |
| 28 | | |

| | |
|---|---|
| Dated: January 8, 2021 | By: /s/ David I. Holtzman<br>David I. Holtzman (Bar No. 299287)<br>David.Holtzman@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>Daniel P. Kappes<br>Jacqueline N. Harvey<br>50 California Street, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 743-6970<br><br>*Attorneys for Plaintiff County of Los Angeles* |

### ATTESTATION

I, Sadik Huseny, am the ECF user whose user ID and password authorized the filing of this document. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

| | |
|---|---|
| Dated: January 8, 2021 | **LATHAM & WATKINS LLP**<br><br>By:  /s/  Sadik Huseny<br>Sadik Huseny |